LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Counsel for Defendant Deel, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, and DOES 1-100,<br><br>Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**(1) DEFENDANT DEEL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FORUM NON CONVENIENS:**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>*Under Separate Cover*:<br><br>**(3) DECLARATIONS OF PETER BREDIN, SHUO WANG, AND ADAM LLOYD; and**<br><br>**(4) [PROPOSED] ORDER.**<br><br>Compl. Filed:      March 17, 2025<br>Judge:               Hon. Charles R. Breyer<br>Courtroom:          6<br>Hearing Date:      July 25, 2025<br>Hearing Time:      10:00 a.m. |

1    <u>**NOTICE OF MOTION AND MOTION**</u>

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3    **PLEASE TAKE NOTICE** that at 10:00 a.m. on July 25, 2025, or as soon thereafter as the matter

4    may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco

5    Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Fracisco California 94102,

6    Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this motion to

7    dismiss the complaint ("Compliant") brought by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling")

8    for forum non conveniens (the "Motion").

9    This Motion is based on this Notice, the Memorandum of Points and Authorities, Declarations of

10    Peter Bredin ("Bredin Decl."), Shuo Wang ("Wang Decl."), and Adam Lloyd ("Lloyd Decl.") and their

11    attached exhibits, the files and records in this action, the arguments of counsel, and any other matters the

12    Court may properly consider.

13    <u>**SUMMARY OF ARGUMENT**</u>

14    As required by this Court's Standing Order, Deel provides the provides the following summary of

15    argument. This Motion seeks to dismiss Rippling's Complaint in favor of proceeding in Ireland under the

16    doctrine of forum non conveniens for the following reasons:

17    • The Courts of Ireland are an adequate alternative forum for this dispute. *See infra* Argument §II;

18    *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981); *Ranza v. Nike, Inc.*, 793 F.3d 1059,

19    1077 (9th Cir. 2015); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009); *Umeda*

20    *v. Tesla Inc.*, 2020 WL 5653496, at *5 (N.D. Cal. Sept. 23, 2020); *Herd v. Airbus SAS*, 2017 WL

21    6504162, at *2 (C.D. Cal. Dec. 11, 2017); *Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 775

22    (C.D. Cal. 2006); *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F.Supp.3d 527, 536-37 (S.D.N.Y. 2014);

23    *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *4, *13-14 (S.D.N.Y. Nov. 29,

24    2011).[1]

25    • The private interest factors informing a forum non conveniens analysis all favor proceeding in

26    Ireland. *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F.Supp.2d 832, 839, 843 (N.D. Cal.

27    2010) (Breyer, J.); *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL 1565544, at *5 (N.D. Cal. Apr. 19,

28    2016); *see infra* Argument §III.

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading.

- The key witnesses and evidence in this action are in Ireland, which is "the most important private interest factor." *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *4 (N.D. Cal. May 5, 2016); *Kleiner*, 2016 WL 1565544, at *4; *Herd*, 2017 WL 6504162, at *3; *Medicor AG v. Arterial Vascular Eng'g*, 1997 WL 68564, at *1 (N.D. Cal. Jan. 30, 1997); *In re Air Crash*, 760 F.Supp.2d at 844; *see infra* Argument §III.A.

- Rippling has already initiated parallel litigation related to its claims here against Deel in Ireland. *See infra* Argument §III.B. *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10 (N.D. Cal. Aug. 10, 2021); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001); *Mentawai v. Marcotti*, 2016 WL 7496750, at *5 (C.D. Cal. Mar. 28, 2016).

- Rippling can enforce any judgment in Ireland. *See infra* Argument §III.C.

- The public interest factors also are all either neutral or weigh in favor of dismissal. *See infra* Argument §IV. *Lueck*, 236 F.3d at 1147; *In re Air Crash*, 760 F.Supp.2d at 845-47; *Van Schijndel*, 434 F.Supp.2d at 782.

**STATEMENT OF REQUESTED RELIEF**

Deel seeks an order dismissing all of Rippling's Complaint and all causes of action under the doctrine of *forum non conveniens* in favor of proceeding in Ireland.

DATED: April 25, 2025          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____*/s/ Jason D. Russell*_____
                    JASON D. RUSSELL
                    *Attorneys for Defendant Deel, Inc.*

1

## <u>TABLE OF CONTENTS</u>

2  SUMMARY OF ARGUMENT ............................................................................................ i

3  STATEMENT OF REQUESTED RELIEF ...................................................................... ii

4  TABLE OF AUTHORITIES .......................................................................................... iv

5  PRELIMINARY STATEMENT ...................................................................................... 1

6  STATEMENT OF FACTS .............................................................................................. 1

7  LEGAL STANDARD ...................................................................................................... 4

8  ARGUMENT .................................................................................................................... 5

9    I.     This Court Can And Should Decide This Motion First ................................ 5

10   II.    The Courts Of Ireland Are An Adequate Alternative Forum ...................... 5

11   III.   The Private Interest Factors Weigh In Favor Of Dismissal ........................ 8

12          A.    The Key Witnesses And Evidence In This Action Are In Ireland ......... 8

13          B.    The Existing Litigation In Ireland ........................................................ 12

14          C.    Rippling Can Enforce A Judgment in Ireland ...................................... 13

15   IV.    The Public Interest Factors Weigh In Favor Of Dismissal ....................... 13

16  CONCLUSION .............................................................................................................. 15

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES

*In re Air Crash Over Mid-Atl. on June 1,*
   760 F.Supp.2d 832 (N.D. Cal. 2010) .................................................................................. *passim*

*In re Banco Santander Securities-Optimal Litigation,*
   732 F.Supp.2d 1305 (S.D. Fla. 2010), *aff'd sub nom.*
   *Inversiones Mar Octava Limitada v. Banco Santander S.A.,*
   439 F.App'x 840 (11th Cir. 2011) .......................................................................................8

*Carey v. Bayerische Hypo-Und Vereinsbank AG,*
   370 F.3d 234 (2d Cir. 2004)..................................................................................................4

*Dickens v. NXP Semiconductors,*
   703 F.Supp.3d 1013 (N.D. Cal. 2023) ...........................................................................11, 12

*Etaliq, Inc. v. Cisco Systems, Inc.,*
   No. CV 11-3672 GAF (FFMx),
   2011 WL 13220445 (C.D. Cal. July 20, 2011) ...................................................................15

*Flynn v. National Asset Management Agency,*
   42 F.Supp.3d 527 (S.D.N.Y. 2014) ...................................................................................5, 7

*In re Herald, Primeo, & Thema Securities Litigation,*
   No. 09 Civ. 289(RMB),
   2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011),
   *aff'd*, 540 F.App'x 19 (2d Cir. 2013)................................................................................7, 8

*Herd v. Airbus SAS,*
   No. 2:17-cv-05001-SVW-MRW,
   2017 WL 6504162 (C.D. Cal. Dec. 11, 2017) ..................................................................6, 9

*Huthart v. News Corp.,*
   No. CV-13-04253-MWF (AJWx),
   2014 WL 12577175 (C.D. Cal. May 21, 2014) ...................................................................15

*Juniper Networks, Inc. v. Andrade,*
   No. 20-cv-02360-BLF,
   2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) ...............................................................12, 13

*Kleiner v. Spinal Kinetics, Inc.,*
   No. 5:15-cv-02179-EJD,
   2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) .................................................................8, 11

iv

*Koger, Inc. v. O'Donnell*,
No. 07-3091 (KSH),
2007 WL 3232586 (D.N.J. Oct. 31, 2007)................................................................7, 8

*Lockman Foundation v. Evangelical Alliance Mission*,
930 F.2d 764 (9th Cir. 1991) ........................................................................15

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .............................................................. *passim*

*Medicor AG v. Arterial Vascular Engineering*,
No. C-96-2979 MHP,
1997 WL 68564 (N.D. Cal. Jan. 30, 1997),
*aff'd*, 141 F.3d 1177 (9th Cir. 1998).......................................................9, 13

*Mentawai v. Marcotti*,
No. CV 15-02156 RGK (DFMx),
2016 WL 7496750 (C.D. Cal. Mar. 28, 2016) ............................................13

*Nai-Chao v. Boeing Co.*,
555 F.Supp.9 (N.D. Cal. 1982),
*aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) ..........13

*Oxley v. Wyeth Laboratories, Inc.*,
No. 91-1285,
1992 WL 116308 (E.D. Pa. May 20, 1992) ............................................6, 13

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ................................................................................5, 6

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
No. 11-5227 (MLC),
2012 WL 2995199 (D.N.J. July 23, 2012)....................................................7

*Provincial Government of Marinduque v. Placer Dome, Inc.*,
582 F.3d 1083 (9th Cir. 2009) ....................................................................5

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ...........................................................5, 6, 14

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*,
549 U.S. 422 (2007)....................................................................................5

*SPS Technologies, LLC v. Briles Aerospace, Inc.*,
No. CV 18-9536-MWF (ASx),
2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) .......................................4, 15

*Summa Resource Holdings LLC v. Carbon Energy Ltd.*,
No. 15-cv-05334-TEH,
2016 WL 2593868 (N.D. Cal. May 5, 2016) ...................................... *passim*

v

*Umeda v. Tesla Inc.*,
     No. 20-cv-02926-SVK,
     2020 WL 5653496 (N.D. Cal. Sept. 23, 2020),
     *aff'd*, 2022 WL 18980 (9th Cir. Jan. 3, 2022)................................................................6

*Van Schijndel v. Boeing Co.*,
     434 F.Supp.2d 766 (C.D. Cal. 2006),
     *aff'd*, 263 F.App'x 555 (9th Cir. 2008).............................................................6, 12, 15

*Vivendi SA v. T-Mobile USA Inc.*,
     586 F.3d 689 (9th Cir. 2009) ...................................................................................5, 8

**PRELIMINARY STATEMENT**

This action does not belong in this (or any United States) court. Plaintiff Rippling accuses Defendant Deel of conspiring with a corporate spy to steal Rippling's trade secrets. But as Rippling admits, the putative "spy" (Keith O'Brien) is an Irish citizen employed at Rippling's Irish subsidiary in Dublin, where he allegedly accessed Rippling's files. This is why Rippling told the Dublin Commercial High Court ("Irish Court") in the parallel proceeding it initiated there (the "Irish Proceedings") that "**Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings**." Lloyd Decl. Ex. A (Wu Decl.) ¶¶33-34. Indeed, Rippling told the Irish Court that "**Ireland is the correct forum to determine this action against [Deel]**, having regard to the subject-matter of the action" and "**the balance of convenience lying in favour of trying the case in the Irish courts**." *Id.* ¶45. By Rippling's own admission, this action should be dismissed for forum non conveniens.

Irish law recognizes the same or similar claims and remedies for every cause of action asserted by Rippling here, and Deel has consented jurisdiction in Ireland. Thus, as Rippling recognized in instituting the Irish Proceedings based on the same "wrongdoing" (*id.* ¶27), Ireland is an adequate alternative forum.

It seems Rippling has only brought its duplicative suit here to capitalize on RICO and American juries—so its choice of forum is entitled to limited deference at best. None of the material witnesses in this Action, including O'Brien and the senior executives identified in the Complaint, are in California. Rather, the key witness—O'Brien—and important non-party witnesses with knowledge about O'Brien's purported espionage and dealings with Rippling, are in Ireland, where only an Irish court can compel their testimony. Indeed, O'Brien—the alleged primary tortfeasor in Rippling's tale—is noticeably absent as a Defendant in this action, because Rippling knows none of his alleged conduct or its effects occurred in California so as to subject him to personal jurisdiction here. Rippling also admits that key physical evidence of O'Brien's and the Rippling systems that were allegedly accessed, are also in Dublin. Because California has at best an attenuated interest in this dispute, the private and public factors compel dismissal.

**STATEMENT OF FACTS**

Rippling's action against Deel in this Court arises entirely from the alleged activities of an Irish citizen in Ireland. Every cause of action Rippling asserts hinges on O'Brien's alleged role as "Deel's spy" and his purported "espionage" activities in violation of the alleged duties he owed to Rippling. Compl.

¶¶45, 47, 56-76. Rippling admits O'Brien is "domiciled in Ireland" and was employed by "Rippling Ireland Limited," a Rippling subsidiary to "provide services to" Rippling. *Id*. ¶46. All the "agreements that [O'Brien] signed in connection with his employment" laying out the obligations that Rippling contends that O'Brien breached at Deel's urging were executed in Ireland. *Id*. ¶¶46, 48-52. The alleged espionage occurred while O'Brien was at work or using "his work laptop" in Dublin. *Id*. ¶¶56-76.

Rippling alleges O'Brien met with Alex Bouaziz and/or Olivier Elbaz of Deel "either electronically **or in-person**" while at in Rippling's Dublin office on December 9, 2024. *Id*. ¶89. Rippling confirmed that it sought a court order from the High Court in Ireland to seize and inspect O'Brien's phone and confronted O'Brien "at Rippling's Dublin office" to preserve evidence related to that case. *Id*. ¶¶6-7, 101-03; Lloyd Decl. Ex. A ¶15 (O'Brien was personally served at Rippling's Dublin office). O'Brien's affidavit in the Irish Proceedings echoes these allegations, including that he "worked in the Dublin office primarily, and occasionally worked from home," communicated with Deel while in a "meeting room at Rippling's Dublin office," ran searches on Rippling's systems while in Dublin, and was served with a court order for his phone and laptop there. *Id*. Ex. B (O'Brien Decl.) at ¶¶1, 4, 6-8, 17-29.

Earlier this year, Rippling asked the Irish Court to add Deel to proceedings there arising from O'Brien's "wrongdoing," which Rippling represented was "the subject matter **of these proceedings and the US proceedings.**" *Id*. Ex. A ¶24. Rippling told the Irish Court it "brought proceedings against [Deel] in the United States relating, *inter alia*, to the misappropriation of [Rippling's] trade secrets" but "do not propose proceeding against the intended Defendants in this jurisdiction in respect of the wrongdoing [that is] the subject matter **of the Plaintiffs' original claim against Mr. O'Brien, i.e. the spying and theft of Confidential Information and Trade Secrets.**" *Id*. ¶27. Rippling cannot have it both ways.

Rippling successfully added Deel to the Irish Proceedings by relying not only on Rippling's attestations that "Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings," Lloyd Decl. Ex. A ¶¶33-34, 45, but also on an affidavit from O'Brien that was laced with misleading statements and falsehoods. *See id.* Ex. B. Rippling procured O'Brien's supposed testimony by both directly financing it, *id.* Ex. A ¶¶22-23, and via an odious pressure campaign to intimidate O'Brien, which eventually caused him to have such a massive psychological breakdown that he nearly ended his own life and sought hospitalization, as O'Brien's own contemporaneous emails show:

My name is Keith O'brien and I am replying to your email below.

I am the person at the centre of this Witch-hunt. I am being harassed by my now former employer Rippling. Yes I did raise my concerns on the Russia payments internally and indeed with the Central Bank of Ireland via the whistle-blower helpline.

I am extremely concerned about my personal safety and well being of my family.

I am having extreme suicidal thoughts and have been to my Doctor today. I have been referred to a psychiatric consultant immediately via hospital.

My career has been destroyed. People being following me and my family. Strangers calling to my door.

This is not sustainable. I feel I am being pressured to say things that are not true. I am being coerced into saying stuff that is not true to damage Deel.

I have applied for Deel roles in the past.

My wife is in a really bad way and I'm concerned a oita her health.

On Friday, March 21, 2025, Keith O'Brien <keith@payrollgeeks.world> wrote:

I feel they are going at me to damage Deel as I reported the Russia payments.

On Friday, March 21, 2025, Keith O'Brien <keith@payrollgeeks.world> wrote:

A Rippling representative called again to my home today. They are trying their utmost to mentally destroy me and its working.

I was told by their representative last week that their is pathway forward for me.

This is all because I reported the illegal sanctioned payments to Russia.

I am not sure I will get through this weekend. Its all too much. Rippling are coercing me to say I shared data, no such thing.

I am going to a hospital tomorrow to get medication over all of this stress. It's simply too much to handle.

I have been followed by people driving cars, followed to supermarkets on foot, and I have been harassed by Rippling legal team.

They are trying to break me for whatever reason and its not going to end well for everyone.

I have no job, my career is destroyed, my reputation destroyed, financially destroyed.

The media have wrote some awful things about me this week.

THIS HAS TO STOP !!!!!!! I cannot go on

I am in court at 12 noon GMT this Monday again and I am not sure if I will be mentally okay.

I'm scared, frightened and full or fear.

I will send copy of my doctors letter in due course.

I am sorry about the poor grammar in these chaotic emails as my mind is shot.

Keith

Lloyd Decl. Ex. B at 113-115.

It was in this state of duress that O'Brien accepted Rippling's "pathway forward," and "attested." But as O'Brien's words show before he was bought by Rippling and while being terrorized, the spy melodrama detailed in his affidavit is fictionalized ("I am being pressured to say things that are not true ... to damage Deel. Rippling are coercing me to say I shared data, no such thing"). This includes grossly distorting March 2025 communications where he alarmed certain European Deel employees by telling them he was planning to kill himself because Rippling's efforts to "mentally destroy" him for reporting Rippling's "Russia payments internally" and "with the Central Bank of Ireland" were "working."

As just a few examples, O'Brien's affidavit leaves out that between August 2022 and February 2025, he applied for—and was rejected from—various Europe-based jobs at Deel that he was not qualified for *on at least eight (8) different occasions*, where he interacted with numerous Deel employees as part of the normal interview process who he claims to have only first met during his supposed "spying." Indeed, despite claiming that "I had never spoken to Philippe [Bouaziz] before" September 2024, Deel will produce documents in Ireland showing that O'Brien was exchanging messages with Philippe in *March 2024* as part of one of O'Brien's failed interviews with Deel (he was rejected for copy-and-pasting his

3

1  answers to a case study test from the Internet). Lloyd Decl. Ex. B ¶¶6-7. O'Brien also claims to have

2  "started" a company called "Global Payroll Geeks," but evidence from Europe will show he has no

3  ownership interest in that entity. Finally, O'Brien's affidavit also elides Rippling's own internal obsession

4  with Deel, and fails to disclose O'Brien's supervisors in Ireland instructed him—along with others—to

5  monitor the Slack messages of his team for mentions of the word "Deel" to see who was discussing leaving

6  to work for Deel. And perhaps most damning of all, O'Brien's affidavit reveals that Rippling cannot even

7  keep its own "smoking gun" story straight. Compl. ¶5. Rippling alleges that "the renamed #d-defectors

8  channel *did not exist* until March 3, 2025" and that "*[f]or avoidance of doubt, before March 3, 2025*,"

9  O'Brien did not access it. *Id.* ¶¶96-99. Yet O'Brien attests that he accessed the fake "d-defectors" channel

10 in "**February 2025**," which is before the channel allegedly even existed.  Lloyd Decl. Ex. B ¶27.

11     Deel is entitled to explore the credibility of O'Brien's allegations made under obvious duress by

12 deposing and potentially calling for trial non-party witnesses with knowledge of: the alleged espionage,

13 Rippling's instructions to monitor Slack channels for "Deel," Rippling's coercion of O'Brien, and the

14 resulting devastation of O'Brien's mental health. This would include family members, friends, medical

15 professionals, and co-workers, all located in Ireland and none of whom have any tie to California. *See id.*

16                                              **LEGAL STANDARD**

17     "A party moving to dismiss based on forum non conveniens ["FNC"] bears the burden of showing

18 that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors

19 favors dismissal." *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F.Supp.2d 832, 839 (N.D. Cal.

20 2010) (Breyer, J.). A corporation's choice of forum is given less deference than an individual's as a

21 corporation "can easily handle the difficulties of engaging in litigation abroad." *Summa Res. Holdings

22 LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *4 (N.D. Cal. May 5, 2016) (choice of California forum

23 by "corporation participating in business ventures internationally," was entitled to less deference); *Carey

24 v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (same).

25     Moreover, "a court may reduce the deference it typically accords to a local plaintiff's forum choice

26 based upon the unique circumstances of the case, **such as the pendency of related litigation in the

27 alternative forum** or the plaintiff's presence in that forum." *SPS Techs., LLC v. Briles Aerospace, Inc.*,

28 2020 WL 12740596, at *12-13 (C.D. Cal. Jan. 17, 2020) (dismissing trade secret claims for FNC where

4

1  California company asserted "substantially similar" claims against defendants in pending Canadian

2  litigation). In particular, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by

3  forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws…, the

4  habitual generosity of juries in the United States or in the forum district … the less deference the plaintiff's

5  choice of forum commands." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009).

6  This applies with specific force where a plaintiff's "heavy reliance on RICO as a reason to retain

7  the action here suggests a desire to benefit from whatever *in terrorem* effect that statute has by virtue of

8  the word 'racketeering' and the threat of treble damages." *Flynn v. Nat'l Asset Mgmt. Agency*, 42

9  F.Supp.3d 527, 536-37 (S.D.N.Y. 2014). In such circumstances, courts regularly conclude  that "**the

10  institution of this case in the United States was at least as much a result of forum shopping as it was

11  of any substantial concern with convenience**," and as such  "[t]he degree of deference due to plaintiffs'

12  choice of this forum is limited." *Id.* at 537 (dismissing RICO claims in favor of Ireland).

13  <u>**ARGUMENT**</u>

14  **I.    This Court Can And Should Decide This Motion First**

15  This Court should decide this Motion before Deel's other concurrently-filed motions, as "a district

16  court has discretion to respond at once to a defendant's [FNC] plea, and need not take up first any other

17  threshold objection." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). In

18  so holding, "the Supreme Court offered the lower courts a practical mechanism for resolving a case that

19  would ultimately be dismissed." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083,

20  1088 (9th Cir. 2009). Here, an Irish court "is plainly the more suitable arbiter of the merits of the case,"

21  *Sinochem*, 549 U.S. at 425, as Rippling recognized when filing the Irish Proceedings arising from the

22  same facts. Thus this Court should decide this Motion first in the interest of judicial economy.

23  **II.    The Courts Of Ireland Are An Adequate Alternative Forum**

24  "At the outset of any forum non conveniens inquiry, the court must determine whether there exists

25  an alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981). An "alternative forum

26  is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers

27  a satisfactory remedy." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015). As Rippling attested to

28  the Irish Court, "Deel has already indicated a wish to be joined to these proceedings." Lloyd Decl. Ex. A

¶35. Indeed, Deel is amenable to service of process and will submit to jurisdiction in an Irish court. Wang Decl. ¶10. Thus, Deel must only show that Ireland offers an adequate remedy for Rippling's claims here.

This is a low bar: "a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all," *Ranza*, 793 F.3d at 1077, which occurs only "rare[ly]." *Piper*, 454 U.S. at 254-55 & n.22 (Scottish courts adequate "[a]lthough [plaintiffs] may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly"). A foreign forum must merely provide "some remedy"—not the same remedy. *Ranza*, 793 F.3d at 1077. "The fact that a plaintiff cannot bring the 'exact suit' in the alternative forum that she brought here or that 'United States law offers Plaintiffs a greater potential remedy for their losses' does not render the alternative forum inadequate." *Umeda v. Tesla Inc*., 2020 WL 5653496, at *5 (N.D. Cal. Sept. 23, 2020) (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001)). As one court explained: "It need not be shown that the particular *legal cause of action* is available in the foreign forum. Indeed, such a requirement would be completely nonsensical." *Herd v. Airbus SAS*, 2017 WL 6504162, at *2 (C.D. Cal. Dec. 11, 2017). "Rather, a foreign forum is adequate unless it offers no *practical remedy* for the plaintiffs complained of wrong. Thus, the foreign court must offer a remedy based on the *facts* of the matter at hand." *Id.*

As a preliminary matter, Rippling has conceded Ireland is an adequate alternative forum because Rippling and its Irish subsidiary have "already availed themselves of it by filing their suit against [Deel] in that forum, demonstrating their familiarity with the legal processes there." *Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 775 (C.D. Cal. 2006). The Ninth Circuit disregards a plaintiff's contention that a forum is inadequate where a plaintiff pursues litigation on the same or similar subject matter in that forum. *See Ranza*, 793 F.3d at 1077 (disagreeing with plaintiff that foreign forum was inadequate where plaintiff "herself chose to litigate her discrimination claims before" it); *see also Oxley v. Wyeth Lab'ys, Inc.*, 1992 WL 116308, at *2 (E.D. Pa. May 20, 1992) (finding that pending cases in Ireland against defendant on subject matter suggested an adequate alternative fora). Here, because Rippling is pursuing claims in the Irish Court against Deel premised on the same purported facts alleged in the Complaint, it cannot be heard to argue that Ireland is an inadequate forum. Bredin Decl. ¶¶20-27 (comparing Irish claims brought by Rippling against Deel to Causes of Action asserted in the Complaint).

1    In any case, courts routinely find Irish courts to be "obviously adequate alternative fora" for

2    bringing claims like Rippling's. *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *4,

3    *13-14 (S.D.N.Y. Nov. 29, 2011) (finding Ireland was an "unequivocally adequate fora" for claims

4    asserting, *inter alia*, civil conspiracy and aiding and abetting fraud and breaches of fiduciary duty because

5    Irish courts "recognize claims in tort and contract similar to those asserted here"). Because "**Ireland**

6    **shares with the United States a well developed body of tort law largely derived from our common**

7    **English antecedent ... even the most cursory glance through leading treatises on Irish law quickly**

8    **reveals**" that "Ireland affords civil causes of action for tort damages very much like our own for all or

9    substantially all of the wrongs alleged by" Rippling here. *Flynn*, 42 F.Supp.3d at 536.

10    **RICO/Conspiracy**. Courts routinely hold that "an Irish forum may provide adequate redress for"

11    RICO claims where the "claims rest upon the same or substantially the same allegations as … fraud and

12    prima facie tort claims," because Irish courts allow plaintiffs to "seek the same remedies otherwise

13    available" in U.S. courts. *Princeton Football Partners LLC v. Football Ass'n of Ireland*, 2012 WL

14    2995199, at *5 (D.N.J. July 23, 2012). Courts reject that "Ireland does not provide an adequate forum,

15    essentially because it does not have a counterpart to civil RICO" as "without merit." *Flynn*, 42 F.Supp.3d

16    at 537. The principle that an adequate alternative forum does not require an identical claim exist in the

17    foreign forum "pertains with particular force" to RICO "because few foreign jurisdictions provide such

18    an expansive civil vehicle for parties injured by ongoing criminal schemes" or treble damages, but "most

19    foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil

20    RICO"—including Ireland. *Id.* (granting FNC motion in favor of Ireland for, *inter alia*, RICO, conspiracy

21    and breach of fiduciary duty); *see also* Bredin Decl. ¶22 ("While there is no direct equivalent of RICO

22    under Irish law, Irish law does contain a number of causes of action which provide remedies for fraud,

23    conspiracy, and misappropriation of trade secrets or business opportunities.").

24    **Trade Secrets**. "Irish law has a developed cause of action for breach of confidence in cases

25    involving unauthorized use of private business information" as well as various statutory protections of

26    trade secrets, allowing for recovery of the same remedies. Bredin Decl. ¶23; *see also Koger, Inc. v.*

27    *O'Donnell*, 2007 WL 3232586, at *1, *6 (D.N.J. Oct. 31, 2007) (granting FNC motion as to

28    "misappropriation of confidential information" claim in favor of Ireland).

1    __Tortious Interference With Contract/Aiding And Abetting Breach Of Fiduciary Duty/UCL__.

2    Courts recognize that in Ireland, "[p]laintiffs could assert claims that are similar or analogous to common

3    law claims for breach of fiduciary duty" and "[b]ecause Ireland provides causes of action for aggrieved

4    parties and awards damages to plaintiffs who prove the various elements of the aforementioned causes,

5    Ireland is an adequate forum." *In re Banco Santander*, 732 F.Supp.2d 1305, 1333 (S.D. Fla. 2010); *In re*

6    *Herald*, 2011 WL 5928952, at *4, *13-14 (Irish courts "recognize claims in tort and contract similar to"

7    civil conspiracy and aiding and abetting breaches of fiduciary duty); Bredin Decl. ¶25 (describing duties

8    owed by employees and that "Ireland also recognizes a tort for individuals who encourage employees to

9    take such actions in breach of those duties, and allows for the recovery of compensatory damages for those

10   harmed by the breaches"). Moreover, Ireland recognizes an equivalent tort to tortious interference with

11   contract "which allows for the recovery of compensatory and … other damages." *Id.* ¶24; *see also Koger*,

12   2007 WL 3232586, at *1 (Ireland is adequate forum for "tortious interference with economic advantage"

13   claim). And, like California's UCL, Irish law allows companies to "recover damages incurred as a result

14   of their competitors' unlawful or fraudulent activity." Bredin Decl. ¶¶26, 35.

15   **III.    The Private Interest Factors Weigh In Favor Of Dismissal**

16          The private interest factors are: "(1) relative ease of access to proof; (2) availability of compulsory

17   process to secure the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing

18   witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

19   *In re Air Crash*, 760 F.Supp.2d at 843. Courts also consider "the ability to enforce the judgment." *Vivendi*

20   *SA*, 586 F.3d at 695. "The most convenient forum for the purposes of litigation is one that contains most

21   of the evidence **and gives rise to a plaintiff's cause of action**." *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL

22   1565544, at *5 (N.D. Cal. Apr. 19, 2016). Courts agree "the most important private interest factor is the

23   relative availability of evidence and witnesses." *Summa*, 2016 WL 2593868, at *4.

24          **A.    The Key Witnesses And Evidence In This Action Are In Ireland**

25          "The key inquiry" for this factor "requires assessing the materiality and importance of these

26   witnesses' testimony and determining whether some of these witnesses are critical and beyond the

27   jurisdiction of domestic courts." *Kleiner*, 2016 WL 1565544, at *4 (granting FNC motion where although

28   "a few witnesses with knowledge … are located in California, it is apparent the majority of witnesses,

8

1    including [p]laintiffs themselves, their family members, [and] co-workers … are located in Germany");

2    *Herd*, 2017 WL 6504162, at \*3 (dismissing action for FNC where "[a]dditional key witnesses relevant to

3    Herd's injuries and damages include her (1) family and friends, who can testify on the extent of her injuries

4    and impact of the alleged injuries on her quality of life and ability to work: (2) supervisors and colleagues

5    at Qantas, who can testify about her work responsibilities, employment record, and compensation; and (3)

6    her former employers who can testify about her work experience and compensation," were in Australia).

7          A court in this District dismissed claims for intentional interference with contractual relations and

8    misappropriation of trade secrets asserted by a Swiss company against a Delaware corporation

9    headquartered in Santa Rosa that arose from similar allegations to Rippling's here; plaintiff claimed

10   defendant company lured a former employee to work in its Swiss office and provide the company with

11   plaintiff's trade secrets in violation of his contract. *Medicor AG v. Arterial Vascular Eng'g*, 1997 WL

12   68564, at \*1 (N.D. Cal. Jan. 30, 1997). The court noted "the relevant sources of proof ... are primarily

13   testimonial, and that all necessary witnesses are Swiss, absent a few [of defendant's] officers" and that

14   "[n]on-party Swiss residents, not subject to U.S. jurisdiction, are also necessary witnesses, as [defendant]

15   contends that it must call [plaintiff's] customers to refute the trade secret allegations." *Id*. at \*3.

16         "If these non-parties are unwilling witnesses, only a Swiss court could compel their testimony. If

17   these non-parties are willing witnesses, the cost of travel from Switzerland to California may prove

18   prohibitive." *Id*. The plaintiff insisted the only non-party witness was the employee who illicitly shared

19   the trade secrets, but "concede[d] that in all likelihood this court does not have jurisdiction over" him. *Id*.

20   The court held that since the employee "**is a key figure in several of plaintiff's claims, this factor favors**

21   **dismissal rather than bolsters [plaintiff's] position**." *Id*.

22         The *Summa* decision from this District is instructive. That court found "while there are eight causes

23   of action in the complaint, the most qualitatively important issues are (1) whether [defendant] breached

24   the Agreement; and (2) whether [defendant] perpetrated fraud through oral misrepresentations," which

25   turned on "alleged oral misrepresentations made by [defendant's] employees." *Summa*, 2016 WL

26   2593868, at \*5. Those employees resided in Australia and were no longer employed by defendant. *Id*. The

27   court observed "[t]here is no reason to think that they would voluntarily travel to the United States **to**

28   **testify in a case in which they are accused of lying**," and further "the Court must give sufficient weight

1    to these witnesses because many of the fraud claims turn on the mental state of these three employees,"

2    which meant "depositions would be an inadequate substitute for trial testimony, where the trier of fact

3    could assess the credibility of the witnesses." *Id*. The court concluded that "[t]he fact that these key

4    witnesses reside in Australia and are no longer affiliated with [defendant] means they cannot be compelled

5    to testify in the United States, and therefore weighs in favor of dismissal." *Id*.

6    Here, O'Brien is the key witness in this action. The alleged theft of Rippling's trade secrets Deel

7    purportedly engineered all allegedly took place in Ireland. *Supra* at 1-4. Moreover, the Irish Proceedings

8    confirm there is physical evidence in Ireland key to this action, both in O'Brien's possession (*e.g.*, his

9    mobile phone and computer) and at Rippling's Irish offices on the systems O'Brien purportedly searched.

10   *Id*. There is no allegation any activities occurred (or evidence thereof exists) in California. Which is why

11   O'Brien is not named as a Defendant in this matter, despite being the obvious alleged primary tortfeasor—

12   Rippling knows that he is subject to neither general nor specific personal jurisdiction in California.

13   In the Irish Proceedings, Rippling told the Irish Court O'Brien's employment was "terminated ...

14   for cause" on March 21, 2025. Lloyd Decl. Ex. A ¶22. O'Brien is thus no longer under Rippling's control.

15   Rippling also attested that O'Brien is subject to a "cooperation agreement ... to cooperate with the

16   Plaintiffs in any litigation worldwide in connection with the wrongdoing [that is] the subject matter of

17   these proceedings" *Id*. ¶23. But if O'Brien chooses to flaunt his purported contractual obligation to assist

18   Rippling in "getting to the bottom of the wrongdoing [that is] the subject matter of these proceedings and

19   the US proceedings," *id*. ¶24, this Court has no power to compel him to appear to testify about his role in

20   the alleged espionage on which Rippling's claims are based. An Irish court, however, does. Bredin Decl.

21   ¶6. Since it is unlikely that O'Brien will "voluntarily travel to the United States to testify in a case in which

22   [he is] accused of lying," dismissal is warranted here. *Summa*, 2016 WL 2593868, at *5.

23   More importantly, as detailed above, Deel's interactions with O'Brien indicate Rippling coerced

24   him to conjure a false narrative in the Irish Court ("I am being coerced into saying stuff that is not true to

25   damage Deel"); indeed, Rippling's pressure tactics drove him to seek mental health treatment as a potential

26   suicide risk. *Supra* at 3-4 Deel is entitled to explore the credibility of O'Brien's traumatized allegations

27   by deposing and potentially calling for trial non-party witnesses with knowledge of the alleged espionage,

28   Rippling's coercion of O'Brien, and the resulting effects on O'Brien's mental health. This would include

1  family members, friends, medical professionals, and co-workers, *all located in Ireland*. *See id.*.

2  For example, Rippling told the Irish Court Deel interacted with O'Brien's wife after Rippling

3  began harassing O'Brien to silence him and accuse Deel. Lloyd Decl. Ex. A ¶40. Deel is entitled to elicit

4  testimony from Mrs. O'Brien about that alleged interaction, and O'Brien's mental state after the Rippling

5  coercion. Non-party Irish witnesses cannot be compelled to appear here. As such, "the majority of material

6  witnesses to this case fall squarely within the subpoena powers of [Irish] courts and beyond the subpoena

7  powers" of this Court; thus"[t]hese circumstances favor dismissal." *Kleiner*, 2016 WL 1565544, at *4.

8  Other than conclusorily alleging that Deel's purported conspiracy took place "in the Northern

9  District of California, and elsewhere," Compl. ¶¶111, 114, Rippling does not suggest a connection

10  between this District and the alleged wrongful acts in this action. To the contrary, the Complaint claims

11  O'Brien's "espionage efforts appear to have been directed by the highest levels of Deel's leadership," but

12  the "senior leadership" Rippling identified in the complaint, *id*. ¶¶1, 113, and added as defendants to the

13  Irish Proceedings **admittedly** do not reside in California. Lloyd Decl. Ex. A ¶3(a)-b, (d) (alleging

14  individual defendants resided in Paris, Rome and England, respectively).

15  Indeed, none of Deel's executives and decision-making personnel reside in or work in California,

16  and are instead largely concentrated in countries in Europe and the Middle East. Wang Decl. ¶¶7-8. For

17  that matter, although Deel's current principal place of business is listed as San Francisco, ***Deel does not***

18  ***maintain any actual office in San Francisco***. *Id.* ¶6. Instead, this address is for receiving mail only, and

19  Deel is in the process of changing its it to Texas or Florida in any event. *Id.* Since Deel does not have an

20  actual office in San Francisco, it also does not run its company operations out of California, and Deel does

21  not maintain any electronic or hard copy documents here. *Id.* ¶7. Thus, even accepting Rippling's

22  allegations, none of the purported tortious conduct occurred in California at all. *Id.* ¶9.

23  In any event, it will be far more convenient and inexpensive for the material witnesses Rippling

24  identifies in the Complaint and the Irish Proceedings to travel to Dublin than across the world to this Court

25  *Id.* ¶8. And Deel can produce any electronic records related to this case in Ireland through its Irish entity,

26  Deel Ireland EOR Limited. Wang Decl. ¶¶11-12 (affirming Deel can produce documents in Ireland).

27  Conversely, "obtaining electronic evidence like e-mails" from Deel or Rippling's Irish entities for use in

28  this court "can present technical challenges because of requirements in the [Irish] Data Protection Act

[2018] and the European Union's General Data Protection Regulation." *Dickens v. NXP Semiconductors*, 703 F.Supp.3d 1013, 1021 (N.D. Cal. 2023); Bredin Decl. ¶¶37-39.

Rippling has not identified any other witnesses or evidence that will make it inconvenient for Rippling to litigate in Ireland; rather, Rippling has Irish counsel and are already engaged in litigation in the Irish Proceedings based on "wrongdoing [that is] the subject matter **of [the Irish] proceedings and the US proceedings**" that occurred in their Irish offices. Lloyd Decl. Ex. A ¶24. As Rippling told the Irish Court, "**Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings**." *Id.* ¶34.

Because the parties can "provide all of their evidence in [Ireland] but it will [be] difficult to compel non-parties to produce evidence from [Ireland] (or elsewhere in Europe)" here, "the private interest factors concerning access to relevant evidence tips in favor of dismissal." *In re Air Crash*, 760 F.Supp.2d at 844.

### B.    The Existing Litigation In Ireland

"[T]he Ninth Circuit has made clear that parallel litigation properly may be considered in weighing the private interest factors" for an FNC analysis, and thus "[d]istrict courts within the Ninth Circuit have considered the impact of parallel actions under the ...'all other practical problems'" factor. *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10 (N.D. Cal. Aug. 10, 2021); *see also Lueck*, 236 F.3d at 1147 ("Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal."); *Van Schijndel*, 434 F.Supp.2d at 780 ("Actions pending in a foreign forum should be taken into account … as [FNC] was designed in part to avoid these inconveniences.").

Here, Rippling disclosed its forum-shopping scheme in the Irish Proceedings: to simultaneously pursue an action in this Court "relating, *inter alia*, to the misappropriation of [Rippling's] trade secrets" while pursuing Deel in the Irish Proceedings for claims based on the "original claim against Mr. O'Brien, i.e. the spying and theft of Confidential Information and Trade Secrets." Lloyd Decl. Ex. A ¶27.

Rippling's efforts to carve out the action it is pursuing in this Court as purportedly separate from the Irish Proceedings is of no moment. The *Juniper* court found "substantial overlap between" a California action and an action pending in Canada because "[b]oth will require factual determinations whether the [defendant] made material misrepresentations," rejecting plaintiff's argument that the claims in each action required proof of "different elements." *Juniper*, 2021 WL 3514103, at *11. The court held that "the

1  duplication of cost and effort, as well as the risk of inconsistent rulings, that would result from allowing

2  the two cases to proceed on parallel tracks" "weigh[ed] heavily in favor of dismissal." *Id.* at \*12; *see also*

3  *Mentawai v. Marcotti*, 2016 WL 7496750, at \*5 (C.D. Cal. Mar. 28, 2016) (granting FNC on breach of

4  fiduciary duty and trade secrets claims where parties "have Indonesian counsel, so lack of representation

5  in Indonesia is not an issue," and "there is a related case pending in Indonesia," so "[t]o avoid duplicative

6  proceedings and inconsistent rulings, it is in the interest of justice to dismiss this case so the claims can

7  be brought in … Padang and determined alongside the case currently litigated in Padang").

8      Because Rippling initiated the Irish Proceedings arising from the same "wrongdoing" alleged in

9  the Complaint, this factor also weighs in favor of dismissal. Lloyd Decl. Ex. A ¶27.

10         **C.**    **Rippling Can Enforce A Judgment In Ireland**

11      As a preliminary matter, "any judgment obtained in Ireland against defendants located in the

12  United States would be enforceable in the United States." *Oxley*, 1992 WL 116308, at \*2. Moreover, as

13  Ripping admits, Deel has an Irish entity, so any judgment issued in Ireland can be enforced against Deel

14  there. *See Medicor*, 1997 WL 68564, at \*3 (noting "a Swiss judgment may be enforced against AVE to

15  the extent it has assets there, and AVE has an office in Switzerland" and "[i]f the office does not contain

16  sufficient assets, AVE will also be required to agree to satisfy any judgment awarded"); Lloyd Decl. Ex.

17  A ¶9 (alleging that Alex Bouaziz and Philippe Bouaziz "are directors of the Irish Deel entity[]"). Here,

18  Deel can satisfy any judgment with its Irish assets and if those are insufficient, will agree to satisfy any

19  judgment awarded. Wang Decl. ¶12. The private factors all weigh in favor of dismissal.

20  **IV.**    **The Public Interest Factors Weigh In Favor Of Dismissal**

21      "Courts consider the following public interest factors: (1) local interest of lawsuit; (2) the court's

22  familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5)

23  the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147; *see also In re Air Crash*,

24  760 F.Supp.2d at 845 (same). All these factors are either neutral or weigh in favor of dismissal here.

25      First, "[i]t is beyond dispute that the docket of this Court is heavily congested," *Summa*, 2016 WL

26  2593868, at \*7, and this Court "can ill afford the time and expense of adjudicating a controversy **which**

27  **does not have significant connections to this forum**." *Nai-Chao v. Boeing Co*., 555 F.Supp.9, 19 (N.D.

28  Cal. 1982), *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983). The Northern District is

1  one of the busiest courts in the nation: there were 10,547 new case filings and 12,940 total cases pending

2  during the 12-month period ending December 31, 2024, and the median time from filing to trial for civil

3  cases was 34.5 months.[2] Almost 20% of civil cases in this District are over three years old. *Id.*

4       Courts recognize that "the real issue is not whether a dismissal will reduce a court's congestion

5  but whether a trial may be speedier in another court because of its less crowded docket." *Summa*, 2016

6  WL 2593868, at *7. Here, Irish courts are much less congested and a speedier trial more likely: "cases in

7  Irish Commercial Court proceed expeditiously… in light of tight timelines directed by the court that are,

8  except for extremely compelling reasons, strictly adhered to." Bredin Decl. ¶34. In fact, "in 2022 and 2023

9  a total of 232 cases were admitted to the Commercial Court and that during that same period approximately

10  195 of those cases were resolved." *Id.* Thus, this factor weighs heavily in favor of dismissal.

11       Second, while both parties are Delaware corporations with principal business places here (Compl.

12  ¶¶9-10), that is the limit of California's "local interest" in the dispute. *See Lueck*, 236 F.3d at 1147

13  (observing that while "[t]he citizens of Arizona certainly have an interest in [allegations against]

14  corporations located in their forum ... this interest is slight compared to the time and resources the district

15  court in Arizona would expend if it were to retain jurisdiction"). Indeed, California has even less of an

16  interest than it normally would with respect to Deel's principal place of business (which is moving out of

17  state), since Deel maintains only a mailing address in San Francisco and has no offices, decision-making

18  personnel, or files here. Wang Decl. ¶¶6-7. In any event, the location of the alleged wrong is more

19  important than the location of the parties. *See Ranza*, 793 F.3d at 1078 (holding Netherlands had greater

20  interest in adjudicating alleged discrimination within its borders than U.S.'s interest in remedying

21  discrimination). Ireland's interest in adjudicating business disputes that arise within its borders and

22  concern Irish citizens and Irish companies is significantly stronger than California's interest in the case.

23       As shown above, Rippling's conclusory allegations that events took place "in the Northern District

24  of California, and elsewhere" (Compl. ¶¶111, 114) are undermined by its admissions in the Complaint

25  and in the Irish Proceedings that all the alleged "wrongdoing," key witnesses, and physical evidence are

26  or were in Ireland, not in California. *Supra* at 1-4; *see also* Wang Decl. ¶9. Moreover, both parties also

27

28  _____
[2] *See* U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (December 31, 2024), United States Courts, https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf (last accessed April 23, 2025).

1   have Irish subsidiaries in Dublin. As O'Brien's employer, Rippling Ireland is the Rippling entity with the

2   closest nexus to the case. (Compl. ¶46.) And Rippling successfully added Deel to an action arising from

3   the alleged O'Brien espionage in the Irish Proceedings. *Id*. Thus, Ireland has a much stronger interest in

4   this litigation than California, and this factor weighs in favor of dismissal.

5       Third, "[a]lthough this Court need not definitively determine which law will apply" here "before

6   dismissing on forum non conveniens grounds, the possibility that [Irish] law will apply is an additional

7   factor favoring dismissal." *In re Air Crash*, 760 F.Supp.2d at 847.[3] Rippling told the Irish Court that the

8   "matter" of the Irish Proceedings was "prima facie one of Irish national law." Lloyd Decl. Ex. A ¶45.

9   Moreover, "the similarities between" Irish and "American courts" described above, *supra* §II, "neutralize

10  the factor concerning application of governing law" because "[n]either court would have a problem

11  applying the other jurisdiction's law." *Summa*, 2016 WL 2593868, at *7; *see also Huthart v. News Corp.*,

12  2014 WL 12577175, at *13 (C.D. Cal. May 21, 2014) (finding this factor "neutral " because English courts

13  are accustomed to applying U.S. law). Thus, this factor favors dismissal.

14      Fourth, "[w]here the local interest in a controversy is weak as compared to the alternative forum's

15  interest, courts have held that the burden on local courts and juries, and the related costs, are not justified."

16  *Etaliq, Inc. v. Cisco Sys., Inc.*, 2011 WL 13220445, at *8 (C.D. Cal. July 20, 2011) (collecting cases).

17  Here, as shown above, California's local interest is significantly weaker than Ireland's interest. And "[i]n

18  addition to imposing a burden on the community whose tax dollars would have to support the expense of

19  trying this case and whose time would be taken up by sitting as jurors... [Rippling's] suit would also

20  impede the ability of local litigants to try their cases in this district." *Van Schijndel*, 434 F.Supp.2d at 782.

21  Thus, this public interest factor weighs in favor of dismissal too.

22                                **CONCLUSION**

23      For these reasons, the Court should dismiss the Complaint for forum non conveniens.

24  DATED: April 25, 2025                By: _____*/s/ Jason D. Russell*_____
                                             JASON D. RUSSELL
25                                           *Attorneys for Defendant Deel, Inc.*

    _____
26  [3] Because "the choice of law analysis is only determinative [for FNC] when the case involves a [US]
    statute requiring venue in the United States," this Court need not make a choice of law determination here.
27  *Lueck*, 236 F.3d at 1148. Courts routinely dismiss claims brought under RICO and DTSA for FNC. *See,
    e.g.*, *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (affirming FNC on
28  RICO claim because there "is no arguably applicable law that would end the [FNC] inquiry, so no
    potentially dispositive choice of law determination need have been made"); *SPS Techs.*, 2020 WL
    12740596, at *5 (dismissing DTSA claims for FNC where plaintiff filed trade secret claims in Canada).