LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

*Counsel for Defendant Deel, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, and DOES 1 – 100,<br><br>Defendants. | Case No. 3:25-cv-02576-CRB<br><br>**(1) DEEL'S NOTICE OF MOTION AND MOTION TO DISMISS RIPPLING'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6);**<br><br>**(2) DEEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS; and**<br><br>*Under Separate Cover*:<br><br>**(3) [PROPOSED] ORDER.**<br><br>Compl. Filed:    March 17, 2025<br>Judge:    Hon. Charles R. Breyer<br>Courtroom:    6<br>Hearing Date:    July 25, 2025<br>Hearing Time:    10:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on July 25, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Fracisco California 94102, Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this motion to dismiss (the "Motion") in its entirety the complaint ("Complaint") brought by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling").

This Motion is filed pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). It is based on the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at, or in connection with, the hearing.

## SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Deel provides the provides the following summary of argument. The Motion seeks the dismissal of all seven of Rippling's causes of action for failure to state a claim for the following reasons:

- Rippling's RICO claim fails because it has not plausibly alleged in non-conclusory terms that it has suffered the requisite "concrete financial loss"—which means more than a "mere injury to a valuable intangible property interest"—that was proximately caused by Deel's alleged predicate acts. *See infra* Argument §I.A; *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002); *Mattel, Inc. v. MGA Entertainment, Inc.,* 782 F.Supp.2d 911, 1019-20 (C.D. Cal. 2011); J*ST Distrib., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *7-*8 (C.D. Cal. Mar. 7, 2018).[1]

- Rippling has also not adequately alleged the other remaining elements of its RICO claim, including "conduct," an "enterprise," or a "pattern of racketeering activity." *See infra* Argument §I.B; *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992); *Bredberg v. Middaugh*, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022); *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023).

- Rippling's Section 1962(d) RICO conspiracy claim fails because the "failure to adequately plead

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading.

a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); 18 U.S.C. §1962(d). It also fails because Rippling has not alleged the requisite conspiracy to commit a RICO violation itself, not just a conspiracy to commit predicate acts. *See Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993); *See infra* Argument §II.

- Rippling's federal and state law misappropriation of trade secrets claims fail because Rippling has not sufficiently alleged that Deel accessed or received anything that could be considered a "trade secret" under the law, and in any event Rippling's own allegations show that it did not take the requisite reasonable steps to protect its alleged trade secrets. *See infra* Argument §III; 18 U.S.C. §1839(3)(A); Cal. Civ. Code §3426.1(d)(2); *United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011); *Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F.Supp.3d 888, 901 (N.D. Ill. 2019). For example, Rippling alleges that it makes its supposed "most sensitive" and "most prized" data available to "all" of its employees and contractors on their own personal devices from anywhere in the world, even if that information allegedly has "no connection" and is "completely unrelated to" one's job functions. Compl. ¶¶1, 5, 41, 44, 63-64.

- Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") and should be dismissed, as they are based on the "same nucleus of facts" as Rippling's CUTSA claim. *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir. 2020); Compl. ¶¶155-57, 163, 171; *Infra* Argument §IV.

- Rippling's tortious interference with contract claim fails because it has not adequately alleged plausible facts to satisfy the elements of that claim, and Rippling disclaims any reliance on the only contract that Rippling allegedly even has with Keith O'Brien ("O'Brien")—the alleged confidentiality agreement. *See infra* Argument §V. Rippling admits it has no employment agreements with O'Brien since he was "technically" employed by its separate subsidiary, Rippling Ireland Limited, who is not a plaintiff. Compl. ¶¶46-53.

- Rippling's aiding and abetting breach of fiduciary duty claim fails because O'Brien was not

employed by Rippling. *See infra* Argument §VI; *Slottow v. Am. Cas. Co. of Reading*, 10 F.3d 1355, 1359 (9th Cir. 1993); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170, at *26 (C.D. Cal. Oct. 24, 2003).

- Rippling's unfair competition claim is derivative of the conduct underlying Rippling's other failed claims. Compl. ¶¶169-174. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014). It also fails because Rippling failed to plead a proper remedy that is available under the statute. *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024); *see infra* § VII.

## STATEMENT OF REQUESTED RELIEF

Deel seeks an order dismissing all seven of Rippling's causes of action for failure to state a claim under Federal Rules of Civil Procedure 8(a) and 12(b)(6). Specifically, Deel seeks an order finding that Rippling has failed to state a claim for relief for: (1) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c); (2) Conspiracy to Violate RICO, 18 U.S.C. §1962(d); (3) Misappropriation of trade secrets under Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq.*; (4) Misappropriation of trade secrets under CUTSA, Civil Code §3426, *et seq.*; (5) Tortious interference with contract; (6) Aiding and abetting breach of fiduciary duty; and (7) Unfair competition, Cal. Bus. & Prof. Code § 17200, *et seq*.

DATED: April 25, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Defendant Deel, Inc.*

# **TABLE OF CONTENTS**

**PAGE:**

SUMMARY OF ARGUMENT ................................................................................................. i

STATEMENT OF REQUESTED RELIEF ......................................................................... iii

TABLE OF AUTHORITIES ................................................................................................ v

PRELIMINARY STATEMENT .......................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS ........... 3

ARGUMENT ....................................................................................................................... 5

I.      Rippling's "Racketeering" Claim Exists In Name Only ................................. 6

        A.      Rippling Has Not Alleged A Concrete Financial Injury Or Proximate
                Cause ..................................................................................................... 7

        B.      Rippling Has Not And Cannot Allege The Other Elements Of A RICO
                Claim ..................................................................................................... 8

II.     Rippling Fails To Allege Any Plausible Conspiracy, Let Alone One To Violate
        RICO ................................................................................................................. 10

III.    Rippling Cannot Allege Any Trade Secrets Or That It Maintained Adequate
        Safeguards ........................................................................................................ 10

IV.     Rippling's Other State Law Claims Are Preempted By California's Trade Secret
        Act ..................................................................................................................... 13

V.      Rippling's Interference Claim Disavows Reliance On The Only O'Brien Contract
        It Had ................................................................................................................ 13

VI.     O'Brien Was Admittedly Not Employed By Rippling, So Did Not Owe It A
        Fiduciary Duty ................................................................................................. 14

VII.    Rippling Has Not Alleged A Cognizable UCL Claim ................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
    364 F.Supp.3d 888 (N.D. Ill. 2019) .................................................12

*Allen v. Ocwen Loan Servicing, LLC*,
    No. 18-cv-03734-YGR,
    2019 WL 13254112 (N.D. Cal. June 12, 2019) ........................3, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................5

*Austin B. v. Escondido Union School District*,
    149 Cal.App.4th 860 (2007) .....................................................14

*Baumer v. Pachl*,
    8 F.3d 1341 (9th Cir. 1993) ......................................................10

*Boar, Inc. v. County of Nye*,
    499 F.App'x 713 (9th Cir. 2012) ..............................................6

*Bredberg v. Middaugh*,
    No. 21-35156,
    2022 WL 2662878 (9th Cir. July 11, 2022) ............................9

*Casey v. U.S. Bank Natural Ass'n*,
    127 Cal.App.4th 1138 (2005) ...................................................14

*In re Century Aluminum Co. Securities Litigation*,
    729 F.3d 1104 (9th Cir. 2013) ..................................................2

*Chaset v. Fleer/Skybox International, LP*,
    300 F.3d 1083 (9th Cir. 2002) ..............................................6, 7

*City of Hope National Medical Center v. Genentech, Inc.*,
    43 Cal.4th 375 (2008) ..............................................................14

*Coronavirus Reporter v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023),
    *cert. denied*, 144 S. Ct. 2526 (2024) .................................9, 10

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................6, 9

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ...................................................14

*Gill v. Marsh USA, Inc.*,
    No. 24-cv-02366-RS,
    2024 WL 3463351 (N.D. Cal. July 18, 2024) ..................................................................15

*Government Employees Insurance Co. v. Nealey*,
    262 F.Supp.3d 153 (E.D. Pa. 2017) ...............................................................................11

*Gustafson v. BAC Home Loans Servicing, LP*,
    No. SACV 11-915-JST (ANx),
    2012 WL 7071469 (C.D. Cal. Dec. 20, 2012) ...............................................................10

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989) .........................................................................................................8

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022) ...........................................................................15

*Howard v. America Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ..........................................................................................10

*JST Distribution, LLC v. CNV.com, Inc.*,
    No. CV 17-6264 PSG (MRWx),
    2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) ...........................................................6, 7, 8

*Kang v. PayPal Holdings, Inc.*,
    620 F.Supp.3d 884 (N.D. Cal. 2022) ...............................................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ...................................................................................................15

*Lee v. Luxottica Retail North America, Inc.*,
    65 Cal.App.5th 793 (2021) .............................................................................................15

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F.Supp.2d 911 (C.D. Cal. 2011) .......................................................................7, 8, 11

*Metaxas v. Lee*,
    503 F.Supp.3d 923 (N.D. Cal. 2020) ...............................................................................9

*Michel v. Sumo Logic, Inc.*,
    No. 23-cv-03665-BLF,
    2025 WL 1043545 (N.D. Cal. Apr. 8, 2025) ...................................................................3

*Neilson v. Union Bank of California, N.A.*,
    No. CV 02-06942 MMM (CWx),
    2003 WL 27374170 (C.D. Cal. Oct. 24, 2003) .............................................................14

*Pech v. Doniger*,
    75 Cal.App.5th 443 (2022) .............................................................................................13

*Palantir Techs., Inc. v. Abramowitz,,*
      No. 19-cv-06879-BLF
      2020 WL 9553151 (N.D. Cal. 2020) ...............................................................7

*Pratap v. Wells Fargo Bank, N.A.,*
      63 F.Supp.3d 1101 (N.D. Cal. 2014) .............................................................15

*Religious Technology Center v. Wollersheim,*
      971 F.2d 364 (9th Cir. 1992) ...........................................................................9

*Reves v. Ernst & Young,*
      507 U.S. 170 (1993)...........................................................................................8

*Slottow v. American Casualty Co.,*
      10 F.3d 1355 (9th Cir. 1993) ..........................................................................14

*Smith v. Walgreens Boots Alliance, Inc.,*
      No. 20-cv-05451-CRB,
      2021 WL 3861451 (N.D. Cal. Aug. 30, 2021) .................................................6

*Somers v. Apple, Inc.,*
      729 F.3d 953 (9th Cir. 2013) ..........................................................................15

*United States v. Chung,*
      659 F.3d 815 (9th Cir. 2011) ....................................................................11, 12

*United States v. Turkette,*
      452 U.S. 576 (1981) ...........................................................................................9

*UrthTech LLC v. GOJO Industries, Inc.,*
      No. 22-cv-6727 (PKC),
      2023 WL 4640995 (S.D.N.Y. July 20, 2023) ................................................12

*Vaughan v. Wardhaugh,*
      No. 23-cv-02879-RFL,
      2024 WL 2853972 (N.D. Cal. May 10, 2024) ..................................................9

*In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, & Products Liability Litigation,*
      No. 15-md-02672-CRB,
      2025 WL 1083215 (N.D. Cal. Apr. 10, 2025) ..................................................7

*Wagh v. Metris Direct, Inc.,*
      348 F.3d 1102 (9th Cir. 2003),
      *overruled by Odom v. Microsoft Corporation,*
      486 F.3d 541 (9th Cir. 2007) ............................................................................6

*Wolf v. Superior Court,*
      107 Cal.App.4th 25 (2003) .............................................................................14

*Woodside Investments, Inc. v. Complete Business Solutions Group, Inc.*,
    No. 2:20-cv-00042-JAM-CKD,
    2020 WL 869206 (E.D. Cal. Feb. 21, 2020) ................................................................11

*Zabit v. Brandometry, LLC*,
    540 F.Supp.3d 412 (S.D.N.Y. 2021) .................................................................11, 12

## **<u>STATUTES</u>**

8 U.S.C. §1962 ................................................................................................................6

8 U.S.C. §1964 ................................................................................................................6

18 U.S.C. §1832 ............................................................................................................10

18 U.S.C. §1839 ............................................................................................................10

18 U.S.C. §1961 ..............................................................................................................8

18 U.S.C. §1962 ...............................................................................................6, 10, 12

Cal. Civ. Code §3426.1 ................................................................................................10

**PRELIMINARY STATEMENT**

As the proceedings initiated by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") against Defendant Deel, Inc. ("Deel") in Ireland will show, this case is really about Rippling's abhorrent intimidation tactics toward its own insiders who want to "blow the whistle" on Rippling's extensive illegal business practices and culture of lawlessness. But instead of attempting to rectify its own internal compliance issues, and protecting and encouraging whistleblowers to come forward with their concerns to help make Rippling better and stronger, Rippling always chooses retribution and retaliation.

That is, sadly, the real story of Keith O'Brien ("O'Brien"), the Irish family man and compliance employee of Rippling's Irish subsidiary that Rippling now derisively refers to "D.S."—for "Deel's spy"— throughout its Complaint ("Compl."). As Rippling is forced to admit, the impetus for its actions against O'Brien stemmed from his disclosures used by a journalist in February 2025 of over *two dozen* internal Rippling messages detailing Rippling's illegal facilitation of payments to sanctioned entities in Russia and other jurisdictions, including Belarus, Iran, and Syria. *See* Compl. ¶¶83-87. After O'Brien's alleged disclosures of Rippling's illicit activity, the press reported that since at least March 2024 and continuing through at least December 2024, Rippling had been facilitating payments to sanctioned Russian banks, and in late 2024 "scrambled to delete material from its website that encouraged customers to use [Rippling] if they wanted to send money to Russian contractors, internal correspondence shows."[2]

Once Rippling identified O'Brien as "the source" of this whistleblowing, his punishment began. Compl. ¶¶86-87. Deel believes the Irish proceedings will show that after O'Brien also raised concerns internally, with the press, and with the Central Bank of Ireland, Rippling came down on him with such alarming force that he became deeply concerned for his and his family's safety and wellbeing. He even sought psychiatric medical intervention and considered suicide—before he ultimately accepted payment from Rippling to change his story and disavow events that evidence demonstrably shows are true.

But this left Rippling with a public relations nightmare—with obvious civil and potential criminal consequences. So to divert attention from itself, it sought to scapegoat its larger and more successful competitor, Deel, by concocting a made-for-media fever dream of misleading and implausible allegations

---

[2] *See* https://www.theinformation.com/articles/the-bitter-fintech-feud-that-stretches-from-silicon-valley-to-moscow (reporting that "[i]n March 2024, JPMorgan froze two Rippling payments to a contractor based in Moscow who held an account at a sanctioned Russian bank, according to records of the payment," and that Rippling facilitated further payments in September and December 2024).

about "espionage," "spies," and "honeypots" that lack any kind of nexus to this District. Notably missing from the Complaint are plausible factual allegations supporting Rippling's conclusory assertions that Deel was directing O'Brien, or that Deel ever received or possessed Rippling's so-called "trade secrets."

Accepting Rippling's dubious allegations at face value, Rippling admits that apart from conjecture and "suspicions," Compl. ¶93, the **only act** that Deel ever allegedly directed O'Brien to do was to search a fake Slack messaging channel that Rippling set up on March 3, 2025, called "#d-defectors" that was supposedly filled with embarrassing Deel information, but in reality contained nothing of value and "existed only as bait for Deel." *Id.* ¶¶93-100. *Assuming arguendo* that Deel directed O'Brien to perform this search on March 3, Rippling's own allegations show no commercially sensitive information could have been taken. *Id.* But Rippling's own allegations belie that assumption, because Rippling alleges that O'Brien was searching the word "deel" over 23 times per day on average from November 2024 through March 2025. *Id.* ¶¶3, 56. Because the "bait" "#d-defectors" channel mentions "Deel" at least four times, it was *inevitable* that O'Brien would discover it entirely on his own with no input or direction from Deel. *Id.* ¶95. As such, Rippling's allegations against Deel are insufficient. *In re Century Alum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, … only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.").

Upon this implausible foundation of toothpicks alleging Deel was directing O'Brien's supposed "spying," the bond of Rippling's legal house of cards falls apart whether shaken or stirred by an iota of scrutiny. Laying bare the PR purpose of this action, Rippling could not plead any loss caused by Deel's alleged acts, or adequately allege even one claim. For example, Rippling contends Deel is a criminal "racketeering" organization under RICO, but cannot allege a single element of that claim. *Infra* §§I-II.

Rippling's trade secret claims are also dead on arrival—Rippling fails to allege that Deel ever received anything that could even conceivably *be* a trade secret. But even if it had, Rippling's own allegations show that Rippling did not take reasonable steps to keep the alleged "trade secrets" secret. Rippling, a $13 billion company, kept its "most sensitive" and "most prized" data in unsecured Slack channels accessible by thousands of employees and contractors, even though the information was "completely unrelated" to their job. Compl. ¶¶1, 5, 41, 44, 63-64. This is the digital equivalent of Coca-

2

1  Cola posting its secret formula over the water cooler in the all-employee break room. In fact, that analogy

2  overstates Rippling's security measures: employees have to be on site to use a break room, but Rippling's

3  Slack could be accessed remotely from a foreign contractor's unsecured personal device. *Infra* §III.

4      As detailed herein, as the rest of Rippling's claims suffer from similar deficiencies, *infra* §§IV-

5  VII, the Court should grant this Motion to put an end to Rippling's use of it to stage a media circus.

6  **<u>SUMMARY OF PLAINTIFF'S ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS</u>**[3]

7      Deel was founded in 2019, and has since grown into the leading global human resources, payroll,

8  and compliance workforce software platform. Compl. ¶¶1, 16; *see also* https://www.deel.com/about/. Deel

9  "Bring[s] the World to Work," operating in over 150 countries, by connecting employers with remote

10 workers worldwide. Rippling and Deel were not direct competitors until late 2022, when Rippling decided

11 to expand its U.S. operations into international markets where Deel had started and was much larger.

12 Compl. ¶16. Indeed, Rippling admits it offers "global payroll services" in only "15 countries." *Id.* ¶45.

13     Rippling was co-founded in 2016 by Prasanna Sankar and Parker Conrad, just two months after

14 Conrad was forced to resign as CEO from his previous company—Zenefits—after high-profile

15 investigations uncovered widespread compliance failures related to illegally marketing insurance without

16 authorization and its staff's use of software designed by Conrad personally to "systemically cheat" and

17 circumvent licensing requirements. Compl. ¶16; *see Zenefits Was the Perfect Startup. Then It Self-*

18 *Disrupted*, https://www.bloomberg.com/features/2016-zenefits (reporting that Conrad presided over a

19 corporate "culture of pressuring and bullying employees to cut corners and do the wrong thing"). The SEC

20 found that Conrad made "materially false and misleading statements and omissions to investors" and fined

21 him. *See In the Matter of YourPeople, Inc., dba Zenefits FTW Insurance Services and Parker Conrad*,

22 https://www.sec.gov/files/litigation/admin/2017/33-10429.pdf. Following Conrad's forced departure,

23 Zenefits' new CEO explained that "[t]he fact is that many of our internal processes, controls, and actions

24 around compliance have been inadequate, and some decisions have just been plain wrong ... [a]s a result,

25 _____

26 [3] For this Motion, Deel assumes the truth of Rippling's allegations, but does not "accept as true allegations
that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory,

27 unwarranted deductions of fact, or unreasonable inferences." *Michel v. Sumo Logic, Inc.*, 2025 WL
1043545, at *4 (N.D. Cal. Apr. 8, 2025). Deel includes facts from "[p]ublicly accessible websites and
news articles" that are not reasonably subject to dispute. *See Kang v. PayPal Holdings, Inc.*, 620 F.Supp.3d

28 884, 895 (N.D. Cal. 2022) (Breyer, J.); *Allen v. Ocwen Loan Servicing, LLC*, 2019 WL 13254112, at *5
(N.D. Cal. June 12, 2019) (court "may look beyond the plaintiff's complaint to matters of public record").

1  Parker [Conrad] has resigned." *Zenefits Once Told Employees: No Sex in Stairwells*,

2  https://www.wsj.com/articles/zenefits-once-told-employees-no-sex-in-stairwells-1456183097.

3      In June 2023, O'Brien was hired by Rippling's Irish subsidiary, Rippling Ireland Ltd. to work on

4  "global payroll compliance." *Id.* ¶¶45-46. Rippling admits that in his role as an employee of a subsidiary,

5  O'Brien had full and lawful access to Rippling's "Slack" internal messaging platform, among other

6  systems. *Id.* ¶45. Rippling does not allege O'Brien's access to any of these systems was restricted.

7      Rippling alleges that beginning in November 2024, O'Brien began searching the word "deel" on

8  Rippling's Slack channels approximately 23 times per day on average. *Id.* ¶56. Rippling alleges that it is

9  "common" for Slack users to join channels, but that O'Brien would view the channels only in "preview"

10  mode, which did not give him full access to what was being said on any particular channel. *Id.* ¶58.

11  Rippling artfully alleges that the channels O'Brien previewed "have no connection to his payroll

12  operations job responsibilities," but is deafeningly silent as to whether they related to his "compliance"

13  job responsibilities. ¶63. And although Rippling alleges that O'Brien's "previews" allowed him to

14  "access[] Rippling Slack channels replete with its Sales and Marketing Trade Secrets and proprietary and

15  confidential information," Rippling never provides any specific detail as to what, if any, purported

16  protected trade secret information O'Brien supposedly "downloaded" from his "previews." *See id.* ¶¶64-

17  76. Indeed, the only specific document that Rippling claims O'Brien downloaded was a "slide deck" that

18  contained information that Rippling's **sales team was apparently meant to** *share* **publicly with potential**

19  **customers** to convince them to switch from Deel to Rippling. *Id.* ¶71. Obviously, anyone who was

20  targeted by Rippling's sales team to switch from Deel would freely learn this same "secret" information.

21      Rippling also alleges that O'Brien "accessed and viewed" supposed contact information for certain

22  Rippling employees, which Rippling speculates was otherwise unavailable. *Id.* ¶¶77-82. However, the

23  very screenshot that Rippling uses to prove this point of a Deel employee purportedly contacting a

24  Rippling employee contradicts the notion, as it shows that the Deel employee was *already* a contact of the

25  Rippling employee. *Id.* ¶79 (screenshot showing "Dan is a contact"). Indeed, Rippling's own Complaint

26  concedes "Rippling opened a security investigation into the matter in early February 2025, *but did not*

27  *identify an internal source at that time*," undermining the seriousness of the alleged incursion. *Id.* ¶82.

28      The only other Rippling information that O'Brien reportedly accessed was global payroll

4

1  compliance information—which again, was literally O'Brien's alleged job title—"relating to payments
2  into Russia and other sanctioned jurisdictions," including Belarus, Iran, and Syria. *Id.* ¶¶83-87. Rippling
3  alleges that O'Brien was "the source" of over a dozen internal Rippling Slack messages that he shared
4  with a journalist in February 2025 evidencing these asserted payments. *Id.* Given these facts, the only
5  *plausible* inference from Rippling's own allegations is that O'Brien was taking directions from this
6  journalist, not Deel, to assist in putting together a story on Rippling's alleged violations of international
7  sanctions regimes. *Id.* ¶¶83-87, 90-92. Revealing the true motive, Rippling admits it was *this* purported
8  access and disclosure by O'Brien relating to Rippling's alleged illegal sanctions evasions—and nothing
9  O'Brien did before—that "caused Rippling to immediately open a security investigation." *Id.* ¶84.

10  Which brings one to the crux of the matter—this is not about Deel. **Nowhere in Rippling's
11  sprawling Complaint does it *ever* plausibly allege that O'Brien *ever* provided *any* information to
12  Deel—let alone anything that could plausibly be a trade secret—or allege that Deel ever received or
13  possesses such information.** *See generally* Compl. ¶¶1-174. This is because Rippling knows that never
14  happened. Nor can it complain about a lack of information since it bought and paid for its "spy" and has
15  access to the channels from which the information allegedly was taken. *Id.* ¶2. If there was evidence of
16  Deel's receipt of its "most prized data," *id*. ¶5, Rippling surely would have identified it. Lacking none, it
17  trades detail for bluster, because the true motivation is not righting a wrong, but distracting from its own.

18  Applying a modicum of scrutiny to Rippling's own allegations expose that this is not a real lawsuit.
19  It is a PR stunt orchestrated by Rippling with three goals: (1) distract from Rippling's own significant
20  compliance problems brought to light by O'Brien; (2) smear and discredit the veracity of O'Brien's
21  whistleblowing, without any consideration for the physical and mental toll visited upon him; and (3)
22  tarnish and attempt to destroy the reputation of Rippling's primary and more successful competitor, Deel.

23  ## ARGUMENT

24  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as
25  true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).
26  Assessing if a complaint states a plausible claim is a "context-specific task" requiring the "court to draw
27  on its judicial experience and common sense." *Id.* at 679. The plausibility standard "asks for more than a
28  sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are

1   'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility

2   of entitlement to relief." *Id.* at 678.  A Plaintiff "cannot offer allegations that are 'merely consistent with'

3   [her] favored explanation"; "[s]omething more is needed, such as facts tending to exclude the possibility

4   that [an] alternative explanation is true." *Smith v. Walgreens Boots All., Inc.*, 2021 WL 3861451, at *6

5   (N.D. Cal. Aug. 30, 2021) (Breyer, J.) (granting motion to dismiss); *Eclectic Props. E., LLC v. Marcus &*

6   *Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (affirming dismissal of RICO claims where plaintiffs'

7   allegations were "consistent with Defendants' alleged fraudulent intent, [but they] do[] not tend to exclude

8   a plausible and innocuous alternative explanation" that "comes from Plaintiffs' own complaint").

9   **I.      Rippling's "Racketeering" Claim Exists In Name Only**

10          The best evidence that Rippling is using this suit to attempt to deflect attention from its own illegal

11  conduct brought to light by O'Brien is Rippling's bombastic assertion Deel violated the Racketeer

12  Influenced and Corrupt Organizations Act ("RICO") under 18 §1962(c). Compl. ¶¶110-120. As

13  Rippling's counsel notes on its website, "RICO was intended to combat organized crime, not to provide a

14  federal cause of action and treble damages to every tort plaintiff." *Boar, Inc. v. Cnty. of Nye*, 499 F.App'x

15  713, 715 (9th Cir. 2012) (affirming dismissal of RICO claims); risk-of-rico-claims.pdf (Quinn website).

16          "Given that '[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a

17  thermonuclear device,'" *JST Distrib., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *7 (C.D. Cal. Mar. 7,

18  2018), and the "consequent stigmatizing effect on those named as defendants," courts should "strive to

19  flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 348

20  F.3d 1102, 1108 (9th Cir. 2003); *Allen v. Ocwen Loan Servicing, LLC*, 2019 WL 13254112, at *6 (N.D.

21  Cal. June 12, 2019) (same) (dismissing civil RICO claim with prejudice) (noting the volume with which

22  the "RICO claims here have been brought by plaintiff's counsel" in other cases). Indeed, Rippling's

23  counsel understands the *in terrorem* effect of asserting baseless RICO claims, routinely bringing them in

24  at least *forty* (40) different matters over the years. Filing RICO is simply in their counsel's playbook.

25          For a civil RICO claim, a plaintiff must allege that the defendant engaged in (1) conduct (2) of an

26  enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the

27  defendant caused injury to plaintiff's business or property. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d

28  1083, 1086–87 (9th Cir. 2002) (citing 8 U.S.C. §§1962(c), 1964(c)). The "fifth element includes two

1    related components," which are that a plaintiff must show that (i) "his injury was proximately caused by

2    the [prohibited] conduct" and (ii) "he has suffered a concrete financial loss," which means more than a

3    "mere injury to a valuable intangible property interest." *Id.* "In order to avoid dismissal for failure to state

4    a claim, a [RICO] plaintiff must plead specific facts, not mere conclusory allegations," and "[c]ivil RICO

5    claims based on fraud must be pleaded with particularity pursuant to Rule 9(b)." *JST Distrib.*, 2018 WL

6    6113092, at *6. As shown below, Rippling's RICO claim does not satisfy these elements or standards.

7            **A.**      **<u>Rippling Has Not Alleged A Concrete Financial Injury Or Proximate Cause</u>**

8            The Complaint is silent as to any concrete financial loss, implicitly conceding that Rippling cannot

9    allege Deel has or ever possessed any of Rippling's supposed trade secrets. *Supra* at 4-5. The Complaint

10   alleges in conclusory terms that Rippling has been harmed by the loss of "competitive advantage afforded

11   by its exclusive use" of its trade secrets and that "Rippling has been injured in its business and property,

12   including, but not limited to, loss of trade secrets, drawings, intellectual property, protected business

13   information, equipment, business opportunities, reputation, advantageous business relationships

14   (including customer and employee relationships) and profits." Compl. ¶120; *see also id.* ¶¶108-09. These

15   allegations are inadequate, and nearly identical to dismissed RICO injuries in another matter brought by

16   Rippling's counsel. *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 1019-20 (C.D. Cal.

17   2011) (dismissing RICO claims, finding Mattel did not "establish that it suffered any 'concrete financial

18   loss' as a result of the lost exclusive use or confidentiality of" its alleged trade secrets, as it was "not

19   foreclosed from using its materials, like market research and pricing matrices, which continued to reside

20   on Mattel's servers," and "[t]he loss of 'competitive advantage' that sometimes flows from the deprivation

21   of exclusive use is nothing more than a non-concrete 'injury to a valuable intangible property interest'");

22   *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *8 (N.D. Cal. July 13, 2020) ("Plantir has not

23   sufficiently alleged … that its legal expenditures and investigation costs constitute a RICO injury.").

24           The most Rippling can muster is a single "*potential* Rippling customer" lost due to O'Brien's acts,

25   *id.* ¶108, but its allegations show even that is based on pure conjecture. *Id.* ¶¶74, 108. *See In re:*

26   *Volkswagen 'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2025 WL 1083215, at *2 (N.D.

27   Cal. Apr. 10, 2025) (Breyer, J.) (noting "allegation that potential customers would have chosen certain

28   products absent RICO violations is 'non-compensable'" and "speculative'"). Rippling does not explain

7

1  how this lone supposedly diverted sale was *proximately* caused by Deel's alleged RICO conduct "as

2  opposed to some other factor, such as price, productive effectiveness, familiarity with the seller, or

3  purchasing habits of customer." *JST Distrib.*, 2018 WL 6113092, at *8. Rippling's silence says it all.

4      For RICO liability, Rippling "must show that the predicate acts of racketeering are the proximate,

5  and not just foreseeable, causes of the [alleged] injuries." *Mattel*, 782 F.Supp.2d at 1024. Assertions that

6  do "not differentiate between the injury caused by each counter-defendant's alleged pattern of racketeering

7  acts, but [instead] consider[] the acts of racketeering *en masse*" are insufficient. *Id.* at 1023. Indeed, the

8  entire Complaint is based on Rippling's supposition and "suspicion" that Deel was directing O'Brien to

9  "defraud[] Rippling"—even though its own allegations show it is more plausible that O'Brien was acting

10  alone or at the direction of a reporter—which also fails to satisfy Rule 9(b)'s heightened pleading standard.

11  Compl. ¶115; *supra* at 2, 4-5. Thus, Rippling has not and cannot allege that Deel's nebulous alleged

12  involvement here was the "proximate cause" of Rippling's speculative and conclusory harm. *See Mattel*,

13  782 F.Supp.2d at 1034 (finding competitor could not show that defendant proximately caused "[a]ny lost

14  profits or lost opportunity that [competitor] suffered as a result of the loss of its interest in the exclusive

15  use and confidentiality of" its trade secrets, where "dozens of intervening variables, like market forces,

16  consumer preferences, and MGA's legitimate efforts" resulted in its competitor's success).

17      **B.    Rippling Has Not And Cannot Allege The Other Elements Of A RICO Claim**

18      The RICO claim also fails because Rippling has not adequately alleged the remaining elements.

19      **Conduct.** "[C]onduct" as used in the RICO statute "requires an element of direction." *Reves v.*

20  *Ernst & Young*, 507 U.S. 170, 178 (1993). "[T]o 'participate, directly or indirectly, in the conduct of [an]

21  enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179. Here there are no

22  plausible factual allegations that Deel was "directing" O'Brien and Rippling admits it is relying primarily

23  instead on its own self-serving "suspicion." *Supra* at 2, 4-5. That is woefully short of what is required.

24      **Pattern of Racketeering.** A pattern of racketeering requires at least two related predicate acts that

25  "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492

26  U.S. 229, 239-40 (1989); 18 U.S.C. §1961(5). Rippling has not sufficiently alleged either the requisite

27  predicate acts or continuity. The "predicate acts" Rippling relies upon—wire fraud, conspiracy to commit

28  wire fraud, and theft of trade secrets—all depend on Rippling adequately pleading that O'Brien, at Deel's

8

direction, actually "misappropriated Rippling's *confidential* business information" and accessed and *stole* Rippling's "trade secrets." Compl. ¶¶114-18. As shown above, *supra* at 2, 4-5, and discussed below (*infra* §III), Rippling has not plausibly alleged that (1) O'Brien actually transmitted anything to Deel that could plausibly be considered a "trade secret," (2) Rippling acted reasonably to keep its supposed "most prized" information secret and (3) Deel was directing O'Brien's activity. And in any event, Rippling's predicate act allegations are insufficient "because they lump Defendants together without identifying which Defendants are alleged to have committed which crimes on what occasions." *Vaughan v. Wardhaugh*, 2024 WL 2853972, at *2 (N.D. Cal. May 10, 2024) (dismissing RICO claims); *see* Compl. ¶¶114-18.

Rippling has not alleged the requisite criminal continuity, which can be open- or closed-ended. "[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity." *Metaxas v. Lee*, 503 F.Supp.3d 923, 941 (N.D. Cal. 2020) (dismissing RICO claim). Rippling cannot establish closed-end continuity for the alleged conduct lasting only four months. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [continuity] requirement"; "[w]e have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year"). Nor can Rippling plead open-ended continuity as O'Brien's alleged activity is complete. Compl. ¶¶101-107. *Religious Tech.*, 971 F.2d at 366 (affirming dismissal where no "threat of activity continuing beyond the conclusion" of an alleged scheme).

**Enterprise.** To qualify as a RICO "enterprise," a plaintiff must plead that it is "an entity separate and apart from the pattern of activity in which it engages." *Bredberg v. Middaugh*, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Rippling cannot do so. Apart from "threadbare recitals of a cause of action," *Eclectic Props.*, 751 F.3d at 999, Rippling cannot allege that defendants were "associated together for a common purpose," "evidence of an ongoing organization," or that defendants "function as a continuing unit." *Bredberg*, 2022 WL 2662878, at *1; Compl. ¶111-12. Rather, "[t]he alleged racketeering activity is the only apparent connection among" O'Brien and Deel, which is insufficient to establish the existence of an enterprise. *Bredberg*, 2022 WL 2662878 at *1. To the extent Rippling is alleging that the RICO enterprise comprises Deel and its "senior leadership," Compl. ¶113, this makes a Deel itself "both the enterprise and the RICO defendant, which is

9

1    not permitted in a RICO claim." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023).

2    **II.**     **Rippling Fails To Allege Any Plausible Conspiracy, Let Alone One To Violate RICO**

3       Rippling's Section 1962(d) claim fails because the "failure to adequately plead a substantive

4    violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th

5    Cir. 2000); *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7071469, at *7 (C.D. Cal. Dec. 20,

6    2012) (dismissing RICO conspiracy claim that "rests on the same allegations as" the RICO claim).

7       The RICO conspiracy claim fails for the independent reason that Rippling has not plausibly alleged

8    any conspiracy at all, as Deel's alleged connection to O'Brien is supported only by conclusory allegations

9    and conjecture. *See supra* at 2. It is thus impossible for Rippling to satisfy Section 1962(d), which requires

10    allegations of a *conspiracy to commit a RICO violation itself*, not just a conspiracy to commit the predicate

11    acts. 18 U.S.C. §1962(d); *see also Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[A] defendant

12    who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in

13    violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is

14    the defendant who agrees to the commission of two criminal acts but does not consent to the involvement

15    of an enterprise."). "[M]ere association with the enterprise" is not "an actionable §1962(d) violation," as

16    "[a] RICO conspiracy requires proof of an agreement to violate a substantive RICO provision." *Id.*

17       Here, as noted, the Complaint is bereft of any non-conclusory factual allegations of any agreement

18    at all between O'Brien and Deel, never mind an express agreement to commit a RICO violation itself.

19    **III.**     **Rippling Cannot Allege Any Trade Secrets Or That It Maintained Adequate Safeguards**

20       Rippling has not provided sufficient factual detail to plausibly allege that Deel received anything

21    at all of any commercial value from O'Brien, let alone a specified "trade secret." *Supra* at 4-5. Rippling's

22    illegal activities in evading Russia sanctions cannot be a trade secret. *Alderson v. United States*, 718

23    F.Supp.2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012) ("[T]here simply cannot be

24    any trade secret about ongoing illegality."). Thus, Rippling has not alleged an essential element of its trade

25    secret claims and they fail. 18 U.S.C. §1832(a); Cal. Civ. Code §3426.1(b). But *even if* Rippling *had*

26    plausibly alleged that Deel received Rippling's alleged trade secrets, its claims still should be dismissed

27    as Rippling's allegations prove that it did not take reasonable steps to protect its trade secrets. 18 U.S.C.

28    §1839(3)(A); Cal. Civ. Code §3426.1(d)(2).

Courts will dismiss trade secrets on the pleadings if the plaintiff fails to allege reasonable measures. *See Zabit v. Brandometry, LLC,* 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021) (plaintiffs' own allegations "make plain that they failed to take reasonable measures to protect the secrecy of [trade secrets], which is fatal to their claim."); *Gov't Emps. Ins. Co. v. Nealey*, 262 F.Supp.3d 153, 167 (E.D. Pa. 2017) (dismissing trade secret claims because "the specific facts of this case reveal GEICO did not take reasonable measures to protect the secrecy of its alleged trade secrets."). "**[C]ourts should not expend resources to assist a trade secret owner that did not expend resources to protect its secret**." Milgrim, *Trade Secrets* §1.04.

In assessing reasonableness, courts consider "the [i] **size** and [ii] **character** of the enterprise (large sophisticated enterprises are held to a higher 'secrecy effort' standard)," and [iii] the **sensitivity of the trade secrets in question**. Milgrim, *Trade Secrets* §1.04; Quinto, Trade Secrets: Law and Practice §2.02 ("Courts frequently recite that the reasonableness of a plaintiff's protective measures should be gauged in light of the trade secret's value and the plaintiff's degree of sophistication."). Rippling is **large** and sophisticated. As of April 2024, Rippling was valued at more than $13 billion and had over 3,000 employees.[4] As to character, Rippling is **in the data security field**, presenting itself as an authority on the "easy" measures a company should take to secure its confidential information, offering software for "effortlessly" imposing access controls in Slack "with a few clicks."[5] As to the sensitivity of the information, Rippling asserts the Sales and Marketing Information at issue is Rippling's "**most sensitive**" and "**most prized**" data—apparently even more so than Rippling's own source code. Compl. ¶¶1, 5.

Yet Rippling fails to allege that it took any reasonable measure to preserve the secrecy of this information. ***First***, Rippling failed to mark the Sales and Marketing Information as confidential. That alone is fatal. "[A]n employer's failure to mark documents as confidential or trade secret 'precludes in many cases trade secret protection for those materials.'" *Mattel,* 782 F.Supp.2d at 959.

***Second***, Rippling failed to implement access controls for its Slack. "Controlling… access" to an

---

[4] https://www.rippling.com/blog/how-rippling-runs-it-ensuring-smooth-offboarding; https://www.rippling.com/blog/rippling-announces-series-f-fundraising-and-tender-offer.

[5] *See* https://www.rippling.com/paid-identity-access-management. Rippling also warned data breaches by insiders are "alarmingly common," https://www.rippling.com/blog/access-control-policies, and lectured providing information on a need-to-know basis is "[o]ne of the most fundamental principles of data security." https://www.rippling.com/blog/data-security-management. The Court may consider these websites exist and make certain representations. *See Woodside Invs. v. Complete Bus. Sols. Grp.,* 2020 WL 869206, at *2 (E.D. Cal. Feb. 21, 2020) ("By judicially noticing the [company] website, the Court takes as true that the website exists and makes certain representations about the company to the public.").

1    alleged secret on a "need-to-know basis" is a fundamental measure to preserve the secrecy of information.

2    *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011). Put another way, a company's decision to

3    share information indiscriminately is *per se* unreasonable. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*,

4    364 F.Supp.3d 888, 901 (N.D. Ill. 2019) (no reasonable measures where in "decid[ing] whether to grant

5    someone access" to drive containing trade secrets, company "did not make any meaningful inquiry into

6    whether the person *needed* access to the information," granting access to **36% of employee**s).

7          Here, Rippling's failure to control access is not only unreasonable, it is shocking. Rippling admits

8    that O'Brien—like "***all* of [Rippling's] employees**" and contractors—was freely able to access the Sales

9    and Marketing information via Slack, even though that information allegedly had "no connection" and

10   was "completely unrelated to" his job functions. Compl. ¶¶41, 44, 63-64. Rippling employees and

11   contractors do not even need to be on site to access Slack, nor do they need to use Rippling-issued devices.

12   *Id.* ¶44. Instead, they can access Slack on their personal unsecured devices anywhere in the world. *Id.*

13         Why would Rippling allow *everyone* to access its supposedly secret sales information? Because it

14   wants its employees to "exchange information quickly and efficiently to expeditiously close deals with

15   prospective customers." *Id.* ¶41. In other words, Rippling values sales over security. Thus, it provides far-

16   flung contractors with access to its "most prized" marketing and sales information, even when it is

17   "completely unrelated" to their jobs, *on the off-chance that they might help close a deal a couple minutes*

18   *faster*. Rippling made a choice to prioritize rapid sales execution over robust information security, which

19   it could have implemented "with a few clicks." This is not accidental—it was a calculated tradeoff.

20        ***Third***, Rippling alleges that its workers sign confidentiality agreements; those agreements cannot

21   save their claims given Rippling's lack of reasonable access controls. "Taking steps to protect information

22   through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade

23   secret[]" or suffice as a reasonable measure in these circumstances. *UrthTech LLC v. GOJO Indus., Inc.*,

24   2023 WL 4640995, at *12-13 (S.D.N.Y. July 20, 2023) ("there is no allegation that UrthTech restricted

25   access to the information to certain employees on a need-to-know basis"); *Zabit*, 540 F.Supp.at 424–25

26   ("Courts have been skeptical that a confidentiality agreement alone can 'suggest the existence of trade

27   secret.'… [T]he agreements at issue here are insufficient when considered **in light of the facts**

28   **acknowledged by Plaintiffs, which reflect a failure to take reasonable measures to guard any secrecy**").

1   Setting aside Rippling does not—because it cannot—allege Deel received any of this information,

2   Rippling's Complaint demonstrates it did not act reasonably in these circumstances to preserve the secrecy

3   of its Sales and Marketing Information. Rippling was unquestionably aware of the threat of data breaches

4   posed by malicious insiders, knew it should implement access controls to limit access to its most sensitive

5   information, and had the means to do so with just a few clicks. But Rippling did none of that, instead

6   preferring to provide thousands of individuals across the world with unfettered access to its most prized

7   information—all in the hopes that one day an employee whose job has nothing to do with sales might

8   someday accelerate closing a sales deal. Rippling's approach is the antithesis of reasonable security

9   measures and inconsistent with the letter and spirit of trade secret law. Its claims should be dismissed.

10  **IV.    Rippling's Other State Law Claims Are Preempted By California's Trade Secret Act**

11  "With the exception of contractual claims, CUTSA preempts common law claims that are based

12  on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Prostar Wireless*

13  *Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117

14  (9th Cir. 2020). To the extent that Rippling's tortious interference with contract, aiding and abetting breach

15  of fiduciary duty, and unfair competition claims are based on the same nucleus of facts as Rippling's

16  CUTSA claim, they are preempted and should be dismissed. *Id.*; Compl. ¶¶155-57, 163, 171.

17  **V.     Rippling's Interference Claim Disavows Reliance On The Only O'Brien Contract It Had**

18  Rippling alleges Deel tortiously interfered with O'Brien's "confidentiality agreement" with

19  Rippling. Compl. ¶¶154-59. This claim requires: "(1) the existence of a valid contract between the plaintiff

20  and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts

21  designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption

22  of the contractual relationship; and (5) resulting damage." *Pech v. Doniger*, 75 Cal.App.5th 443, 457

23  (2022). Rippling's allegations are insufficient to establish any of those elements. *Supra* 2, 4-5.

24  For example, Rippling makes a single allegation that "Deel knew or should have known of

25  [O'Brien's] confidentiality agreement," Compl. ¶155, presumably in reference to only the contract

26  Rippling allegedly even executed with O'Brien: the Confidentiality and Intellectual Property Rights

27  Assignment Agreement that was Rippling's admitted sole attempt to "maintain the confidentiality of its

28  Sales and Marketing Trade Secrets," *id.* ¶¶42, 52. But then Rippling *disclaims* any reliance on this

13

1  contract, stating: "[t]his cause of action for tortious interference with [O'Brien's] contract is *not* based on

2  the misappropriation of any Sales and Marketing Trade Secrets." *Id.* ¶159. This admission ends this claim.

3      Instead, Rippling asserts that its claim is based on Deel's alleged "recruitment" of O'Brien to

4  "induc[e] [him] to breach his employment agreements with Rippling." *Id*. But O'Brien *has no employment*

5  *agreements with Rippling*; he "was *technically*" employed Rippling Ireland Limited ("Rippling

6  Ireland")—who is *not* the Plaintiff here. *Id.* ¶¶46-53. Lacking any contract, the claim fails.

7  **VI.  <u>O'Brien Was Admittedly Not Employed By Rippling, So Did Not Owe It A Fiduciary Duty</u>**

8      Rippling's sixth claim asserts that Deel "aided and abetted" O'Brien's alleged breach of his

9  fiduciary duty that he purportedly owed Rippling "[a]s a manager *at Rippling*." Compl. ¶¶160-68.

10  Rippling's own allegations show that no part of Rippling's claim is correct.

11      *First,* O'Brien was *not* employed by Rippling; Rippling concedes that he "was **technically an**

12  **employee of Rippling Ireland**" to "provid[e] services to [Rippling's Ireland's] client, [Rippling]."

13  Compl. ¶46. That "technicality" is fatal here. O'Brien was hired by a separate entity, Rippling Ireland

14  (who is *not* a plaintiff here), to provide certain services to third-party Rippling. This relationship does *not*

15  create a fiduciary duty from O'Brien to his non-employer Rippling. *Slottow v. Am. Cas. Co. of Reading*,

16  10 F.3d 1355, 1359 (9th Cir. 1993) ("employees owe no independent fiduciary duty to a third party with

17  whom they deal on behalf of their employer"); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170,

18  at *26 (C.D. Cal. Oct. 24, 2003) (same, dismissing aiding and abetting breach of fiduciary duty claim);

19  *Wolf v. Superior Ct.*, 107 Cal.App.4th 25, 30 (2003) (same); *City of Hope Nat'l Med. Ctr. v. Genentech,*

20  *Inc.*, 43 Cal.4th 375, 391 (2008) ("[F]iduciary obligations are not necessarily created when one party

21  entrusts valuable intellectual property to another[.]"). Rippling's sixth claim fails for this reason alone.

22      *Second*, Rippling must plausibly allege Deel had "actual knowledge" that O'Brien's "conduct

23  constitute[d] a breach of duty," and that Deel gave "substantial assistance or encouragement" to O'Brien.

24  *See Casey v. U.S. Bank Nat'l. Ass'n.*, 127 Cal.App.4th 1138, 1144-45 (2005). The "actual knowledge"

25  standard "require[s] more than a vague suspicion of wrongdoing," *In re First All. Mortg. Co.*, 471 F.3d

26  977, 993 n.4 (9th Cir. 2006) (citing *Casey*, 127 Cal.App.4th at 1145-49), and "[m]ere knowledge that a

27  tort is being committed and the failure to prevent it does not constitute aiding and abetting[,]" *Austin B. v.*

28  *Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 879 (2007). Here, Rippling has no non-conclusory or

14

1  non-speculative allegations that Deel was directing O'Brien or even knew what Rippling information he

2  was accessing, conceding their claim is based on their "suspicion," which is not enough. *Supra* at 2, 4-5.

3  **VII.    Rippling Has Not Alleged A Cognizable UCL Claim**

4        Rippling's UCL claim is derivative of the conduct underlying Rippling's other doomed claims.

5  Compl. ¶¶169-174. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v.*

6  *Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014).[6] The UCL claim also "fails for the

7  independent reason that it has failed to plead the appropriate remedy." *Gill v. Marsh USA, Inc.*, 2024 WL

8  3463351, at *6 (N.D. Cal. July 18, 2024). Rippling's UCL claim seeks "[d]amages," "punitive damages,"

9  and "attorneys' fees." Compl. ¶¶172-74. But none of that is recoverable under the UCL. *See Korea Supply*

10  *Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("[A]ttorney['s] fees and damages, including

11  punitive damages, are not available under the UCL."); *Somers v. Apple, Inc.*, 729 F.3d 953, 962 n.4 (9th

12  Cir. 2013) ("reject[ing]" argument for assertion of damages under UCL).

13        The UCL permits restitution in limited situations, but not those alleged here. "[C]ompensation for

14  lost business is *not* recoverable in an action against a business competitor under the UCL." *Lee v. Luxottica*

15  *Retail N. Am., Inc.*, 65 Cal.App.5th 793, 804-07 (2021) ("regardless of label ('lost market share,' 'lost

16  business opportunity' or 'lost profits'), a plaintiff cannot recover anticipated but unearned, future income

17  under the UCL in the guise of restitution," as a business does not have "a vested property right in the share

18  of the market that it occupies"). Rippling is Deel's competitor. It claims it lost "the benefits of its own

19  substantial investment and efforts" due to the actions of a third party, O'Brien. Compl. ¶171. This is not

20  proper restitution vis-à-vis Deel. Rippling has not alleged that Deel received anything directly from

21  Rippling or O'Brien. *Supra* at 5. As such, Rippling's UCL claim should be dismissed for this reason too.

22                                    **<u>CONCLUSION</u>**

23        For the foregoing reasons, Deel's Motion should be granted, and all Rippling's claims dismissed.

24  DATED: April 25, 2025                    By:  _____/s/ Jason D. Russell_____

25                                                              JASON D. RUSSELL
                                                          *Attorneys for Defendant Deel, Inc.*

26

27  _____
    [6] *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1094 (N.D. Cal. 2022) (Breyer, J.) (dismissing

28  UCL claim where "the 'conduct' on which Plaintiffs base their claims under all three UCL prongs is the
    same" as plaintiffs' other predicate claims, and "[i]f the predicate claims fail, the UCL claim also fails").