LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Counsel for Defendant Deel, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, and DOES 1-100,<br><br>Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**(1) DEFENDANT DEEL, INC.'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S CALIFORNIA STATE LAW CLAIMS;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; and**<br><br>*Under Separate Cover*:<br><br>**(3) [PROPOSED] ORDER.**<br><br>Compl. Filed:    March 17, 2025<br>Judge:    Hon. Charles R. Breyer<br>Courtroom:    6<br>Hearing Date:    July 25, 2025<br>Hearing Time:    10:00 a.m. |

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that at 10:00 a.m. on July 25, 2025, or as soon thereafter as the matter

4 may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco

5 Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Fracisco California 94102,

6 Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this Special Motion

7 to Strike Plaintiff People Center, Inc. d/b/a Rippling's ("Rippling")'s California state law claims for trade

8 secret misappropriation, tortious interference with contract, aiding and abetting breach of fiduciary duty,

9 and unfair competition (the "anti-SLAPP Motion").

10      This anti-SLAPP Motion is filed to enforce the substantive rights protected pursuant to California's

11 anti-SLAPP statute, Cal. Civ. Proc. Code §425.16, and is based on this Notice of Special Motion and

12 Special Motion to Strike, the attached Memorandum of Points and Authorities, the pleadings and papers

13 filed in this action, all matters of which judicial notice may be taken, and such additional papers and

14 arguments as may be presented at or in connection with the hearing on this Motion.

15

## SUMMARY OF ARGUMENT

16      As required by this Court's Standing Order, Deel provides the following summary of argument.

17 The anti-SLAPP Motion seeks to strike Rippling's California state law claims for trade secret

18 misappropriation, tortious interference with contract, aiding and abetting breach of fiduciary duty, and

19 unfair competition for the following reasons:

20   - Analyzing an anti-SLAPP motion involves a two-step inquiry, with shifting burdens. *Herring*

21     *Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In the first step, the defendant must

22     "must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the

23     defendant's constitutional right to free speech" (oft referred to as "protected activity"). *Id.* "If the

24     defendant satisfies this requirement, the burden then shifts to the plaintiff to establish a reasonable

25     probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.*

26   - Deel has carried its burden on the first step of the anti-SLAPP analysis. *See infra* Argument §I.

27     Rippling alleges that Deel facilitated Keith O'Brien ("O'Brien")'s whistleblowing activities in

28     disclosing evidence of Rippling's illicit sanctions-evasion activities—a matter of public interest—

to the press, and bases its claims for trade secret misappropriation, tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition on this alleged conduct. Compl. ¶¶83-87, 90-92, 140, 154, 157, 160, 163, 169, 171. Conduct in furtherance of "pre-publication or pre-production acts such as investigating" and "newsgathering" for press stories on matters of public interest is protected activity under the United States Constitution and the California Constitution pursuant to California's anti-SLAPP statute. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953-54 (9th Cir. 2013); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422-23 (9th Cir. 2014); *Gunn v. Drage*, 65 F.4th 1109, 1122 (9th Cir. 2023); *Eliott v. Lions Gate Ent. Corp.*, 639 F.Supp.3d 1012, 1023 (C.D. Cal. 2022); *Geiser v. Kuhns*, 13 Cal.5th 1238, 1249-1255 (2022); *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1009, 1017-19 (2021); *Sandlin v. McLaughlin*, 50 Cal.App.5th 805, 825 (2020); *Briganti v. Chow*, 42 Cal.App.5th 504, 509 (2019); Cal. Civ. Proc. Code §§425.16(b)(1), (e)(4).[1]

- Ripping cannot carry its burden on the second step of the anti-SLAPP analysis, because it has not stated a claim for trade secret misappropriation under California law, tortious interference with contract, aiding and abetting breach of fiduciary duty, or unfair competition. *See infra* Argument §II; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

- Rippling's state law misappropriation of trade secrets claim fails because Rippling has not sufficiently alleged that Deel received anything that could be considered a "trade secret" under the law, and in any event Rippling's own allegations show that it did not take the requisite reasonable steps to protect its alleged trade secrets. *See infra* Argument §II.A.; Cal. Civ. Code §3426.1(d)(2); *United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011); *Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F.Supp.3d 888, 901 (N.D. Ill. 2019). For example, Rippling alleges that it makes its supposed "most sensitive" and "most prized data" available to "all" of its employees and contractors on their own personal devices from anywhere in the world, even if that information allegedly has "no connection" and is "completely unrelated to" one's job functions. Compl. ¶¶1, 5, 41, 44, 63-64.

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading.

DEEL'S SPECIAL MOTION TO STRIKE                    CASE NO.: 3:25-CV-02576-CRB

- Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") and should be dismissed, as they are based on the "same nucleus of facts" as Rippling's CUTSA claim. *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir. 2020); Compl. ¶¶155-57, 163, 171; *Infra* Argument §II.B.

- Rippling's tortious interference with contract claim fails because it has not adequately alleged plausible facts to satisfy the elements of that claim, and Rippling disclaims any reliance on the only contract that Rippling allegedly even has with O'Brien—the alleged confidentiality agreement. *See infra* Argument §II.C. Rippling admits it has no employment agreements with O'Brien since he was "technically" employed by its separate subsidiary, Rippling Ireland Limited, who is not a plaintiff. Compl. ¶¶46-53.

- Rippling's aiding and abetting breach of fiduciary duty claim fails because O'Brien was not employed by Rippling. *See infra* Argument §II.D.; *Slottow v. Am. Cas. Co. of Reading*, 10 F.3d 1355, 1359 (9th Cir. 1993); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170, at *26 (C.D. Cal. Oct. 24, 2003).

- Rippling's unfair competition claim is derivative of the conduct underlying Rippling's other failed claims. Compl. ¶¶169-174. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014). It also fails because Rippling failed to plead a proper remedy that is available under the statute. *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024); *see infra* §II.E.

## STATEMENT OF REQUESTED RELIEF

Deel seeks an order striking Rippling's following California state law causes of action pursuant to California's anti-SLAPP statute, as Rippling bases them on Deel's alleged protected conduct and Rippling cannot carry its burden to show a reasonable probability of prevailing on any of them: (1) Misappropriation of trade secrets under CUTSA, Civil Code §3426, *et seq.*; (2) Tortious interference with contract; (3) Aiding and abetting breach of fiduciary duty; and (4) Unfair competition, Cal. Bus. & Prof. Code § 17200, *et seq.*

DATED: April 25, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
          */s/ Jason D. Russell*
          JASON D. RUSSELL
          *Attorneys for Defendant Deel, Inc.*

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................. i

STATEMENT OF REQUESTED RELIEF ............................................. iii

PRELIMINARY STATEMENT .............................................................1

FACTUAL BACKGROUND ..................................................................2

LEGAL STANDARD .............................................................................4

ARGUMENT ..........................................................................................4

    I.    Each Of Rippling's State Law Claims Are Based On Deel's Protected Activity................4

        A.    Rippling's State Law Claims Implicate Deel's Protected Activity ........................5

        B.    All Of Rippling's State Law Claims Arise From Deel's Protected Activity ..........7

    II.    Rippling Cannot Show A Reasonable Likelihood of Success On Its Claims....................8

        A.    Rippling Cannot Allege Any Trade Secrets Or That It Used Adequate Safeguards.................9

            1.    Rippling Has Not Plausibly Alleged That O'Brien Gave Deel Any Trade Secrets.................9

            2.    Rippling Did Not Take Reasonable Steps To Protect Its Alleged Trade Secrets.................10

        B.    Rippling's Other State Law Claims Are Preempted By CUTSA .........................13

        C.    Rippling's Interference Claim Disavows Reliance On The O'Brien Contract It Had.................13

        D.    O'Brien Was Not Employed By Rippling, So Did Not Owe Fiduciary Duties.................14

        E.    Rippling Has Not Alleged A Cognizable UCL Claim ...........................................15

CONCLUSION .....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### CASES

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
    364 F.Supp.3d 888 (N.D. Ill. 2019) ........................................................12

*Alderson v. United States*,
    718 F.Supp.2d 1186 (C.D. Cal. 2010),
    *aff'd*, 686 F.3d 791 (9th Cir. 2012) ......................................................10

*Austin B. v. Escondido Union School District*,
    149 Cal.App.4th 860 (2007) ..................................................................14

*Blue v. Office of Inspector General*,
    23 Cal.App.5th 138 (2018) ......................................................................6

*Bonni v. Street Joseph Health System*,
    11 Cal.5th 995 (2021) ...........................................................................7, 8

*Briganti v. Chow*,
    42 Cal.App.5th 504 (2019) ......................................................................6

*Brodeur v. Atlas Entm't, Inc.*,
    248 Cal.App.4th 665 (2016) ....................................................................6

*Casey v. U.S. Bank Natural Assn.*,
    127 Cal.App.4th 1138 (2005) ................................................................14

*In re Century Aluminum Co. Securities Litigation*,
    729 F.3d 1104 (9th Cir. 2013) ...............................................................10

*City of Hope National Medical Center v. Genentech, Inc.*,
    43 Cal.4th 375 (2008) ...........................................................................14

*CoreCivic, Inc. v. Candide Group*, LLC,
    46 F.4th 1136 (9th Cir. 2022) ...............................................................1, 8

*DC Comics v. Pacific Pictures Corp.*,
    706 F.3d 1009 (9th Cir. 2013) .................................................................1

*Doe v. Gangland Productions, Inc.*,
    730 F.3d 946 (9th Cir. 2013) ...........................................................1, 4, 5

*Eliott v. Lions Gate Entm't Corp.*,
    639 F.Supp.3d 1012 (C.D. Cal. 2022) ...................................................5, 6

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) .......................................................................... 14

*Geiser v. Kuhns*,
    13 Cal.5th 1238 (2022) ................................................................................... 6, 7

*Gill v. Marsh USA, Inc.*,
    No. 24-cv-02366-RS,
    2024 WL 3463351 (N.D. Cal. July 18, 2024).............................................. 15

*Government Employees Insurance Co. v. Nealey*,
    262 F.Supp.3d 153 (E.D. Pa. 2017) ............................................................. 11

*Graham-Sult v. Clainos*,
    756 F.3d 724 (9th Cir. 2014) ........................................................................... 7

*Greater L.A. Agency on Deafness, Inc. v. Cable News Net., Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................... 5

*Gunn v. Drage*,
    65 F.4th 1109 (9th Cir. 2023) ......................................................................... 7

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022) ........................................................ 15

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) .................................................................. 1, 2, 4

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ........................................................................... 1

*Hooked Media Group, Inc. v. Apple Inc.*,
    55 Cal.App.5th 323 (2020) .............................................................................. 8

*Hupp v. Freedom Communications, Inc.*,
    221 Cal.App.4th 398 (2013) ............................................................................ 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ................................................................................... 15

*Lee v. Luxottica Retail North America, Inc.*,
    65 Cal.App.5th 793 (2021) ............................................................................ 15

*Mattel v. MGA Entertainment, Inc.*,
    782 F.Supp.2d 911 (C.D. Cal 2011) ............................................................ 11

*Mogan v. Sacks, Ricketts & Case LLP*,
    No. 21-cv-08431-TSH,
    2022 WL 94927 (N.D. Cal. Jan. 10, 2022),
    *aff'd*, 2023 WL 2983577 (9th Cir. 2023)..................................................... 4

*Name.Space, Inc. v. Inter. Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .................................................................8

*Neilson v. Union Bank of California, N.A.*,
    No. CV 02-06942-MMM (CWx),
    2003 WL 27374170 (C.D. Cal. Oct. 24, 2003).....................................14

*Pech v. Doniger*,
    75 Cal.App.5th 443 (2022) ...................................................................13

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................................4, 8

*Pratap v. Wells Fargo Bank, N.A.*,
    63 F.Supp.3d 1101 (N.D. Cal. 2014) ....................................................15

*Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*,
    360 F.Supp.3d 994 (N.D. Cal. 2018),
    *aff'd*, 815 F.App'x 117 (9th Cir. 2020)...............................................13

*Sandlin v. McLaughlin*,
    50 Cal.App.5th 805 (2020) .....................................................................7

*Slottow v. American Casualties Co.*,
    10 F.3d 1355 (9th Cir. 1993) ................................................................14

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................15

*United States v. Chung*,
    659 F.3d 815 (9th Cir. 2011) ................................................................12

*UrthTech LLC v. GOJO Industries, Inc.*,
    22-cv-6727 (PKC),
    2023 WL 4640995 (S.D.N.Y. July 20, 2023) ......................................12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................1, 4

*Wolf v. Superior Court*,
    107 Cal.App.4th 25 (2003) ...................................................................14

*Woodside Investments, Inc. v. Complete Business Solutions Group, Inc.*,
    No. 2:20-cv-00042-JAM-CKD,
    2020 WL 869206 (E.D. Cal. Feb. 21, 2020).........................................11

*Zabit v. Brandometry, LLC*,
    540 F.Supp.3d 412 (S.D.N.Y. 2021)................................................11, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **STATUTES**

50 U.S.C. §§1705, 4315 ..................................................................................................6

Cal. Bus. & ProF.Code §17200 ......................................................................................8

Cal. Civ. Code §3426.1 ...................................................................................................8

Cal. Civ. Code §3426.1(d)(2) ........................................................................................11

Cal. Civ. Proc. Code §425.16 ................................................................................ *passim*

## **RULES**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................5, 8, 9

## **OTHER AUTHORITIES**

Trade Secrets §1.04.......................................................................................................11

**PRELIMINARY STATEMENT**

After an employee for Rippling's Irish subsidiary leaked over two dozen internal Rippling messages evidencing Rippling's illegal facilitation of payments to sanctioned entities in Russia, Compl. ¶¶83-87, Rippling sought to deflect attention away from itself. One of the ways it chose to do that was to craft a far-fetched "spy" story in a media-friendly federal complaint where it accuses its more successful competitor, Deel, of criminal "racketeering" under the RICO statute and trade secret theft, among other things. While Deel's concurrently filed Rule 12(b)(6) motion to dismiss exposes the complete lack of merit to Rippling's show causes of action, that is not the only significant issue with Rippling's Complaint.

To wit: Rippling appears to be accusing Deel of facilitating O'Brien's whistleblowing activities in disclosing evidence of Rippling's illicit activities to the press, and then seeks to base liability on this conduct. *See* Compl. ¶¶83-87, 90-92 (alleging that Deel facilitated O'Brien's whistleblowing to damage Rippling). The problem for Rippling is that conduct in furtherance of "pre-publication or pre-production acts such as investigating" and "newsgathering" for press stories on matters of public interest is protected activity under the United States Constitution and the California Constitution pursuant to California's "anti-SLAPP" statute. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).[2]

When a plaintiff attempts to base state law tort liability on a defendant's protected activity and free speech rights, California law "provides for a special motion to strike that is intended to stop such lawsuits early in the litigation process." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013). This "special motion to strike" is often referred to as an "anti-SLAPP motion." Cal. Civ. Proc. Code §425.16(b)(1). Under California's anti-SLAPP statute, if a cause of action "aris[es] from any act … in furtherance of [a] person's right of petition or free speech," the court shall strike the cause of action unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.*

Thus, analyzing an anti-SLAPP motion involves a two-step inquiry, with shifting burdens. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In the first step, the defendant

_____
[2] "A [**S**trategic **L**awsuit **A**gainst **P**ublic **P**articipation] is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

The Ninth Circuit has consistently held that California's anti-SLAPP statute applies in federal court, but is limited to state law claims. *See, e.g., CoreCivic, Inc. v. Candide Grp.*, LLC, 46 F.4th 1136, 1138 (9th Cir. 2022) (declining to overrule "our long line of precedents holding that California's anti-SLAPP statute applies in federal court"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims.").

1   must "must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the

2   defendant's constitutional right to free speech" (oft referred to as "protected activity"). *Id.* "If the

3   defendant satisfies this requirement, the burden then shifts to the plaintiff to establish a reasonable

4   probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.*

5       Here, both steps of the anti-SLAPP analysis support striking Rippling's California state law claims

6   for trade secret misappropriation, tortious interference with contract, aiding and abetting breach of

7   fiduciary duty, and unfair competition. Under step one, each of Rippling's state law claims expressly arises

8   from its allegations that Deel facilitated O'Brien's "investigation" and "newsgathering" with reporters to

9   expose Rippling's wrongdoing to the public, which is protected First Amendment activity. *Infra* §I.  And

10  under step two, Rippling cannot carry its burden to show *any* probability, much less a reasonable

11  probability, that it will prevail on any of its claims, since none of them are adequately pled. *Infra* §II.

12  **FACTUAL BACKGROUND**

13      Except as relevant for this anti-SLAPP Motion, since Deel has provided a detailed factual

14  background of the parties' dispute in its concurrently filed forum non conveniens motion and its Rule

15  12(b)(6) motion to dismiss, Deel does not further burden the Court with reproducing those facts here.

16      In June 2023, O'Brien was hired by Rippling's Irish subsidiary, Rippling Ireland Ltd. ("Rippling

17  Ireland"). *Id.* ¶46. O'Brien provided services to Rippling in "global payroll compliance." *Id.* Rippling

18  admits that in his role as an employee of a subsidiary, O'Brien had full and lawful access to Rippling's

19  "Slack" internal messaging platform, among other systems. *Id.* ¶45. Rippling does not allege O'Brien's

20  access to any of these systems was restricted. To the contrary, Rippling admits that O'Brien—like "*all* of

21  [Rippling's] employees" and contractors—was freely able to access Rippling's purported confidential

22  information via Slack, even though that information allegedly had "no connection" and was "completely

23  unrelated to" his job functions. *Id.* ¶¶41, 43, 63-64. Rippling employees and contractors do not even need

24  to be on site to access Slack, nor do they need to use Rippling-issued devices. *Id.* ¶44. Instead, they can

25  access Rippling's Slack on their personal devices from anywhere in the world. *Id.*

26      In February 2025, Rippling identified O'Brien as "the source" of over a dozen "internal Rippling

27  Slack messages" that had been disclosed to an "investigative reporter at *The Information*." *Id.* ¶¶83-87.

28      On February 18, 2025, the journalist "contacted Rippling about a forthcoming article" that he had

2

been working on "for the past few weeks," that "listed eleven assertions regarding supposed issues at Rippling relating to payments into Russia and other sanctioned jurisdictions." *Id.* ¶¶83-84. "Each individual assertion was followed by "internal Rippling Slack messages—thirteen messages in total—that supported or related to the assertion. *Id.* ¶84. The "fact that internal Rippling Slack messages (which are only available to Rippling employees) were in the possession of someone other than a Rippling employee caused Rippling to immediately open a security investigation." *Id.*

Rippling's investigation allegedly showed that "these messages came from thirteen different channels in Rippling's Slack workspace, and that the messages all contained certain searchable keywords ('Russia,' 'Belarus,' 'Iran,' 'Syria,' and/or 'Sanctions')." *Id.* ¶85. Rippling also concluded O'Brien was responsible for the leak, as he "had specifically conducted targeted keyword searches on each of the eleven points raised by *The Information*'s reporter" beginning the week before journalist contacted Rippling about the story. *Id.* ¶¶85-87. Given these facts, the only *plausible* inference from Rippling's own allegations is that O'Brien was taking directions from this journalist, not Deel, to assist in putting together a story on Rippling's alleged violations of international sanctions regimes. *Id.* ¶¶83-87, 90-92.

Notwithstanding its own allegations, Rippling speculates that O'Brien was instructed by Deel to run these searches and make these disclosures to the journalist. *Id.* ¶¶87, 92. On this basis, Rippling alleges that by causing O'Brien to reveal this supposed "confidential information" to the press, Deel is liable to Rippling for (1) unlawful acquisition and disclosure of Rippling's "trade secrets" under the California Uniform Trade Secrets Act ("CUTSA"); (2) efforts to induce O'Brien to breach his "employment agreements" with Rippling Ireland and his supposed duty of loyalty; and (3) unfair competition. *Id.* ¶¶140, 154, 157, 160, 163, 169, 171. Rippling expressly incorporates its allegations about Deel facilitating O'Brien's leak of Rippling messages that appeared in *The Information* article into each of its state law causes of action as a basis for liability. *Id.* ¶¶140, 154, 160, 169.

On February 27, 2025, following O'Brien's disclosures, *The Information* reported that from March 2024 and continuing through at least December 2024, Rippling facilitated payments to sanctioned Russian banks, and in late 2024 "scrambled to delete material from its website that encouraged customers to use [Rippling] if they wanted to send money to Russian contractors, internal correspondence shows."[3]

---

[3]  *See* https://www.theinformation.com/articles/the-bitter-fintech-feud-that-stretches-from-silicon-valley-to-moscow [hereafter *The Information* Article] ( "In March 2024, JPMorgan froze two Rippling payments

*(cont'd)*

**LEGAL STANDARD**

"[C]ourts are directed to construe the anti-SLAPP statute broadly" to effectuate its purpose of protecting First Amendment rights. *Herring*, 8 F.4th at 1155; Cal. Civ. Proc. Code §425.16(a) (same).

As noted above, analyzing an anti-SLAPP motion "involves a two-step inquiry." *Id.* At the first step, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Herring*, 8 F.4th. at 1155. "If the defendant satisfies this requirement, the burden then shifts to the plaintiff" at the second step "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.* "The district court must grant the defendant's motion and dismiss the complaint if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id.*

An anti-SLAPP challenge can come in two forms—a legal challenge or a factual challenge. The step two analysis depends on the form of the challenge. An anti-SLAPP motion that brings a legal challenge contests "only the legal sufficiency of a claim" under step two. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). An anti-SLAPP motion that brings a factual challenge contests "the factual sufficiency of a claim," requiring an evidentiary showing from the plaintiff. *Id.* Here, Deel bring only a ***legal*** challenge under step two of the anti-SLAPP inquiry. Thus, the Court should "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated" under step two of the analysis. *Id.*

**ARGUMENT**

**I.    Each Of Rippling's State Law Claims Are Based On Deel's Protected Activity**

Under step one, Deel "must make an initial prima facie showing that the plaintiff's [claims] arise[] from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110. That burden "is not an onerous one." *Mogan v. Sacks, Ricketts & Case LLP*, 2022 WL 94927, at *11 (N.D. Cal. Jan. 10, 2022). Importantly, "a plaintiff's assertion that its claims are based on defendants' alleged abusive activity does not exempt a lawsuit from anti-SLAPP scrutiny." *Gangland*, 730 F.3d at 954. At step one, "a court does not evaluate whether defendant's conduct was lawful or unlawful." *Id.* Thus, defendants may satisfy "their burden to show that they were engaged in conduct in furtherance of their

to a contractor based in Moscow who held an account at a sanctioned Russian bank, according to records of the payment," and that Rippling facilitated further payments in September and December 2024).

1  right of free speech under the anti-SLAPP statute, even when their conduct was allegedly unlawful." *Id.*

2  Here, Deel has made a prima facie showing that Rippling's state law claims implicate protected

3  activity because they are each based on allegations that Deel facilitated O'Brien's disclosure of Rippling's

4  non-public information to expose its attempts to evade sanctions on Russia and other countries in the

5  press.[4] Exposing corruption through the news media is classic First Amendment activity. And the claims

6  arise out of the protected activity because they each seek to establish liability based on that activity.

7  ## A.    Rippling's State Law Claims Implicate Deel's Protected Activity

8  Protected activity includes "***any*** … conduct [1] in furtherance of the exercise of the constitutional

9  right of petition or the constitutional right of free speech [and 2] in connection with a public issue or an

10  issue of public interest." Cal. Civ. Proc. Code §425.16(e)(4). The conduct targeted in Rippling's

11  Complaint meets both requirements to be considered protected activity.

12  To start, Deel's alleged conduct was "in furtherance of the exercise of the constitutional right of …

13  free speech." *Id.* "An act is in furtherance of the right of free speech if the act helps to advance that right

14  or assists in the exercise of that right." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network,*

15  *Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (*GLAAD*). "For this purpose, it will suffice if the activity is

16  communicative, or evinces an intent to convey a particularized message and in the surrounding

17  circumstances the likelihood was great that the message would be understood by those who viewed it."

18  *Eliott v. Lions Gate Ent. Corp.*, 639 F.Supp.3d 1012, 1023 (C.D. Cal. 2022).

19  Here, the Complaint alleges that Deel, via O'Brien, communicated Rippling's internal information

20  to a reporter to expose Rippling's illegal efforts to evade sanctions on "Russia and other sanctioned

21  jurisdictions" by facilitating unlawful payments to Russian banks. Compl. ¶84. Gathering information and

22  communicating it to members of the press to facilitate publication of that information furthers free speech

23  rights by allowing the speaker to reach a broad, public audience. *See, e.g.*, *GLAAD*, 742 F.3d at 423

24  (holding that conduct relating to "report[ing] the news" was in furtherance of protected activity);

25  *Gangland*, 730 F.3d at 953 (holding that "pre-publication or pre-production acts such as investigating"

---

26  [4] As discussed in Deel's motion to dismiss, Rippling relies entirely on conjecture, speculation, and

27  "suspicions" that Deel was directing O'Brien's actions, Comp. ¶93, and thus its allegations against Deel are implausible. However, that is a consideration for the *second* prong of the anti-SLAPP analysis: whether Rippling has sufficiently stated a claim against Deel. The *first* prong of the anti-SLAPP asks only whether

28  Rippling is basing its claims on alleged acts by Deel that constitute protected activity, so as to bring its claims within the ambit of the anti-SLAPP statute's protection. As shown herein, Rippling is clearly so doing. Deel's first prong analysis thus proceeds under this express caveat.

DEEL'S SPECIAL MOTION TO STRIKE                              CASE NO.: 3:25-CV-02576-CRB

and "newsgathering" information for a documentary was in furtherance of protected activity); *Eliott*, 639 F.Supp.3d at 1024 (same); *see also Hupp v. Freedom Commc'ns, Inc.*, 221 Cal.App.4th 398, 404 (2013) (holding that maintaining a website that could be used to disseminate articles of public interest was in furtherance of protected activity). Thus, Deel's alleged conduct of gathering information about Rippling's sanctions evasions to expose that activity through the press was in furtherance of its free speech rights.

Moreover, Deel's alleged conduct was "in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code §425.16(e)(4). An act is in connection with protected public discussion if: (i) a "public issue or issue of public interest is implicated by the challenged activity"; and (ii) "the functional relationship between the challenged activity and the public conversation about that issue" suggest that "the activity contribute[d] to public discussion of the issue." *Geiser v. Kuhns*, 13 Cal.5th 1238, 1249 (2022). Both parts of the test are satisfied.

*First*, Deel's alleged conduct implicates an issue of "public interest," which is to be construed broadly." *Brodeur v. Atlas Ent., Inc.*, 248 Cal.App.4th 665, 674 (2016). The public interest requirement "is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." *Geiser*, 13 Cal.5th at 1253. Communications regarding illegal conduct readily concern matters of public interest. *See, e.g.*, *Briganti v. Chow*, 42 Cal.App.5th 504, 509 (2019) ("alleged widespread, criminal identity theft is a matter of public interest"); *Blue v. Off. of Inspector Gen.*, 23 Cal.App.5th 138, 156 (2018) (communications about alleged excessive force at prison concerned matter of public interest); *Eliott*, 639 F.Supp.3d at 1024 (allegations of wrongdoing by cult leaders concerned matter of public interest). Defendants "virtually always" successfully connect their speech to an "issue of public interest." *Geiser*, 13 Cal.5th at 1250.

Here, Rippling alleges Deel facilitated disclosure of its non-public information to expose Rippling's efforts to evade sanctions on international pariah states like Russia. Compl. ¶¶83-87. Circumventing sanctions is a felony. *See* 50 U.S.C. §§1705, 4315. The public has a significant interest in knowing whether entities doing business in the United States are complying with federal law, or are attempting to undermine the foreign policy set by the Executive Branch through illicit commerce with sanctioned countries and entities. Accordingly, Deel's alleged speech implicates matters of public interest. *Briganti*, 42 Cal.App.5th at 509; *Blue*, 23 Cal.App.5th at 156; *Eliott*, 639 F.Supp.3d at 1024.

**Second**, Deel's alleged speech contributed to public discussion of this issue. A statement contributes to public discussion if the speaker "participates in or furthers[] some public conversation on the issue, taking into account considerations of context—including audience, speaker, and purpose." *Sandlin v. McLaughlin*, 50 Cal.App.5th 805, 825 (2020). The Court's "inquiry does not turn on a normative evaluation of the substance of the speech," and the Court should not be "concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction." *Id.* "[W]hen the conduct that gives rise to a lawsuit attracts … media attention, it can be an indicator that such conduct was undertaken in connection with a public issue." *Geiser*, 13 Cal.5th at 1255.

Here, Rippling alleges Deel facilitated disclosure of Rippling's sanctions-evading behavior. (Compl. ¶¶83-87.) *The Information* then reported that "JPMorgan froze payments by Rippling to sanctioned banks, including Sberbank, after Rippling discovered it had failed to properly maintain a system blocking payments to the Russian institution," and "Rippling also late last year scrambled to delete material from its website that encouraged customers to use its payment systems if they wanted to send money to Russian contractors."[5] Thus, Deel's purported conduct exposed Rippling's sanctions evasion, and created public discussion and reporting of this issue. Accordingly, Deel's alleged conduct contributed to public discussion of Rippling's illegal conduct. *See Geiser*, 13 Cal.5th at 1255 (holding speech that generated media coverage and attention was in connection with an issue of public concern).

### B.    All Of Rippling's State Law Claims Arise From Deel's Protected Activity

Rippling's claims "aris[e] from" Deel's protected activity. Cal. Civ. Proc. Code §425.16(b)(1). "For purposes of the anti-SLAPP statute, a cause of action arises from conduct that it is based on." *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014). In determining what acts a claim is based on, courts "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1009 (2021). During this analysis, courts must "take [the plaintiff's] pleadings at face value" and "assume [its] complaint means what it says." *Id.* at 1017-19; *Gunn v. Drage*, 65 F.4th 1109, 1122 (9th Cir. 2023) (noting that "Gunn is limited by her complaint").

Rippling asserts state law claims for trade secret misappropriation, tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition ("UCL"). Compl. ¶¶140-74.

---

[5] *See The Information* Article.

1  To prove its trade secret claim, Rippling must establish that Deel improperly acquired, and then used or

2  disclosed, secret economically valuable information. Cal. Civ. Code §3426.1. To prove its tortious

3  interference and fiduciary duty claims, Rippling must prove that Deel induced O'Brien to violate his

4  employment agreement with Rippling and duty of loyalty to Rippling (to the extent Rippling alleged that

5  either of those even exist) by disclosing Rippling's confidential information. *See Name.Space, Inc. v.*

6  *Inter. Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1133 (9th Cir. 2015) (elements of tortious

7  interference); *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 333 (2020) (elements of aiding

8  and abetting breach of fiduciary duty). And to prove its UCL claim, Rippling must prove that the conduct

9  underlying its other claims was unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code §17200.

10  　　　Here, all of Rippling's state law claims arise from Deel's alleged protected activity. Plaintiff

11  alleges Deel induced O'Brien to leak Rippling's supposed trade secrets and confidential information so

12  Deel could expose Rippling's illegal behavior to the press. Compl. ¶¶83-87. Rippling alleges this was: (1)

13  unlawful acquisition and disclosure of Rippling's trade secrets; (2) inducement of O'Brien to breach his

14  employment agreement and duty of loyalty; and (3) unfair competition. *Id.* ¶¶140, 154, 157, 160, 163,

15  169, 171. Indeed, Rippling expressly incorporates its allegations about Deel leaking Rippling information

16  to *The Information* into each of its state law causes of action as a basis for liability. *Id.* ¶¶140, 154, 160,

17  169. Thus, "tak[ing] [Rippling's] pleadings at face value," its Complaint "makes clear that [it] intended

18  [for Deel's protected activity] to have operative effect." *Bonni*, 11 Cal. 5th at 1017-18. Therefore, each of

19  Rippling's state law causes of action "aris[e] from" Deel's alleged protected activity, and Deel has carried

20  its first step burden. Cal. Civ. Proc. Code §425.16(b)(1). The burden then shifts to Rippling on step two.

21  **II.    Rippling Cannot Show A Reasonable Likelihood of Success On Its Claims**

22  　　　As noted above, because Deel brings only a legal challenge under step two of the anti-SLAPP

23  inquiry, the Court should "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider

24  whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834. Thus, the Court "need only

25  determine—applying the 12(b)(6) standard—whether [Rippling] stated a claim for [trade secret

26  misappropriation, tortious interference with contract, aiding & abetting breach of fiduciary duty, and

27  unfair competition] under California law." *See CoreCivic*, 46 F.4th at 1140, 1143.

28  　　　Here, as explained in Deel's concurrently filed motion to dismiss, all seven of Rippling's claims

against Deel fail to state claim for relief under Rule 12(b)(6). Thus, the Court should also grant this anti-SLAPP Motion to strike Rippling's state law claims for trade secret misappropriation, tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition, given that this analysis under step two of the anti-SLAPP test is the same as in Deel's motion to dismiss. For the Court's convenience, Deel also reproduces those arguments as to the state law claims below.

### A. Rippling Cannot Allege Any Trade Secrets Or That It Used Adequate Safeguards

Rippling alleges that Deel misappropriated its trade secrets. Compl. ¶¶140-153. This claim fails because both (1) Rippling has not plausibly alleged Deel directed O'Brien's actions or that Deel received anything at all of any commercial value from O'Brien, let alone a specified "trade secret," and (2) even if it had, Rippling's own allegations show that it has not taken reasonable steps to keep its "secrets" secret.

#### 1. Rippling Has Not Plausibly Alleged That O'Brien Gave Deel Any Trade Secrets

Rippling alleges that beginning in November 2024, O'Brien began searching the word "deel" on Rippling's Slack channels approximately 23 times per day on average. *Id.* ¶56. Rippling alleges that it is "common" for Slack users to join channels, but that O'Brien would view the channels only in "preview" mode, which did not give him full access to anything that was being said on any particular channel. *Id.* ¶58. And although Rippling alleges that O'Brien's "previews" allowed him to "access[] Rippling Slack channels replete with its Sales and Marketing Trade Secrets and proprietary and confidential information," Rippling never provides any specific detail as to what, if any, purported protected trade secret information O'Brien supposedly "downloaded" from his "previews." *See id.* ¶¶64-76. Indeed, the only specific document that Rippling claims O'Brien downloaded was a "slide deck" that contained information that Rippling's ***sales team*** **was apparently meant to *share* publicly with potential customers** to convince them to switch from Deel to Rippling. *Id.* ¶71. Obviously, anyone who was targeted by Rippling's sales team to switch from Deel would freely learn this same "secret" information.

Rippling also alleges that O'Brien "accessed and viewed" supposed contact information for certain Rippling employees, which Rippling speculates was otherwise unavailable. *Id.* ¶¶77-82. However, the very screenshot that Rippling uses to prove this point of a Deel employee purportedly contacting a Rippling employee contradicts the notion, as it shows that the Deel employee was *already* a contact of the Rippling employee. *Id.* ¶79 (screenshot showing "Dan is a contact"). Indeed, Rippling's own Complaint

1    concedes "Rippling opened a security investigation into the matter in early February 2025, *but did not*

2    *identify an internal source at that time*," undermining the seriousness of the alleged incursion. *Id.* ¶82.

3      The only other Rippling information that O'Brien reportedly accessed was global payroll

4    compliance information—which again, was literally O'Brien's alleged job title—"relating to payments

5    into Russia and other sanctioned jurisdictions," including Belarus, Iran, and Syria. *Id.* ¶¶83-87. But it is

6    axiomatic that "there simply cannot be any trade secret about ongoing illegality." *Alderson v. United*

7    *States*, 718 F.Supp.2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012). Indeed, nowhere

8    in Rippling's Complaint does it *ever* plausibly and factually allege O'Brien *ever* provided *any* information

9    that could plausibly be a trade secret to Deel, or allege that Deel ever received or is currently in possession

10   of such information. *See generally Compl.* ¶¶1-174. This is because Rippling knows that never happened.

11     Finally—and setting aside that Rippling has not and cannot plausibly allege that Deel is in

12   possession of Rippling's ostensible "trade secrets"—Rippling admits that apart from conjecture and

13   "suspicions," Compl. ¶93, the **only act** that Deel ever allegedly directed O'Brien to do was to search a

14   fake Slack messaging channel that Rippling set up on March 3, 2025, called "#d-defectors" that was

15   supposedly filled with embarrassing Deel information, but in reality contained nothing of value and

16   "existed only as bait for Deel." *Id.* ¶¶93-100. *Assuming arguendo* that Deel directed O'Brien to perform

17   this search on March 3, Rippling's own allegations show no commercially sensitive information could

18   have been taken. *Id.* But Rippling's own allegations belie that assumption, because Rippling alleges that

19   O'Brien was searching the word "deel" over 23 times per day on average from November 2024 through

20   March 2025. *Id.* ¶¶3, 56. Because the "bait" "#d-defectors" channel mentions "Deel" at least four times,

21   it was *inevitable* that O'Brien would discover it entirely on his own with no input or direction from Deel.

22   *Id.* ¶95. As such, Rippling's allegations against Deel are insufficient. *In re Century Alum Co. Sec. Litig.*,

23   729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which . . .

24   results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored

25   explanation but are also consistent with the alternative explanation.").

26       2. <u>Rippling Did Not Take Reasonable Steps To Protect Its Alleged Trade Secrets</u>

27     Even if Rippling had plausibly alleged that Deel received Rippling's alleged trade secrets, its

28   claims still should be dismissed as Rippling's allegations prove that it did not take reasonable steps to

1    protect its trade secrets—a necessary prerequisite to assert a claim. *See* Cal. Civ. Code §3426.1(d)(2).

2    Courts will dismiss trade secrets on the pleadings if the plaintiff fails to allege reasonable measures.

3    *See Zabit v. Brandometry, LLC,* 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021) (plaintiffs' own allegations

4    "make plain that they failed to take reasonable measures to protect the secrecy of [trade secrets], which is

5    fatal to their claim."); *Gov't Emps. Ins. Co. v. Nealey,* 262 F.Supp.3d 153, 168 (E.D. Pa. 2017) (dismissing

6    trade secret claims because "the specific facts of this case reveal GEICO did not take reasonable measures

7    to protect the secrecy of its alleged trade secrets."). "**[C]ourts should not expend resources to assist a**

8    **trade secret owner that did not expend resources to protect its secret.**" Milgrim, *Trade Secrets* §1.04.

9    In assessing reasonableness, courts consider "the [i] **size** and [ii] **character** of the enterprise (large

10   sophisticated enterprises are held to a higher 'secrecy effort' standard)," and [iii] the **sensitivity of the**

11   **trade secrets in question**. Milgrim, *Trade Secrets* §1.04; Quinto, Trade Secrets: Law and Practice §2.02

12   ("Courts frequently recite that the reasonableness of a plaintiff's protective measures should be gauged in

13   light of the trade secret's value and the plaintiff's degree of sophistication."). Rippling is **large** and

14   sophisticated. As of April 2024, Rippling was valued at more than $13 billion and had over 3,000

15   employees.[6] As to character, Rippling is **in the data security field**, presenting itself as an authority on the

16   "easy" measures a company should take to secure its confidential information, offering software for

17   "effortlessly" imposing access controls in Slack "with a few clicks."[7] As to the sensitivity of the

18   information, Rippling asserts the Sales and Marketing Information at issue is Rippling's "**most sensitive**"

19   and "**most prized**" data—apparently even more so than Rippling's own source code. Compl. ¶¶1, 5.

20   Yet Rippling fails to allege that it took any reasonable measure to preserve the secrecy of this

21   information. ***First***, Rippling failed to mark the Sales and Marketing Information as confidential, which is

22   fatal. "[A]n employer's failure to mark documents as confidential or trade secret precludes in many cases

23   trade secret protection[]." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F.Supp.2d 911, 959 (C.D. Cal 2011).

24   

---

25   [6] https://www.rippling.com/blog/how-rippling-runs-it-ensuring-smooth-offboarding; https://www.rippling.com/blog/rippling-announces-series-f-fundraising-and-tender-offer.

26   [7] *See* https://www.rippling.com/paid-identity-access-management. Rippling also warned data breaches by insiders are "alarmingly common," https://www.rippling.com/blog/access-control-policies, and lectured

27   providing information on a need-to-know basis is "[o]ne of the most fundamental principles of data security." https://www.rippling.com/blog/data-security-management. The Court may consider these

28   websites exist and make certain representations. *See Woodside Invs. v. Complete Bus. Sols. Grp.,* 2020 WL 869206, at *2 (E.D. Cal. Feb. 21, 2020) ("By judicially noticing the [company] website, the Court takes as true that the website exists and makes certain representations about the company to the public.").

1    ***Second***, Rippling failed to implement access controls for its Slack. "[C]ontrolling… access" to an

2    alleged secret on a "need-to-know basis" is a fundamental measure to preserve the secrecy of information.

3    *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011). Put another way, a company's decision to

4    share information indiscriminately is *per se* unreasonable. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*,

5    364 F.Supp.3d 888, 901 (N.D. Ill. 2019) (no reasonable measures where in "decid[ing] whether to grant

6    someone access" to drive containing trade secrets, company "did not make any meaningful inquiry into

7    whether the person *needed* access to the information," granting access to **36% of employee**s).

8    Here, Rippling's failure to control access is not only unreasonable, it is shocking. Rippling admits

9    that O'Brien—like "***all* of [Rippling's] employees**" and contractors—was freely able to access the Sales

10   and Marketing information via Slack, even though that information allegedly had "no connection" and

11   was "completely unrelated to" his job functions. Compl. ¶¶41, 43, 63-64. Rippling employees and

12   contractors do not even need to be on site to access Slack, nor do they need to use Rippling-issued devices.

13   *Id.* ¶44. Instead, they can access Slack on their personal unsecured devices anywhere in the world. *Id.*

14   Why would Rippling allow *everyone* to access its supposedly secret sales information? Because it

15   wants its employees to "exchange information quickly and efficiently to expeditiously close deals with

16   prospective customers." *Id.* ¶41. In other words, Rippling values sales over security. Thus, it provides far-

17   flung contractors with access to its "most prized" marketing and sales information, even when it is

18   "completely unrelated" to their jobs, *on the off-chance that they might help close a deal a couple minutes*

19   *faster*. Rippling made a choice to prioritize rapid sales execution over robust information security, which

20   it could have implemented "with a few clicks." This is not accidental—it was a calculated tradeoff.

21   ***Third***, Rippling alleges that its workers sign confidentiality agreements; those agreements cannot

22   save their claims given Rippling's lack of reasonable access controls. "Taking steps to protect information

23   through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade

24   secret[]" or suffice as a reasonable measure in these circumstances. *UrthTech LLC v. GOJO Indus., Inc.*,

25   2023 WL 4640995, at *12-13 (S.D.N.Y. July 20, 2023) ("there is no allegation that UrthTech restricted

26   access to the information to certain employees on a need-to-know basis"); *Zabit*, 540 F.Supp.3d at 424-

27   25 ("Courts have been skeptical that a confidentiality agreement alone can 'suggest the existence of trade

28   secret.'… [T]he agreements at issue here are insufficient when considered ***in light of the facts***

1    *acknowledged by Plaintiffs, which reflect a failure to take reasonable measures to guard any secrecy*").

2    Setting aside Rippling does not—because it cannot—allege Deel received any of this information,

3    Rippling's Complaint demonstrates it did not act reasonably in these circumstances to preserve the secrecy

4    of its Sales and Marketing Information. Rippling was unquestionably aware of the threat of data breaches

5    posed by malicious insiders, knew it should implement access controls to limit access to its most sensitive

6    information, and had the means to do so with just a few clicks. But Rippling did none of that, instead

7    preferring to provide thousands of individuals across the world with unfettered access to its most prized

8    information—all in the hopes that one day an employee whose job has nothing to do with sales might

9    someday accelerate closing a sales deal. Rippling's approach is the antithesis of reasonable security

10   measures and inconsistent with the letter and spirit of trade secret law. Its claims should be dismissed.

11   **B.    Rippling's Other State Law Claims Are Preempted By CUTSA**

12   "With the exception of contractual claims, CUTSA preempts common law claims that are based

13   on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Prostar Wireless*

14   *Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117

15   (9th Cir. 2020). To the extent that Rippling's tortious interference with contract, aiding and abetting breach

16   of fiduciary duty, and unfair competition claims are based on the same nucleus of facts as Rippling's

17   CUTSA claim, they are preempted and should be dismissed. *Id.*; Compl. ¶¶155-57, 163, 171.

18   **C.    Rippling's Interference Claim Disavows Reliance On The O'Brien Contract It Had**

19   Rippling alleges Deel tortiously interfered with O'Brien's "confidentiality agreement" with

20   Rippling. Compl. ¶¶154-59. This claim requires: "(1) the existence of a valid contract between the plaintiff

21   and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts

22   designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption

23   of the contractual relationship; and (5) resulting damage." *Pech v. Doniger*, 75 Cal.App.5th 443, 457

24   (2022). Rippling's allegations are insufficient to establish any of those elements. *Supra* §II.A.1.

25   For example, Rippling makes a single allegation that "Deel knew or should have known of

26   [O'Brien's] confidentiality agreement," Compl. ¶155, presumably in reference to only the contract

27   Rippling allegedly even executed with O'Brien: the Confidentiality and Intellectual Property Rights

28   Assignment Agreement that was Rippling's admitted sole attempt to "maintain the confidentiality of its

1    Sales and Marketing Trade Secrets," *id.* ¶¶42, 52. But then Rippling *disclaims* any reliance on this

2    contract, stating: "[t]his cause of action for tortious interference with [O'Brien's] contract is *not* based on

3    the misappropriation of any Sales and Marketing Trade Secrets." *Id.* ¶159. This admission ends this claim.

4         Instead, Rippling asserts that its claim is based on Deel's alleged "recruitment" of O'Brien to

5    "induc[e] [him] to breach his employment agreements with Rippling." *Id.* ¶159. But O'Brien *has no*

6    *employment agreements with Rippling*; he "was *technically*" employed Rippling Ireland—who is *not* the

7    Plaintiff here. *Id.* ¶¶46-53. Lacking any contract, the claim fails.

8    ## D.    <u>O'Brien Was Not Employed By Rippling, So Did Not Owe Fiduciary Duties</u>

9         Rippling's sixth claim asserts that Deel "aided and abetted" O'Brien's alleged breach of his

10   fiduciary duty that he purportedly owed Rippling "[a]s a manager *at Rippling.*" Compl. ¶¶160-68.

11   Rippling's own allegations show that no part of Rippling's claim is correct.

12        *First,* O'Brien was *not* employed by Rippling; Rippling concedes that he "was **technically an**

13   **employee of Rippling Ireland**" to "provid[e] services to [Rippling's Ireland's] client, [Rippling]."

14   Compl. ¶46. That "technicality" is fatal here. O'Brien was hired by a separate entity, Rippling Ireland

15   (who is *not* a plaintiff here), to provide certain services to third-party Rippling. This relationship does *not*

16   create a fiduciary duty from O'Brien to his non-employer Rippling. *Slottow v. Am. Cas. Co. of Reading*,

17   10 F.3d 1355, 1359 (9th Cir. 1993) ("employees owe no independent fiduciary duty to a third party with

18   whom they deal on behalf of their employer"); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170,

19   at *26 (C.D. Cal. Oct. 24, 2003) (same, dismissing aiding and abetting breach of fiduciary duty claim);

20   *Wolf v. Super. Ct.*, 107 Cal.App.4th 25, 30 (2003) (same); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,

21   43 Cal.4th 375, 391 (2008) ("[F]iduciary obligations are not necessarily created when one party entrusts

22   valuable intellectual property to another[.]"). Rippling's sixth claim fails for this reason alone.

23        *Second*, Rippling must plausibly allege Deel had "actual knowledge" that O'Brien's "conduct

24   constitute[d] a breach of duty," and that Deel gave "substantial assistance or encouragement" to O'Brien.

25   *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1144-45 (2005). The "actual knowledge"

26   standard "require[s] more than a vague suspicion of wrongdoing," *In re First All. Mortg. Co.*, 471 F.3d

27   977, 993 n.4 (9th Cir. 2006) (citing *Casey*, 127 Cal.App.4th at 1145-49), and "[m]ere knowledge that a

28   tort is being committed and the failure to prevent it does not constitute aiding and abetting[,]" *Austin B. v.*

1  *Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 879 (2007). Here, Rippling has no non-conclusory or

2  non-speculative allegations that Deel was directing O'Brien or even knew what Rippling information he

3  was accessing, conceding their claim is based on their "suspicion," which is not enough. *Supra* §II.A.1.

### E.    Rippling Has Not Alleged A Cognizable UCL Claim

5      Rippling's UCL claim is derivative of the conduct underlying Rippling's other doomed claims.

6  Compl. ¶¶169-174. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v.*

7  *Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014).[8] The UCL claim also "fails for the

8  independent reason that it has failed to plead the appropriate remedy." *Gill v. Marsh USA, Inc.*, 2024 WL

9  3463351, at *6 (N.D. Cal. July 18, 2024). Rippling's UCL claim seeks "[d]amages," "punitive damages,"

10  and "attorneys' fees." Compl. ¶¶172-74. But none of that is recoverable under the UCL. *See Korea Supply*

11  *Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("[A]ttorney['s] fees and damages, including

12  punitive damages, are not available under the UCL[.]"); *Somers v. Apple, Inc.*, 729 F.3d 953, 962 n.4 (9th

13  Cir. 2013) ("reject[ing]" argument for assertion of damages under UCL).

14      The UCL permits restitution in limited situations, but not those alleged here. "[C]ompensation for

15  lost business is *not* recoverable in an action against a business competitor under the UCL." *Lee v. Luxottica*

16  *Retail N. Am., Inc.*, 65 Cal.App.5th 793, 804-07 (2021) ("regardless of label ('lost market share,' 'lost

17  business opportunity' or 'lost profits'), a plaintiff cannot recover anticipated but unearned, future income

18  under the UCL in the guise of restitution," as a business does not have "a vested property right in the share

19  of the market that it occupies"). Rippling is Deel's competitor. It claims it lost "the benefits of its own

20  substantial investment and efforts" due to the actions of a third party, O'Brien. Compl. ¶171. This is not

21  proper restitution vis-à-vis Deel. Rippling has not alleged that Deel received anything directly from

22  Rippling or O'Brien. *Supra* §II.A.1. As such, Rippling's UCL claim should be dismissed too.

### CONCLUSION

24      The Court should strike Rippling's state law claims for trade secret misappropriation, tortious

25  interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition.

26  DATED: April 25, 2025

By: _____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Defendant Deel, Inc.*

---

[8] *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1094 (N.D. Cal. 2022) (Breyer, J.) (dismissing UCL claim where "the 'conduct' on which Plaintiffs base their claims under all three UCL prongs is the same" as plaintiffs' other predicate claims, and "[i]f the predicate claims fail, the UCL claim also fails").

15