*[counsel listed on signature page]*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>        Defendants. | Case No. 3:25-CV-2576 (CRB)<br><br>**RIPPLING AND DEEL'S JOINT CASE MANAGEMENT STATEMENT**<br><br>Compl. Filed: March 17, 2025<br>Am. Compl. Filed: June 5, 2025<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 |

1    Pursuant to the Standing Order for all Judges of the Northern District of California dated

2 November 30, 2023, and Civil Local Rule 16-9, Plaintiff People Center, Inc. d/b/a Rippling

3 ("Rippling") and Defendant Deel, Inc. ("Deel") jointly submit the following joint case management

4 statement.[1] This joint case management statement is not submitted on behalf of the three individual

5 defendants (Alex Bouaziz, Philippe Bouaziz, and Dan Westgarth) that Rippling added to this action

6 last week on June 5, 2025, and who have not been served.

7 **I.    JURISDICTION AND SERVICE**

8    **A.    Rippling's Position**

9    Defendant Deel has been served in this action.  ECF No. 6.  The individual defendants have

10 not yet been served, and counsel for Deel has stated they do not represent the individual defendants

11 and "cannot accept service on their behalf."  ECF No. 58 at 4.

12    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Rippling's

13 claims for (i) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

14 U.S.C. § 1962(c); (ii) conspiracy to violate RICO, 18 U.S.C. § 1962(d); and (iii) misappropriation

15 of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and supplemental

16 jurisdiction pursuant to 28 U.S.C. § 1367 over Rippling's related state law claims for (iv) tortious

17 interference with a contract; (v) aiding and abetting breach of fiduciary duty; and (vi) unfair

18 competition, Cal. Bus. & Prof. Code § 17200, *et seq*.  This Court has personal jurisdiction over Deel

19

---

20 [1]  **Deel's Position**:  Although the Standing Order for all Judges of the Northern District of California
dated November 30, 2023, provides that "except in unusually complex cases, [a joint case
21 management statement] should not exceed ten pages," Rippling sent Deel a 9-page draft of this
statement on the night of June 11 (despite representing to Deel on May 30 that it would send it "next
22 week"), attempting to leave Deel a single page to insert its positions. After receiving Deel's portion
of this joint statement, Rippling spent nearly five (5) hours on the night of filing drafting wholly
23 needless responses to Deel's positions, increasing the length of this document. Deel tried to be as
concise as possible while following the Order's requirements for each component and not
24 prejudicing Deel's rights in completing its portion of this statement. Although the Court has not
ruled on Deel's *ex parte* application at the time of filing this document, and thus Deel will comply
25 with the Court's previously ordered deadline to file this Joint Case Management Statement, Deel's
*ex parte* application to continue the Initial Case Management date is still live.
26 **Rippling's Position**:  As agreed to by the parties, Rippling provided a first draft of the Case
Management Statement to Deel on June 11.  Deel nevertheless declined to engage in a collaborative
27 process, instead relying on an 11th hour Hail Mary attempt to push the deadlines by **four months**.
The mere fact that Deel provided its edits to the Joint Case Management Statement after 5:00pm PT
28 the day it was due confirms what Rippling already knew:  Deel's *ex parte* application was nothing
but a ruse and a bad faith delay tactic.

because as Deel admits below, its principal place of business is in San Francisco, California. This Court further has personal jurisdiction over Deel, as well as over Alex Bouaziz, Philippe Bouaziz, and Dan Westgarth, because Deel and each of these individuals purposely directed their activities to this forum, including by doing business in the forum and committing tortious conduct in this forum, and Rippling's claims in this lawsuit arise out of and relate to those forum-directed activities. Additionally, all three individual defendants are officers of Deel, which is domiciled in San Francisco, and Deel's most recent SEC filing identifies Alex Bouaziz and Philippe Bouaziz as having an address in San Francisco.

Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 because Deel resides in the Northern District of California and a substantial part of the events and omissions giving rise to the claims asserted occurred in this District.

In response to Deel's preview below of its forthcoming renewed motion to dismiss on *forum non conveniens* grounds. Rippling states that, as Deel does not deny, this case is filed by San Francisco-based Rippling, against San Francisco-based Deel and three of its C-level officers, for their role in an enterprise that harmed Rippling in this District including by stealing Rippling's customers in this District. The Irish Proceedings from which Deel quotes below do not involve allegations of a racketeering enterprise to steal trade secrets from Rippling and other competitors which is the subject of this case. Rather, the Irish Proceedings address Deel's scheme to circumvent an Irish court order requiring O'Brien to turn over his mobile phone and devices to an Irish court-appointed solicitor, which Deel, its executives and lawyers responded to by fabricating testimony in Ireland and destroying evidence in Ireland in violation of the Irish court order. *See* ECF No. 48-4 ¶ 33 ("The object of the conspiracy—non-compliance with the Court's Order—and the damage caused by the conspiracy occurred in Ireland.").

Below, Deel spends space in nearly every section of this Joint Statement repeating its argument that venue is improper in this District. For brevity's sake Rippling will not respond each time.

**B.      Deel's Position**

Although Deel has a current listed principal place of business in San Francisco, California, Deel does not maintain any actual office space or physical presence in San Francisco, and instead uses that address for receiving mail only. ECF No. 48-2 ¶¶ 6-9. Deel does not run its actual company operations out of California, Deel's executives and decision-making personnel all reside and work in locations outside of California, and Deel does not maintain any electronic or hard copy documents here. *Id.* Deel is currently and has been in the process of changing its listed principal place of business from California to Texas or Florida. *Id.*

At this time, Deel's counsel of record does not represent and will not be representing the three individual defendants introduced into this action by Rippling on June 5—Deel's CEO Alex Bouaziz, Deel's CFO Philippe Bouaziz, and Deel's COO Dan Westgarth. To Deel's knowledge, none of these three individuals either works in or resides in California, ECF No. 48-2 ¶¶ 6-9, which even Rippling is forced to admit in its amended complaint. ECF No. 57 ¶¶ 17-19, 155; *see also* ECF No. 59 (Rippling repeatedly admitting it does not know the location of any of the individual defendants). In any event, to Deel's knowledge these individuals have not been served in this action.

This action belongs in Ireland. As set forth in Deel's *forum non conveniens* ("FNC") motion directed at Rippling's original complaint, none of the acts Rippling complains of occurred in this District (or California). *See* ECF No. 48. Instead, Rippling's claims against Deel are premised on the Ireland-based activities of an Irish citizen and resident ("O'Brien") employed by Rippling's Irish subsidiary in Dublin, who allegedly communicated with Deel's non-U.S.-based CEO in Ireland. As such, all of the key witnesses with knowledge of O'Brien's alleged "spying" and accompanying evidence would be in Ireland or abroad. Rippling's June 5 amended complaint adds even *more* allegations of conduct that (1) occurred in Ireland (based on an affidavit filed by O'Brien in Ireland) and (2) is already being litigated against Deel in Rippling's Irish proceedings. *See, e.g.*, ECF No. 57 ¶¶ 130-153. All of this is why Rippling represented under oath to the Dublin Commercial High Court in the parallel proceeding that "Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings," that "Ireland is the correct forum to

determine this action against [Deel]," and "the balance of convenience [lies] in favour of trying the case in the Irish courts." ECF No. 48-4 (Decl. of Rippling's ex-General Counsel) ¶¶ 33-34, 45.

## II.    FACTS

### A.    Rippling's Statement of Facts

This case concerns the criminal acts of a corrupt enterprise—comprised of Defendants Alex and Philippe Bouaziz, the company they run, Deel, Deel's COO Dan Westgarth, and several other Deel executives, collaborative outsiders, and groomed employees-turned-corporate-spies from rival firms—to systemically steal and misappropriate confidential business information and trade secrets from Deel's key competitors, including Rippling, to illegally benefit the members of the enterprise. Ripping is so far aware of at least four distinct corporate victims that have been targeted and victimized by Defendants' racketeering conduct.

As to Rippling, Defendants Alex and Philippe Bouaziz led the enterprise to target and steal Rippling's most valuable and sensitive information, including corporate growth roadmaps, product strategies, and sales and marketing strategy regarding existing and prospective information customers, all stolen by infiltrating Rippling's secure internal systems using existing and former Rippling employees.  Deel's CEO Alex Bouaziz directly perpetrated the enterprise's most brazen theft, when he recruited a Rippling employee, Keith O'Brien, to be a "spy" like "James Bond" to steal Rippling's secrets for use by Deel in exchange for approximately €5,000 a month.  Nearly every day for several months, following instructions from Bouaziz, O'Brien accessed and transmitted information to Deel about "Rippling's way of doing things," including Rippling's corporate strategy, customer insights, and "other interesting company information."  Bouaziz directed O'Brien on what to search and steal, including by providing specific search terms for O'Brien to use when secretly combing through Rippling's internal data repositories.  The two communicated using an app called Telegram whose messages automatically disappear after a short period of time.  They used the same app to coordinate payment, overseen by Deel CFO Philippe Bouaziz, and were mostly made through cryptocurrency to leave "no trace."

Through this scheme, Defendants secured Rippling's critical commercial playbooks, including internal product plans, launch strategies, country-by-country pricing models, sales tactics,

and customer data, and it has used this intelligence to undercut Rippling's deals, shortcut product launches, and accelerate Deel's own global expansion at Rippling's expense.

After Ripping successfully executed a trap that confirmed Deel was behind O'Brien's spying, Rippling secured an order from the High Court of Ireland requiring O'Brien to surrender his cell phone for inspection. In response, Alex Bouaziz enlisted other members of the enterprise—two attorneys for Deel, Andrea David Miele and Asif Malik, who instructed O'Brien to destroy his phone, throw the pieces in a river, and buy a new "burner" phone. They further instructed O'Brien to submit knowingly false testimony to regulators and the Irish High Court and suggested he flee to Dubai. After his involvement came to light, Malik evidently relocated to Dubai himself.

Deel's sustained theft of Rippling's trade secrets through Alex Bouaziz's recruited spy is not an isolated event, but is part of a pattern and practice for the Bouaziz Racketeering Enterprise to pursue and steal Rippling's confidential information and trade secrets by corrupting Rippling employees. Rippling has uncovered evidence of two former employees who misappropriated confidential Rippling information and brought it to Deel in connection with offers for hire by Deel.

Unfortunately, Rippling is not the only corporate victim of the Bouaziz Racketeering Enterprise. Rippling has thus far learned of at least four other distinct corporate victims targeted by the enterprise as part of a widespread campaign to steal competitor trade secrets Deel's CFO, Philippe Bouaziz has boasted about these efforts, bragging that Deel has spies at other companies." Rippling has obtained evidence of the enterprise's distribution of the stolen assets for use by Deel. Indeed, whistleblowers reported celebrations at Deel meetings regarding competitor hires and the information they brought with them. Rippling seeks damages for the extensive harm caused by Deel and the Bouaziz Racketeering Enterprise, as well as permanent injunctive relief to bar Deel from any further use of Rippling's most valued work product.

Below, Deel once again makes false accusations about Rippling's "illegal facilitation of payments," but as Deel knows, those claims are based on false statements that Deel itself instructed Mr. O'Brien to make in order to "shift the narrative" away from Deel's spying scheme. Rippling's "spy story" is not "far-fetched" but rather is meticulously corroborated by forensic evidence and

1  confirmed by sworn testimony. Notably, Deel does not deny that its most senior executives recruited

2  and paid a spy to steal Rippling's confidential information and provide it to Deel.

3      **B.      Deel's Statement of Facts.**

4          Deel denies Rippling's desperate and bombastic factual allegations. After an Irish employee

5  for Rippling's Irish subsidiary (O'Brien) leaked over two dozen internal Rippling messages

6  evidencing Rippling's illegal facilitation of payments to sanctioned jurisdictions, Rippling sought

7  to deflect attention away from itself. One of the ways it chose to do that was to craft a far-fetched

8  "spy" story in a media-friendly U.S. complaint where it accuses its "multibillion-dollar" more

9  successful competitor, Deel, of being a "criminal syndicate" engaged in supposed "racketeering"

10 under the RICO statute and "trade secret" theft, among other things. ECF No. 57 ¶ 1.

11         The key witness and primary alleged tortfeasor in this case, O'Brien, was not employed by

12 Rippling. He was employed by Rippling's legally separate Irish subsidiary in Dublin. He is not a

13 party to this case because Rippling knows his conduct and its alleged effects did not occur in

14 California so as to subject him to jurisdiction here. Once Rippling discovered O'Brien's

15 whistleblowing, it began a callous campaign to coerce and intimidate him to change his story, which

16 O'Brien's own contemporaneous emails show (Rippling intentionally omits these from its amended

17 filing, despite including O'Brien's Irish affidavit to which they were originally attached):

18 • "I am being harassed by my now former employer Rippling. Yes I did raise my concerns on

19     the Russia payments internally and indeed with the Central Bank of Ireland via the whistle-

20     blower helpline. I am extremely concerned about by personal safety and … having extreme

21     suicidal thoughts and … have been referred to a psychiatric consultant immediately via

22     hospital."

23 • "I am being pressured to say things that are not true. I am being coerced into saying stuff

24     that is not true to damage Deel."

25 • "I feel they are going at me to damage Deel as I reported the Russia payments."

26 • "[Rippling] are trying their utmost to mentally destroy me and its working. I was told by

27     their representative last week that their [*sic*] is a pathway forward for me. This is all because

28     I reported the illegal sanctioned payments to Russia."

- "I am not sure I will get through this weekend. Its all too much. Rippling are coercing me to say I shared data, no such thing."

*See* ECF No. 48-5 at 113-118. O'Brien reached out to certain Deel employees located abroad while this was happening to alert them to Rippling's scheme and seek their help, which greatly alarmed them. However, when the Deel employees declined to intervene in the dispute between Rippling and O'Brien (despite O'Brien's repeated pleas), O'Brien finally accepted Rippling's "pathway forward." In exchange for an undisclosed financial "termination payment," Rippling's agreement to cover all of O'Brien's legal fees, and O'Brien's execution of an express "cooperation agreement" with Rippling, ECF No. 48-4 ¶¶ 22-23, O'Brien changed his story and pointed the finger at Deel. The question is now who was O'Brien lying to: Deel in his contemporaneous emails, or the Irish Court and public in his Irish affidavit made in clear duress after he accepted payment from Rippling?

Regardless, even accepting Rippling's highly dubious allegations as true, Rippling has already admitted that the information O'Brien supposedly accessed and transmitted to Deel's CEO was available to "all" of Rippling's employees and contractors on their own personal devices from anywhere in the world, even if that information allegedly has "no connection" and is "completely unrelated to" their job functions—despite this purportedly being Rippling's "most sensitive" and "most prized" "trade secret" data. ECF No. 1 ¶¶ 1-6, 41, 44-47, 56-76. In short, by Rippling's own allegations, it did not take reasonable steps to keep its "most prized" "secrets" secret.

## III. LEGAL ISSUES

### A. Rippling's Statement of Legal Issues

Rippling's lawsuit primarily raises the following legal issues:

- Whether Defendants Deel, Alex Bouaziz, and Philippe Bouaziz have violated RICO, in violation of 18 U.S.C. § 1962(c), including by engaging in conduct indictable under 18 U.S.C. §§ 1343, 1346, and 1349 (wire fraud and conspiracy to commit the same), 18 U.S.C. § 1803(a) (obstruction of justice), and 18 U.S.C. § 1832 (theft of trade secrets);

- Whether Defendants have engaged in a conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d);

- Whether Deel has misappropriated Rippling's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*;

- Whether Deel tortiously interfered with O'Brien's contracts with Rippling;

- Whether Deel aided and abetted O'Brien's breaches of his fiduciary duties to Rippling;

- Whether Deel engaged in unfair competition, in violation of California Business & Professions Code § 17200, *et seq.*;

- Rippling's damages, including compensatory damages, exemplary and/or punitive and/or treble damages, interest, costs, and attorneys' fees; and

- Rippling's entitlement to permanent injunctive relief.

**B.      Deel's Statement of Legal Issues**

Deel's responsive motions to Rippling's June 5 amended complaint will be filed by July 11, 2025. At this time, Deel anticipates raising the following legal issues, although Deel reserves the right to raise additional legal issues following further research:

- Whether this action should be stayed or dismissed in favor of proceeding in Ireland under the *forum non conveniens* doctrine;

- If this action is not stayed or dismissed in favor of Ireland, whether Rippling's RICO claim fails because it has failed to plausibly allege the elements of RICO and RICO conspiracy, including by failing to allege in non-conclusory terms that it has suffered the requisite "concrete financial loss"—which means more than a "mere injury to a valuable intangible property interest"—that was proximately caused by Deel's alleged predicate acts. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002); *Mattel, Inc. v. MGA Entertainment, Inc.,* 782 F.Supp.2d 911, 1019-20 (C.D. Cal. 2011); *JST Distrib., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *7-*8 (C.D. Cal. Mar. 7, 2018);

- If this action is not stayed or dismissed in favor of Ireland, whether Rippling's federal trade secret claim fails in light of Rippling's admissions that it makes its supposed "most sensitive" and "most prized" data available to "all" of its employees and

contractors on their own personal devices from anywhere in the world, even if that information allegedly has "no connection" and is "completely unrelated to" their job functions. ECF No. 1 ¶¶ 1-6, 41, 44-47, 56-76;

- If this action is not stayed or dismissed in favor of Ireland, whether Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") and should be dismissed, as they are based on the "same nucleus of facts" as Rippling's now-abandoned CUTSA claim. *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir. 2020);

- If this action is not stayed or dismissed in favor of Ireland, whether Rippling's repeated admission that O'Brien was not in fact a Rippling employee, *e.g.*, ECF No. 57 ¶ 24 n.13, but was instead employed by Rippling's non-party Irish subsidiary, forecloses Rippling's claims for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition;

- If this action is not stayed or dismissed in favor of Ireland, whether Rippling's California state law claims are subject to being stricken under California's anti-SLAPP statute, since Rippling continues to attempt to base liability on Deel's alleged facilitation of disclosures of Rippling's illicit Russian sanctions-evasion activities— a matter of public interest—to the media as part of an alleged "press strategy." *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953-54 (9th Cir. 2013); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422-23 (9th Cir. 2014); ECF No. 57 ¶¶ 113-118.

## IV.    MOTIONS

On April 25, 2025, Deel filed two separate motions to dismiss Rippling's original complaint (ECF No. 1) and a motion to strike.  ECF No. 48 (motion to dismiss for *forum non conveniens*); ECF No. 49 (motion to dismiss for failure to state a claim); ECF No. 50 (motion to strike).

1    On June 5, 2025, Rippling filed an amended complaint, ECF No. 57, which Rippling and

2    Deel agree mooted Deel's pending motions and any related deadlines, *see* ECF No. 54. Deel intends

3    to move to dismiss the amended complaint under Rule 12(b)(6), to move to dismiss or stay this

4    action under the doctrine of *forum non conveniens*, and to file a special motion strike Rippling's

5    California state law claims under California's anti-SLAPP statute, among other likely motions in

6    response to Rippling's amended complaint, and the Court ordered the following briefing schedule

7    (ECF No. 54):

8    • Deel's motions due: July 11, 2025

9    • Rippling's oppositions due: August 8, 2025

10   • Deel's replies due: September 5, 2025

11   • Hearing: September 19, 2025, at 10:00 a.m. by videoconference

12   On June 10, Deel filed an *ex parte* application to extend the deadlines for initial disclosures,

13   the Initial Case Management Conference ("CMC"), and this Initial Case Management Statement.

14   ECF No. 58. Rippling submitted its opposition on June 12. ECF No. 59. It is Deel's position that

15   as of the time of this filing, Deel's *ex parte* application remains pending, and remains live as to

16   continuing the CMC date.

17   Rippling and Deel anticipate potential discovery motions, as necessary, as well as summary

18   judgment motions, and/or motions *in limine*, and possibly *Daubert* motions.

19   **V.    AMENDMENT OF PLEADINGS**

20   Rippling filed its first amended complaint on June 5, 2025. ECF No. 57. Rippling's and

21   Deel's proposed deadlines for further amending the pleadings are included in their respective

22   proposed schedules, in Paragraph 15.

23   **VI.   EVIDENTIARY PRESERVATION**

24   Rippling and Deel certify that they have reviewed the Guidelines Relating to the Discovery

25   of Electronically Stored Information ("ESI") and have met and conferred pursuant to Rule 26(f) of

26   the Federal Rules of Civil Procedure regarding reasonable and proportionate steps taken to preserve

27   relevant evidence.

28

## VII.    DISCLOSURES

Rippling and Deel held a Rule 26(f) Conference on May 30, 2025. Nevertheless, Deel and Rippling disagree as to whether the Conference satisfied their Rule 26(f) obligations.

### A.    Rippling's Position On The Rule 26(f) Conference

Rippling's position is that the Conference satisfied the Rule 26(f) obligations as it did not add any new claims and the three added defendants were each implicated in the underlying facts supporting Rippling's initial complaint.

### B.    Deel's Position On The Rule 26(f) Conference

On the basis of this Conference, Rippling believes that it and Deel have satisfied their Rule 26(f) obligations. As Deel noted in seeking Rippling's stipulation to continue the Rule 26(f) conference so that the parties could discuss Rippling's actual forthcoming operative complaint (since Rippling had not yet filed its amended complaint and did not disclose its anticipated amended allegations or that it intended to add three new parties to the litigation before or at the May 30 Conference), Deel does not believe that the parties have adequately conferred in accordance with Rule 26(f) in regards to Rippling's operative amended complaint.

### C.    Rippling's Position With Respect To Initial Disclosures

Rippling served its Rule 26(a) disclosures on June 13, 2025, as required by this Court's April 2, 2025 order.  ECF No. 40.

### D.    Deel's Position With Respect To Initial Disclosures

Deel objected both before and at the May 30 Conference to making initial disclosures on June 13, 2025, due to Rippling's upcoming amended complaint and because this case belongs in Ireland. Now that Rippling has filed the amended complaint (adding allegations to make this case indistinguishable from the preexisting Irish proceedings Rippling initiated) and added three new parties approximately one week ago on June 5, 2025, Deel believes that initial disclosures are not appropriate at this early stage of the case. *See* Fed. R. Civ. P 26(a)(1)(C). Pursuant to Rule 26(a)(1)(C), Deel now objects to making initial disclosures at this time. *Id.* Subject to this caveat and objection, Deel also served Rule 26(a) disclosures on June 13, 2025.

## VIII. DISCOVERY

On May 30, 2025, Rippling served its First Set of Interrogatories and First Set of Requests for Production on Deel. The parties have not yet conducted any other discovery in this action.

Rippling and Deel are negotiating an ESI order that will govern discovery of electronically stored information in this action, which incorporates an order pursuant to Rule 502(d) of the Federal Rules of Evidence. Rippling and Deel are also negotiating a proposed protective order to govern the treatment of confidential information in this action.

### A. Rippling's Position On Discovery

Given the complexity of this case and the far-reaching nature of Defendants' wrongdoing, Rippling proposes the following discovery limits applicable to each side (Rippling being one side, and Defendants being the other side):

- Fifty interrogatories per side
- 200 hours of fact depositions per side

Deel's proposed limitations are a clear attempt to limit Rippling's ability to gather the evidence that Defendants know will expose the full scope of their wrongdoing. Deel proposes, for example, that Rippling be limited to only seven depositions. Rippling will depose the three Individual Defendants and depose Deel under Rule 30(b)(6), meaning under Deel's proposal, Rippling would be left with only three depositions to cover current employees of Deel, former employees of Deel, and the numerous non-Deel individuals and companies named in Rippling's First Amended Complaint as contributing to the racketeering enterprise.

### B. Deel's Position On Discovery

Deel believes that it will likely object to Rippling's discovery requests. Starting on June 6, 2025, Rippling has now served at least seven (7) different third party subpoenas (all of them listing a Delaware place of compliance, further showcasing California's lack of connection here), including on a plaintiff in a different trade secret dispute pending in Delaware who recently lost a motion for a preliminary injunction and is also represented by Rippling's counsel of record, Quinn Emanuel.

Deel disagrees with Rippling's proposed significant deviation of the default discovery limits under the Federal Rules and believes that, if this action is not stayed or dismissed in favor of Ireland,

the parties should follow the default limits set by the Federal Rules of Civil Procedure of 25 interrogatories per side (Rippling being one side, and Deel being the other side) under Rule 33(a)(1) and 10 depositions of up to 7 hours each per side (same) under Rule 30(a)(2)(A)(i) and (d)(1).

### C.    Deel's Additional Statement About Ireland

Notwithstanding the above, it is Deel's belief that this matter should be litigated in Ireland, and that Rippling is improperly using this action to seek discovery in the United States for use in the ongoing Irish proceedings that Rippling previously initiated addressing the same subject matter and facts as the above-captioned action. Deel's potion above on discovery is based on the assumption that this matter is not stayed or dismissed in favor of Ireland.

## IX.    CLASS ACTIONS

This is not a class action.

## X.    RELATED CASES

### A.    Rippling's Position

Rippling asserts that Deel commenced a related case against Rippling in the Superior Court of Delaware on April 25, 2024, captioned *Deel, Inc. v. People Center, Inc. d/b/a Rippling*, Case No. N25C-04-239 DJB (the "Delaware Action"). Rippling denies the allegations made by Deel in the Delaware case, which has not yet been served on Rippling.

As Rippling initially raised in its Notice of Pendency of Other Action or Proceeding, Rippling contends that the Delaware Action is materially related to the same facts and subjects as Rippling's complaint in this action. *See* ECF No. 51. Rippling contends that Rippling's FAC is, likewise, materially related.

### B.    Deel's Position

Deel filed an amended complaint in the Delaware Action on June 3, 2025, alleging, among other things, that an employee from Rippling's "Competitive Intelligence" department impersonated a fake Deel customer for the purpose of gaining unauthorized access to Deel's platform and stealing Deel's propriety product information so that Rippling could build its own competing products. As Deel noted in its Response to Rippling's Notice of Pendency of Other Action or Proceeding, Deel's Delaware Action is not a related case within the meaning of the Local Rules. Deel's Delaware

1   Action does not involve all or even a material part of the same subject matter or all or substantially

2   all of the same parties as Rippling's action here.  *See* ECF No. 52. This is particularly true in light

3   of the parties' respective amended complaints, in which Rippling added three new parties to this

4   action and even more Irish connective allegations. Likewise, in addition to the allegations regarding

5   Rippling's theft of Deel's proprietary information by Rippling's "Competitive Intelligence" agent

6   (which has no factual relation to Rippling's O'Brien allegations), Deel's amended Delaware Action

7   also alleges that Rippling deceptively advertises its platform, products, and services and has engaged

8   in a prolonged "smear campaign" designed to disparage and harm Deel (which again has no factual

9   relation to Rippling's O'Brien allegations here). Deel's Delaware action asserts claims for damages

10   arising under Delaware law for Computer Related Criminal Offenses in violation of 11 Del. C. §§

11   931-941, fraud, violation of the Deceptive Trade Practices Act in 6 Del. C. §§ 2531, *et seq.*,

12   conversion, trespass to chattels, defamation, trade libel, tortious interference with prospective

13   economic advantage, and civil conspiracy.

14   **XI.    RELIEF**

15       **A.    Rippling's Position On Relief**

16       As set forth in the FAC, Rippling contends that it has been and will continue to be injured

17   each day that Defendants retain and are able to use its confidential information and trade secrets.

18   Rippling seeks permanent injunctive relief prohibiting any further wrongful possession, disclosure,

19   or misuse of Rippling's trade secrets, as well as preventing Defendants from profiting or benefiting

20   from their wrongful conduct. Rippling also seeks damages adequate to compensate for Defendants'

21   theft and misappropriation of its trade secrets, including but not limited to compensatory damages,

22   disgorgement, and exemplary and/or punitive and/or treble damages in an amount to be determined.

23   Rippling may also seek attorney's fees or costs, or interest, in connection with this action, the totals

24   of which are not known at this time.

25       **B.    Deel's Position On Relief**

26       Deel denies that Rippling is entitled to any relief. Rippling has not alleged any non-

27   speculative and concrete financial harm caused by Deel's misconduct, and thus is not entitled to any

28   damages. Rippling is also not entitled to injunctive relief, as Deel is not in possession of anything

1   from Rippling—period—let alone anything that could be considered a Rippling "trade secret" under

2   the law. Rippling's knowledge of this fact is why Rippling made the strategic choice not to seek a

3   preliminary injunction seeking the return of what Rippling previously alleged were the company's

4   supposed "most prized" and "most sensitive" "secrets." *See* ECF No. 1 ¶¶ 1, 5.

5   **XII.   SETTLEMENT AND ADR**

6       **A.   Deel And Rippling's Position**

7       Rippling and Deel have met and conferred as required by ADR L.R. 3-5.  Rippling and Deel

8   agree that private mediation is the most appropriate form of ADR for this matter but that conducting

9   a mediation is premature at this early stage given their divergent views of the case. ECF No. 55

10  (Rippling's ADR Certification).

11      **B.   Deel's Additional Statement About Ireland**

12      Deel's position above is based on the assumption that this action is not stayed or dismissed

13  in favor of Ireland.

14  **XIII.  OTHER REFERENCES**

15      This case is not suitable for binding arbitration, a special master, or the Judicial Panel on

16  Multidistrict Litigation.

17  **XIV.  NARROWING OF ISSUES**

18      Rippling and Deel will continue to consider suggestions to narrow the issues in dispute or

19  expedite the evidence at trial, but at this stage do not have any concrete proposals.  Rippling and

20  Deel will continue to discuss how to narrow the issues and make the presentation of evidence more

21  efficient, including through fact stipulations.

22  **XV.   SCHEDULING**

23      **A.   Rippling's Statement About Scheduling**

24      Rippling and Deel disagree as to scheduling, and their respective scheduling proposals are

25  below.  Rippling and Deel have twice agreed that neither party will seek to stay discovery while any

26  motion to dismiss is pending, including when they stipulated to the June 6 deadline for Rippling to

27  file an amended complaint.   ECF Nos. 46, 54.   Rippling therefore proposes a schedule that

28

contemplates that ongoing discovery will continue while pleading motions are being decided, as agreed.

Deel provides no explanation why it proposes that the parties require nearly 18 months from today to complete discovery. Deel's proposal for such a lengthy discovery period is at odds with their proposed limitation of only seven depositions. Deel is trying to delay Rippling's case against Deel and simultaneously cripple Rippling's ability to take needed discovery.

**B.    Deel's Statement About Scheduling**

Deel asserts that this action should be litigated in Ireland, which is now all the more clear after Rippling's June 5 amended complaint raising literally identical issues to those currently being litigated in Ireland. Since Deel anticipates filing a motion to stay or dismiss this action in favor of proceedings in Ireland, Deel proposes a schedule below that begins after the Court hears Deel's various pleading motions on September 19, 2025 and has a chance to issue decisions on those motions. Further, Rippling's strategic choice not to seek a preliminary injunction in March 2025 seeking the return of what Rippling previously alleged were the company's supposed "most prized" and "most sensitive" "secrets" show that starting pre-trial proceedings in earnest in October is more than reasonable. *See* ECF No. 1 ¶¶ 1, 5. If this action is not stayed or dismissed in favor of Ireland, Deel proposes the following schedule based on Rippling's assertion above as to the supposed "complexity" of this case:

**C.    Deel's And Rippling's Scheduling Proposals**

| Event | Rippling's Proposal | Deel's Proposal |
|---|---|---|
| Initial Case Management Conference | June 20, 2025 | October 17, 2025 |
| Substantial completion of document productions | October 24, 2025 | April 10, 2026 |
| Last day to seek leave to add parties or amend pleadings | December 5, 2025 | May 10, 2026 |
| Close of fact discovery | February 27, 2026 | July 31, 2026 |

| Event | Rippling's Proposal | Deel's Proposal |
|---|---|---|
| Last day to file motions to compel | March 6, 2026 | August 21, 2026 |
| Exchange of opening expert reports | March 27, 2026 | September 18, 2026 |
| Exchange of rebuttal expert reports | April 17, 2026 | October 19, 2026 |
| Close of expert discovery | May 1, 2026 | November 18, 2026 |
| Deadline to file dispositive motions and *Daubert* motions | June 5, 2026 | December 18, 2026 |
| Deadline to file oppositions to dispositive motions and *Daubert* motions | June 19, 2026 | January 19, 2027 |
| Deadline to file replies to dispositive motions and *Daubert* motions | June 26, 2026 | February 19, 2027 |
| Hearing on dispositive motions and *Daubert* motions | July 10, 2026 | March 5, 2027 |
| Motions *in limine* served | July 31, 2026 | March 26, 2027 |
| Motions *in limine* oppositions served | August 21, 2026 | April 16, 2027 |
| Pretrial conference | September 4, 2026 | April 30, 2027 |
| First day of trial | September 14, 2026 | May 10, 2027 |

RIPPLING AND DEEL'S JOINT CASE MANAGEMENT STATEMENT

## XVI.  TRIAL

### A.    Rippling And Deel's Statement About Trial

Rippling demands a trial by jury.  At present, Rippling estimates that a trial will require 15-20 days.  At present, Deel also estimates that a trial would require 15-20 days.

### B.    Deel's Additional Statement About Ireland

Deel notes that its trial estimate about applies only if this action is not stayed or dismissed in favor of Ireland.

## XVII.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.

On March 17, 2025, Rippling filed a certificate of conflicts and interested entities or persons certifying that there is no conflict or interest, other than the named parties, to report.  ECF No. 3.

On March 28, 2025, Deel filed a corporate interest statement and certificate of conflicts and interested entities stating that it has no parent corporation and no publicly held corporation owns 10% or more of its stock and that there are no conflict or interest, other than the named parties, to report.  ECF No. 37.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for Rippling and Deel have reviewed the guidelines for professional conduct for the Northern District of California.

## XIX.  OTHER MATTERS

### A.    Parties' Statement On Other Matters

Rippling states that for the convenience of witnesses and the parties, Rippling may wish to conduct certain depositions via videoconference. At this time, Deel does not consent to depositions via videoconference.

Rippling and Deel agree that service of correspondence, discovery and any filings (not otherwise effected through ECF) may be effectuated through emailing the attorneys of record, which will be treated the same as hand delivery. For the avoidance of doubt, this agreement does not cover service of process and service of third-party subpoenas on the subpoena target under Rule 45.

**B.    Deel's Additional Statement About Ireland**

Deel notes that its position above assumes that this action is not stayed or dismissed in favor of Ireland.


DATED:  June 13, 2025                                    */s/ Joseph Sarles*
                                                          Attorneys for People Center, Inc. d/b/a Rippling


DATED:  June 13, 2025                                    */s/ Jason D. Russell*
                                                          Attorneys for Deel, Inc.

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>

I, Joseph Sarles, attest that concurrence in the filing of this document has been obtained from the other signatories.  I declare under penalty of perjury that the foregoing is true and correct.


By    */s/ Joseph Sarles*
Joseph Sarles

RIPPLING AND DEEL'S JOINT CASE MANAGEMENT STATEMENT