LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Counsel for Defendant Deel, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**(1) DEEL'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY ACTION FOR FORUM NON CONVENIENS;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**(3) DECLARATION OF JOE O'MALLEY; and**<br><br>*Under Separate Cover*:<br><br>**(4) [PROPOSED] ORDER.**<br><br>Compl. Filed:        March 17, 2025<br>Am. Compl. Filed:  June 5, 2025<br>Judge:                 Hon. Charles R. Breyer<br>Courtroom:          6<br>Hearing Date:      September 19, 2025<br>Hearing Time:      10:00 a.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE**  that at 10:00 a.m. on September 19, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this motion to dismiss the First Amended Complaint ("FAC") brought by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") or stay this action for forum non conveniens (the "Motion").

This Motion is based on this Notice, the Memorandum of Points and Authorities, Declarations of Joe O'Malley ("O'Malley Decl."), Peter Bredin (ECF 48-1), Shuo Wang (ECF 48-2), and Adam Lloyd (ECF 48-3),[1] and their attached exhibits, the other files and records in this action, the arguments of counsel, and any other matters the Court may properly consider.

### SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Deel provides the following summary of argument. This Motion seeks to dismiss or stay Rippling's FAC in favor of proceeding in Ireland under the doctrine of forum non conveniens for the following reasons:

- The Courts of Ireland are an adequate alternative forum for this dispute. *See infra* Argument §II; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009); *Umeda v. Tesla Inc.*, 2020 WL 5653496, at *5 (N.D. Cal. Sept. 23, 2020); *Herd v. Airbus SAS*, 2017 WL 6504162, at *2 (C.D. Cal. Dec. 11, 2017); *Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 775 (C.D. Cal. 2006); *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F.Supp.3d 527, 536-37 (S.D.N.Y. 2014); *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *4, *13-14 (S.D.N.Y. Nov. 29, 2011).

- The private interest factors informing a forum non conveniens analysis all favor proceeding in Ireland. *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F.Supp.2d 832, 839, 843 (N.D. Cal.

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading. To avoid burdening the Court by refiling the same declarations, this Motion relies on the three declarations identified above filed in support of Deel's previous motion to dismiss for forum non conveniens, which was filed on April 25, 2025, and was mooted by Rippling's filing of the FAC on June 5, 2025.

2010) (Breyer, J.); *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL 1565544, at *5 (N.D. Cal. Apr. 19, 2016); *see infra* Argument §III.

- The location of the key witnesses and evidence in this action—"the most important private interest factor" in a forum non conveniens analysis—is Ireland. *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *4 (N.D. Cal. May 5, 2016); *Kleiner*, 2016 WL 1565544, at *4; *Herd*, 2017 WL 6504162, at *3; *Medicor AG v. Arterial Vascular Eng'g*, 1997 WL 68564, at *1 (N.D. Cal. Jan. 30, 1997); *In re Air Crash*, 760 F.Supp.2d at 844; *see infra* Argument §III.A.

- Rippling has already initiated parallel litigation related to its claims here against Deel in Ireland. *See infra* Argument §III.B. *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10 (N.D. Cal. Aug. 10, 2021); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001); *Mentawai v. Marcotti*, 2016 WL 7496750, at *5 (C.D. Cal. Mar. 28, 2016).

- Rippling can enforce any judgment in Ireland. *See infra* Argument §III.C.

- The public interest factors also are all either neutral or weigh in favor of dismissal. *See infra* Argument §IV. *Lueck*, 236 F.3d at 1147; *In re Air Crash*, 760 F.Supp.2d at 845-47; *Van Schijndel*, 434 F.Supp.2d at 782.

## STATEMENT OF REQUESTED RELIEF

Deel seeks an order dismissing Rippling's FAC and all causes of action or, in the alternative, staying this action under the doctrine of forum non conveniens in favor of proceeding in Ireland.


DATED: July 11, 2025                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                         By:_____/s/ Jason D. Russell_____
                                                          JASON D. RUSSELL
                                                     *Attorneys for Defendant Deel, Inc.*

1

## <u>TABLE OF CONTENTS</u>

2   SUMMARY OF ARGUMENT ................................................................................................ i

3   STATEMENT OF REQUESTED RELIEF ...................................................................... ii

4   TABLE OF AUTHORITIES ............................................................................................ iv

5   PRELIMINARY STATEMENT ...................................................................................... 1

6   STATEMENT OF FACTS ................................................................................................ 2

7   LEGAL STANDARD ........................................................................................................ 4

8   ARGUMENT ...................................................................................................................... 5

9       I.      This Court Can And Should Decide This FNC Motion First .......................... 5

10      II.     The Courts Of Ireland Are An Adequate Alternative Forum ......................... 5

11      III.    The Private Interest Factors Weigh In Favor Of Dismissal ........................... 8

12              A.      The Key Witnesses And Evidence Are Not In California,
                        But Ireland And Abroad ...................................................................... 8
13
                B.      An Existing Parallel Litigation Is Proceeding In Ireland .................. 12
14
                C.      Rippling Can Enforce A Judgment In Ireland ................................... 13
15
16      IV.     The Public Interest Factors Weigh In Favor Of Dismissal ........................... 13

17  CONCLUSION ................................................................................................................ 15

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S):</u>

## <u>CASES</u>

*In re Air Crash Over Mid-Atlantic on June 1 2009,*
  760 F.Supp.2d 832 (N.D. Cal. 2010) ................................................................. *passim*

*In re Banco Santander Securities-Optimal Litigation,*
  732 F.Supp.2d 1305 (S.D. Fla. 2010), *aff'd sub nom.*
  *Inversiones Mar Octava Limitada v. Banco Santander S.A.,*
  439 F.App'x 840 (11th Cir. 2011)  ....................................................................8

*Carey v. Bayerische Hypo-Und Vereinsbank AG,*
  370 F.3d 234 (2d Cir. 2004)...............................................................................4

*Dickens v. NXP Semiconductors,*
  703 F.Supp.3d 1013 (N.D. Cal. 2023) ..............................................................11

*Etaliq, Inc. v. Cisco Systems, Inc.,*
  No. CV 11-3672 GAF (FFMx),
  2011 WL 13220445 (C.D. Cal. July 20, 2011) ................................................15

*Flynn v. National Asset Management Agency,*
  42 F.Supp.3d 527 (S.D.N.Y. 2014)................................................................5, 7

*In re Herald, Primeo, & Thema Securities Litigation,*
  No. 09 Civ. 289(RMB),
  2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011),
  *aff'd*, 540 F.App'x 19 (2d Cir. 2013)..............................................................6, 8

*Herd v. Airbus SAS,*
  No. 2:17-cv-05001-SVW-MRW,
  2017 WL 6504162 (C.D. Cal. Dec. 11, 2017) .................................................6, 8

*Huthart v. News Corp.,*
  No. CV-13-04253-MWF (AJWx),
  2014 WL 12577175 (C.D. Cal. May 21, 2014) ...............................................15

*Juniper Networks, Inc. v. Andrade,*
  No. 20-cv-02360-BLF,
  2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) .................................................12

*Kleiner v. Spinal Kinetics, Inc.,*
  No. 5:15-cv-02179-EJD,
  2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ...............................................8, 10

*Koger, Inc. v. O'Donnell*,
    No. 07-3091 (KSH),
    2007 WL 3232586 (D.N.J. Oct. 31, 2007)........................................................................7, 8

*Lockman Foundation v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) .......................................................................................15

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ............................................................................ *passim*

*Medicor AG v. Arterial Vascular Engineering*,
    No. C-96-2979 MHP,
    1997 WL 68564 (N.D. Cal. Jan. 30, 1997),
    *aff'd*, 141 F.3d 1177 (9th Cir. 1998)........................................................................9, 13

*Mentawai v. Marcotti*,
    No. CV 15-02156 RGK (DFMx),
    2016 WL 7496750 (C.D. Cal. Mar. 28, 2016) ...............................................................12

*Nai-Chao v. Boeing Co.*,
    555 F.Supp. 9 (N.D. Cal. 1982),
    *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) ............................13

*Oxley v. Wyeth Laboratories, Inc.*,
    No. 91-1285,
    1992 WL 116308 (E.D. Pa. May 20, 1992) ...............................................................6, 13

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .....................................................................................................5

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
    No. 11-5227 (MLC),
    2012 WL 2995199 (D.N.J. July 23, 2012).....................................................................7

*Provincial Government of Marinduque v. Placer Dome, Inc.*,
    582 F.3d 1083 (9th Cir. 2009) .......................................................................................5

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...........................................................................4, 5, 6, 14

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007).....................................................................................................5

*SPS Technologies, LLC v. Briles Aerospace, Inc.*,
    No. CV 18-9536-MWF (ASx),
    2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) .........................................................4, 15

*Summa Resource Holdings LLC v. Carbon Energy Ltd.*,
    No. 15-cv-05334-TEH,
    2016 WL 2593868 (N.D. Cal. May 5, 2016) ................................................... *passim*

*Umeda v. Tesla Inc.*,
    No. 20-cv-02926-SVK,
    2020 WL 5653496 (N.D. Cal. Sept. 23, 2020),
    *aff'd*, 2022 WL 18980 (9th Cir. Jan. 3, 2022) ...................................................................6

*Van Schijndel v. Boeing Co.*,
    434 F.Supp.2d 766 (C.D. Cal. 2006),
    *aff'd*, 263 F.App'x 555 (9th Cir. 2008)............................................................6, 12, 15

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ......................................................................................5, 8

**PRELIMINARY STATEMENT**

Rippling's FAC confirms, as Deel showed in its original motion to dismiss the Complaint on forum non conveniens grounds, that this action does not belong in this (or any United States) court. ECF 48. Rippling accuses Deel of conspiring with putative corporate "spy" Keith O'Brien, admittedly an Irish citizen employed at Rippling's Irish subsidiary in Dublin, where he allegedly accessed Rippling's files and communicated with Deel. This is why Rippling told the Dublin Commercial High Court ("Irish Court") in the parallel proceeding it initiated there (the "Irish Proceedings") that "**Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings**." ECF 48-4 ¶¶33-34. Indeed, Rippling told the Irish Court that "**Ireland is the correct forum to determine this action against [Deel]**, having regard to the subject-matter of the action" and "**the balance of convenience lying in favour of trying the case in the Irish courts**." *Id.* ¶45. Now forced to acknowledge the Irish Proceedings in its FAC, Rippling attaches O'Brien's "sworn affidavit" *in those proceedings as an exhibit* (FAC ¶2 n.1, ¶56 n.19), making in the centerpiece of the claims in the FAC, and adds allegations sourced from "Rippling's Irish subsidiary['s]" "security team," detailing additional conduct which "occurred *from Ireland*" and in "Dublin." *E.g., id.* ¶¶2 n.2, 7, 57-75, 130-31, 140-42, 159. Rippling thus cannot dispute this action should be dismissed or stayed for forum non conveniens.

Irish law recognizes similar claims for each cause of action here, and Deel is subject to jurisdiction in Ireland—indeed, Deel has already appeared in the Irish Proceedings to litigate the same allegations Rippling makes here. O'Malley Decl. ¶¶6, 8, 10. Thus, as Rippling recognized in instituting the Irish Proceedings based on the same "wrongdoing" (ECF 48-4 ¶27), Ireland is an adequate alternative forum.

It seems Rippling has only brought this duplicative suit in an effort to capitalize on RICO and American juries—so its choice of forum is entitled to limited deference at best. While the FAC adds pages of allegations about additional individuals involved, *none* of the material witnesses are located in California or even the United States. Rather, the key witness—O'Brien—and important non-party witnesses with knowledge about O'Brien's purported espionage and dealings with Rippling, are in Ireland, where only an Irish court can compel their testimony. Rippling also admits that key physical evidence of O'Brien's and the Rippling systems that were allegedly accessed, are also in Dublin. Because California has no cognizable interest in this dispute, the private and public factors compel dismissal.

# STATEMENT OF FACTS

The following facts are known and admitted by Rippling. Rippling's claims against Deel in this Court arise entirely from an Irish citizen's alleged conduct while working for Rippling's Irish subsidiary in Ireland. *See, e.g.*, FAC ¶2 nn. 1-2 (admitting the "security team" at "Rippling's Irish subsidiary" conducted an investigation which allegedly "showed that a mid-level payroll operations manager in Rippling's Dublin office had been using his internal systems access to gathering [*sic*] sensitive data relevant to Deel"). Every cause of action Rippling asserts hinges on O'Brien's purported "espionage" activities *in Ireland* in violation of the alleged duties he owed to "Rippling's Irish subsidiary." FAC ¶¶2 & n.2, 56 & n.19, 57-75. Rippling admits O'Brien is "a resident of Dublin, Ireland" and was employed by Rippling Ireland Limited. *Id.* ¶24 & n.13. O'Brien's employment agreements laying out the obligations that Rippling contends O'Brien breached at Deel's urging, were executed in Ireland. *Id.* Rippling alleges Defendant Alex Bouaziz (who lives abroad) "communicated with O'Brien" while O'Brien was at work in Dublin; indeed, "*each and every instance of O'Brien accessing [Rippling's] databases… **occurred from Ireland.**" Id.* ¶67. O'Brien's affidavit in the Irish Proceedings, which Rippling *attaches* and repeatedly cites (*see, e.g., id*. ¶¶2 & n.2, 56 & n.19, 69, 71, 90-91, 125, 132-33, 153, 159), confirms he "worked in the Dublin office primarily, and occasionally worked from home," communicated with Deel while in a "meeting room at Rippling's Dublin office," ran searches on Rippling's systems while in Dublin, and was served with a court order for his phone and laptop there. ECF 57-1 ¶¶1, 4, 6-8, 17-29.

In March 2025, Rippling and Rippling Ireland sought a court order from the High Court in Ireland to "require O'Brien to turn over his devices to an independent solicitor for forensic imaging" (based on Rippling Ireland's investigation) and confronted O'Brien "at Rippling's Dublin office" for those devices, which he admittedly provided to the independent solicitor. FAC ¶¶2 & n.2, 7, 130-31, 149-50, 159; ECF 48-4 ¶15 (O'Brien was personally served at Rippling's Dublin office); *see also* FAC ¶¶140-42 (detailing O'Brien's appearance before Irish High Court). Later, Rippling asked the Irish Court to add Deel to proceedings there arising from O'Brien's "wrongdoing," which Rippling represented was "the subject matter **of these proceedings and the US proceedings**," and which the FAC now confirms. ECF 48-4 ¶24; FAC ¶¶130-156, 170, 180 (basing RICO claims on allegations being litigated against Deel in Ireland).

Rippling and Rippling Ireland successfully added Deel to the Irish Proceedings against O'Brien

1  by relying not only on Rippling's attestations that "Ireland is clearly the jurisdiction most closely

2  connected with the wrongs [that are] the subject matter of these proceedings," *id* ¶¶33-34, 45, but also on

3  the same O'Brien affidavit laced with misleading statements and falsehoods that is now the centerpiece

4  of the FAC. *See* ECF 57-1; FAC ¶2 n.1. Rippling procured O'Brien's supposed testimony by both

5  financing him, ECF 48-4 ¶¶21-24, and via an odious pressure campaign to intimidate O'Brien, which

6  eventually caused him to have such a massive "mental break down" that he sought hospitalization, as

7  O'Brien's own contemporaneous emails, submitted with the affidavit he filed in the Irish Proceedings,

8  reveal. *See* ECF 48-5 at 49-51 (O'Brien emails stating "a Rippling representative called again to my home

9  today. They are trying their utmost to mentally destroy me and its [*sic*] working," complaining "Rippling

10  are coercing me to say I shared data, no such thing," being "harassed by Rippling legal team" and seeking

11  medical treatment for "extreme suicidal thoughts"). Rippling ***tellingly omitted that damning material***

12  from the affidavit it submitted to this Court. *Compare id*. at 2-61 (O'Brien affidavit with original exhibits)

13  *with* ECF 57-1 at 2-13 (affidavit submitted by Rippling without exhibits). Deel also believes that discovery

14  in Ireland will show Rippling's attempts to blackmail O'Brien *by weaponizing his personal information*

15  (that a search of his phone would reveal, for example), explaining his erratic conduct.

16      It was in this state of duress that O'Brien accepted Rippling's "pathway forward" and submitted

17  his Irish Court affidavit. *See* ECF 48-5 at 49-51. But the spy melodrama conjured therein is fictionalized

18  because O'Brien was "pressured to say things that are not true ... to damage Deel." *Id*. at 51. As discovery

19  in Ireland will show, O'Brien's affidavit also omits that between August 2022 and February 2025, he

20  unsuccessfully applied for various Europe-based Deel jobs *on at least eight (8) different occasions*, where

21  (as part of the normal interview process) he interacted with various Deel employees he now claims to have

22  only first met during his supposed "spying," such as Philippe Bouaziz. *See* ECF 57-1 ¶¶6-7 (O'Brien

23  claiming that "I had never spoken to Philippe before" September 2024). O'Brien's affidavit also elides

24  Rippling's own internal obsession with Deel, failing to disclose that O'Brien's Irish supervisors instructed

25  him and others to search and monitor Slack messages for mentions of the word "Deel" to see who was

26  discussing leaving to work there, which Deel believes will be revealed during discovery of Rippling

27  Ireland in the Irish Proceedings. O'Brien's affidavit also demonstrates contradictions in Rippling's

28  "honeypot" story: Rippling alleges that "the renamed #d-defectors channel *did not exist* until March 3,

1  2025 (or early morning March 4, 2025, Irish Time)" and that "*[f]or avoidance of doubt*," O'Brien did not

2  access it "before March 3, 2025." FAC ¶¶121-24. Yet O'Brien claims he accessed the fake "#d-defectors"

3  channel in **February 2025**," before it allegedly even existed. ECF 57-1 ¶27.

4      Because O'Brien's Irish affidavit remains Rippling's **only** (if fictional) basis to connect Deel to

5  the FAC allegations, Deel is entitled to explore the credibility of O'Brien's allegations made under obvious

6  duress by potentially calling for trial non-party witnesses with knowledge of: the alleged espionage,

7  Rippling's instructions to monitor Slack channels for "Deel," Rippling's coercion of O'Brien, and the

8  resulting devastation of his mental health. This would include family members, friends, medical

9  professionals, and co-workers, all located in Ireland and none of whom have any tie to California.

10                                     <u>**LEGAL STANDARD**</u>

11      "A party moving to dismiss based on *forum non conveniens* ["FNC"] bears the burden of showing

12  that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors

13  favors dismissal." *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F.Supp.2d 832, 839 (N.D. Cal.

14  2010) (Breyer, J.). "[I]t is within the court's discretion to decide whether a foreign forum is more

15  convenient," and courts should not automatically give deference to a plaintiff's forum choice. *Ranza v.*

16  *Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). A corporation's choice of forum is given less deference

17  than an individual's, as a corporation "can easily handle the difficulties of engaging in litigation abroad."

18  *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *4 (N.D. Cal. May 5, 2016)

19  (choice of California by "corporation participating in business ventures internationally," was entitled to

20  less deference); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (same).

21      Moreover, "a court may reduce the deference it typically accords to a local plaintiff's forum choice

22  based upon the unique circumstances of the case, **such as the pendency of related litigation in the**

23  **alternative forum** or the plaintiff's presence in that forum." *SPS Techs., LLC v. Briles Aerospace, Inc.*,

24  2020 WL 12740596, at *12-13 (C.D. Cal. Jan. 17, 2020) (dismissing trade secret claims where California

25  company asserted "substantially similar" claims against defendants in pending Canadian litigation).

26  Additionally, "the more it appears that the … choice of a U.S. forum was motivated by forum-shopping

27  reasons—such as attempts to win a tactical advantage resulting from local laws…, the habitual generosity

28  of juries in the United States or in the forum district … the less deference the plaintiff's choice of forum

1    commands." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009).

2        This applies with force where a plaintiff's "heavy reliance on RICO as a reason to retain the action

3    here suggests a desire to benefit from whatever *in terrorem* effect that statute has by virtue of the word

4    'racketeering' and the threat of treble damages." *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F.Supp.3d 527,

5    536-37 (S.D.N.Y. 2014). In such circumstances, courts regularly conclude that "**the institution of this**

6    **case in the United States was at least as much a result of forum shopping as it was of any substantial**

7    **concern with convenience**," and as such "[t]he degree of deference due to plaintiffs' choice of this forum

8    is limited." *Id.* at 537 (dismissing RICO claims in favor of Ireland).

9                            <u>**ARGUMENT**</u>

10   **I.    <u>This Court Can And Should Decide This FNC Motion First</u>**

11       This Court should decide this Motion before Deel's other concurrently filed motions. "[A] district

12   court has discretion to respond at once to a defendant's [FNC] plea, and need not take up first any other

13   threshold objection." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

14   Where, as here, "*forum non conveniens* considerations weigh heavily in favor of dismissal, the court

15   properly takes the less burdensome course" in deciding an FNC motion first and disposing of the case. *Id.*

16   at 436. In so holding, "the Supreme Court offered the lower courts a practical mechanism for resolving a

17   case that would ultimately be dismissed." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d

18   1083, 1088 (9th Cir. 2009). Here, an Irish court "is plainly the more suitable arbiter of the merits of the

19   case," *Sinochem*, 549 U.S. at 425, as Rippling recognized when filing the Irish Proceedings arising from

20   the same facts. Thus this Court should decide this Motion first in the interest of judicial economy.

21   **II.    <u>The Courts Of Ireland Are An Adequate Alternative Forum</u>**

22       This Court must first "determine whether there exists an alternative forum." *Piper Aircraft Co. v.*

23   *Reyno*, 454 U.S. 235, 255 n.22 (1981). An "alternative forum is adequate if: (1) the defendant is amenable

24   to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Ranza*, 793 F.3d at 1077. As

25   Rippling attested in Ireland, "Deel has already indicated a wish to be joined to these proceedings." ECF

26   48-4 ¶35. Indeed, Deel has already been served and consented to jurisdiction in Ireland. ECF 48-2 ¶10;

27   O'Malley Decl. ¶8.[2] Thus, Deel must show only that Ireland offers Rippling an adequate remedy.

28   _____
     [2]It is Deel's understanding that the individual defendants will consent to jurisdiction in Ireland if the Court
     grants this Motion. *See, e.g.*, O'Malley Decl. ¶¶6, 9.

                                    5

1    This is a low bar: "a forum will be inadequate only where the remedy provided is so clearly

2    inadequate or unsatisfactory, that it is no remedy at all," *Ranza*, 793 F.3d at 1077, which occurs only

3    "rare[ly]." *Piper*, 454 U.S. at 254-55 & n.22 (Scottish courts adequate "[a]lthough [plaintiffs] may not be

4    able to rely on a strict liability theory, and although their potential damages award may be smaller, there

5    is no danger that they will be deprived of any remedy or treated unfairly"). A foreign forum must merely

6    provide "some remedy"—not the same remedy. *Ranza*, 793 F.3d at 1077. "[T]hat a plaintiff cannot bring

7    the 'exact suit' in the alternative forum that she brought here or that 'United States law offers Plaintiffs a

8    greater potential remedy for their losses' does not render the alternative forum inadequate." *Umeda v.*

9    *Tesla Inc.*, 2020 WL 5653496, at *5 (N.D. Cal. Sept. 23, 2020) (quoting *Lueck v. Sundstrand Corp.*, 236

10   F.3d 1137, 1144 (9th Cir. 2001)). As one court explained: "It need not be shown that the particular *legal*

11   *cause of action* is available in the foreign forum. Indeed, such a requirement would be completely

12   nonsensical." *Herd v. Airbus SAS*, 2017 WL 6504162, at *2 (C.D. Cal. Dec. 11, 2017). "Rather, a foreign

13   forum is adequate unless it offers no *practical remedy* for the plaintiffs complained of wrong. Thus, the

14   foreign court must offer a remedy based on the *facts* of the matter at hand." *Id*. (emphasis in original).

15   As a preliminary matter, Rippling has conceded Ireland is an adequate alternative forum because

16   Rippling and its Irish subsidiary have "already availed themselves of it by filing their suit against [Deel]

17   in that forum, demonstrating their familiarity with the legal processes there." *Van Schijndel v. Boeing Co.*,

18   434 F.Supp.2d 766, 775 (C.D. Cal. 2006). The Ninth Circuit disregards a plaintiff's contention that a

19   forum is inadequate where a plaintiff pursues litigation on the same or similar subject matter in that forum.

20   *See Ranza*, 793 F.3d at 1077 (disagreeing foreign forum was inadequate where plaintiff "herself chose to

21   litigate her discrimination claims before" it); *Oxley v. Wyeth Lab'ys, Inc.*, 1992 WL 116308, at *2 (E.D.

22   Pa. May 20, 1992) (finding pending cases in Ireland against defendant suggested adequate alternative

23   fora). Here, Rippling is pursuing claims in the Irish Court against Deel premised on the same purported

24   facts alleged in the FAC, so it cannot credibly argue Ireland is an inadequate forum. ECF 48-1 ¶¶20-27

25   (comparing Irish claims brought by Rippling against Deel to Causes of Action asserted in this Court).

26   In any case, courts routinely find Irish courts to be "obviously adequate alternative fora" for

27   adjudicating claims like Rippling's. *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *4,

28   *13-14 (S.D.N.Y. Nov. 29, 2011) (finding Ireland was an "unequivocally adequate fora" for claims

asserting, *inter alia*, civil conspiracy and aiding and abetting fraud and breaches of fiduciary duty because Irish courts "recognize claims in tort and contract similar to those asserted here"). Because "**Ireland shares with the United States a well developed body of tort law largely derived from our common English antecedent ... even the most cursory glance through leading treatises on Irish law quickly reveals**" that "Ireland affords civil causes of action for tort damages very much like our own for all or substantially all of the wrongs alleged by" Rippling here. *Flynn*, 42 F.Supp.3d at 536.

**RICO/Conspiracy**. Courts routinely hold that "an Irish forum may provide adequate redress for" RICO claims where the "claims rest upon the same or substantially the same allegations as… fraud and prima facie tort claims," because Irish courts allow plaintiffs to "seek the same remedies otherwise available" in U.S. courts. *Princeton Football Partners LLC v. Football Ass'n of Ireland*, 2012 WL 2995199, at *5 (D.N.J. July 23, 2012). Courts reject as "without merit" that "Ireland does not provide an adequate forum, essentially because it does not have a counterpart to civil RICO." *Flynn*, 42 F.Supp.3d at 537. The principle that an adequate alternative forum does not require an identical claim exist in the foreign forum "pertains with particular force" to RICO "because few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes" or treble damages, but "most foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO"—including Ireland. *Id*. (granting FNC motion in favor of Ireland for, *inter alia*, RICO, conspiracy and breach of fiduciary duty); *see also* ECF 48-1 ¶22 ("While there is no direct equivalent of RICO under Irish law, Irish law does contain a number of causes of action which provide remedies for fraud, conspiracy, and misappropriation of trade secrets or business opportunities.").

**Trade Secrets**. "Irish law has a developed cause of action for breach of confidence in cases involving unauthorized use of private business information" as well as various statutory protections of trade secrets, allowing for recovery of the same remedies. ECF 48-1 ¶23; *see also Koger, Inc. v. O'Donnell*, 2007 WL 3232586, at *1, *6 (D.N.J. Oct. 31, 2007) (granting FNC motion as to "misappropriation of confidential information" claim in favor of Ireland).

**Tortious Interference With Contract/Aiding And Abetting Breach Of Fiduciary Duty/UCL**. Courts recognize that in Ireland, "[p]laintiffs could assert claims that are similar or analogous to common law claims for breach of fiduciary duty" and "[b]ecause Ireland provides causes of action for aggrieved

1  parties and awards damages to plaintiffs who prove the various elements of the aforementioned causes,

2  Ireland is an adequate forum." *In re Banco Santander*, 732 F.Supp.2d 1305, 1333 (S.D. Fla. 2010); *In re*

3  *Herald*, 2011 WL 5928952, at *4, *13-14 (Irish courts "recognize claims in tort and contract similar to"

4  civil conspiracy and aiding and abetting breaches of fiduciary duty); ECF 48-1 ¶25 (describing duties

5  owed by employees: "Ireland also recognizes a tort for individuals who encourage employees to take such

6  actions in breach of those duties, and allows for the recovery of compensatory damages for those harmed

7  by the breaches"). Moreover, Ireland recognizes an equivalent tort to tortious interference with contract

8  "allow[ing] for the recovery of compensatory and … other damages." *Id*. ¶24; *see also Koger*, 2007 WL

9  3232586, at *1 (Ireland is adequate forum for "tortious interference with economic advantage" claim).

10  And, like California's UCL, Irish law allows companies to "recover damages incurred as a result of their

11  competitors' unlawful or fraudulent activity." ECF 48-1 ¶¶26, 35.

12  **III.**   **The Private Interest Factors Weigh In Favor Of Dismissal**

13  The private interest factors are: "(1) relative ease of access to proof; (2) availability of compulsory

14  process to secure the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing

15  witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

16  *In re Air Crash*, 760 F.Supp.2d at 843. Courts also consider "the ability to enforce the judgment." *Vivendi*

17  *SA*, 586 F.3d at 695. "The most convenient forum for the purposes of litigation is one that contains most

18  of the evidence **and gives rise to a plaintiff's cause of action**." *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL

19  1565544, at *5 (N.D. Cal. Apr. 19, 2016). Courts agree "the most important private interest factor is the

20  relative availability of evidence and witnesses." *Summa*, 2016 WL 2593868, at *4.

21  **A.**   **The Key Witnesses And Evidence Are Not In California, But Ireland And Abroad**

22  "The key inquiry" for this factor "requires assessing the materiality and importance of these

23  witnesses' testimony and determining whether some of these witnesses are critical and beyond the

24  jurisdiction of domestic courts." *Kleiner*, 2016 WL 1565544, at *4 (granting FNC motion where although

25  "a few witnesses with knowledge… are located in California,… the majority of witnesses, including

26  [p]laintiffs themselves, their family members, [and] co-workers… are located in Germany"); *Herd*, 2017

27  WL 6504162, at *3 (dismissing action where "[a]dditional key witnesses relevant to [plaintiff's] injuries

28  and damages" were in Australia—including "family and friends, who can testify on the extent of her

1  injuries and [their] impact" and former employers and "supervisors and colleagues… who can testify
2  about her work responsibilities, employment record, and compensation").

3      A court in this District dismissed claims for intentional interference with contractual relations and
4  misappropriation of trade secrets asserted by a Swiss company against a Delaware corporation
5  headquartered in Santa Rosa that arose from allegations similar to Rippling's; plaintiff claimed defendant
6  company lured a former employee to work in its Swiss office and provide the company with plaintiff's
7  trade secrets. *Medicor AG v. Arterial Vascular Eng'g*, 1997 WL 68564, at *1 (N.D. Cal. Jan. 30, 1997).
8  The court noted "the relevant sources of proof ... are primarily testimonial, and that all necessary witnesses
9  are Swiss, absent a few [of defendant's] officers" and that "[n]on-party Swiss residents, not subject to
10  U.S. jurisdiction, are also necessary witnesses"—specifically, plaintiffs' customers potentially called "to
11  refute the trade secret allegations." *Id*. at *3. The plaintiff insisted the only non-party witness was the
12  employee who illicitly shared the trade secrets, but "concede[d] that in all likelihood this court does not
13  have jurisdiction over" him. *Id*. The court held that since the employee "**is a key figure in several of**
14  **plaintiff's claims, this factor favors dismissal rather than bolsters [plaintiff's] position**." *Id*.

15      The *Summa* decision from this District is also instructive. That court found "while there are eight
16  causes of action in the complaint, the most qualitatively important issues are (1) whether [defendant]
17  breached the Agreement; and (2) whether [defendant] perpetrated fraud through oral misrepresentations,"
18  which turned on "alleged oral misrepresentations made by [defendant's] employees." *Summa*, 2016 WL
19  2593868, at *5. Those employees resided in Australia and were no longer employed by defendant. *Id*. The
20  court observed "there is no reason to think that they would voluntarily travel to the United States **to testify**
21  **in a case in which they are accused of lying**," and further "the Court must give sufficient weight to these
22  witnesses because many of the fraud claims **turn on the mental state of these three employees**," which
23  meant "depositions would be an inadequate substitute for trial testimony, where the trier of fact could
24  assess the credibility of the witnesses." *Id*. The court concluded "[t]he fact that these key witnesses reside
25  in Australia and are no longer affiliated with [defendant] means they cannot be compelled to testify in the
26  United States, and therefore weighs in favor of dismissal." *Id*.

27      Here, O'Brien is the key witness in this action. Rippling admits that O'Brien's alleged trade secret
28  thefts all took place in Ireland. *Supra* at 1-4. Moreover, the Irish Proceedings confirm that key physical

9

1   evidence is in Ireland, both in O'Brien's possession (*e.g.*, his mobile phone and computer) and at

2   Rippling's Irish subsidiary's offices on the systems O'Brien purportedly searched. *Id.* There is no

3   allegation any activities occurred (or evidence thereof exists) in California. Tellingly, unlike in Dublin,

4   where O'Brien is a named, the FAC still does not name O'Brien as a defendant, despite alleging he is the

5   primary tortfeasor—Rippling cannot plead facts that to allow the Court to exercise personal jurisdiction

6   over O'Brien. Moreover, Rippling does not allege Deel engaged in any wrongdoing in California.

7           Rippling told the Irish Court that O'Brien's employment was "terminated ... for cause" on March

8   21, 2025, and he is no longer under Rippling's control, only subject to a "cooperation agreement" to assist

9   Rippling in "getting to the bottom of the wrongdoing [that is] the subject matter of these proceedings *and*

10  *the US proceedings*," ECF 48-4 ¶¶21-24; FAC n.37. But if O'Brien chooses to flout this purported

11  contractual obligation, this Court has no power to compel him to appear to testify about his role in the

12  alleged espionage on which Rippling's claims are based. An Irish court, however, does have such power.

13  ECF 48-1 ¶6. As it is unlikely O'Brien will "voluntarily travel to the United States to testify in a case in

14  which [he is] accused of lying," dismissal or a stay is warranted. *Summa*, 2016 WL 2593868, at *5.

15          In addition to O'Brien's testimony, which is critical to this litigation, many other witnesses with

16  relevant information are in Ireland. Before being paid off by Rippling, O'Brien indicated Rippling coerced

17  him to conjure a false narrative "to damage Deel" in the Irish Court; indeed, Rippling's pressure tactics

18  drove him to seek medical treatment as a potential suicide risk. *Supra* at 3. Deel is entitled to explore the

19  credibility of O'Brien's traumatized allegations by calling for trial non-party witnesses with knowledge

20  of the alleged espionage, Rippling's coercion of O'Brien, and its effects on O'Brien's mental health. This

21  includes family members, friends, medical professionals, and co-workers, *all located in Ireland. See id*.

22          For example, Rippling alleges Deel repeatedly "spoke with O'Brien's wife" after Rippling began

23  harassing O'Brien to silence him and accuse Deel. FAC ¶¶137, 149. Deel is entitled to elicit testimony

24  from Mrs. O'Brien about those alleged interactions, and O'Brien's mental state after the Rippling

25  coercion. Non-party Irish witnesses cannot be compelled to appear here. As such, "the majority of material

26  witnesses to this case fall squarely within the subpoena powers of [Irish] courts and beyond the subpoena

27  powers" of this Court; thus "[t]hese circumstances favor dismissal." *Kleiner*, 2016 WL 1565544, at *4.

28          Other than conclusory allegations that Deel's purported conspiracy took place "in the Northern

1    District of California, and elsewhere" (FAC ¶¶171, 174), Rippling still does not suggest a connection

2    between this District and the alleged wrongful acts in this action. As the FAC acknowledges, Deel's

3    current "principal place of business" is listed as San Francisco, but ***Deel does not maintain an operational***

4    ***office in San Francisco***. FAC ¶16 & n.4; ECF 48-2 ¶6. Deel had a mailing address in San Francisco, but

5    is in the process of changing that address to another state. ECF 48-2 ¶6. Deel does not run its company

6    operations out of California; nor does it maintain any electronic or hard copy documents here. *Id.* ¶7.

7    　　　Indeed, the FAC acknowledges that none of Deel's executives and decision-making personnel

8    reside in or work in California—including the individual Defendants—and instead are "resident" in

9    countries in Europe and the Middle East. ECF 48-2 ¶¶7-8; FAC ¶¶17-19, 155.[3] Rippling names scads of

10   purported co-conspirators in the FAC, including O'Brien, but they live outside California too. *See* FAC

11   ¶¶20-24, 26 (alleging co-conspirators residing in England, Rome, Dubai, Florida and New Jersey).[4] Even

12   accepting Rippling's allegations, none of the alleged tortious conduct occurred in this state. ECF 48-2 ¶9.

13   　　　In any event, it will be far more convenient and inexpensive for the allegedly material witnesses

14   Rippling identifies in the FAC and the Irish Proceedings to travel to Dublin than across the world to this

15   Court. *Id.* ¶8. And Deel can produce any electronic records related to this case in Ireland through its Irish

16   entity, Deel Ireland EOR Limited. *Id.* ¶¶11-12 (affirming Deel can produce documents in Ireland).

17   Conversely, "obtaining electronic evidence like e-mails" from Deel or Rippling's Irish entities for use in

18   this court "can present technical challenges because of requirements in the [Irish] Data Protection Act

19   [2018] and the European Union's General Data Protection Regulation." *Dickens v. NXP Semiconductors*,

20   703 F.Supp.3d 1013, 1021 (N.D. Cal. 2023); ECF 48-1 ¶¶37-39.

21   _____

     [3] Rippling claims a Deel SEC filing lists a "San Francisco, California address" for Defendants Alex and

22   Philippe Bouaziz—omitting that the SEC filing it cites lists the same *office* address that Rippling admits
     Deel has already established is a "mailing address." FAC ¶¶16-18 (citing https://www.sec.gov/Archives/

23   edgar/data/1813695/000181369524000002/xslFormDX01/ primary_doc.xml). Rippling's contention that
     the Bouaziz Defendants' "whereabouts remain unknown," *id.* ¶155, is disingenuous. Deel was

24   forthcoming in providing the *personal* addresses of Alex and Philippe (who live in Israel and Dubai,
     respectively). In response, Rippling made no effort to try to serve them in places they have lived for years,

25   choosing instead to mislead the Court with yet another tale that they were "evading service," which is not
     true. ECF 68.

26   [4] Rippling tries to manufacture a tenuous California connection, alluding to a putative California company
     and "Conspirator-1" and "Conspirator-2," who purportedly are California residents, but does not name

27   them. FAC ¶¶25, 27-28. For the rest of the unnamed co-conspirators and "victims," Rippling makes no
     mention of where they are located at all. *Id.* ¶¶29-35. But even if Rippling had identified *actual* witnesses

28   who were California residents, their inconvenience would be outweighed by the sheer number of material
     witnesses forced to travel thousands of miles to litigate here.

1    Rippling has not identified any witnesses or evidence that will make it inconvenient for it to litigate

2    in Ireland; rather, Rippling already has Irish counsel actively engaged in litigation in the Irish Proceedings

3    based on the same alleged wrongdoing that Rippling admits occurred in Dublin. ECF 48-4 ¶24. As

4    Rippling told the Irish Court, "**Ireland is clearly the jurisdiction most closely connected with the**

5    **wrongs [that are] the subject matter of these proceedings**." *Id.* ¶34. Rippling's representation to the

6    Irish Court was correct; Ireland is an adequate forum, and it is the appropriate forum for this dispute.

7    Because the parties can "provide all of their evidence in [Ireland] but it will [be] difficult to compel

8    non-parties to produce evidence from [Ireland] (or elsewhere in Europe)" here, "the private interest factors

9    concerning access to relevant evidence tips in favor of dismissal." *In re Air Crash*, 760 F.Supp.2d at 844.

10    **B.    An Existing Parallel Litigation Is Proceeding In Ireland**

11    "[T]he Ninth Circuit has made clear that parallel litigation properly may be considered in weighing

12    the private interest factors" and thus "[d]istrict courts within the Ninth Circuit have considered the impact

13    of parallel actions under the ... 'all other practical problems'" factor. *Juniper Networks, Inc. v. Andrade*,

14    2021 WL 3514103, at *10 (N.D. Cal. Aug. 10, 2021); *see also Lueck*, 236 F.3d at 1147 ("Given the

15    existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor

16    of dismissal."); *Van Schijndel*, 434 F.Supp.2d at 780 ("Actions pending in a foreign forum should be taken

17    into account … as [FNC] was designed in part to avoid these inconveniences.").

18    Rippling's efforts to disentangle the action it is pursuing in this Court from the Irish Proceedings

19    is of no moment. ECF 48-4 ¶27. The *Juniper* court found "substantial overlap between" a California action

20    and an action pending in Canada because "[b]oth will require factual determinations whether the

21    [defendant] made material misrepresentations," rejecting plaintiff's argument that the claims in each

22    action required proof of "different elements." *Juniper*, 2021 WL 3514103, at *11. The court held that "the

23    duplication of cost and effort, as well as the risk of inconsistent rulings, that would result from allowing

24    the two cases to proceed on parallel tracks" "weigh[ed] heavily in favor of dismissal." *Id.* at *12; *see also*

25    *Mentawai v. Marcotti*, 2016 WL 7496750, at *5 (C.D. Cal. Mar. 28, 2016) (dismissing action asserting

26    breach of fiduciary duty and trade secrets claims where parties "have Indonesian counsel, so lack of

27    representation in Indonesia is not an issue," and "there is a related case pending in Indonesia," so "[t]o

28    avoid duplicative proceedings and inconsistent rulings, it is in the interest of justice to dismiss this case

12

1   so the claims can be brought… and determined alongside the case currently litigated in Padang").

2   The Irish Proceedings concern the same alleged "wrongdoing" as the FAC; indeed, Rippling relies

3   on the same evidence in both proceedings (most notably, O'Brien's affidavit). ECF 48-4 ¶27; FAC ¶¶2 &

4   n.2, 56 & n.19, 69, 71, 90-91, 125, 132-33, 153, 159. This factor therefore weighs in favor of dismissal.

5   ### C.    Rippling Can Enforce A Judgment In Ireland

6   As a preliminary matter, "any judgment obtained in Ireland against defendants located in the

7   United States would be enforceable in the United States." *Oxley*, 1992 WL 116308, at *2; *see also*

8   *Medicor*, 1997 WL 68564, at *3 (noting "a Swiss judgment may be enforced against AVE to the extent it

9   has assets there, and AVE has an office in Switzerland" and "[i]f the office does not contain sufficient

10  assets, AVE will also be required to agree to satisfy any judgment awarded"). Here, Deel can satisfy any

11  judgment with its Irish assets, and if those are insufficient, will agree to satisfy any judgment awarded.

12  ECF 48-2 ¶12. The private factors all weigh in favor of dismissal.

13  ## IV.   The Public Interest Factors Weigh In Favor Of Dismissal

14  Courts consider the following public interest factors: (1) congestion in the court; (2) local interest

15  of lawsuit; (3) the court's familiarity with governing law; (4) burden on local courts and juries; and (5)

16  the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147; *see also In re Air Crash*,

17  760 F.Supp.2d at 845 (same). All these factors are either neutral or weigh in favor of dismissal here.

18  First, "[i]t is beyond dispute that the docket of this Court is heavily congested," *Summa*, 2016 WL

19  2593868, at *7, and this Court "can ill afford the time and expense of adjudicating a controversy **which**

20  **does not have significant connections to this forum**." *Nai-Chao v. Boeing Co.*, 555 F.Supp. 9, 19 (N.D.

21  Cal. 1982), *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983). The Northern District is

22  one of the busiest courts in the nation: there were 10,547 new case filings and 12,940 total cases pending

23  during the 12-month period ending December 31, 2024, and the median time from filing to trial for civil

24  cases was 34.5 months.[5] Almost 20% of civil cases in this District are over three years old. *Id.*

25  Courts recognize that "the real issue is not whether a dismissal will reduce a court's congestion

26  but whether a trial may be speedier in another court because of its less crowded docket." *Summa*, 2016

27
28  [5] *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December
    31, 2024), United States Courts, https://www.uscourts.gov/sites/default/files/2025-
    02/fcms_na_distprofile1231.2024.pdf (last accessed July 3, 2025).

1    WL 2593868, at *7. Here, Irish courts are much less congested and a speedier trial more likely: "cases in

2    Irish Commercial Court proceed expeditiously… in light of tight timelines directed by the court that are,

3    except for extremely compelling reasons, strictly adhered to." ECF 48-1 ¶34. In fact, "in 2022 and 2023

4    a total of 232 cases were admitted to the Commercial Court and that during that same period approximately

5    195 of those cases were resolved." *Id.* Thus, this factor weighs heavily in favor of dismissal.

6         Second, while both the entity parties are Delaware corporations with principal business places here

7    (FAC ¶¶13, 16), that is the limit of California's "local interest" in the dispute. *See Lueck*, 236 F.3d at 1147

8    (observing while "[t]he citizens of Arizona certainly have an interest in [allegations against] corporations

9    located in their forum ... this interest is slight compared to the time and resources the district court in

10   Arizona would expend if it were to retain jurisdiction"). This corporate formality does not create a

11   meaningful connection to California such that California has an interest here. Deel is in the process of

12   moving its principal place of business, and its San Francisco address is just a mailing address. Deel has

13   no offices, decision-making personnel, or files in California. ECF 48-2 ¶¶6-7. In any event, the location

14   of the alleged wrong is more important than the location of the parties. *See Ranza*, 793 F.3d at 1078

15   (holding Netherlands had greater interest in adjudicating alleged discrimination within its borders than

16   U.S.'s interest in remedying discrimination). Ireland's interest in adjudicating business disputes that arise

17   within its borders and concern Irish citizens and Irish companies is significantly stronger than California's

18   interest in the case.

19        Rippling's conclusory allegations that events took place "in the Northern District of California,

20   and elsewhere" (FAC ¶¶171, 174) are meaningless, because Rippling does not identify any events that

21   took place in California rather than "elsewhere." As shown above, moreover, Rippling's admissions in

22   the FAC and in the Irish Proceedings establish that all the alleged "wrongdoing," key witnesses, and

23   physical evidence are or were in Ireland, not in California. *Supra* at 1-4; *see also* ECF 48-2 ¶9. Moreover,

24   both parties also have Irish subsidiaries in Dublin. As O'Brien's employer, Rippling Ireland is the Rippling

25   entity with the closest nexus to the case. FAC ¶¶2 & n.2, 24 & n.13. Indeed, Rippling Ireland is a plaintiff

26   in the Irish Proceedings. ECF 48-1 ¶20. And well before Rippling named Alex Bouaziz in this action, it

27   named him and Deel as defendants in an action arising from the alleged O'Brien espionage—the Irish

28   Proceedings. ECF 48-4 ¶9. Thus, Ireland has a much stronger interest in this litigation than California,

1    and this factor weighs in favor of dismissal.

2         Third, "[a]lthough this Court need not definitively determine which law will apply" here "before

3    dismissing on forum non conveniens grounds, the possibility that [Irish] law will apply is an additional

4    factor favoring dismissal." *In re Air Crash*, 760 F.Supp.2d at 847.[6] Rippling told the Irish Court that the

5    "matter" of the Irish Proceedings was "prima facie one of Irish national law." ECF 48-4 ¶45. Moreover,

6    "the similarities between" Irish and "American courts" described above, *supra* §II, "neutralize the factor

7    concerning application of governing law" because "[n]either court would have a problem applying the

8    other jurisdiction's law." *Summa*, 2016 WL 2593868, at *7; *see also Huthart v. News Corp.*, 2014 WL

9    12577175, at *13 (C.D. Cal. May 21, 2014) (finding this factor "neutral" because English courts are

10   accustomed to applying U.S. law). Thus, this factor favors dismissal.

11        Fourth, "[w]here the local interest in a controversy is weak as compared to the alternative forum's

12   interest, courts have held that the burden on local courts and juries, and the related costs, are not justified."

13   *Etaliq, Inc. v. Cisco Sys., Inc.*, 2011 WL 13220445, at *8 (C.D. Cal. July 20, 2011) (collecting cases).

14   Here, as shown above, California's local interest is significantly weaker than Ireland's interest. And "[i]n

15   addition to imposing a burden on the community whose tax dollars would have to support the expense of

16   trying this case and whose time would be taken up by sitting as jurors ... [Rippling's] suit would also

17   impede the ability of local litigants to try their cases in this district." *Van Schijndel*, 434 F.Supp.2d at 782.

18   Thus, this public interest factor weighs in favor of dismissal too.

19                                    **CONCLUSION**

20        For these reasons, the Court should dismiss the FAC for forum non conveniens, or in the

21   alternative, stay this action pending resolution of the Irish Proceedings.

22

23   DATED: July 11, 2025              By:    _____/s/ Jason D. Russell_____
                                              JASON D. RUSSELL
24                                            *Attorneys for Defendant Deel, Inc.*

25   _____

26   [6] Because "the choice of law analysis is only determinative [for FNC] when the case involves a [US] statute requiring venue in the United States," this Court need not make a choice of law determination here.
     *Lueck*, 236 F.3d at 1148. Courts routinely dismiss RICO and Defend Trade Secrets Act (DTSA) claims.
27   *See, e.g.*, *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (affirming dismissal of RICO claim because there "is no arguably applicable law that would end the [FNC] inquiry,
28   so no potentially dispositive choice of law determination need have been made"); *SPS Techs.*, 2020 WL 12740596, at *5 (dismissing DTSA claims where plaintiff filed trade secret claims in Canada).