LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

*Counsel for Defendant Deel, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants. | Case No. 3:25-cv-02576-CRB<br><br>**(1) DEEL'S NOTICE OF MOTION AND MOTION TO DISMISS RIPPLING'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6);**<br><br>**(2) DEEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS; and**<br><br>*Under Separate Cover*:<br><br>**(3) [PROPOSED] ORDER.**<br><br>Compl. Filed:    March 17, 2025<br>Am. Compl. Filed:    June 5, 2025<br>Judge:    Hon. Charles R. Breyer<br>Courtroom:    6<br>Hearing Date:    September 19, 2025<br>Hearing Time:    10:00 a.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at 10:00 a.m. on September 19, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco California 94102, Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this motion to dismiss (the "Motion") in its entirety the first amended complaint ("FAC") brought by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling").

This Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). It is based on the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at, or in connection with, the hearing.

## SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Deel provides the following summary of argument. The Motion seeks the dismissal of all six of Rippling's amended causes of action for failure to state a claim for the following reasons:

- Rippling's amended RICO claim fails because it has not plausibly alleged in non-conclusory terms that it has suffered the requisite "concrete financial loss"—which means more than a "mere injury to a valuable intangible property interest"—that was proximately caused by Deel's alleged predicate acts. *See infra* Argument §I.A; *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F.Supp.2d 911, 1019-20 (C.D. Cal. 2011); *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *5-6 (N.D. Cal. July 13, 2020); *Micron Tech., Inc. v. United Microelectronics Corp.*, 2019 WL 1959487, at *11-12 (N.D. Cal. May 2, 2019); *JST Distrib., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *7-8 (C.D. Cal. Mar. 7, 2018).[1] Rippling also has not pled fraudulent predicate acts with particularity as required by Rule 9(b). *See Pollack v. Katz*, 42 F.3d 1401 (9th Cir. 1994); *Slaughter v. Levy*, 39 F.3d 1188 (9th Cir. 1994).

- Rippling has also not adequately alleged the other elements of its amended RICO claim, including

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading.

an "enterprise," or a "pattern of racketeering activity" that threatens Rippling with "continued criminal activity." *See infra* Argument §I.B; *Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020); *Sylabs, Inc. v. Rose*, 2024 WL 2059716, at *6-7 (N.D. Cal. May 8, 2024); *Gjovik v. Apple Inc.*, 2024 WL 2309100, at *11 (N.D. Cal. May 20, 2024); *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 365-66 (9th Cir. 1992); *Bredberg v. Middaugh*, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022).

- Rippling's amended Section 1962(d) RICO conspiracy claim fails because the "failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); 18 U.S.C. §1962(d). It also fails because Rippling has not alleged the requisite conspiracy to commit a RICO violation itself, rather than simply a conspiracy to commit predicate acts. *See Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993); *see infra* Argument §II.

- Rippling's amended federal misappropriation of trade secrets claims fails because Rippling's own allegations show that it did not take the requisite reasonable steps to protect its supposedly confidential business information. *See infra* Argument §III; 18 U.S.C. §1839(3)(A); *United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011); *Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F.Supp.3d 888, 901 (N.D. Ill. 2019).

- Rippling's amended tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") and should be dismissed, as they are based on the "same nucleus of facts" as Rippling's prior CUTSA claim and its current federal trade secrets claim: the alleged misappropriation of Rippling's "confidential information." *See  Tri Tool, Inc. v. Hales*, 2025 WL 775838, at *4-5 (E.D. Cal. Mar. 11, 2025); *Total Recall Techs. v. Luckey*, 2016 WL 199796, at *7-8 (N.D. Cal. Jan. 16, 2016); *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir. 2020); FAC ¶¶200-203, 206, 209, 215, 217; *Infra* Argument §IV.

- Rippling's amended tortious interference with contract claim also fails because Rippling has not adequately alleged plausible facts to satisfy the elements of that claim. Rippling disclaims any reliance on the alleged confidentiality agreement, and that is the only alleged contract between Rippling and the alleged "spy" Keith O'Brien ("O'Brien"). *See infra* Argument §V.A. Rippling admits that it has no employment agreements with O'Brien because he was "formally" employed by a separate subsidiary, Rippling Ireland Limited, which is not a plaintiff. FAC ¶24 n.13.

- Rippling's amended aiding and abetting breach of fiduciary duty claim also fails because O'Brien was not employed directly by Rippling, and thus he owed no fiduciary duties to Rippling. *See infra* Argument §V.B.; *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170, at *26-27 (C.D. Cal. Oct. 24, 2003).

- Rippling's unfair competition claim is derivative of the conduct underlying Rippling's other failed claims. FAC ¶¶215-220. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014). It also fails because Rippling failed to plead a proper remedy that is available under the statute. *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024); *see infra* §V.C.

## STATEMENT OF REQUESTED RELIEF

Deel seeks an order dismissing all six of Rippling's remaining causes of action for failure to state a claim under Federal Rules of Civil Procedure 8(a) and 12(b)(6). Specifically, Deel seeks an order finding that Rippling has failed to state a claim for relief for: (1) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c); (2) Conspiracy to Violate RICO, 18 U.S.C. §1962(d); (3) Misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §1836; (4) Tortious interference with contract; (5) Aiding and abetting breach of fiduciary duty; and (6) Unfair competition, Cal. Bus. & Prof. Code §17200, *et seq*.

DATED: July 11, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Jason D. Russell* _____
JASON D. RUSSELL
*Attorneys for Defendant Deel, Inc.*

iii

# TABLE OF CONTENTS

**PAGE:**

SUMMARY OF ARGUMENT .................................................................................. i

STATEMENT OF REQUESTED RELIEF ............................................................... iii

TABLE OF AUTHORITIES ................................................................................... v

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS .................. 2

ARGUMENT ......................................................................................................... 4

    I.       Rippling's FAC Confirms That Its "Racketeering" Claim Is Not Plausible ..................... 4

          A.     Rippling Concedes It Cannot Allege Concrete Financial Injury Or Proximate Cause ..................... 5

          B.     Rippling Also Still Cannot Allege The Other Elements Of A RICO Claim .......... 7

    II.     Rippling Still Fails To Allege The Requisite Conspiracy To Violate RICO Itself ............ 9

    III.    Rippling Fails To Allege Theft Of Trade Secrets ............................................. 10

    IV.   All Of Rippling's State Law Claims Are Preempted By California's Trade Secret Act ..................... 12

    V.    Even If Not Preempted, The California Claims Should Be Dismissed With Prejudice ..................... 13

          A.     Rippling's Interference Claim Disclaims Reliance On Its Only O'Brien Contract ..................... 14

          B.     O'Brien Was Not Employed By Rippling, So Owed It No Fiduciary Duty .......... 14

          C.     Rippling Still Has Not Alleged A Cognizable UCL Claim ..................... 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
  364 F.Supp.3d 888 (N.D. Ill. 2019) ...................................................................11

*Allen v. Ocwen Loan Servicing, LLC*,
  No. 18-cv-03734-YGR, 2019 WL 13254112 (N.D. Cal. June 12, 2019) ....................................3, 4

*Anza v. Ideal Supply Corp.*,
  547 U.S. 451 (2006)...................................................................6

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) ...................................................................7

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ...................................................................10

*Boar, Inc. v. County of Nye*,
  499 F.App'x 713 (9th Cir. 2012) ...................................................................4

*Bredberg v. Middaugh*,
  No. 21-35156, 2022 WL 2662878 (9th Cir. July 11, 2022)...................................................................7

*Chaset v. Fleer/Skybox International, LP*,
  300 F.3d 1083 (9th Cir. 2002) ...................................................................4, 5

*City of Hope National Medical Center v. Genentech, Inc.*,
  43 Cal.4th 375 (2008) ...................................................................15

*Coronavirus Reporter v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2526 (2024)...................................................................7

*Covert v. City of San Diego*,
  No. 15cv2097 AJB (WVG), 2017 WL 1094020 (S.D. Cal. Mar. 23, 2017) ...................................................................14

*Gill v. Marsh USA, Inc.*,
  No. 24-cv-02366-RS, 2024 WL 3463351 (N.D. Cal. July 18, 2024) ...................................................................15

*Gjovik v. Apple Inc.*,
  No. 23-cv-04597-EMC, 2024 WL 2309100 (N.D. Cal. May 20, 2024)...................................................................7, 9

*Government Employees Insurance Co. v. Nealey*,
  262 F.Supp.3d 153 (E.D. Pa. 2017) ...................................................................10

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010)...................................................................6

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ........................................................................9

*JST Distribution, LLC v. CNV.com, Inc.*,
   No. CV 17-6264 PSG (MRWx), 2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) .................4, 5, 6, 7

*Kang v. PayPal Holdings, Inc.*,
   620 F.Supp.3d 884 (N.D. Cal. 2022) ...............................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ..............................................................................15

*Lee v. Luxottica Retail North America, Inc.*,
   65 Cal.App.5th 793 (2021) ..........................................................................15

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F.Supp.2d 911 (C.D. Cal. 2011) .................................................................6

*Mazzocco v. Lehavi*,
   No. 14CV2112 AJB (JMA), 2015 WL 12672026 (S.D. Cal. Apr. 13, 2015)...............................8

*Micron Technology, Inc. v. United Microelectronics Corp.*,
   No. 17-cv-06932-MMC, 2019 WL 1959487 (N.D. Cal. May 2, 2019)....................................5

*MSP Recovery Claims, Series LLC v. Actelion Pharmaceuticals US, Inc.*,
   No. 3:22-cv-07604-JSC, 2024 WL 3408221 (N.D. Cal. July 12, 2024) ...............................8

*Neilson v. Union Bank of California, N.A.*,
   No. CV 02-06942 MMM (CWx), 2003 WL 27374170 (C.D. Cal. Oct. 24, 2003) .........................15

*Palantir Technologies, Inc. v. Abramowitz*,
   No. 19-cv-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020)...............................5, 9

*Pech v. Doniger*,
   75 Cal.App.5th 443 (2022) ..........................................................................14

*Pollack v. Katz*,
   42 F.3d 1401 (9th Cir. 1994) .........................................................................8

*Pratap v. Wells Fargo Bank, N.A.*,
   63 F.Supp.3d 1101 (N.D. Cal. 2014) .................................................................15

*Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*,
   360 F.Supp.3d 994 (N.D. Cal. 2018),
   *aff'd*, 815 F.App'x 117 (9th Cir. 2020)..............................................................13

*Religious Technology Center v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) .........................................................................9

*Slaughter v. Levy*,
   39 F.3d 1188 (9th Cir. 1994) .........................................................................8

*Slottow v. American Casualty Co. of Reading, Pennsylvania*,
    10 F.3d 1355 (9th Cir. 1993) ...................................................................................15

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ....................................................................................15

*SunPower Corp. v. SolarCity Corp.*,
    No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .....................13

*Sylabs, Inc. v. Rose*,
    No. 23-cv-00849-SVK, 2024 WL 2059716 (N.D. Cal. May 8, 2024) .................1, 9, 14

*Total Recall Technologies v. Luckey*,
    No. C 15-02281 WHA, 2016 WL 199796 (N.D. Cal. Jan. 16, 2016)...........................13

*Tri Tool, Inc. v. Hales*,
    No. 2:22-cv-01515-DAD-CSK, 2025 WL 775838 (E.D. Cal. Mar. 11, 2025).............13

*United States v. Chung*,
    659 F.3d 815 (9th Cir. 2011) ....................................................................................11

*United States v. Turkette*,
    452 U.S. 576 (1981)....................................................................................................7

*UrthTech LLC v. GOJO Industries, Inc.*,
    No. 22-cv-6727 (PKC), 2023 WL 4640995 (S.D.N.Y. July 20, 2023) .......................12

*Vaughan v. Wardhaugh*,
    No. 23-cv-02879-RFL, 2024 WL 2853972 (N.D. Cal. May 10, 2024) ..........................8

*Vaughan v. Wardhaugh*,
    No. 23-cv-02879-RFL, 2025 WL 251694 (N.D. Cal. Jan. 21, 2025),
    *appeal docketed sub nom. Vaughn v. Castlewood Brokers, Inc.*,
    No. 25-591 (9th Cir. Jan. 29, 2025) .............................................................................7

*In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, & Products Liability Litigation*,
    No. 15-md-02672-CRB, 2025 WL 1083215 (N.D. Cal. Apr. 10, 2025) .........................6

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003),
    *overruled on other grounds en banc by Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ......................................................................................4

*Wolf v. Superior Court*,
    107 Cal.App.4th 25 (2003) ......................................................................................15

*Woodside Investments, Inc. v. Complete Business Solutions Group, Inc.*,
    No. 2:20-cv-00042-JAM-CKD, 2020 WL 869206 (E.D. Cal. Feb. 21, 2020) .............11

*Zabit v. Brandometry, LLC*,
    540 F.Supp.3d 412 (S.D.N.Y. 2021)..........................................................................10, 12

## **STATUTES**

18 U.S.C. §1343.................................................................................................................8

18 U.S.C. §1346.................................................................................................................8

18 U.S.C. §1349.................................................................................................................8

18 U.S.C. §1503.................................................................................................................8

18 U.S.C. §1803.................................................................................................................8

18 U.S.C. §1832.................................................................................................................8

18 U.S.C. §1839...............................................................................................................10

18 U.S.C. §1961............................................................................................................7, 8

18 U.S.C. §1962..........................................................................................................4, 10

18 U.S.C. §1964.................................................................................................................4

## **OTHER AUTHORITIES**

1 Roger M. Milgrim & Eric E. Bensen,
    *Milgrim on Trade Secrets* §1.04 (2025)......................................................................10

David W. Quinto & Stuart H. Singer,
    *Trade Secrets: Law and Practice* §2.02[1] (2025) ......................................................10

Defendant Cribl, Inc.'s Notice of Motion and Motion for Partial Judgment on the Pleadings
    [etc.], *Splunk Inc. v. Cribl, Inc.*, No. 22-cv-07611-WHA (N.D. Cal. filed Sept. 1, 2023),
    ECF No. 80 ..................................................................................................................13

**PRELIMINARY STATEMENT**

Recognizing the strength of Deel's motion to dismiss its original complaint, Rippling chose to amend its claims in an effort to avoid dismissal. Rippling has now "thrown everything but the proverbial kitchen sink (although perhaps even that and then some) at the Court in amending its original complaint"—the FAC is nearly double the length of the original complaint—"[y]et despite seemingly emptying its silos," Rippling still fails to state any legally sufficient claims against Deel. *Sylabs, Inc. v. Rose*, 2024 WL 2059716, at *10 (N.D. Cal. May 8, 2024) (dismissing RICO and trade secret claims with prejudice, as well as state law claims as preempted by CUTSA, concluding in light of plaintiff's lengthy amendment that plaintiff "simply cannot state most of these claims"). The Court should follow *Sylabs* here.

To be clear, Deel denies Rippling's new allegations. But more importantly, Rippling's FAC has not cured the serious and dispositive legal problems with each of its causes of action. Rippling's RICO claim still fails for a host of reasons, including because it has not alleged anything close to requisite "concrete financial loss" proximately caused by Deel to sustain a RICO claim. *Infra* §I.A. The FAC also confirms that Rippling also has not alleged a RICO "enterprise" sharing a common purpose to increase profits "for Deel" (as it contains non-Deel-parties with their own alleged goals), or a pattern of predicate acts as to Deel under 18 U.S.C. §1961(1) that pose a threat to Rippling of "continued criminal activity." *Infra* §I.B. Without a substantive RICO claim, Rippling's RICO conspiracy claim cannot stand. *Infra* §II.

Rippling has abandoned its prior California trade secret misappropriation claim, and its federal trade secret claim should similarly meet dismissal. Despite spending over a month tediously amending its claims, Rippling's FAC lays bare that Rippling easily could have imposed—but did not—reasonable steps to keep its "most treasured" information secret. FAC ¶69. Fatal to its claims, **Rippling concedes that it can and did make certain Slack channels "private" and "inaccessible to O'Brien and his searches"** (*id.* ¶124)—it just chose not to do so for its supposed "most sensitive and valuable documents and information," instead opting to make *that* information freely available "in 'preview' mode" to anyone in the world with Rippling login credentials, regardless of whether it was related to a user's job functions. *See, e.g.*, *id.* ¶¶4, 67-71 n.25, 75 n.27. This is the digital equivalent of Coca-Cola posting its secret formula over the water cooler in the all-employee break room, while hiding the daily snack menu in the vault. In fact, that analogy overstates Rippling's security measures: employees have to be on site to use a break

1  room, but Rippling's Slack could be accessed remotely from a foreign contractor's unsecured personal
2  device. *Infra* §III. Thus, Rippling's trade secret claim should now be dismissed with prejudice.

3  Likewise with Rippling's California state law causes of action for tortious interference with
4  contract, aiding and abetting breach of fiduciary duty, and unfair competition, because (1) they are all
5  based on Deel's alleged misappropriation of "confidential information," FAC ¶¶200-203, 206, 209, 215,
6  217, and so are plainly superseded under CUTSA's broad preemption provision (*infra* §IV), and (2)
7  Rippling made no attempt in the FAC to amend them, and thus they fail in the face of Rippling's repeated
8  admission that O'Brien was not in fact a Rippling employee, but was instead "a mid-level payroll
9  operations manager" employed by Rippling's non-party Irish subsidiary, among other reasons. *Infra* §V.

10  Instead of grappling with any of this, the FAC doubles down on hyperbole, now claiming that Deel
11  is a "high-tech chop shop" and a "criminal syndicate" supposedly masquerading as a "multibillion-dollar
12  technology company." FAC ¶¶1, 5. Rippling also pastes in many of the allegations that O'Brien made in
13  his Irish affidavit describing conduct occurring in Ireland (and which is actively being litigated there), and
14  adds nearly 50 paragraphs to the FAC describing the results of an investigation conducted by "Rippling's
15  Irish subsidiary['s]" "security team," which allegedly "showed that a mid-level payroll operations
16  manager in Rippling's Dublin office had been using his internal systems access to gather sensitive data
17  relevant to Deel." *Id.* ¶¶2 nn. 1-2, 130-56. Apart from solidifying this case belongs in Ireland, none of the
18  assertions from O'Brien's Irish affidavit or the Irish security team fix Rippling's American legal claims.

19  Finally, never missing a press opportunity, Rippling improperly laces its FAC with supposed Deel
20  conduct directed to other competitors, FAC ¶¶9, 33-35, 160-69, which is wholly irrelevant to Rippling's
21  claims of harm to itself, and which Rippling does not have standing to pursue. With no legitimate
22  connection to its claims, Rippling's PR tactics expose once again that Rippling is much more interested
23  in trying this case in the media than before this Court. The Court should thus dismiss this matter from its
24  docket, with prejudice, to indulge Rippling's clear desire to litigate instead on the courthouse steps.

25  <u>**SUMMARY OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS**</u>

26  Deel was founded in 2019, and has since grown into the leading global human resources, payroll,
27  and compliance workforce software platform, connecting employers in over 150 countries with remote
28  workers. FAC ¶¶1, 16; *see also* https://www.deel.com/about/. Rippling and Deel were not direct

competitors until late 2022, when Rippling decided to "major[ly] expan[d]" its U.S. operations into international markets where Deel had started and was much larger. FAC ¶41.[2]

In June 2023, O'Brien was hired by Rippling's separate Irish subsidiary to work on "global payroll compliance." FAC ¶24 n.13. Rippling admits that as an employee of a subsidiary, O'Brien had full and lawful access to Rippling's "Slack" messaging platform, among other systems, where Rippling made its supposed "most treasured Corporate Strategy Trade Secrets and Sales and Marketing Trade Secrets" (the "Trade Secrets") freely available to anyone anywhere in the world, with company login credentials, regardless of whether it was related to a user's job functions. *Id.* ¶¶67-69 n.25. Indeed, Rippling alleges it made it extraordinarily easy for *anyone* at the company to access and apparently download its "Trade Secrets" without Rippling even knowing, as Rippling has made the intentional choice to allow "mid-level" contractors like O'Brien to use "preview" mode to view purported "Trade Secrets" on company Slack channels, which "allowed [O'Brien] to see the contents of the channels without joining them" and "alerting" Rippling to his access. *Id.* ¶¶2 n.2, 74-75 n.26. And Rippling concedes it can and did make certain channels "private" and "inaccessible to O'Brien and his searches"—it just chose not to for its "most sensitive and valuable documents and information." *Id.* ¶¶4, 124. Rippling's own allegations show it instead treats its "prized internal assets" like a bowl of free breath mints on a reception desk. *Id.* ¶ 100.

Rippling alleges that from November 2024 to February 2025, O'Brien searched the word "deel" on Rippling's Slack channels approximately 23 times per day on average, which purportedly allowed him to steal all of Rippling's Trade Secrets ("each instance of which occurred from Ireland"). *Id.* ¶¶67, 75. Rippling admits it had no way of knowing that its Trade Secrets were allegedly being "exfiltrated" until

---

[2] Below Deel includes facts from "[p]ublicly accessible websites and news articles" that are not reasonably subject to dispute. *See Kang v. PayPal Holdings, Inc.*, 620 F.Supp.3d 884, 895 (N.D. Cal. 2022) (Breyer, J.); *Allen v. Ocwen Loan Servicing, LLC*, 2019 WL 13254112, at *5 (N.D. Cal. June 12, 2019) (court "may look beyond the plaintiff's complaint to matters of public record" in ruling on motion to dismiss):

Rippling was co-founded in 2016 by Parker Conrad, just two months after he was forced to resign as CEO from his previous company—Zenefits—following high-profile investigations uncovering widespread compliance failures related to its staff's use of software designed by Conrad to "systemically cheat" insurance licensing requirements. FAC ¶13; *see Zenefits Was the Perfect Startup. Then It Self-Disrupted*, https://www.bloomberg.com/features/2016-zenefits (reporting Conrad presided over a "culture of pressuring and bullying employees to cut corners and do the wrong thing"); https://www.sec.gov/files/litigation/admin/2017/33-10429.pdf (fining Conrad for "materially false and misleading statements and omissions to investors" in connection with the cheating). Zenefits' new CEO told employees that "Parker has resigned" because "many of our internal processes, controls, and actions around compliance have been inadequate, and some decisions have just been plain wrong." *See* https://www.wsj.com/articles/zenefits-once-told-employees-no-sex-in-stairwells-1456183097.

O'Brien disclosed to "an investigative reporter"—allegedly as part of Deel's "press strategy"—13 "internal Rippling Slack messages" evidencing Rippling's illicit sanctions-evasion practices in countries like Russia, Belarus, Iran, and Syria. *Id.* ¶¶90, 113-118. Rippling then set up a "private" Slack channel as a "ruse" to catch O'Brien in a "honeypot" to "make a clear and undeniable link between O'Brien and Deel," which Rippling alleges "did not exist" until "March 4, 2025 Irish Time." *Id.* ¶¶118-127. But even O'Brien cannot keep Rippling's story straight, stating in his Irish affidavit that he accessed the honeypot "at the end of February 2025," which is before Rippling's "ruse" Slack channel even allegedly existed. ECF 57-1 ¶27. Based on O'Brien's alleged wrongdoing, Rippling now sues Deel for "racketeering."

## ARGUMENT

### I.    Rippling's FAC Confirms That Its "Racketeering" Claim Is Not Plausible

Rippling alleges that Deel violated RICO under 18 U.S.C. §1962(c). FAC ¶¶170-83. As Rippling's counsel advises defendants on its website, "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Boar, Inc. v. Cnty. of Nye*, 499 F.App'x 713, 715 (9th Cir. 2012) (affirming dismissal of RICO claims); https://www.quinnemanuel.com/media/1419531/risk-of-rico-claims.pdf (same, noting that "the hurdles to pleading damage are high" and the "concrete loss requirement has often prevented plaintiffs from prevailing in RICO cases").

"Given that '[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device,'" *JST Distrib., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *7 (C.D. Cal. Mar. 7, 2018), and the "consequent stigmatizing effect on those named as defendants," courts "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 827 (9th Cir. 2003); *Allen*, 2019 WL 13254112, at *6 (same, dismissing civil RICO claim with prejudice, noting the volume with which the "RICO claims here have been brought by plaintiff's counsel" in other cases). Indeed, Rippling's counsel understands the *in terrorem* effect of asserting baseless RICO claims, routinely bringing them as part of a playbook in at least *forty* (40) different matters over the years.

For a civil RICO claim, a plaintiff must allege that the defendant "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (citing 18 U.S.C. §§1962(c), 1964(c)). The "fifth element includes two related

1   components," which are that a plaintiff must show that (i) "his injury was proximately caused by the

2   [prohibited] conduct" and (ii) "he has suffered a concrete financial loss," which means more than a "mere

3   injury to a valuable intangible property interest." *Id.* "In order to avoid dismissal for failure to state a

4   claim, a [RICO] plaintiff must plead specific facts, not mere conclusory allegations," and "[c]ivil RICO

5   claims based on fraud must be pleaded with particularity pursuant to Rule 9(b)." *JST Distrib.*, 2018 WL

6   6113092, at *6. As shown below, Rippling's RICO claim does not satisfy these elements or standards.

7   ### A.   <u>Rippling Concedes It Cannot Allege Concrete Financial Injury Or Proximate Cause</u>

8   The FAC is silent as to any plausible allegations of concrete financial loss to support a RICO claim.

9   Tellingly, the FAC even *removed* an entire section of Rippling's prior Complaint entitled, "Rippling Has

10  Incurred Significant Harm Due To Deel's Scheme," which itself was inadequate to support a RICO claim.

11  *See* ECF 57-6 at 91. Now, the FAC merely alleges in conclusory terms that "Rippling has been injured in

12  its business and property, including, but not limited to, loss of trade secrets, drawings, intellectual

13  property, protected business information, equipment, business opportunities, reputation, advantageous

14  business relationships (including customer and employee relationships) and profits." FAC ¶183. These

15  allegations which "plead an 'injury' and nothing more" are "plainly insufficient," as "plaintiffs must allege

16  more than a property right to their trade secrets and misappropriation of those trade secrets under state

17  law." *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *5-*6 (N.D. Cal. July 13, 2020)

18  (dismissing RICO claims where "alleged injury is predicated solely on the loss of the exclusive use and

19  confidentiality" and "diminished the economic value of Palantir's trade secrets"); *Micron Tech., Inc. v.

20  United Microelectronics Corp.*, 2019 WL 1959487, at *12 (N.D. Cal. May 2, 2019) (dismissing RICO

21  claim alleging "misappropriation of the Micron trade secrets has caused and will continue to cause Micron

22  irreparable and substantial injury" as "wholly conclusory" and not alleging a "concrete financial loss").

23  Indeed, Rippling's allegations are nearly identical to dismissed alleged RICO injuries in a similar

24  matter brought by Rippling's counsel, where claimant did not "establish that it suffered any 'concrete

25  financial loss' as a result of the lost exclusive use or confidentiality of" its alleged trade secrets, as it was

26  "not foreclosed from using its materials, like market research and pricing matrices, which continued to

27  reside on [claimant's] servers," and "[t]he loss of 'competitive advantage' that sometimes flows from the

28  deprivation of exclusive use is nothing more than a non-concrete 'injury to a valuable intangible property

5

1   interest.'" *Mattel, Inc. v. MGA Ent., Inc.*, 782 F.Supp.2d 911, 1020 (C.D. Cal. 2011).

2       Rippling also "must show that the predicate acts of racketeering are the proximate, and not just

3   foreseeable, causes of the [alleged] injuries," and must "differentiate between the injury caused by each

4   []defendant's alleged pattern of racketeering acts" instead "of racketeering *en masse*." *Mattel*, 782

5   F.Supp.2d at 1023-24, 1034 (finding competitor could not show defendant proximately caused "[a]ny lost

6   profits or lost opportunity that [competitor] suffered as a result of the loss of its interest in the exclusive

7   use and confidentiality of" its trade secrets, where "dozens of intervening variables, like market forces,

8   consumer preferences, and MGA's legitimate efforts" resulted in its competitor's success); *see also Hemi

9   Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the

10  plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury,

11  but was the proximate cause as well.'"). "When a court evaluates a RICO claim for proximate causation,

12  the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."

13  *Anza v. Ideal Supply Corp.*, 547 U.S. 451, 461 (2006).

14      Despite the sound and fury of the FAC, the most Rippling can muster for its "not hypothetical"

15  harm is a single "Rippling *prospective* customer" that Rippling did not even allegedly lose, FAC ¶79, and

16  two other "prospects" who allegedly signed with Deel due to O'Brien's acts, but its allegations show even

17  that is purely speculative. *Id.* ¶85. These allegations are insufficient to state a claim. *See In re Volkswagen

18  'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2025 WL 1083215, at *2 (N.D. Cal. Apr. 10,

19  2025) (Breyer, J.) ("allegation that potential customers would have chosen certain products absent RICO

20  violations is 'non-compensable' and 'speculative'"); *Anza*, 547 U.S. at 459 (dismissing RICO claim when

21  there was a "discontinuity between the RICO violation [mail/wire fraud] and the asserted injury" because

22  the plaintiff's "lost sales could have resulted from factors other than [defendant's] alleged acts of fraud").

23      Rippling does not explain how these two allegedly diverted sales were *proximately* caused by

24  Deel's alleged RICO conduct "as opposed to some other factor, such as price, productive effectiveness,

25  familiarity with the seller, or purchasing habits of customer." *JST Distrib.*, 2018 WL 6113092, at *8. After

26  all, Deel does business with thousands of customers around the world, many of which have previously

27  used Rippling, because of Deel's superior product and services. Rippling's silence says it all. Elsewhere

28  in the FAC, Rippling substitutes adjectives for factual detail, calling its purported harm "serious,"

1    "tremendous," and "immense" without providing any requisite supporting facts. FAC ¶¶10, 99 n.31. As

2    shown above, these conclusory labels simply do not suffice to support a "thermonuclear" RICO claim,

3    and it should accordingly be dismissed with prejudice. *JST Distrib*, 2018 WL 6113092, at *7.

4           **B.**     <u>**Rippling Also Still Cannot Allege The Other Elements Of A RICO Claim**</u>

5           <u>**Enterprise.**</u> To qualify as a RICO "enterprise," a plaintiff must plead that it is "an entity separate

6    and apart from the pattern of activity in which it engages." *Bredberg v. Middaugh*, 2022 WL 2662878, at

7    *1 (9th Cir. July 11, 2022) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Rippling has

8    not done so. FAC ¶¶171-73. Rather, "[t]he alleged racketeering activity is the only apparent connection

9    among" O'Brien, Deel, and others, which is insufficient to establish the existence of an enterprise.

10    *Bredberg*, 2022 WL 2662878, at *1. Because Rippling is including non-Deel persons and entities such as

11    O'Brien, LiquiFi (an alleged competitor), and Snipes (a former LiquiFi employee) in its "enterprise"

12    definition, such inclusion is "fatal" to the RICO claim because Rippling has not plausibly alleged these

13    non-Deel persons and entities "acted with the same purpose in mind," *Vaughan v. Wardhaugh*, 2025 WL

14    251694, at *2 (N.D. Cal. Jan. 21, 2025), as the Deel entities: "developing competing products, generating

15    profits, and soliciting customers *for Deel*." FAC ¶¶24-26, 171-72; *see also Gjovik v. Apple Inc.*, 2024 WL

16    2309100, at *10 (N.D. Cal. May 20, 2024) (dismissing RICO claim where plaintiff did not plausibly allege

17    that "non-Apple entities" shared Apple's same alleged purpose to violate laws to further its "profit").

18           Removing these entities is no help, as that leaves Rippling's allegations largely "center[ing] on the

19    conduct of [Deel] and its employees without describing in any particularity conduct or activity outside of

20    [Deel] as a corporation," *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023), for the alleged

21    purpose of "developing competing products, generating profits, and soliciting customers for Deel." FAC

22    ¶172. Deel would then be "both the enterprise and the RICO defendant, which is not permitted in a RICO

23    claim." *Coronavirus Rep.*, 85 F.4th at 958 (affirming dismissal of RICO enterprise consisting of Apple

24    employees, "their counsel, and friends"). With no common purpose enterprise, the RICO claim fails.

25           <u>**Pattern of Racketeering/Continuing Activity.**</u> A "pattern of racketeering activity" requires at

26    least two related "predicate acts" as defined in 18 U.S.C. §1961(1) that "amount to or pose a threat of

27    *continued* criminal activity" to Rippling. *Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020); 18

28    U.S.C. §1961(5). Rippling has not sufficiently alleged either the requisite predicate acts or continuity.

As an initial matter, Rippling lacks standing to premise any RICO predicate acts on Deel's alleged conduct directed not at Rippling, but at "other Deel competitors" and alleged "[v]ictims," *e.g.*, FAC ¶¶160-69, 175, 179, and the Court should thus disregard them. *MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, 2024 WL 3408221, at *14, *20-21 (N.D. Cal. July 12, 2024) (dismissing with prejudice RICO claims brought on behalf of purported assignees, holding "only a plaintiff which has *itself* been injured in its business or property by a RICO violation has statutory standing to bring a RICO claim").

Rippling asserts the following statutes as predicate acts for RICO: 18 U.S.C. §§1343, 1346, and 1349 (wire fraud and conspiracy to commit the same), 18 U.S.C. §1803(a) [*sic*] (obstruction of justice), and 18 U.S.C. §1832 (theft of trade secrets). FAC ¶174. But Sections 1346 and 1349 are not listed in §1961(1)'s exclusive list of "racketeering activity" and thus are not predicate acts. 18 U.S.C. §1961(1). As to Section 1343 (wire fraud), Rippling must meet Rule 9(b)'s heightened pleading standard for claims sounding in fraud. *See Pollack v. Katz*, 42 F.3d 1401 (9th Cir. 1994) ("When a plaintiff alleges fraudulent acts as the predicate acts in his RICO claim, Fed. R. Civ. P. 9(b) requires that circumstances constituting fraud be stated with particularity.") *see also id.* (affirming dismissal of RICO claims where plaintiff "alleged that on a number of different dates defendant made fraudulent representations by mail, facsimile transmission and phone," but "did not describe the particular contents of the alleged letters, faxes, and phone calls and the role they played in the fraudulent scheme"); *Slaughter v. Levy*, 39 F.3d 1188 (9th Cir. 1994) (same). Rippling does not make any particularized allegations as to *Deel's* conduct, *see* FAC ¶176, choosing instead to focus on others and impermissibly "lump" Deel in "without identifying which Defendants are alleged to have committed which crimes on what occasions." *Vaughan v. Wardhaugh*, 2024 WL 2853972, at *2 (N.D. Cal. May 10, 2024) (dismissing RICO claims); FAC ¶175.

Further, Rippling also cannot rely on 18 U.S.C. §1503 as a predicate act, which is "confined to obstruction of justice claims in the context of influencing or injuring an officer or juror" in *federal* proceedings. *Mazzocco v. Lehavi*, 2015 WL 12672026, at *11 (S.D. Cal. Apr. 13, 2015); 18 U.S.C. §1503(a). The FAC makes clear the only acts of alleged obstruction were in Ireland in connection with the ongoing Irish proceedings, and thus cannot qualify as a RICO predicate act. FAC ¶¶130-56, 180.

That leaves Rippling to rely solely on "theft of trade secrets" under Section 1832 as a predicate act. As set forth below, Rippling's own allegations show nothing that was allegedly taken from Rippling

8

1  qualifies as a "trade secret" under the law, as Rippling chose not to impose reasonable and responsible

2  measures to protect the confidentiality of information it describes as its "most treasured." *Infra* §III. And

3  even if Rippling had properly alleged trade secrets, courts decline to recognize "allegations of multiple

4  thefts" of trade secrets as separate predicate acts for RICO purposes where the defendants' alleged

5  "collective conduct is in a sense a single episode having a singular purpose rather than a series of separate,

6  related acts, rendering such conduct a *single* predicate act." *Sylabs*, 2024 WL 2059716, at *1, *7 (emphasis

7  in original) (dismissing RICO claim failing to allege "at least two acts of theft" where defendants,

8  allegedly "[w]anting to fast-track their own company in the industry, … who were then employed by

9  Sylabs resigned, plundered Sylabs' servers for its non-public information, founded CIQ as a competitor

10  company and patented technologies based on the information they stole"). Here, the FAC similarly alleges

11  collective conduct for the singular purpose of fast-tracking Deel's own business. FAC ¶¶172, 177-79.

12  Finally, "[a]s for the continuity requirement, a plaintiff must prove either 'a series of related

13  predicates extending over a substantial period of time' [known as closed-ended continuity], or 'past

14  conduct that by its nature projects into the future with a threat of repetition' [known as open-ended

15  continuity]." *Gjovik*, 2024 WL 2309100, at *11. Rippling cannot establish closed-end continuity for the

16  alleged conduct lasting only four months to a year. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364,

17  366-67 (9th Cir. 1992) ("Predicate acts extending over a few weeks or months and threatening no future

18  criminal conduct do not satisfy this [continuity] requirement"; "[w]e have found no case in which a court

19  has held the requirement to be satisfied by a pattern of activity lasting less than a year"). Nor can Rippling

20  plead open-ended continuity, as it admits that O'Brien's alleged activity is complete. *Id.* (affirming

21  dismissal where no "threat of activity continuing beyond the conclusion" of an alleged scheme); *Palantir*,

22  2020 WL 9553151, at *14 (finding no open-ended continuity because "[o]nce Palantir initiated this

23  lawsuit, the conduct of the Abramowitz Enterprise ceased"); FAC ¶181. Rippling's RICO claims fail.

24  **II.    Rippling Still Fails To Allege The Requisite Conspiracy To Violate RICO Itself**

25  Rippling's §1962(d) claim fails because the "failure to adequately plead a substantive violation of

26  RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

27  The RICO conspiracy claim fails for the independent reason that Rippling has not plausibly alleged

28  a conspiracy to commit a RICO violation itself, not just a conspiracy to commit the predicate acts. 18

U.S.C. §1962(d); *see also Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise."). "[M]ere association with the enterprise" is not "an actionable §1962(d) violation," as "[a] RICO conspiracy requires proof of an agreement to violate a substantive RICO provision." *Id.* As shown above, Rippling has not plausibly alleged the RICO members all had the goal to enrich *Deel*. *Supra* §I.B.

### III.    Rippling Fails To Allege Theft Of Trade Secrets

Although Rippling abandoned its CUTSA claim, it still asserts a federal trade secret claim. But information is not a "trade secret" unless the owner takes "reasonable measures to keep such information secret." 18 U.S.C. §1839(3)(A). Courts dismiss such claims on the pleadings if they fail to allege reasonable protective measures. *See Zabit v. Brandometry, LLC*, 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021) (plaintiffs' allegations "make plain that they failed to take reasonable measures to protect the secrecy of [trade secrets, which] is fatal to their claim"); *Gov't Emps. Ins. Co. v. Nealey*, 262 F.Supp.3d 153, 168, 178 (E.D. Pa. 2017) ("[T]he specific facts of this case reveal GEICO did not take reasonable measures to protect the secrecy of its alleged trade secrets"); Milgrim, *Trade Secrets* §1.04 ("[C]ourts should not expend resources to assist a trade secret owner that did not expend resources to protect its secret.").

In assessing reasonableness, courts consider "the [i] **size** and [ii] **character** of the enterprise (large sophisticated enterprises are held to a higher 'secrecy effort' standard)," and [iii] the **sensitivity of the trade secrets in question**. Milgrim, *Trade Secrets* §1.04; Quinto, Trade Secrets: Law and Practice §2.02 ("Courts frequently recite that the reasonableness of a plaintiff's protective measures should be gauged in light of the trade secret's value and the plaintiff's degree of sophistication."). Rippling is large and sophisticated. As of April 2024, Rippling was valued at more than $13 billion and had over 3,000 employees.[3] As to character, Rippling is in the data security field, presenting itself as an authority on the "easy" measures a company should take to secure its confidential information, offering software for

---

[3] https://www.rippling.com/blog/how-rippling-runs-it-ensuring-smooth-offboarding; https://www.rippling.com/blog/rippling-announces-series-f-fundraising-and-tender-offer.

"effortlessly" imposing access controls in Slack "with a few clicks."[4] As to the sensitivity of the information, Rippling asserts the Sales and Marketing Information at issue is Rippling's "**most sensitive**" and "**most treasured**" data—apparently even more so than Rippling's own source code. FAC ¶¶4, 69.

Yet Rippling fails to allege that it took any reasonable measures to preserve the secrecy of this information, so cannot claim the privileges of secrecy here:

*First*, Rippling failed to implement basic access controls for its databases containing the alleged Trade Secrets. "Controlling access" to information on a "need-to-know basis" is a fundamental measure to preserving its secrecy. *See United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011). Put another way, a company's decision to share information indiscriminately is *per se* unreasonable. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F.Supp.3d 888, 901 (N.D. Ill. 2019) (no reasonable measures where in "decid[ing] whether to grant someone access" to trade secrets, company "did not make any meaningful inquiry into whether the person *needed* access to the information," granting access to **36% of employee**s).

Here, Rippling's failure to control access is not only unreasonable, it is shocking. Rippling admits that O'Brien—like *all* of Rippling's employees and contractors—was freely able to access the Trade purported Secrets via its third-party databases, even though that information allegedly had no connection and was unrelated to his job functions. FAC ¶¶ 23, 67-129. Indeed, Rippling admits O'Brien could even easily access its supposedly "most confidential" Trade Secrets "in 'preview' mode" on Slack, which allowed him to "see the contents of the channels without joining them" and "alerting" anyone to his access. *Id.* ¶75 n.27. And this access was not limited to O'Brien or even a limited set of Rippling personnel: these databases were remotely accessible to **all** of Rippling's workers on their personal devices, without regard to whether such databases and information were necessary for their job functions. *See id.* ¶67 & n.25.

Although Rippling generally alleges (in a footnote) that it put in place "technological means" to protect its information, Rippling's entire alleged security measures only confirm that the employee is who they purport to be. *Id.* Indeed, and fatal to its claims here, **Rippling concedes that it can and does make**

---

[4] *See* https://www.rippling.com/paid-identity-access-management. Rippling also warned data breaches by insiders are "alarmingly common," https://www.rippling.com/blog/access-control-policies, and lectured providing information on a need-to-know basis is "[o]ne of the most fundamental principles of data security." https://www.rippling.com/blog/data-security-management. The Court may consider these websites exist and make certain representations. *See Woodside Invs. v. Complete Bus. Sols. Grp.*, 2020 WL 869206, at *2 (E.D. Cal. Feb. 21, 2020) ("By judicially noticing the [company] website, the Court takes as true that the website exists and makes certain representations about the company to the public.").

Slack channels "private" and "inaccessible to O'Brien and his searches"—it just chose not to do so for its "most sensitive and valuable documents and information." *Id.* ¶¶4, 124. Thus, the fundamental security issue laid bare in the FAC is that *any and all* Rippling workers can allegedly access and exfiltrate supposedly "confidential" information that is irrelevant to their job, without triggering any Rippling "alert." In other words, Rippling values sales over security, providing far-flung employees with access to its alleged "most sensitive" and "most treasured" information, *on the off chance that they might help close a deal a couple minutes faster*. Rippling made an intentional choice to prioritize rapid sales execution over robust information security, which it could have implemented with a few clicks. This is not accidental— it was a calculated tradeoff. *Id.* ¶¶4, 77, 124.

       *Second*, Rippling alleges that its workers sign confidentiality agreements; those agreements cannot save their claims given Rippling's lack of reasonable access controls. "Taking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade secret[]" or suffice as a reasonable measure in these circumstances. *UrthTech LLC v. GOJO Indus., Inc.*, 2023 WL 4640995, at *12-13 (S.D.N.Y. July 20, 2023) ("[T]here is no allegation that UrthTech restricted access to the information to certain employees on a need-to-know basis."); *Zabit*, 540 F.Supp.3d at 424-25 ("Courts have been skeptical that a confidentiality agreement alone can 'suggest the existence of trade secret.'… [T]he agreements at issue here are insufficient when considered ***in light of the facts acknowledged by Plaintiffs, which reflect a failure to take reasonable measures to guard any secrecy***.").

       The FAC demonstrates that Rippling did not act reasonably in these circumstances to preserve the secrecy of its purported Trade Secrets. Rippling was unquestionably aware of the threat of data breaches posed by malicious insiders, knew it should limit access to its "most treasured" information, and had the means to do so with just a few clicks. But Rippling did none of that, instead preferring to provide thousands of individuals across the world with unfettered access to its "most valuable" information—all in the hopes that one day an employee whose job has nothing to do with sales might someday accelerate closing a sales deal. Rippling's approach is the antithesis of reasonable security measures and inconsistent with the letter and spirit of trade secret law. Its claims should be dismissed.

## IV.   All Of Rippling's State Law Claims Are Preempted By California's Trade Secret Act

       Deel's original dismissal motion argued that Rippling's California state law claims should be

1  dismissed as preempted under CUTSA because they were "based on the same nucleus of facts as the

2  misappropriation of trade secrets claim for relief." *See* Dkt 48 §IV (quoting *Prostar Wireless Grp., LLC*

3  *v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir.

4  2020)). In response, Rippling simply dropped its CUTSA claim from the FAC, and kept its federal trade

5  secret claim making the same allegations. *See* ECF 57-6 at 2. But this does not help Rippling because

6  "CUTSA preemption of other state law claims applies under California law even when the plaintiff has

7  studiously avoided assertion of any trade secret claims." *Tri Tool, Inc. v. Hales*, 2025 WL 775838, at *5

8  (E.D. Cal. Mar. 11, 2025) (dismissing interference and UCL claims as preempted under CUTSA even

9  though plaintiff "has chosen not to plead a CUTSA claim"); *Total Recall Techs. v. Luckey*, 2016 WL

10  199796, at *7-8 (N.D. Cal. Jan. 16, 2016) (despite "strategy" to avoid a CUTSA claim, holding "to the

11  extent Total Recall's claims rely on the alleged misappropriation of Confidential Information, any such

12  claims are superseded by CUTSA"). To quote Rippling's counsel, "[p]ut differently, a plaintiff cannot

13  avoid CUTSA supersession by omitting a formal trade secret claim," including by dropping it in an FAC.

14  *Splunk Inc. v. Cribl, Inc.*, 2023 WL 9424379 (N.D. Cal.) (Quinn Emanuel's motion for judgment on the

15  pleadings on behalf of defendant). Further, "CUTSA's preemptive sweep is broad—it supersedes *all*

16  claims premised on the wrongful taking and use of confidential and proprietary information, even if that

17  information does not meet the statutory definition of a trade secret." *Hales*, 2025 WL 775838, at *4.

18  Here, Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty,

19  and unfair competition claims are preempted under CUTSA, because they are all based on Deel's alleged

20  misappropriation of "confidential information." FAC ¶¶200-203, 206, 209, 215, 217; *see SunPower Corp.*

21  *v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) (applying CUTSA preemption

22  where "the wrongdoing alleged in connection with each of the Non–Trade Secret Claims is in essence the

23  same wrongdoing as was alleged in connection with SunPower's Trade Secret Claim"). The claims fail.

24  **V.     <u>Even If Not Preempted, The California Claims Should Be Dismissed With Prejudice</u>**

25  Even if Rippling's three California claims were not preempted by CUTSA, Rippling made no

26  attempt in the FAC to amend them. *See* ECF 57-6 at 124-28. Thus, they should be dismissed with prejudice

27  for the independent reasons discussed below. *See Hales*, 2025 WL 775838, at *6 (denying leave to amend

28  "in light of plaintiff's failure to remedy the deficiencies in this claim after being given the opportunity to

13

1  do so" and "its failure to provide any new relevant factual allegations"); *see also Sylabs*, 2024 WL

2  2059716, at *10; *Covert v. City of San Diego*, 2017 WL 1094020, at *4 (S.D. Cal. Mar. 23, 2017) ("The

3  failure to amend and state a cause of action against defendant is an admission that plaintiff has stated the

4  case as strongly as he can and there are no facts that could be alleged to cure the defect.").

### A.    <u>Rippling's Interference Claim Disclaims Reliance On Its Only O'Brien Contract</u>

6    Rippling alleges Deel tortiously interfered with O'Brien's "confidentiality agreement" with

7  Rippling. FAC ¶¶200-05. This claim requires: "(1) the existence of a valid contract between the plaintiff

8  and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts

9  designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption

10  of the contractual relationship; and (5) resulting damage." *Pech v. Doniger*, 75 Cal.App.5th 443, 457

11  (2022). Here, Rippling makes a single allegation that "Deel knew or should have known of O'Brien's

12  confidentiality agreement," FAC ¶201, presumably in reference the Confidentiality and Intellectual

13  Property Rights Assignment Agreement that was Rippling's admitted sole attempt to "maintain the

14  secrecy of its" Trade Secrets. *Id.* ¶¶24 n.13, 192. But then Rippling *disclaims* any reliance on this contract,

15  stating: "[t]his cause of action for tortious interference with [O'Brien's] contract is *not* based on the

16  misappropriation of any Sales and Marketing Trade Secrets," despite its allegations just paragraphs earlier

17  that O'Brien "disclose[d] Rippling's confidential information." *Id.* ¶¶202, 205. This ends this claim.

18    Instead, Rippling asserts that its claim is based on Deel's alleged "recruitment" of O'Brien to

19  "induc[e] [him] to breach his *employment agreements with Rippling*." *Id*. But O'Brien *has no employment*

20  *agreements with Rippling*; he was "formal[ly]" employed by Rippling Ireland Limited ("Rippling

21  Ireland")—which is *not* the Plaintiff here. *Id.* ¶24 n.13. Lacking any contract, the claim fails.

### B.    <u>O'Brien Was Not Employed By Rippling, So Owed It No Fiduciary Duty</u>

23    Rippling's fifth claim asserts that Deel "aided and abetted" O'Brien's alleged breach of his

24  fiduciary duty that he purportedly owed Rippling "[a]s a manager *at Rippling*." FAC ¶¶206-14. Rippling's

25  own allegations show that no part of this claim is correct. O'Brien was *not* employed by Rippling; Rippling

26  concedes Rippling Ireland "was O'Brien's employer." FAC ¶24 n.13. That fact is fatal here. O'Brien was

27  hired to be "a mid-level payroll operations manager" by a separate entity, Rippling Ireland (*not* a plaintiff

28  here), to allegedly provide certain services to third-party Rippling. *Id.* ¶2 n.2. This relationship does *not*

create a fiduciary duty from O'Brien to his non-employer Rippling. *Slottow v. Am. Cas. Co. of Reading*, 10 F.3d 1355, 1359 (9th Cir. 1993) ("[E]mployees owe no independent fiduciary duty to a third party with whom they deal on behalf of their employer."); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170, at *26-27 (C.D. Cal. Oct. 24, 2003) (same, dismissing aiding and abetting breach of fiduciary duty claim); *Wolf v. Superior Ct.*, 107 Cal.App.4th 25, 30 (2003) (same); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008) ("[F]iduciary obligations are not necessarily created when one party entrusts valuable intellectual property to another[.]"). Rippling's fifth claim thus fails.

### C.    Rippling Still Has Not Alleged A Cognizable UCL Claim

Rippling's unchanged UCL claim is still derivative of the conduct underlying Rippling's other doomed claims. FAC ¶¶215-220. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014). The UCL claim also "fails for the independent reason that it has failed to plead the appropriate remedy." *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024). Rippling's UCL claim seeks "damages," "punitive damages," and "attorneys' fees." FAC ¶¶218-20. But none of that is recoverable under the UCL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("[A]ttorney['s] fees and damages, including punitive damages, are not available under the UCL."); *Somers v. Apple, Inc.*, 729 F.3d 953, 962 n.4 (9th Cir. 2013) ("reject[ing]" argument for assertion of damages under UCL).

The UCL permits restitution in limited situations, but not those alleged here. "[C]ompensation for lost business is *not* recoverable in an action against a business competitor under the UCL." *Lee v. Luxottica Retail N. Am., Inc*., 65 Cal.App.5th 793, 804-07 (2021) (a business does not have "a vested property right in the share of the market that it occupies"). Rippling is Deel's competitor. Rippling claims it lost "the benefits of its own substantial investment and efforts" due to the actions of a third party, O'Brien. FAC ¶217. This is not proper restitution vis-à-vis Deel. As such, Rippling's UCL claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Deel's Motion should be granted, and all Rippling's claims dismissed.

DATED: July 11, 2025                    By:    _____*/s/ Jason D. Russell*_____
                                                         JASON D. RUSSELL
                                                    *Attorneys for Defendant Deel, Inc.*