1    LANCE A. ETCHEVERRY (SBN 199916)
     lance.etcheverry@skadden.com
2    JACK P. DICANIO (SBN 138782)
     jack.dicanio@skadden.com
3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     525 University Avenue
4    Palo Alto, California 94301
     Telephone:    (650) 470-4500
5    Facsimile:    (650) 470-4570

6    JASON D. RUSSELL (SBN 169219)
     jason.russell@skadden.com
7    ADAM K. LLOYD (SBN 307949)
     adam.lloyd@skadden.com
8    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     2000 Avenue of the Stars, Suite 200N
9    Los Angeles, California 90067
     Telephone: (213) 687-5000
10   Facsimile:  (213) 687-5600

11   *Counsel for Defendant Deel, Inc.*

12                      **UNITED STATES DISTRICT COURT**

13                    **NORTHERN DISTRICT OF CALIFORNIA**

14                         **SAN FRANCISCO DIVISION**

15   PEOPLE CENTER, INC. D/B/A              Case No.: 3:25-cv-02576-CRB
     RIPPLING, a Delaware corporation,
16                                          **(1) DEEL'S NOTICE OF SPECIAL
                   Plaintiff,              MOTION AND SPECIAL MOTION TO
17                                          STRIKE PLAINTIFF'S REMAINING
            v.                              CALIFORNIA STATE LAW CLAIMS IN
18                                          FIRST AMENDED COMPLAINT;**

19   DEEL, INC., a Delaware corporation,    **(2) MEMORANDUM OF POINTS AND
     ALEXANDRE ("ALEX") BOUAZIZ, an        AUTHORITIES IN SUPPORT; and**
     individual, PHILIPPE BOUAZIZ,
20   an individual, DANIEL JOHN ("DAN")    *Under Separate Cover*:
     WESTGARTH, an individual, and DOES 1-
21   100,                                   **(3) [PROPOSED] ORDER.**

22                 Defendants.
                                            Compl. Filed:     March 17, 2025
23                                          Am. Compl. Filed: June 5, 2025
                                            Judge:            Hon. Charles R. Breyer
24                                          Courtroom:        6
                                            Hearing Date:     September 19, 2025
25                                          Hearing Time:     10:00 a.m.

26

27

28

---

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at 10:00 a.m. on September 19, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco California 94102, Defendant Deel, Inc. ("Deel") will, and hereby does, present for hearing by the Court this Special Motion to Strike Plaintiff People Center, Inc. d/b/a Rippling's ("Rippling")'s remaining California state law claims in its First Amended Complaint ("FAC") for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition (the "anti-SLAPP Motion").

This anti-SLAPP Motion is filed to enforce the substantive rights protected pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code §425.16, and is based on this Notice of Special Motion and Special Motion to Strike, the attached Memorandum of Points and Authorities, the pleadings and papers filed in this action, all matters of which judicial notice may be taken, and such additional papers and arguments as may be presented at or in connection with the hearing on this Motion.

## SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Deel provides the following summary of argument. The anti-SLAPP Motion seeks to strike Rippling's remaining California state law claims for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition for the following reasons:

- Analyzing an anti-SLAPP motion involves a two-step inquiry, with shifting burdens. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In the first step, the defendant must "must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech" (oft referred to as "protected activity"). *Id.* "If the defendant satisfies this requirement, the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.*

- Deel has carried its burden on the first step of the anti-SLAPP analysis. *See infra* Argument §I. Rippling alleges that Deel facilitated Keith O'Brien ("O'Brien")'s whistleblowing activities in disclosing evidence of Rippling's illicit sanctions-evasion activities—a matter of public interest—

to the media as part of a "press strategy," and bases its remaining California claims for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition on this alleged conduct. FAC ¶¶113-118, 200-203, 206, 209, 215, 217. Conduct in furtherance of "pre-publication or pre-production acts such as investigating" and "newsgathering" for press stories on matters of public interest is protected activity under the United States Constitution and the California Constitution pursuant to California's anti-SLAPP statute. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953-54 (9th Cir. 2013); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422-23 (9th Cir. 2014); *Gunn v. Drage*, 65 F.4th 1109, 1122 (9th Cir. 2023); *Eliott v. Lions Gate Ent. Corp.*, 639 F.Supp.3d 1012, 1023 (C.D. Cal. 2022); *Geiser v. Kuhns*, 13 Cal.5th 1238, 1249-1255 (2022); *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1009, 1017-19 (2021); *Sandlin v. McLaughlin*, 50 Cal.App.5th 805, 825 (2020); *Briganti v. Chow*, 42 Cal.App.5th 504, 509 (2019); Cal. Civ. Proc. Code §§425.16(b)(1), (e)(4).[1]

- Ripping cannot carry its burden on the second step of the anti-SLAPP analysis, because it has not stated a claim for tortious interference with contract, aiding and abetting breach of fiduciary duty, or unfair competition. *See infra* Argument §II; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

- Rippling's amended tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") and should be dismissed, as they are based on Deel's alleged misappropriation of "internal confidential Rippling information of value." *See  Tri Tool, Inc. v. Hales*, 2025 WL 775838, at *5 (E.D. Cal. Mar. 11, 2025); *Total Recall Techs. v. Luckey*, 2016 WL 199796, at *8 (N.D. Cal. Jan. 16, 2016); *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir. 2020); FAC ¶¶113, 201-03, 209, 217; *Infra* Argument §II.A.

- Rippling's amended tortious interference with contract claim also fails because Rippling has not adequately alleged plausible facts to satisfy the elements of that claim, and Rippling disclaims any

---

[1] Unless noted, all emphasis is added, and all internal citations and punctuation omitted for ease of reading.

reliance on the only contract that Rippling claims it has with Keith O'Brien ("O'Brien")—the alleged confidentiality agreement. *See infra* Argument §II.B.1. Rippling admits it has no employment agreements with O'Brien since he was employed by its separate subsidiary, Rippling Ireland Limited, who is not a plaintiff. FAC ¶24 n.13.

- Rippling's amended aiding and abetting breach of fiduciary duty claim also fails because O'Brien was not employed by Rippling. *See infra* Argument §II.B.2.; *Slottow v. Am. Cas. Co. of Reading*, 10 F.3d 1355, 1359 (9th Cir. 1993); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374170, at *26 (C.D. Cal. Oct. 24, 2003).

- Rippling's unfair competition claim is also derivative of the conduct underlying Rippling's other failed claims. FAC ¶¶215-220. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014). It also fails because Rippling failed to plead a proper remedy that is available under the applicable statute. *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024); *see infra* §II.B.3.

## STATEMENT OF REQUESTED RELIEF

Deel seeks an order striking Rippling's remaining California state law causes of action pursuant to California's anti-SLAPP statute, as Rippling bases them on Deel's alleged protected conduct and Rippling cannot carry its burden to show a reasonable probability of prevailing on any of them: (1) Tortious interference with contract; (2) Aiding and abetting breach of fiduciary duty; and (3) Unfair competition, Cal. Bus. & Prof. Code §17200, *et seq*.


DATED: July 11, 2025


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Defendant Deel, Inc.*

1

# **TABLE OF CONTENTS**

2

Page

3  SUMMARY OF ARGUMENT ................................................................................................ i

4  STATEMENT OF REQUESTED RELIEF ........................................................................... iii

5  PRELIMINARY STATEMENT .............................................................................................1

6  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................................2

7  LEGAL STANDARD..............................................................................................................4

8  ARGUMENT ...........................................................................................................................5

9       I.      Each Of Rippling's State Law Claims Is Based On Deel's Protected Activity..................5

10             A.      Rippling's State Law Claims Implicate Deel's Protected Activity ........................6

11             B.      All Of Rippling's State Law Claims Arise From Deel's Protected Activity..........8

12      II.     Rippling Cannot Show A Reasonable Likelihood of Success On Its Claims....................9

13             A.      All Of Rippling's Remaining State Law Claims Are Preempted By
               CUTSA .................................................................................................................10

14

15             B.      Even If Not Preempted, The California Claims Should Be Stricken
               Without Leave.......................................................................................................11

16             1.      Rippling's Interference Claim Disclaims Reliance On Its O'Brien
                       Contract................................................................................................11

17

18             2.      O'Brien Was Not Employed By Rippling, So Owed It No
                       Fiduciary Duties..................................................................................12

19             3.      Rippling Still Has Not Alleged A Cognizable UCL Claim ....................13

20  CONCLUSION.......................................................................................................................13

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Alderson v. United States*,
    718 F.Supp.2d 1186 (C.D. Cal. 2010),
    *aff'd*, 686 F.3d 791 (9th Cir. 2012) ...........................................................................4, 9

*Blue v. Office of Inspector General*,
    23 Cal.App.5th 138 (2018) .......................................................................................7

*Bonni v. Street Joseph Health System*,
    11 Cal.5th 995 (2021) ...........................................................................................8, 9

*Briganti v. Chow*,
    42 Cal.App.5th 504 (2019) .......................................................................................7

*Brodeur v. Atlas Entm't, Inc.*,
    248 Cal.App.4th 665 (2016) .....................................................................................7

*City of Hope National Medical Center v. Genentech, Inc.*,
    43 Cal.4th 375 (2008) ............................................................................................12

*CoreCivic, Inc. v. Candide Group, LLC*,
    46 F.4th 1136 (9th Cir. 2022) ...............................................................................1, 10

*Covert v. City of San Diego*,
    No.: 15cv2097 AJB (WVG),
    2017 WL 1094020 (S.D. Cal. Mar. 23, 2017) .........................................................11

*DC Comics v. Pacific Pictures Corp.*,
    706 F.3d 1009 (9th Cir. 2013) ..................................................................................1

*Doe v. Gangland Productions, Inc.*,
    730 F.3d 946 (9th Cir. 2013) ............................................................................1, 5, 6

*Eliott v. Lions Gate Entm't Corp.*,
    639 F.Supp.3d 1012 (C.D. Cal. 2022) ....................................................................6, 7

*Geiser v. Kuhns*,
    13 Cal.5th 1238 (2022) ..........................................................................................7, 8

*Gill v. Marsh USA, Inc.*,
    No. 24-cv-02366-RS,
    2024 WL 3463351 (N.D. Cal. July 18, 2024) ...........................................................13

*Graham-Sult v. Clainos*,
    756 F.3d 724 (9th Cir. 2014) ....................................................................................8

v

*Greater L.A. Agency on Deafness, Inc. v. Cable News Net., Inc.*,
    742 F.3d 414 (9th Cir. 2014) ..................................................................................6

*Gunn v. Drage*,
    65 F.4th 1109 (9th Cir. 2023) .................................................................................8

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022) ...................................................................13

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ...........................................................................2, 4, 5

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ..................................................................................1

*Hooked Media Group, Inc. v. Apple Inc.*,
    55 Cal.App.5th 323 (2020) .....................................................................................9

*Hupp v. Freedom Communications, Inc.*,
    221 Cal.App.4th 398 (2013) ...................................................................................6

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) .........................................................................................13

*Lee v. Luxottica Retail North America, Inc.*,
    65 Cal.App.5th 793 (2021) ...................................................................................13

*Mogan v. Sacks, Ricketts & Case LLP*,
    No. 21-cv-08431-TSH,
    2022 WL 94927 (N.D. Cal. Jan. 10, 2022),
    *aff'd*, Nos. 22-15254, 22-15793,2023 WL 2983577 (9th Cir. Apr. 18, 2023) ..............5

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ................................................................................9

*Neilson v. Union Bank of California, N.A.*,
    No. CV 02-06942-MMM (CWx),
    2003 WL 27374170 (C.D. Cal. Oct. 24, 2003) ......................................................12

*Pech v. Doniger*,
    75 Cal.App.5th 443 (2022) ...................................................................................12

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) .............................................................................5, 10

*Pratap v. Wells Fargo Bank, N.A.*,
    63 F.Supp.3d 1101 (N.D. Cal. 2014) .....................................................................13

*Prostar Wireless Group, LLC v. Domino's Pizza, Inc.*,
    360 F.Supp.3d 994 (N.D. Cal. 2018),
    *aff'd*, 815 F.App'x 117 (9th Cir. 2020)..................................................................10

*Run the World Inc. v. Jiang,*
    No. 23-cv-03130-AMO,
    2025 WL 948059 (N.D. Cal. Mar. 28, 2025) ..................................................................9

*Sandlin v. McLaughlin,*
    50 Cal.App.5th 805 (2020) ...................................................................................7, 8

*Slottow v. American Casualties Co.,*
    10 F.3d 1355 (9th Cir. 1993) ........................................................................................12

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) ........................................................................................13

*Splunk Inc. v. Cribl, Inc.,*
    No. 22-cv-07611-WHA,
    2023 WL 9424379 (N.D. Cal. Sept. 1, 2023) ...............................................................10

*SunPower Corp. v. SolarCity Corp.,*
    No. 12–CV–00694–LHK,
    2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ...............................................................11

*Sylabs, Inc. v. Rose,*
    No. 23-cv-00849-SVK,
    2024 WL 2059716 (N.D. Cal. May 8, 2024) .................................................................11

*Tri Tool, Inc. v. Hales,*
    No. 2:22-cv-01515-DAD-CSK,
    2025 WL 775838 (E.D. Cal. Mar. 11, 2025) ............................................................10, 11

*Total Recall Technologies v. Luckey,*
    No. C 15-02281 WHA,
    2016 WL 199796 (N.D. Cal. Jan. 16, 2016) ..................................................................10

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................1, 5

*Wolf v. Superior Court,*
    107 Cal.App.4th 25 (2003) ...........................................................................................12

## **STATUTES**

50 U.S.C. §1705 ....................................................................................................................7

50 U.S.C. §4315 ....................................................................................................................7

Cal. Bus. & Prof. Code §17200 ...........................................................................................9

Cal. Civ. Proc. Code §425.16 ................................................................................... *passim*

# <u>OTHER AUTHORITIES</u>

Michael Roddan and Cory Weinberg, *The Bitter Fintech Feud That Stretches From Silicon
      Valley to Moscow*, The Information (Feb. 27, 2025),
      https://www.theinformation.com/articles/the-bitter-fintech-feud-that-stretches-from-
      silicon-valley-to-moscow.............................................................................................................4, 8

DEEL'S SPECIAL MOTION TO STRIKE FAC                          CASE NO.: 3:25-cv-02576-CRB

## PRELIMINARY STATEMENT

After a Dublin-based employee for Rippling's Irish subsidiary exposed over two dozen internal messages evidencing Rippling's illegal facilitation of payments to sanctioned entities in Russia, FAC ¶¶113-118, Rippling sought to deflect attention away from itself. One of the ways it chose to do that was to craft a far-fetched "spy" story in a made-for-media federal complaint accusing its more successful competitor, Deel, of criminal "racketeering" under the RICO statute and trade secret theft, among other things. While Deel's concurrently filed Rule 12(b)(6) motion to dismiss demonstrates the complete hollowness of Rippling's causes of action, Rippling's FAC is infected with other significant legal errors.

To wit: Rippling appears to be accusing Deel of "direct[ing]" O'Brien's whistleblowing activities in disclosing evidence of Rippling's illicit activities to the press—which Rippling describes as "internal confidential Rippling information of value"—and then seeks to base liability on this conduct. *See Id.* ¶¶113-118 (alleging Deel facilitated O'Brien's whistleblowing as part of a ***"press strategy"*** to damage Rippling). The problem for Rippling is that conduct in furtherance of "pre-publication or pre-production acts such as investigating" and "newsgathering" for press stories on matters of public interest is protected activity under the United States Constitution and the California Constitution pursuant to California's "anti-SLAPP" statute. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).[2]

When a plaintiff attempts to base state law tort liability on a defendant's protected activity and free speech rights, California law "provides for a special motion to strike that is intended to stop such lawsuits early in the litigation process." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013). This "special motion to strike" is often referred to as an "anti-SLAPP motion." Cal. Civ. Proc. Code §425.16(b)(1). Under California's anti-SLAPP statute, if a cause of action "aris[es] from any act … in furtherance of [a] person's right of petition or free speech," the court shall strike the cause of action unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.*

Thus, analyzing an anti-SLAPP motion involves a two-step inquiry, with shifting burdens. *See*

---

[2] "A [**S**trategic **L**awsuit **A**gainst **P**ublic **P**articipation] is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

The Ninth Circuit has consistently held that California's anti-SLAPP statute applies in federal court, but is limited to state law claims. *See, e.g., CoreCivic, Inc. v. Candide Grp.*, LLC, 46 F.4th 1136, 1138 (9th Cir. 2022) (declining to overrule "our long line of precedents holding that California's anti-SLAPP statute applies in federal court"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims.").

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In the first step, the defendant must "must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech" (oft referred to as "protected activity"). *Id*. "If the defendant satisfies this requirement, the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id*.

Here, both steps of the anti-SLAPP analysis support striking Rippling's three remaining California state law claims for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition. Under step one, each of Rippling's state law claims expressly arises from its allegations that Deel "directed" O'Brien's "investigation" and "newsgathering" with reporters to expose Rippling's wrongdoing to the public, which is classic protected First Amendment activity. *Infra* §I.  And under step two, Rippling cannot carry its burden to show *any* probability, much less a reasonable probability, that it will prevail on any of the claims at issue here, since all of them are preempted by California's Uniform Trade Secrets Ac ("CUTSA") and none of them are adequately pled and in any event. *Infra* §II.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Except as relevant for this anti-SLAPP Motion, since Deel has provided a detailed factual background of the parties' dispute in its concurrently filed forum non conveniens motion and its Rule 12(b)(6) motion to dismiss, Deel does not further burden the Court with reproducing those facts here.

In June 2023, O'Brien was hired as a "mid-level manager" by Rippling's separate Irish subsidiary to work on "global payroll compliance." FAC ¶¶2 n.2, 24 n.13. Rippling admits that as an employee of a subsidiary, O'Brien had full and lawful access to Rippling's "Slack" messaging platform, among other systems, where Rippling made its supposed "most treasured Corporate Strategy Trade Secrets and Sales and Marketing Trade Secrets" (the alleged "Trade Secrets") freely available to anyone anywhere in the world, with company login credentials, regardless of whether it was related to a user's job functions. *Id*. ¶¶67-69 n.25. Indeed, Rippling alleges that it made it extraordinarily easy for *anyone* at the company to access and apparently download its alleged Trade Secrets without Rippling even knowing, as Rippling has made the intentional choice to allow "mid-level" contractors like O'Brien to use "preview" mode to view purported "Trade Secrets" on company Slack channels, which "allowed [O'Brien] to see the contents

of the channels without joining them" and "alerting" Rippling to his access. *Id.* ¶¶2 n.2, 74-75 n.27. And Rippling concedes it can and did make certain channels "private" and "inaccessible to O'Brien and his searches"—it just chose not to for its "prized internal assets" and "most sensitive and valuable documents and information." *Id.* ¶¶4, 100, 124.

Rippling alleges that from November 2024 to February 2025, O'Brien searched the word "deel" on Rippling's Slack channels approximately 23 times per day on average, which purportedly allowed him to steal all of Rippling's alleged Trade Secrets ("each instance of which occurred from Ireland"). *Id.* ¶¶67, 75. Rippling admits it had no way of knowing that its alleged Trade Secrets were allegedly being "exfiltrated" until O'Brien disclosed to "an investigative reporter"—allegedly at Deel's "direct[ion]" as part of a "**press strategy**"—13 "internal Rippling Slack messages" evidencing Rippling's illicit sanctions-evasion practices in countries like Russia, Belarus, Iran, and Syria. *Id.* ¶¶90, 113-118. Then, in February 2025 following an investigation to find the whistleblower, Rippling identified O'Brien as "the source" of over a dozen "internal Rippling Slack messages" that had been disclosed to an "investigative reporter at *The Information*." *Id.* ¶¶114-116.

On February 18, 2025, the journalist "contacted Rippling about a forthcoming article" that he had been working on "for the past few weeks," that listed eleven assertions regarding "Rippling's sanctions compliance program" relating to payments into Russia and other sanctioned jurisdictions. *Id.* ¶¶114-115. Each individual assertion was followed by "an internal Rippling Slack message—13 messages in total—that supposedly supported or related to the assertion." *Id.* ¶115. The "fact that internal Rippling Slack messages (which are only available to Rippling employees) were in the possession of someone other than a Rippling employee caused Rippling to immediately open a security investigation" to find the leaker. *Id.*

Rippling's investigation allegedly showed that "these messages came from thirteen different channels in Rippling's Slack workspace, and that the messages all contained certain searchable keywords ('Russia,' 'Belarus,' 'Iran,' 'Syria,' and/or 'Sanctions')." *Id.* ¶116. Rippling concluded O'Brien was "the source" responsible for the leak, as his "specific, targeted, and highly unusual search terms corresponded with" each of the eleven points raised by *The Information*'s reporter beginning the week before the journalist contacted Rippling about the story. *Id.* Rippling alleges that O'Brien was "directed" by Deel to run these searches for the "communications-related purposes" of making these disclosures of "internal

confidential Rippling information of value" to the journalist as part of Deel's "press strategy." *Id.* ¶¶113, 117-118. On this basis, Rippling alleges that by causing O'Brien to reveal this supposed "internal confidential Rippling information of value" to the press, Deel is liable to Rippling for (1) efforts to induce O'Brien to breach his "employment agreements" with Rippling Ireland and his supposed duty of loyalty; and (2) unfair competition. *Id.* ¶¶113, 200-203, 206, 209, 215, 217. Rippling expressly incorporates its allegations about Deel "direct[ing]" O'Brien's leak of "confidential Rippling information" in *The Information* article into each of its state law causes of action as a basis for liability. *Id.* ¶¶200, 206, 215.

On February 27, 2025, following O'Brien's disclosures, *The Information* reported that from March 2024 and continuing through at least December 2024, Rippling facilitated payments to sanctioned Russian banks, and in late 2024 "scrambled to delete material from its website that encouraged customers to use [Rippling] if they wanted to send money to Russian contractors, internal correspondence shows." *See* https://www.theinformation.com/articles/the-bitter-fintech-feud-that-stretches-from-silicon-valley-to-moscow [hereafter *The Information* Article] (reporting "[i]n March 2024, JPMorgan froze two Rippling payments to a contractor based in Moscow who held an account at a sanctioned Russian bank, according to records of the payment," and Rippling facilitated further payments in September and December 2024).

Rippling's FAC does little to change these allegations from its original complaint. *See* ECF 57-6 at 79-82. Indeed, in response to Deel's first anti-SLAPP motion directed to the state law causes of action in Rippling's original complaint (*see* ECF 50), Rippling dropped its CUTSA claim in its FAC, likely because it recognized that it is axiomatic that "there simply cannot be any trade secret about ongoing illegality." *Alderson v. United States*, 718 F.Supp.2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012). But because Rippling continues to base liability for its remaining three state law causes of action on Deel's alleged "press strategy" of disclosing Rippling's illicit sanctions evasion to the media—which it describes as "internal confidential Rippling information of value" FAC ¶¶113—Deel now renews its anti-SLAPP motion to strike those three remaining state law claims from the FAC.

## LEGAL STANDARD

"[C]ourts are directed to construe the anti-SLAPP statute broadly" to effectuate its purpose of protecting First Amendment rights. *Herring*, 8 F.4th at 1155; Cal. Civ. Proc. Code §425.16(a) (same).

As noted above, analyzing an anti-SLAPP motion "involves a two-step inquiry." *Herring*, 8 F.4th

1    at 1155. At the first step, "the moving defendant must make a prima facie showing that the plaintiff's suit

2    arises from an act in furtherance of the defendant's constitutional right to free speech." *Herring*, 8 F.4th.

3    at 1155. "If the defendant satisfies this requirement, the burden then shifts to the plaintiff" at the second

4    step "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive

5    dismissal." *Id.* "The district court must grant the defendant's motion and dismiss the complaint if the

6    plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff."

7    *Id.*

8         An anti-SLAPP challenge can come in two forms—a legal challenge or a factual challenge. The

9    step two analysis depends on the form of the challenge. An anti-SLAPP motion that brings a legal

10   challenge contests "only the legal sufficiency of a claim" under step two. *Planned Parenthood Fed'n of*

11   *Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). An anti-SLAPP motion that brings

12   a factual challenge contests "the factual sufficiency of a claim," requiring an evidentiary showing from

13   the plaintiff. *Id.* Here, Deel bring only a ***legal*** challenge under step two of the anti-SLAPP inquiry. Thus,

14   the Court should "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a

15   claim is properly stated" under step two of the analysis. *Id.*

16                                    **ARGUMENT**

17   **I.    Each Of Rippling's State Law Claims Is Based On Deel's Protected Activity**

18        Under step one, Deel "must make an initial prima facie showing that the plaintiff's [claims] arise[]

19   from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110.

20   That burden "is not an onerous one." *Mogan v. Sacks, Ricketts & Case LLP*, 2022 WL 94927, at *11 (N.D.

21   Cal. Jan. 10, 2022), aff'd, 2023 WL 2983577 (9th Cir. Apr. 18, 2023). Importantly, "a plaintiff's assertion

22   that its claims are based on defendants' alleged abusive activity does not exempt a lawsuit from anti-

23   SLAPP scrutiny." *Gangland*, 730 F.3d at 954. At step one, "a court does not evaluate whether defendant's

24   conduct was lawful or unlawful." *Id.* Thus, defendants may satisfy "their burden to show that they were

25   engaged in conduct in furtherance of their right of free speech under the anti-SLAPP statute, even when

26   their conduct was allegedly unlawful." *Id.*

27        Here, Deel has made a prima facie showing that all of Rippling's state law claims implicate

28   protected activity because they are each based on allegations that Deel facilitated O'Brien's disclosure to

1  the press of Rippling's attempts to evade sanctions on Russia and other countries. Exposing corruption

2  through the news media is classic First Amendment activity. And the claims arise out of the protected

3  activity because they each seek to establish liability based on that activity.

### A.    Rippling's State Law Claims Implicate Deel's Protected Activity

5  Protected activity includes "***any*** … conduct [1] in furtherance of the exercise of the constitutional

6  right of petition or the constitutional right of free speech [and 2] in connection with a public issue or an

7  issue of public interest." Cal. Civ. Proc. Code §425.16(e)(4). The conduct targeted in Rippling's FAC

8  meets both requirements to be considered protected activity.

9  To start, Deel's alleged conduct was "in furtherance of the exercise of the constitutional right of …

10  free speech." *Id.* "An act is in furtherance of the right of free speech if the act helps to advance that right

11  or assists in the exercise of that right." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network,*

12  *Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) [*GLAAD*]. "For this purpose, it will suffice if the activity is

13  communicative, or evinces an intent to convey a particularized message and in the surrounding

14  circumstances the likelihood was great that the message would be understood by those who viewed it."

15  *Eliott v. Lions Gate Ent. Corp.*, 639 F.Supp.3d 1012, 1023 (C.D. Cal. 2022).

16  Here, the FAC alleges that Deel, via O'Brien, communicated  Rippling's internal information to a

17  reporter as part of a "**press strategy**" to expose Rippling's illegal efforts to evade sanctions on Russia and

18  other jurisdictions by coordinating unlawful payments to Russian banks. FAC ¶¶113-116. Gathering

19  information and communicating it to members of the press to facilitate publication of that information

20  furthers free speech rights by allowing the speaker to reach a broad, public audience. *See, e.g.*, *GLAAD*,

21  742 F.3d at 423 (holding that conduct relating to "report[ing] the news" was in furtherance of protected

22  activity); *Gangland*, 730 F.3d at 953 (holding that "pre-publication or pre-production acts such as

23  investigating" and "newsgathering" information for a documentary was in furtherance of protected

24  activity); *Eliott*, 639 F.Supp.3d at 1024 (same); *see also Hupp v. Freedom Commc'ns, Inc.*, 221

25  Cal.App.4th 398, 404 (2013) (holding that maintaining a website that could be used to disseminate articles

26  of public interest was in furtherance of protected activity). Thus, Deel's alleged conduct of gathering

27  information about Rippling's sanctions evasions to expose that activity through the press was in

28  furtherance of its free speech rights.

1    Moreover, Deel's alleged conduct was "in connection with a public issue or an issue of public

2    interest." Cal. Civ. Proc. Code §425.16(e)(4). An act is in connection with protected public discussion if:

3    (i) a "public issue or issue of public interest is implicated by the challenged activity"; and (ii) "the

4    functional relationship between the challenged activity and the public conversation about that issue"

5    suggest that "the activity contribute[d] to public discussion of the issue." *Geiser v. Kuhns*, 13 Cal.5th

6    1238, 1249 (2022). Both parts of the test are satisfied.

7       *First*, Deel's alleged conduct implicates an issue of "public interest," which "is to be construed

8    broadly." *Brodeur v. Atlas Ent., Inc.*, 248 Cal.App.4th 665, 674 (2016). The public interest requirement

9    "is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably

10    be understood to implicate a public issue, even if it also implicates a private dispute." *Geiser*, 13 Cal.5th

11    at 1253. Communications regarding illegal conduct readily concern matters of public interest. *See, e.g.*,

12    *Briganti v. Chow*, 42 Cal.App.5th 504, 509 (2019) ("alleged widespread, criminal identity theft is a matter

13    of public interest"); *Blue v. Off. of Inspector Gen.*, 23 Cal.App.5th 138, 156 (2018) (communications about

14    alleged excessive force at prison concerned matter of public interest); *Eliott*, 639 F.Supp.3d at 1024

15    (allegations of wrongdoing by cult leaders concerned matter of public interest). Defendants "virtually

16    always" successfully connect their speech to an "issue of public interest." *Geiser*, 13 Cal.5th at 1250.

17       Here, Rippling alleges Deel facilitated disclosure of "internal confidential Rippling information of

18    value" to expose Rippling's efforts to evade sanctions on international pariah states like Russia. FAC

19    ¶¶113-118. Circumventing sanctions is a felony. *See* 50 U.S.C. §§1705, 4315. The public has a significant

20    interest in knowing whether entities doing business in the United States are complying with federal law,

21    or are attempting to undermine the foreign policy set by the Executive Branch through illicit commerce

22    with sanctioned countries and entities. Accordingly, Deel's alleged speech implicates matters of public

23    interest. *Briganti*, 42 Cal.App.5th at 509; *Blue*, 23 Cal.App.5th at 156; *Eliott*, 639 F.Supp.3d at 1024.

24       *Second*, Deel's alleged speech contributed to public discussion of this issue. A statement

25    contributes to public discussion if the speaker "participates in or furthers[] some public conversation on

26    the issue, taking into account considerations of context—including audience, speaker, and purpose."

27    *Sandlin v. McLaughlin*, 50 Cal.App.5th 805, 825 (2020). The Court's "inquiry does not turn on a

28    normative evaluation of the substance of the speech," and the Court should not be "concerned with the

social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction." *Id.* "[W]hen the conduct that gives rise to a lawsuit attracts … media attention, it can be an indicator that such conduct was undertaken in connection with a public issue." *Geiser*, 13 Cal.5th at 1255.

Here, Rippling alleges Deel facilitated disclosure of Rippling's sanctions-evading behavior, which contributed to public discussion of Rippling's conduct. FAC ¶¶113-118. Indeed, Rippling even alleges that in response to the disclosure of "internal Rippling Slack messages" to the press, Rippling added to the discourse itself when it "responded to the reporter *by providing the full context of each of the Shared Slack Messages.*" *Id.* ¶115. Following O'Brien's disclosure and Rippling's subsequent "full context," *The Information* then reported that "JPMorgan froze payments by Rippling to sanctioned banks, including Sberbank, after Rippling discovered it had failed to properly maintain a system blocking payments to the Russian institution," and "Rippling also late last year scrambled to delete material from its website that encouraged customers to use its payment systems if they wanted to send money to Russian contractors."[3] Thus, Deel's purported conduct exposed Rippling's sanctions evasion, and created public discussion and reporting of this issue. Accordingly, Deel's alleged conduct contributed to public discussion of Rippling's illegal conduct. *See Geiser*, 13 Cal.5th at 1255 (holding speech that generated media coverage and attention was in connection with an issue of public concern).

## B.    **All Of Rippling's State Law Claims Arise From Deel's Protected Activity**

Rippling's claims "aris[e] from" Deel's protected activity. Cal. Civ. Proc. Code §425.16(b)(1). "For purposes of the anti-SLAPP statute, a cause of action arises from conduct that it is based on." *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014). In determining what acts a claim is "based on," courts "consider the *elements* of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1009 (2021). During this analysis, courts must "take [the plaintiff's] pleadings at face value" and "assume [its] complaint means what it says." *Id.* at 1017-19; *Gunn v. Drage*, 65 F.4th 1109, 1122 (9th Cir. 2023) (noting that "Gunn is limited by her complaint").

Rippling's remaining three state law claims are tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition ("UCL"). FAC ¶¶200-220. To prove its tortious interference and fiduciary duty claims, Rippling must prove that Deel induced O'Brien to violate his

---

[3] *See The Information* Article.

DEEL'S SPECIAL MOTION TO STRIKE FAC                    CASE NO.: 3:25-cv-02576-CRB

1    employment agreement with Rippling and duty of loyalty to Rippling (to the extent Rippling alleged that

2    either of those even exist) by disclosing Rippling's confidential information. *See Name.Space, Inc. v.*

3    *Inter. Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1133 (9th Cir. 2015) (elements of tortious

4    interference); *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal.App.5th 323, 333-34 (2020) (elements of

5    aiding and abetting breach of fiduciary duty). And to prove its UCL claim, Rippling must prove that the

6    conduct underlying its other claims was unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code §17200.

7        Here, just as they did before, all of Rippling's remaining state law claims arise from Deel's alleged

8    protected activity. Plaintiff alleges Deel induced O'Brien to reveal "internal confidential Rippling

9    information of value" so Deel could expose Rippling's illegal behavior to the media as part of a "press

10   strategy." FAC ¶¶113-118. Rippling subsequently alleges this was: (1) inducement of O'Brien to breach

11   his purported agreements with Rippling and his supposed duty of loyalty; and (2) unfair competition. *Id.*

12   ¶¶200-203, 206, 209, 215, 217. Indeed, Rippling expressly incorporates its allegations about Deel leaking

13   Rippling confidential information to the media into each of its state law causes of action as a basis for

14   liability. *Id.* ¶¶200, 206, 215. Thus, "tak[ing] [Rippling's] pleadings at face value," its FAC "makes clear

15   that [it] intended [for Deel's protected activity] to have operative effect." *Bonni*, 11 Cal.5th at 1017-18.

16   Therefore, each of Rippling's state law causes of action "aris[e] from" Deel's alleged protected activity,

17   and Deel has carried its first step burden. Cal. Civ. Proc. Code §425.16(b)(1).

18       The burden thus shifts to Rippling on step two. As shown below, Rippling cannot carry it.

19   **II.    Rippling Cannot Show A Reasonable Likelihood of Success On Its Claims**

20       As noted above, in response to Deel's first anti-SLAPP motion directed to the state law causes of

21   action in Rippling's original complaint (*see* ECF 50), Rippling dropped its CUTSA claim in its FAC,

22   likely because it recognized that it is axiomatic that "there simply cannot be any trade secret about ongoing

23   illegality." *Alderson*, 718 F.Supp.2d at 1200. Because "[a] plaintiff's amendment of a complaint to remove

24   SLAPP claims is tantamount to a voluntary dismissal of those claims," Deel "is considered the prevailing

25   party" on its original anti-SLAPP motion as to Rippling's CUTSA claim. *See Run the World Inc. v. Jiang*,

26   2025 WL 948059, at *2 (N.D. Cal. Mar. 28, 2025).

27       Rippling's three remaining state law claims should now be stricken too.

28       Because Deel brings only a legal challenge under step two of the anti-SLAPP inquiry, the Court

9

1    should "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is

2    properly stated." *Planned Parenthood*, 890 F.3d at 834. Thus, the Court "need only determine—applying

3    the 12(b)(6) standard—whether [Rippling] stated a claim for [tortious interference with contract, aiding

4    & abetting breach of fiduciary duty, and unfair competition] under California law." *See CoreCivic*, 46

5    F.4th at 1140, 1143.

6        Here, as explained in Deel's concurrently filed motion to dismiss, all six of Rippling's remaining

7    claims against Deel fail to state claim for relief under Rule 12(b)(6). Thus, the Court should also grant this

8    anti-SLAPP Motion to strike Rippling's three remaining state law claims for tortious interference with

9    contract, aiding and abetting breach of fiduciary duty, and unfair competition, given that this analysis

10   under step two of the anti-SLAPP test is the same as in Deel's motion to dismiss. For the Court's

11   convenience, Deel also summarizes those arguments as to the state law claims below.

12       **A.**    **All Of Rippling's Remaining State Law Claims Are Preempted By CUTSA**

13       Deel's original anti-SLAPP motion argued that Rippling's California state law claims should be

14   stricken as preempted under CUTSA because they were "based on the same nucleus of facts as the

15   misappropriation of trade secrets claim for relief." *See* Dkt 50 §II.B (quoting *Prostar Wireless Grp., LLC*

16   *v. Domino's Pizza, Inc.*, 360 F.Supp.3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F.App'x 117 (9th Cir.

17   2020)). In response, Rippling simply dropped its CUTSA claim from the FAC, but it kept its federal trade

18   secret claim *based on the exact same facts*. *See* ECF 57-6 at 2. This maneuver does not help Rippling here

19   because "CUTSA preemption of other state law claims applies under California law even when the

20   plaintiff has studiously avoided assertion of any trade secret claims." *Tri Tool, Inc. v. Hales*, 2025 WL

21   775838, at *5 (E.D. Cal. Mar. 11, 2025) (dismissing interference and UCL claims as preempted under

22   CUTSA even though plaintiff "has chosen not to plead a CUTSA claim"); *Total Recall Techs. v. Luckey*,

23   2016 WL 199796, at *8 (N.D. Cal. Jan. 16, 2016) (despite "strategy" to avoid a CUTSA claim, holding

24   "to the extent Total Recall's claims rely on the alleged misappropriation of Confidential Information, any

25   such claims are superseded by CUTSA"). To quote Rippling's counsel, "[p]ut differently, a plaintiff

26   cannot avoid CUTSA supersession by omitting a formal trade secret claim," including by dropping it in

27   an FAC. *Splunk Inc. v. Cribl, Inc.*, 2023 WL 9424379 (N.D. Cal. Sept. 1, 2023) (Quinn Emanuel's motion

28   for judgment on the pleadings on behalf of defendant). Further, "CUTSA's preemptive sweep is broad—

it supersedes *all* claims premised on the wrongful taking and use of confidential and proprietary information, even if that information does not meet the statutory definition of a trade secret." *Hales*, 2025 WL 775838, at *4.

Here, Rippling just doubled-down on its federal trade secret claim alleging the same facts as its now-dismissed CUTSA claim. But Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims are preempted under CUTSA, because they are still all based on Deel's alleged misappropriation of "internal confidential Rippling information of value." FAC ¶¶113, 201-03, 206, 209, 215, 217; *see SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) (applying CUTSA preemption where "the wrongdoing alleged in connection with each of the Non–Trade Secret Claims is in essence the same wrongdoing as was alleged in connection with SunPower's Trade Secret Claim"). Thus, Deel's anti-SLAPP motion should be granted in its entirety, and all of Rippling's California claims stricken from the FAC as preempted under CUTSA.

## B.    Even If Not Preempted, The California Claims Should Be Stricken Without Leave

Even if Rippling's tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition claims were not stricken as preempted by CUTSA (and they should be), Rippling made no attempt in the FAC to amend them. *See* ECF 57-6 at 124-28. They should thus be stricken with prejudice for the independent reasons discussed below. *See Hales*, 2025 WL 775838, at *6 (denying leave to amend "in light of plaintiff's failure to remedy the deficiencies in this claim after being given the opportunity to do so" and "its failure to provide any new relevant factual allegations"); *see also Sylabs, Inc. v. Rose*, 2024 WL 2059716, at *10 (N.D. Cal. May 8, 2024) (concluding in light of plaintiff's lengthy amendment and failure to fix deficiencies that plaintiff "simply cannot state most of these claims"); *Covert v. City of San Diego*, 2017 WL 1094020, at *4 (S.D. Cal. Mar. 23, 2017) (noting that "[t]he failure to amend and state a cause of action against defendant is an admission that plaintiff has stated the case as strongly as he can and there are no facts that could be alleged to cure the defect").

### 1.    Rippling's Interference Claim Disclaims Reliance On Its O'Brien Contract

Rippling alleges Deel tortiously interfered with O'Brien's "confidentiality agreement" with Rippling. FAC ¶¶200-05. This claim requires: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts

1  designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption

2  of the contractual relationship; and (5) resulting damage." *Pech v. Doniger*, 75 Cal.App.5th 443, 457

3  (2022). Rippling's allegations are insufficient to establish any of those elements.

4      For example, Rippling makes a single allegation that "Deel knew or should have known of

5  [O'Brien's] confidentiality agreement," FAC ¶201, presumably in reference to the only the contract

6  Rippling allegedly executed with O'Brien: the Confidentiality and Intellectual Property Rights

7  Assignment Agreement that was Rippling's admitted sole attempt to "maintain the secrecy of its" Trade

8  Secrets. *Id.* ¶¶24 n.13, 192. But then Rippling *disclaims* any reliance on this contract, stating: "[t]his cause

9  of action for tortious interference with [O'Brien's] contract is *not* based on the misappropriation of any

10  Sales and Marketing Trade Secrets," despite its allegations just paragraphs earlier that O'Brien

11  "disclose[d] Rippling's confidential information." *Id.* ¶¶202, 205. This admission ends this claim.

12      Instead, Rippling asserts that its claim is based on Deel's alleged "recruitment" of O'Brien to

13  "induc[e] [him] to breach his employment agreements with Rippling." *Id*. But O'Brien *has no employment*

14  *agreements with Rippling*; he was employed by Rippling Ireland Limited ("Rippling Ireland")—which is

15  *not* a party in this case. *Id.* ¶24 n.13. Lacking any contract, the claim fails.

16      ## 2.    __O'Brien Was Not Employed By Rippling, So Owed It No Fiduciary Duties__

17      Rippling's fifth claim asserts that Deel "aided and abetted" O'Brien's alleged breach of his

18  fiduciary duty that he purportedly owed Rippling "[a]s a manager *at Rippling*." FAC ¶¶206-14. Rippling's

19  own allegations show that no part of Rippling's claim is correct. O'Brien was *not* employed by Rippling;

20  Rippling concedes that Rippling Ireland "was O'Brien's employer." FAC ¶24 n.13. That fact is fatal here.

21  O'Brien was hired to be "a mid-level payroll operations manager" by a separate entity, Rippling Ireland

22  (which is *not* a party here), to allegedly provide certain services to third-party Rippling. *Id.* ¶2.n.2. This

23  relationship does *not* create a fiduciary duty from O'Brien to his non-employer Rippling. *Slottow v. Am.*

24  *Cas. Co. of Reading*, 10 F.3d 1355, 1359 (9th Cir. 1993) (stating "employees owe no independent fiduciary

25  duty to a third party with whom they deal on behalf of their employer"); *Neilson v. Union Bank of Cal.,*

26  *N.A.*, 2003 WL 27374170, at *26 (C.D. Cal. Oct. 24, 2003) (same, dismissing aiding and abetting breach

27  of fiduciary duty claim); *Wolf v. Superior Ct.*, 107 Cal.App.4th 25, 30 (2003) (same); *City of Hope Nat'l*

28  *Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 391 (2008) ("[F]iduciary obligations are not necessarily

created when one party entrusts valuable intellectual property to another[.]").

### 3. Rippling Still Has Not Alleged A Cognizable UCL Claim

Rippling's unchanged UCL claim is still derivative of the conduct underlying Rippling's other doomed claims. FAC ¶¶215-220. Thus, it "fall[s] with the substantive causes of action already discussed." *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1111 (N.D. Cal. 2014).[4] The UCL claim also "fails for the independent reason that it has failed to plead the appropriate remedy." *Gill v. Marsh USA, Inc.*, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024). Rippling's UCL claim seeks "[d]amages," "punitive damages," and "attorneys' fees." FAC ¶¶218-20. But none of that is recoverable under the UCL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003) ("[A]ttorney['s] fees and damages, including punitive damages, are not available under the UCL."); *Somers v. Apple, Inc.*, 729 F.3d 953, 962 n.4 (9th Cir. 2013) ("reject[ing]" argument for assertion of damages under UCL).

The UCL permits restitution in limited situations, but not those alleged here. "[C]ompensation for lost business is *not* recoverable in an action against a business competitor under the UCL." *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal.App.5th 793, 804-07 (2021) ("regardless of label ('lost market share,' 'lost business opportunity' or 'lost profits'), a plaintiff cannot recover anticipated but unearned, future income under the UCL in the guise of restitution," as a business does not have "a vested property right in the share of the market that it occupies"). Rippling is Deel's competitor. Rippling claims it lost "the benefits of its own substantial investment and efforts" due to the actions of a third party, O'Brien. FAC ¶217. This is not proper restitution vis-à-vis Deel. As such, Rippling's UCL claim should be stricken for this reason too.

### CONCLUSION

The Court should grant Deel's Motion and strike Rippling's three remaining state law claims for tortious interference with contract, aiding and abetting breach of fiduciary duty, and unfair competition.

DATED: July 11, 2025

By: _____/s/ Jason D. Russell_____
JASON D. RUSSELL
*Attorneys for Defendant Deel, Inc.*

---

[4] *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1094 (N.D. Cal. 2022) (Breyer, J.) (dismissing UCL claim where "the 'conduct' on which Plaintiffs base their claims under all three UCL prongs is the same" as plaintiffs' other predicate claims, and "[i]f the predicate claims fail, the UCL claim also fails").