RE: *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No.: 3:25-cv-02576-CRB
<u>Joint Letter re: Deel's Intended Motion to Quash Certain of Rippling's Subpoenas</u>

Dear Judge Cisneros:

On July 11, 2025, the parties were referred to this Court for resolution of all discovery disputes in the above-referenced matter. This is the second of two discovery disputes between the parties. Pursuant to this Court's Standing Order § F, Deel and Rippling now submit this joint letter concerning their dispute over whether the subpoenas served by Rippling on the following thirteen non-parties in the above-refenced matter should be quashed or a protective order issued under Federal Rules of Civil Procedure 26(b), (c) and 45(d)(3): Apple Inc. ("Apple"), Atlassian US, Inc. ("Atlassian"), BAM Trading Services, Inc. d/b/a Binance ("Binance"), Circle Internet Group, Inc. ("Circle Internet Group"), Coinbase Global, Inc. ("Coinbase"), Foris Dax, Inc. d/b/a Crypto.com ("Crypto.com"), Google, LLC ("Google"), OKcoin USA Inc. d/b/a OKX ("OKCoin"), Payward Inc. d/b/a Kraken ("Payward"), Revolut Technologies Inc. ("Revolut"), Salesforce, Inc. ("Salesforce"), Slack Technologies, LLC ("Slack"), and WhatsApp LLC ("WhatsApp") (collectively, the "Thirteen Non-Party Subpoenas").

The undersigned hereby attest that they conferred by videoconference on July 2 and 9, 2025, in a good faith effort to resolve this dispute without Court intervention but were unable to do so. The parties stipulated on July 17 to file this letter by July 29, 2025, for the purpose of giving each side adequate time to prepare its own arguments and address its adversary's arguments in accordance with the Court's Standing Order. On June 20, 2025, the parties' Initial Case Management Conference was cancelled; thus no deadlines have been set for (1) fact and expert discovery, (2) the last day to hear dispositive motions, or (3) pretrial conference or trial. ECF 69.

**Deel's Position**

As explained below, Deel objected to the Thirteen Non-Party Subpoenas on July 11, 2025, and contends that these Subpoenas should be quashed or a protective order issued because they constitute an improper end-run around party discovery, are facially overbroad, and seek privileged, confidential, proprietary, and private information.

Rippling filed its operative amended complaint (the "FAC") against Deel and three Deel executives on June 5, 2025. ECF 57. Rippling primarily alleges that an Irish citizen and resident, Keith O'Brien ("O'Brien"), misappropriated Rippling's allegedly confidential information "from Ireland" at the alleged behest of Deel's foreign-based executives while O'Brien was employed in Dublin by Rippling's indirectly-held Irish subsidiary, Rippling Ireland Limited. *E.g.*, ECF 57 ¶¶2 nn.1-2, 67. The FAC asserts claims against Deel for racketeering and trade secret misappropriation, among other things. *See generally id.*

Deel contends that this action should be litigated in Ireland. Rippling admitted in its sworn attestations in parallel proceedings in Ireland that "**Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings**," ECF 48-4 ¶¶ 33-34, 45 (emphasis added); *see also* ECF 88-1 ¶¶ 6, 8, 10; ECF 57 ¶¶130-156. As such, on July 11, 2025, Deel filed, among other motions, a motion to dismiss Rippling's FAC for *forum non conveniens* ("FNC") in favor of Ireland (ECF 88), as well as a motion to dismiss all six of Rippling's causes of action against Deel for failure to state a claim under Rule 12(b)(6) (ECF 89).[1]

Aware that its time in the Northern District of California will likely be short, Rippling seems determined to abuse this Court's subpoena power before this case gets sent overseas (or dismissed). As shown in the parties' concurrently filed joint letter seeking to limit discovery to forum-related issues pending resolution of Deel's FNC motion, Rippling has served **36** non-party subpoenas in a harassing and blatant fishing expedition (starting well before Deel responded to party discovery),

---

[1] Deel and Rippling have concurrently filed a separate joint letter regarding a dispute over whether discovery in this action should be temporarily limited to forum-related issues pending the District Court's resolution of Deel's FNC motion. ECF 99. Should this Court limit discovery as Deel requested in that letter (including halting all non-party discovery), it can defer resolution of this dispute until after the FNC is decided. If Deel's FNC motion is granted, this dispute will be moot.

| | |
|---|---|
| Hon. Lisa J. Cisneros | Joint Letter re: MTQ Rippling's Subpoenas |
| July 29, 2025 | |
| Page 2 | |

seeking vast amounts of information from various foreign and domestic service providers, technology companies, cryptocurrency companies, and competitors of Deel and Rippling that are untethered to Rippling's claims against Deel, let alone forum-related issues. *See* ECF 99 at 2.

The Thirteen Non-Party Subpoenas challenged here can be grouped into three categories: (1) the "Data Subpoenas" (to Apple, Atlassian, and WhatsApp) (2) the "Account Subpoenas" (to Google, Salesforce, and Slack), and, (3) the "Cryptocurrency Subpoenas" (to Binance, Circle Internet Group, Coinbase, Crypto.com, OKcoin, Payward, and Revolut). Deel objected to these Subpoenas on July 11, 2025, and attaches the Subpoenas and Objections as Exhibit 1 hereto (Rippling requested that Deel include Exhibits 2 through 5 in connection with this letter).

The three Data Subpoenas request, among other things, *all* documents and communications relating to "*personal or business* cloud account(s) or cloud-based service(s) used, accessed, purchased, controlled, or maintained by Deel" and seven named individuals. As defined, cloud accounts and services include Google Drive, iCloud, DropBox, Microsoft OneDrive, and others. Ex. 1 at 11, 15-16, 26, 30-31, 188, 192-93. **These Subpoenas define Deel to include "any present or former officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, representatives, agents, [and] attorneys," among others**. *Id.* at 10, 25, 187. These requests are not tailored to the claims or defenses in this action. There is no subject-matter based limitation for any of the requests, meaning Rippling has subpoenaed iPhone family photos, log-in credentials, decryption keys, stored passwords to personal credit card accounts, notes, text messages with doctors and other health providers, geo-locations, and a vast array of other personal data from thousands of people around the world stretching back decades. That data has absolutely nothing to do with this litigation. The Data Subpoenas also demand the production of privileged communications with Deel's attorneys, including in-house counsel and the undersigned counsel.

The three Account Subpoenas feature all of the same defects as the Data Subpoenas (*e.g.*, they seek business and personal data of current and former Deel attorneys, executives, employees, and lack any reasonable subject-matter or date limitation). *Id.* at 103-04, 161-62, 177-78.

The seven Cryptocurrency Subpoenas are also untethered to this litigation, contain no date limitation at all, and seek information on dozens of cryptocurrency transactions and wallets that are never mentioned in Rippling's FAC. *See, e.g.*, *id.* at 43-44.

The Thirteen Non-Party Subpoenas should be quashed, modified, or limited by protective order, pursuant to Rule 26(b), (c), and/or Rule 45(d)(3) on the following grounds:

**First**, the Court should quash all Thirteen Non-Party Subpoenas because they improperly attempt an end-run around party discovery by seeking Deel's and other named defendants' information from various non-party service providers, instead of directly from Deel or the other defendants as required by the Rules. *See, e.g.*, *J.T. v. City & Cnty. of San Francisco*, No. 23-CV-06524-LJC, 2024 WL 4361579, at *1 (N.D. Cal. Oct. 1, 2024) (Cisneros, J.) (quashing subpoenas and noting parties should generally "obtain discovery from one another before burdening non-parties with discovery requests"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (granting defendant's motion to quash non-party subpoena because requests pertained to defendant); *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (same); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

**Second**, the Data Subpoenas and Account Subpoenas should be quashed or modified because they improperly seek Deel's attorney-client privileged communications. Fed. R. Civ. P. 45(d)(3)(A) (subpoena must be quashed or modified if it "requires disclosure of privileged or other protected matter"). The Data Subpoenas and Account Subpoenas seek all Apple, Google, WhatsApp, Slack, Salesforce, and Atlassian communications for thousands of individuals, including, specifically,

| | |
|---|---|
| Hon. Lisa J. Cisneros | Joint Letter re: MTQ Rippling's Subpoenas |
| July 29, 2025 | |
| Page 3 | |

individuals that Rippling knows to be Deel's counsel. *E.g.*, Ex. 1 at 10.

**Third**, all Thirteen Non-Party Subpoenas improperly seek Deel's or others' confidential and proprietary business information. Fed. R. Civ. P. 45(c)(3)(B); *Vantage Mobility Int'l, LLC v. Kersey Mobility*, LLC, No. CV-19-04684-PHX-JJT, 2020 WL 3103945, at *2–3 (D. Ariz. June 11, 2020). For example, the Data Subpoenas demand the production of ***all*** information, including log-in credentials and payment information, for "business cloud account(s) or cloud-based service(s) used, accessed, purchased, controlled, or maintained by Deel." *E.g.*, Ex. 1 at 10-16. The Account Subpoenas seek "[a]ll documents concerning or related to the creation … of files or data belonging to Deel" and thousands of individuals, which necessarily sweeps in the files and data themselves, as well as all cloud accounts, account registration and contact information, usernames, email addresses, IP logs, geo-location data, data backups, and more. *See, e.g.*, *id.* at 99-104.

**Fourth**, as Deel explained during the July 9 meet-and-confer, all Thirteen Non-Party Subpoenas seek highly private, personal, and protected information of Deel, its current and ***former*** executives, employees, and attorneys, and thousands of other individuals who are not parties here.[2] *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973-74 (C.D. Cal. 2010); *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023); *J.T.*, 2024 WL 4361579, at *6 ("The subpoenas that Defendants have served here seeking all of a person's electronic records of any kind over a period of several months, as well as inspection of all of their electronic devices, would be inappropriate even for party discovery in most cases. Such a request is beyond the pale when it comes to non-parties.").

**Fifth**, all Thirteen Non-Party Subpoenas are facially overbroad. *See Moon*, 232 F.R.D. at 637 (granting defendants' motion to quash subpoena requests as "overbroad on their face and exceed[ing] the bounds of fair discovery"); *see also J.T.*, 2024 WL 4361579, at *5-8 (same).

**Rippling's Position**

Having refused to produce responsive documents itself and otherwise stonewalled party discovery at every turn, Deel now seeks to block legitimate third party discovery into its scheme to steal Rippling's trade secrets through covert cryptocurrency payments to a Rippling employee. The Court should deny Deel's motion.

*Background*. Rippling alleges that Deel orchestrated a corporate espionage scheme, including by paying Keith O'Brien, an Irish-based Rippling employee, to steal Rippling trade secrets. FAC ¶¶ 1-12. The alleged perpetrators, high-level Deel executives including CEO Alex Bouaziz, paid for stolen information with cryptocurrency, and used messaging and cloud services to communicate about, store, and access that stolen information. FAC ¶¶ 5, 8, 65–66, 72, 75, 84, 90, 109-11, 132. As soon as Deel's wrongdoing began coming to light, Deel started frantically destroying evidence, including instructing O'Brien to destroy his phone, which he did with an axe. FAC ¶ 136.

A responsible company facing such serious accusations would urgently investigate and rectify any wrongdoing. But Deel has only stonewalled. Its initial disclosures claim that Deel—a company with its principal place of business in San Francisco and hundreds of California and U.S. employees—has "no witnesses, documents, or other evidence that is relevant to Rippling's claims located in California or the United States," an obvious falsehood. Ex. 2. When Rippling served document requests, Deel responded with blanket objections, agreeing to produce nothing. Ex. 3 at 10-14, 16-17, 75-77 (RFP 1, 2, 4, 15, 34). Deel's evasion extends beyond discovery; the individual defendants (Deel's CEO, COO, and CFO) did not appear willingly, causing the Court to order alternative service. ECF 70. In an improper ploy to avoid standing issues here, Deel asserts that it "understands [the individual defendants] object to disclosure of their personal information."

---

[2] Deel understands that defendants Alex Bouaziz, Philippe Bouaziz, and Dan Westgarth object to disclosure of their personal information under all non-party subpoenas Rippling has served here.

Anticipating Deel's obstruction, Rippling served tailored subpoenas to third parties—all here in the United States, not Ireland—that are likely to possess evidence of Deel's scheme.

**The Cryptocurrency Subpoenas** seek to identify who made the bribery payments to Mr. O'Brien. FAC ¶¶ 64-65. The first payment came from a U.S.-based Revolut account associated with Alba Basha (wife of defendant Dan Westgarth, Deel's COO). Rippling asked Revolut for account and transaction history for that account and for other accounts of individuals associated with Deel's wrongful acts. Ex. 1 at 135. Rippling initially sought this information in Ireland, but Revolut directed Rippling to its U.S. entity, which Rippling then subpoenaed. Ex. 4.

Deel's subsequent bribery payments to O'Brien were made by an anonymous cryptocurrency wallet. Using public blockchain data, Rippling uncovered other cryptocurrency wallets and transactions associated with the anonymous wallet used to pay O'Brien. The subpoenas to the cryptocurrency exchanges seek information about these other wallets and transactions, which information will help identify the party that controls the wallet used to pay O'Brien. Ex. 1 at 32, 46, 61, 74, 105, 120, 135. Deel tried to deter the subpoena recipients from responding, with counsel for the Bouaziz defendants informing third parties of Deel's intended motion. *See e.g.,* Ex. 5.

**The Account/Data Subpoenas** seek metadata and account information—not content—about accounts used to facilitate or communicate about Deel's theft. They target the specific cloud-based services that Deel executives involved in the scheme used to steal Rippling's trade secrets and to communicate about the scheme. *See* FAC ¶¶ 5, 8, 65, 72, 75, 84, 90, 109-11, 132. Given the known usage of such services, the subpoenas also seek metadata information about other accounts the accused individuals may have used to store or communicate about the stolen information.

Deel's arguments seeking to quash these subpoenas lack merit.

*First*, this is no improper "end-run around party discovery," a disingenuous argument for Deel to make when it is stonewalling party discovery. Courts routinely permit third-party discovery, particularly where, as here, the opposing party refuses to produce documents. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3416644, at *3 (N.D. Cal. July 14, 2024) (Cisneros, M.J.) ("[N]o general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession") (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008)); *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, 2018 WL 2981827, at *4 (E.D. Cal. June 14, 2018) (third-party discovery appropriate where party "attempted to get responsive documents" from opponent who "refused to produce"). Deel cites *J.T.*, which quashed subpoenas seeking to inspect personal cell phones of **high schoolers**, along with other invasive requests unlikely to have "any relevance." 2024 WL 4361579, at *8. And the quote from *J.T.* that Deel cites goes on to say that third-party discovery is disfavored only when "the requesting party has not shown that it attempted to obtain documents from the opposing party." *Id.* at *1 (internal brackets and quotations omitted).

Here, Rippling did just that, but Deel has categorically refused to respond to Rippling's requests for documents about cryptocurrency payments to O'Brien, improper communications about Rippling, and where the stolen Rippling information is stored. *See*, *e.g.*, Ex. 3 at 10–14, 16-17, 75-77 (RFP 1 seeking documents about cryptocurrency payments made to O'Brien"; RFP 2, 34 seeking communications about Rippling; RFP 4,15 about storage of stolen Rippling information).

Further, to the extent the accused wrongdoers used personal cryptocurrency wallets to make bribery payments or used personal accounts to store Rippling's information, the information sought by the subpoenas is not in Deel's possession. Third-party discovery is thus the only avenue to obtain this critical evidence. *FemtoMetrix Inc v. Huang*, 2024 WL 396186, at *8 (N.D. Cal. Feb. 1, 2024) (denying motion to quash where "the information sought is in the possession, custody, and control of third parties, not" of the opposing party); *Patel Eng'g Ltd. v. Patel*, 2025 WL 1745724, at *5 (N.D. Cal. June 23, 2025) (granting motion to compel production from third party

where "no party to the litigation is likely to have responsive communications").

***Second***, Rippling seeks only account metadata and information related to the litigation, which courts routinely approve in cases alleging the misuse of electronic services and accounts. *See Drummond Co., Inc. v.* Collingsworth, 2013 WL 6074157, at *10 (N.D. Cal. Nov. 18, 2013) (denying motion to quash subpoena for "name, mailing address, phone number, billing information, and account creation information of the account holder"); *Cognosphere Pte. Ltd. v. X Corp.*, 2024 WL 4227594, at *8 (N.D. Cal. Sept. 18, 2024) (denying motion to quash subpoena for identifying information about Twitter accounts because "there are likely few, if any, reasonably available sources other than X Corp." for information identifying account holders).

Deel imagines a parade of horribles concerning absent third parties' privacy concerns, but the concerns are just that—imagined. Deel lacks standing to invoke them, because "a party generally 'has no standing to quash a subpoena served upon a third party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.'" *FemtoMetrix*, 2024 WL 396186, at *5 (citing *Wells Fargo & Co. v. ABD Ins.*, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012)). Lack of standing aside, Rippling does not seek "iPhone family photos" or "text messages with doctors." The Google, Salesforce, and Slack subpoenas (the "Account Subpoenas") are expressly cabined to documents "related to the Litigation" and ***exclude*** "documents reflecting the contents of electronic communications." *E.g.*, Ex. 1 at 167, 174. Although Deel never raised this issue in the meet and confer, had it done so, the parties could easily have resolved it—Rippling agrees to apply these same limitations to the "Data" subpoenas to Apple, Atlassian, and WhatsApp.

***Third***, Deel's complaint that the subpoenas "seek Deel's or others' confidential and proprietary business information" collapses due to the Court's Protective Order. ECF 74. Having stipulated to that Order, Deel cannot now assert that it provides insufficient confidentiality protection. *See Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (party "failed to demonstrate that the protective order will not sufficiently address the asserted privacy interests"). Deel also has no standing to assert third parties' confidentiality interests, and in any event has "failed to show what, if any, specific, substantiated trade secrets or confidential information are actually at stake here." *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *5 (N.D. Cal. Dec. 17, 2023). The subpoena recipients have expressed a willingness to produce documents and are productively negotiating pursuant to the usual meet-and-confer process.

***Fourth***, Deel's privilege concerns are premature and speculative. Most of the subpoenas seek account-identifying information or other metadata, none of which could be privileged. And to the extent any privileged information could potentially be implicated, each subpoena permits the responding party to withhold such information under Rule 45(e)(2). *See e.g.*, Ex. 1 at 8. Deel's "blanket assertion" of privilege, without identifying any specific privileged information at risk of disclosure, is insufficient. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (holding "blanket assertions" of privilege are "extremely disfavored"); *Geller v. von Hagens*, 278 F.R.D. 572, 575 (S.D. Cal. 2011) ("A movant must state specific reasons why a subpoena should be quashed; simply making a general assertion is inadequate."). If specific privilege issues arise, they can be addressed through a privilege log and meet-and-confer process.

***Fifth***, Deel's "objection that a subpoena to a nonparty seeks irrelevant information, or that it would impose an undue burden, are not grounds on which [Deel] can base standing to move to quash a subpoena when the nonparty has not objected." *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019). Further, as noted above, Deel greatly exaggerates the scope of the subpoenas, which the recipients are negotiating.

***Finally***, Deel's letter argues this motion is moot if the Court grants Deel's companion motion to stay. As Rippling explains in that briefing, Deel's FNC motion will fail because the parties and the operative events are centered in San Francisco, not in Ireland. The Court should likewise deny this motion, through which Deel seeks to prevent U.S.-based entities from providing evidence here.

Hon. Lisa J. Cisneros  Joint Letter re: MTQ Rippling's Subpoenas
July 29, 2025
Page 6

                                  Respectfully submitted,

*/s/ Jason D. Russell*                    */s/ Joseph C. Sarles*
Jason D. Russell                          Joseph C. Sarles
Attorneys for Defendant Deel        Attorneys for Plaintiff Rippling

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

*/s/ Jason D. Russell*
Jason D. Russell