**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff*
*People Center, Inc. d/b/a Rippling*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100, <br><br> Defendants. | Case No. 3:25-CV-2576 (CRB) <br><br> **RIPPLING'S OPPOSITION TO DEEL'S MOTION TO DISMISS FOR FORUM NON CONVENIENS** <br><br> Compl. Filed:  March 17, 2025 <br> Am. Compl. Filed:  June 5, 2025 <br> Judge:  Hon. Charles R. Breyer <br> Courtroom:  6 <br> Hearing Date:  September 19, 2025 <br> Hearing Time:  10:00 a.m. |

### SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Rippling provides the following summary of argument. Rippling opposes Deel's motion to dismiss or stay Rippling's First Amended Complaint (ECF 57, "FAC") based on the doctrine of *forum non conveniens.* This Court should deny Deel's motion for the following reasons:

Deel cannot surmount the overwhelming "presumption that litigation is convenient in the plaintiff's chosen forum when a domestic plaintiff sues at home." *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1210-11 (9th Cir. 2017). Rippling, a San Francisco-based company, has sued here in San Francisco to redress trade-secret harms that it suffered here in San Francisco. That alone is reason to deny Deel's motion. But the grounds for denying are stronger still because Deel likewise calls San Francisco home. Because *forum non conveniens* is "an exceptional tool to be employed sparingly," and because this case is between two San Francisco-based competitors, this Court should not disturb the "great deference" owed Rippling's choice of its home forum. *See Bos. Telecomms. Grp. Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (plaintiff's choice of forum entitled to greater deference when the plaintiff has chosen the home forum); *Cooper*, 860 F.3d at 1211 (9th Cir. 2017) (domestic plaintiff suing at home receives presumption that litigation is convenient in chosen forum); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (holding "abuse of discretion for the district court to deny plaintiffs their choice of federal district court in San Francisco as their forum"); Argument § II.A.

Deel also fails to establish that the Irish High Court is an adequate alternative forum for this dispute because not all defendants are subject to jurisdiction there, and one defendant is actively contesting jurisdiction in Ireland. *See Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076, 1083 (N.D. Cal. 2014) (forum is adequate only if "all parties can come within the jurisdiction of that forum"); *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 3272399, at *20 (C.D. Cal. Apr. 4, 2023) (no adequate alternative forum where defendants failed to show foreign court has personal jurisdiction over all defendants); *Besson v. Blackpills, Inc.*, 2017 WL 10434368, at *3 (C.D. Cal. Oct. 20, 2017) (denying *forum non conveniens* motion where defendant would not "explicitly stipulate[] ... to submit to a foreign jurisdiction"); Argument § II.B.

The ongoing proceedings in Ireland involve different claims and different defendants than this case. Rippling initiated the Irish proceeding for a specific and extraordinary remedy: to preserve evidence from Deel's spy, who happened to live in Ireland. After the Irish court granted that remedy, Deel actively sought to interfere with the court's order and destroy evidence. That post-order conduct is all that is at issue in Ireland today. The proceeding has nothing to do with Rippling's claims in this proceeding, which focus on Deel's years-long conspiracy to steal trade secrets from Rippling and other industry players. *See Ryanair DAC v. Booking Holdings Inc.*, 2021 WL 7209367, at *4, *6 (D. Del. Dec. 27, 2021) (concurrent cases featuring "some of the same allegations" found "not duplicative" where U.S. case "involves a cause of action under U.S. law and four defendants who are not involved in the Irish case"); *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975) (*forum non conveniens* "do[es] not turn on the existence of any pending parallel litigation"); Argument § II.C.1.

Given that this case involves two San Francisco-based companies suing over trade secrets located in San Francisco, it is no surprise that the private interest factors overwhelmingly weigh against dismissal. *See Bos. Telecomms. Grp.*, 588 F.3d at 1207 (defendant must show how private factors cumulatively "strongly favor" dismissal); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234 (9th Cir. 2011) (dismissal appropriate only if private and public interest factors "strongly favor trial in the foreign country") (citation omitted); Argument § II.C.

This forum has a strong local interest in the dispute, and accordingly every public factor weighs against dismissal. *See Carijano*, 643 F.3d at 1232 ("California's significant interest in providing a forum for those harmed by the actions of its corporate citizens"); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) (so long as "there is an identifiable local interest in the controversy," factor counsels against dismissal); *Antaris Techs., Inc. v. Matthews*, 2025 WL 1939868, at *4 (N.D. Cal. July 15, 2025) (California has a "strong interest in applying [] trade secrets laws to protect against misappropriation of trade secrets and in preventing torts committed within its borders") (internal quotations and citation omitted); Argument § II.D.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND....................................................3

    A.    Rippling And Deel Are Both Headquartered In San Francisco ...................3

    B.    Rippling's California Complaint Alleges Trade Secret And Conspiracy
          Claims............................................................................................................4

    C.    Rippling's Narrow Proceedings In Ireland....................................................4

LEGAL STANDARD ...............................................................................................................5

ARGUMENT .............................................................................................................................5

II.    DEEL FAILS TO CARRY ITS HEAVY BURDEN TO SHOW LITIGATING
       HERE IS OPPRESSIVE OR VEXATIOUS ..............................................................5

    A.    Deel Ignores The Deference Owed To Rippling's Chosen Forum ...........5

    B.    Deel Has Failed To Establish Ireland As An Adequate Alternative Forum ..............7

    C.    The Private Interest Factors Overwhelmingly Favor California ..............8

        1.    Deel Incorrectly Argues That "Parallel" Irish Proceedings Favor
              Dismissal .........................................................................................8

        2.    Only A Single Material Witness Resides In Ireland ...................10

        3.    California Is Convenient For Both Deel And Rippling................11

        4.    Deel Identifies No Physical Evidence Still In Ireland................12

        5.    Deel Identifies No Unwilling Witnesses ....................................13

        6.    The Cost Of Bringing Witnesses To Trial Does Not Favor Dismissal ........13

        7.    The Enforceability Of The Judgment.........................................14

        8.    All Other Practical Issues ..........................................................14

    D.    The Public Interest Factors Weigh Against Dismissal............................14

CONCLUSION ........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Activision Publ'g, Inc. v. EngineOwning UG*,
   2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) ................................................................. 7

*Antaris Techs., Inc. v. Matthews*,
   2025 WL 1939868 (N.D. Cal. July 15, 2025) ............................................................ 15

*Besson v. Blackpills, Inc.*,
   2017 WL 10434368 (C.D. Cal. Oct. 20, 2017) ........................................................... 7

*Bluestar Genomics v. Song*,
   2023 WL 4843994 (N.D. Cal. May 25, 2023) .......................................................... 14

*Bos. Telecomms. Grp. Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ......................................................... 5, 8, 11, 14, 15

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
   370 F.3d 234 (2d Cir. 2004) (cited at Br. 4) ............................................................ 6

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ........................................ 1, 2, 3, 5, 6, 7, 8, 10, 13, 15

*City of Almaty v. Khrapunov*,
   685 F. App'x 634 (9th Cir. 2017) ......................................................................... 15

*Cooper v. Tokyo Elec. Power Co., Inc.*,
   860 F.3d 1193 (9th Cir. 2017) .............................................................................. 6

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2022) ...................................................................... 5, 8, 15

*Etaliq, Inc. v. Cisco Sys., Inc.*,
   2011 WL 13220445 (C.D. Cal. July 20, 2011) ....................................................... 15

*Finjan, Inc. v. Zscaler, Inc.*,
   2019 WL 618554 (N.D. Cal. Feb. 14, 2019) ........................................................... 13

*Flynn v. Nat'l Asset Mgmt. Agency*,
   42 F. Supp. 3d 527 (S.D.N.Y. 2014) ....................................................................... 6

*Herd v. Airbus SAS*,
   2017 WL 6504162 (C.D. Cal. Dec. 11, 2017) ........................................................ 11

*Howard v. Johnson Outdoors Diving, LLC*,
   2024 WL 3206912 ............................................................................. 11, 13, 14

*Juniper Networks, Inc. v. Andrade*,
   2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) ........................................................................ 9

*Kleiner v. Spinal Kinetics, Inc.*,
   2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ...................................................................... 11

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) .............................................................................................. 12

*Medicor v. Arterial Vascular*,
   1997 WL 68564 (N.D. Cal. Jan. 30, 1997) .......................................................................... 11

*Mentawai v. Marcotti*,
   2016 WL 7496750 (C.D. Cal. Mar. 28, 2016) ........................................................................ 9

*Nibirutech Ltd v. Jang*,
   75 F. Supp. 3d 1082-83 (N.D. Cal. 2014) .............................................................................. 7

*Quest Nutrition, LLC v. Nutrition Excellence, Inc.*,
   2019 WL 1789880 (C.D. Cal. Apr. 23, 2019) ........................................................... 10, 12, 15

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................................................ 7, 8

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ............................................................................................ 6, 12

*Ryanair DAC v. Booking Holdings Inc.*,
   2021 WL 7209367 (D. Del. Dec. 27, 2021) ........................................................................ 8, 13

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) ...................................................................... 9

*Summa Res. Holdings LLC v. Carbon Energy Ltd.*,
   2016 WL 2593868 (N.D. Cal. May 5, 2016) (cited at Br. 4) ............................................. 6, 11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) .................................................................................... 13, 14, 15

*U.S. Small Bus. Admin. v. Rocket Ventures II, L.P.*,
   2013 WL 57854 (N.D. Cal. Jan. 3, 2013) ............................................................................... 6

*Van Schijndel v. Boeing Co.*,
   434 F. Supp. 2d 766 (C.D. Cal. 2006) ................................................................................... 9

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ................................................................................................. 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ......................................................................... 6, 15

*Weiner v. Shearson, Hammill & Co.*,
    521 F.2d 817 (9th Cir. 1975).................................................................................................... 8

RIPPLING'S OPPOSITION TO MOTION TO DISMISS FOR FORUM NON CONVENIENS

**PRELIMINARY STATEMENT**

In this case, a San Francisco-based company (Rippling) has sued its San Francisco-based competitor (Deel) for stealing trade secrets developed by Rippling's San Francisco-based workforce and using them to target California customers, many of them right here in San Francisco.  So Rippling naturally brought suit in San Francisco.  Deel though now insists that Rippling should be deprived of its home forum (and Deel's own home forum) under *forum non conveniens,* arguing in essence: "The spy we hired to steal from Rippling was in Ireland, so Rippling must bring suit there."

Deel's decision to outsource its espionage abroad does not make Ireland the center of gravity in this dispute.  Deel's spy could have been anywhere.  What matters is that Rippling is here, Deel is here, the trade secrets are here, and the harm was suffered here.  On these facts, Deel's motion buckles under the "heavy burden" to show that litigating in its own home forum would cause "oppressi[on] and vexation."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011).

There is nothing inconvenient about requiring Deel and its principals—none of whom reside in Ireland and one of whom actively is contesting the Irish court's jurisdiction over him—to litigate in California.  Deel soothingly assures this Court that it lacks an "actual office" in San Francisco (Br. 11), but its actions and statements elsewhere tell a different story.  When not attempting to skirt accountability, Deel proclaims San Francisco as its headquarters and actively markets itself as a San Francisco company—from its SEC filings, to its scores of employees here, its massive billboard welcoming travelers at SFO, and its habitual use of California as the forum in its own customer agreements.  Indeed, on March 18, 2025 (the day after this lawsuit was filed), Deel sued its own foreign customer *in San Francisco*, alleging—just as Rippling alleges here—that Deel has "its principal place of business in San Francisco, California," and that its payroll services "were provided in the County of San Francisco."  Ex. 1.  Deel is plainly at home here.

Nor does Deel dispute that Rippling is likewise at home here, that Rippling developed the trade secrets here, or that Rippling's employee witnesses are located here.  It does not even deny that the harms were suffered here.  That alone defeats the motion.  After all, the *forum non conveniens* doctrine expressly requires courts to protect "California's significant interest in

1    providing a forum for those harmed by the actions of its corporate citizens." *Carijano*, 643 F.3d at

2    1227. And it is not merely California but **San Francisco** corporate citizens on **both** sides of the "v."

3    Not surprisingly, Deel has cited no case in which *forum non conveniens* dismissal was granted in

4    such a scenario. And if there was any doubt, the only Irish witness—Deel's spy, Keith O'Brien—

5    has executed a binding agreement to testify in this case, so there is no key witness or evidence

6    available in Ireland but not available here.

7        With the facts stacked against it, Deel resorts to misrepresentation, distorting both Rippling's

8    jurisdictional position and the scope of the proceedings in Ireland. Deel selectively quotes a snippet

9    from Rippling's Irish submission stating that "Ireland is clearly the jurisdiction most closely

10   connected with the wrongs the subject matter of **these proceedings**," implying that Rippling was

11   referring to this larger dispute. But Deel omits the preceding paragraph, which makes clear that

12   "these proceedings" referred only to a narrow dispute over an evidence-preservation order and

13   Deel's actions to obstruct that judicial order. The very same submission explicitly states that

14   Rippling "do[es] **not propose proceeding**" against Deel or its executives regarding "the spying and

15   theft of Confidential Information and Trade Secrets…" in the Irish proceeding, which is the entire

16   focus of these California proceedings. ECF 48-4 ¶ 27.

17       Those Irish proceedings were exceedingly narrow from the start. As soon as Rippling

18   discovered that Deel was directing a spy in Ireland to steal Rippling's *San Francisco-based*

19   commercial information, Rippling did what any responsible company would do: It acted quickly to

20   preserve evidence before it disappeared. Deel lit the match in Ireland; Rippling moved to contain

21   the fire before it spread. That narrow act of exigency should not deprive Rippling of its right to

22   litigate its core claims in its home forum, especially when the defendant resides in the same forum.

23       Deel is desperate, and understandably so—its entire C-suite and controlling owners have

24   been caught red-handed paying a spy to steal a competitor's trade secrets, instructing him to destroy

25   evidence in violation of a preservation order, and encouraging him to flee to the Middle East. Deel's

26   own top executives have fled there already, soon to make their own desperate (and equally meritless)

27   argument that they are not subject to personal jurisdiction where their own company is

28   headquartered. But Deel's desperation does not change the law. In this Court, there exists a "strong

1  presumption in favor of the plaintiff's choice of forum," *Carijano*, 643 F.3d at 1227 (citation

2  omitted), and—quite conveniently—Rippling's choice of forum happens to be Deel's home forum

3  as well.  Deel's motion should be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Rippling And Deel Are Both Headquartered In San Francisco

6       Rippling was founded in San Francisco in 2016 as a pioneering company in the workforce

7  management space.  ECF 57 ("FAC") ¶¶ 13, 40.  Rippling provides an all-in-one solution that

8  integrates human resources, IT, finance and other functions through a single software platform.  *Id.*

9  ¶ 13.  Rippling's headquarters and core operations are located in San Francisco.  It is here that

10 Rippling develops and maintains its software platform.  The company's trade secrets and proprietary

11 technology, customer relationships, and strategic business information are largely developed,

12 maintained, and utilized from its California base of operations.

13      Deel's registered headquarters are in San Francisco.  FAC ¶ 16.  Deel's SEC filings,

14 California Secretary of State registrations, and corporate documents all list the same San Francisco

15 address.  *Id.* ¶ 16 n.4; Ex. 2.  Deel's Customer Terms of Service specify California as the governing

16 law and require binding arbitration in San Francisco; its Privacy Policy lists San Francisco,

17 California as its principal place of business; and its Whistleblowing Policy reflects California

18 operations.  Exs. 3-5.  Deel's CEO Alex Bouaziz and CFO Philippe Bouaziz both list San Francisco

19 addresses in regulatory filings.  FAC ¶¶ 17-18.  Both regularly travel to the United States for

20 business.  Exs. 6-8.  LinkedIn data shows more than 100 other Deel employees, directors, funders,

21 and Board members in the Bay Area.  Ex. 9.

22      When Deel files its own lawsuits, it does so in San Francisco.  On March 18, 2025, ***after*** this

23 lawsuit was filed, Deel sued a Canadian customer for non-payment, alleging that Deel's contract

24 with the customer was "entered into in the County of San Francisco."  Ex. 1 ¶ 3.  And contrary to

25 Deel's argument here that it has no "operations" in California, Deel alleged its "contract services

26 were provided in the County of San Francisco" (to a customer who only had offices in Canada and

27 San Mateo County).  *Id.*  Similarly, in December 2024, Deel sued a Luxembourg-based customer in

28 San Francisco Superior Court, invoking the forum and venue provisions of its customer agreements

that were "entered into in the County of San Francisco." Ex. 10 ¶ 3.

### B. Rippling's California Complaint Alleges Trade Secret And Conspiracy Claims

Rippling's First Amended Complaint (ECF 57, "FAC") alleges a sweeping corporate espionage scheme orchestrated and personally directed by Deel and its top executives, including CEO Alex Bouaziz. As part of the scheme, Deel paid Keith O'Brien, an Irish-based Rippling employee, to steal Rippling trade secrets. FAC ¶¶ 64-65. Acting under Deel's direction and in exchange for cryptocurrency bribes, O'Brien infiltrated Rippling's United States computer servers, extracting and transmitting confidential information directly to Deel. *Id.* ¶¶ 67, 176. Deel specifically targeted Rippling's customer data—including Bay Area customers and prospects—and weaponized that stolen intelligence to poach those same customers. *Id.* ¶¶ 39, 56-112. Through O'Brien, Deel also stole product roadmaps, launch strategies, country-by-country pricing models, recruitment targets, and go-to-market tactics—plans and strategies that Rippling's Bay Area-based employees primarily developed. *Id.* ¶¶ 4, 13, 56-112, 193.

Deel's espionage network extended far beyond O'Brien. Its scheme encompassed multiple California entities and a pattern of predatory conduct targeting competitors. As against Rippling, Deel also conspired with two California-based former Rippling employees who took Rippling confidential information to Deel. FAC ¶¶ 27-28, 49-50. Deel also partnered with another Bay Area company, LiquiFi, to misuse confidential information to "crush" another competitor, Toku. *Id.* ¶ 25. Deel further victimized prior partners and other competitors. *Id.* ¶¶ 34-35.

### C. Rippling's Narrow Proceedings In Ireland

After Rippling's U.S.-based security team first identified O'Brien as the likely spy, FAC ¶ 116, Rippling sought and obtained a narrow "Anton Piller" evidence preservation order in Ireland requiring "[O'Brien] to turn over his devices to an independent solicitor for forensic imaging." FAC ¶ 2 n.2; Ex. 11 (Irish Statement of Claim) ¶ 10; Declaration of Justice Franke Clarke ("Clarke Decl.") ¶¶ 4-10. Rippling later amended its case in Ireland to address two collateral issues that arose *after* the trade secret theft: Deel's destruction of evidence and orchestration of related defamatory statements in Ireland. Wu Decl. ¶ 27; Ex. 11 ¶¶ 16-18, 23. Rippling added these claims after

O'Brien provided sworn testimony that, on instructions from Deel, he destroyed (with an axe, no less) the phone he used to copy and transmit Rippling's trade secrets, threw its remains down the drain, then made false and defamatory statements about Rippling as part of Deel's effort to "shift the narrative" around the revelation of its wrongdoing.  FAC ¶ 133-39, 145.  Rippling asserts no trade secret claims against Deel or its executives in Ireland; those claims are at issue only in this case.  ECF 48-4 ¶¶ 27-28; Clarke Decl. ¶¶ 15-16.  Rippling has settled its original claims against O'Brien, who agreed to cooperate fully with Rippling in this case—including by giving testimony in this case.  FAC ¶ 153 n.37; Ex. 12 (Notice of Discontinuance).

## LEGAL STANDARD

To dismiss under *forum non conveniens* is a "drastic exercise" treated as "'an exceptional tool to be employed sparingly.'"  *Carijano*, 643 F.3d at 1224.  "Historically, the doctrine's purpose is to root out cases … in which a plaintiff resorts 'to a strategy of forcing the trial at a most inconvenient place for an adversary," imbuing the choice of forum with "harassment."  *Id.* (internal quotations and citation omitted).  Dismissal is warranted only if the defendant makes "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."  *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1118 (9th Cir. 2022) (cleaned up).  A party seeking dismissal under *forum non conveniens* must show not only that an adequate alternative forum exists, but that the balance of private and public interest factors "strongly favor trial in a foreign country."  *Bos. Telecomms. Grp. Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (citation omitted).  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.*

## ARGUMENT

## II.    DEEL FAILS TO CARRY ITS HEAVY BURDEN TO SHOW LITIGATING HERE IS OPPRESSIVE OR VEXATIOUS

### A.  Deel Ignores The Deference Owed To Rippling's Chosen Forum

At the threshold, Deel is wrong to contend (Br. 4) that the court "should not automatically give deference to a plaintiff's forum choice."  Not only is deference required, but, as here, the

1    "plaintiff's choice of forum is entitled to **greater** deference when the plaintiff has chosen [its] home

2    forum." *U.S. Small Bus. Admin. v. Rocket Ventures II, L.P.*, 2013 WL 57854, at *5 (N.D. Cal. Jan.

3    3, 2013).  That is because "the *forum non conveniens* analysis introduces a presumption that

4    litigation is convenient in the plaintiff's chosen forum when a domestic plaintiff sues at home."

5    *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1210-11 (9th Cir. 2017); *In re Volkswagen*

6    *"Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at *8 (N.D. Cal. Jan.

7    4, 2017) (affording "great deference" to home forum) (internal quotations and citation omitted).

8    Failure to give a plaintiff's home forum due deference is error.  *Carijano*, 643 F.3d at 1229; *Ravelo*

9    *Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

10          Because Rippling is a U.S. company with its principal place of business in San Francisco,

11   "[its] decision to sue in the United States must be respected."  *Cooper*, 860 F.3d at 1211; *Ravelo*

12   *Monegro*, 211 F.3d at 514 (holding "abuse of discretion for the district court to deny plaintiffs their

13   choice of federal district court in San Francisco as their forum").  Contrary to Deel's assertion (Br.

14   4), this principle holds true even though Rippling is a corporation.  Neither of the cases Deel cites

15   grants a *forum non conveniens* motion based on reduced deference owed to a corporation.  In *Summa*

16   *Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *4 (N.D. Cal. May 5, 2016) (cited

17   at Br. 4), the plaintiff had signed a forum selection clause in favor of Australia, and *Carey v.*

18   *Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (cited at Br. 4), did not

19   involve a corporate plaintiff but an **individual** suing a German bank over a mortgage agreement she

20   entered into in Germany to purchase a German apartment, where she lived and worked.

21          While a court may reduce the deference owed to a plaintiff's choice of forum if it finds

22   indications of forum shopping, Deel briefing on this issue (Br. 5) cites no case holding that a plaintiff

23   engages in forum shopping by suing **in its home forum**, as Rippling has here.  *See, e.g.*, *Vivendi SA*

24   *v. T-Mobile USA Inc.*, 586 F.3d 689, 690 (9th Cir. 2009) (affirming FNC dismissal where a French

25   corporation alleged "that a German corporation and a Polish billionaire colluded fraudulently in

26   Europe").  Invoking *Flynn*, Deel argues Rippling seeks to take advantage of RICO law.  That case,

27   filed in New York, involved dozens of litigants; many were citizens of Ireland but few (if any) had

28   connections to the United States.  *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 533-34

(S.D.N.Y. 2014). The plaintiffs invoked RICO availability as a "central element" of their opposition to the defendants' FNC motion, but the absence of any clear jurisdictional ties to the United States caused the Court to express skepticism that the plaintiffs had "any substantial concern with convenience" in suing Irish defendants in the United States. *Id.* at 537.

The opposite is true here. Rippling "did not strategically choose a random or only tangentially relevant forum." *Carijano*, 643 F.3d at 1229. Rather, Rippling chose its home forum —and ***Deel's*** home forum—because Rippling suffered harm here, FAC ¶¶ 87, 92, because its witnesses are here, Ex. 13, and because of San Francisco's overall "strong connection to the subject matter of the case." *Carijano*, 643 F.3d at 1229.

### B. Deel Has Failed To Establish Ireland As An Adequate Alternative Forum

Deel likewise errs in arguing that Ireland is an adequate forum. The reason: not all defendants are subject to jurisdiction there. Deel's CEO is contesting jurisdiction in Ireland. The other two defendants would likely mount similar challenges if sued there, but they have not been because they are not implicated in the narrow evidence-preservation dispute pending in that forum.

To obtain dismissal on FNC grounds, a defendant must show that the proposed alternative forum is "adequate." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). A forum is "adequate" only if "all parties can come within the jurisdiction of that forum." *Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1082-83 (N.D. Cal. 2014); *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 3272399, at *20 (C.D. Cal. Apr. 4, 2023) (no adequate alternative forum where defendants failed to show foreign court has personal jurisdiction over all defendants).

Deel cannot make this showing. Although Deel consented to jurisdiction in Ireland, none of the three Individual Defendants lives in Ireland or has any connection to that forum. To grant FNC dismissal, courts require clear evidence that defendants will appear in the alternative forum. *Besson v. Blackpills, Inc.*, 2017 WL 10434368, at *3 (C.D. Cal. Oct. 20, 2017) (denying FNC motion where the defendant would not "explicitly stipulate[] ... to submit to a foreign jurisdiction"). Although Deel suggests in a footnote (Br. 5 n.2) that the Individual Defendants will consent to jurisdiction in Ireland, "there is no evidence that they have actually done so." *Nibirutech*, 75 F. Supp. 3d at 1083. Most tellingly, Alex Bouaziz is currently contesting the Irish High Court's jurisdiction over him.

ECF 88-1 ¶ 9.  This creates an absurd contradiction: Deel asks this Court to find Ireland adequate while its CEO simultaneously argues to the Irish court that it lacks jurisdiction over him.  And Defendants Philippe Bouaziz and Dan Westgarth are not even named in the Irish proceedings, and thus, have not consented to jurisdiction there.  There is no suggestion that either Bouaziz or Westgarth "could be compelled to appear in a court there."  *Dole Food*, 303 F.3d at 1118.

### C.  The Private Interest Factors Overwhelmingly Favor California

For the most part, Deel neglects to address the "private factors" and show how they "strongly favor" dismissal.  *Bos. Telecomms. Grp.*, 588 F.3d at 1207.  Dismissal is appropriate only if "'the public and private interest factors clearly point towards trial in the alternative forum.'"  *Carijano*, 643 F.3d at 1227 (quoting *Piper*, 454 U.S. at 255).  They do not.

The private interest factors are: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Bos. Telecomms. Grp.*, 588 F.3d at 1206-07 (citation omitted).  Here, ***no factor*** favors litigation in Ireland.

#### 1.  Deel Incorrectly Argues That "Parallel" Irish Proceedings Favor Dismissal

Although Deel largely fails to address these factors, it contends generally that this case is "parallel" to the Irish proceedings.  Deel's premise is false, but regardless, *forum non conveniens* "do[es] not turn on the existence of any pending parallel litigation."  *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975).

As established above, this case revolves around Deel's conspiracy to steal trade secrets from Rippling and others.  The Irish proceedings involve different defendants, different actions, and different claims—obstruction of an Irish court order to preserve evidence and related defamation.  *See Ryanair DAC v. Booking Holdings Inc.*, 2021 WL 7209367, at *4, *6 (D. Del. Dec. 27, 2021) (finding two concurrent cases featuring "some of the same allegations" to be "not duplicative, as [the U.S. case] involves a cause of action under U.S. law and four defendants who are not involved in the Irish case").

Deel obscures the narrow nature of the Irish proceedings to argue this case should proceed in Ireland, selectively quoting and misrepresenting a Rippling submission to the Irish High Court that "Ireland is clearly the jurisdiction most closely connected with the wrongs the subject matter of ***these proceedings***." Br. 1, 2, 12 (quoting ECF 48-4 ¶ 34) (emphasis added). Deel conceals the rest of Rippling's submission, which makes clear that "these proceedings" refer only to the narrow Irish case, not this comprehensive U.S. trade secret and conspiracy action. Indeed, Deel omits Rippling's statement in the ***same Irish declaration*** that Rippling is not pursuing trade secret claims in Ireland:

> Plaintiffs ***do not propose proceeding*** against the intended Defendants in this jurisdiction in respect of the wrongdoing the subject matter of the Plaintiffs' original claim against Mr. O'Brien, i.e. the spying and theft of Confidential Information and Trade Secrets….

ECF 48-4 ¶ 27. This could not be clearer: Rippling is ***not*** pursuing its trade secret claims in Ireland. Rippling has settled with O'Brien and dismissed its suit against him. Ex. 12. Rippling initially asserted trade secret claims against O'Brien as a predicate to seeking to preserve evidence, but never asserted trade secret claims in Ireland against Deel or any of its executives. Wu Decl. ¶ 27. Clarke Decl. ¶¶ 7-8, 11-18. Rippling did not choose Ireland—it was forced to take action due to ***Deel's*** wrongful choice to cultivate a spy there. If Deel had instead cultivated a spy in Oslo or Paris, Rippling may have gone there to preserve evidence instead. Deel forced Rippling to seek evidence preservation in Ireland, but it cannot force Rippling to pursue its trade secret claims there, too.

The yawning differences between the proceedings here and in Ireland distinguish this case from Deel's authority. In *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596, at *12-13 (C.D. Cal. Jan. 17, 2020), the court found that the plaintiff asserted "substantially similar" claims against the same defendants in Canada. *See also Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *11 (N.D. Cal. Aug. 10, 2021) (finding "substantial overlap" with a Canadian proceeding); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 776-78 (C.D. Cal. 2006) (dismissing on FNC grounds a case involving a plane crash in Singapore where there was a pending case in Singapore, key witnesses included the Singapore-based accident investigators and flight crew, and the California connections were practically non-existent). Likewise in *Mentawai v. Marcotti*, 2016

1  WL 7496750, at *4-6 (C.D. Cal. Mar. 28, 2016), in addition to "a related case pending in Indonesia,"

2  the other factors strongly indicated dismissal in favor of Indonesia: the plaintiffs were Indonesian

3  citizens residing in Indonesia, the majority of the witnesses were in Indonesia, a California judgment

4  would be difficult to enforce in Indonesia, and the "vast majority" of events "occurred in Indonesia

5  and involved Indonesian entities," leaving California with "little interest" in the dispute.  Needless

6  to say, that's not this case.

7       While Deel argues (Br. 13) that "Rippling relies on the same evidence in both proceedings,"

8  referencing O'Brien's affidavit, the fact that the affidavit (ECF 48-5) describes both the underlying

9  espionage (the subject of this case) and Deel's subsequent interference with an Irish court order and

10  related defamation (at issue in Ireland) does not transform two distinct legal proceedings into one.

11  Resolving Rippling's Irish claims will not resolve the claims here because Rippling does not assert

12  trade secret or conspiracy claims in Ireland.  *Quest Nutrition*, *LLC v. Nutrition Excellence, Inc.*,

13  2019 WL 1789880, at *9 (C.D. Cal. Apr. 23, 2019) (cases not substantially similar for FNC purposes

14  where the "Canadian action will not resolve the claims brought" in the United States).

15                    2.    Only A Single Material Witness Resides In Ireland

16       Deel also errs in contending (Br. 8-10) that the location of witnesses favors trial in Ireland.

17  To be clear, Deel identifies a ***single witness***, O'Brien, in Ireland, who has executed a cooperation

18  agreement obligating him to testify in these U.S. proceedings.  Ex. 14 § 1.3(d).  Most of the

19  identified witnesses reside in California or somewhere other than Ireland.  Rippling is headquartered

20  in San Francisco, and its witnesses who will testify to the trade secrets at issue and the impact of

21  Deel's theft live in the San Francisco area and in nearby Seattle. Exs. 13, 15.  Relevant non-party

22  witnesses in California include LiquiFi, who was targeted by the alleged conspiracy, and

23  Conspirator-1 and Conspirator-2. *See* FAC ¶¶ 25, 27-28.  It is clear that "local litigation" would

24  save these witnesses "the time and expense of traveling to [Ireland]."  *Carijano*, 643 F.3d at 1230.

25       That's true for Deel as well.  Despite its disavowal of any meaningful connection to San

26  Francisco, Deel lists its headquarters at a registered San Francisco address. FAC ¶ 16.  It markets

27  itself as a "San Francisco" company (Exs. 16-17), sponsors a huge billboard at SFO (Ex. 18), and

28  held at least five events at San Francisco's Tech Week in 2024 (Ex. 19).  Deel even sues its own

1  foreign customers in San Francisco, alleging that its "services [a]re provided in the County of San

2  Francisco" and that its customer contracts are entered into in San Francisco.  Exs. 1 ¶ 3, 10 ¶ 3.  Deel

3  admits (Br. 11) the Individual Defendants are in Europe and the Middle East—not in Ireland.  CEO

4  Alex Bouaziz divides his time between San Francisco, London, Israel, and Dubai.  FAC ¶ 17.  At

5  best, Deel can show that some "witnesses are scattered around the globe," but this militates ***against***

6  dismissal.  *Bos. Telecomms. Grp.*, 588 F.3d at 1210 (reversing and remanding FNC dismissal).

7        Grasping, Deel conjures up (Br. 8-11) additional Irish witnesses, hypothesizing a passel of

8  O'Brien's "family members, friends, medical professionals, and co-workers" who will supposedly

9  testify to his mental health.  The relevance of O'Brien's state of mind is close to zero, given the

10  extensive forensic evidence documenting his months-long acts of espionage.  And even if it were

11  relevant, O'Brien is the best witness on that subject and has agreed to testify here. In any event,

12  Deel has not shown that any of these phantom witnesses are "unwilling" to testify here, so its

13  reference to them "does not weigh in favor of dismissal." *Howard v. Johnson Outdoors Diving,*

14  *LLC*, 2024 WL 3206912, at *5.  By contrast, where courts have granted FNC dismissals because

15  critical witnesses cannot be compelled to testify in the United States, there has been no question that

16  the witnesses possessed material information.  *See, e.g., Kleiner v. Spinal Kinetics, Inc.*, 2016 WL

17  1565544, at *1, 4 (N.D. Cal. Apr. 19, 2016) (granting FNC dismissal in a products liability case

18  involving two German plaintiffs who received surgical implants in Germany because treating

19  physicians were "critical witnesses" beyond California's reach); *Herd v. Airbus SAS*, 2017 WL

20  6504162, at *3 (C.D. Cal. Dec. 11, 2017) (involving Australian citizen injured on job for Australian

21  airline, where "[e]ssentially all of the relevant witnesses reside in Australia"); *Medicor v. Arterial*

22  *Vascular*, 1997 WL 68564, at *3 (N.D. Cal. Jan. 30, 1997) ("all necessary witnesses are Swiss").[1]

23                           3.    <u>California Is Convenient For Both Deel And Rippling</u>

24        Because Rippling and Deel each are headquartered in San Francisco, Deel cannot claim this

25  forum is inconvenient.  While Deel argues (Br. 14) that its San Francisco address is "just a mailing

26

27  ―――――――――――――

[1]  In *Summa*, the court saw "no reason to think that [former employees] would voluntarily travel
28  to the United States to testify in a case in which they are accused of lying" when, unlike here, no
agreement to testify in the United States case existed.  2016 WL 2593868, at *5.

1    address," as discussed above, that is misleading at best.  Deel publicly describes itself as a San

2    Francisco-based company, including to government regulators.  And, although it told this Court

3    *months* ago that it was "in the process" of changing its principal place of business (ECF 48-2 ¶ 6),

4    it still had not done so.  Further, given its history of filing suits in San Francisco (Exs. 1, 10) and its

5    recent choice to file a retaliatory lawsuit against Rippling in Delaware, Deel cannot credibly claim

6    that litigating in the United States is "oppressive" to it.

7    4.    <u>Deel Identifies No Physical Evidence Still In Ireland</u>

8            Aside from witness testimony, the trial evidence will consist largely of electronic records

9    fully accessible to Deel and Rippling in this forum.  Rippling's base of operations, and the databases

10   that O'Brien plundered, are located in the United States.  FAC ¶ 67.  Deel does not claim any of its

11   documents "would be difficult to access in California."  *Quest Nutrition*, 2019 WL 1789880, at *7.

12   As the Ninth Circuit has recognized, when "documents and witnesses in the United States are all

13   under the control of Plaintiffs and Defendants, … they can be brought to court, no matter the forum."

14   *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001).

15           Deel's recent conduct shows even more decisively that this factor favors Rippling.  While

16   claiming Ireland offers superior access to evidence, Deel is simultaneously obstructing the very

17   discovery Rippling seeks to obtain here.  Deel moved for a full discovery stay—a motion this Court

18   denied because Deel had previously told this Court it would ***not*** seek a stay.  ECF 101, ECF 46 ¶ 2.

19   Deel also moved to quash 13 subpoenas directed to U.S.-based entities seeking information of

20   Deel's bribery payments to O'Brien and the accounts used by Deel to store and transmit Rippling's

21   information.  ECF 100, 101.  Conversely, when Rippling sought discovery into cryptocurrency

22   payments in Europe, it was directed to seek the information in the United States.  Ex. 20 (Revolut

23   letter).  *See Ravelo Monegra*, 211 F.3d at 514 (finding that defendant's failure to demonstrate that

24   evidence would be more accessible in foreign forum weighed against dismissal).

25           Deel points to O'Brien's devices (Br. 10), but the phone he used for espionage is no longer

26   accessible to anyone, anywhere, because at Deel's direction, O'Brien destroyed it with an axe and

27   tossed it down a drain.  ECF 48-5 ¶ 36.  Deel acknowledges O'Brien's computer is "in O'Brien's

28   possession" (Br. 10); thus, it can be brought to the United States with his cooperation.  Moreover,

1    its contents have already been forensically imaged and are available electronically.  ECF 48-4 ¶ 25.

2        Deel invokes the General Data Protection Regulation (GDPR) and Irish privacy laws (Br.

3    11-12), but reference to such laws does not favor Ireland because "compliance with the GDPR will

4    be an issue even if this dispute were to proceed in Ireland."  *Ryanair*, 2021 WL 7209367, at *6.

5    Further, these laws do not prohibit data transfers. *See Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554,

6    at *3 (N.D. Cal. Feb. 14, 2019) (finding "the GDPR does not preclude" production of electronic

7    information).  They require only compliance mechanisms that both companies have in place.  Deel's

8    Irish subsidiary is certified under the EU-US Data Privacy Framework, confirming it can transfer

9    data to its United States parent. Ex. 21.  Rippling faces no compliance obstacle either, but the point

10   is moot because Rippling's relevant information is stored on U.S. servers.  FAC ¶ 67.

11        ## 5.    Deel Identifies No Unwilling Witnesses

12        On this factor, "the initial question is not whether the witnesses are beyond the reach of

13   compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to

14   testify." *Carijano*, 643 F.3d at 1231.  Deel fails at the threshold because it has not identified any

15   witness, let alone a material one, who is unwilling to testify here but could be compelled to testify

16   in Ireland.  Deel speculates (Br. 10) that O'Brien might "flout" his agreement to testify in this case.

17   But the legal standard asks whether witnesses *are* unwilling to testify, not whether a willing witness

18   might later be intimidated into breaching a contract binding them to their willingness.  *Carijano*,

19   643 F.3d at 1231.  Deel provides no evidence that O'Brien is unwilling to honor his agreement,

20   despite Deel deploying "covert" surveillance against him. *Howard*, 2024 WL 3206912, at *5 ("The

21   fact this court would not be able to compel certain non-party witnesses to testify in California does

22   not weigh in favor of dismissal where there is no evidence they are *unwilling* to do so.").

23        ## 6.    The Cost Of Bringing Witnesses To Trial Does Not Favor Dismissal

24        If trial proceeds here, the only material witness in Ireland is O'Brien, for whom Rippling

25   would pay travel costs.  Conversely, if trial proceeds in Ireland, every material witness except

26   O'Brien would be forced to travel to Ireland, an enormous expense. *Tuazon v. R.J. Reynolds*

27   *Tobacco Co.,* 433 F.3d 1163, 1181 (9th Cir. 2006) (affirming denial of FNC and noting cost of

28   "moving the trial apparatus, including both parties and witnesses, from all over the United States to

1  the Philippines"); *see Bluestar Genomics v. Song*, 2023 WL 4843994, at *28 (N.D. Cal. May 25,

2  2023) (holding this factor weighs against dismissal where "relevant witnesses are located in multiple

3  locations and the [defendant] has not provided sufficient information about the location and

4  materiality of the witnesses").

5  7.    The Enforceability Of The Judgment

6  Deel states (Br. 13) it will satisfy a judgment in the Irish proceedings, but the Individual

7  Defendants have not made similar commitments. They remain "free to attack" the judgment,

8  *Howard*, 2024 WL 3206912, at *7.

9  8.    All Other Practical Issues

10  The type of misconduct at issue here is frequently pursued in United States courts both

11  criminally and civilly.[2]   Should the U.S. Attorney's Office pursue charges here, there will be

12  additional convenience to litigating both the civil and criminal cases in the United States.

13  **D.  The Public Interest Factors Weigh Against Dismissal**

14  Finally, Deel makes little effort to demonstrate the public interest factors—"(1) the local

15  interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local

16  courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a

17  particular forum," *Bos. Telecomms. Grp.,* 588 F.3d at 1211—favor dismissal of this dispute between

18  two San Francisco technology companies over California-developed trade secrets.

19  *First*, the local interest strongly favors Rippling's chosen forum because California has an

20  interest in ensuring its resident corporations follow the law.  So long as "there is an identifiable local

21  interest in the controversy", this factor counsels against dismissal.  *Tuazon,* 433 F.3d at 1182.  Here,

22  the local interest is strong: a California corporation seeks redress for injuries caused by another

23  California corporation in violation of United States and California law.  California has a "strong

24  interest in applying [] trade secrets laws to protect against misappropriation of trade secrets and in

25

26  ---

26  2   *See*, *e.g.*, "Former CEO and COO of JHL Biotech Charged in Conspiracy to Steal Trade Secrets
27  and Commit Wire Fraud," https://www.justice.gov/usao-ndca/pr/former-ceo-and-coo-jhl-biotech-
charged-conspiracy-steal-trade-secrets-and-commit-wire; "Former Uber Executive Sentenced to
28  18 Months in Jail for Trade Secret Theft from Google," https://www.justice.gov/usao-
ndca/pr/former-uber-executive-sentenced-18-months-jail-trade-secret-theft-google.

preventing torts committed within its borders." *Antaris Techs., Inc. v. Matthews*, 2025 WL 1939868, at *4 (N.D. Cal. July 15, 2025) (internal quotations and citation omitted); *Dole Food Co.*, 303 F.3d at 1115-16 ("California has a strong interest in providing a forum for its residents and citizens who are tortiously injured."). When the accused wrongdoer is a California corporation, this interest intensifies. The Ninth Circuit has recognized "California's significant interest in providing a forum for those harmed by the actions of its corporate citizens," *Carijano*, 643 F.3d at 1232, and "an interest in preventing fraud from taking place within its borders," *Bos. Telecomms. Grp.,* 588 F.3d at 1212. Widespread local media coverage of this lawsuit further confirms the local interest. *See* Ex. 22 (compilation of Bay Area media coverage). Deel is simply wrong that "California's local interest is significantly weaker than Ireland's interest," Br. 15, but that puzzling assertion is also irrelevant because this factor does not concern "whether another forum also has an interest." *Tuazon,* 433 F.3d at 1182.

 *Second*, the Court's familiarity with governing law weighs against dismissal. Rippling asserts claims under federal and California law in federal court in California. *See City of Almaty v. Khrapunov*, 685 F. App'x 634, 636 (9th Cir. 2017) (this factor weighs against dismissal in case governed by United States and California law). Deel's claim (Br. 15) that Irish law may apply rests on its blatant mischaracterization of the "proceedings" described in Ms. Wu's declaration. ECF 48-4 ¶ 44. Deel also acknowledges (Br. 15) this Court can apply Irish law.

 *Finally*, the final three public interest factors weigh in favor of dismissal only if "the local interest in a controversy is weak." *Etaliq, Inc. v. Cisco Sys., Inc.*, 2011 WL 13220445, at *8 (C.D. Cal. July 20, 2011). Conversely here, California's "local interest in this controversy is strong, justifying [any] burden on local courts and juries, congestion, and related costs." *Quest Nutrition*, 2019 WL 1789880, at *8. There is "nothing to suggest that hearing this case would create congestion in the Court or cause an undue burden on the Court or on a local jury," and because of this case's strong connections to San Francisco, "there are no costs of resolving a dispute unrelated to this forum." *In re Volkswagen*, 2017 WL 66281, at *10.

## CONCLUSION

 For the foregoing reasons, the Court should deny Deel's motion.

1 | Dated: August 8, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   */s/ Joseph Sarles*

Alex Spiro (*pro hac vice*)
Maaren A. Shah (*pro hac vice*)
Samuel Nitze (*pro hac vice*)
Scott Hartman (*pro hac vice*)
Dominic Pody (*pro hac vice*)
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
samuelnitze@quinnemanuel.com
scotthartman@quinnemanuel.com
dominicpody@quinnemanuel.com

Joseph Sarles (CA Bar No. 254750)
Kathleen S. Messinger (CA Bar No. 329983)
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
josephsarles@quinnemanuel.com
kathleenmessinger@quinnemanuel.com

Jeff Nardinelli (CA Bar No. 295932)
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
jeffnardinelli@quinnemanuel.com
*Attorneys for Plaintiff*
*People Center, Inc. d/b/a Rippling*