**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor, New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Jeffrey Nardinelli (CA Bar No. 295932)
jeffnardinelli@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa St., 10th Floor, Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff People Center, Inc. d/b/a Rippling*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576 (CRB)<br><br>**DECLARATION OF MR JUSTICE FRANK CLARKE IN SUPPORT OF RIPPLING'S OPPOSITION TO DEEL'S MOTION TO DISMISS UNDER FORUM NON CONVENIENS** |

## **DECLARATION OF MR JUSTICE FRANK CLARKE**

I, Frank Clarke, under penalty of perjury, declare and state as follows:

1. I am over the age of twenty-one years, suffer from no legal disability, and am competent to make this declaration and testify to the statements and facts contained herein.

2. I am currently a Senior Counsel at the Irish Bar. I was admitted to the Bar in 1973 and became a Senior Counsel in 1985. As a Senior Counsel I practiced mainly in commercial and public law litigation (including issues connected with European Law) until my appointment as a Judge of the High Court of Ireland in 2004. As such a judge I mainly sat on the Commercial List which deals with significant commercial litigation (frequently involving cross border issues) until my appointment to the Supreme Court in 2012. I was appointed as Chief Justice in July 2017 and served in that capacity until reaching retirement age of 70 in October 2021. Thereafter I returned to practice as a Senior Counsel dealing mainly with commercial mediation and arbitration. I also act as a member of a seven person panel appointed by the Council of the European Union to give opinions as part of the process for the appointment of judges to the Court of Justice of the European Union (see Art. 255 of the Treaty on the Function of the European Union ("**TFEU**")).

3. I have been asked by counsel for Rippling to address certain issues in the context of the actions filed by People Centre Inc. d/b/a Rippling ("**Rippling**") against Defendant Deel Inc ("**Deel**") and unnamed Does in the United States District for the Northern District of California.

### **A.     THE ANTON PILLER ORDER**

4. I have reviewed the proceedings commenced in Ireland through issuance of a Plenary Summons on March 12. The sole Defendant named at that time was a man named Keith O'Brien. On the same day a successful application was made *ex parte* for an Anton Piller order against O'Brien.

5. Such orders stem from the English case of Anton Piller KG v Managing Processes Ltd. & Ors (1976) 1 All ER 779. Such orders are also made in Ireland where the Courts have recognised a jurisdiction similar to that identified in England. However, it has been observed, correctly in my view, that such orders are less frequently made in Ireland. While it is unnecessary for present purposes to refer to same, the criteria for granting Anton Piller orders are very strict

given the intrusion into the Defendant's rights without the Defendant being heard – those criteria are potentially more stringently enforced in Ireland than in some other common law jurisdictions where Anton Piller orders are recognised.

6.     Anton Piller orders are made ex parte (without the Defendant being present or aware) and typically require the Defendant to deliver up potential evidential material to an independent person and can involve a requirement to make electronically stored information available for copying. Such an order does not authorise the taking of the relevant hard or soft copy materials but rather requires the Defendant to surrender same. A failure by a Defendant to comply can amount to a contempt of Court leading to potential imprisonment or corporate sequestration of assets. Where obtained such orders are extremely valuable in enforcement of intellectual property rights or rights deriving from confidential information. As will be seen from the timeline to the relevant Irish proceedings set out below, an Anton Piller order can deliver important information in a very timely fashion.

7.     There is no Irish case to my knowledge where an Anton Piller order has been made except where substantive relief is also claimed in the same proceeding in Ireland. Thus it does not appear that the Anton Piller orders made against O'Brien could have been obtained in aid of any substantive US proceedings. Neither is it possible to obtain an order similar to an Anton Piller order through the letters rogatory procedure.

8.     It follows that obtaining the information ultimately disclosed by O'Brien could not have been achieved by any binding legal process in Ireland other than in proceedings seeking substantive relief in Ireland and claiming an Anton Piller order in aid of that substantive relief. Identifying the claim underlying the Anton Piller order would be necessary not only to obtain the Anton Piller order in question but also to bring an application seeking attachment for contempt of that order before the relevant information became available. This demonstrates the effectiveness of Anton Piller orders where they can be obtained.

9.     There are no alternative but equally effective means available in Irish law for gaining access to the sort of material obtained on foot of the Anton Piller order obtained in the case against

1  O'Brien. There are significant restrictions on obtaining documents or other potential evidence
2  through the Irish Courts for use in proceedings in other jurisdictions.

3      10.    In addition there is nothing in the Court papers to which I have been referred which
4  suggests that either Deel or O'Brien ever suggested that in the proceedings brought in the Irish High
5  Court it was not appropriate to seek to obtain Anton Piller orders and, indeed, the High Court clearly
6  considered it an appropriate such case by making the orders sought.

### B.    THE IRISH PROCEEDINGS AS THEY NOW STAND

8      11.    After the successful application for the ex parte Anton Piller order against O'Brien,
9  there followed a contention that O'Brien had failed to fully comply with the said order resulting in
10 an application to the Court for an order, inter alia, for attachment and/or committal of O'Brien in
11 respect of that failure. That application was initially before the Court on March 24 but was adjourned
12 to March 31.

13     12.    In the intervening period, however, by agreement between the Plaintiffs (Rippling
14 and Rippling Ireland) and O'Brien made on March 27, the proceedings and all disputes between the
15 parties were resolved. In substance that agreement required that the proceedings against O'Brien
16 would be struck out within 28 days and that the Plaintiffs would indicate to the Court on March 31
17 that O'Brien had, to the fullest extent possible, remedied any breach of the Anton Piller order and
18 that as a consequence the Anton Piller order was no longer required.

19     13.    Thereafter on April 2, the Plaintiffs obtained an order joining Deel and three named
20 individuals to the proceedings. In Irish procedural law a Plenary Summons (by which many types
21 of proceedings are commenced) simply sets out the relief claimed. A Plenary Summons is followed
22 by a Statement of Claim which sets out the facts and contentions asserted by the Plaintiffs to justify
23 the claims for the relief sought (but not the evidence sought to be relied on).

24     14.    A Statement of Claim was issued on May 17 and was subject to a minor (and
25 immaterial for present purposes) amendment on May 19. It is that amended Statement of Claim of
26 May 19 which now represents the Plaintiffs claim in the Irish proceedings. That Statement of Claim
27 concerns the role of Deel and the three individual defendants with regard to the compliance by
28 O'Brien with the Anton Piller order. Given that, by the time of delivering the Statement of Claim,

the Anton Piller proceedings as against O'Brien had been resolved, the Statement of Claim only seeks relief as against Deel and the three named individual Defendants.

15. The Statement of claim makes clear in both para. 16 and in the relief claimed that the claim made is confined to alleged actions by the Defendants subsequent to March 14. This is confirmed by the fact that the detailed particulars pleaded against the Defendants all relate to events alleged to have occurred after March 14.

16. In Irish procedural law parties are confined to the claims and defences put forward in their pleadings which, in this context, means principally the Statement of Claim in its amended form, the Notices and replies for further and better particulars passing between the parties, and the Defences of the Defendants. On that basis it is clear that no claim exists in the Irish proceedings as against Deel (or indeed the other individual Defendants) other than one which relates to events after March 14. In addition no claim is made in the Irish proceedings concerning trade secrets. Rather the claim is solely focused on alleged actions by the Defendants concerning compliance by O'Brien with the Anton Piller order made against him on March 12.

17. I understand that it may be contended that it is impossible to divorce any alleged events post March 14 from actions prior to that date. I do not have any information as to why that might be said to be so. However, it is important to distinguish between background evidence which may place direct evidence of wrongdoing in context, on the one hand, and actual evidence of wrongdoing itself, on the other. Evidence of events which occurred or circumstances which pertained before March 14 may provide context to events which allegedly occurred after that date. However that most certainly does not mean that those events or circumstances are the subject of the proceedings. On the basis of the case as pleaded, the Plaintiffs' claim can only succeed if and to the extent that the Court becomes satisfied that the wrongdoing alleged to have occurred after March 14 is established and amounts to an actionable wrong or wrongs

18. In addition I have also had sight of an application currently before the Irish High Court in which the individual Defendants (who are respectively the CEO of Deel and lawyers acting for Deel) seek orders setting aside the previous order of the High Court of April 2 joining them as Defendants. Deel itself does not bring a similar application. As I read the papers filed in support of

that application it is grounded on the fact that, at the time when the application to join those Defendants was made, the Anton Piller case as against O'Brien had been resolved. Attention is drawn to the fact that no continuing claim against O'Brien exists in the proceedings. I understand that the Plaintiffs do not dispute that factual contention so that it appears to be accepted on all sides that the trade secrets claim as against O'Brien was spent as of the compromise of the proceedings as against him in late March. There is no pleaded trade secrets claim as against any of the continuing Defendants.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 7, 2025.

By: *Signed by: [signature] B9489A46742346C...*
Frank Clarke