1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16                          **UNITED STATES DISTRICT COURT**

17                     **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18                              **SAN FRANCISCO DIVISION**

19

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants. | Case No. 3:25-cv-02576-CRB<br><br>**RIPPLING'S OPPOSITION TO DEEL'S MOTION TO DISMISS RIPPLING'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Compl. Filed:      March 17, 2025<br>Am. Compl. Filed: June 5, 2025<br>Judge:             Hon. Charles R. Breyer<br>Courtroom:         6<br>Hearing Date:      September 19, 2025<br>Hearing Time:      10:00 a.m. |

20

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

As required by this Court's Standing Order, Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") provides the following summary of argument. Rippling opposes Defendant Deel, Inc. ("Deel")'s motion to dismiss Rippling's First Amended Complaint (ECF 57, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court should deny Deel's motion because:

- Rippling states a substantive claim for violation of the Racketeering Influenced Corrupt Organizations ("RICO") Act. *Infra*, Argument § I. Rippling sufficiently alleges an association-in-fact enterprise (the "Bouaziz Racketeering Enterprise" or the "Enterprise") operating with escalating gravity since at least January 2024 with the common purpose of enriching its members by exploiting for their own benefit valuable corporate trade secrets belonging to Rippling and at least four other competitors. *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (alleged enterprise consisting of Microsoft and Best Buy had common purpose where Microsoft profited through the distribution of a Microsoft software product bundled on laptops sold at Best Buy while Best Buy received funds directly from Microsoft in exchange); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013) (similar); *infra*, Argument § I.A. As against Deel, Rippling alleges more than two predicate acts: it alleges multiple acts of wire fraud; six valid trade secret misappropriation predicates based on theft of information from Rippling, Victim-2, and Victim-3; and multiple valid predicates based on obstruction of justice. *Just Film, Inc. v. Merch. Servs.*, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (so long as plaintiff was directly harmed by at least one predicate act, it may use predicate acts harming third parties to establish pattern of predicate acts); *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1236 (E.D. Cal. 2009) (witness tampering was RICO predicate notwithstanding defendants' argument that tampering was directed at different proceeding); *infra*, Argument § I.B. Rippling alleges both that the Enterprise's past conduct naturally projects into the future with a threat of repetition (open-ended continuity) and constitutes a scheme spanning a

1    substantial period of time (closed-ended continuity). *Allwaste, Inc. v. Hecht*, 65 F.3d

2    1523, 1526 (9th Cir. 1995) (predicates spanning at least 13 months demonstrate

3    closed-ended continuity); *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir.

4    1991) (open-ended continuity found where defendants committed three acts of

5    forgery because "[t]he frequency of the forgeries suggests that this practice had

6    become a regular way of conducting business"); *infra*, Argument § I.C.  Rippling

7    identifies specific customers lost as a direct result of the Enterprise's theft and misuse

8    of Rippling data to target those customers for its own gain, sufficiently pleading

9    concrete financial loss and proximate cause.  *Tax Relief, Inc. v. Selb*, 2021 WL

10   8919077, at *11 (C.D. Cal. June 7, 2021) (predicate acts proximately caused

11   Nationwide's injury since the acts were "directly target[ed] [at] Nationwide's

12   customers and prospective customers"); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163,

13   1168-69 (9th Cir. 2001) (reversing Rule 12(b)(6) dismissal because it was

14   "inappropriate at this stage to substitute speculation for the complaint's allegations

15   of causation"); *infra*, Argument § II.D.

16   •    Rippling states a claim for RICO conspiracy based on its allegations of the

17        defendants' agreement to an overall scheme.  *Infra*, Argument § II; *Ketayi v. Health*

18        *Enrollment Grp.*, 516 F. Supp. 3d 1092, 1138 (S.D. Cal. 2021) (plaintiff's allegation

19        that "each Defendant ... agreed to an overall fraudulent scheme" sufficient to plead

20        RICO conspiracy).

21   •    Rippling states a claim for misappropriation of trade secrets under the Defend Trade

22        Secrets Act ("DTSA").   *Infra*, Argument § III.   The FAC's allegations of

23        technological protections, employee contracts, and training easily satisfy the

24        pleading standard for reasonable protective measures.  *See InteliClear, LLC v. ETC*

25        *Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) ("Confidentiality provisions

26        constitute reasonable steps to maintain secrecy."); *United States v. Chung*, 659 F.3d

27        815, 825-827 (9th Cir. 2011) (holding sufficient "general physical security

28        measures" along with "training sessions" and "confidentiality agreements"); *7EDU*

*Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 996-97 (N.D. Cal. 2024) (denying motion to dismiss where plaintiff used dual-factor authentication, audit logs, and confidentiality policies). In any event, the reasonableness of protective measures is a fact question inappropriate for resolution at the pleading stage. *Mastronardi Int'l Ltd. v. SunSelect Produce (California), Inc.,* 2019 WL 3996608, at *9-10 (E.D. Cal. Aug. 23, 2019) ("reject[ing]" argument that reasonable measures can be adjudicated "at this Rule 12(b)(6) phase" and collecting cases for same).

- Rippling's state law claims are not preempted by the California Uniform Trade Secrets Act ("CUTSA"). *Infra*, Argument § IV.A. To the extent these claims are based on conduct other than misappropriation, such as O'Brien's fiduciary breaches after he was caught by Rippling, CUTSA does not apply by its terms. *Arthur J. Gallagher & Co. v. Tarantino,* 498 F. Supp. 3d 1155, 1175 (N.D. Cal. 2020); *Remedi8, LLC v. All. Env't Grp., LLC*, 2024 WL 1829617, at *3 (C.D. Cal. Feb. 5, 2024) (fiduciary duty claim not preempted when "based on … solicitation of [plaintiff's] customers"). To the extent these claims are based on misappropriation, the misappropriated information underlying these claims is *non-trade-secret* confidential information, and the claims therefore are not preempted. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017) (information theft-based breach of fiduciary claim that "has a basis independent of any misappropriation of a trade secret … is not preempted by CUTSA"); *Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 1103822, at *5 (E.D. Cal. Apr. 13, 2022) (same, as to tortious interference with contract); *BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 996 (N.D. Cal. 2017) (same, as to unfair competition).

- Rippling has sufficiently pleaded a tortious interference with contract claim. *Infra*, Argument § IV.B. Rippling cites several employment agreements containing confidentiality obligations and alleges that Deel knew or should have known about these agreements, and induced O'Brien to breach these agreements by disclosing Rippling's confidential information to Deel, resulting in damages. *Silicon Knights,*

*Inc. v. Crystal Dynamics, Inc*., 983 F. Supp. 1303, 1310 (N.D. Cal. 1997) ("general allegations of [defendant's] knowledge of the underlying contracts" acceptable at pleading stage). Even a cursory reading of Rippling's tortious interference claim debunks Deel's suggestion that Rippling disclaimed the employment agreements at issue.

- Rippling's aiding-and-abetting breach of fiduciary duty claim validly pleads all components of the claim by identifying fiduciary duties O'Brien owed to his employer, Rippling's Irish subsidiary, which Rippling alleges O'Brien understood to extend to its parent company, Rippling. *Infra*, Argument § IV.C. Deel's sole argument to the contrary fails because California law recognizes that the fiduciary of a subsidiary owes fiduciary duties to the parent. *PQ Labs, Inc. v. Qi*, 2014 WL 334453, at *12 (N.D. Cal. Jan. 29, 2014); *Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at *5 (N.D. Cal. Apr. 1, 2010).

- Rippling states a claim under California's Unfair Competition Law ("UCL"). *Infra*, Argument § IV.B. Rippling properly seeks UCL remedies, namely injunctive relief, non-disgorgement restitution, and attorneys' fees as a private attorney general. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 895 (Cal. 2011) ("Injunctions are the primary form of relief available under the UCL.") (citation omitted); *Turner v. Apple, Inc.*, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (upholding restitution claim under UCL because damages alone would not encompass the "full value of misappropriated data" that "Defendant wrongfully received"); *Zhang v. Superior Ct.*, 304 P.3d 163, 167 n.4 (Cal. 2013) (while "the UCL does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as a private attorney general").

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF RELEVANT ALLEGATIONS ......................................................................2

LEGAL STANDARD ...................................................................................................................4

ARGUMENT ................................................................................................................................4

I.      RIPPLING PROPERLY PLEADS THE ELEMENTS OF RICO ......................................4

        A.      Rippling Has Pleaded An Association-in-Fact Enterprise .........................................5

        B.      Deel Participated in Multiple Predicate Racketeering Acts ......................................6

        C.      Deel's Predicate Acts Threaten Continued Harm ....................................................7

        D.      Rippling Alleges Injury Proximately Caused By Deel's Predicate Acts .................8

II.     RIPPLING STATES A CLAIM FOR RICO CONSPIRACY ..........................................10

III.    RIPPLING STATES A TRADE SECRETS MISAPPROPRIATION CLAIM .................11

IV.     RIPPLING PROPERLY PLEADS ITS STATE LAW CLAIMS .....................................13

        A.      CUTSA Does Not Preempt The California State Law Claims ...............................13

        B.      Rippling States A Tortious Interference Claim .......................................................14

        C.      Rippling States An Aiding And Abetting Breach of Fiduciary Duty Claim............14

        D.      Rippling States An Unfair Competition Claim .......................................................15

CONCLUSION ...........................................................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*7EDU Impact Acad. Inc. v. You*,
   760 F. Supp. 3d 981 (N.D. Cal. 2024) ................................................................ 11

5

6

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
   364 F. Supp. 3d 888 (N.D. Ill. 2019) ................................................................. 12

7

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995) .............................................................................. 7, 8

8

9

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ............................................................................................ 10

10

11

*Arthur J. Gallagher & Co. v. Tarantino*,
   498 F. Supp. 3d 1155 (N.D. Cal. 2020) .............................................................. 13

12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 4

13

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 4

15

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013) .................................................................. 5

16

17

*BladeRoom Group Ltd. v. Facebook, Inc.*,
   219 F. Supp. 3d 984 (N.D. Cal. 2017) ................................................................ 14

18

19

*Bredberg v. Middaugh*,
   2022 WL 2662878 (9th Cir. July 11, 2022) .......................................................... 5

20

*Bryant v. Mattel, Inc.*,
   573 F. Supp. 2d 1254 (C.D. Cal. 2007) .............................................................. 6, 9

21

22

*CBC Framing, Inc. v. Flores*,
   2008 WL 11337555 (C.D. Cal. Sept. 22, 2008) .................................................... 6

23

24

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   181 P.3d 142 (Cal. 2008) .................................................................................... 15

25

*Corley v. Rosewood Care Ctr.*,
   388 F.3d 990 (7th Cir. 2004) ................................................................................ 6

26

27

*Cortez v. Purolator Air Filtration Prods. Co.*,
   999 P.2d 706 (Cal. 2000) .................................................................................... 15

28

*CTC Glob. Corp. v. Huang*,
    2019 WL 4148184 (C.D. Cal. July 29, 2019) ............................................................... 14

*Dairy, LLC v. Milk Moovement, Inc.*,
    2022 WL 1103822 (E.D. Cal. Apr. 13, 2022) ............................................................... 14

*DiscoverOrg Data, LLC v. Bitnine Glob., Inc.*,
    2020 WL 6562333 (N.D. Cal. Nov. 9, 2020) ............................................................... 11

*Falk v. United States*,
    370 F.2d 472 (9th Cir. 1966) ......................................................................................... 7

*Gjovik v. Apple Inc.*,
    2024 WL 2309100 (N.D. Cal. May 20, 2024) ............................................................... 5

*Gov't Emps. Ins. Co. v. Nealey*,
    262 F. Supp. 3d 153 (E.D. Pa. 2017) ......................................................................... 12

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ............................................................... 13

*Integral Dev. Corp. v. Tolat*,
    675 F. App'x 700 (9th Cir. 2017) ........................................................................... 13, 14

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ........................................................................... 2, 11, 12

*JST Distribution, LLC v. CNV.com, Inc.*,
    2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) ............................................................. 10

*Just Film, Inc. v. Merch. Servs.*,
    2012 WL 6087210 (N.D. Cal. Dec. 6, 2012) ............................................................... 6

*Ketayi v. Health Enrollment Grp.*,
    516 F. Supp. 3d 1092 (S.D. Cal. 2021) ..................................................................... 10

*Kwikset Corp. v. Superior Ct.*,
    246 P.3d 877 (Cal. 2011) ........................................................................................... 15

*Mastronardi Int'l Ltd. v. SunSelect Produce (Cal.), Inc.*,
    2019 WL 3996608 (E.D. Cal. Aug. 23, 2019) ........................................................... 12

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ......................................................................... 9

*Med. Marijuana, Inc. v. Horn*,
    604 U.S. __, 145 S. Ct. 931 (2025) ............................................................................. 4

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2001) ................................................................................... 10

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    871 F. Supp. 2d 933 (N.D. Cal. 2012) ........................................................................ 6

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
    2024 WL 3408221 (N.D. Cal. July 12, 2024) ............................................................. 6

*Neilson v. Union Bank of Cal., N.A.*,
    2003 WL 27374170 (C.D. Cal. Oct. 24, 2003) ......................................................... 15

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ...................................................................................... 5

*Pac. Software Consulting, Inc. v. SystemCentrix Inc.*,
    2011 WL 13225206 (C.D. Cal. Apr. 6, 2011) ........................................................... 10

*Palantir Techs., Inc. v. Abramowitz*,
    2020 WL 9553151 (N.D. Cal. July 13, 2020) ............................................................ 9

*PQ Labs, Inc. v. Qi*,
    2014 WL 334453 (N.D. Cal. Jan. 29, 2014) ............................................................. 15

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*,
    2008 WL 269080 (E.D. Cal. Jan. 29, 2008) ............................................................. 10

*Remedi8, LLC v. All. Env't Grp., LLC*,
    2024 WL 1829617 (C.D. Cal. Feb. 5, 2024) ............................................................. 13

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ...................................................................................... 4

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ........................................................................ 14

*Slottow v. Am. Cas. Co. of Reading, Penn.*,
    10 F.3d 1355 (9th Cir. 1993) .................................................................................... 15

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (Cal. Ct. App. 2001) .............................................................. 15

*Sylabs, Inc. v. Rose*,
    2024 WL 2059716 (N.D. Cal. May 8, 2024) .............................................................. 7

*Tax Relief, Inc. v. Selb*,
    2021 WL 8919077 (C.D. Cal. June 7, 2021) ............................................................. 9

*Thomas Weisel Partners LLC v. BNP Parabas*,
    2010 WL 1267744 (N.D. Cal. Apr. 1, 2010) ........................................................... 15

*Ticor Title Ins. Co. v. Florida*,
    937 F.2d 447 (9th Cir. 1991) ...................................................................................... 8

RIPPLING'S OPPOSITION TO DEEL'S 12(B)(6) MOTION TO DISMISS

*Turner v. Apple, Inc.*,
    2022 WL 445755 (N.D. Cal. Feb. 14, 2022).........................................................15

*United States v. Chung*,
    659 F.3d 815 (9th Cir. 2011)...................................................................11, 13

*UrthTech LLC v. GOJO Indus., Inc.*,
    2023 WL 4640995 (S.D.N.Y. July 20, 2023) ........................................................12

*Vaughan v. Wardhaugh*,
    2025 WL 251694 (N.D. Cal. Jan. 21, 2025) ..........................................................5

*Vierria v. Ca. Highway Patrol*,
    644 F. Supp. 2d 1219 (E.D. Cal. 2009) ...............................................................7

*In re Volkswagen "Clean Diesel" Mktg.*,
    2025 WL 1083215 (N.D. Cal. Apr. 10, 2025) .......................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 6749534 (N.D. Cal. Dec. 6, 2019) (Breyer, J.),
    *aff'd,* 842 F. App'x 112 (9th Cir. 2021) ..........................................................8-9

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021) .................................................................12

*Zhang v. Superior Ct.*,
    304 P.3d 163 (Cal. 2013) ..............................................................................15

**Rules / Statutes**

18 U.S.C. § 1962 .......................................................................................*passim*

Cal. Civ. Code § 3426.7 ................................................................................13

Cal. Civ. Code § 1021.5 ................................................................................15

Rule 9(b)................................................................................................6

Rule 9(c)...............................................................................................14

Rule 12 ..................................................................................................1

Rule 12(b)(6)......................................................................................9, 10

RIPPLING'S OPPOSITION TO DEEL'S 12(B)(6) MOTION TO DISMISS

# PRELIMINARY STATEMENT

This case does not rest on conclusory allegations or guesswork. It stands firmly atop forensic trails, crypto transaction records, and firsthand accounts under oath, all pointing unmistakably to an audacious corporate espionage scheme. At the top sits the Bouaziz Racketeering Enterprise, commanded by Deel's CEO Alex Bouaziz and CFO Philippe Bouaziz, who systematically targeted Rippling and four other corporate victims. Rippling's FAC does not merely meet Rule 12's low bar of "plausibility" — it effortlessly clears it, drawing on hard evidence and precise detail to paint the espionage scheme in primary colors. The FAC catalogs (a) how the scheme began; (b) the precise types of stolen trade secrets; (c) exactly how those secrets were stolen; (d) the compensation provided in exchange for the stolen information; and (e) the measurable financial wounds Rippling suffered as a direct result. Those allegations do not merely sketch out misconduct in broad strokes — they connect specific confidential data, extracted by a planted insider, to specific commercial losses. One moment, Rippling was in active negotiations with customers; in the next, after the spy fed Alex Bouaziz information on how Rippling was planning to win those accounts, the prospects signed with Deel. These are not hazy abstractions. They are traceable, documented events that easily hurdle the low bar for pleading claims under RICO, the DTSA, and California law.

Deel's response amounts to legal shadowboxing: It jabs all over but avoids the body of Rippling's allegations. The upshot is hand waving and misdirection that mischaracterizes governing precedent and ignores Rippling's well-pleaded allegations. Deel's attack on RICO is a series of misfires: it argues not only that Rippling fails to allege concrete harm, but also that the FAC does not identify a distinct enterprise, show a pattern of racketeering activity, or establish a sufficient nexus between the alleged conduct and the supposed injury. But each of these arguments wilts under scrutiny. The FAC connects specific misconduct to specific harm, including lost business. It details the Enterprise's common purpose in spades. And it traces a clear, unbroken path from the Enterprise's illegal conduct to the economic damage Rippling suffered. These allegations amply meet the RICO pleading standard.

Similarly, Deel's sole argument for dismissing the DTSA claim—that Rippling fails to allege it took reasonable measures to protect its trade secrets—overlooks the layers of protective

measures Rippling alleges, including (but very much not limited to) confidentiality agreements, which the Ninth Circuit has held "constitute reasonable steps to maintain secrecy." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020). And Deel's CUTSA preemption arguments (its primary attempt to dismiss the state law claims) ignore the FAC's non-trade secret allegations supporting these claims, including that Deel used its spy to unfairly compete with Rippling by weaponizing Rippling's data to solicit its customers and employees, and to act in Deel's interest and contrary to Rippling's. These allegations provide independent grounds for liability.

In short, Deel tries to sidestep the FAC's allegations—just as its executives have attempted to evade this Court's jurisdiction. But the record is uncooperative, the law less forgiving, and the allegations too detailed to ignore. The motion should be denied.

## STATEMENT OF RELEVANT ALLEGATIONS

Rippling and Deel are competitors in the global workforce management software market. FAC ¶ 45. Early this year, Rippling discovered it was a victim of a global corporate espionage scheme orchestrated by the "Bouaziz Racketeering Enterprise," which Deel CEO Alex Bouaziz and Deel CFO Philippe Bouaziz direct and which operates a network of spies made up of current and former employees of Deel's competitors, among others. *Id.* ¶ 14. As expressly alleged in the FAC, this Enterprise exists for the purpose of enriching Deel, its principals, and their spies, with Deel ultimately receiving and exploiting the stolen trade secrets and the spies compensated through covert crypto wallets or the promise of future employment. *Id.* ¶ 15.

Because Rippling scrupulously protects its trade secrets using industry-standard measures (FAC ¶¶ 67, 192), the Enterprise needed an "inside man" to steal them. It found one in Keith O'Brien, a Rippling employee based in Ireland, who the Bouazizes recruited to serve as their "James Bond" inside Rippling. *Id.* ¶¶ 58-59. Alex Bouaziz established a protected communications channel for their near-daily messages, while Philippe Bouaziz orchestrated secret payments to O'Brien in exchange for the stolen information. *Id.* ¶¶ 60-66. O'Brien conducted over 6,000 searches through Rippling's internal systems at Alex's direction over four months, systematically exfiltrating Rippling's trade secrets for the Enterprise while taking multiple steps to evade detection by Rippling. *Id.* ¶¶ 67-129. O'Brien's spying activity violated, among other things, his Confidentiality

and Intellectual Property Rights Assignment Agreement ("CIPRAA"), which required him to safeguard Rippling's confidential and proprietary information and use it only for Rippling's business objectives. *Id*. ¶¶ 24 n.10, 200-05.

Alex directed O'Brien to focus on several categories of Rippling's confidential information and trade secrets, including more than 100 Slack channels (the platform Rippling uses for "internal company communication"), FAC ¶ 9, containing Rippling's Sales and Marketing Trade Secrets. Among other things, these channels contained Rippling's real-time strategies as they evolved day-to-day to beat out Deel for key customers. *Id*. ¶¶ 67-75. As just one example, O'Brien accessed Rippling's individualized pitch to a prospective customer (Prospect C) **66 times** on February 20, 2025, the same day Rippling was set to meet with Prospect C. *Id.* ¶ 85. O'Brien shared those details with Alex, and Prospect C selected Deel before Rippling could even give its pitch later that day. *Id*.

Similarly, in November 2024, O'Brien stole Rippling's pitch strategy for another company (Prospect B) considering Rippling and Deel. Rippling's pitch strategy reflected insights gathered through introductory meetings on the customer's primary objectives and Rippling's competitive sales strategies to highlight its superior capabilities to address those objectives. FAC ¶ 85. Unable to win fairly, Deel stole those trade secrets, allowing it to preempt Rippling's pitch and tailor its outreach with an uncanny proposal leveraging both sides of the playbook. The prospect chose Deel. *Id*.

After months of this illicit conduct, O'Brien wanted out. He told Alex he wanted to pursue a new career opportunity, but Alex—signaling the high-stakes value of Rippling's trade secrets—pressured O'Brien to stay several more months. As the scheme continued, Rippling discovered the extensive corporate espionage through forensic analysis and a "honeypot" operation, baiting the Enterprise into instructing O'Brien to search for a unique "channel" in Rippling's systems created solely for the ruse. FAC ¶¶ 118-24. Within hours of Rippling sending a letter to Philippe Bouaziz and two members of Deel's legal team referencing that channel, O'Brien searched for and accessed it five times, proving the Enterprise was actively directing O'Brien's spying. *Id.* ¶¶ 122-23.

Rippling filed this action shortly thereafter and later amended its complaint to add later-learned details supporting its claims. Confronted with Rippling's Complaint citing forensic

evidence and sworn testimony detailing its systematic corporate theft, the Bouaziz Racketeering Enterprise attempted to obstruct these proceedings. It tried to influence O'Brien, promising among other things that he would be "financially rewarded" if he refused to cooperate, and offering to relocate him to Dubai. FAC ¶ 134. One of the Enterprise's members deleted electronic communications between himself and O'Brien concerning the theft. *Id.* ¶ 152. And the Enterprise demanded that O'Brien destroy his phone—which he then did, smashing it with an axe and throwing the remains down a drain for good measure. *Id.* ¶¶ 135-36.

## **LEGAL STANDARD**

A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

## **ARGUMENT**

## I.    **RIPPLING PROPERLY PLEADS THE ELEMENTS OF RICO**

Deel moves to dismiss Rippling's well-pleaded RICO claim based on a caricature of the statute, not its statutory language or governing precedent. It insists that RICO applies only to "organized crime" (Mot. 4), when in fact the statute permits far more than "suit[s] against Tony Soprano." *Med. Marijuana, Inc. v. Horn*, 604 U.S. __, 145 S. Ct. 931, 945-46 (2025) (cleaned up). As the Supreme Court recognized months ago, "more [RICO] suits are brought against ordinary businesses than against archetypal, intimidating mobsters" and attempts to limit the "breadth of the statute … lie with Congress," not the courts. *Id.* Of course, the Bouaziz Racketeering Enterprise is no ordinary business. From witness tampering (FAC ¶¶ 134-59) to coded messages (*id.* ¶¶ 60-66) to clandestine payments for stolen assets (*id.*), the Bouaziz Racketeering Enterprise is precisely the sort of organization that RICO seeks to dismantle.

The FAC and applicable law refute Deel's arguments that Rippling fails to plead (1)

association-in-fact; (2) predicate acts; (3) continuity; and (4) proximate causation.

### A.      Rippling Has Pleaded An Association-in-Fact Enterprise

As a preliminary matter, Deel misunderstands the law in arguing (Mot. 7) that the Enterprise is inadequately pleaded because the FAC supposedly fails to show a connection between enterprise members beyond the predicate acts.   The *en banc* Ninth Circuit has expressly held that an association-in-fact need *not* "have a structure beyond that necessary to carry out its pattern of illegal racketeering activities."  *Odom v. Microsoft Corp.,* 486 F.3d 541, 552 (9th Cir. 2007).  Rippling alleges the structure necessary for the Enterprise to commit its crimes, including communication standards for coordination between its leadership and its spies and payment protocols to reward its spies using encrypted messages and discreet crypto transactions.  FAC ¶¶ 15, 60-71.[1]

Indeed, the Enterprise is akin to the one in *Odom*.  There, the Ninth Circuit found an enterprise consisting of Best Buy and Microsoft because Microsoft profited through the distribution of a Microsoft product bundled on laptops sold at Best Buy, while Best Buy received funds from Microsoft in exchange.  *Odom*, 486 F.3d at 552.  Here, the FAC alleges that Deel and its principals (like Microsoft) profit indirectly when Deel exploits the stolen trade secrets, while the Enterprise's spies (like Best Buy) are directly enriched "in the form of cash payments or the promise of future employment."  FAC ¶ 15.  Contrary to Deel's assertion that Rippling does not adequately plead a "common purpose enterprise" (Mot. 7),[2] the "scheme to profit [alleged in the FAC] is a sufficient common purpose."  *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013).[3]

---

[1]   Deel's misleading citation (Mot. 7) to a memorandum opinion upholding **summary judgment** dismissing a *pro se* plaintiff's fantastical RICO claim does not disrupt this conclusion.  In that case, the plaintiff failed to demonstrate any connections between enterprise members beyond alleging that they conspired together.  *Bredberg v. Middaugh,* 2022 WL 2662878, at *1-2 (9th Cir. July 11, 2022).

[2]  Deel's cited cases (Mot. 7) all concern implausible common purposes, rendering them inapposite. *See Gjovik v. Apple Inc.*, 2024 WL 2309100, at *10 (N.D. Cal. May 20, 2024) (pro se allegation of enterprise consisting of Apple and partner nonprofits, journalists, government agencies, doctors, environmental organizations, and more all acting for Apple's benefit not plausible); *Vaughan v. Wardhaugh,* 2025 WL 251694, at *2 (N.D. Cal. Jan. 21, 2025) (alleged enterprise of unrelated persons organized for the purpose of converting warehouses to condos not plausible).

[3]  Any suggestion that the FAC fails to plead an "ongoing organization" fails.  Rippling alleges coordinated activity (*i.e.*, theft by spies at the direction of Alex and Philippe Bouaziz) and ways in

### B.    Deel Participated in Multiple Predicate Racketeering Acts

RICO requires a plaintiff to plead two predicate acts; Rippling pleaded many multiples more. FAC ¶¶ 174-80.  Deel does not challenge the math, but it invents rules of its own imagination to insist that the predicate acts do not count.  Deel's arguments are baseless.

For starters, Deel insists that "Rippling lacks standing to premise any RICO predicate acts on Deel's alleged conduct not directed at Rippling."  Mot. 7.  Not so.  Courts have long held that "a plaintiff need not demonstrate injury to himself from each and every predicate act making up the RICO claim."  *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1004 (7th Cir. 2004).  Contrary to Deel's say-so, "[a]s long as the pattern of racketeering activity has caused harm to the plaintiff's business or property, the plaintiff has RICO standing."  *Just Film, Inc. v. Merch. Servs.*, 2012 WL 6087210, at *12 (N.D. Cal. Dec. 6, 2012) (citation omitted) (collecting cases and authorities).  Rippling's standing is therefore uncontestable.[4]

Deel fares no better nit-picking the multitude of predicate acts alleged in the FAC.

***Wire Fraud***.  Deel devotes a single sentence to attacking Rippling's wire-fraud allegations, insisting that Rippling neglected to plead that fraud with particularity.  Mot. 8.  There is a good reason for Deel's brevity: Rippling included in the FAC screenshots of specific transactions on specific dates in specific amounts.  *See, e.g.*, FAC ¶¶ 65-66.  This, in addition to Rippling's detailed allegations about how Alex recruited O'Brien and subsequently exploited the stolen information to benefit Deel (FAC ¶¶ 56-129) more than satisfies Rule 9(b).

***Theft of Trade Secrets***.  Deel also errs (Mot. 7-8) in arguing that Rippling has not stated a

---

which those activities are coordinated (*e.g.*, communications protocols, code phrases, and payment channels).  FAC ¶¶ 14-15, 49-155, 160-169.  That is more than enough.  *See, e.g., Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 942 (N.D. Cal. 2012) (alleging co-conspirators established informal "strategic partnership" to engage in "allegedly wrongful shipping practices" pleads ongoing organization); *CBC Framing, Inc. v. Flores*, 2008 WL 11337555, at *8 (C.D. Cal. Sept. 22, 2008) (pleading "collaborat[ion]" between co-conspirators to submit false payroll reports sufficient); *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007) ("repeated communications" and common use of email address between co-conspirators sufficient).

[4]  In contrast, the plaintiff in *MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.* was not personally harmed by *any* of the alleged predicates.  2024 WL 3408221, at *14-15 (N.D. Cal. July 12, 2024).  The lone case Deel cites (Mot. 8) thus stands for the unremarkable proposition that a RICO plaintiff must have been harmed by at least one predicate, which the FAC alleges.

trade secret misappropriation claim.  As explained, *infra*, Argument § III, Rippling has adequately pleaded this claim.  While Deel asserts that the Rippling-related trade secret theft predicates are legally considered only one act (Mot. 9), the case on which Deel relies involved the alleged misappropriation of only a single trade secret.  *Sylabs, Inc. v. Rose*, 2024 WL 2059716, at *5 (N.D. Cal. May 8, 2024) (only trade secret allegedly misappropriated was "Fuzzball Slides Content").  Here, Rippling alleges near-daily theft of several different categories of Rippling trade secrets over four months (FAC ¶¶ 67-129), as well as theft from Victim-2 and Victim-3 (FAC ¶ 179).

  ***Obstruction of Justice***.  Deel challenges the obstruction-of-justice predicate by myopically reading Section 1503 to reach only efforts to influence judicial officers or jurors.  But the statute extends to include "[a]ny corrupt endeavor to influence any party or witness, whether successful or not" as obstruction of justice."  *Falk v. United States*, 370 F.2d 472, 476 (9th Cir. 1966).  That is what Rippling alleges through the Enterprise's numerous acts of obstruction once one of its members was caught.  FAC ¶¶ 134-159, 180.  For example, Rippling alleges that Deel sought to prevent O'Brien from "flipping" on the enterprise by, among other things, making promises that O'Brien would be "financially rewarded" if he refused to cooperate with Rippling and if he spoliated evidence, which he did by smashing his phone with an axe; destroying (through the top in-house lawyer) evidence relevant to this proceeding; and seeking to sabotage a Rippling financing round to impede Rippling's prosecution of this action.  *Id*.  Contrary to Deel's argument that the alleged obstruction was "in connection with the ongoing Irish proceedings" (Mot. 8), O'Brien is a key witness in this proceeding, meaning Deel's attempts to improperly influence him obstruct these proceedings just as much, if not more, than the Irish proceedings.  *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1236 (E.D. Cal. 2009) (witness tampering RICO predicate notwithstanding defendants' argument that tampering was directed at different proceeding).  For the same reason, any destruction of evidence relevant to this proceeding is obstruction of this proceeding.  *See id*.

### C. Deel's Predicate Acts Threaten Continued Harm

  Deel's cursory argument (Mot. 9) that Rippling failed to plead continuity also fails.  At the threshold, while RICO plaintiffs "must establish that the predicate acts were continuous," a party can do so "by pleading through 'open-ended continuity' or 'close-ended continuity.'"  *Allwaste, Inc.*

*v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995) (reversing dismissal for failure to plead continuity). Open-ended continuity refers to past conduct that, by its nature, indicates a threat of future misconduct, while closed-ended continuity refers to a close period of repeated conduct. *Id.*

Rippling has pleaded both open- and closed-ended continuity. For open-ended continuity, Rippling has pleaded multiple acts of trade secret theft targeting multiple victims. *See, e.g.,* FAC ¶¶ 162-69. That fact pattern by itself demonstrates a threat of continued criminal activity. *See Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) (finding threat of continued unlawful activity when defendants committed three acts of forgery because "[t]he frequency of the forgeries suggests that this practice had become a regular way of conducting business"). Indeed, the FAC alleges that the Enterprise's theft has grown more brazen and aggressive over time, escalating from the hiring of competitor personnel to exploit the trade secrets in their personal possession (FAC ¶¶ 48-51) to the months-long coopting of a current competitor employee it directed in real time (*id*. ¶¶ 56-129). Rippling has separately demonstrated a clear risk of continuing illegal activity through the destruction of evidence, encouraging witnesses to make false reports to official governmental agencies, and attempting to relocate a witness to Dubai. *See, e.g.,* FAC ¶¶ 130-59.

As to closed-ended continuity, the Ninth Circuit has held that allegations of racketeering conduct occurring over at least 13 months "demonstrate[] that the criminal activity spanned a 'substantial period of time'" and therefore show closed-ended continuity. *Allwaste*, 65 F.3d at 1528. Rippling alleges that the Bouaziz Racketeering Enterprise began not later than January 2024, and most likely earlier, and continued until at least the end of March 2025. *See, e.g.,* FAC ¶¶ 43, 49, 134. That is enough to survive a 12(b)(6) motion.

### D.    Rippling Alleges Injury Proximately Caused By Deel's Predicate Acts

Deel spills much ink arguing that Rippling has not pleaded a cognizable RICO injury. Mot. 5-7. But Deel again misunderstands the law and misconstrues the FAC. Rippling alleges concrete financial injury through lost customers it specifically identifies—at a minimum, Prospects B and C—linked directly to the Enterprise's conduct. FAC ¶ 85. That is all RICO demands at this stage.

As this Court has held, "loss of 'specific business opportunities and contracts' are recoverable under RICO." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.*

1   *Litig.*, 2019 WL 6749534, at *4 (N.D. Cal. Dec. 6, 2019) (Breyer, J.), *aff'd,* 842 F. App'x 112 (9th

2   Cir. 2021).  While Deel scoffs at the number of lost customers Rippling identifies (Mot. 6), even

3   Deel's own cited authority acknowledges that Rippling needs only one.  *Palantir Techs., Inc. v.*

4   *Abramowitz*, 2020 WL 9553151, at *6 (N.D. Cal. July 13, 2020) ("Palantir must allege *a* specific

5   lost opportunity" to plead concrete RICO injury) (cited Mot. 5).

6          Deel's next trick is citation sleight-of-hand.  It invokes a *summary judgment* decision in

7   *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2011), that has zero

8   relevance to the 12(b)(6) motion before this Court.  In any event, that case only confirms that

9   Rippling's allegations suffice at the pleading stage.  There, the court declined to dismiss a RICO

10  claim for failure to plead an injury, finding that "[d]amages easily flow from theft of trade secrets

11  and confidential information committed by a direct competitor[.]"  *Bryant v. Mattel, Inc.*, 573 F.

12  Supp. 2d 1254, 1269 (C.D. Cal. 2007).  And, unlike in *Palantir*, in which the plaintiff did "not

13  provide a concrete example of how it would have exploited the exclusive possession of the trade

14  secret," 2020 WL 9553151, at *4, Rippling does include such concrete allegations, including that

15  Deel used the stolen trade secrets in real time to undercut Rippling with specific prospects.  FAC ¶

16  85.  Finally, while unnecessary at the pleading stage, Rippling also alleges considerably more harm

17  from the "theft of trade secrets and confidential information committed by a direct competitor,"

18  including harm to Rippling through theft of Rippling's competitive sales and customer retention

19  strategies (FAC ¶¶ 103-07); harm to Rippling's industry-leading R&D investments and cross-

20  functional operational efforts through the theft of Rippling's product roadmap (*id.* ¶¶ 99-102); and

21  harm to Rippling through theft of Rippling's global go-to-market strategy (*id.* ¶¶ 91-98).

22         Nor is Deel correct that Rippling's allegation that it lost certain customers due to the

23  conspiracy and not for some other reason is too "speculative."  Mot. 6-7.  *Tax Relief, Inc. v. Selb*,

24  2021 WL 8919077, at *11 (C.D. Cal. June 7, 2021) (predicate acts proximately caused injury since

25  they were "directly target[ed] [at] Nationwide's customers and prospective customers").  Indeed,

26  the FAC quotes correspondence from certain prospective customers to Rippling describing

27  unsolicited contact they received from Deel in the middle of their negotiations with Rippling,

28  causing the prospective customers to question "how [Deel] would know" of their consideration of

1    Rippling "in real time."  FAC ¶¶ 79-85.

2    In fact, in each of Deel's cited cases, the plaintiff included only conclusory allegations of

3    injury linked to the Enterprise's conduct or no link at all.  *See, e.g.*, *JST Distribution, LLC v.*

4    *CNV.com, Inc.*, 2018 WL 6113092, at *8 (C.D. Cal. Mar. 7, 2018) (alleging unspecified customers

5    diverted to defendant's product via failure to disclose the risks of ***its own product***); *Anza v. Ideal*

6    *Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006) (plaintiff identified no specific customer

7    attributable to defendant's alleged tax fraud, which allegedly enabled defendant to lower prices).

8    And this case stands in stark contrast to this Court's decision in *In re Volkswagen "Clean Diesel"*

9    *Mktg.*, in which the Court dismissed as too attenuated a RICO claim resting on harm to ***reputation***.

10   2025 WL 1083215, at *4 (N.D. Cal. Apr. 10, 2025).[5]  In any event, it is "inappropriate at this stage

11   to substitute speculation for the complaint's allegations of causation."  *Mendoza v. Zirkle Fruit Co.*,

12   301 F.3d 1163, 1168-69 (9th Cir. 2001) (reversing Rule 12(b)(6) dismissal).

13   **II.    RIPPLING STATES A CLAIM FOR RICO CONSPIRACY**

14   Because Rippling states a substantive RICO claim (*see supra*, Argument § I), Rippling's

15   RICO conspiracy claim cannot be dismissed for failure to do so, *contra* Mot. 9.  *See Pac. Software*

16   *Consulting, Inc. v. SystemCentrix Inc.*, 2011 WL 13225206, at *4 (C.D. Cal. Apr. 6, 2011).  Deel's

17   argument that Rippling "has not plausibly alleged a conspiracy to commit a RICO violation itself"

18   (Mot. 9) ignores the allegation that Deel and its co-conspirators "conspir[ed] and agree[d] to violate

19   18 U.S.C.§ 1962(c) … by knowingly agreeing to adopt the goal of further facilitating the operation

20   of the aforementioned enterprise through a pattern of racketeering, and by agreeing to the

21   commission of multiple predicate acts."  FAC ¶ 187.  That alleges RICO conspiracy.  *Ketayi v.*

22   *Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1138 (S.D. Cal. 2021) (plaintiff's allegation that

23   "each Defendant ... agreed to an overall fraudulent scheme" sufficient to plead RICO conspiracy)

24

25

26   ─────────────────────

27   [5]  Contrary to Deel's misleading parenthetical, this Court did not address in *In re Volkswagen* any
     allegation regarding potential customers.  Rather, this Court was describing the holding in *Proven*
28   *Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 2008 WL 269080 (E.D. Cal.
     Jan. 29, 2008), which concerned the "publication of a misleading advertisement."  *Id.* at *6.

1   (ellipsis in original).[6]

2   **III.    RIPPLING STATES A TRADE SECRETS MISAPPROPRIATION CLAIM**

3          In arguing that "Rippling fails to allege that it took any reasonable measures" (Mot. 11),

4   Deel conflates "reasonable" with "impenetrable."  The test is not whether the plaintiff built a

5   security apparatus so advanced that even intentional deception by trusted insiders becomes

6   impossible.  Because Rippling alleged a suite of reasonable measures to protect its trade secrets, this

7   Court should reject Deel's bid to absolve the thieves by blaming the locks they pick.

8          The FAC offers detailed allegations of Rippling's robust security measures: limiting access

9   to "authorized users" with: Rippling login credentials (*i.e.*, password protection); multi-factor

10  authentication; biometric security measures; employee confidentiality agreements; and employee

11  confidentiality trainings.  FAC ¶ 67 n.25, ¶ 192.  Indeed, one of Rippling's security measures—

12  "log[ging] all system activity for ongoing security monitoring," FAC ¶ 67 n.25—allowed Rippling

13  to identify Deel's spy and procure documentary evidence to support its claims.  *Id.* ¶¶ 113-29.  This

14  combination of technological protections, employee contracts, and training easily satisfies the

15  pleading standard.  *See InteliClear*, 978 F.3d at 660 ("Confidentiality provisions constitute

16  reasonable steps to maintain secrecy."); *United States v. Chung*, 659 F.3d 815, 825-827 (9th Cir.

17  2011) (holding sufficient "general physical security measures" along with "training sessions" and

18  "confidentiality agreements"); *7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 996-97 (N.D.

19  Cal. 2024) (denying motion to dismiss where plaintiff used dual-factor authentication, audit logs,

20  and confidentiality policies); *DiscoverOrg Data, LLC v. Bitnine Glob., Inc.*, 2020 WL 6562333, at

21  5 (N.D. Cal. Nov. 9, 2020) (allegations of "password protection, restrictive license agreements, mail

22  monitoring, and list protection" sufficiently pleaded reasonable measures).

23          Deel's argument (Mot. 10-12) that Rippling did not prohibit O'Brien from accessing the

24  information at issue ignores that O'Brien was a trusted employee who passed biometric checks,

25

26  ───────────────
    [6] To the extent Deel argues the FAC does not allege an agreement between Enterprise members
27  because it contains no allegation that "the RICO members all had the goal to enrich Deel," Mot. 9,
    Deel makes this argument as to common purpose, and it fails for the same reason.  *See supra*,
28  Argument § I(A).

signed multiple confidentiality agreements, and held a position requiring access.  The law does not require infallible measures that prevent determined insiders from violating their obligations.  To the contrary, it is "well established that confidential disclosures to employees … will not destroy the information's status as a trade secret."  *InteliClear*, 978 F.3d at 661 (citation omitted).

In any event, the reasonableness of protective measures is a fact question inappropriate for resolution at the pleading stage, *Mastronardi Int'l Ltd. v. SunSelect Produce (Cal.), Inc.,* 2019 WL 3996608, at *9-10 (E.D. Cal. Aug. 23, 2019) (collecting cases), and Deel cites no dismissal where an insider subject to confidentiality obligations used secure credentials to access trade secrets. Dismissals occur only in cases of abject failures to protect confidentiality, as Deel's authority illustrates.  In *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 424-25 (S.D.N.Y. 2021), the complaint acknowledged "several" third parties knew the alleged trade secret but were "not subject to any confidentiality agreements or otherwise instructed to keep the information confidential."  In *UrthTech LLC v. GOJO Indus., Inc.*, 2023 WL 4640995, at *13 (S.D.N.Y. July 20, 2023), the complaint did not "allege any protective measures taken within the company" and contained "no allegation" that the plaintiff "took steps to ensure its employees maintained the secrecy of the information, such as by requiring employees to sign a written policy or confidentiality agreement." In *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 167-68 (E.D. Pa. 2017), plaintiff GEICO had previously filed the alleged trade secrets on a public court docket.

Unable to cite precedent addressing analogous facts, Deel distorts the holdings of easily distinguishable cases.  For instance, Deel claims (Mot. 10) the *Abrasic* case announced a "*per se*" rule that broad employee access equals unreasonable measures.  That case establishes no such rule (indeed, it never uses the phrase "per se").  Instead, it addressed a unique fact pattern where the plaintiff failed to allege even the most rudimentary protective measures:  it had no confidentiality policy; "did nothing to train or instruct employees" about confidentiality obligations; and did not have NDAs with customers who accessed the alleged trade secrets.  *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 899-90 (N.D. Ill. 2019).  In other words, the plaintiff failed to do all the things Rippling did.  Even if Deel were correct about *Abrasic* (it is not), that is not the law in this Circuit.  Rather, the Ninth Circuit held (in a case Deel cites, Mot. 11), that even a company as

large and sophisticated as Boeing sufficiently protects its information through "general physical security measures" along with "training sessions" and "confidentiality agreements"—and need not keep its documents "under lock and key," *Chung*, 659 F.3d at 827, as Deel seems to demand.

## IV.    RIPPLING PROPERLY PLEADS ITS STATE LAW CLAIMS

### A.    CUTSA Does Not Preempt The California State Law Claims

Deel's sweeping CUTSA preemption argument (Mot. 12-13) squarely conflicts with the standard in this Circuit.  CUTSA preempts a state law claim that shares the same nucleus of facts as a trade secret misappropriation claim but does not preempt "any claim not based on the misappropriation of trade secrets." *Henry Schein, Inc. v. Cook*, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) (citing Cal. Civ. Code §§ 3426.7(a)-(b)).  The test is straightforward: whether, "after the facts relating to trade secrets are removed, there are insufficient facts for the claim to survive." *Id.* Here, even if O'Brien had stolen no trade secrets, Rippling's state law claims would stand independently, because he acted contrary to Rippling's interests and sought to advance the interests of Rippling's competitor, providing an independent basis for Rippling's state law claims.

For instance, Rippling's aiding and abetting fiduciary duty claim rests in part on O'Brien's actions for Deel's benefit, which breached O'Brien's duty to avoid conflicting loyalties while working for Rippling.  *See* FAC ¶ 209.  Recruiting O'Brien to "[c]ompet[e] with [Rippling] on behalf of a competitor while still employed with [Rippling]" is not preempted because it is "independent of any trade secrets." *Arthur J. Gallagher & Co. v. Tarantino,* 498 F. Supp. 3d 1155, 1175 (N.D. Cal. 2020) (holding fiduciary duty claim not preempted).  The tortious interference and fiduciary duty claims expressly allege that O'Brien breached his non-solicitation obligations— another independent ground for liability.  *See, e.g.*, *Remedi8, LLC v. All. Env't Grp., LLC*, 2024 WL 1829617, at *3 (C.D. Cal. Feb. 5, 2024) (no preemption of fiduciary duty claim "based on … solicitation of [plaintiff's] customers").

Beyond this, none of the state claims are preempted to the extent grounded in *non-trade-secret* confidential information, including confidential employee information.  *See* FAC ¶¶ 108-12 (alleging theft of non-trade-secret information).  As to fiduciary duty, the Ninth Circuit reversed a finding of CUTSA preemption in a case in which the defendant employee allegedly breached his

fiduciary duties when he "shared confidential information with a competitor." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017). Noting that "this claim does not require that the confidential information qualify as a trade secret," the Ninth Circuit held that the "breach of fiduciary duty claim has a basis independent of any misappropriation of a trade secret, and therefore, is not preempted by CUTSA." *Id.* (citation omitted); *see also CTC Glob. Corp. v. Huang*, 2019 WL 4148184, at *7 (C.D. Cal. July 29, 2019) (breach of fiduciary duty claim not preempted to extent based on disclosure of "confidential information and ideas (not covered in the trade secrets allegations)"). The same is true for the remaining claims. *See Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 1103822, at *5 (E.D. Cal. Apr. 13, 2022) (no CUTSA preemption of "interference with contractual relations claim" because it "is focused on 'non-trade secret' information"); *BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 996 (N.D. Cal. 2017) (UCL claim not preempted when allegations "go well beyond those that constitute the acts of trade secret misappropriation").

### B.    Rippling States A Tortious Interference Claim

Apart from preemption, Deel's sole argument for dismissing Rippling's tortious interference claim—that Rippling "disclaimed" reliance on the CIPRAA (Mot. 14)—fails for a simple reason: there was no disclaimer. The FAC alleges that Deel tortiously interfered *with the CIPRAA* by inducing O'Brien to violate at least five enumerated obligations under that contract. FAC ¶ 205. Rippling's subsequent clarification that this claim "is not based on [any] misappropriation" of Rippling's trade secrets (FAC ¶ 205) does not disclaim reliance on the CIPRAA. It merely clarifies that the factual allegations supporting the claim are based on O'Brien's disclosure of ***non-trade-secret*** information. *See* FAC ¶¶ 108-12. And while Deel derides Rippling's "single allegation" that "Deel knew or should have known of O'Brien's confidentiality agreement," it does not argue that Rippling's allegations on this score are impermissibly conclusory (Mot. 14). Nor could it. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1310 (N.D. Cal. 1997) (Rule 9(c) permits "general" allegations as to state of mind, such that "Plaintiff's general allegations of Crystal Dynamics' knowledge of the underlying contracts … is not fatal").

### C.    Rippling States An Aiding And Abetting Breach of Fiduciary Duty Claim

Deel contests the aiding and abetting breach of fiduciary duty claim for one reason: O'Brien

1    supposedly owed no fiduciary duties to Rippling because he worked for Rippling's wholly owned
2    subsidiary.  But that is incorrect as a matter of law.  "California courts have recognized that the
3    fiduciary of a subsidiary also owes a fiduciary duty to the subsidiary's parent corporation."  *PQ*
4    *Labs, Inc. v. Qi*, 2014 WL 334453, at *12 (N.D. Cal. Jan. 29, 2014); *Thomas Weisel Partners LLC*
5    *v. BNP Paribas*, 2010 WL 1267744, at *5 (N.D. Cal. Apr. 1, 2010) (same).  All of Deel's cases are
6    thus inapposite.  *Cf. Slottow v. Am. Cas. Co. of Reading, Penn.,* 10 F.3d 1355, 1357 (9th Cir. 1993)
7    (bank president did not owe fiduciary duty to bank's insurer); *Neilson v. Union Bank of Cal., N.A.*,
8    2003 WL 27374170, at *26 (C.D. Cal. Oct. 24, 2003) (bank manager did not owe fiduciary duty to
9    bank customers); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150-54 (Cal. 2008)
10   (biotech company did not owe fiduciary duty to unrelated medical center).

11              **D.    Rippling States An Unfair Competition Claim**

12              Deel's alternative arguments for dismissing the UCL claim (Mot. 15) also fail.  To start,
13   because the UCL "'borrows' violations of other laws and treats them as 'unlawful' practices
14   independently actionable under the unfair competition law," the UCL claim cannot be dismissed
15   unless Rippling's other claims are dismissed.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App.
16   4th 700, 718 (Cal. Ct. App. 2001).  Deel's argument that Rippling has not alleged a valid UCL
17   remedy (Mot. 15) ignores that Rippling seeks "[p]ermanent injunctive relief."  FAC ¶ 221.  Because
18   "[i]njunctions are 'the primary form of relief available under the UCL,'" *Kwikset Corp. v. Superior*
19   *Ct.*, 246 P.3d 877, 895 (Cal. 2011) (citation omitted), that ends the inquiry.  But Rippling's UCL
20   claim also validly and independently seeks both restitution and attorneys' fees.  *Cortez v. Purolator*
21   *Air Filtration Prods. Co.*, 999 P.2d 706, 715 (Cal. 2000); *see Turner v. Apple, Inc.*, 2022 WL
22   445755, at *4 (N.D. Cal. Feb. 14, 2022) (upholding UCL restitution claim because damages would
23   not encompass "full value of misappropriated data" that "Defendant wrongfully received").  And
24   while "the UCL does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as
25   a private attorney general under Code of Civil Procedure section 1021.5." *Zhang v. Superior Ct.*,
26   304 P.3d 163, 167 n.4 (Cal. 2013).  That is precisely what Rippling seeks here.  FAC ¶ 220.

              **CONCLUSION**

27              For the foregoing reasons, the motion should be denied.

28

1

2
Dated: August 8, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   */s/ Joseph Sarles*

Alex Spiro (*pro hac vice*)
Maaren A. Shah (*pro hac vice*)
Samuel Nitze (*pro hac vice*)
Scott Hartman (*pro hac vice*)
Dominic Pody (*pro hac vice*)
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
samuelnitze@quinnemanuel.com
scotthartman@quinnemanuel.com
dominicpody@quinnemanuel.com

Joseph Sarles (CA Bar No. 254750)
Kathleen S. Messinger (CA Bar No. 329983)
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
josephsarles@quinnemanuel.com
jeffnardinelli@quinnemanuel.com
kathleenmessinger@quinnemanuel.com

Jeff Nardinelli (CA Bar No. 295932)
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
jeffnardinelli@quinnemanuel.com
*Attorneys for Plaintiff*
*People Center, Inc. d/b/a Rippling*