1   **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
    Alex Spiro (*pro hac vice*)
2   alexspiro@quinnemanuel.com
    Maaren A. Shah (*pro hac vice*)
3   maarenshah@quinnemanuel.com
    Samuel Nitze (*pro hac vice*)
4   samuelnitze@quinnemanuel.com
    Scott Hartman (*pro hac vice*)
5   scotthartman@quinnemanuel.com
    Dominic Pody (*pro hac vice*)
6   dominicpody@quinnemanuel.com
    295 5th Avenue, 9th Floor
7   New York, NY 10016
    Telephone: (212) 849-7000
8   Facsimile: (212) 849-7100
9
    Joseph Sarles (CA Bar No. 254750)
10  josephsarles@quinnemanuel.com
    Kathleen S. Messinger (CA Bar No. 329983)
11  kathleenmessinger@quinnemanuel.com
    865 S Figueroa Street, 10th Floor
12  Los Angeles, CA 90017
    Telephone: (213) 443-3000
13  Facsimile: (213) 443-3100
14

15

16              **UNITED STATES DISTRICT COURT**

17        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18                  **SAN FRANCISCO DIVISION**

19  PEOPLE CENTER, INC. D/B/A          Case No. 3:25-cv-02576-CRB
    RIPPLING, a Delaware corporation,
20                                      **RIPPLING'S OPPOSITION TO DEEL'S**
                    Plaintiff,          **SPECIAL MOTION TO STRIKE PLAINTIFF'S**
21  vs.                                 **REMAINING CALIFORNIA STATE LAW**
    DEEL, INC., a Delaware corporation, **CLAIMS IN FIRST AMENDED COMPLAINT**
22  ALEXANDRE ("ALEX") BOUAZIZ,
    an individual, PHILIPPE BOUAZIZ, an Compl. Filed:      March 17, 2025
23  individual, DANIEL JOHN ("DAN")    Am. Compl. Filed:  June 5, 2025
    WESTGARTH, an individual, and      Judge:             Hon. Charles R. Breyer
24  DOES 1-100,                        Courtroom:         6
                                        Hearing Date:      September 19, 2025
25                  Defendants.         Hearing Time:      10:00 a.m.

26

27

28

# SUMMARY OF ARGUMENT

As required by this Court's Standing Order, Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") provides the following summary of argument.  Rippling opposes the motion of Defendant Deel, Inc. ("Deel") to strike Plaintiff's state law claims in the First Amended Complaint (ECF 57, "FAC") pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  This Court should deny Deel's motion for the following reasons:

- Deel fails to carry its burden to "make an initial prima facie showing" that the anti-SLAPP statute applies.  *See infra*, Argument § I.A.  Deel has not demonstrated that any of Rippling's state law claims arise from protected activity given that Rippling does not seek to hold Deel liable for any speech or newsgathering, but instead for its corporate espionage.  *Biden v. Ziegler*, 737 F. Supp. 3d 958, 977 (C.D. Cal. 2024) ("the anti-SLAPP statute simply does not apply" given claim asserted unauthorized access to computer); *Golden Gate Land Holdings LLC v. Direct Action Everywhere*, 81 Cal. App. 5th 82, 90 (Cal. Ct. App. 2022) (affirming denial of anti-SLAPP motion because "the wrong on which the claims against [defendant] are based was the organization's alleged involvement in the illegal trespass, not its speech or petitioning activity").  Incidental allegations, like the three allegations Deel picks among 227 paragraphs in the FAC, do not suffice to trigger anti-SLAPP protection.  *See Sansoe v. Ford Motor Co*., 668 F. App'x 718, 719 (9th Cir. 2016) ("California law is clear that 'a defendant in an ordinary private dispute cannot take advantage of the anti–SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant.'") (citation omitted); *Park v. Bd. of Trs. of Cal. State Univ*., 393 P.3d 905, 907, 910 (Cal. 2017) (distinguishing between activity that is "mere ***evidence*** related to liability" and "activity [that] ***itself*** is the wrong complained of") (emphasis original); *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 187 (Cal. Ct. App. 2003) ("[W]hen the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject

the cause of action to the anti-SLAPP statute."). Incorporation by reference of all previous allegations into each subsequent cause of action does not change the incidental nature of the allegations Deel relies upon. *Kajima Eng'g & Const., Inc. v. City of Los Angeles*, 95 Cal. App 4th 921, 931-32 (Cal. Ct. App. 2002) (rejecting argument that "the mere incorporation by reference of a cause of action struck under the anti-SLAPP statute taints the other causes of action that do not allege acts taken in furtherance of the right to petition or free speech").

- Deel also has failed to establish that its conduct furthered the exercise of its freedom of speech in connection with an issue of public interest as required under Cal. Civ. Proc. Code § 425.16(e)(4). Argument § I.B. It is not sufficient for Deel to identify a generalized public interest; rather, Deel instead must connect the "specific nature of the speech" to a specific issue of public interest, which it has failed to do. *See FilmOn.com Inc. v. DoubleVerify Inc*., 439 P.3d 1156, 1165 (Cal. 2019) (SLAPP statute "demands 'some degree of closeness' between the challenged statements and the asserted public interest" and the "court must consider the context as well the content of a statement"); *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs*., *Inc*., 172 Cal. App. 4th 1561, 1569 (Cal. Ct. App. 2009), *as modified* (May 7, 2009) (movant failed to demonstrate protected activity where it "made no mention of the actual content of the communications at issue" and instead "erroneously identif[ied] generalities that might be derived from their speech rather than the specific nature of what they actually said and did"); *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 855 (N.D. Cal. 2020) (defendant cannot satisfy its burden by pointing to a "broad and amorphous public interest" that is "not sufficiently connected to the specific statements at issue").

- Even if Deel demonstrated the anti-SLAPP statute applies, Rippling's claims have a probability of prevailing. *See infra*, Argument II. Deel's motion to strike is limited to challenging the legal sufficiency of the FAC, such that Rippling need only show the FAC satisfies the standard under Fed. R. Civ. P. 12(b)(6). *Planned Parenthood*

*Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."). Deel's arguments fail for the same reasons set forth in Rippling's opposition to Deel's Rule 12(b)(6) motion. *See* ECF 104 at 13-15.

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF RELEVANT ALLEGATIONS ........................................................... 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 4

I.     THE ANTI-SLAPP STATUTE DOES NOT APPLY ........................................... 4

       A.     Rippling's Causes of Action Do Not Arise From Any Protected Activity ............... 4

       B.     Deel Has Not Established That Its Activity Is Protected ............................ 8

II.    RIPPLING HAS A REASONABLE PROBABILITY OF PREVAILING ......................... 11

       A.     CUTSA Does Not Preempt The California State Law Claims ................................ 12

       B.     Rippling States A Tortious Interference Claim ....................................... 13

       C.     Rippling States An Aiding And Abetting Breach of Fiduciary Duty Claim ........... 14

       D.     Rippling States An Unfair Competition Claim ........................................ 14

CONCLUSION ................................................................................................................ 15

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*Arthur J. Gallagher & Co. v. Tarantino*,
  498 F. Supp. 3d 1155 (N.D. Cal. 2020) ...................................................................12

5

6

*Baral v. Schnitt*,
  376 P.3d 604 (Cal. 2016) ..............................................................................................5

7

*Biden v. Ziegler*,
  737 F. Supp. 3d 958 (C.D. Cal. 2024)......................................................................5, 7

8

9

*Bikkina v. Mahadevan*,
  241 Cal. App. 4th 70 (Cal. Ct. App. 2015) ...................................................................9

10

*Blue v. Off. of Inspector Gen.*,
  23 Cal. App. 5th 138 (Cal. Ct. App. 2018) ................................................................11

11

12

*Bonni v. St. Joseph Health Sys.*,
  491 P.3d 1058 (Cal. 2021)........................................................................................5, 7

13

*Briganti v. Chow*,
  42 Cal. App. 5th 504 (Cal. Ct. App. 2019) ................................................................10

14

15

*Doe v. Gangland Prods., Inc.*,
  730 F.3d 946 (9th Cir. 2013) ........................................................................................8

16

*Eliott v. Lions Gate Entertainment Corp.*,
  639 F. Supp. 3d 1012 (C.D. Cal. 2022)..................................................................8, 11

17

18

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  439 P.3d 1156 (Cal. 2019) ................................................................................9, 10, 11

19

20

*Geiser v. Kuhns*,
  515 P.3d 623 (Cal. 2022) ............................................................................................11

21

*Genasys Inc. v. Vector Acoustics, LLC*,
  638 F. Supp. 3d 1135 (S.D. Cal. 2022) ......................................................................10

22

23

*Golden Gate Land Holdings LLC v. Direct Action Everywhere*,
  81 Cal. App. 5th 82 (Cal. Ct. App. 2022) ....................................................................7

24

25

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) ........................................................................................8

26

27

*Gunn v. Drage*,
  65 F.4th 1109 (9th Cir. 2023) .......................................................................................8

28

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ............................................................... 12

*Hupp v. Freedom Commc'ns, Inc*.,
    221 Cal. App. 4th 398 (Cal. Ct. App. 2013) ............................................................... 8

*Integral Development Corp. v. Tolat*,
    675 F. App'x 700 (9th Cir. 2017) ............................................................................. 13

*Jordan-Benel v. Universal City Studios, Inc*.,
    859 F.3d 1184 (9th Cir. 2017) ................................................................................... 4

*Kajima Eng'g & Const., Inc. v. City of Los Angeles*,
    95 Cal. App. 4th 921 (Cal. Ct. App. 2002) ............................................................... 7

*Kovalenko v. Kirkland & Ellis LLP*,
    2023 WL 5444728 (N.D. Cal. Aug. 23, 2023) ......................................................... 7

*Kwikset Corp. v. Superior Ct.*,
    246 P.3d 877 (Cal. 2011) ......................................................................................... 14

*Martinez v. Metabolife Int'l, Inc*.,
    113 Cal. App. 4th 181 (Cal. Ct. App. 2003) ........................................................ 1, 5

*Olivares v. Pineda*,
    40 Cal. App. 5th 343 (Cal. Ct. App. 2019) ............................................................... 7

*Park v. Bd. of Trs. of Cal. State Univ*.,
    393 P.3d 905 (Cal. 2017) ...................................................................................... 5, 6

*Penrose Hill, Ltd. v. Mabray*,
    479 F. Supp. 3d 840 (N.D. Cal. 2020) ..................................................................... 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018) .................. 12

*PQ Labs, Inc. v. Qi*,
    2014 WL 334453 (N.D. Cal. Jan. 29, 2014) ........................................................... 14

*Remedi8, LLC v. All. Env't Grp., LLC*,
    2024 WL 1829617 (C.D. Cal. Feb. 5, 2024) ........................................................... 13

*Sage v. Cnty. of Monterey*,
    2024 WL 2749435 (N.D. Cal. May 28, 2024) ......................................................... 10

*Sansoe v. Ford Motor Co*.,
    668 F. App'x 718 (9th Cir. 2016) ......................................................................... 1, 5

*Silicon Knights, Inc. v. Crystal Dynamics, Inc*.,
    983 F. Supp. 1303 (N.D. Cal. 1997) ....................................................................... 14

Case No. 3:25-CV-2576 (CRB)

RIPPLING'S OPPOSITION TO DEEL'S SPECIAL MOTION TO STRIKE

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (Cal. Ct. App. 2001) .................................................................. 14

*Thomas Weisel Partners LLC v. BNP Paribas*,
    2010 WL 1267744 (N.D. Cal. Apr. 1, 2010) ............................................................... 14

*Vaughan v. Canning*,
    2023 WL 6804634 (Cal. Ct. App. Oct. 16, 2023) ......................................................... 6

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*,
    172 Cal. App. 4th 1561 (Cal. Ct. App. 2009), *as modified* (May 7, 2009) .................. 8, 10, 11

*Zhang v. Superior Ct.*,
    304 P.3d 163 (Cal. 2013) ............................................................................................ 15

**Rules / Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 3

Cal. Civ. Code § 3426.7 ..................................................................................................... 12

Cal. Civ. Proc. Code § 425.16(b)(1) .................................................................................. 4

Cal. Civ. Proc. Code § 425.16(e)(4) .................................................................................. 9

Cal. Civ. Proc. Code § 1021.5 ........................................................................................... 14

Fed. R. Civ. P. 9(c) ............................................................................................................. 14

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 2, 11, 12

RIPPLING'S OPPOSITION TO DEEL'S SPECIAL MOTION TO STRIKE

**PRELIMINARY STATEMENT**

Despite what Deel says in its anti-SLAPP motion, this case has nothing to do with journalism, nor free speech, and is certainly not about punishing protected activity.  Instead, it is about corporate espionage—directed by Deel at the highest levels—carried out through a mole inside Rippling who was paid to steal confidential information and give Deel a competitive advantage.  The FAC chronicles this scheme step-by-step.  It describes how Deel cultivated and directed a Rippling employee to secretly siphon trade secrets and pass them to Deel executives, an arrangement Rippling uncovered only after initiating a forensic investigation.

That investigation, though, did not materialize out of thin air.  It began when a third-party contacted Rippling, asking about internal messages that no outsider should have had.  That inquiry, from someone who happened to be a reporter—the lone bit of "speech" that Deel fixates on in its motion—was the warning flare to Rippling that someone had infiltrated its systems.  But this entire anecdote occupies just three of the FAC's 227 paragraphs.  And they appear there not as the predicate for any claim, but as background to identify the catalyst for discovering the true wrongdoing here: Deel running a corporate espionage scheme of staggering scope.  Because none of Rippling's causes of action are based on this passing anecdote, Deel's anti-SLAPP motion should be denied.

Deel nevertheless urges this Court to ignore what this case is really about and rule on a version that exists only in its briefing.  It spins those three paragraphs into an anti-SLAPP narrative that recasts Deel's role as spymaster into that of whistleblower.  It is a cynical gambit that would reward Deel's espionage with an improbable fee award for promoting the public interest.

But that is not the law.  As the Ninth Circuit has held, "California law is clear that 'a defendant in an ordinary private dispute cannot take advantage of the anti–SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant.'" *Sansoe v. Ford Motor Co.*, 668 F. App'x 718, 719 (9th Cir. 2016).  And California appellate courts have been equally clear: "collateral allusions" to speech in a complaint, offered merely as explanatory context, do not transform permissible tort claims into a sanctionable speech-deterring lawsuit. *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 187 (Cal. Ct. App. 2003).

Even if Rippling's causes of action arose from protected activity, Deel fails to demonstrate that its "speech" activity furthered an issue of public interest.  Deel submits no evidence to make this showing, as it is permitted to do, relying instead only on Rippling's allegations.  But Rippling's allegations do not support Deel's bid to airbrush its espionage into protected newsgathering.  Unsurprisingly, both the facts and the law confirm that Deel's espionage scheme is not protected newsgathering or speech activity—it is illegal and actionable.

Finally, even if Deel's trade secret theft were reimagined as protected activity, its anti-SLAPP motion still would fail because Rippling is likely to prevail on its claims.  Little needs to be said here because Deel's entire argument on this point is a cut-and-paste repackaging of its Rule 12(b)(6) motion, devoid of factual challenge and unresponsive to the extensive evidence Rippling has marshaled in support of its claims.  Rippling already has explained why Deel's 12(b)(6) motion fails, and the same reasons require that Deel's anti-SLAPP motion also be denied if the statute even applies.

Espionage is not speech.  And directing a spy is not journalism.  Deel's motion has no place in a case focused on a scheme to steal from a competitor.  It belongs in a treatise's footnote about how the anti-SLAPP statute can be misused to deflect accountability for criminal misconduct.

## STATEMENT OF RELEVANT ALLEGATIONS

This case concerns an illegal enterprise run by Deel CEO Alex Bouaziz and Deel CFO Philippe Bouaziz.  Rippling, a competitor of Deel in the global workforce management software market, FAC ¶ 45, is one victim of that enterprise.  The Bouazizes recruited Keith O'Brien, a Rippling employee based in Ireland, to work against Rippling by secretly accessing and feeding information to the enterprise about Rippling's confidential business strategies.  *Id.* ¶¶ 58-59.  Alex Bouaziz established a protected communications channel for their near-daily messages, while Philippe Bouaziz orchestrated secret payments to O'Brien in exchange for the stolen information.  *Id.* ¶¶ 60-66.  O'Brien ultimately conducted over 6,000 searches through Rippling's internal systems at Alex's direction over four months, systematically exfiltrating trade secrets and confidential information from Rippling to Deel.  *Id.* ¶¶ 67-129.

As relevant to this motion to strike, Rippling alleges that Deel's use of O'Brien to obtain internal company messages is what "led to the exposure of [Deel's] use of the spy." *Id.* ¶ 113. In particular, on February 18, 2025, "an investigative reporter at *The Information* contacted Rippling about a forthcoming article about ***Deel's*** Russia related sanctions activity." *Id.* ¶ 114 (emphasis added). "The reporter's email then asked Rippling to comment on a series of false assertions about Rippling's sanctions compliance program, with each assertion referencing an internal Rippling Slack message—13 messages in total—that supposedly supported or related to the assertion." *Id.* ¶ 115. "[T]he fact that internal Rippling Slack messages (which are only available to Rippling employees) were in the possession of someone other than a Rippling employee ***caused Rippling to immediately open a security investigation***." *Id.* (emphasis added). Rippling conducted a forensic investigation and concluded that O'Brien was "the source of the Shared Slack Messages referenced in the reporter's February 18, 2025 email." *Id.* ¶ 116. O'Brien later "confirmed that Alex Bouaziz directed him to conduct these searches" and that O'Brien had not had contact with the reporter, which the reporter also later confirmed. *Id.* ¶ 117. Rippling alleges that "it was Deel's activation of O'Brien for communications-related purposes that allowed Rippling to make a clear and undeniable link between O'Brien and Deel while the scheme was still ongoing." *Id.* ¶ 118.

Rippling established Deel's connection to O'Brien through forensic analysis and a "honeypot" operation, baiting the enterprise into instructing O'Brien to search for a specific "channel" in Rippling's systems created solely for the ruse. *Id.* ¶¶ 118-24. Within hours of Rippling sending a letter to Philippe Bouaziz and two members of Deel's legal team referencing that channel, O'Brien searched for and accessed it five times, proving the enterprise directed O'Brien's spying. *Id.* ¶¶ 122-23.

Rippling filed this action shortly after uncovering the espionage scheme and then amended its complaint to add later-learned details supporting its claims. The FAC alleges three California law claims: tortious interference with contract (Count IV), aiding and abetting breach of fiduciary duty (Count V), and unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 ("UCL") (Count VI). *Id.* ¶¶ 200-20. Count IV alleges that Deel tortiously interfered with the Confidentiality and Intellectual Property Rights Assignment Agreement ("CIPRAA") between Rippling and O'Brien

1   by inducing O'Brien to disclose information to Deel and assist Deel's solicitation of Rippling

2   employees.  *Id.* ¶¶ 200-05.  Deel aided and abetted O'Brien's breach of fiduciary duty, recruiting

3   and then directing O'Brien to work against the interests of Rippling and for the benefit of Deel.  *Id.*

4   ¶¶ 206-14.  Such efforts continued after discovery of the spying scheme, with Deel imploring

5   O'Brien to destroy his phone, which he then did with an axe to spoliate evidence.  *Id.*  The UCL

6   claim rests on these claims along with the federal claims—which Deel does not seek to strike—and

7   seeks injunctive relief, restitution, and attorneys' fees.  *Id.* ¶¶ 215-20.

8                                            **LEGAL STANDARD**

9        California's anti-SLAPP statute provides that a cause of action arising from an act "in

10  furtherance of the [defendant's] right of petition or free speech … in connection with a public issue

11  shall be subject to a special motion to strike, unless the court determines that the plaintiff has

12  established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc.

13  Code § 425.16(b)(1).  "To prevail on an anti-SLAPP motion to strike, the defendant must first make

14  a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's

15  rights of petition or free speech."  *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188

16  (9th Cir. 2017).  "If the defendant makes the required showing, the plaintiff must then demonstrate

17  a probability of prevailing on the challenged claim."  *Id.*

18                                                **ARGUMENT**

19  **I.    THE ANTI-SLAPP STATUTE DOES NOT APPLY**

20  The Court should deny Deel's anti-SLAPP motion for a simple reason: The FAC's claims are based

21  on Deel's acts of espionage, not protected activity.  That alone is fatal to its motion.  But beyond

22  that, Deel cannot demonstrate how anything it is alleged to have done would even constitute

23  "protected activity" under the anti-SLAPP statute.

24       **A.    Rippling's Causes of Action Do Not Arise From Any Protected Activity**

25       Deel's motion hinges on a galling proposition: that when Deel recruited, activated, paid, and

26  operated a corporate spy to steal Rippling's confidential information—ranging from corporate trade

27  secrets to employee contact information to live customer pitch materials—Deel was in fact engaged

28  in wholesome, protected "newsgathering."  To make this pitch, Deel mischaracterizes Rippling's

1   claims as arising from "[g]athering information and communicating it to members of the press"

2   (Mot. 6), pointing to three paragraphs of Rippling's 227-paragraph FAC that discuss Deel's

3   disclosure of Rippling data to a reporter, which is what tipped Rippling off that Deel had a spy inside

4   the company.  FAC ¶¶ 113, 117-18; *see also id.* ¶¶ 115-16.  Deel mischaracterizes Rippling's claims,

5   which do not "arise" from protected activity.  Just because Deel got caught thanks to its ham-handed

6   disclosure to a reporter does not mean Rippling's claims arise from protected activity.

7          To invoke California's anti-SLAPP statute, Deel "must first make an initial prima facie

8   showing that Plaintiff's claims ***arise from a protected activity***."  *Biden v. Ziegler*, 737 F. Supp. 3d

9   958, 977 (C.D. Cal. 2024) (emphasis added).  "California law is clear that 'a defendant in an ordinary

10  private dispute cannot take advantage of the anti–SLAPP statute simply because the complaint

11  contains some references to speech or petitioning activity by the defendant.'"  *Sansoe*, 668 F. App'x

12  at 719 (citation omitted).  Rather, "a claim may be struck only if the speech or petitioning activity

13  ***itself*** is the wrong complained of, and not just evidence of liability or a step leading to some different

14  act for which liability is asserted."  *Park v. Bd. of Trs. of Cal. State Univ.*, 393 P.3d 905, 907 (Cal.

15  2017) (emphasis original).

16         In this regard, a court must "distinguish between (1) speech or petitioning activity that is

17  mere ***evidence*** related to liability and (2) liability that is ***based on*** speech or petitioning activity."

18  *Park*, 393 P.3d at 910 (emphasis original) (internal quotation marks omitted).  "[W]hen the

19  allegations referring to arguably protected activity are only incidental to a cause of action based

20  essentially on nonprotected activity, collateral allusions to protected activity should not subject the

21  cause of action to the anti-SLAPP statute."  *Martinez*, 113 Cal. App. 4th at 187; *Baral v. Schnitt*,

22  376 P.3d 604, 615 (Cal. 2016) (similar); *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1068 (Cal.

23  2021) (similar).

24         Rippling's FAC makes clear the incidental nature of the three allegations referencing Deel's

25  disclosure of Rippling's internal messages to a reporter, which the FAC provides only as background

26  to explain what "led to the exposure of [Deel's] use of the spy."  FAC ¶ 113; *Bonni*, 491 P.3d at

27  1067-68 (contrasting allegations of acts that "supply the elements of a claim" from "incidental

28  background").  This section of the FAC closes by reiterating that "it was Deel's activation of

O'Brien for communications-related purposes that **allowed Rippling to make a clear and undeniable link between O'Brien and Deel** while the scheme was still ongoing." FAC ¶ 118 (emphasis added). As the FAC explains, the appearance of internal messages in an email from an outsider—who happened to be a reporter—tipped Rippling off to an internal leak and led Rippling to conduct the security operation that identified O'Brien as a spy and conclusively linked him to Deel's senior management. *Id.* ¶ 116. In light of this context—which Deel ignores—Deel cannot carry its burden to show that its disclosure to a reporter of Rippling's internal messages is the "conduct by which [Rippling] claims to have been injured." *Park*, 393 P.3d at 908.

In fact, Deel's communication to a reporter is nowhere mentioned in Rippling's state law causes of action for tortious interference, aiding and abetting breach of fiduciary duty, or unfair competition, and it is not identified as giving rise to liability. *See* FAC ¶¶ 189-220. The wrongful conduct underlying the tortious interference claim is not Deel's disclosure of internal messages to a reporter, but Deel's inducing O'Brien to breach his agreements with Rippling. *Id.* ¶ 203. Similarly, the breach of fiduciary duty claim rests on Deel aiding and abetting O'Brien's breaches of his duties by acting contrary to Rippling's interest in favor of Deel's interest. *Id.* ¶ 211. And the unfair competition claim arises not only from this conduct but from the conspiracy that Deel entered with O'Brien and others. *Id.* ¶ 216. Deel thus cannot show that its liability for these claims rises or falls with any disclosure of Rippling internal messages to a reporter. Deel's failure to invoke any speech-related defenses underscores that Deel's protected activity argument lacks merit, especially given that Deel has shown no reticence in this litigation about raising inventively dubious arguments.

Deel returns to that creative form when it insists that, despite what the FAC really says, Rippling's claims "expressly arise[]" from and "expressly incorporate" allegations of protected activity. Mot. 2, 4, 9 (citing FAC ¶¶ 200, 206, 215). But when Deel says Rippling "expressly incorporate[s]" such allegations, what it really means is that each cause of action in the FAC begins by incorporating all of the FAC's prior allegations by reference—an unremarkable pleading practice that does nothing to show that Rippling's claims "expressly arise" from protected activity. *See* FAC ¶¶ 200, 206, 215. Rather, "the mere incorporation of allegations referencing protected activity does not by itself establish the claims arise from protected activity." *Vaughan v. Canning*, 2023 WL

6804634, at *3 (Cal. Ct. App. Oct. 16, 2023).  That is because "[c]omplaints generally incorporate prior allegations into subsequent causes of action."  *See Kajima Eng'g & Const., Inc. v. City of Los Angeles*, 95 Cal. App. 4th 921, 931-32 (Cal. Ct. App. 2002) (rejecting argument that "the mere incorporation by reference of a cause of action struck under the anti-SLAPP statute taints the other causes of action that do not allege acts taken in furtherance of the right to petition or free speech").

This situation thus bears no resemblance to the decision in *Bonni*—on which Deel relies to argue that courts "assume [the] complaint means what it says," Mot. 8—because in that case the complaint "in no uncertain terms list[ed] the alleged defamation and character assassination" as the basis for a retaliation claim, 491 P.3d at 1071.  That is a far cry from a mere "incorporation by reference."   Where, as here, the "incorporated allegations of protected activity merely provide context and are not the basis for plaintiffs' claim for recovery," the anti-SLAPP statute does not apply.  *Olivares v. Pineda*, 40 Cal. App. 5th 343, 352 (Cal. Ct. App. 2019) (denying motion).  Even when a defendant attempts to artificially insert allegations of protected activity into a complaint contrary to its plain language, the plaintiff's subsequent clarification that it does not seek relief for the conduct alleged is sufficient grounds to deny a motion to strike the allegations.  *See Kovalenko v. Kirkland & Ellis LLP*, 2023 WL 5444728, at *3 (N.D. Cal. Aug. 23, 2023) ("Given this concession that Plaintiff is not attempting to recover for Defendants' alleged failure to provide information to the [unemployment] benefits office, the Court will not strike the allegations.").

Simply put, Rippling does not seek any relief based on Deel's disclosure of internal Rippling messages to a reporter, rendering the anti-SLAPP statute inapplicable.  This case is similar to *Biden v. Ziegler*, in which the court denied an anti-SLAPP motion because the plaintiff's claims for unauthorized access to a computer did not arise from protected activity.  737 F. Supp. 3d at 977.  Although the defendant "used Plaintiff's data to create a lengthy report" about it, the court reasoned that "Plaintiff did not sue Defendants for creating a report or website," but for unauthorized access to his computer, and "the anti-SLAPP statute simply does not apply."  *Id.*  Likewise, the court in *Golden Gate Land Holdings LLC v. Direct Action Everywhere*, 81 Cal. App. 5th 82, 90 (Cal. Ct. App. 2022), affirmed denial of a SLAPP motion because "the wrong on which the claims against

1   [defendant] are based was the organization's alleged involvement in the illegal trespass, not its

2   speech or petitioning activity."

3        By contrast, the cases on which Deel relies all concern claims that expressly premised

4   liability on the protected activity itself.  For instance, in *Eliott v. Lions Gate Entertainment Corp.*,

5   the plaintiff asserted ***defamation*** and ***right of publicity*** claims based on content in a documentary

6   series.  639 F. Supp. 3d 1012, 1026 (C.D. Cal. 2022); *see also Gunn v. Drage*, 65 F.4th 1109, 1116-

7   17, 1121-22 (9th Cir. 2023) (claims rested on protected legal advice); *Greater L.A. Agency on*

8   *Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 421, 423 (9th Cir. 2014) ("*GLADD*")

9   (plaintiff sued news network for distributing video content on its website allegedly inaccessible to

10  deaf and hard of hearing visitors); *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 952, 954-55 (9th

11  Cir. 2013) (claim premised on disclosure of plaintiff's identity in documentary when, "[b]ut for the

12  broadcast and Defendant's actions in connection with that broad, Plaintiff would have no reason to

13  sue Defendants"); *Hupp v. Freedom Commc'ns, Inc.*, 221 Cal. App. 4th 398, 401 (Cal. Ct. App.

14  2013) (violation of website user agreement through posting content about plaintiff to website).

15       In each of Deel's cited cases, the plaintiff would have had "no reason to sue," *GLADD*, 742

16  F.3d at 423, absent the protected speech.  Not so here.  If the so-called "protected activity"

17  mentioned in the FAC's three paragraphs is set aside, Rippling still has every reason and right to

18  sue Deel for directing a spy operation that stole Rippling's trade secrets.

19       **B.    Deel Has Not Established That Its Activity Is Protected**

20       Separately, Deel fails to show that the anti-SLAPP statute applies because it has not carried

21  its burden to demonstrate that it engaged in any protected activity.  Indeed, because Deel did not

22  provide with its motion the messages it asserts constituted its "protected newsgathering," the Court

23  has no basis to conclude that those messages closely relate to a specific matter of public concern.

24  *E.g.*, *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1570 (Cal. Ct.

25  App. 2009), *as modified* (May 7, 2009) (requiring analysis of "specific speech or conduct" at issue).

26       Although the SLAPP statute provides four categories of protected activity, Deel seeks to

27  avail itself only of the category protecting "conduct in furtherance of the exercise of the

28  constitutional right of petition or the constitutional right of free speech in connection with a public

1   issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). This category "demands

2   'some degree of closeness' between the challenged statements and the asserted public interest," and

3   "it is not enough that the statement refer to a subject of widespread public interest; the statement

4   must in some manner itself contribute to the public debate." *FilmOn.com Inc. v. DoubleVerify Inc.*,

5   439 P.3d 1156, 1165-66 (Cal. 2019) (citations omitted). In making this inquiry the "court must

6   consider the context as well the content of a statement." *Id.* at 1164. That includes (1) identifying

7   the public issue or issue of public interest implicated "by looking to the content of the speech"—

8   and then (2) examining the "functional relationship [that] exists between the speech and the public

9   conversation about some matter of public interest." *Id.* at 1165. A defendant cannot satisfy its

10  burden by pointing to a "broad and amorphous public interest" that is "not sufficiently connected to

11  the specific statements at issue." *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 855 (N.D. Cal.

12  2020) (internal quotation marks omitted). That is, a defendant cannot rely on "society's general

13  interest in the subject matter of the dispute instead of the specific speech or conduct upon which the

14  complaint is based"; instead, the court "must focus on the specific nature of the speech rather than

15  the generalities that might be abstracted from it." *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 84

16  (Cal. Ct. App. 2015) (emphasis and citations omitted).

17      Here, Deel fails to carry its burden because it provides no evidence of the necessary

18  connection between the speech and the alleged public interest. Deel relies exclusively on the FAC's

19  allegations, but the FAC's three references to Deel providing 13 internal Rippling messages to a

20  reporter do not establish the ***content*** or broader ***context*** of those messages. FAC ¶¶ 113, 115, 117.

21  The FAC simply reflects that, in an email to Rippling, the ***reporter***—not Deel—made "false

22  assertions about Rippling's sanctions compliance program," with each assertion referencing an

23  internal message "that ***supposedly supported or related*** to the assertion." *Id.* ¶ 115 (emphasis

24  added). Deel does not support its argument with ***any*** of its actual messages supposedly in

25  furtherance of its "right of free speech in connection with a public issue," leaving unsubstantiated

26  its contention that the messages "evidence[d] Rippling's illicit sanctions-evasion practices." Mot.

27  3, 6. Deel thus provides the Court with no basis to discern whether its theft of 13 internal

28

1    messages—which it calls "newsgathering"—and later disclosure to a reporter actually relates to an

2    issue of public interest.  It therefore cannot be credited.[1]

3        Because Deel has failed to substantiate its generalizations of its alleged "newsgathering" or

4    disclosure to a reporter, the Court has no basis to determine whether such activity related to an issue

5    of public interest, or that Deel "participated in, or furthered, the discourse that makes an issue one

6    of public interest." *FilmOn*, 439 P.3d at 1166; *World Fin.*, 172 Cal. App. at 1569 (movant failed to

7    demonstrate protected activity where it "made no mention of the actual content of the

8    communications at issue" and instead "erroneously identif[ied] generalities that might be derived

9    from their speech rather than the specific nature of what they actually said and did").

10        Try as it might, Deel cannot save its flawed argument by pointing to abstract concepts in

11    anti-SLAPP law.  *First*, it is not sufficient for Deel to claim a generalized public interest in "illegal

12    conduct."  Mot. 7.  The fact that a plaintiff may be "'a large, powerful corporation' does not render

13    all information about the company a matter of widespread public interest." *World Fin.*, 172 Cal.

14    App. 4th at 1573.  Rather, the movant must explain how the company's internal information "would

15    have any effect on a substantial number of people beyond those to whom the information was

16    directly conveyed." *Id.*  Indeed, Deel's case citations involve specific illegality that rose to a level

17    of degree and prominence to generate significant public interest—the exact facts Deel has not

18    established here.  *See* Mot. 7 (citing *Briganti v. Chow*, 42 Cal. App. 5th 504, 508 (Cal. Ct. App.

19    2019) (concluding that "widespread" theft that allegedly "ensnared tens of thousands of innocent

20    victims" would be "of concern to a substantial number of people") (internal quotation marks

---

[1] While Deel purports to cite to an article published by *The Information*, that article is not properly before the Court.  Mot. 4, 8.  The FAC does not reference the article, and does not incorporate it by reference.  In any event, to the extent that article purports to describe any internal Rippling messages, it is inadmissible hearsay insufficient to establish the content of the messages that Deel disclosed to the reporter.  And, "[a]lthough the Court may consider items of which it can take judicial notice, [Deel] has not moved for judicial notice" of the article, precluding consideration. *Sage v. Cnty. of Monterey*, 2024 WL 2749435, at *2 (N.D. Cal. May 28, 2024).  Even if it had, the Court would have to reject such a request because Deel did not provide the Court with an authenticated copy of the article in support of its motion, only citing a URL that requires a subscription for access. *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1146 (S.D. Cal. 2022) (declining to take judicial notice of documents where movant provided "only a link to the general website" and there was thus "no method of authentication").

omitted); *Blue v. Off. of Inspector Gen.*, 23 Cal. App. 5th 138, 145, 153 (Cal. Ct. App. 2018) (inspector general's report on "pattern or practice" of excessive force at state-run correctional facility was of public interest); *Eliott*, 639 F. Supp. 3d at 1024 (cult subject of "criminal prosecutions" to which "major media outlets devoted substantial attention" was matter of public interest).

*Second*, Deel makes much ado about the California Supreme Court's observation that "Defendants 'virtually always'" tie their speech to an "issue of public interest," Mot. 7, but Deel ignores the court's caveat that "'virtually always' does not mean 'always' [because] a defendant may fail to meet its first-step burden." *Geiser v. Kuhns*, 515 P.3d 623, 601 (Cal. 2022). That failure is particularly likely to occur when a defendant that claims its communications were about a public interest **withholds** the content of those communications from the court. *See World Fin.*, 172 Cal. App. 4th at 1569 (denying motion where movant "made no mention of the actual content of the communications at issue"). Such is the case here.

*Finally*, Deel fails to show how its disclosure of Rippling's messages furthered public conversation on any issue of public interest. Deel claims that its conduct "exposed Rippling's sanction system," but it offers no explanation for that conclusory assertion. Mot. 8. While Deel asserts that it "contributed to public discussion," Deel ironically supports that statement by stating that "***Rippling*** added to the discourse" when it responded to the reporter. *Id.* (emphasis added). Deel cannot establish that its own speech is protected by pointing to Rippling's speech.

Having failed to establish the exact topic of public interest allegedly furthered by Deel's disclosure of Rippling's message, Deel fails to show that its conduct was in furtherance of speech regarding an issue of public interest. *FilmOn*, 439 P.3d at 1164-66. The motion should be denied for this independent reason.

## II.    RIPPLING HAS A REASONABLE PROBABILITY OF PREVAILING

Although the SLAPP statute does not apply, even if it did, Deel's motion should be denied for the independent reason that Rippling is likely to prevail on its claims. Deel expressly states that it "brings only a legal challenge" to Rippling's claims, and thus the "reasonable probability of prevailing" test under the SLAPP statute's second step is the same as the Rule 12(b)(6) standard.

1   *See* Mot. 9-10; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828,

2   833-35 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion

3   to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal

4   Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").  To

5   avoid duplication, Rippling includes an abbreviated version of the same arguments included in

6   opposition to Deel's duplicative 12(b)(6) motion and respectfully refers the Court to that opposition

7   brief for further discussion.  *See* ECF No. 104 ("MTD Opp.").

8          **A.      CUTSA Does Not Preempt The California State Law Claims**

9          At the threshold, Deel's argument (Mot. 10-11) for sweeping CUTSA preemption cannot be

10  squared with the standard in this Circuit.  *See* MTD Opp. at 13-14.

11         CUTSA preempts a state law claim when based on the same nucleus of facts as a

12  misappropriation of trade secrets claim, but does not preempt "any claim not based on the

13  misappropriation of trade secrets."  *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *2 (N.D. Cal.

14  Mar. 1, 2017) (citing Cal. Civ. Code §§ 3426.7(a)-(b)).  That inquiry asks only whether if, "after the

15  facts relating to trade secrets are removed, there are insufficient facts for the claim to survive."  *Id.*

16  Here, even if O'Brien had stolen no trade secrets, all of Rippling's claims for aiding and abetting

17  breach of fiduciary duty, tortious interference with contract, and unfair competition stand

18  independently, because he acted contrary to the interests of Rippling and sought to advance the

19  interests of Rippling's competitor, providing an independent basis for Rippling's state law claims.

20         For instance, Rippling's aiding and abetting fiduciary duty claim rests in part on O'Brien's

21  actions after Rippling confronted him, including lying about his phone and deleting evidence.  FAC

22  ¶¶ 130-56.  Such actions breached O'Brien's duty of loyalty to Rippling.  In addition, recruiting

23  O'Brien to "[c]ompet[e] with [Rippling] on behalf of a competitor while still employed with

24  [Rippling]" is not preempted because it is "independent of any trade secrets."  *Arthur J. Gallagher

25  & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1175 (N.D. Cal. 2020) (holding fiduciary duty claim not

26  preempted).  In this same vein, the tortious interference and fiduciary duty claims expressly allege

27  that O'Brien breached his non-solicitation obligations—another independent ground for liability.

28

1   *See, e.g.*, *Remedi8, LLC v. All. Env't Grp., LLC*, 2024 WL 1829617, at *3 (C.D. Cal. Feb. 5, 2024)

2   (fiduciary duty claim not preempted when "based on … solicitation of [plaintiff's] customers").

3          Beyond this, none of the state claims is preempted to the extent grounded in *non-trade-secret*

4   confidential information, such as employee contact information that O'Brien stole for Deel.  *See*

5   FAC ¶¶ 108-12 (alleging theft of non-trade-secret information).  As to fiduciary duty, the Ninth

6   Circuit reversed a finding of CUTSA preemption in substantially identical circumstances.   In

7   *Integral Development Corp. v. Tolat*, the defendant employee allegedly breached his fiduciary duties

8   when he "shared confidential information with a competitor."  675 F. App'x 700, 704 (9th Cir.

9   2017).  Noting that "this claim does not require that the confidential information qualify as a trade

10  secret," the Ninth Circuit held that "Integral's breach of fiduciary duty claim has a basis independent

11  of any misappropriation of a trade secret, and therefore, is not preempted by CUTSA."  *Id.* (citations

12  omitted).[2]  The same is true for the remaining claims.  *See* MTD Opp. at 14 (citing cases).

13         **B.      Rippling States A Tortious Interference Claim**

14         Apart from preemption, Deel's sole argument for dismissing Rippling's tortious interference

15  claim—that Rippling "disclaimed" reliance on the CIPRAA between Rippling and O'Brien (Mot.

16  11)—fails for a simple reason: there was no disclaimer.  *See* MTD Opp. at 14.  The FAC alleges

17  that Deel tortiously interfered *with the CIPRAA* by inducing O'Brien to violate at least five

18  enumerated obligations under that contract.  FAC ¶ 205.  Rippling's subsequent clarification that

19  this claim "is not based on [any] misappropriation" of Rippling's trade secrets (*id.* ¶ 205) does not

20  disclaim reliance on the CIPRAA.  It merely clarifies that the factual allegations supporting the

21  claim are based on O'Brien's disclosure of **non-trade-secret** Rippling employee information.  *Id.* ¶¶

22  108-12.

23         The CIPRAA is a valid contract between Rippling and O'Brien that O'Brien breached

24  through his participation in the conspiracy, resulting in damages.  *Id.* ¶¶ 10-11 n.13; *id.* ¶¶ 108-17,

25  201-04.  While Deel derides Rippling's "single allegation" that "Deel knew or should have known

26  _____

27  [2] Though Rippling asserts an aiding and abetting fiduciary duty claim rather than a direct breach of
    fiduciary duty claim, Deel offers no basis to hold that an aiding and abetting claim is preempted
28  when the underlying breach claim would not be.

1  of [O'Brien's] confidentiality agreement," Mot. 12, it does not argue that Rippling's allegations on

2  this score are impermissibly conclusory.  Nor could it.  *See Silicon Knights, Inc. v. Crystal*

3  *Dynamics, Inc.*, 983 F. Supp. 1303, 1310 (N.D. Cal. 1997) (holding Rule 9(c) permits "general"

4  allegations as to state of mind, such that "Plaintiff's general allegations of Crystal Dynamics'

5  knowledge of the underlying contracts … is not fatal").  Rippling thus has stated a tortious

6  interference claim.

7           **C.       Rippling States An Aiding And Abetting Breach of Fiduciary Duty Claim**

8           Deel seeks to dismiss the aiding and abetting breach of fiduciary duty claim only on the

9  ground that O'Brien did not owe a fiduciary duty to Rippling because he worked for Rippling's

10  wholly owned subsidiary.  But that is wrong as a matter of law.  *See* MTD Opp. at 14-15.  "California

11  courts have recognized that the fiduciary of a subsidiary also owes a fiduciary duty to the

12  subsidiary's parent corporation."  *PQ Labs, Inc. v. Qi*, 2014 WL 334453, at *12 (N.D. Cal. Jan. 29,

13  2014) (citation omitted); *Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at *5

14  (N.D. Cal. Apr. 1, 2010) (same).  All of Deel's cases are thus inapposite.  *See* MTD Opp. at 16

15  (distinguishing cases).

16           **D.       Rippling States An Unfair Competition Claim**

17           Deel's alternative arguments for dismissal of the UCL claim (Mot. 13) also fail.  *See* MTD

18  Opp. at 15.  For starters, because the UCL "'borrows' violations of other laws and treats them as

19  'unlawful' practices independently actionable under the unfair competition law," the UCL cannot

20  be dismissed unless Rippling's other claims are dismissed.  *Smith v. State Farm Mut. Auto. Ins. Co.*,

21  93 Cal. App. 4th 700, 718 (Cal. Ct. App. 2001).  Deel's argument that Rippling has not alleged a

22  valid UCL remedy (Mot. 13) fares no better, first because it ignores the breadth of the remedies

23  Rippling seeks.  Rippling seeks "[p]ermanent injunctive relief … preventing Defendants from

24  profiting or benefiting from their wrongful conduct."  FAC ¶ 221.  "Injunctions are the primary form

25  of relief available under the UCL."  *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 895 (Cal. 2011)

26  (citation omitted).  That ends the inquiry.  But Rippling's UCL claim also validly and independently

27  seeks both restitution and attorneys' fees.  *See* MTD Opp. at 15 (citing cases).  And while "the UCL

28  does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as a private attorney

1  general under Code of Civil Procedure section 1021.5." *Zhang v. Superior Ct.*, 304 P.3d 163, 167

2  n.4 (Cal. 2013). That is the basis on which Rippling seeks attorneys' fees in its UCL claim. FAC ¶

3  220.

4                                    **CONCLUSION**

5          For the foregoing reasons, the motion should be denied.

6  Dated: August 8, 2025                    **QUINN EMANUEL URQUHART &**
                                            **SULLIVAN, LLP**
7

8                                 By    */s/ Joseph Sarles*
                                      _____

9                                        Alex Spiro (*pro hac vice*)
                                         Maaren A. Shah (*pro hac vice*)
10                                       Samuel Nitze (*pro hac vice*)
                                         Scott Hartman (*pro hac vice*)
11                                       Dominic Pody (*pro hac vice*)
                                         295 5th Avenue, 9th Floor
12                                       New York, NY 10016
                                         Telephone: (212) 849-7000
13                                       Facsimile: (212) 849-7100
                                         alexspiro@quinnemanuel.com
14                                       maarenshah@quinnemanuel.com
                                         samuelnitze@quinnemanuel.com
15                                       scotthartman@quinnemanuel.com
                                         dominicpody@quinnemanuel.com
16

17

18                                       Joseph Sarles (CA Bar No. 254750)
                                         Kathleen S. Messinger (CA Bar No. 329983)
19                                       865 S Figueroa Street, 10th Floor
                                         Los Angeles, CA 90017
20                                       Telephone: (213) 443-3000
                                         Facsimile: (213) 443-3100
21                                       josephsarles@quinnemanuel.com
                                         kathleenmessinger@quinnemanuel.com
22

23                                       Jeff Nardinelli (CA Bar No. 295932)
                                         50 California Street, 22nd Floor
24                                       San Francisco, CA 94111
                                         Telephone: (415) 875-6600
25                                       Facsimile: (415) 875-6700
                                         jeffnardinelli@quinnemanuel.com
26                                       *Attorneys for Plaintiff*
                                         *People Center, Inc. d/b/a Rippling*
27

28