1
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
2
Kenneth Brown (*pro hac vice*)
kbrown@wc.com
3
Danielle J. Sochaczevski (*pro hac vice*)
dsochaczevski@wc.com
4
Lydia A. Weiant (*pro hac vice*)
lweiant@wc.com
5
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
6
Washington, DC 20024
Telephone: (202) 434-5000
7
Facsimile: (202) 434-5029

Jeffrey Davidson (Bar No. 248620)
jdavidson@cov.com
Isaac D. Chaput (Bar No. 326293)
ichaput@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:    (415) 591-6000
Facsimile:    (415) 591-6091

8

9
*Counsel for Specially Appearing Defendants Alexandre and Philippe Bouaziz*

10

11
**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

**SAN FRANCISCO DIVISION**

13

14

15
PEOPLE CENTER, INC. D/B/A
RIPPLING, a Delaware corporation,
16

17
Plaintiff,

18
vs.

19
DEEL, INC., a Delaware corporation,
ALEXANDRE ("ALEX") BOUAZIZ, an
20
individual, PHILIPPE BOUAZIZ, an
individual, DANIEL JOHN ("DAN")
21
WESTGARTH, an individual, and DOES
1–100,
22

23
Defendants.

Case No. 3:25-cv-02576-CRB

**(1) SPECIALLY APPEARING DEFENDANTS ALEXANDRE AND PHILIPPE BOUAZIZ'S NOTICE OF MOTION AND MOTION TO DISMISS RIPPLING'S FIRST AMENDED COMPLAINT;**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES; and**

*Under Separate Cover*:

**(3) PROPOSED ORDER; and**

**(4) DECLARATIONS OF SPECIALLY APPEARING DEFENDANTS ALEXANDRE AND PHILIPPE BOUAZIZ; DECLARATIONS OF KENNETH BROWN, AND JEREMY ERWIN, AND EXHIBITS.**

24

25

26
| | |
|---|---|
| Compl.: | March 17, 2025 |
| First Am. Compl.: | June 5, 2025 |
| Judge: | Hon. Charles R. Breyer |
| Courtroom: | 6 |

27

28

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on October 17, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Fracisco California 94102, Specially Appearing Defendants Alexandre ("Alex") Bouaziz and Philippe Bouaziz (together, the "Bouaziz Defendants") will, and hereby do, present for hearing by the Court this motion to dismiss (the "Motion") the First Amended Complaint ("FAC") brought against them by Plaintiff People Center, Inc. d/b/a Rippling ("Rippling").

This Motion is made on the following grounds:

1.  The doctrine of *forum non conveniens* ("FNC");

2.  Insufficient service of process under Federal Rule of Civil Procedure 12(b)(5);

3.  Lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); and

4.  Failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

The Bouaziz Defendants seek an order dismissing Rippling's two claims against them with prejudice.  This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations of Specially Appearing Defendants Alex Bouaziz and Philippe Bouaziz, the Declarations of Kenneth Brown and Jeremy Erwin and the exhibits attached thereto, the other files and records in this action, the arguments of counsel, and any other matters the Court may properly consider.

<u>**SUMMARY OF ARGUMENT**</u>

As required by this Court's Standing Order, the Bouaziz Defendants provide the following summary of argument.  Rippling asserts only two claims against the Bouaziz Defendants (RICO and RICO conspiracy).  The Court should dismiss those claims for several reasons.

<u>First</u>, the Court should dismiss this case under the doctrine of *forum non conveniens* because Ireland is the more appropriate forum.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549

1    U.S. 422, 432 (2007).  The core conduct allegedly occurred in Ireland; the key witnesses and evidence

2    are in Ireland; Rippling already is litigating substantially overlapping claims in Ireland; Rippling can

3    easily litigate this dispute in Ireland; and Rippling's forum-shopping for a claim that provides for

4    treble damages is not entitled to deference.  *See Lockman Found. v. Evangelical All. Mission*, 930

5    F.2d 764, 769 (9th Cir. 1991); *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1452

6    (9th Cir. 1990); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006), *aff'd sub*

7    *nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008); *Juniper Networks, Inc. v. Andrade*,

8    2021 WL 3514103, at *11–*13 (N.D. Cal. Aug. 10, 2021); *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL

9    1565544, at *5 (N.D. Cal. Apr. 19, 2016); *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL

10   12740596, at *12 (C.D. Cal. Jan. 17, 2020).  Additionally, Ireland is the only jurisdiction that would

11   have personal jurisdiction over all of the parties because the Bouaziz Defendants and Mr. Westgarth

12   (collectively, the "Individual Defendants") will consent to personal jurisdiction there if the Court

13   dismisses this case based on *forum non conveniens*.  *See PT Indopac Perdana Fin. v. Masagung*, 32

14   F. App'x 932, 933 (9th Cir. 2002).  *See infra* § IV.A.

15       Second, the Court permitted alternative service pursuant to Federal Rule of Civil Procedure

16   4(f)(3) on the foreign Bouaziz Defendants predicated on Rippling's knowing misrepresentations that

17   the Bouaziz Defendants were evading service; the true facts and circumstances did not require

18   alternative service.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002);

19   *Trader Joe's Co. v. Desertcart Trading FZE*, 2023 WL 3959376, at *2 (N.D. Cal. June 12, 2023)

20   (Breyer, J.) ("A party seeking authorization to serve under Rule 4(f)(3) . . . must 'demonstrate that

21   the facts and circumstances of the present case *necessitate* the district court's intervention.'"

22   (emphasis added)).  Deel told Rippling that the Bouaziz Defendants reside in Israel and Dubai,

23   respectively, before Rippling filed its motion for alternative service under Rule 4(f)(3).  But Rippling

24   made no attempt at service there.  Instead, Rippling pointed to a San Francisco corporate address

25   listed in Deel's 2024 SEC filing as contact information for *all* of the listed officers, represented that

26   the Bouaziz Defendants resided at this corporate address, and falsely told the Court that the Bouaziz

27   Defendants had fled California to evade service and were playing "Catch me if you can."  That

28

iii

1  misrepresentation was designed to allow Rippling to (i) skip the Hague Convention's service

2  procedures; and (ii) even worse, claim that it effected service (albeit not on either of the Bouaziz

3  Defendants) in the United States, in an effort to manufacture a basis for personal jurisdiction.

4  Therefore, the Court may reconsider its order granting Rippling's motion for alternative service

5  pursuant to Rule 4(f)(3) and/or dismiss this case for lack of service of process pursuant to Rule

6  12(b)(5).  Even if the Court's service order stands, sending an email to an overseas party and a notice

7  to a *corporation's* registered agent in the United States does not create personal jurisdiction over an

8  individual officer of that corporation who neither lives nor works in the United States and is not

9  alleged to have committed any misconduct within the United States or even to have been present in

10  the United States at any relevant time.  *See Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Danny M.K.*

11  *Wong*, 2012 WL 13024801, at *8 (W.D. Wash. Apr. 6, 2012) (holding that service on foreign

12  defendant's attorney in California "does not qualify as service in the United States" for purposes of

13  personal jurisdiction in RICO case); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578,

14  at *1–*2 (W.D. Wash. Mar. 18, 2011) (similar).  *See infra* § IV.B.

15      Third, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for

16  lack of personal jurisdiction.  Rippling does not allege that the Bouaziz Defendants are subject to

17  general jurisdiction in California; neither Alex nor Philippe lives or works in California; and overseas

18  officers of California companies are not subject to personal jurisdiction here based merely on their

19  corporate titles.  Instead, the Court must inquire into each defendant's contacts with the forum relative

20  to the dispute.  *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972

21  F.3d 1101, 1110 (9th Cir. 2020); *Davis v. Metro Prods., Inc*., 885 F.2d 515, 520 (9th Cir. 1989);

22  *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992).  Rippling, however,

23  does not plead facts that, if proved, would show that the Bouaziz Defendants had sufficient contacts

24  with California—or the United States as a whole—related to the allegations at issue in this case to

25  subject them to specific personal jurisdiction under California's long arm statute or Rule 4(k)(2).  *See*

26  *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *X*

27

28

*Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 934 (N.D. Cal. 2024) (Breyer, J.); *Gelasio v. Zafar*, 2024 WL 4634058, at *8 (N.D. Cal. Oct. 30, 2024).  *See infra* § IV.C.

Fourth, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In addition to the arguments Deel raised in its motion to dismiss, ECF 89, Rippling cannot overcome the presumption that the RICO statute does not apply extraterritorially in this case.  *See Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412, 418 (2023); *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 340 (2016); *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 842 (9th Cir. 2024); *United States v. Hussain*, 2017 WL 4865562, at *2 (N.D. Cal. Oct. 27, 2017), *aff'd* 972 F.3d 1138 (9th Cir. 2020); *Soelect, Inc. v. Hyundai Motor Co.*, 2024 WL 4293911, at *12 (N.D. Cal. Sept. 24, 2024) (Breyer, J.); *Doe v. Tapang*, 2019 WL 3576995, at *7 (N.D. Cal. Aug. 6, 2019).  Nor has Rippling plausibly alleged facts that, if proved, would satisfy the requirements of proximate cause or concrete, domestic injury.  *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006); *Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151, at *5 (N.D. Cal. July 13, 2020).  Finally, Rippling's RICO conspiracy claim fails for the same reasons as the substantive RICO claim.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  *See infra* § IV.D.

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     STATEMENT OF ISSUES TO BE DECIDED AND SEQUENCING ................................. 2

III.    STATEMENT OF FACTS ............................................................................ 4

IV.     ARGUMENT ........................................................................................ 6

        A.      This Case Should Be Dismissed for *Forum Non Conveniens* ..................................... 6

        B.      Alternative Service on the Bouaziz Defendants Was Unwarranted and
                Cannot Establish Personal Jurisdiction Over Them.................................................. 11

        C.      This Court Lacks Personal Jurisdiction Over the Bouaziz Defendants ................... 13

                1.      The Bouaziz Defendants Are Not Subject to General Jurisdiction
                        in California ................................................................................ 13

                2.      The Bouaziz Defendants Are Not Subject to Specific Jurisdiction
                        in California ................................................................................ 15

                        a.      The Bouaziz Defendants Did Not Purposefully Direct
                                Any Conduct at California ................................................ 15

                        b.      Rippling's Claims Do Not Arise Out of The Bouaziz
                                Defendants' Contacts with California.................................. 17

                        c.      Exercising Personal Jurisdiction Over the Bouaziz
                                Defendants Would Be Unreasonable .................................. 18

                3.      The Bouaziz Defendants Are Not Subject to Personal Jurisdiction
                        Under Rule 4(k)(2)........................................................................ 19

        D.      Rippling Fails to State a RICO Claim Against the Bouaziz Defendants................. 20

                1.      Count I Fails to State a RICO Claim Against the Bouaziz
                        Defendants ................................................................................ 21

                        a.      RICO Does Not Apply Extraterritoriality to the Alleged
                                Conduct ........................................................................ 21

                        b.      Rippling Has Not Alleged the Bouaziz Defendants
                                Proximately Caused a Cognizable RICO Injury .............................. 23

                2.      Count II Fails to State a RICO Conspiracy Claim Against the
                        Bouaziz Defendants ........................................................................ 26

V.      CONCLUSION.................................................................................... 26

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412 (2023) ............................................. 21, 22

*Advanta Corp. v. Dialogic Corp.*, 2006 WL 1156385, at \*6 (N.D. Cal. May 2, 2006) ...................... 7

*Ansah v. Regime PPE*, 2022 WL 19827373 (C.D. Cal. Feb. 10, 2022) ................................. 20

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ................................................... 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 20, 24

*Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020) ........................................................ 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 20

*Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco Cnty.*, 582 U.S. 255
(2017) .......................................................................................................... 13, 17

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578 (W.D. Wash. Mar.
18, 2011) ........................................................................................................ 13

*Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446 (9th Cir. 1990) ...................... 10

*Corwin v. Swanson*, 2010 WL 11598013 (C.D. Cal. Apr. 27, 2010) .................................... 18

*Crowley v. Bannister*, 734 F.3d 967 (9th Cir. 2013) ....................................................... 4

*Daramola v. Oracle Am., Inc.*, 92 F.4th 833 (9th Cir. 2024) ........................................ 20, 22

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ....................... 13

*Davis v. Metro Prods., Inc.*, 885 F.2d 515 (9th Cir. 1989) ............................................ 14

*de Borja v. Razon*, 835 F. App'x 184 (9th Cir. 2020) .................................................... 3

*Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324 (C.D. Cal. Jan. 29,
2013) ............................................................................................................ 3

*Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013 (N.D. Cal. 2023) ............................. 8

*Doe v. Tapang*, 2019 WL 3576995 (N.D. Cal. Aug. 6, 2019) .......................................... 21

*Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527 (S.D.N.Y. 2014) ........................... 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ............................. 13

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018) ...................... 19

*Gelasio v. Zafar*, 2024 WL 4634058 (N.D. Cal. Oct. 30, 2024) .......................................... 16, 17, 20

*Gjovik v. Apple Inc.*, 2024 WL 2309100 (N.D. Cal. May 20, 2024) ............................................ 20

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020) ........................................................................................... 14, 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)........................................ 13

*Hami Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) ................................................ 23

*Hendricks v. New Video Channel Am.*, LLC, 2015 WL 3616983 (C.D. Cal. June 8, 2015) .................................................................................................................. 14

*Howard v. Am. Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ....................................................... 26

*Israel Disc. Bank, Ltd. v. Schnapp*, 321 F. App'x 700 (9th Cir. 2009) ........................................ 3

*Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) ............................ 8

*Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. 2019)........................................................... 21

*Kleiner v. Spinal Kinetics, Inc.*, 2016 WL 1565544 (N.D. Cal. Apr. 19, 2016).................. 6, 7, 8, 10

*LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820 (N.D. Cal. 1992)........................................ 14

*Licht v. Binance Holdings Ltd.*, 2025 WL 625303 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*,  2025 WL 624025 (D. Mass. Feb. 26, 2025)............................ 25

*Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764 (9th Cir. 1991) ....................... 10, 12, 14

*Los Angeles Turf Club Inc. v. US Racing*, 2024 WL 5423013 (C.D. Cal. Oct. 18, 2024) .................................................................................................................. 22

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001)....................................................... 8

*Marani v. Cramer*, 2024 WL 1511329 (N.D. Cal. Feb. 2, 2024), *report and recommendation adopted*, 2024 WL 3740127 (N.D. Cal. Mar. 27, 2024)................................. 16

*Marshall v. Goguen*, 604 F. Supp. 3d 980, 1005 (D. Mont. 2022)................................................. 25

*Mazzocco v. Lehavi*, 2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) .......................................... 23

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)...................................................... 22

*Ogdon v. Grand Canyon Univ., Inc.*, 2022 WL 846973 (E.D. Cal. Mar. 22, 2022)........................ 15

*Paccar Int'l, Inc. v. Commercial Bankof Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985) ............................................................................................................. 18

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharmaceuticals Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019) ........................... 24

*Palantir Techs., Inc. v. Abramowitz*, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ......................... 24

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ........................... 15, 19

*Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Danny M.K. Wong*, 2012 WL 13024801 (W.D. Wash. Apr. 6, 2012) ........................................................... 12

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) ..................................... 15, 17

*Posner v. Essex Ins. Co.*, 178 F.3d 1209 (11th Cir. 1999) ................................... 4

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083 (9th Cir. 2009) .................................................................................................... 3

*PT Indopac Perdana Fin. v. Masagung*, 32 F. App'x 932 (9th Cir. 2002) ................... 10

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ................... 11

*RJR Nabisco. Inc. v. European Cmty.*, 579 U.S. 325 (2016) .............................. 21

*S.H. Silver Co. Inc. v. David Morris Int'l*, 2008 WL 4058364 (N.D. Cal. Aug. 28, 2008) ......................................................................................................... 20

*Sarkis v. Lajcak*, 425 F. App'x 557 (9th Cir. 2011) ........................................... 17

*Satisfied Brake Prods. Inc. v. Savage*, 2010 WL 11595845 (C.D. Cal. Dec. 2, 2010) ................... 3

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .................... 15

*SiFi Networks Fullerton, LLC v. Berkshire Hathaway Specialty Co.*, 2025 WL 1544099 (C.D. Cal. Apr. 25, 2025) ................................................................ 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ................... 3, 4

*Soelect, Inc. v. Hyundai Motor Co.*, 2024 WL 4293911 (N.D. Cal. Sept. 24, 2024) .................. 23

*Solar Integrated Roofing Corp. v. Massey*, 2024 WL 4152380 (S.D. Cal. Sept. 11, 2024) ....................................................................................................... 23

*SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) ........................................................................................................... 9

*Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83 (1998) ................................. 4

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007).............................................................. 13

*Trader Joe's Co. v. Desertcart Trading FZE*, 2023 WL 3959376 (N.D. Cal. June 12, 2023) ......................................................................................................... 11, 13

*United States ex rel. Hawkins v. ManTech Int'l Corp.*, 2023 WL 12004444 (D.D.C. June 20, 2023) ...................................................................................................... 26

*United States v. Hussain*, 2017 WL 4865562 (N.D. Cal. Oct. 27, 2017) ................................... 21, 22

*United States v. Sidorenko*, 102 F. Supp. 3d 1124 (N.D. Cal. 2015)................................ 21

*Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766 (C.D. Cal. 2006) ................................... 8

*Walden v. Fiore*, 571 U.S. 277 (2014).................................................................. 16, 18

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*, 2019 WL 4277431 (S.D. Cal. Sept. 10, 2019)............................................................. 25

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921 (N.D. Cal. 2024) ................................................................................................ *passim*

*Yegiazaryan v. Smagin*, 599 U.S. 533 (2023) ....................................................... 25

**STATUTES & RULES**

18 U.S.C. § 1349.................................................................................................. 21

18 U.S.C. § 1503.............................................................................................. 22, 23

18 U.S.C. § 1837.................................................................................................. 22

18 U.S.C. § 1961.................................................................................................. 21

18 U.S.C. § 1962......................................................................................... 6, 21. 26

Federal Rule of Civil Procedure 4 ................................................................. 11, 12, 19

Federal Rule of Civil Procedure 12 ............................................................. 2, 4, 13, 20

**OTHER AUTHORITIES**

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1351 (4th ed.)............................................. 4

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    PRELIMINARY STATEMENT

From its amended complaint, to its statements to the Court in requesting an order for alternative service, to its recently filed oppositions to Deel's motions to dismiss, Rippling's efforts to litigate this case in California are predicated on knowing misrepresentations.  Rippling knew when it added Alex and Philippe Bouaziz as defendants to this action that they have long lived and worked in the Middle East, but it made no effort to serve them there.  Instead, it told the Court that the Bouaziz Defendants "have fled to either Dubai or Israel, and are evading service" and playing "[c]atch me if you can." ECF 68 at 5.[1]  In truth, the Bouaziz Defendants have openly lived for years in the places they reside, as Deel disclosed to Rippling.  *See* ECF 68-3 at 4 (Deel's initial disclosures listing the Bouaziz Defendants' addresses in Israel and Dubai).  Rippling's conduct to date is inconsistent with its duty of candor to the Court.

Rippling also recently told the Court that its parallel Irish lawsuit "has nothing to do with Rippling's claims in this proceeding."  ECF 102 at 3.  The truth is that, in Ireland, as in this case, Rippling is suing Deel and Alex Bouaziz, alleging they directed Keith O'Brien to steal Rippling's trade secrets and then cover it up.  Both lawsuits fundamentally concern the same alleged fraudulent scheme and the same supposed cover up of that scheme.  They involve heavily overlapping witnesses and evidence, most notably O'Brien's affidavit, which forms the basis for Rippling's assertions in both cases.  The main obstruction claim in the Irish case is an asserted RICO predicate act here.  The two cases have everything "to do with" each other.

Rippling also impermissibly stretches the legal limits of the RICO statute.  By way of example, Rippling alleges predicate acts that are not listed as predicate offenses under the statute.  It also seeks to impermissibly extend RICO's reach to extraterritorial conduct based on a "server theory" of domestic conduct that the Ninth Circuit has rejected.  And, Rippling fails to plead facts that, if proved, would show that the Bouaziz Defendants proximately caused any injury to Rippling's business or property, as required to state a claim.

---

[1] Pincites in docket entries are to ECF-stamped page numbers unless otherwise noted.

1   Cutting through the misrepresentations and hyperbole, Rippling's claims against the Bouaziz
2   Defendants should be dismissed for four reasons.  <u>First</u>, the Court should dismiss based on the
3   doctrine of *forum non conveniens* ("FNC") because Ireland is the more appropriate forum to resolve
4   this controversy.  The core alleged wrongdoing was committed in Ireland by an Irish employee of
5   Rippling's Irish subsidiary.  The allegations across both cases are intertwined and substantially
6   overlap.  Furthermore, given that the Bouaziz Defendants—and, as we understand it, Mr. Westgarth
7   (collectively with the Bouaziz Defendants, the "Individual Defendants")—will consent to personal
8   jurisdiction in Ireland if this Court dismisses for *forum non conveniens*, Ireland is the **only** forum that
9   would have jurisdiction over all the parties.  Rippling responded to Deel's Motion to Dismiss for
10  *Forum Non Conveniens* (the "FNC Motion") by asserting that Deel is a California company, but that
11  argument does not implicate the Individual Defendants, who neither live nor work in in the United
12  States.  <u>Second</u>, in light of Rippling's misrepresentations, the Court should reconsider its order
13  allowing alternative service and dismiss this case for lack of service of process pursuant to Rule
14  12(b)(5).  <u>Third</u>, the Court lacks personal jurisdiction over the Bouaziz Defendants.  Rippling's FAC
15  contains no personal jurisdiction allegations relating to the Bouaziz Defendants, for good reason:
16  Alex lives and works in Tel Aviv, Israel, and Philippe lives and works in Dubai, United Arab
17  Emirates.  As the Bouaziz Defendants attest, they are not United States citizens and do not reside or
18  work in the United States (other than the occasional business trip).  Being an overseas officer of a
19  California company is not by itself a basis for personal jurisdiction in this Court.  <u>Fourth</u>, Rippling's
20  RICO and RICO conspiracy claims against the Bouaziz Defendants cannot stand because Rippling
21  (a) cannot overcome the strong presumption that RICO does not apply extraterritorially; and (b) fails
22  to plead facts that, if proved, would establish that the Bouaziz Defendants proximately caused a
23  cognizable, domestic RICO injury.  These incurable defects in Rippling's FAC require its dismissal
24  against the Bouaziz Defendants with prejudice.

25  **II.    STATEMENT OF ISSUES TO BE DECIDED AND SEQUENCING**

26      The Bouaziz Defendants suggest that the Court should decide the following issues, in this
27  order, for efficiency and fairness.

28

1)    Whether this case should be dismissed under the doctrine of *forum non conveniens*.

2)    Whether the Court's order permitting alternative service on the Bouaziz Defendants was obtained through Rippling's misrepresentations, and therefore unwarranted.

3)    Whether this Court lacks personal jurisdiction over the Bouaziz Defendants.

4)    Whether Rippling's RICO claims against the Bouaziz Defendants should be dismissed for failure to state a claim upon which relief can be granted.

The sequence in which the Court decides these issues is important. <u>First</u>, the Court should "dispose of [this] action by a *forum non conveniens* dismissal, bypassing questions of . . . personal jurisdiction," because "considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1088 (9th Cir. 2009) ("In *Sinochem*, the Supreme Court offered the lower courts a practical mechanism for resolving a case that would ultimately be dismissed."). For reasons explained below, this is a "textbook case for immediate *forum non conveniens* dismissal." *Sinochem*, 549 U.S. at 435. Indeed, Rippling has admitted that Defendant Deel, Inc. ("Deel")'s FNC motion can be adjudicated "without any additional evidence." ECF 99 at 5. Hence, the Court "properly takes the less burdensome course." *Sinochem*, 549 U.S. at 436; *see also*, *e.g.*, *de Borja v. Razon*, 835 F. App'x 184, 186–87 (9th Cir. 2020) (affirming FNC dismissal without allowing jurisdictional discovery or adjudicating personal jurisdiction); *Israel Disc. Bank, Ltd. v. Schnapp*, 321 F. App'x 700, 701 (9th Cir. 2009) (affirming district court's FNC dismissal without determining jurisdiction); *Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324, at *1–*2 (C.D. Cal. Jan. 29, 2013) (dismissing case for FNC and bypassing jurisdictional questions where it was apparent case should be litigated in England); *Satisfied Brake Prods. Inc. v. Savage*, 2010 WL 11595845, at *8 (C.D. Cal. Dec. 2, 2010) (dismissing case for FNC and mooting all other motions to dismiss).

<u>Second</u>, if the Court concludes that its order allowing alternative service on the Bouaziz Defendants was unwarranted (following Rippling's misrepresentations that the Bouaziz Defendants were evading service, ECF 68 at 5), the Court should dismiss this case for insufficient service of

1  process under Rule 12(b)(5). "A federal court is without personal jurisdiction over a defendant unless

2  the defendant has been served in accordance with [Federal Rule of Civil Procedure] 4." *Crowley v.*

3  *Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013).

4      <u>Third</u>, if the Court is disinclined to reconsider its alternative service order, then it must decide

5  whether it has personal jurisdiction over the Bouaziz Defendants before considering the merits of

6  Rippling's claims against them. *See Sinochem*, 549 U.S. at 430–31 (citing *Steel Co. v. Citizens for*

7  *Better Envt.*, 523 U.S. 83, 93–102, 118 (1998)). "A court without personal jurisdiction is powerless

8  to take further action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999); *see also*

9  Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1351 (4th ed.) ("[a]s a general rule, when the court is

10  confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional

11  issues before considering whether a claim was stated by the complaint") (collecting cases).

12      <u>Fourth</u>, if the Court reaches the sufficiency of Rippling's RICO and RICO conspiracy claims,

13  it must then address the substantive shortcomings that require dismissal under Rule 12(b)(6). These

14  include that (a) RICO does not apply extraterritorially to the alleged foreign conduct, and (b) Rippling

15  has not sufficiently alleged that the Bouaziz Defendants proximately caused a cognizable, domestic

16  RICO injury.

17  **III.    STATEMENT OF FACTS**

18      ***Residence.***  As attested in their declarations, Alex Bouaziz has lived in Tel Aviv, Israel since

19  2020 and Philippe Bouaziz has lived in Dubai, United Arab Emirates since 2023.  A. Bouaziz Decl.

20  ¶ 2; P. Bouaziz Decl. ¶ 2.  From 2012 to 2023, Philippe lived in Tel Aviv, Israel.  P. Bouaziz Decl.

21  ¶ 2.  The Bouaziz Defendants are not United States citizens or residents.  A. Bouaziz Decl. ¶¶ 3–4; P.

22  Bouaziz Decl. ¶¶ 3–4.  Contrary to Rippling's assertions, FAC ¶ 18, Philippe has never resided in

23  California or New York, P. Bouaziz Decl. ¶ 4.  Also contrary to Rippling's assertions, FAC ¶ 17 and

24  ECF 102 at 18, Alex has never resided in California, A. Bouaziz Decl. ¶ 4.  Other than occasional,

25  short trips for conferences and other business functions, the Bouaziz Defendants do not work in the

26  United States.  A. Bouaziz ¶ 5; P. Bouaziz ¶ 5.  They have virtually no personal connections to

27  California.  For example, they do not own real property or maintain personal bank accounts here.  A.

28

1    Bouaziz Decl. ¶¶ 6–7; P. Bouaziz Decl. ¶¶ 6–7.  Alex has been to California four times since 2021

2    and stayed an average of less than four days per trip.  A. Bouaziz Decl. ¶ 8.  Philippe has been to

3    California nine times since 2021 and stayed and average of less than five days per trip.  P. Bouaziz

4    Decl. ¶ 8.  Neither has been to California since this lawsuit was filed on March 17, 2025.  A. Bouaziz

5    Decl. ¶ 9; P. Bouaziz Decl. ¶ 9.  Nor is Alex or Philippe alleged to have been physically present in

6    California in connection with any event at issue in this case.

7         If this Court dismisses for FNC in favor of proceedings in Ireland, the Bouaziz Defendants

8    would consent to personal jurisdiction there.  A. Bouaziz Decl. ¶ 10; P. Bouaziz Decl. ¶ 10.

9         **Service.**  On June 19, 2025, Rippling moved this Court for an order permitting it to serve the

10   Bouaziz Defendants by alternative means, claiming falsely that the Bouaziz Defendants "have fled to

11   either Dubai or Israel, and are evading service" and playing "[c]atch me if you can."  ECF 68 at 5.

12   At that time, Rippling knew the Bouaziz Defendants actually resided in those locations.  Rippling

13   alleged as much in its complaint, *see* FAC ¶¶ 17–18, and Deel confirmed the Bouaziz Defendants'

14   exact addresses in Israel and Dubai in its June 13 initial disclosures, *see* ECF 68-3 at 4.  No one "fled"

15   anywhere or attempted to "evade service."  Rippling, however, made no attempt to serve them there.

16   Because the Bouaziz Defendants had not yet appeared in the case, and would be contesting

17   jurisdiction, the Court did not have the benefit of a response from them to Rippling's motion.  One

18   week later, the Court entered Rippling's proposed alternative service order.  ECF 70 (denying service

19   on Deel's counsel but allowing service on Deel's registered corporate agent in Delaware and at the

20   Bouaziz Defendants' corporate email addresses).

21        **Rippling's claims.**  Days before it filed this lawsuit in California, Rippling initiated a related

22   case in Ireland.  *See* Erwin Decl., Ex. A ¶¶ 9–10.  In the Irish case, Rippling initially pleaded broad

23   trade secret theft claims against Keith O'Brien that mirrored those asserted in this case.  *Id.*  Rippling

24   then procured O'Brien's cooperation and sworn affidavit in exchange for a termination agreement

25   and releasing all of its claims against him.  *Id.* ¶¶ 49–51. O'Brien's affidavit is the bedrock of

26   Rippling's allegations in both lawsuits.  *See id.* ¶ 51; FAC ¶ 2 & n.1 (citing O'Brien's affidavit); ECF

27   57-1 (attaching O'Brien's affidavit as Exhibit 1 to FAC).  The first half of O'Brien's affidavit (¶¶ 1–

28

BOUAZIZ DEFENDANTS' MOTION TO DISMISS          CASE NO. 3:25-CV-02576-CRB

1  27) relates to his alleged trade secret theft prior to March 14, 2025, while the second half (¶¶ 28–50)

2  relates to the alleged "cover up" or "false narrative" to conceal his trade secret theft after he was

3  served with an Irish preservation order on March 14, 2025. ECF 57-1. After Deel filed its original

4  FNC motion in this case, ECF 48, Rippling amended its claims in Ireland to "confine" them to the

5  defendants' post-March 14 conduct, *see* Ex. A ¶ 16. Rippling also added Deel and Alex Bouaziz as

6  defendants in the Irish case. *Id.* ¶¶ 4, 6.

7        Rippling's FAC asserts two causes of action against the Bouaziz Defendants: violation of the

8  Racketeering Influenced and Corrupt Organizations ("RICO") Act under 18 U.S.C. § 1962(c) and

9  conspiracy to violate RICO under 18 U.S.C. § 1962(d). FAC ¶¶ 170–88. Rippling's other claims,

10  including its trade secret misappropriation claim, are asserted against Deel only. *Id.* ¶¶ 189–220.

11  **IV.  ARGUMENT**

12      **A.  This Case Should Be Dismissed for *Forum Non Conveniens***

13        As set forth in Deel's FNC Motion, this case belongs in Ireland. The FNC Motion outlines

14  the legal standard and explains (1) why the Court should not defer to Rippling's chosen forum, *see*

15  ECF 88 at 11–12; (2) why Ireland is an appropriate alternative forum, *see id.* at 12–15; and (3) why

16  the public and private interest factors weigh in favor of dismissal, *see id.* at 15–22. The Bouaziz

17  Defendants concur in those arguments and will not burden the Court by restating them. Instead, they

18  write to emphasize certain reasons why the Court should dismiss for *forum non conveniens*.

19        <u>First</u>, at its core, this case is about events that allegedly occurred in Ireland. *See generally*

20  ECF 57-1 (O'Brien's affidavit); *see also, e.g.*, FAC ¶ 2 & n.2 (claiming Rippling Ireland's security

21  team discovered that an employee "in Rippling's Dublin office had been using his internal systems

22  access to gather sensitive data relevant to Deel"), ¶ 24 & n.13 (admitting O'Brien is "a resident of

23  Dublin, Ireland," who was employed by Rippling Ireland); ¶ 67 (admitting "each and every instance

24  of O'Brien accessing [Rippling's] databases" "occurred from Ireland"); ¶¶ 130–156 (outlining alleged

25  cover up relating to Irish proceedings). This factor weighs strongly in favor of FNC dismissal. *See*

26  *Kleiner v. Spinal Kinetics, Inc.*, 2016 WL 1565544, at *5 (N.D. Cal. Apr. 19, 2016) ("The most

27  convenient forum for the purposes of litigation is one that contains most of the evidence and gives

28

1  rise to a plaintiff's cause of action.").  FNC dismissal is especially appropriate as to the Bouaziz

2  Defendants, who do not reside or work in the United States, *see* A. Bouaziz ¶¶ 4–5; P. Bouaziz ¶¶ 4–

3  5, and Rippling does not claim that they committed any relevant act within the United States.

4  Second, most of the key witnesses and evidence are in Ireland.  *See* ECF 88 at 15–19; *Kleiner*,

5  2016 WL 1565544, at *5; *Advanta Corp. v. Dialogic Corp.*, 2006 WL 1156385, at *6 (N.D. Cal. May

6  2, 2006).  The FAC itself suggests that key Irish witnesses Defendants may need to call, besides

7  O'Brien, will include (1) the members of Rippling Ireland's "security team" who supposedly

8  performed an "extensive forensic analysis," which allegedly "showed that a mid-level payroll

9  operations manager in Rippling's Dublin office had been using his internal systems access to gather

10 sensitive data relevant to Deel," FAC ¶ 2 n.2; (2) O'Brien's wife, who allegedly spoke with a Deel

11 representative for "45 minutes to an hour" about "the story Deel had fabricated for O'Brien," *id.* ¶

12 137; (3) Irish solicitors whom Rippling alleges were used "in furtherance of this scheme," *id.* ¶ 145;

13 (4) Irish individuals with personal knowledge of whether O'Brien was, in fact, "a whistleblower and

14 being harassed by Rippling and needed help," *id.*; and (5) O'Brien's co-workers who can testify about

15 his credibility and Rippling Ireland's controls, policies, and programs, *id.* n.19.  Rippling has not

16 suggested that ***any*** witnesses (including its own employees) would be ***unavailable*** in Ireland, or that

17 any Irish witness other than O'Brien has agreed "voluntarily" to appear in this Court.  There also is

18 significant physical evidence in Ireland.  *E.g.*, *id.* ¶ 149 (O'Brien's personal devices provided to Irish

19 solicitor).  Rippling's alleged "forensic" evidence is in Ireland.  *Id.* ¶ 2 n.2 (Rippling Ireland's

20 "extensive forensic analysis" of "internal systems"), ¶¶ 70, 74, 105 (O'Brien's iCloud account).

21 Other relevant documents are likely in Ireland too.  *E.g.*, *id.* ¶¶ 138–39, 157 (O'Brien's "complaints

22 to the Central Bank of Ireland").  As Deel aptly explains in its FNC Motion, it would be challenging—

23 and maybe impossible—for Defendants to obtain testimony and discovery from Irish witnesses and

24 entities for use in this litigation.  *See* ECF 88 at 16–19 (collecting cases and explaining why

25 Defendants likely could not compel Irish witnesses to testify in this litigation).

26

27

28

<u>Third</u>, Rippling already is litigating the same alleged conspiracy in Ireland.  *See* Ex. A.[2]  Although the existence of a pre-existing parallel proceeding in the alternative forum is not required for FNC dismissal, *see generally Kleiner*, 2016 WL 1565544, Rippling does not dispute that courts routinely dismiss for FNC when claims in one lawsuit substantially overlap with existing claims in another jurisdiction.  In fact, Rippling cites such cases.  *See* ECF 102 at 16–17; *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10–*13 (N.D. Cal. Aug. 10, 2021) (dismissing for FNC after finding "substantial overlap" with ongoing Canadian litigation); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008) (similar).  Rippling's Irish action substantially overlaps with this action.  As explained above, Rippling is suing Deel and Alex Bouaziz in both cases.  Both actions allege the same underlying trade secret theft and conspiracy.  Both actions allege an unlawful cover up of the supposed scheme.  Both actions rely principally on the testimony of Keith O'Brien, and his affidavit, which Rippling procured by offering him cooperation and termination agreements that defendants will need to explore in discovery.  Both actions involve the same sources of physical evidence—including O'Brien's devices, employment agreements, and communications—and many of the same witnesses from Rippling, Rippling Ireland, Deel, and O'Brien's personal and business circles.  *See supra* § III.  The discovery requests and legal issues expected to arise will surely overlap.  Moreover, if this case is not dismissed for FNC, these lawsuits will risk inconsistent judicial findings and outcomes.  For example, one court could find a cover up for a scheme that the other court finds never existed.  Thus, "the duplication of resources and risk of inconsistent rulings that would result from ongoing parallel litigation . . . weighs heavily in favor of dismissal."  *Juniper*, 2021 WL 3514103, at *12 (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001)); *see Van Schijndel*, 434 F. Supp. 2d at 780 (weighing "risks of multiple proceedings, inconsistent").

Rippling's attempt to distinguish its Irish and California lawsuits is unconvincing.  In Ireland, Rippling initially pleaded trade secret claims against O'Brien based on the same allegations it now

---

[2] "In a motion to dismiss for forum non conveniens, the allegations in the complaint need not be accepted as true, and the court may consider evidence outside the pleadings."  *Dickens v. NXP Semiconductors*, 703 F. Supp. 3d 1013, 1019 (N.D. Cal. 2023).

makes against the Bouaziz Defendants—O'Brien's alleged co-conspirators here.  *See* Ex. A ¶ 10 ("As against Mr. O'Brien the Plaintiffs alleged that he had been engaged in a covert course of conduct whereby he had spied for Deel and had provided Deel with the Plaintiffs' trade secrets[.]").  But once faced with Deel's original FNC motion, ECF 48, in an effort to continue seeking RICO treble damages in this Court, Rippling sought to "confine" its claims in the Irish action to the alleged attempts to cover up the scheme and to "create a false narrative" about why Rippling was suing O'Brien.  *Id.* ¶¶ 15–17.  But this case (about the supposed fraudulent scheme and its cover up) and the Irish case (about the alleged cover up of that same scheme) cannot neatly be separated.  Because Rippling's Irish case seeks to prove a conspiracy to cover up O'Brien's alleged trade secret theft and "create a false narrative," the truth or falsity of the underlying alleged trade secret theft will be a hotly contested issue in that case.  Moreover, Rippling's RICO claim in this case is expressly predicated on the alleged "obstruction of justice" that is at the heart of the Irish case.  *Compare* FAC ¶ 2 (alleging Alex "orchestrated a cover up when the scheme began to unravel"), ¶ 7 (alleging Alex, Deel, and others "instructed the spy to destroy evidence and lie"), ¶¶ 130–56 (alleging cover up related to Irish proceedings), ¶ 180 (alleging obstruction of justice predicate act) *with* Ex. A ¶¶ 17–18 (alleging defendants agreed to use "unlawful means to frustrate" Irish court's order and cause O'Brien to "destroy evidence").  Indeed, the FAC dedicates ***13 pages*** to that same alleged conduct, describing the Irish proceedings and surrounding events in detail under the heading "ONCE DEEL'S SPY IS CAUGHT, DEEL ATTEMPTS AN ELABORATE COVER UP, OBSTRUCTION OF JUSTICE, AND DEFLECTION CAMPAIGN." FAC § III, ¶¶ 130–56.

Fourth, Rippling easily can litigate these claims in Ireland.  Not only is it actively litigating its own parallel suit there, but Rippling's European Headquarters are in Dublin.  *See* Brown Decl., Ex. B.  Rippling's significant presence in Dublin dispels any notion that Ireland is an inconvenient forum.  *See SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596, at *12 (C.D. Cal. Jan. 17, 2020).  Nor is California a convenient forum merely because ***Deel*** has a corporate address in San Francisco.  *Contra* ECF 102 at 14.  None of the Individual Defendants lives or works in California;

1    they reside halfway around the world, much closer to Dublin than San Francisco.  A. Bouaziz Decl.

2    ¶ 2; P. Bouaziz Decl. ¶ 2; ECF 68-3 at 5 (Westgarth address).

3        Fifth, Rippling filed this lawsuit in the United States to raise the specter of RICO treble

4    damages and gain leverage over its competitor, Deel.  It initially pleaded broad trade secret theft

5    claims in Ireland, *see* Ex. A ¶¶ 9–10, and dropped those claims only when faced with Deel's FNC

6    Motion.  Rippling's forum shopping is not entitled to deference, and FNC dismissal is proper when a

7    plaintiff cherry picks a forum because it thinks that jurisdiction offers more generous remedies.  *See*

8    *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 537 (S.D.N.Y. 2014).  "[T]he inability to

9    assert a RICO claim in a foreign forum does not preclude a forum non conveniens dismissal."

10   *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991).

11       Sixth, Rippling has sued Deel and Alex Bouaziz in both forums, and defendants should not

12   be forced to defend lawsuits concerning the same basic facts in multiple forums.  *See Contact Lumber*

13   *Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) (affirming FNC dismissal when

14   defendant "would be forced to defend in the United States while simultaneously pressing and

15   defending claims in the Philippines").

16       Seventh, if this Court dismisses for FNC in favor of proceeding in Ireland, the Irish court will

17   have personal jurisdiction over all the parties in this action because the Bouaziz Defendants would

18   consent to personal jurisdiction in Ireland, A. Bouaziz Decl. ¶ 10, P. Bouaziz Decl. ¶ 10, and they

19   understand that Mr. Westgarth would do the same.  Rippling already has sued Deel in Ireland, and

20   Deel is not challenging the Irish court's jurisdiction.  ECF 88-1 ¶ 8.  Courts routinely dismiss for FNC

21   when defendants provide such consent.  *See PT Indopac Perdana Fin. v. Masagung*, 32 F. App'x 932,

22   933 (9th Cir. 2002) (affirming FNC dismissal when defendants "consented to Indonesian jurisdiction

23   as a condition of the district court's forum non conveniens dismissal"); *Kleiner*, 2016 WL 1565544,

24   at *2 (N.D. Cal. Apr. 19, 2016) (dismissing for FNC when "perhaps most significant, Defendant

25   expressly consented to submit itself to German jurisdiction for the purposes of litigating this case")

26   (collecting cases).  Moreover, as discussed in Section IV.C below, Ireland is likely the ***only***

27   jurisdiction that would have personal jurisdiction over all the parties in this action.

28

### B. Alternative Service on the Bouaziz Defendants Was Unwarranted and Cannot Establish Personal Jurisdiction Over Them

Under Federal Rule of Civil Procedure 4(f), a foreign defendant may be served (1) by internationally agreed means of service, such as those authorized by the Hague Convention, (2) in accordance with the foreign country's laws or authority, or (3) "by other means not prohibited by international agreement, as the court orders." Although Rule 4(f)(3) "is an equal means of effecting service of process," the Ninth Circuit has "commit[ted] to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). "A party seeking authorization to serve under Rule 4(f)(3) . . . must 'demonstrate that the facts and circumstances of the present case *necessitate[]* the district court's intervention.'" *Trader Joe's Co. v. Desertcart Trading FZE*, 2023 WL 3959376, at *2 (N.D. Cal. June 12, 2023) (Breyer, J.) (quoting *Rio Props.*, 284 F.3d at 1016) (emphasis added). In *Trader Joe's*, for example, this Court allowed alternative service on a corporate defendant based in the United Arab Emirates only after the plaintiff "made many attempts" to serve the company at "four addresses indicated by filings or investigation reports to be where [the company's CEO] lived or worked, and each was unsuccessful," necessitating the "court's intervention." *Id.* at *1–*2.

Rippling's motion for alternative service pursuant to Rule 4(f)(3) cited these cases, but misrepresented the facts concerning the Bouaziz Defendants. Rippling repeatedly claimed that the Bouaziz Defendants had "fled" California and were "evading service." ECF 68 at 5–8. Those were fabrications. To set the record straight: The Bouaziz Defendants have never resided in California and have not physically been present here since Rippling filed this lawsuit. A. Bouaziz Decl. ¶¶ 4, 9; P. Bouaziz Decl. ¶¶ 4, 9. They certainly did not flee the jurisdiction to evade this lawsuit. Alex has resided in Tel Aviv, Israel since 2020. A. Bouaziz Decl. ¶ 2. Philippe has resided in Dubai since 2023, and resided in Israel from 2012 to 2023. P. Bouaziz Decl. ¶ 2. Importantly, *before* Rippling filed its motion for alternative service, Deel disclosed Alex and Philippe's current addresses in Tel Aviv and Dubai, respectively. *See* ECF 68-3 at 4. Despite this knowledge, Rippling made no attempt

1  to serve the Bouaziz Defendants at those addresses before falsely telling the Court that they were

2  "evading service" and playing "[c]atch me if you can." ECF 68 at 5. Rippling's claim that the

3  Bouaziz Defendants fled from California to the Middle East was based on Deel's 2024 SEC filing,

4  which provides Deel's San Francisco office as a contact address for *all* directors and officers listed in

5  the filing. *Id.* at 6, 11; *see* ECF 68-10 at 2–4. That is completely disingenuous. It would be no

6  different if the undersigned had stated that our clients could be contacted "c/o" our law firm in

7  Washington, D.C., and Rippling claimed the clients had "fled" D.C. because they were not present at

8  our offices. Rippling knows full well that it is standard for companies to provide corporate contact

9  information for their officers in such filings—Rippling did the same for its officers in its own SEC

10 filing. *See* Brown Decl., Ex. C at 1–2.

11        Rippling moved for alternative service under Rule 4(f)(3) presumably because (i) it wanted to

12 skip the procedures mandated by the Hague Convention, to which Israel is a signatory, *see* Brown

13 Decl., Ex. D, and any potential burden associated with serving Philippe in Dubai; and (ii) it wanted

14 to claim it served the Bouaziz Defendants in the United States in an effort to manufacture personal

15 jurisdiction over them. The Bouaziz Defendants have no interest in forcing Rippling to jump through

16 hoops to serve them. Accordingly, they told Rippling's counsel that, notwithstanding Rippling's false

17 statements, they would not challenge service if Rippling agreed not to argue that such service—on

18 Deel's registered agent in Delaware and to their corporate email addresses—conferred personal

19 jurisdiction over the Bouaziz Defendants. *See* Brown Decl., Ex. E. Rippling declined, stating it

20 would "preserve all of [its] available arguments and positions." *Id.* As a matter of law, however,

21 Rippling cannot bootstrap a personal jurisdiction argument onto the Court's Rule 4(f)(3) order

22 permitting alternative service. Rippling cannot manufacture personal jurisdiction over the Bouaziz

23 Defendants merely by sending a summons to a corporate agent in Delaware—where neither of the

24 Bouaziz Defendants lives, works, or is otherwise present—and emailing it to them abroad. *See*

25 *Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Danny M.K. Wong*, 2012 WL 13024801, at *8 (W.D.

26 Wash. Apr. 6, 2012) (service on foreign defendant's attorney in California "does not qualify as service

27

28

1  in the United States" for purposes of personal jurisdiction in RICO case); *Cascade Yarns, Inc. v.*

2  *Knitting Fever, Inc.*, 2011 WL 1042578, at *1–*2 (W.D. Wash. Mar. 18, 2011) (similar).

3      In any event, given that Rippling obtained the Court's alternative service order under these

4  false pretenses and could not have shown that "that the facts and circumstances of the present case

5  necessitate[d] the district court's intervention," *Trader Joe's*, 2023 WL 3959376, at *2, the Court

6  should reconsider its alternative service order and dismiss the claims against the Bouaziz Defendants

7  for insufficient service of process under Rule 12(b)(5).  Alternatively, the Bouaziz Defendants are

8  willing to accept service, provided that Rippling is not permitted to argue that such acceptance confers

9  (or is even relevant to) personal jurisdiction over them.

10      **C.**    **This Court Lacks Personal Jurisdiction Over the Bouaziz Defendants**

11      Regardless of whether alternative service was proper, the Court should dismiss Rippling's

12  claims against the Bouaziz Defendants for lack of personal jurisdiction under Rule 12(b)(2).  Plaintiff

13  has the burden to make a "prima facie showing of personal jurisdiction to overcome a 12(b)(2)

14  motion." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  "Bare bones assertions of

15  minimum contacts with the forum . . . will not satisfy a plaintiff's pleading burden." *Id.* (cleaned up).

16  Moreover, the Court "may not assume the truth of allegations in a pleading which are contradicted by

17  affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Personal

18  jurisdiction can be either general or specific.  *Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco*

19  *Cnty.*, 582 U.S. 255, 262 (2017).  In this case, Rippling fails to show either.

20
21      **1.**    **The Bouaziz Defendants Are Not Subject to General Jurisdiction in California**

22      General jurisdiction exists "only if the defendant is 'essentially at home' in the forum state."

23  *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 934 (N.D. Cal. 2024) (Breyer,

24  J.) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "[A]n

25  individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co. v. Montana*

26  *Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

27
28

1      Rippling's FAC does not allege that the Bouaziz Defendants are "at home" or domiciled in

2 California, or even that they were present in California during the events alleged.  As attested in their

3 declarations, Alex lives and works in Israel and Philippe lives and works in Dubai.  A. Bouaziz Decl.

4 ¶ 2; P. Bouaziz Decl. ¶ 2.  The Bouaziz Defendants are not United States citizens and do not work or

5 reside anywhere in the United States.  A. Bouaziz Decl. ¶¶ 3–5; P. Bouaziz Decl. ¶¶ 3–5.  Other than

6 a few brief business trips over the last several years, the Bouaziz Defendants have no personal

7 connections to California; for example, they do not own real property or maintain personal bank

8 accounts here.  A. Bouaziz Decl. ¶¶ 6–7; P. Bouaziz Decl. ¶¶ 6–7.  They unquestionably are not

9 subject to general jurisdiction here.

10      Rippling alleges that Deel's 2024 SEC filing provided Deel's corporate San Francisco address

11 as the contact information for ***all*** of Deel's listed officers, including Alex and Philippe.  FAC ¶¶ 17–

12 18 & ns.8–9; *see* ECF 68-10 at 2–4.  This, however, does not remotely subject the Bouaziz Defendants

13 to general jurisdiction in California.  The Bouaziz Defendants do not work at that corporate address.

14 A. Bouaziz Decl. ¶ 2; P. Bouaziz Decl. ¶ 2.  In fact, Deel does not have an actual office in San

15 Francisco, and does not run its company operations out of California.  ECF 48-2 ¶ 7.  Moreover, as a

16 matter of law, officers of California companies are not subject to personal jurisdiction in California

17 based merely on their corporate titles.  *See Glob. Commodities Trading Grp., Inc. v. Beneficio de*

18 *Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum

19 contacts to each of the corporation's employees.  Instead, we assess whether each individual had

20 minimum contacts with the forum such that the exercise of jurisdiction over that individual would

21 comport with traditional notions of fair play and substantial justice."); *Davis v. Metro Prods., Inc.*,

22 885 F.2d 515, 520 (9th Cir. 1989); *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 825 (N.D. Cal.

23 1992) (rejecting attempt to "establish personal jurisdiction over this individual on nothing more than

24 his corporate title"); *SiFi Networks Fullerton, LLC v. Berkshire Hathaway Specialty Co.,* 2025 WL

25 1544099, at *4 (C.D. Cal. Apr. 25, 2025) (similar); *Hendricks v. New Video Channel Am.*, LLC, 2015

26 WL 3616983, at *4 (C.D. Cal. June 8, 2015) (Canadian CEO who listed his company's California

27 address in a statement of information not subject to general jurisdiction in California).

28

1
2

### 2.     The Bouaziz Defendants Are Not Subject to Specific Jurisdiction in California

This Court lacks specific jurisdiction over the Bouaziz Defendants.  "Due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (cleaned up).  The Ninth Circuit employs a three-part test to determine whether a foreign defendant has sufficient contacts with the forum state to be subject to personal jurisdiction: "[a] The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof . . .; [b] the claim must be one which arises out of or relates to the defendant's forum-related activities; and [c] the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.*  "The plaintiff has the burden of proving the first two prongs.  If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1211–12 (cleaned up).

For purposes of establishing sufficient contacts, Rippling cannot lump the Bouaziz Defendants together or with other defendants or participants in the alleged RICO enterprise.  "Plaintiff bears the burden to show that each of the individual defendants purposefully directed their activities to California and that plaintiff's RICO claim . . . arises from or relates to those California-related activities." *Ogdon v. Grand Canyon Univ., Inc.*, 2022 WL 846973, at *14 (E.D. Cal. Mar. 22, 2022) (no express aiming where COO, CFO, and CEO allegedly directed racketeering enterprise, controlled and participated in its activity, and approved payments to individuals in California).

### a.     The Bouaziz Defendants Did Not Purposefully Direct Any Conduct at California

Purposeful direction requires that a defendant "[1] committed an intentional act, [2] expressly aimed at the forum state, [3] causing harm that the defendant knows is likely to be suffered in the forum state." *X Corp.*, 724 F. Supp. 3d at 935 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)).  The second factor—express aiming—often is the "determinative question." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).  The Bouaziz Defendants dispute, in Section IV.D below, Rippling's allegations that they intentionally committed an unlawful

act and proximately caused Rippling harm; they focus here on Rippling's failure to show that they "expressly aimed" any conduct at California.

"The express aiming inquiry centers on whether the defendant specifically targeted the forum state." *X Corp.*, 724 F. Supp. 3d at 936 (citations omitted). Critically, a defendant does not "purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows that the person resides there." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *Marani v. Cramer*, 2024 WL 1511329, at *5 (N.D. Cal. Feb. 2, 2024), *report and recommendation adopted*, 2024 WL 3740127 (N.D. Cal. Mar. 27, 2024) (defendant's emails setting up companies used to facilitate fraud against victim whom defendant knew resided in California did not connect defendant to forum (as opposed to resident) in "a meaningful way"). A defendant's "express aiming must consist of more than the knowledge that [plaintiff's] principal place of business is in California." *X Corp.*, 724 F. Supp. 3d at 941.

Tellingly, the FAC includes no personal jurisdiction allegations as to the Bouaziz Defendants. *See* FAC ¶¶ 36–38 ("Jurisdiction and Venue"). Nor does Rippling allege ***any*** contacts between Philippe and California. For Alex, the only California contact even arguably alleged is that an unnamed Deel employee ("Conspirator-2"), whom Rippling claims is a California resident, shared Rippling's information and "boast[ed] about this activity to Deel employees, including Deel CEO Alex Bouaziz." FAC ¶¶ 28, 50. A single allegation of a one-way communication from a California resident to Alex overseas does not describe conduct by Alex at all, and plainly is insufficient to establish that Alex expressly aimed conduct at California. *See Gelasio v. Zafar*, 2024 WL 4634058, at *8 (N.D. Cal. Oct. 30, 2024) ("contacts that occurred because a California resident reached out to [defendant] via electronic communication" were insufficient to establish express aiming).

Instead, Rippling's principal allegation is that Alex recruited O'Brien, a Dublin-based employee of Rippling's indirectly owned Irish subsidiary, to spy on Rippling, and that Philippe facilitated payments to O'Brien. FAC ¶¶ 56–65. Rippling does not allege that any of this activity occurred in California; to the contrary, it alleges that "each instance" of O'Brien accessing Rippling's databases at Alex's supposed direction "occurred from Ireland." *Id.* ¶ 67. As discussed, during the

1  relevant timeframe, Alex lived and worked in Israel, A. Bouaziz Decl. ¶ 2, and Philippe lived and

2  worked in Dubai, P. Bouaziz Decl. ¶ 2.  Rippling alleges a single instance of O'Brien—again, acting

3  from Ireland—stealing information related to an unnamed Rippling customer based in San Francisco.

4  *Id.* ¶ 107.  Accepting the FAC's allegations as true, the location of this customer was random and

5  fortuitous.  Rippling does not allege that the Bouaziz Defendants requested information about this

6  specific California customer or even knew where this customer was located.  In Rippling's telling,

7  O'Brien accessed "over 50 different Slack channels dedicated to specific Rippling customers."  *Id.* ¶

8  106; *see also X Corp.*, 724 F. Supp. at 941 ("random, isolated, or fortuitous" connection cannot

9  establish express aiming).

10  Rippling does not claim the Bouaziz Defendants engaged in any communication or transaction

11  with any supposed victim or customer in California.  In any event, acts committed abroad to lure a

12  single California customer from Rippling—a causal connection Rippling does not make, *see infra*

13  Section IV.D—would be too tenuous to establish specific personal jurisdiction.  *See Sarkis v. Lajcak*,

14  425 F. App'x 557, 559 (9th Cir. 2011) ("[P]hone calls and other communications to a forum resident

15  are not sufficient acts to authorize the exercise of personal jurisdiction."); *Gelasio*, 2024 WL 4634058,

16  at *12 ("[C]ommunication with two potential customers who are California residents is insufficient

17  for purposes of specific personal jurisdiction.").

18  Rippling thus fails to satisfy the first prong of the specific jurisdiction test because the Bouaziz

19  Defendants did not purposefully direct any alleged conduct at California.  Accordingly, the Court

20  "need not address whether the suit arises out of [the Bouaziz Defendants'] forum-related activities,

21  or whether the exercise of jurisdiction would be reasonable."  *Picot*, 780 F.3d at 1213 n.2.  For the

22  avoidance of doubt, however, Rippling fails to satisfy those prongs too.

23  ### b.    Rippling's Claims Do Not Arise Out of The Bouaziz Defendants' Contacts with California

24  Under the second prong, courts assess whether a plaintiff's claims "arise out of" the

25  defendant's contacts with the forum state.  *Bristol-Myers*, 582 U.S. at 255 (cleaned up).  This requires

26  "a connection, relationship, or nexus between the plaintiff's claims and the defendant's contacts with

27  the forum."  *X Corp.*, 724 F. Supp. 3d at 943 (citation omitted) (defendant's sharing of login

28

1    credentials from Europe with another European party was not connected to California, therefore

2    plaintiff's claims did not arise out of defendant's California contacts).  In this case, as discussed,

3    Rippling alleges that its claims arise out of conduct allegedly committed by the Bouaziz Defendants

4    and others abroad, chiefly O'Brien's conduct "from Ireland." FAC ¶ 67.  As such, its claims lack the

5    requisite "connection, relationship, or nexus" to the Bouaziz Defendants' contacts with California.

### c.    Exercising Personal Jurisdiction Over the Bouaziz Defendants Would Be Unreasonable

8         It would be unreasonable to exercise personal jurisdiction over the Bouaziz Defendants.

9    "Courts use seven factors to evaluate whether jurisdiction would be reasonable: [1] the extent of the

10    [defendant's] purposeful interjection into the forum state; [2] the burden on the defendant of

11    defending in the forum; [3] the extent of conflict with the sovereignty of the defendant's state; [4] the

12    forum state's interest in adjudicating the dispute; [5] the most efficient judicial resolution of the

13    controversy; [6] the importance of the forum to the plaintiff's interest in convenient and effective

14    relief; and [7] the existence of an alternative forum." *X Corp.*, 724 F. Supp. 3d at 943–44 (quoting

15    *Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)).  The

16    Supreme Court has made clear that this prong of the specific personal jurisdiction analysis also must

17    focus on "the defendant, the forum, and the litigation," not the plaintiff.  *Id.* (quoting *Walden*, 571

18    U.S. at 284).

19         The first factor—purposeful interjection—overlaps with the purposeful direction prong and

20    weighs in favor of the Bouaziz Defendants for the same reasons discussed above.  *See supra*

21    § IV.C.2.a.  The Bouaziz Defendants' only alleged contact with California—that they are officers of

22    Deel, which listed its principal place of business as San Francisco, but has no physical office and does

23    not run its company operations from California, *see* ECF 48-2 ¶¶ 6–7—does not qualify as purposeful

24    interjection.  *Corwin v. Swanson*, 2010 WL 11598013, at *5 (C.D. Cal. Apr. 27, 2010) (company's

25    interjection "is not imputable to Defendants simply because they are officers of the company").  The

26    second factor also weighs in favor of the Bouaziz Defendants, who would face a significant,

27    unnecessary burden from being forced to defend in a forum halfway around the world from their

28

1    homes and workplaces, especially when Ireland is the appropriate "alternative forum" for the "most

2    efficient judicial resolution" of this controversy.  *See supra* § IV.A.  The fifth and seventh factors

3    therefore also weigh in favor of the Bouaziz Defendants.  The third and fourth factors are neutral;

4    although there may not be a sovereignty conflict with the Individual Defendants' states, Ireland has a

5    greater interest in adjudicating this dispute because the alleged misconduct occurred there.  Moreover,

6    in the personal jurisdiction analysis, the "Ninth Circuit gives little weight to a plaintiff's interest in

7    the forum."  *X Corp.*, 724 F. Supp. 3d at 945 (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero L.*

8    *Grp.*, 905 F.3d 597, 609 (9th Cir. 2018)).  Therefore, the sixth factor cannot tip the balance in favor

9    of exercising personal jurisdiction.

10
11    ### 3.    The Bouaziz Defendants Are Not Subject to Personal Jurisdiction Under Rule 4(k)(2)

12    Rippling may argue that this Court can exercise personal jurisdiction over the Bouaziz

13    Defendants based on their contacts with the United States as a whole under Rule 4(k)(2).  Not so.

14    Rule 4(k)(2) provides:  "For a claim that arises under federal law, serving a summons or filing a

15    waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject

16    to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent

17    with the United States Constitution and laws."  "The due process analysis," under Rule 4(k)(2), "is

18    identical to the one discussed above when the forum was California, except here the relevant forum

19    is the entire United States."  *Pebble Beach*, 453 F.3d at 1159.

20    The only additional allegations Rippling makes about the Bouaziz Defendants' contacts with

21    the United States are that (i) the Bouaziz Defendants directed O'Brien to access Rippling's databases,

22    which happened to be hosted on servers in the United States, FAC ¶¶ 67, 176; and (ii) the Bouaziz

23    Defendants "used wires in interstate and foreign commerce, including a Revolut transfer that, on

24    information and belief, transited through the United States banking system," *id.* ¶176.

25    Such contacts are insufficient to establish personal jurisdiction.  Many courts, including this

26    one, have held that "[t]he mere location of servers cannot establish personal jurisdiction."  *X Corp.*,

27    724 F. Supp. 3d at 940 (collecting cases).  In *X Corp.*, this Court held that a foreign defendant's

28

1    "facilitating of [another's] access to servers that happen to be in the United States is not a connection

2    with the forum created by [defendant's] own conduct.  Rather, it is the kind of random, isolated, or

3    fortuitous connection that does not establish express aiming."  724 F. Supp. 3d at 940–41 (cleaned

4    up).  The Ninth Circuit similarly has rejected a "'server' theory of domestic conduct," "[g]iven the

5    ubiquity of server connections to and through the United States."  *Daramola v. Oracle Am., Inc.*, 92

6    F.4th 833, 842 (9th Cir. 2024).  Rippling's allegations that the Bouaziz Defendants indirectly (through

7    O'Brien) accessed databases, which happened to be hosted on servers in the United States, cannot

8    establish personal jurisdiction over them.

9        Rippling's allegation "on information and belief" that the Bouaziz Defendants used wires that

10    "transited through the United States banking system," FAC ¶ 176, likewise is too attenuated to

11    establish personal jurisdiction.  Rippling specifies only one such transfer, through Revolut, a British

12    financial technology company authorized by the Bank of Lithuania and the European Central Bank

13    and regulated by the Central Bank of Ireland.  FAC ¶ 64 (disclaimer at bottom of screenshot), ¶ 176.

14    In any event, "wire transfers or similar contacts in particular are generally insufficient, by themselves,

15    to create personal jurisdiction."  *S.H. Silver Co. Inc. v. David Morris Int'l*, 2008 WL 4058364, at *4

16    (N.D. Cal. Aug. 28, 2008) (Breyer, J.) (collecting cases); *see also Ansah v. Regime PPE*, 2022 WL

17    19827373, at *3 (C.D. Cal. Feb. 10, 2022) (same).  Similarly, the use of cryptocurrency exchanges is

18    insufficient to create personal jurisdiction in California.  *Gelasio*, 2024 WL 4634058, at *5.

19        **D.    Rippling Fails to State a RICO Claim Against the Bouaziz Defendants**

20        The Court should dismiss Rippling's RICO claims against the Bouaziz Defendants for failure

21    to state a claim under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

22    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

23    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

24    570 (2007)).  Rippling has not met this standard.

25        The Bouaziz Defendants concur in Deel's arguments that Rippling fails to state a RICO or

26    RICO conspiracy claim because Rippling has not sufficiently alleged predicate offenses with

27    particularity, a pattern of racketeering, or an enterprise, and they will not burden the Court by restating

28

those arguments.  *See* ECF 89 at 13–18; *Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020); *Gjovik v. Apple Inc.*, 2024 WL 2309100, at *9–*11 (N.D. Cal. May 20, 2024).  Instead, they write to emphasize additional deficiencies in Rippling's RICO claims as pleaded against the Bouaziz Defendants.

### 1.    Count I Fails to State a RICO Claim Against the Bouaziz Defendants

Count I alleges a violation of 18 U.S.C. § 1962(c), with the predicate acts being wire fraud and conspiracy to commit the same, theft of trade secrets, and obstruction of justice.  FAC ¶¶ 170–83.[3]  This claim fails for two reasons beyond those discussed in Deel's motion to dismiss: (a) RICO does not apply extraterritorially to the alleged foreign conduct; and (b) Rippling has not sufficiently alleged a cognizable injury proximately caused by the Bouaziz Defendants.

### a.    RICO Does Not Apply Extraterritoriality to the Alleged Conduct

"Claims under the [RICO] Act carry a presumption against extraterritoriality."  *Doe v. Tapang*, 2019 WL 3576995, at *7 (N.D. Cal. Aug. 6, 2019) (citing *RJR Nabisco. Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016)) (dismissing RICO claims with prejudice where alleged conduct "occurred primarily outside of the United States"), *aff'd*, 834 F. App'x 399 (9th Cir. 2021) ("plaintiffs failed to allege sufficient facts . . . to give rise to a plausible inference that defendant's stateside conduct proximately caused" injury).  RICO does not apply to foreign conduct unless the predicate statutes that provide the basis for the RICO claim apply extraterritorially.  *RJR Nabisco*, 579 U.S. at 340.  Thus, Rippling cannot bring a civil RICO claim premised on foreign conduct unless (1) "Congress has provided an unmistakable instruction that the [predicate statute] is extraterritorial," or (2) "the conduct relevant to the [predicate] statute's focus occurred in the United States." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023) (citations omitted).  Rippling cannot pass that test.

---

[3] As a preliminary matter, Rippling relies on 18 U.S.C. § 1349, conspiracy to commit wire fraud, as a predicate offense, FAC ¶ 174, but conspiracy to commit wire fraud is not a RICO predicate offense. *See* 18 U.S.C. § 1961(1)(B) (listing § 1343 wire fraud as predicate offense but not § 1349 conspiracy to commit wire fraud); *Kaul v. Christie*, 372 F. Supp. 3d 206, 250 (D.N.J. 2019).  Tellingly, Rippling did not defend this predicate act in its response to Deel's motion to dismiss. *See* ECF 104 at 16–17.

First, "Congress did not include in the wire fraud statute any language indicating that it applies extraterritorially." *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1129 (N.D. Cal. 2015) (Breyer, J.); *see also United States v. Hussain*, 2017 WL 4865562, at *2 (N.D. Cal. Oct. 27, 2017) (Breyer, J.) ("§ 1343 does not apply extraterritorially"), *aff'd* 972 F.3d 1138 (9th Cir. 2020). The obstruction of justice statute is silent regarding extraterritorial reach, and thus lacks the required "unmistakable instruction." *See* 18 U.S.C. § 1503. And the trade secret theft statute applies extraterritorially only if (i) the offender is a United States citizen or resident, or (ii) "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837. Here, Rippling does not plead that either of these requirements is satisfied as to the Bouaziz Defendants.

Second, RICO cannot apply extraterritorially here because the alleged conduct relevant to the "focus" of the predicate act statutes occurred abroad. *Abitron,* 600 U.S. at 418. The wire fraud statute does not apply extraterritorially unless the defendant "used ***domestic*** wires to perpetuate his fraud." *Hussain*, 972 F.3d at 1140. Importantly, this does not include communications that merely transited through servers in the United States if the start and end points were outside the United States. *See Daramola*, 92 F.4th at 842–43 (rejecting "'server' theory of domestic conduct"); *Los Angeles Turf Club Inc. v. US Racing*, 2024 WL 5423013, at *7 (C.D. Cal. Oct. 18, 2024) (citing *Daramola*, 92 F.4th at 843) (allegations that defendants received bets which pertained to California or originated from California residents were insufficient to demonstrate challenged conduct occurred in California). "Given the ubiquity of server connections to and through the United States, treating such a tenuous connection as sufficient domestic conduct would effectively negate the presumption against extraterritoriality." *Daramola*, 92 F.4th at 842–43 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266, (2010)). Thus, the FAC's allegations about (i) wires that "originat[ed] outside of the United States" and terminated abroad but transited through U.S. servers, *see* FAC ¶ 176; and (ii) payments that "on information and belief, transited through the United States banking system," *id.*, are not ***domestic*** wires. It cannot be that an Irish employee working for an Irish company in Ireland uses domestic wires in the United States every time he logs on for work. The FAC recognizes as much, as it alleges that O'Brien used ***international***, not domestic, wires to access Rippling's

1  databases. *Id.* ¶ 67. The Ninth Circuit's holding in *Daramola* prevents the application of U.S. law to

2  Rippling's alleged facts. *See* 92 F.4th at 842–43.

3      Likewise, the trade secret theft predicate cannot apply extraterritorially in this case because

4  (i) the Bouaziz Defendants are not United States citizens or residents, A. Bouaziz Decl. ¶¶ 3–4; P.

5  Bouaziz ¶¶ 3–4, and (ii) Rippling does not allege that the Bouaziz Defendants committed an act in

6  furtherance of the trade secret offense in the United States. *See* FAC ¶¶ 73–129; *Soelect, Inc. v.*

7  *Hyundai Motor Co.*, 2024 WL 4293911, at *12 (N.D. Cal. Sept. 24, 2024) (Breyer, J.) (analyzing

8  whether "act in furtherance of the offense" occurred domestically and dismissing trade secret theft

9  claim where "the alleged misappropriation happened entirely in South Korea" and there was "no

10  alleged use of the misappropriated data in the United States"). Rippling does not even bring its trade

11  secret claim against the Bouaziz Defendants. *See* FAC ¶¶ 189–99.

12      Finally, the obstruction of justice statute, 18 U.S.C. § 1503(a), does not apply to foreign

13  conduct that allegedly interfered with a foreign proceeding. That statute applies only to alleged

14  interference with U.S. federal proceedings. *See Mazzocco v. Lehavi*, 2015 WL 12672026, at *11

15  (S.D. Cal. Apr. 13, 2015) ("§ 1503 is confined to obstruction of justice claims in the context of

16  influencing or injuring an officer or juror in a proceeding in federal, not state, court"). Here,

17  Rippling's obstruction allegations relate to conduct in Ireland, in connection with the ongoing Irish

18  proceedings, most of which occurred ***before*** Rippling filed this lawsuit. *See* FAC ¶¶ 130–56, 180.

19  To the extent Rippling argues that the alleged obstruction impacts this case because O'Brien is a

20  witness here, that argument cannot be squared with Rippling's representations that O'Brien is its

21  cooperating witness. *See* ECF 102 at 12.

22

23      **b.      Rippling Has Not Alleged the Bouaziz Defendants Proximately**
          **Caused a Cognizable RICO Injury**

24      Rippling has not alleged facts that, if proved, would show the Bouaziz Defendants

25  proximately caused its alleged injury. "[T]o state a claim under civil RICO, the plaintiff is required

26  to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the

27  proximate cause as well.'" *Solar Integrated Roofing Corp. v. Massey*, 2024 WL 4152380, at *11

28

1  (S.D. Cal. Sept. 11, 2024) (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010)).

2  To do so, RICO plaintiffs must show a "direct relation between the injury asserted and the injurious

3  conduct alleged." *Id.* (quoting *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda*

4  *Pharmaceuticals Co. Ltd.*, 943 F.3d 1243, 1249 (9th Cir. 2019)).

5      The crux of Rippling's alleged RICO injury is found in paragraph 183 of the FAC, where it

6  asserts that, "[a]s a direct and proximate result of the pattern of racketeering activity, . . . Rippling has

7  been injured in its business and property, including, but not limited to, loss of trade secrets, drawings,

8  intellectual property, protected business information, equipment, business opportunities, reputation,

9  advantageous business relationships (including customer and employee relationships) and profits."

10  These conclusory allegations about proximate causation are insufficient. *See Palantir Techs., Inc. v.*

11  *Abramowitz*, 2020 WL 9553151, at *5 (N.D. Cal. July 13, 2020) (citing *Iqbal*, 556 U.S. at 678–79)

12  (rejecting "wholly conclusory" allegations of RICO injury and proximate cause that were "devoid of

13  sufficient factual matter").

14      Drilling down on Rippling's allegations of lost business opportunities, Rippling's proximate

15  cause and injury allegations crumble.  The FAC discusses three prospective customers and two

16  existing Rippling customers.  Of the prospective customers, Rippling alleges that Alex Bouaziz

17  contacted one of them (Prospect A), but that customer complained to Rippling about Alex's contact

18  and did not switch to Deel.  FAC ¶¶ 80–84.  As for the two prospective customers it did not gain,

19  Rippling does not allege that the Bouaziz Defendants (or any member of the alleged RICO enterprise)

20  contacted them at all.

21      Moreover, the inference that those customers decided not to do business with Rippling

22  because of information O'Brien misappropriated is entirely speculative.  According to the FAC,

23  Prospect B was "an existing Deel customer" and Prospect C was considering both Rippling and Deel

24  before any alleged misappropriation of Rippling's information about Prosect C.  *Id.* ¶ 85.  Of the two

25  then-existing Rippling customers, Customer A switched from Deel to Rippling, *id.*, and Customer B

26  switched from Rippling to Deel, *id.* ¶ 107.  Again, Rippling does not allege that the Bouaziz

27

28

24

1  Defendants (or any member of the alleged RICO enterprise) contacted Customer B.[4]  As the Supreme

2  Court has explained, "[b]usinesses *lose and gain customers for many reasons*, and it would require

3  a complex assessment to establish what portion of [plaintiff's] lost sales were the product of

4  [defendant's conduct]."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (emphasis

5  added).  Accordingly, in *Anza*, the Supreme Court affirmed the dismissal of a RICO claim for failure

6  to plead facts establishing proximate causation because the plaintiff's "lost sales could have resulted

7  from factors other than [defendant's] alleged acts of fraud."  547 U.S. at 459.  In the wake of *Anza*,

8  courts in this Circuit likewise have dismissed RICO claims because allegations of lost customers are

9  too speculative.  In *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*,

10  the court found that the plaintiff law firm failed to plausibly allege that a competing lawyer's false

11  advertisements and misrepresentations about the plaintiff proximately caused any of the alleged

12  harms—including the loss of an existing customer—because the "decision to conclude a business

13  relationship with [the plaintiff law firm] could have occurred for any number of alternative reasons

14  beyond" the alleged misconduct.  2019 WL 4277431, at *1, *10–*11, *16 (S.D. Cal. Sept. 10, 2019).

15  Accordingly, the RICO claim was dismissed.  *Id.* at *16.  Likewise, in *Marshall v. Goguen*, the court

16  held that "loss of prospective . . . contracts and the commissions [plaintiffs] would receive from those

17  contracts are not cognizable RICO injuries" because "any loss is purely speculative."  604 F. Supp.

18  3d 980, 1005 (D. Mont. 2022); *see id.* at 1008 ("A RICO plaintiff cannot circumvent the proximate-

19  cause requirement simply by claiming that the defendant's aim was to increase market share at a

20  competitor's expense.").

21      Even if Rippling had alleged a concrete financial injury proximately caused by the Bouaziz

22  Defendants, much of its alleged injury is not *domestic*.  A RICO plaintiff must allege and prove

23  a "domestic injury to its business or property.'"  *Yegiazaryan v. Smagin*, 599 U.S. 533, 541 (2023).

24      Rippling does not, for example, allege where Prospects B and C are located.  FAC ¶ 85.

25  Rippling's generalized allegations about the asserted loss of its trade secrets do not automatically

26

27  _____

[4] Notably, Rippling did not mention Customer B as an example of a lost customer in its opposition to
28  Deel's motion to dismiss.  *See* ECF 104 at 18–20.

1  describe a domestic injury merely because Rippling is a U.S. company.[5]  *See Licht v. Binance*

2  *Holdings Ltd.*, 2025 WL 625303, at *37, *42 (D. Mass. Feb. 5, 2025) (dismissing domestic plaintiffs'

3  RICO claim for failure to plead domestic injury because alleged harm arose out of international wire

4  communications), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025);

5  *United States ex rel. Hawkins v. ManTech Int'l Corp.*, 2023 WL 12004444, at *24 (D.D.C. June 20,

6  2023) (no domestic injury where alleged harm was "intangible" and "injury 'arose' outside of the

7  United States").  At least some of Rippling's alleged trade secrets concerned products and customers

8  ***outside*** the U.S.  *See, e.g.* FAC ¶¶ 89, 91–98 (information about Rippling's ***French*** products and

9  ***French*** employees).  For most alleged trade secrets, the FAC does not plead ***any*** facts showing they

10  were developed by or for Rippling's U.S. business, customers, or employees.[6]

11
12
>          **2.      Count II Fails to State a RICO Conspiracy Claim Against the Bouaziz Defendants**

13          Count II alleges that the Bouaziz Defendants were part of a RICO conspiracy in violation of

14  18 U.S.C. § 1962(d).  FAC ¶¶ 184–88.  That claim fails for the same reasons as the substantive RICO

15  claim.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[F]ailure to adequately

16  plead a substantive violation of RICO precludes a claim for conspiracy.").

17  **V.    CONCLUSION**

18          For the foregoing reasons, Rippling's claims against the Bouaziz Defendants should be

19  dismissed with prejudice.

20
21
22
23

24  [5] Rippling alleges that it owns the trade secrets.  FAC ¶ 190.  But in the Irish case, Rippling alleges

25  that both Rippling ***and Rippling Ireland*** owned the trade secrets that O'Brien allegedly misappropriated.  Ex. A ¶ 10 (alleging that O'Brien gave Deel "***Plaintiffs'*** trade secrets"—meaning Rippling and Rippling Ireland (emphasis added)).

26  [6] Rippling's opposition to Deel's FNC Motion claims that "Rippling developed the trade secrets

27  here"—meaning California.  ECF 102 at 8.  Rippling did not cite anything in support of that statement, and the Bouaziz Defendants have found no such allegation in the FAC.

28

1

2   DATED: August 22, 2025                Respectfully submitted,

3
                                         By:  */s/ Joseph G. Petrosinelli*
4                                        Joseph G. Petrosinelli (*pro hac vice*)
                                         jpetrosinelli@wc.com
5                                        Kenneth Brown (*pro hac vice*)
                                         kbrown@wc.com
6                                        Danielle J. Sochaczevski (*pro hac vice*)
                                         dsochaczevski@wc.com
7                                        Lydia A. Weiant (*pro hac vice*)
                                         lweiant@wc.com
8                                        **WILLIAMS & CONNOLLY LLP**
                                         680 Maine Avenue, SW
9                                        Washington, DC 20024
                                         Telephone: (202) 434-5000
10                                       Facsimile: (202) 434-5029

11                                       Jeffrey Davidson (Bar No. 248620)
                                         jdavidson@cov.com
12                                       Isaac D. Chaput (Bar No. 326293)
                                         ichaput@cov.com
13                                       **COVINGTON & BURLING LLP**
                                         415 Mission Street, Suite 5400
14                                       San Francisco, CA 94105
                                         Telephone:    (415) 591-6000
15                                       Facsimile:    (415) 591-6091

16
                                         *Counsel for Specially Appearing Defendants Alexandre*
17                                       *and Philippe Bouaziz*

18

19

20

21

22

23

24

25

26

27

28

BOUAZIZ DEFENDANTS' MOTION TO DISMISS                    CASE NO. 3:25-CV-02576-CRB