| | |
|---|---|
| 1 | LANCE A. ETCHEVERRY (SBN 199916) |
| | lance.etcheverry@skadden.com |
| 2 | JACK P. DICANIO (SBN 138782) |
| | jack.dicanio@skadden.com |
| 3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | 525 University Avenue |
| 4 | Palo Alto, California 94301 |
| | Telephone: (650) 470-4500 |
| 5 | Facsimile: (650) 470-4570 |
| 6 | JASON D. RUSSELL (SBN 169219) |
| | jason.russell@skadden.com |
| 7 | ADAM K. LLOYD (SBN 307949) |
| | adam.lloyd@skadden.com |
| 8 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| | 2000 Avenue of the Stars, Suite 200N |
| 9 | Los Angeles, California 90067 |
| | Telephone: (213) 687-5000 |
| 10 | Facsimile: (213) 687-5600 |

*Counsel for Defendant Deel, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**REPLY IN SUPPORT OF DEEL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY ACTION FOR FORUM NON CONVENIENS**<br><br>Compl. Filed: March 17, 2025<br>Am. Compl. Filed: June 5, 2025<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6<br>Hearing Date: September 19, 2025<br>Hearing Time: 10:00 a.m. |

**SUMMARY OF ARGUMENT**

As required by this Court's Standing Order, Deel provides the following Summary of Argument. This Reply is filed in support of Deel's Motion to Dismiss Rippling's FAC or Stay this Action for Forum Non Conveniens (ECF 88, the "Motion" or "Mot."),[1] and argues that the Court should dismiss or stay Rippling's FAC in favor of proceedings in Ireland for the reasons stated in Deel's Motion and the following reasons:

- Deel showed that, because "forum non conveniens considerations weigh heavily in favor of dismissal" and an Irish court is "the more suitable arbiter of the merits," this Court should decide the FNC Motion first. *See* Mot. §I (collecting cases). Rippling does not dispute this point.

- Ireland is an adequate alternative forum for Rippling's claims. *See infra* §II. Deel showed, and Rippling does not dispute, that (1) Ireland offers an adequate remedy for all its claims here, and (2) Rippling has already acknowledged Ireland is an adequate alternative forum when it and its Irish subsidiary initiated the Irish Proceedings. *See* Mot. §II (collecting cases). Deel is already actively litigating Rippling and Rippling Ireland's claims in the Irish Proceedings, and all three of the Individual Defendants have consented to personal jurisdiction in the Irish courts relating to the matters at issue in this action, if this action is dismissed for forum non conveniens. *See* ECF 111-1 ¶10; ECF 111-2 ¶10; ECF 112-2 ¶8; *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1225 (9th Cir. 2011). Indeed, because the Individual Defendants are all contesting personal jurisdiction in *this* Court, Ireland is the *only* forum that indisputably would have jurisdiction over all parties in the event of a forum non conveniens dismissal, which strongly favors such a dismissal here. *See generally* ECF 111 §IV.C; ECF 112 §II.B.

- The private interest factors weigh in favor of dismissal here. Deel's authority showed that "the most important private interest factor is the relative availability of evidence and witnesses," and where, as here, the claims turn on "the mental state" of non-party witnesses, dismissal is warranted when "there is no reason to think that they would voluntarily travel to the United States to testify in a case in which they are accused of lying." Mot. §III.A (collecting cases). Here, Rippling's claims arise from an Irish citizen's alleged conduct while working for Rippling's Irish subsidiary

---

[1] Unless otherwise noted, this Reply uses the same defined and abbreviated terms that Deel used in its Motion (ECF 88). Further, unless otherwise noted, in quoted material, all emphasis is added, and all internal citations, punctuation, and alterations are omitted for ease of reading.

i

in Ireland, and turn on his testimony (and credibility). Rippling's alleged "cooperation agreement" with O'Brien does not overcome the indisputable fact that this Court has no ability to compel O'Brien's attendance should O'Brien change his mind or breach that supposed agreement. *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (cited by Rippling). Rippling also elides Deel's showing that the alleged wrongdoing occurred in Ireland, the material witnesses are in Ireland or abroad, the "forensic evidence" is in Dublin, Rippling's European headquarters are in Dublin, Rippling Ireland is in Dublin, Deel has a corporate presence in Ireland and already consented to Irish jurisdiction to litigate the same conduct Rippling alleges here, and the Individual Defendants indisputably reside significantly closer to Ireland than California. *Infra* §III.A. Rippling has not set forth any evidence to show that the claims at issue here have any material connection to California, that any material witnesses reside here, or that there is any evidence here.

- Furthermore, Deel established that courts routinely dismiss actions where, as here, there is likely "duplication of cost and effort, as well as the risk of inconsistent rulings, that would result from allowing the two cases to proceed on parallel tracks" from overlapping claims, witnesses, and factual determinations in two forums. Mot. §III.B (collecting authority). Rippling does not meaningfully engage with Deel's authority, other than insisting that unlike in Deel's cases, the Irish Proceedings have "nothing to do with Rippling's claims in this proceeding" because the Irish Proceedings supposedly address only the alleged "obstruction of an Irish court order." ECF 102 (the "Opposition" or "Opp.") ii, 8. The history of the Irish Proceedings show that Rippling's characterization is misleading at best, *see infra* §III.B., and in any event, its purported distinction is further belied by Rippling's own FAC, where it dedicated *thirteen pages* to alleging that same "obstruction of justice" *in Ireland* as a predicate act for its RICO claim here. *See* FAC ¶¶7, 130-56, 180. As such, there is plainly a "substantial overlap between" the witnesses, evidence, and factual determinations that will need to be made in this action and the Irish Proceedings, which both allege that Deel directed O'Brien to misappropriate Rippling's alleged confidential information from Ireland and then cover it up. *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10-12 (N.D. Cal. Aug. 10, 2021); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001).

- The public interest factors also weigh in favor of dismissal here. *See infra* §IV. Deel showed that the extent of California's local interest in the dispute is the presence of two Delaware corporations with current principal business places here (although Deel, who does not maintain an actual office in this District in any event, is actively in the process of moving its principal place of business out of state) and "this interest is slight compared to the time and resources [this Court] would expend if it were to retain jurisdiction." Mot. 14. In response, Rippling focuses (as it must) purely on this corporate formality, but does not introduce any evidence connecting the events at issue here with California in any substantive way.

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................................v

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    Rippling Does Not Dispute And Thus Concedes The FNC Motion Should Be Decided First ......................................................................................................................2

    II.    Because All Defendants Would Consent To The Irish Court's Jurisdiction Should This Motion Be Granted, Ireland Is An Adequate Alternative Forum ...............................2

    III.    The Private Interest Factors Weigh In Favor Of Dismissal ..................................................3

        A.    Rippling Fails To Overcome Deel's Showing That Key Witnesses And Evidence Are In Ireland And Abroad ........................................................................3

        B.    Rippling's Efforts To Downplay Its Parallel Litigation In Ireland Fall Flat ...........9

    IV.    The Public Interest Factors Weigh In Favor Of Dismissal ................................................11

CONCLUSION ...........................................................................................................................13

**TABLE OF AUTHORITIES**

**PAGE(S):**

**CASES**

*Activision Publishing, Inc. v. EngineOwning UG*,
    No. CV 22-0051-MWF (JCx),
    2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) ..................................................................3

*Ayco Farms, Inc. v. Ochoa*,
    862 F.3d 945 (9th Cir. 2017) .........................................................................................1

*Besson v. Blackpills, Inc.*,
    No. CV 17-4578 PA (JEMx),
    2017 WL 10434368 (C.D. Cal. Oct. 20, 2017).............................................................3

*Boston Telecommunications Group, Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) .......................................................................................5

*Bundy v. Nirvana L.L.C.*,
    No. CV 21-3621 DSF (MAAx),
    2021 WL 5822127 (C.D. Cal. Oct. 21, 2021).............................................................12

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ...........................................................................1, 2, 3, 7, 12

*City of Almaty v. Khrapunov*,
    685 F. App'x 634 (9th Cir. 2017) .................................................................................8

*Cooper v. Tokyo Electric Power Co.*,
    860 F.3d 1193 (9th Cir. 2017) .......................................................................................7

*Cooper v. Tokyo Electric Power Co.*,
    166 F. Supp. 3d 1103 (S.D. Cal. 2015).........................................................................8

*Howard v. Johnson Outdoors Diving, LLC*,
    No. 24cv109-JM-DTF,
    2024 WL 3206912 (S.D. Cal. June 26, 2024)............................................................1, 9

*Juniper Networks, Inc. v. Andrade*,
    No. 20-cv-02360-BLF,
    2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) ...........................................................10

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ..............................................................................3, 4, 10

*Nibirutech Ltd v. Jang*,
    75 F.Supp.3d 1076 (N.D. Cal. 2014) ...................................................................2, 3, 12

*Nova for Information Technology & Consulting v. Environment Systems Research Institute, Inc.*,
   No. 5:24-cv-01474-SSS-SPx,
   2025 WL 1607592 (C.D. Cal. May 7, 2025) ...............................................................................12

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ..........................................................................................................................5

*Quest Nutrition, LLC v. Nutrition Excellence, Inc.*,
   No. 2:18-cv-06976-ODW (E),
   2019 WL 1789880 (C.D. Cal. Apr. 23, 2019) ..................................................................3, 8, 10

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ...........................................................................................................4

*Ryanair DAC v. Booking Holdings Inc.*,
   No. 20-1191-LPS,
   2021 WL 7209367 (D. Del. Dec. 27, 2021) ..................................................................................2

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ........................................................................................................8

*United States Small Business Administration v. Rocket Ventures II, L.P.*,
   No. C 10–04425 JSW,
   2013 WL 57854 (N.D. Cal. Jan. 3, 2013) .....................................................................................8

*Weiner v. Shearson, Hammill & Co.*,
   521 F.2d 817 (9th Cir. 1975) .......................................................................................................10

vi
REPLY ISO MOTION TO DISMISS FAC FOR FORUM NON CONVENIENS     CASE NO.: 3:25-CV-02576-CRB

**PRELIMINARY STATEMENT**

Deel's Motion showed that this action belongs not in this Court, but in Ireland. Rippling's primary argument in response—that Ireland is not an adequate alternative forum because the Individual Defendants are not subject to jurisdiction there—has been eradicated by the sworn declarations from the Individual Defendants consenting to jurisdiction in Ireland if this action is dismissed for forum non conveniens.

Rippling's Opposition selectively quotes the court in *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011), describing the forum non conveniens doctrine (Opp. 5), but omits key language relevant here: "Historically, the doctrine's purpose is to root out cases *in which the 'open door' of broad jurisdiction and venue laws 'may admit those who seek not simply justice but perhaps justice blended with some harassment*,' and particularly cases in which a plaintiff resorts 'to a strategy of forcing the trial at a most inconvenient place for an adversary.'" *Id*. at 1224. Deel showed, and Rippling does not meaningfully refute, that Rippling's filing of this parallel action in this forum is precisely the sort of conduct the doctrine was designed to "root out." Mot. 4-5. And as Rippling's authority further acknowledges, while "[o]rdinarily, a plaintiff's choice of forum will not be disturbed unless the private interest and the public interest factors strongly favor trial in a foreign country… **this deference is 'far from absolute.'**" *Howard v. Johnson Outdoors Diving, LLC*, 2024 WL 3206912, at *4 (S.D. Cal. June 26, 2024) (quoting *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017)) (cited by Rippling).

Rippling cannot and does not materially dispute Deel's showing that key witnesses and evidence are in Ireland, including because the events on which Rippling's claims are based allegedly occurred there. Rippling has already attested to these facts in the duplicative Irish Proceedings, which Rippling now tries to distinguish and even absurdly asserts has "nothing to do with Rippling's claims in this proceeding." Opp. ii; *see infra* §III.A.-B. Instead, Rippling struggles to manufacture some "connections" between this District and (1) its claims, (2) Deel, and/or (3) the Individual Defendants, often without any evidence, or simply citing hearsay social media posts. Rippling insists it cannot be accused of forum shopping (despite the Irish Proceedings) because its headquarters are in this District (Opp. 6), but again, its own authority states that forum-shopping concerns are "appropriately considered in the forum non conveniens analysis," and do not apply only "where Plaintiffs' chosen forum is *both* the defendant's home jurisdiction, *and a forum with a strong connection to the subject matter of the case*." *Carijano*, 643 F.3d at 1229. Because

California has no such "strong connection," Rippling's choice of forum is due little deference here. In sum, because Rippling cannot overcome Deel's showing that the private and public interest factors strongly favor Ireland as a forum, this action should be dismissed for forum non conveniens.

## ARGUMENT

### I. Rippling Does Not Dispute And Thus Concedes The FNC Motion Should Be Decided First

Deel showed that, because "forum non conveniens considerations weigh heavily in favor of dismissal" and an Irish court is "the more suitable arbiter of the merits," this Court should decide the FNC Motion first. Mot. §I (collecting cases). Rippling does not dispute and thus concedes this point. Indeed, Rippling's authority agrees: "[i]f dismissal under forum non conveniens is appropriate, *the court need not address other grounds for dismissal*." *Nibirutech Ltd v. Jang*, 75 F.Supp.3d 1076, 1079 (N.D. Cal. 2014).

### II. Because All Defendants Would Consent To The Irish Court's Jurisdiction Should This Motion Be Granted, Ireland Is An Adequate Alternative Forum

Deel showed, and Rippling understandably does not dispute, that (1) Ireland offers an adequate remedy for all its claims here, and (2) Rippling has already acknowledged Ireland is an adequate alternative forum when it and its Irish subsidiary initiated the Irish Proceedings. Mot. §II (collecting cases); Opp. 7-8. Rippling's sole response is to admit that "Deel consented to jurisdiction in Ireland," but "none of the three Individual Defendants" have provided "clear evidence" they will do the same. Opp. 7-8. This argument crumbles because the three Individual Defendants have each submitted declarations in this action attesting that "[i]f this Court dismisses this action for forum non conveniens in favor of proceedings in Ireland," they—including Philippe Bouaziz and Daniel Westgarth, who have not been named in the Irish Proceedings—will consent to personal jurisdiction in the Irish courts relating to the matters at issue in this action. *See* ECF 111-1 ¶10; ECF 111-2 ¶10; ECF 112-2 ¶8.[2]

As Rippling's authority shows, this "consent to jurisdiction" in Ireland "suffices to meet the first requirement for establishing an adequate alternative forum." *Carijano*, 643 F.3d at 1225; *see also Ryanair DAC v. Booking Holdings Inc.*, 2021 WL 7209367, at *4 (D. Del. Dec. 27, 2021) (holding where

---

[2] If the Irish court has personal jurisdiction over all defendants—which it will, if this Motion is granted—there is no reason to think that enforcing a judgment in Ireland will be problematic. *Carijano*, 643 F.3d at 1235. Rippling does not even buy its own argument that explicit consent to satisfy a judgment is required: It argues that this District is an appropriate forum even though the Individual Defendants have not explicitly consented to satisfy a judgment here. Rippling otherwise does not contest Deel's showing that any judgment obtained in Ireland is enforceable in the United States and that Deel can satisfy any judgment with its Irish assets. Mot. §III.C.

defendants "confirmed" in their reply briefing their consent to jurisdiction "if, and only if, this case is dismissed for forum non conveniens," that "amenability to process in Ireland does not present a meritorious basis to deny Defendants' motion") (cited by Rippling).[3]

In any case, even absent the existing explicit consent, Rippling's authority also shows the Court can "cure[] this problem by imposing appropriate conditions"—i.e., conditioning dismissal on the Individual Defendants submitting to the Irish court's jurisdiction. *Carijano*, 643 F.3d at 1235; *see also Quest Nutrition, LLC v. Nutrition Excellence, Inc.*, 2019 WL 1789880, at *7 (C.D. Cal. Apr. 23, 2019) (holding Canada was an adequate alternative forum where defendant "indicated a willingness to consent to the jurisdiction of Canadian courts as to Quest's claims, and the Court has the power to condition any dismissal for forum non conveniens on such consent") (cited by Rippling).

Ireland is thus an adequate alternative forum. Indeed, because the Individual Defendants are all contesting personal jurisdiction in *this* Court, Ireland is the *only* forum that indisputably would have jurisdiction over all parties in the event of a forum non conveniens dismissal, which strongly favors such a dismissal here. *See generally* ECF 111 §IV.C; ECF 112 §II.B.

### III. The Private Interest Factors Weigh In Favor Of Dismissal

#### A. Rippling Fails To Overcome Deel's Showing That Key Witnesses And Evidence Are In Ireland And Abroad

Deel cited Rippling's allegations and submissions to the Irish court establishing that its claims arise entirely from an Irish citizen's alleged conduct while working for Rippling's Irish subsidiary in Ireland, and turn on his testimony (and credibility). Mot. 2-4. Deel also collected authority showing that "the most important private interest factor is the relative availability of evidence and witnesses," and where, as here, the claims turn on "the mental state" of non-party witnesses, dismissal is warranted when "there is no reason to think that they would voluntarily travel to the United States to testify in a case in which they are accused of lying." Mot. §III.A. In response, Rippling quotes *Lueck v. Sundstrand Corp.*,

---

[3] Rippling's remaining authority is inapposite because the defendants in those actions had made no such showing. *See, e.g.*, *Nibirutech*, 75 F.Supp.3d at 1084 (noting "none of the defendants has consented in writing to being sued in a specific Chinese court with actual connection to the dispute"); *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 3272399, at *19 (C.D. Cal. Apr. 4, 2023) (holding Germany not adequate forum where "[s]everal defendants in this action are not amenable to jurisdiction in Germany (*and have not consented to jurisdiction*)"); *Besson v. Blackpills, Inc.*, 2017 WL 10434368, at *3 (C.D. Cal. Oct. 20, 2017) (noting if defendant "explicitly stipulated to… submit to a foreign jurisdiction, the requirement for establishing availability of an alternative forum would be satisfied" but defendant "did not express a willingness to so stipulate").

236 F.3d 1137, 1146 (9th Cir. 2001) for the proposition that "when 'documents and witnesses in the United States are all under the control of Plaintiffs and Defendants… they can be brought to court, no matter the forum'" (Opp. 12), but omits *Lueck*'s next, much more relevant, sentence: "The documents and witnesses in New Zealand, however, **are not so easily summoned to the United States**." 236 F.3d at 1146.

Rippling concedes, as it must, both the key events in Ireland and O'Brien's presence as a non-party "material witness" there. Opp. 2, 4-5, 10. Rippling nonetheless claims the "cooperation agreement" Rippling coerced O'Brien to sign (under duress, while suffering a documented mental health crisis that Rippling both caused and tried to conceal from this Court (Mot. 2-4)) is somehow enough to overcome the indisputable fact that this Court has no ability to compel O'Brien's attendance should O'Brien change his mind or breach the agreement. Opp. 10-11. Rippling's authority exposes the folly of this argument: in *Ravelo Monegro v. Rosa*, the Ninth Circuit chastised the lower court for disregarding plaintiffs' "expressed concern" that a witness's "agree[ment] to participate in legal proceedings in the Dominican Republic… was feigned" because "the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial is an important private interest factor." 211 F.3d 509, 514 (9th Cir. 2000).

Given its role in "pressur[ing]" O'Brien "to say things that are not true ... to damage Deel" resulting in his hospitalization for suicidal ideation at the time he executed the Irish affidavit (ECF 48-5 at 49-51), Rippling understandably downplays Deel's showing that non-party witnesses located in Ireland will have knowledge of the alleged espionage, Rippling's coercion of O'Brien, and its effects on O'Brien's mental health. Mot. 10. Surprisingly, Rippling scoffs that "the relevance of O'Brien's state of mind is close to zero, given the extensive forensic evidence documenting his months-long acts of espionage" (a good portion of which, Rippling omits, is in Ireland, *e.g.*, FAC ¶2 n.2) and complains Deel has not identified a witness who is "unwilling to testify here but could be compelled to testify in Ireland." Opp. 11, 13.

Not so. Rippling elides Deel's showing that *on the face of the FAC*, the following witnesses are located in Ireland and cannot be compelled to fly thousands of miles to testify here for Deel: (1) O'Brien's wife, who Rippling alleged is a material witness to Deel's alleged role in O'Brien's alleged actions, (2) the medical professionals who treated O'Brien during his mental health crisis when Rippling was seeking his purported "cooperation," and (3) his co-workers *at non-party Rippling Ireland* (including "its security team") who could attest to his purported "acts of espionage" (or lack thereof). Mot. 3, 10. Having made

O'Brien's credibility central to this action, Rippling cannot then weaponize its purported extortionate grip on O'Brien, his wife, and Rippling Ireland employees (not to mention Deel's inability to procure O'Brien's Irish medical records at this stage of the proceeding to learn the names of the individuals treating him) as a basis to assert that Deel has not proven those witnesses are unwilling to testify in support of Deel's defense. Rippling's implied suggestion that these Irish witnesses may be "willing" to testify in the United States *in support of Rippling* impermissibly makes Rippling the sole arbiter of their appearance here: if Rippling decided not to call these witnesses (for example, if it believes their testimony would be damaging to its case), Deel and the Court lack any mechanism to compel their appearance. The law cited by Deel (and acknowledged by Rippling) is to the contrary. *See* Mot. 8-9 (collecting cases); Opp. 11 (addressing some, but not all, of Deel's authority and recognizing "courts have granted FNC dismissals because critical witnesses cannot be compelled to testify in the United States"). And as Rippling's authority shows, Deel "need not specify in great detail the contents of each witness's testimony, but must provide enough information to enable the District Court to balance the parties' interests." *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009). Deel undoubtedly has done that here.

Rippling ignores its substantial presence in Ireland, including that Dublin is the location of its European headquarters.[4] While Rippling now claims its "U.S.-based security team first identified O'Brien as the likely spy" (Opp. 4 (citing FAC ¶116, which makes no mention of the location of any "security team")), this unsupported contention contradicts its *actual* allegation: "Rippling *Ireland*" initiated the Irish Proceedings after "extensive forensic analysis from *its* security team" indicated O'Brien, "a mid-level payroll operations manager in Rippling's *Dublin office* had been *using his internal systems* access to gather sensitive data relevant to Deel." FAC ¶2 n.2. Rippling also asserts Deel has somehow frustrated its ability to seek discovery in Ireland (Opp. 12), but points only to Deel's attempts to limit the scope of the nearly 100 discovery requests and three dozen subpoenas Rippling has propounded *in this action* to be proportional to the needs of the case at this stage under Rule 26 (*see* ECF 99, 100, 101, 109), particularly given that requiring "extensive" discovery while a forum non conveniens motion is pending "would defeat the purpose of [that] motion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

Notably, Rippling's description of its activities in California—where it purportedly "develops and

---

[4] https://www.rippling.com/blog/rippling-launch-ireland.

1  maintains its software platform" and its "trade secrets and proprietary technology, customer relationships, and strategic business information"—*has no evidentiary support at all*. *Compare* Opp. 3 (citing nothing), *with* ECF 48-4 ¶43 (Rippling attesting in the Irish Proceedings that "the Plaintiffs have suffered, inter alia, loss in this jurisdiction"). And while Rippling baldly contends "its witnesses are here," it cites only printouts of LinkedIn pages in support of that contention, one of which indicates the witness is in the "Greater Seattle Area." Opp. 7; ECF 102-15. This hearsay evidence hardly shows these witnesses (1) are even relevant to the claims here, or (2) "live in the San Francisco area" as Rippling claims. Opp. 10. And as Deel showed, Rippling still does not name the purported "non-party" Conspirator-1 and Conspirator-2 to try to establish a tenuous connection to this forum, and from whom it does not even assert caused it a plausible RICO injury in any event. *Id.*; Mot. 11 n.4; *see also* ECF 114 §I.A.

The Individual Defendants, on the other hand, submitted sworn declarations showing that they have no meaningful connections to California. None of the three Individual Defendants lives, works, owns real property, or maintains a personal bank account here, nor have they spent substantial time in California other than occasional, brief trips since 2021. ECF 111-1 & ECF 111-2 ¶¶4-9; ECF 112-2 ¶4. Alex and Philippe Bouaziz are dual French and Israeli citizens who have lived in Tel Aviv and Dubai, respectively, for years. ECF 111-1 & ECF 111-2 ¶¶2-3. Westgarth is a UK citizen who resides in Dubai. ECF 112-2 ¶2. Travel for all these witnesses would be significantly less burdensome to Ireland than to this District. *See, e.g., id.* ¶ 6.[5]

Rippling tries and fails to establish California is a more convenient forum for Deel for this action by doggedly citing the same SEC filing with Deel's (soon-to-be-changed) mailing address and the appearance of the same address in Deel's Privacy Policy and Whistleblowing Policy. ECF 102-4, 102-6 at 3, 102-7 at 4. As Deel already showed in connection with its Motion, Deel does not maintain an operational office in San Francisco, and Rippling has not offered any evidence to show that it does. Mot. 11. Rippling's other "evidence" is even less compelling. For example, Rippling asserts Deel has "scores of employees" here, claiming "LinkedIn data shows more than 100 other Deel employees, directors,

---

[5] Rippling's purported "evidence" that "both" Alex and Philippe Bouaziz "regularly travel to the United States" (Opp. 3) is unconvincing. Rippling cobbles together an undated LinkedIn post by Alex where he describes attending a dinner in Washington, D.C., webpages for a 2022 conference in Redwood City, and a 2025 conference in *Utah* advertising Alex as a featured speaker. ECF 102-8, 102-9, 102-10. These hearsay documents do not prove that Alex attended these events in the U.S.; but even if he did, these events are unrelated to this case and Rippling does not prove or even assert otherwise.

funders, and Board members in the Bay Area" (Opp. 1, 3), but its one-page exhibit is a list of **10** individuals who apparently designate San Francisco as their remote location on their LinkedIn pages (setting aside that Rippling once again does not even argue that any of those individuals have any relevance to its claims). ECF 102-11.[6] And Rippling's breathless description of Deel's "massive billboard welcoming travelers at SFO" (Opp. 1, 10) relies solely on an undated social media post by ClearChannel Outdoor claiming Deel is advertising "at *JFK, LaGuardia, Newark* and SFO airports" with thumbnail pictures at unidentified locations—more hearsay that shows, at best, Deel's presence *outside* the state. ECF 102-20.

The convenience factors weighed by the courts in Rippling's authorities demonstrate why dismissal is appropriate here. In *Carijano*, Peruvian indigenous people sued Occidental in California for environmental contamination of their homes in the Peruvian rainforest. 643 F.3d at 1222. The court refused to dismiss to allow the case to be litigated in Peru (where, unlike here, there was *no* parallel action) because "[m]ost of Plaintiffs' claims turn not on the physical location of the injury *but on the mental state of the Occidental managers who actually made the business decisions that allegedly resulted in the injury*"—who were in California, not Peru. *Id*. at 1230. Further, setting aside that Rippling has not shown that *any* relevant witnesses currently reside in California, its reliance on *Carijano*'s mention of the "time and expense of traveling" to another forum (Opp. 10) overlooks "the most daunting logistical challenge" in that case: "the extreme isolation of the Achuar territory" where travel to "the nearest sizable Peruvian city[] can take days, presenting a serious obstacle regardless of whether trial takes place in Peru or California." 643 F.3d at 1230. Here, traveling to Dublin (to where the alleged wrongdoing occurred) is hardly a trek through the Amazonian jungle—particularly since Deel has a corporate presence there and already consented to Irish jurisdiction to litigate the same conduct Rippling alleges here (*infra* §III.B.), Rippling's admitted European headquarters are there, Rippling Ireland is there, O'Brien is there, and the Individual Defendants indisputably reside significantly closer to Ireland than California, and therefore litigation would be more convenient for them there. Mot. 11; ECF 48-2 ¶12; *supra* at 4-6.

*Cooper v. Tokyo Elecrtic Power Co.*, is likewise inapposite because there, plaintiff "members of the U.S. Navy who allege[d] that they were exposed to radiation when deployed near the Fukushima

---

[6] Rippling repeatedly flogs the existence of two unrelated Deel actions to enforce contracts entered into in San Francisco, but does not explain why *this* action should not be litigated in Ireland—the location of the primary witness and material evidence of the alleged theft *in Ireland* giving rise to Rippling's claims. ECF 102-1, 102-10.

Daiichi Nuclear Power Plant," resided in the United States and introduced evidence showing they could not "travel to Japan given their alleged medical conditions." 860 F.3d 1193, 1197, 1211 (9th Cir. 2017); *see also Cooper v. Tokyo Elec. Power Co.*, 166 F. Supp. 3d 1103, 1133 (S.D. Cal. 2015) (noting plaintiffs submitted "numerous declarations… detailing their 'radiation related injuries,' which they claim would prevent them from traveling to Japan at all"). Even if Rippling had established its witnesses reside in this District (and it has not), Rippling does not suggest anything would prevent their travel to Dublin.

Rippling's reliance on *Quest* is similarly misplaced because, unlike here, that defendant did not identify "physical evidence that would be difficult to access in California" like the computers O'Brien used at home *and at Rippling's Irish headquarters* that Deel identified in its Motion; rather, *Quest* "involve[d] a contractual dispute, [so] most if not all physical evidence in this case will presumably be documents." 2019 WL 1789880, at *7; *see also* Mot. 2.[7] Rippling ignores the presence of O'Brien's work computer and the systems allegedly accessed *at its Ireland headquarters* and lamely suggests O'Brien's personal computer can be "brought to the United States *with his cooperation*" (Opp. 12)—cooperation plainly in question, as shown above.[8] As noted above, Rippling's alleged "forensic" evidence is in Ireland, as well as other allegedly relevant documents. FAC ¶2 n.2 (Rippling Ireland's "extensive forensic analysis" of "internal systems"), ¶¶ 70, 74, 105 (O'Brien's iCloud account); ¶¶138-39, 157 (O'Brien's "complaints to the Central Bank of Ireland").[9]

There are likely to be limitations on Deel's ability to conduct discovery of O'Brien's documents and personal information from California due to the GDPR. As Rippling's own authority "acknowledges,"

---

[7] Rippling's other authorities involve similar paucities of evidence, unlike Deel's showing here, and is therefore distinguishable. *See U.S. Small Bus. Admin. v. Rocket Ventures II, L.P.*, 2013 WL 57854, at *6 (N.D. Cal. Jan. 3, 2013) (denying motion to dismiss on FNC grounds where defendants "do not provide any evidence in support of their motion, but merely argue, in one paragraph that the balance of factors weighs in favor of litigating in an unspecified court in Europe"); *City of Almaty v. Khrapunov*, 685 F. App'x 634, 635-36 (9th Cir. 2017) (unpublished) (refusing to dismiss action brought by Kazakhstani city where "Defendants did not agree to submit to service of process in Switzerland," "no party argues that Kazakhstan is an appropriate forum, and Defendants did not demonstrate that Switzerland is superior to California in terms of securing witnesses and evidence").

[8] For this reason, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006), cited by Rippling, is distinguishable. There, plaintiff "offered to help [defendant] obtain documents personal to him that are located in the Philippines," including "[e]vidence of Tuazon's medical history and smoking habits"—but in that case the plaintiff resided in the District, and was not a non-party witness accused of theft indisputably residing beyond the court's control. *Id.* at 1181.

[9] These allegations undermine Rippling's insistence that the GDPR is not implicated here "because Rippling's relevant information is stored on U.S. servers." Opp. 13.

because this Court "cannot compel production of much of the foreign evidence, whereas [Rippling] controls, and can bring evidence in its possession to [Ireland], these evidentiary considerations weigh in favor of dismissal." *Howard*, 2024 WL 3206912, at *7.

### B. Rippling's Efforts To Downplay Its Parallel Litigation In Ireland Fall Flat

Deel collected cases establishing that courts routinely dismiss actions where, as here, there is likely "duplication of cost and effort, as well as the risk of inconsistent rulings, that would result from allowing the two cases to proceed on parallel tracks" from overlapping claims, witnesses, and factual determinations in two forums. Mot. §III.B. Rippling does not meaningfully engage with Deel's authority, other than insisting that unlike in Deel's cases, "[t]he Irish proceedings involve different defendants, different actions, and different claims." Opp. 8-9. But that is wishful thinking, at best.

At worst, it blatantly misrepresents these and the Irish Proceedings.

Rippling admits, as it must, that it "asserted trade secret claims against O'Brien" in the Irish Proceedings (who Rippling admittedly did not dismiss from that action until August 1, well after Deel's motion was pending (ECF 102-14)), and cannot deny that it added Deel and Alex Bouaziz as defendants after telling the Irish Court that "Ireland is clearly the jurisdiction most closely connected with the wrongs [that are] the subject matter of these proceedings"—based on the same alleged "conspiracy" for O'Brien to steal Rippling secrets. Opp. 9; Mot. 1-4; *see also* ECF 111-4 ¶¶9-10 (Rippling and Rippling Ireland's amended Irish statement of claim against Deel alleging they initiated the Irish proceedings on March 12, 2025, against O'Brien by asserting that he "had been engaged in a covert course of conduct whereby he had spied for Deel and had provided Deel with the Plaintiffs' trade secrets (within the meaning of the European Union (Protection of Trade Secrets) Regulations 2018 SI No. 188/2018 (the 'Trade Secret Regulations') and proprietary and confidential information.").

Rippling told the Irish Court that Deel conspired with O'Brien to cover up his alleged theft, asserting that the "material destroyed" by O'Brien "includes Confidential Information and Trade Secrets [that is] the property of the Plaintiffs" Rippling and Rippling Ireland. ECF 48-4 ¶28. Rippling's mulish insistence that the Irish Proceedings have "nothing to do with Rippling's claims in this proceeding" because the Irish Proceedings supposedly address only the alleged "obstruction of an Irish court order" (Opp. ii, 8) is further belied by Rippling's FAC, where it dedicated *thirteen pages* to alleging that same

"obstruction of justice" *in Ireland* as a predicate act for its RICO claim here. *See* FAC ¶¶7, 130-56, 180. Thus, even taking Rippling's assertions at face value that the Irish Proceedings are now only about the alleged Irish obstruction of justice conspiracy, Rippling's own FAC eviscerates that purported distinction. *See also* ECF 48-4 ¶45 (Rippling attesting in the Irish Proceedings that "Ireland is the correct forum to determine this action against" Deel and Alex Bouaziz, with "the balance of convenience lying in favour of trying the case in the Irish courts").

As such, there is plainly a "substantial overlap between" the witnesses, evidence, and factual determinations that will need to be made in this action and the Irish Proceedings, which both allege that Deel directed O'Brien to misappropriate Rippling's alleged confidential information from Ireland and then cover it up. *Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *10-12 (N.D. Cal. Aug. 10, 2021) (granting motion where existence of a related Canadian litigation "weighs heavily in favor of dismissal," as the "the Ontario Action will involve litigation of many of the same issues raised in the present suit, many of the same witnesses, and much of the same evidence"); *Lueck*, 236 F.3d at 1147 (affirming forum non conveniens dismissal in favor of ongoing New Zealand proceedings where "a significant number of the same witnesses will be needed in both proceedings and much the same evidence will have to be presented to both courts").

Rippling also misstates its own authority, asserting the *Quest* court found two litigations there "not substantially similar *for FNC purposes* where the 'Canadian action will not resolve the claims brought'" in the United States." Opp. 10. The language relied on by Rippling does not appear and is not discussed in the *Quest* court's FNC analysis, but rather its application of the *Colorado River* doctrine's "preliminary, dispositive determination whether there is a substantial doubt that the parallel proceeding will resolve all of the issues" and "end the litigation." 2019 WL 1789880, at *9.[10] And in any event, should the Court dismiss this action for forum non conveniens, the Irish Proceedings almost certainly will end this litigation, since the issue of whether O'Brien actually misappropriated any of Rippling's purported trade secrets will have to be litigated there in determining whether the alleged "material destroyed" by O'Brien "includes

---

[10] Rippling also cites a 50-year-old Ninth Circuit case, *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817 (9th Cir. 1975), but *Weiner* was not an FNC case; it analyzed whether a federal securities action should be stayed or dismissed in favor of a pending *state court action* "involving the same parties and the same transactions." *Id*. at 818. The court made a passing reference to forum non conveniens in a brief discussion of "exceptions" to an "absolute right of access to an available federal forum," before concluding the district court should have stayed the federal action. *Id*. at 819-21.

1 Confidential Information and Trade Secrets [that is] the property of the Plaintiffs" Rippling and Rippling Ireland. ECF 48-4 ¶28.

Finally, Rippling complains that it was "forced" to sue O'Brien, Deel, and Alex Bouaziz in Ireland because that is where O'Brien engaged in the alleged activities that form the basis of the Irish Proceedings (and this Action), noting if "Deel had instead cultivated a spy in Oslo or Paris, Rippling may have gone there to preserve evidence instead." Opp. 9. Deel does not disagree—if Rippling initiated an action in Norway or France asserting the same claims because that is where the key witnesses and evidence regarding their trade secret claims were located, then dismissal in favor of those forums would be warranted, just as it is here. Rippling sued in Ireland and asserted the same factual contentions regarding the purported "theft" and conspiracy against at least three of the five alleged tortfeasors (and the remaining two will consent to jurisdiction in the Irish Proceedings if this Motion is granted). For those reasons, as well as the others set forth above, Ireland is the most appropriate forum for this action.

### IV. The Public Interest Factors Weigh In Favor Of Dismissal

Deel also demonstrated that the public interest factors weigh in favor of dismissal here. Mot. §IV. *First*, Deel showed that the extent of California's local interest in the dispute is the presence of Delaware corporations with principal business places here (for now as to Deel, who does not maintain an office here in any event) and "this interest is slight compared to the time and resources [this Court] would expend if it were to retain jurisdiction." *Id*. at 14. In response, Rippling focuses (as it must) purely on this corporate formality, and, as shown above, does not introduce any evidence connecting the events here with California in any substantive way. Seeking to bolster its feeble showing, Rippling offers "[w]idespread local media coverage of this lawsuit" as "further confirm[ing] the local interest," citing a handful of articles (primarily from TechCrunch). Opp. 15; ECF 102-24. While Rippling does not point to any authority suggesting "media coverage" is indicative of "local interest," assuming for the sake of argument that it is, Irish local media coverage of this dispute involving an "Irish 'spy'" has been significantly more intense. *See* Lloyd Decl. Ex. A (collecting Irish media articles). This is not surprising, given the Irish witnesses and companies involved, and that all of the relevant events occurred in Ireland. Mot. 1-4, 14.

Rippling appears to suggest that courts in this Circuit do not consider competing local interests when weighing the public interest factors (Opp. 14-15), but its own authority undermines that contention.

1    The *Carijano* court observed "[t]here appears to be a difference of opinion about whether it is appropriate
2    to compare the state interests, or whether this factor is solely concerned with the forum where the lawsuit
3    was filed" and ultimately weighed both California and Peru's interests, concluding "although both forums
4    have a significant interest in the litigation, the local interest factor favors neither side entirely." 643 F.3d
5    at 1232–33 & n.3; *see also Bundy v. Nirvana L.L.C.*, 2021 WL 5822127, at *5 (C.D. Cal. Oct. 21, 2021)
6    (citing *Carijano* for "split of authority in the Ninth Circuit as to what can be considered in evaluating this
7    factor" and weighing interests of "California citizens… in the sale and consumption of copyright-
8    infringing products in their forum" and the "stronger interest" of the U.K., which "slightly favors
9    dismissal"); *Nibirutech*, 75 F.Supp.3d at 1087 (finding "relatively little local interest in California in a
10   dispute relating to events involving a Chinese company and one of its employees in China," even where
11   plaintiff "claims that the fraud occurred in California, the place where [defendant California corporation]
12   is located (and the location to which the money was wired)" because "Chinese courts have a significantly
13   greater interest in resolving an employment dispute arising out of employment, in China, by a Chinese
14   company") (cited by Rippling). Here, that same weighing of interest favors dismissal.

15          *Second*, Deel established, and Rippling ignores entirely, the well-settled law holding that Irish
16   courts can equally apply California law, if in fact California law applies, and that this Court need not make
17   a choice of law determination here given the statutes at issue. Mot. 15 & n.6. Rippling merely gainsays
18   Deel's showing that Irish law may apply as a "blatant mischaracterization of the" Irish Proceedings, but
19   neglects to elaborate further. Opp. 15. Thus, this factor favors dismissal.

20          *Finally*, Rippling also ignores Deel's showing that resolution would come more swiftly in Ireland
21   due to the substantial differences in court congestion between this Court and the Irish High Court (Mot.
22   13-14) and instead claims "there is nothing to suggest that hearing this case would create congestion in
23   the Court or cause an undue burden on the Court or on a local jury." Opp. 15. The over 120 entries on the
24   docket in this five-month-old action that does not even have a scheduling order in place belie that claim.
25   Rippling ignores the reality that because "[f]ederal district courts are generally overburdened… it is in the
26   public interest to prevent court congestion by transferring cases to a more convenient forum when possible
27   and practicable." *Nova for Info. Tech. & Consulting v. Env't Sys. Rsch. Inst., Inc.*, 2025 WL 1607592, at
28   *5 (C.D. Cal. May 7, 2025) (granting FNC motion in favor of Kuwaiti forum). So too here.

**CONCLUSION**

For these reasons, the Court should dismiss the FAC for forum non conveniens, or in the alternative, stay this action pending resolution of the Irish Proceedings.

DATED: September 5, 2025         By: _____/s/ Jason D. Russell_____
                                         JASON D. RUSSELL
                                       *Attorneys for Defendant Deel, Inc.*