**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff*
*People Center, Inc. d/b/a Rippling*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576 (CRB)<br><br>**RIPPLING'S MOTION CHALLENGING NON-PARTY REVOLUT'S CONFIDENTIALITY DESIGNATIONS**<br><br>Compl. Filed:     March 17, 2025<br>Am. Compl. Filed:  June 5, 2025<br>Judge:            Hon. Charles R. Breyer<br>Courtroom:        6<br>Hearing Date:     October 17, 2025<br>Hearing Time:     10:00 a.m. |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at 10:00 a.m. on October 17, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco California 94102, Plaintiff People Center, Inc. D/B/A Rippling ("Rippling") will, and hereby does, move pursuant to Section 6.2 of the Protective Order (ECF 74) to remove the confidentiality designations Revolut Technologies Inc. ("Revolut") applied to records it produced in response to Rippling's subpoena.

Rippling seeks an order that these records, which contain information central to Rippling's allegations in this case and whose contents are already largely a matter of public record, are not permitted any confidentiality designation under the Protective Order.

Dated: September 12, 2025

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By  */s/ Joseph Sarles*
Joseph Sarles (CA Bar No. 254750)

## I. INTRODUCTION

Rippling's First Amended Complaint in this action details how Defendants orchestrated a bribe payment to Keith O'Brien, using non-party Revolut's payment system, including a screenshot showing O'Brien's receipt of the bribe. ECF 57 (FAC) ¶¶ 1-3, 60-66. Deel has argued—publicly—that O'Brien is not telling the truth about this. *See, e.g.*, ECF 48 at 3 ("the spy melodrama detailed in his affidavit is fictionalized"). But now, pursuant to a subpoena from Rippling, Revolut has produced records ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendants orchestrated an elaborate scheme to secretly bribe O'Brien to steal Rippling's trade secrets, precisely as Rippling has alleged.

The above facts are not legitimately confidential, yet Revolut has designated the records ▓▓▓▓▓▓▓▓ as "Attorney's Eyes Only" under the Protective Order, and refuses to de-designate them. This position is legally baseless and factually absurd. Proof of the bribe to O'Brien is already detailed in public filings, and no cognizable privacy interest justifies withholding from the public smoking gun evidence of ▓▓▓▓▓▓▓▓ in it, particularly when Deel is at the same time publicly asserting that O'Brien is not telling the truth about Deel's bribery.

This motion should not have been necessary at all, because there is nothing remotely confidential or commercially sensitive in these documents (other than account numbers Rippling offered to redact), much less Attorney's Eyes Only. Revolut and Deel have a business relationship, but Revolut's motives for forcing this frivolous dispute are irrelevant—what matters is that there is no confidentiality or privacy interest in keeping ▓▓▓▓▓▓▓▓ criminal conduct under wraps.

The Court should reject Revolut's request to treat a bribery payment as if it were a private, personal financial transaction. The documents are central to this case and will no doubt be filed again and again as exhibits—and there is simply no basis to require sealing papers to be filed every time that happens.

II.  **FACTUAL BACKGROUND**

Rippling alleges that Deel and its executives orchestrated a corporate espionage scheme to steal Rippling's trade secrets. FAC ¶¶ 1-10. Central to this scheme, Deel CEO Alex Bouaziz personally recruited former Rippling employee O'Brien to act as a corporate spy, directing him to steal specific trade secret information and share it with Deel. FAC ¶¶ 56-66.

Deel paid O'Brien for his espionage. The first bribery payment was a $6,000 wire transfer on November 4, 2024 from an account registered to Alba Basha, wife of Deel COO and alleged co-conspirator Dan Westgarth. FAC ¶ 64. O'Brien, now cooperating with Rippling, provided a screenshot of this transaction, which Rippling included in its publicly-filed complaint. *Id.*

To investigate this payment, Rippling subpoenaed Revolut. Ex. 1. In response, Revolut produced records of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ one purpose: laundering Deel's bribe to O'Brien. Revolut also responded to Rippling's request for Know Your Customer ("KYC") information, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Revolut designated its entire production as "Attorneys' Eyes Only" under the Protective Order, without any tailoring or justification. Ex. 2. Not coincidentally, Revolut and Deel are business partners. Deel uses Revolut to process payments and Revolut touts their partnership with a dedicated case-study published on Revolut's website. *See* Ex. 3. Revolut also highlights an endorsement by Defendant Dan Westgarth—Deel's COO and Basha's husband, and a former General Manager at Revolut. *See id.* ("Revolut Business helps [Deel] process payments around the world with ease"); *see also* Ex. 4.

The parties met and conferred pursuant to Section 6.3 of the Protective Order, but the meet and confer process has not and will not resolve the dispute. Following two telephonic meet and confer efforts on August 28, 2025 and September 4, 2025, Revolut permitted Rippling's counsel to disclose the substance of its production to Rippling, but would not permit sharing of the documents themselves, instead insisting that the documents are entitled to confidential treatment because they

show "personal financial activity that weighs against public disclosure." Ex. 5 at 2; Nardinelli Decl. ¶ 7. This Motion followed.[1]

### III.  LEGAL STANDARD

"Courts recognize that the public has a right to access judicial records and documents." *Amarte USA Holdings, Inc. v. Kendo Holdings Inc., et al.*, 2023 WL 8420896, at *2 (N.D. Cal. Dec. 4, 2023) (Breyer, J.). The Ninth Circuit applies a "compelling reasons" standard for sealing materials submitted in connection with dispositive motions and a "good cause" standard for discovery disputes and non-dispositive motions. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). To meet the "compelling reasons standard," the party seeking to prevent disclosure must articulate compelling reasons with the support of specific facts. *Kamakana*, 447 F.3d at 1178. Under the "good cause" standard, a party must make a "particularized showing" that "specific prejudice or harm will result" from disclosure. *Phillips*, 307 F.3d at 1210-11. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not suffice. *Beckman Indus., Inc. v. Int'l Ins.*, 966 F.2d 470, 476 (9th Cir. 1992).

Under the Protective Order the Court has entered in this case, the "Attorneys' Eyes Only" designation is warranted only over materials whose disclosure "would create a substantial risk of serious harm that could not be avoided by less restrictive means." ECF 74 ¶ 2.7. The "Confidential" designation applies to materials that "qualify for protection under Federal Rule of Civil Procedure 26(c)," *id.* ¶ 2.2, which applies the "good cause" standard.

### IV.  ARGUMENT

Revolut bears the burden of proving its confidentiality designation is proper. ECF 74 ¶ 6.3. Revolut cannot meet this burden to show that "good cause" exists to seal its records, let alone satisfy

---

[1] The Revolut records directly support Rippling's upcoming opposition to the motions to dismiss filed by the Individual Defendants. If the instant Motion is not resolved before that filing, Rippling will file the Revolut records under an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed under L.R. 79-5(f). Rippling files the instant Motion because September 12 is its deadline to do so under the Protective Order (ECF 74 ¶ 6.3), but submits that this Motion may be mooted if the Court first resolves Rippling's Administrative Motion.

the more stringent "compelling reasons" standard.

A party seeking to designate information under a protective order must, under the good cause standard, "show[] specific prejudice or harm will result" from disclosure. *Phillips*, 307 F.3d at 1210-11. Only if the party meets that initial burden of showing harm does the court proceed to the second step and "balance[] the public and private interests" to determine whether protection is warranted. *Id.* at 1211; *see also In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 n.5 (9th Cir. 2011) (articulating the balancing test factors). Here, although the Court need not reach the balance test because Revolut cannot show that any harm will result, the balancing test also favors disclosure.

### A. Revolut Has Not And Cannot Demonstrate that Disclosure of These Records Will Cause Any Harm

#### 1. The Information At Issue Has Been Disclosed Publicly

Revolut cannot meet its burden because the information ▮▮▮▮ has already been made public. The FAC contains a literal screenshot of the Basha-to-O'Brien payment. ¶ 64. This image has been publicly available for months. Any request by Revolut to seal ▮▮▮▮ is frivolous. *See Williams v. Apple, Inc.*, 2021 WL 2476916, at *3 (N.D. Cal. June 17, 2021) (denying sealing of information that had "already been publicly filed ... and reported in the press"). The ▮▮▮▮, while not previously made public via screenshot, ▮▮▮▮ FAC ¶¶ 63-66 (emphasis in original). There is nothing private or confidential left. On the contrary, sealing the hard proof of ▮▮▮▮ would interfere with, rather than promote, the "public's understanding" of the case. *Kamakana*, 447 at 1179.

#### 2. Disclosure Will Not Cause Competitive Harm

Revolut makes no claim that the records contain competitively sensitive information such as trade secrets, business strategies, and proprietary systems that would give rivals an unfair advantage if disclosed. *Amarte*, 2023 WL 8420896, at *3. Instead, Revolut claims that the act of disclosure

will cause it competitive harm because disclosure will "undermin[e] its users' trust." Ex. 5 at 2. That argument is meritless.

Complying with court orders out of legal obligation does nothing to erode customer trust, nor could it, because there is no "protectable interest in … [b]ank records because" customers "have no legitimate expectation of privacy in them." *United States v. Bank of California*, 424 F. Supp. 220, 227 (N.D. Cal. 1976). No customer can reasonably expect a bank to conceal criminal transactions from court-ordered disclosure. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

In meet and confer discussions, Revolut cited *Adtrader, Inc. v. Google LLC*, 2020 WL 6392572, at *2-3 (N.D. Cal. 2020), but it has zero application here. There, the Court sealed information disclosing "how Google operates its advertising products, including its internal policies, organizational and product structures, and systems functionality related to detecting and addressing invalid activity and processing associated advertising payments; Google's internal strategic business and financial decision-making, including sensitive financial information; and Google's customers' information." *Id.* There is no such information at stake here. This case involves ▬▬▬▬▬ ▬▬▬▬▬ a bribe ▬▬▬▬▬.

3. There Is No Legitimate Customer Privacy Interest In The Revolut Records

Revolut also contends these records reveal "personal financial activity" in which Basha has a "strong privacy interest." Ex. 5 at 2. This characterization is false. The records involve only ▬▬▬▬▬ ▬▬▬▬▬ ▬▬▬▬▬ This is not personal financial activity. It is money laundering.

Revolut's cases prove its argument to be baseless. In *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018 WL 10701610, at *2 (N.D. Cal. Apr. 11, 2018), the court sealed fifteen years of comprehensive and "sensitive" client transaction data including "total commission and transaction value." It is laughable to compare that type of financial information to a bribery payment ▬▬▬▬▬

Equally unavailing is Revolut's citation to *Activision Publishing, Inc. v. EngineOwning UG*, 2023 WL 2347134, at *1 (C.D. Cal. 2023), where the court sealed "customers' names, account numbers, IP addresses, email addresses, and/or customer activities on certain platforms, in order to protect the customers' privacy" and to prevent "harm or identity theft." The transaction records here, consisting only ▮▮▮▮▮▮▮▮ create no such risk.

Revolut's claim that Basha has a "strong privacy interest" in these transactions flies in the face of well-established law that no such privacy interest exists for these types of records. Banks have "good reason for producing" customer "bank account records without a confidentiality designation" as the "Supreme Court has ruled that a person has no legitimate expectation of privacy in bank account records." *AL Indus., Inc. v. EnvisionTEC, Inc.*, No. 2:20-CV-01708, 2022 WL 19764007, at *3 (C.D. Cal. Feb. 16, 2022) (citing *U.S. v. Miller*, 425 U.S. 435, 440-443). As the Supreme Court has explained, "bank records are not private papers but business records of the bank and pertain to transactions to which the bank is a party … and financial statements are not confidential communications but information voluntarily conveyed to banks and exposed to their employees in the ordinary course of business." *Id.* Therefore, "a depositor takes the risk in revealing his affairs to another that the information will be conveyed to others." *Id.* Indeed, Revolut cannot even contend that the records show Basha's "personal financial activity"—she was at best ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at RTI-00006.

### B. The Balancing Test Factors Favor Disclosure

Even if there were some cognizable harm that would come from public disclosure of the Revolut records, the applicable balancing test still compels disclosure here. The relevant factors are: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *In re*

*Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d at 424 n. 5 (quoting *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995)). The district court "is best situated to determine what factors are relevant to the dispute." *Glenmede Trust,* 56 F.3d at 483. For the same reasons described above, these relevant factors here strongly favor disclosure.

*First*, as described above, disclosure will not violate any privacy interest because there is no valid privacy interest over the use of a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ illicit bribery payment.

*Second*, publication of the information serves the legitimate and compelling purpose of public access to and understanding of the judicial process. *Kamakana*, 447 at 1179. The public's "interest in ensuring the public's understanding of the judicial process and of significant public events" requires disclosure of key evidence. *Id.*; s*ee also MA Silva Corks USA, LLC v. MA Silva Holdings, Inc.*, 2023 WL 2940031, at *2-3 (N.D. Cal. 2023) (denying sealing of allegations that are "critical (even central) to Plaintiffs' claims"); *cf. Griffo v. Oculus VR, Inc.*, 2018 WL 11352472, at *2 (C.D. Cal. Sept. 20, 2018) ("The Court is highly skeptical of sealing relevant financial information….").

And the Revolut records are key. While Rippling alleged in its FAC that Basha paid O'Brien $6,000 on November 4, 2024 (FAC ¶ 64), the Revolut records now prove what Rippling alleged: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, establishing the direct link between ▇▇▇▇▇▇▇▇▇▇▇ and the conspiracy to steal Rippling's trade secrets. FAC ¶ 60. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ confirms it treats criminal conduct as ordinary business. Further, the Revolut records show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This evidence supports the wire fraud allegations which form part of the alleged predicate acts underlying Rippling's RICO claims. *See* 18 U.S.C. § 1343 (requiring use of interstate or foreign commerce); FAC ¶¶ 176-180.

*Third*, although disclosure may cause embarrassment to Deel or Basha, "that the production of records may lead to a litigant's embarrassment" is not, without more, grounds to prohibit disclosure. *Kamakana*, 447 F.3d at 1179. Moreover, any additional embarrassment here is minimized because Rippling has already published documentary evidence of the payment made by

Basha to O'Brien, and presented compelling circumstantial evidence that the payment was initially funded by Deel, ███████████.

*Fourth*, the information at issue does not implicate health or safety.

*Fifth*, disclosure promotes fairness and efficiency. As described, this evidence is critical and as such, fairness dictates that plaintiff Rippling must be able to access it. Further, it would be inefficient to burden the parties and the Court with sealing motions on this key evidence.

*Sixth*, the parties benefiting are not public entities or officials.

*Seventh*, the case involves important public issues, concerning allegations of a wide-ranging enterprise through which a prominent Silicon Valley tech company systematically raided trade secrets from its rival, under the personal direction of its CEO and other senior leadership.

### C. Limited Redactions Can Address Any Legitimate Privacy Concerns

Rippling has offered to apply limited redactions of information before filing, such as redacting account numbers and ACH routing numbers. Ex. 5 at 6. This approach properly balances any legitimate privacy interests with the public's right of access. *Glenmede Trust*, 56 F.3d at 483 ("[T]he analysis should always reflect a balancing of private versus public interests."); *Phillips*, 307 F.3d at 1211 (similar).

### CONCLUSION

For the foregoing reasons, the Court should order Revolut to remove the confidentiality designations from its production.

| | | |
|---|---|---|
| 1 | Dated: September 12, 2025 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| 2 | | |
| 3 | | By  */s/ Joseph Sarles* |
| 4 | | Alex Spiro (*pro hac vice*) |
| | | Scott Hartman (*pro hac vice*) |
| 5 | | Dominic Pody (*pro hac vice*) |
| 6 | | 295 5th Avenue, 9th Floor |
| | | New York, NY 10016 |
| 7 | | Telephone: (212) 849-7000 |
| | | Facsimile: (212) 849-7100 |
| 8 | | alexspiro@quinnemanuel.com |
| | | scotthartman@quinnemanuel.com |
| 9 | | dominicpody@quinnemanuel.com |
| 10 | | |
| | | Joseph Sarles (CA Bar No. 254750) |
| 11 | | Kathleen S. Messinger (CA Bar No. 329983) |
| | | 865 S Figueroa Street, 10th Floor |
| 12 | | Los Angeles, CA 90017 |
| | | Telephone: (213) 443-3000 |
| 13 | | Facsimile: (213) 443-3100 |
| | | josephsarles@quinnemanuel.com |
| 14 | | kathleenmessinger@quinnemanuel.com |
| 15 | | |
| | | Jeff Nardinelli (CA Bar No. 295932) |
| 16 | | 50 California Street, 22nd Floor |
| | | San Francisco, CA 94111 |
| 17 | | Telephone: (415) 875-6600 |
| | | Facsimile: (415) 875-6700 |
| 18 | | jeffnardinelli@quinnemanuel.com |
| 19 | | *Attorneys for Plaintiff* |
| | | *People Center, Inc. d/b/a Rippling* |