**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff
People Center, Inc. d/b/a Rippling*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576 (CRB)<br><br>**RIPPLING'S REPLY IN SUPPORT OF MOTION CHALLENGING NON-PARTY REVOLUT'S CONFIDENTIALITY DESIGNATIONS**<br><br>Compl. Filed: March 17, 2025<br>Am. Compl. Filed: June 5, 2025<br>Judge: Hon. Charles R. Breyer<br>Magistrate Judge: Hon. Lisa J. Cisneros |

Revolut seeks to shield critical evidence of a bribery payment at the heart of Rippling's allegations that Deel CEO Alex Bouaziz masterminded, managed, and paid former Rippling employee Keith O'Brien to steal Rippling's trade secrets on a daily basis for over 4 months. ECF 57 ("FAC") ¶¶ 56-66. Rippling offered a transaction receipt of the initial $6,000 bribe, paid from Deel's COO's wife's account, in support of its public complaint. FAC ¶ 64. Also public is O'Brien's testimony that Deel—not the account holder, the wife of Deel's COO—funded the bribe. ECF 48-5 ¶¶ 8, 12-16. Now, Revolut has produced records that Rippling cites as even stronger evidence of the Bouaziz Racketeering Enterprise's illicit payments to its spy. Rippling cites this evidence in dispositive motion briefing supporting: (a) the sufficiency of its RICO conspiracy claims; (b) its opposition to Deel's request to move the case to Ireland on *forum non conveniens* grounds; and (c) its opposition to the Conspiring Executives' personal jurisdiction challenges. ECF 127-1 ("MTD Opposition"). Because Rippling cites this evidence in dispositive motion briefing, the Ninth Circuit's strong presumption of public access applies, and Revolut's Opposition (ECF 135, "Opp.") comes nowhere near overcoming it.

Revolut has failed to show compelling reasons to deny the public's right to access further evidence of a bribery payment that has already been publicly disclosed and that bears centrally on Rippling's case. Revolut does not attempt to satisfy the applicable "compelling reasons" test, instead briefing only the inapplicable "good cause" standard. And even under that lower standard, Revolut offers only attorney argument and speculation of supposed harm. Revolut asserts that court-ordered disclosure will harm its reputation, but offers only a declaration from outside counsel to back this up. Similarly, Revolut purports to be safeguarding the privacy interests of a customer, but the Supreme Court in *Miller* ruled that customers do not have a protectible privacy interest in banking records.

Revolut does not claim that it is seeking to protect Deel's privacy interests—nor could it, given that Deel itself already filed evidence of the bribe and sworn allegations that Deel was behind it. ECF 48-5. Further, Deel has not asked this Court to seal the Revolut records. *See* L.R. 79-5(f)(4) (permitting "any party" to file a response to Revolut's statement in support of sealing). The fact that Deel has not sought to seal the Revolut records makes Revolut's position even more

frivolous than before. The payment made by Basha to O'Brien has long been a matter of public record. ECF 57 ¶ 64. Deel itself filed this same record, along with O'Brien's sworn testimony that Deel was the party behind the payment. *See* ECF 48-5 (O'Brien sworn declaration) ¶ 8 ("Alex and Philippe said I would be paid approximately 5000 euros per month for spying on Rippling for Deel, and that I would be paid around the 6th of each month. I wanted to be paid in fiat currency and asked that payments be made through Revolut, an online payments application."); *id.* ¶ 12 ("I received my first payment in the beginning of November into my Revolut account from an account associated with an individual named 'A.B.' The payment was $6,000 USD."); *id.* at 17 (attaching the Revolut "Transfer Confirmation" showing the initial $6,000 payment from Ms. Basha's account to O'Brien on November 4, 2024). In sum, Revolut asserts that Ms. Basha has a privacy interest in a bribe, even as Deel itself has filed evidence of the bribe, and Deel's role in it, publicly.

Lacking a substantively defensible position, Revolut resorts to collateral attacks. It claims Rippling seeks to publish personally identifying information (it does not), and that Rippling "raced to the courthouse" despite Rippling spending ***three weeks*** seeking compromise, the maximum time permitted under the terms of the Protective Order. ECF 74 ¶ 6.3 (filing deadline is "within 21 days of the initial notice of challenge").

To promote public access to important judicial records whose contents have already been made public, the Court should order the Revolut records to be de-designated.

I.  ARGUMENT

   A.  Revolut Has Not Shown "Compelling Reasons" For Sealing

In the Ninth Circuit, "courts start with a 'strong presumption in favor of access' when deciding whether to seal records." *Kivett v. Flagstar Bank, FSB*, 2019 WL 13203923, at *1 (N.D. Cal. Nov. 4, 2019) (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). Because Rippling attached the Revolut records to dispositive motion briefing, Revolut must show "compelling reasons" to seal supported by "specific factual findings." *Kamakana*, 447 F.3d at 1178 (quotations omitted). "[N]ebulous assertions of potential harm" do not suffice. *Kivett*, 2019 WL 13203923, at *1. Revolut "must explain with particularity why any document or portion thereof remains sealable under the applicable legal standard." *Id.*

Revolut knows the "compelling reasons" standard applies. Rippling served Revolut with an unredacted version of its opposition, including the Revolut records. ECF 127 (sealing motion); ECF 127-2 (Revolut records); ECF 130 (proof of service on Revolut). Despite this, Revolut ignored the "compelling reasons" standard and addressed only "good cause." *See generally* ECF 135. This is a fatal mistake. The "existence of good cause is insufficient to satisfy the requirement for compelling reasons that is required for sealing." *Resh v. Hetzner*, 2014 WL 10919512, at *4 (C.D. Cal. Oct. 31, 2014), *aff'd,* 609 F. App'x 644 (Fed. Cir. 2015). Revolut's failure to address the relevant standard is reason enough to deny its application to keep its records sealed. *See Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 3232424, at *14 (N.D. Cal. July 28, 2017) ("[A] party waives an argument by failing to make it before the district court.") (citation omitted).

### B.     The Information At Issue Has Been Disclosed Publicly

Further, the information is already public. The bribe is documented in Rippling's FAC (ECF 57 ¶ 64), in O'Brien's sworn declaration (ECF 48-5), and in the Revolut transaction confirmation that Deel itself filed (ECF 48-5 at 17). Revolut's Opposition does not address the *Williams* case cited by Rippling (Mot. 4), which denied a party's request to seal information that had "already been publicly filed … and reported in the press." *Williams v. Apple, Inc.*, 2021 WL 2476916, at *3 (N.D. Cal. June 17, 2021). Further, the records are key to the "public's understanding" of whether O'Brien's sworn testimony is true, or "fictionalized" as Deel contends. ECF 48 at 3; *Kamakana*, 447 at 1179 (acknowledging the importance of the "public's understanding" of legal proceedings).

### C.     Disclosure Will Not Harm Revolut

Revolut claims, without evidence, that disclosure will undermine customer trust. Opp. 3. This "nebulous assertion[] of potential harm" fails to "explain with particularity why any document or portion thereof remains sealable." *Kivett*, 2019 WL 13203923, at *1.

The evidentiary void is telling. Revolut offers no customer complaints, no market analysis, and no declaration from a company executive or employee. Not one Revolut employee was willing to attest that a de-designation order from this Court would harm customer trust. Instead, Revolut relies only on the unfounded say-so of outside counsel, which courts routinely reject as insufficient. *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985) ("[S]tatement by

counsel is, of course, not competent evidence… It remains a bald, unsupported assertion; as such, the court can give it virtually no weight."); *Barcamerica Int'l Trust v. Tyfield Imps.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("arguments and statements of counsel are not evidence") (quotation omitted).

Revolut cannot even identify a customer whose trust would be lost. Not Deel's—Deel already filed the bribery records publicly. Not legitimate customers; as Rippling argued and Revolut did not deny, "[c]omplying with court orders out of legal obligation does nothing to erode customer trust," and "[n]o customer can reasonably expect a bank to conceal criminal transactions from court-ordered disclosure." Mot. 5. The only "customers" who might be dissuaded by a Court-ordered disclosure of a bribery payment are customers hoping to use Revolut for illicit payments. No wonder Revolut, a regulated financial institution, could not find anyone willing to sign a declaration identifying the customers that might lose trust in Revolut.

Revolut emphasizes that it designated the records under the Protective Order. *See* Opp. 4 ("Revolut disclosed to Plaintiff documents pursuant to its subpoena and *subject to the Protective Order entered in this case*.") (emphasis in original). This goes nowhere because "the fact that documents are subject to a protective order, or labeled as confidential under a protective order, is not a compelling reason justifying continued sealing of the document if attached to a dispositive motion." *Amarte USA Holdings, Inc. v. Kendo Holdings Inc., et al.*, 2023 WL 8420896, at *3 (N.D. Cal. Dec. 4, 2023) (Breyer, J.).

Revolut cites 15 U.S.C. § 6801 but offers no argument under that statute, and there is none. That law expressly permits banks to share information to "comply with a properly authorized civil … subpoena." 15 U.S.C. § 6802(e)(8). It does not prohibit banks from sharing "nonpublic personal information" with third parties, but requires only that banks provide notice before doing so. 15 U.S.C. § 6802(a). Further, "nonpublic personal information" is defined as "personally identifiable financial information" and *excludes* "publicly available information." 15 U.S.C. § 6809(4). There is no dispute between the parties over the disclosure of nonpublic, personally identifiable financial information because Rippling agrees to redact information such as the account and routing number.

Again, Revolut invokes *Adtrader, Inc. v. Google LLC* (Opp. 3), where the Court sealed information disclosing Google advertising, which included "Google's customers' information" relating to that advertising. 2020 WL 6392572, at *2-3 (N.D. Cal. 2020). The customer information there was "Google's customers' private financial and personal information." *Adtrader v. Google*, No. 17-7082-BLF, ECF No. 221 at 4 (Dec. 20, 2019). That is not comparable to a bribe.

Highly instructive is *United States v. Payward Ventures, Inc.* where Kraken—a regulated financial institution—sought to seal information about its "internal technological capabilities" and system operations. 2023 WL 4303653, at *9 (N.D. Cal. June 30, 2023). It argued disclosure would damage "Kraken's goodwill and competitive standing with its clients." *Id.* Like Revolut, Kraken's only support for its claimed harm was "a declaration of counsel" with "conclusory statements" which "do not satisfy the heavy burden that must be met to justify sealing material in dispositive motion papers." *Id.* Here, Revolut offers the same deficient proof as Kraken, for an even weaker claim: that customers have a privacy interest in a public bribery payment central to ongoing dispositive motion briefing.

**D.     There Is No Legitimate Customer Privacy Interest In The Revolut Records**

The Supreme Court has ruled that a person has "no legitimate 'expectation of privacy'" in bank records, that "financial statements … contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business," that bank records are not customer "private records" but rather "the business records of the banks," and that a "depositor takes the risk, in revealing his affairs to another, that the information will be conveyed" to others." *United States v. Miller*, 425 U.S. 435, 440-43 (1976); *Stark v. Connally*, 347 F. Supp. 1242, 1248 (N.D. Cal. 1972) (holding "bank customers have no rights in bank records"). Revolut notes correctly (Opp. 6) that *Miller* is a Fourth Amendment case, but its central holding still fatally undermines Revolut's claimed "privacy interest" of its customer over a bribery transaction routed through a bank. *Miller* held that bank customers have no legitimate expectation of privacy in bank records themselves because such records contain "only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." 425 U.S. at 442. Other cases confirm that no privacy interest exists at all—not whether that interest is outweighed by other

factors.  *See*, *e.g.*, *U.S. v. Bank of California*, 424 F. Supp. 220, 227 (N.D. Cal. 1976) (confirming that "checks are not confidential communications" where customers have "no legitimate 'expectation of privacy.'"); *In re Blunden,* 896 F. Supp. 996, 1000 (C.D. Cal. 1995) (holding that bank records are documents where "customers do not have exclusive control and in which they only have a limited expectation of privacy").

Revolut cites *SEC v. Ficeto*, which held that even despite *Miller*, a civil litigant may have a "privacy issue" with respect to "all bank records, all real and personal property records (concerning property over $5,000), all records of transfers of real and personal property (for property valued greater than $5,000), all documents concerning transfers of cash in amounts greater than $5,000, and all tax returns from 2004 to the present." 2012 WL 12919300, at *1 (C.D. Cal. Dec. 17, 2012). However, a more recent ruling from the same district that squarely addresses the issue at hand held that "bank records are not privileged, private, confidential and do not qualify as Protected Material under the Protective Order." *AL Indus., Inc. v. EnvisionTEC, Inc.*, 2022 WL 19764007, at *4 (C.D. Cal. Feb. 16, 2022).  Further, *Ficeto* involved legitimate records of legitimate financial activity. Revolut *never* contends the Revolut records disclose legitimate financial activity.

Revolut does nothing to distinguish other key cases cited by Rippling that favor disclosure of banking records. *AL Indus.*, 2022 WL 19764007, at *3; *Schmidt v. Internal Revenue Serv.*, 533 F. Supp. 3d 952, 955 (E.D. Cal. 2020) (denying request to seal tax records aside from redactions to personal information "such as the party's social-security number and taxpayer-identification number, date of birth, and financial account numbers").  Instead, Revolut points out that in *AL Industries* and *Schmidt*, the only information kept under seal was PII and information outside the subpoena scope—but here, the information at issue is within the subpoena's scope, and Rippling has agreed to redact PII.  *See also Am. Auto. Ass'n of N. Calif., Nev. & Utah v. Gen. Motors*, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019) (sealing PII in part to protect exposure to "identity theft", which is not implicated here) (citation omitted).

Revolut points to *Zakinov v. Ripple Labs, Inc.* where the Court agreed to seal user names. 2023 WL 5280193, at *2 (N.D. Cal. Aug. 15, 2023).  But in that class action, user identities were irrelevant.  Here, the identities of the transacting parties are central to Rippling's case.  None of

Revolut's other cited authority even remotely supports sealing the Revolut records at issue here. *Quad Int'l, Inc. v. Doe*, No. 12-cv-05433, 2012 WL 5868966, at *3 (N.D. Cal. Nov. 19, 2012) (issuing a "limited protective order" in the context of an Internet service provider identifying a John Doe defendant accused of distributing pornography); *Heitkoetter v. Domm*, 2023 WL 122041, at *2, *8 (E.D. Cal. Jan. 6, 2023) (finding good cause to issue a limited protective order to prevent the defendant from publishing the plaintiff's brokerage statements on YouTube for the defendant's private financial gain, but ruled expressly that the court was "not ruling on a request to seal documents" and ordered the parties "to be surgical in their redactions" should they seek to file documents under seal); *Sampson v. City of El Centro*, 2015 WL 11658713, at *3 (S.D. Cal. Aug. 31, 2015) (involving police dispatch recordings and body cam footage); *Whalen v. Roe*, 429 U.S. 589, 593 (1977) (involving records of patient prescription drug information).

### E.    Revolut's Citation To "Public Scandal" Is Inapt

Revolut accuses Rippling—again without evidence—of seeking publicity rather than justice. Opp. 6. The lone case cited by Revolut proves the opposite. In *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, the plaintiff had "not even attempted to identify a legitimate purpose for its request to de-designate these documents" and "readily admit[ted] that it wants to use these documents to publicly discredit defendant in the media before the information contained in the documents becomes material to the case." 2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015). The court stated that "defendant is forewarned that it must meet a more exacting and onerous standard if and when any of these documents is submitted with a dispositive motion or as evidence at trial." *Id.* at *8. That day has come. The records at issue are central to Rippling's trade secret and RICO claims, as discussed in Rippling's MTD Opposition. ECF 127-1. Obviously, Revolut cannot meet this "exacting and onerous standard" by citing to a factually distinguishable case that expressly did not consider that standard.

Revolut also claims de-designation will "undermine and disrupt the ongoing process by frustrating discovery's need for collaboration and by inducing similar confidentiality disputes ***untethered to*** any filing related to the case's merits." Opp. 6 (emphasis added). But the Revolut records indisputably ***are*** tethered to a merits filing, indeed to Rippling's MTD Opposition. The only

party disrupting the judicial process is Revolut, who stubbornly insists on trying to conceal from the public evidence of an illegal bribery payment that is already public and central to this case.

### F. The Balancing Test Factors Favor Disclosure

In addition to failing to show a specific, cognizable harm, Revolut fails to show that the *Glenmede* balancing test favors non-disclosure. *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995).

***Privacy Interests***. As described above, there is no privacy interest in using a bank account to funnel bribes. Revolut again references PII (Opp. 7), but this is a red herring because Rippling has repeatedly confirmed it will redact PII such as the customer's address, account number, and routing number.[1]

Revolut also tries to draw a distinction between the form of the documents produced by Revolut and form of information that has already been filed publicly. Opp. 7. Its argument—that the former is a "regulated financial transaction record" while the latter is not—is incoherent. The document in the public domain is an official "Transfer Confirmation" issued by Revolut, similar in format to the records Revolut seeks to seal. *Compare* ECF 48-5 at 17 *with* ECF 127-2.

***Purpose for Disclosure***. As Revolut acknowledges (Opp. 8), Rippling has asserted that public disclosure is appropriate based on the public's right to access and because the Revolut records will be (and now have been) filed as exhibits to dispositive motion briefing. Disclosure is further warranted to combat Deel's public statement that Mr. O'Brien's sworn testimony is "fictionalized." ECF 48 at 3. As to the "timing" of Rippling's motion (Opp. 8), Rippling raised its initial challenge on August 22, 2025, asserting the records "do not qualify for AEO protection…. Nor do they merit CONFIDENTIAL treatment." ECF 135-2 at 7. On the August 28 meet-and-confer call, Revolut made clear it would not fully de-designate the material, and undersigned counsel explored possible compromise. *Id.* at 2, 5. No agreement was reached, and Rippling filed its motion 21 days after the initial challenge, as required by the Protective Order. ECF 74 ¶ 6.3.

---

[1] For the avoidance of doubt, Rippling agrees that the following information warrants redaction: the Account Number, ACH routing numbers, and street address from RTI-000004, and the Counterparty Account Nbrs from RTI-000006. *See* ECF 127-2.

Revolut never disputes that the records are of critical importance to the litigation. They are cited repeatedly in Rippling's MTD Opposition, including to establish defendant Dan Westgarth's "central role" in the alleged conspiracy, ECF 127-1 at 1, to support the "intentional acts" requirement of the personal jurisdiction analysis (*id.* at 8), to defend against the Conspiring Executives' *forum non conveniens* challenge (*id.* at 18, 20), and to refute the Conspiring Executives' arguments that Rippling failed to substantively plead its RICO claim (*id.* at 24). Courts consistently reject sealing of such critical evidence. *See MA Silva Corks USA, LLC v. MA Silva Holdings, Inc.*, 2023 WL 2940031, at *2-3 (N.D. Cal. 2023) (denying sealing of allegations that are "critical (even central) to Plaintiffs' claims"); *cf. Griffo v. Oculus VR, Inc.*, 2018 WL 11352472, at *2 (C.D. Cal. Sept. 20, 2018) ("The Court **is highly skeptical** of sealing relevant financial information….") (emphasis in original).[2] Revolut's insistence (Opp. 8) that Rippling cares more about a "publicity campaign" than about "substantiating its claims in Court" is baseless and false. The Ninth Circuit mandates a "strong presumption in favor of access," particularly with respect to dispositive motion practice. *Kamakana*, 447 F.3d at 1178. Rippling's motion accords with that presumption.

***Party Embarrassment***. As discussed above, there is no cause for Revolut to be "embarrassed" by the Court-ordered disclosure of a bribery transaction at the heart of a public lawsuit. Any "embarrassment" suffered by Revolut's customer comes from the use of an account to funnel an illegal bribe. Further, "that the production of records may lead to a litigant's embarrassment" is not, without more, grounds to prohibit disclosure. *Kamakana*, 447 F.3d at 1179. Revolut has not shown that publication of the Revolut records will cause any new embarrassment given that the bribery payment is already in the public record.

***Public Health and Safety***. Because the information at issue does not implicate health or safety, this factor does not favor disclosure.

***Fairness and Efficiency***. The recent history of this dispute illustrates the burden that Revolut's designation is placing on the parties and the Court. Rippling and Revolut have already been forced to file ten motion papers relating to Revolut's refusal to de-designate its production.

---

[2] Rippling's motion cited *MA Silva* and *Griffo*, Mot. 7, but Revolut does not address either case.

1  ECF 118, 119, 125, 127, 132, 133, 135, 136, 138, 139.  Given the centrality of the evidence, further
2  sealing motions will also be necessary unless the material is ruled not to warrant sealing.  To avoid
3  this burden, this factor favors public disclosure.

4     *Public Entities*.  Because the parties benefiting are not public entities or officials, this factor
5  does not favor disclosure.

6     *Importance Of Issues*.  The Revolut records are important evidence in this lawsuit, which
7  involves allegations of a wide-ranging enterprise through which a prominent Silicon Valley tech
8  company, including its CEO and senior executives, engaged in a systematic pattern of stealing trade
9  secret information from Rippling and from its other competitors.  Revolut does not dispute that the
10 records are material.  Instead, Revolut cites (Opp. 9) a ruling in which the documents at issue were
11 *not* "proffered as evidence on an issue relevant to defendant's liability or some other material issue
12 in this litigation."  *Crossfit*, 2015 WL 12466532, at *7.  Conversely here, Rippling has proffered the
13 Revolut records as supporting its RICO and trade secret claims.  This factor strongly favors
14 disclosure.

## CONCLUSION

16 For the foregoing reasons, the Court should order Revolut to remove the confidentiality
17 designations from its production.

| | | |
|---|---|---|
| 1 | Dated: October 3, 2025 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| 2 | | |
| 3 | | By  /s/ Jeff Nardinelli |
| 4 | | Alex Spiro (*pro hac vice*) |
| | | Scott Hartman (*pro hac vice*) |
| 5 | | Dominic Pody (*pro hac vice*) |
| | | 295 5th Avenue, 9th Floor |
| 6 | | New York, NY 10016 |
| | | Telephone: (212) 849-7000 |
| 7 | | Facsimile: (212) 849-7100 |
| | | alexspiro@quinnemanuel.com |
| 8 | | scotthartman@quinnemanuel.com |
| | | dominicpody@quinnemanuel.com |
| 9 | | Joseph Sarles (CA Bar No. 254750) |
| 10 | | Kathleen S. Messinger (CA Bar No. 329983) |
| | | 865 S Figueroa Street, 10th Floor |
| 11 | | Los Angeles, CA 90017 |
| | | Telephone: (213) 443-3000 |
| 12 | | Facsimile: (213) 443-3100 |
| | | josephsarles@quinnemanuel.com |
| 13 | | kathleenmessinger@quinnemanuel.com |
| 14 | | Jeff Nardinelli (CA Bar No. 295932) |
| | | 50 California Street, 22nd Floor |
| 15 | | San Francisco, CA 94111 |
| | | Telephone: (415) 875-6600 |
| 16 | | Facsimile: (415) 875-6700 |
| | | jeffnardinelli@quinnemanuel.com |
| 17 | | *Attorneys for Plaintiff* |
| | | *People Center, Inc. d/b/a Rippling* |