1
2
3
4                         UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    PEOPLE CENTER, INC.,                    Case No. 25-cv-02576-CRB   (LJC)
8                    Plaintiff,
                                             **ORDER RESOLVING DISCOVERY**
9           v.                               **LETTER BRIEF REGARDING**
                                             **PLAINTIFF'S INTERROGATORIES**
10   DEEL, INC., et al.,
                                             Re: Dkt. No. 146
11                   Defendants.

12

## I.    INTRODUCTION AND BACKGROUND

Plaintiff People Center, Inc., doing business as Rippling, asserts that Defendants Deel Inc. and certain of its officers engaged in a criminal enterprise to steal trade secrets from Rippling and other competitors. The most detailed allegations in Rippling's First Amended Complaint (FAC, ECF No. 57) concern the covert transfer of Rippling's internal documents to Deel by Keith O'Brien, who was employed by Rippling at the time, beginning in November 2024. Rippling also alleges that two of its other former employees shared confidential information with Deel when they began working for Deel in early 2024, FAC ¶¶ 49–50, and that Deel has undertaken other efforts to gather information from Rippling like using misleading Gmail accounts to impersonate potential customers, *Id.* ¶ 52.

The case is in its early stages, with multiple motions to dismiss or transfer the case pending before the presiding district judge. This Court previously denied a request by Deel to limit discovery to the subject matter of Deel's Motion to Dismiss for forum non conveniens (ECF No. 88) until after that motion is resolved. The Court found Deel's argument precluded by a stipulation the parties had entered not to stay discovery in connection with motions to dismiss.

ECF No. 101 at 1.[1]

Rippling served nine interrogatories on Deel, as follows:

INTERROGATORY NO. 1:
Identify each current or former Rippling employee whom Deel (including anyone acting on Deel's behalf) has contacted since September 1, 2022, and for each such Rippling employee, state: (i) the date of each such communication; (ii) the communication medium(s) (e.g., telephone, email, text message, face-to-face, etc.); (iii) how Deel obtained the contact Information for such Rippling employee; and (iv) the substance of each communication.

INTERROGATORY NO. 2:
Identify all Rippling Originated Information that Deel has obtained, used, and/or possessed (whether in electronic or physical form) during the period of September 1, 2022 through the present, and for all such Information, state: (i) how Deel obtained or accessed the Information and for what purpose; (ii) the date Deel first obtained or accessed the Information; (iii) the current location and disposition of the Information; and (iv) how Deel has used the Information, including but not limited to all Persons to whom Deel has disclosed the Information.

INTERROGATORY NO. 3:
Identify and describe in full detail every effort that Deel has made to gain Information about other companies from current or former employees of such other companies, including direct and indirect efforts, and for each such effort the name of the individual, the company for whom the individual worked, the people at Deel who were aware of the individual's activities, and all Information passed to Deel by the individual.

INTERROGATORY NO. 4:
Identify and describe all storage devices and/or Cloud Account(s) belonging to Deel or any Deel employee that contain or have ever contained Rippling Originated Information.

INTERROGATORY NO. 5:
Identify all Persons who, before the filing date of Rippling's Complaint, had any knowledge that O'Brien provided information related to Rippling to Deel, including for each Person (i) their name, (ii) the date of their first knowledge of O'Brien's work for Deel, (iii) a complete explanation of the scope of the Person's knowledge, and (iv) a complete explanation of the extent to which the Person communicated with O'Brien, guided O'Brien, provided or coordinated the provision of compensation to O'Brien, or in any way used or benefited from O'Brien's work for Deel.

INTERROGATORY NO. 6:
Identify all Documents and Information provided by O'Brien to Deel,

---

[1] Citations herein to documents filed in the docket of the case refer to page numbers as assigned by the Court's ECF filing system unless otherwise indicated.

including but not limited to Documents and Information about: Rippling sales leads, prospects, and customers; Rippling competitive intelligence cards; Rippling customer support strategies; Rippling churn-risk avoidance strategies; Rippling pricing strategies; Rippling partnership strategies; Rippling R&D efforts; Rippling's go-to-market plans, roadmap, strategy, and launch dates; Rippling personnel responsible for products and/or geographic regions; and all other Documents and Information relating in any way to Rippling or to Deel's efforts to compete with Rippling.

INTERROGATORY NO. 7:
Identify each actual or potential client or customer whom Deel (including anyone acting on Deel's behalf) has contacted since September 1, 2022, and for each such client or customer, state: (i) the date of each initial communication; (ii) the communication medium(s) (e.g., telephone, email, text message, face-to-face, etc.); (iii) how Deel obtained the contact information for the potential client or customer; and (iv) the substance of each such initial communication.

INTERROGATORY NO. 8:
For each of the parties identified in response to Interrogatory No. 7 for whom Deel knew or had reason to believe, at the time it contacted them, that they were actual customers of Rippling or had been identified by Rippling as potential customers, state in detail how Deel gained that information as to each such client or customer.

INTERROGATORY NO. 9:
Identify all Persons with any knowledge of any facts alleged in Rippling's Complaint (or in any subsequent amended complaints filed by Rippling), including in your response each Person's name, current employer and title, contact information, and a description of that Person's relevant knowledge.

*See generally* ECF No. 146-1 (Deel's amended responses, which recite Rippling's interrogatories).

The parties have filed a joint discovery letter raising three overarching disputes regarding some or all of those interrogatories and two disputes regarding specific interrogatories (Nos. 1 and 3). The Court presumes the parties' familiarity with record and with background law regarding civil discovery in federal court, and resolves the parties' disputes as follows.

The parties note that they resolved at least one dispute during the process of meeting and conferring before filing their joint letter, but do not say what that was. *See* ECF No. 146 at 1. It is therefore not entirely clear whether all nine of the interrogatories listed above are still pending, or if Rippling as agreed to withdraw, defer, or limit any of them. Nothing in this Order is intended to displace any agreement that the parties have reached regarding these interrogatories.

United States District Court
Northern District of California

1    II.    **ANALYSIS**

2         A.    **Date Range**

3         Rippling originally sought responsive information dating to the beginning of 2022.  Deel

4    contends that all interrogatories should be limited to the period in which O'Brien allegedly spied

5    on Rippling for Deel beginning in later 2024.  ECF No. 146 at 1.  Deel offered as a compromise to

6    set January 1 of that year as the starting bound for its answers.  *Id.* at 2.  Rippling proposed a

7    compromise date of September 2022.  *Id.* at 1.

8         Rippling alleges that Deel obtained confidential information from another entity, a non-

9    party startup accelerator, from former employees that Deel hired beginning in 2022.  FAC ¶¶ 29,

10   34, 166.  Rippling also alleges that Deel's head of sales threatened to "play dirty" in competing

11   with Rippling for employees and information in September of 2022.  *Id.* ¶ 43 & Ex. 3.  And

12   Rippling further alleges that the two companies began competing more directly in the fall of 2022

13   when Rippling launched global workforce management and payroll products.  *Id.* ¶ 41.

14        Those allegations, in conjunction with allegations that Deel later obtained Rippling's

15   confidential information from at least three former Rippling employees, support discovery into

16   potential efforts by Deel to obtain such information before the 2024 incidents that Rippling has

17   been able to document without discovery.  The Court adopts Rippling's compromise proposal of

18   September 2022 (specifically September 1, 2022) as the starting date for all interrogatory

19   responses.

20        B.    **"Rippling Originated Information"**

21        The parties dispute whether Rippling has provided a sufficient definition of "Rippling

22   Originated Information," a limiting term that appears in some of Rippling's interrogatories (Nos. 2

23   and 4) and that Deel seeks to impose on its responses to others.  ECF No. 146 at 2–4.  In a

24   decision cited by both parties, this Court has previously addressed the need to identify trade

25   secrets at issue in litigation:

26            In trade secret cases defining the scope of discovery is widely
             recognized as being particularly difficult. See Uni-Sys., LLC v. U.S.
27           Tennis Ass'n, No. 17CV147KAMCLP, 2017 WL 4081904, *4
             (E.D.N.Y. Sept. 13, 2017); Peter S. Menell et al., Trade Secret Case
28           Management Judicial Guide, 2023 WL 4687411, Ch. 1.2.1 (2023).

4

1

2    The quandary involved in identifying the trade secrets with the appropriate level of specificity, while also protecting trade secrets throughout the litigation, "often requires the court to assist the parties in customizing the discovery process to . . . facilitate[e] the exchange of sensitive information, often to competing business enterprise defendants." Menell et al., at Ch. 1.2.1. The Court in <u>Social Apps, LLC v. Zynga, Inc.</u> explained the sensitivities inherent in trade secret litigation.

3

4

5    "The nature of a trade secrets claim is such that pleading is necessarily general. To require more detail would be to force a plaintiff to disclose, in a publicly filed pleading, the very secrets it seeks to protect. However, the countervailing concern is that discovery must be limited to those matters that the plaintiff truly contends are secret. Otherwise the discovery mechanism, and the litigation itself, could become a tool to force a defendant to reveal its own trade secrets in defense against unfounded or specious claims."

6

7

8

9

10    No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012).

11

12    *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-cv-08073-AMO (LJC), 2023 WL 5959427, at *3

13    (N.D. Cal. Sept. 12, 2023).

14          Deel asserts that Rippling is required by law to identify its trade secrets with "reasonable

15    particularity" before "commencing discovery," relying on dicta from *Auris* discussing section

16    2019.210 of the California Code of Civil Procedure.[2]  ECF No. 146 at 3 (citing *Auris*, 2023 WL

17    5959427, at *5).  In *Auris*, this Court was faced with a contention interrogatory by the defendants

18    seeking a *more* specific definition than would be required by section 2019.210—a different

19    posture from this case, where only Plaintiff Rippling's interrogatories are before the Court.  The

20    state statute was not directly at issue, and the Court held that the contention interrogatory was

21    premature.  The Court cited a footnote from the Ninth Circuit, which states that "[f]ederal courts

22    have applied the state provision in federal cases."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*,

23    978 F.3d 653, 658 n.1 (9th Cir. 2020).  But both *InteliClear* and the district court case it cites for

24    that proposition dealt with trade secret claims under both state and federal law, and the district

25

26    [2] "In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Cal. Civ. Proc. Code § 2019.210.

27

28

*United States District Court*
*Northern District of California*

court explained that it considered the statute appropriate under the *Eerie* doctrine as not in conflict with any federal rule. *Soc. Apps*, 2012 WL 2203063, at *1–2. In context, *InteliClear*'s reference to "federal cases" means cases in federal court that include claims under the state trade secrets law to which section 2019.210 applies, not any case under the federal Defense of Trade Secrets Act (DTSA).

This case does not involve a state claim under California's implementation of the Uniform Trade Secrets Act, but instead a DTSA claim, as well as other state law claims that are not governed by section 2019.210. The Court therefore has no occasion to apply that provision under the *Eerie* doctrine. That said, Rules 26 and 33 of the Federal Rules of Civil Procedure still require Rippling to provide reasonable and proportional interrogatories, including with respect to any defined terms included therein.

Rippling contends that Deel waived any objection to the term "Rippling Originated Information" by not including such an objection in its original response, instead conceding that it understood the term as referring to the allegations of Rippling's First Amended Complaint. ECF No. 146 at 2. Deel contends that it sufficiently objected to the definition. *Id.* at 3. Both parties' positions have some truth: Deel's original response presented an objection to the definition, but that objection specifically included an interpretation of the term that Deel would use:

> Deel objects to the definition of "Rippling Originated Information" because it (i) requires Deel to reach a legal conclusion in order to determine what falls within the definition; (ii) is vague and ambiguous regarding what falls within the definition; (iii) causes the Interrogatories to seek information not relevant to claims or defenses at issue in this action; and (iv) seeks information from outside of Deel's possession, custody, or control. Deel interprets "Rippling Originated Information" to mean the "Corporate Strategy Trade Secrets" and "Sales and Marketing Trade Secrets" alleged in Rippling's FAC, which Deel does not concede are actually legally protectible trade secrets in any event.

ECF No. 146-2 at 7, ¶ 6.

Addressing Interrogatory Nos. 2 and 4, which most directly seek responses pertaining to "Ripping Originated Information," Deel raised objections to the timing of the interrogatories with respect to Deel's pending motions, the burden of investigation and response, overbreadth, relevance, privilege, and other concerns, but did not assert that the interrogatories were too vague

6

United States District Court
Northern District of California

1  to allow for a response.  ECF No. 146-2 at 12–14, 17–19.  To the extent Deel now argues that

2  Rippling's interrogatories lack a sufficient definition of this term to provide *any* response, the

3  Court agrees with Rippling that such an objection has been waived.  Deel's objection to the

4  definition conceded that Deel was able to discern an interpretation of the term on which it based

5  its objections to specific interrogatories, and applying that interpretation, those objections to

6  interrogatories did not claim that the interrogatories were too vague for Deel to respond.

7        But live questions remain as to what that definition is, and whether it is overly broad or

8  burdensome.  The record before the Court includes only Deel's responses to the interrogatories,

9  not Rippling's interrogatories as originally served, so it is not clear whether Rippling included a

10  definition of "Rippling Originated Information" in its set of interrogatories.  During the meet-and-

11  confer process, however, Rippling offered the following lengthy definition:

> "Rippling Originated Information" means the following information originating from Rippling obtained or used by Deel through improper means: (a) information wrongly obtained by Deel through its access as a Rippling customer while developing competing products (FAC ¶¶ 40-44), (b) the "pages of insights" on Rippling that Chris Lee claimed were gathered from Deel sales representatives posing as job applicants and other information obtained through Deel's "sustained and targeted" recruitment of Rippling personnel that served as "a mechanism for misappropriating trade secrets and confidential business information" (FAC ¶¶ 43-47, 166), (c) information taken by former Rippling employees recruited by Deel, including documents downloaded by Conspirator-1 before his termination by Rippling and PEO-related confidential documents retained by Conspirator-2 (FAC ¶¶ 27-28, 49-52, 162), (d) information from Rippling gathered by Deel employees falsely posing as legitimate customer prospects (FAC ¶¶ 52-53), (e) Rippling's product roadmaps, core initiatives, launch strategies, country-by-country pricing models, sales forecasts, customer lists, recruitment targets, go-to-market tactics, and information about Rippling's customers for particular products in particular countries (FAC ¶¶ 49, 69, 89, 91, 94-102, 105, 177), (f) Rippling's sales pipeline information, competitive intelligence cards, customer-specific information stolen by Keith O'Brien from Rippling's Slack channels and computer systems, and customer retention strategies (FAC ¶¶ 78-88, 103-104, 106-107), (g) information about Rippling's employees used by Deel to attempt to hire those employees away from Rippling (FAC ¶¶ 73, 108-112), and (h) information used by Deel to advance a false press attack against Rippling (FAC ¶¶ 113-117).

ECF No. 146 at 7.

        Some of the items in that list are unduly broad and burdensome, in that they are not

7

United States District Court
Northern District of California

reasonably tailored to information that Rippling might plausibly argue to be trade secrets. Items (a), (b), and (d) appear to include information that Rippling freely disclosed to actual customers, prospective customers, and prospective employees with no indication of any meaningful expectation of confidentiality, which therefore seem unlikely to qualify as trade secrets. Items (g) and (h) similarly lack any indicia of confidentiality. Even applying the introductory clause of "information originating from Rippling obtained or used by Deel through improper means," an employee's biography on a public Rippling website might qualify for item (g) if Rippling contends that Deel "used" that information "improper[ly]" to attempt to hire the employee. Similarly, factual public information about Rippling's plans or products might fall within item (h) if Rippling contends Deel used it "to advance a false press attack." For those categories, assembling all responsive information might prove impossible. The apparent requirement that Deel concede "improper means" in obtaining or disclosing information is also problematic, where Deel apparently denies wrongdoing as to some (perhaps all) of the conduct in dispute.

For the purpose of the present interrogatories, the Court therefore limits the definition of "Rippling Originated Information" as follows.[3] This definition is based on Rippling's compromise proposal above, but omits portions of it and adjusts the subpart letters without explicit indication. The Court's additions are designated by italics.

> "Rippling Originated Information" means the following information originating from Rippling: (a) *non-public* information taken by former Rippling employees recruited by Deel *and provided to Deel*, including documents downloaded by Conspirator-1 before his termination by Rippling and PEO-related confidential documents retained by Conspirator-2 (FAC ¶¶ 27-28, 49-52, 162), (b) Rippling's product roadmaps, core initiatives, launch strategies, country-by-country pricing models, sales forecasts, customer lists, recruitment targets, go-to-market tactics, and information about Rippling's customers for particular products in particular countries, *to the extent provided to Deel by Keith O'Brien or any current or former Rippling employees recruited by Deel* (FAC ¶¶ 49, 69, 89, 91, 94-102, 105, 177), *and* (c) Rippling's sales pipeline information, competitive intelligence cards, customer-specific information stolen by Keith O'Brien from Rippling's Slack channels and computer systems, and *(d) Rippling's* customer retention strategies *provided by O'Brien or by current or former Rippling employees recruited by Deel* (FAC ¶¶ 78-88, 103-104, 106-107).

---

[3] Deel's request for further briefing of this definitional dispute is denied. *See* ECF No. 146 at 3.

1    *See* ECF No. 146 at 7.  The Court recognizes that this definition may include information that does

2    not qualify as trade secrets, but finds it reasonable and proportional to Rippling's legitimate

3    interest in assessing what (if any) confidential information Deel obtained and developing its

4    claims to the extent such evidence might support them.

5      To the extent Rippling wishes to pursue other categories of information excluded by that

6    definition, it may serve additional interrogatories.  Rippling should be prepared to explain why

7    such further interrogatories are relevant to its claims and proportional to the needs of the case.

8      **C.**  **Compound Interrogatories**

9      "Unless otherwise stipulated or ordered by the court, a party may serve on any other party

10   no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional

11   interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."  Fed. R. Civ.

12   P. 33(a)(1).

13     Deel asserts that all of Rippling's interrogatories except Nos. 4 and 8 are compound, and

14   therefore should count as more than nine, potentially exceeding the default limit of twenty-five.

15   ECF No. 146 at 4.  Deel's arguments rest on two issues: that several of Rippling's interrogatories

16   include subparts, and that several ask Rippling to provide information about "each" of multiple

17   items in a category.  Rippling contends that each interrogatory is appropriately limited to a "single

18   common theme."  *Id.* (quoting *In re Questcor Pharms., Inc. Sec. Litig.*, No. SACV 12-1623-DMG

19   (JPRx), 2015 WL 12672130, at *1 (C.D. Cal. Jan. 21, 2015)).

20     As Deel acknowledges, courts have generally held that subparts of interrogatories only

21   count separately when they "introduce[] a line of inquiry that is separate and distinct from the

22   inquiry made by the portion of the interrogatory that precedes it."  *Id.* (quoting *In re Soc. Media*

23   *Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL

24   5190206, at *2 (N.D. Cal. Dec. 20, 2024)).  Courts have held, for example, that "an interrogatory

25   that asks about facts, people who know the facts, and documents that reflect the facts is one

26   interrogatory . . . if the facts, people and documents all relate to the same primary question."

27   *Finjan, Inc. v. Qualys Inc.*, No. 18-cv-07229-YGR (TSH), 2020 WL 4923964, at *1 (N.D. Cal.

28   Aug. 21, 2020) (summarizing and following *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293,

1    297 (N.D. Cal. 2016) (Ryu, M.J.)).

2          Deel also notes that this Court held in *Auris* that interrogatories "seeking information about

3    'each' of multiple things comprise discrete subparts for each of those things." *Id.* (quoting *Auris*,

4    2023 WL 5959427, at *6).  But that principle also depends on context.  Interrogatories seeking

5    lists of each responsive item are common and generally acceptable.  It is only when an

6    interrogatory seeks excessive detail about each item in such a list that each might count separately.

7          Moreover, as a general matter, Rule 33's presumptive cap of twenty-five interrogatories is

8    subject to modification consistent with Rule 26's general principles of relevance, burden, and

9    proportionality.  A single unduly burdensome interrogatory may be improper even if it is the only

10   one served in a case, and far more than twenty-five interrogatories can be appropriate in some

11   cases if their burden is limited and the needs of the case so warrant.  As such, extensive litigation

12   over the semantics of what counts as one or multiple interrogatories can serve to distract from the

13   more important question of whether the request is relevant and proportional.  Providing a

14   "scorecard" of how many interrogatories Rippling has served will be helpful to guide the parties in

15   any further discovery.  In doing so, however, the Court will consider the relevance and burden of

16   each request, not merely the structure in which it is presented.

17          With those principles in mind, the Court addresses the interrogatories at issue as follows.

18           INTERROGATORY NO. 1:
             Identify each current or former Rippling employee whom Deel
19           (including anyone acting on Deel's behalf) has contacted since
             September 1, 2022, and for each such Rippling employee, state: (i) the
20           date of each such communication; (ii) the communication medium(s)
             (e.g., telephone, email, text message, face-to-face, etc.); (iii) how
21           Deel obtained the contact Information for such Rippling employee;
             and (iv) the substance of each communication.
22

23          Interrogatory No. 1 essentially seeks a list of all instances where Deel communicated with

24   current or former Rippling employees, including the date, medium, and substance of such

25   communications.  Such a list is properly considered one interrogatory, construing the "substance"

26   portion of the request as seeking a general topic rather than a detailed summary.  The interrogatory

27   also asks "how Deel obtained the contact Information for such Rippling employee."  In the

28   Court's view, that issue is sufficiently distinct from the list of communications to count separately,

though it calls for a sufficiently cohesive list of information to only count as one additional

question.  The Court views this interrogatory as effectively seeking two lists: one listing each

Rippling *employee*, including the relevant information of how Deel obtained contact information;

and one listing each *communication*, including details pertaining to such communications.[4]

Interrogatory No. 1 therefore counts as two of Rippling's interrogatories.

> INTERROGATORY NO. 2:
> Identify all Rippling Originated Information that Deel has obtained, used, and/or possessed (whether in electronic or physical form) during the period of September 1, 2022 through the present, and for all such Information, state: (i) how Deel obtained or accessed the Information and for what purpose; (ii) the date Deel first obtained or accessed the Information; (iii) the current location and disposition of the Information; and (iv) how Deel has used the Information, including but not limited to all Persons to whom Deel has disclosed the Information.

Parts (i) and (ii) of Interrogatory No. 2 (as limited above by the definition of "Rippling

Original Information) are sufficiently related to fall within a single interrogatory.  The same goes

for part (iii) to the extent Deel is able to answer it for a given item of information, though

information will not always have a discrete "location" or "disposition."  Part (iv), however, calls

for a more detailed explanation, such that it would count as a separate interrogatory for each item

to which it applies.  *See, e.g.*, *Auris*, 2023 WL 5959427, at *6.  Because the number of items is not

yet clear and might exceed the twenty-five interrogatory presumptive limitation, Deel need not

answer part (iv) of this interrogatory.  Rippling may serve additional interrogatories regarding

Deel's use of particular categories of information if it so chooses.

Running total: 3 interrogatories.

> INTERROGATORY NO. 3:
> Identify and describe in full detail every effort that Deel has made to gain Information about other companies from current or former employees of such other companies, including direct and indirect efforts, and for each such effort the name of the individual, the company for whom the individual worked, the people at Deel who were aware of the individual's activities, and all Information passed to Deel by the individual.

---

[4] The Court expects the parties, if they have not already, to negotiate an appropriate endpoint for listing communications with former Rippling employees that Deel ultimately hired.

For the reasons discussed separately below, the Court holds that Deel need not answer this interrogatory at this time. It therefore does not count against Rippling's running total, which remains at 3.

> INTERROGATORY NO. 4:
> Identify and describe all storage devices and/or Cloud Account(s) belonging to Deel or any Deel employee that contain or have ever contained Rippling Originated Information.

This interrogatory is not included in the heading for this section of the joint letter as a purportedly compound interrogatory, and Deel does not address it specifically in its arguments. ECF No. 146 at 4. The Court therefore presumes it has not been challenged and counts it as a single interrogatory. Running total: 4 interrogatories.

> INTERROGATORY NO. 5:
> Identify all Persons who, before the filing date of Rippling's Complaint, had any knowledge that O'Brien provided information related to Rippling to Deel, including for each Person (i) their name, (ii) the date of their first knowledge of O'Brien's work for Deel, (iii) a complete explanation of the scope of the Person's knowledge, and (iv) a complete explanation of the extent to which the Person communicated with O'Brien, guided O'Brien, provided or coordinated the provision of compensation to O'Brien, or in any way used or benefited from O'Brien's work for Deel.

Parts (i) and (ii) of this interrogatory count as a single question. Parts (iii) and (iv), construed broadly, could count as a separate interrogatory for each person at issue. The Court therefor declines to construe them broadly. Deel must specify whether each person listed communicated with O'Brien, provided compensation to him, or coordinated the provision of such compensation. But for the same reasons discussed with respect to Interrogatory No. 2, Deel need not describe the person's knowledge or the nature of such interactions in detail. Such issues may be addressed through future interrogatories or depositions if Rippling so chooses.

Running total: 5 interrogatories

> INTERROGATORY NO. 6:
> Identify all Documents and Information provided by O'Brien to Deel, including but not limited to Documents and Information about: Rippling sales leads, prospects, and customers; Rippling competitive intelligence cards; Rippling customer support strategies; Rippling churn-risk avoidance strategies; Rippling pricing strategies; Rippling partnership strategies; Rippling R&D efforts; Rippling's go-to-market plans, roadmap, strategy, and launch dates; Rippling personnel responsible for products and/or geographic regions; and all

United States District Court
Northern District of California

1    other Documents and Information relating in any way to Rippling or
      to Deel's efforts to compete with Rippling.

Presuming a reasonable and limited interpretation of the term "identify," this interrogatory

seeks a sufficiently discrete and coherent list to only count as one question. Running total: 6

interrogatories.

> INTERROGATORY NO. 7:
> Identify each actual or potential client or customer whom Deel
> (including anyone acting on Deel's behalf) has contacted since
> September 1, 2022, and for each such client or customer, state: (i) the
> date of each initial communication; (ii) the communication
> medium(s) (e.g., telephone, email, text message, face-to-face, etc.);
> (iii) how Deel obtained the contact information for the potential client
> or customer; and (iv) the substance of each such initial
> communication.

For substantially the same reasons discussed above with respect to Interrogatory No. 1, this

counts as two interrogatories: one seeking a list of actual or potential clients or customers,

including when and how they were initially contacted; and the other seeking a list of initial

communications, including a general description of their substance. Running total: 8

interrogatories.

> INTERROGATORY NO. 8:
> For each of the parties identified in response to Interrogatory No. 7
> for whom Deel knew or had reason to believe, at the time it contacted
> them, that they were actual customers of Rippling or had been
> identified by Rippling as potential customers, state in detail how Deel
> gained that information as to each such client or customer.

This interrogatory is not included in the heading for this section of the joint letter as a

purportedly compound interrogatory, and Deel does not address it specifically in its arguments.

ECF No. 146 at 4. The Court therefore presumes it has not been challenged and counts it as a

single interrogatory. Running total: 9 interrogatories.

> INTERROGATORY NO. 9:
> Identify all Persons with any knowledge of any facts alleged in
> Rippling's Complaint (or in any subsequent amended complaints
> filed by Rippling), including in your response each Person's name,
> current employer and title, contact information, and a description of
> that Person's relevant knowledge.

This interrogatory seeks a sufficiently discrete and coherent list to count as a single

interrogatory, so long as the "description of each Person's relevant knowledge" is constrained to a

general summary rather than a comprehensive recitation. If Rippling seeks more detailed

1    explanations of certain witnesses' knowledge, it may serve additional interrogatories tailored to

2    those witnesses or explore the topic through depositions.

3         Accordingly, and limiting the scope of certain interrogatories as discussed above, the Court

4    concludes for the purpose of Rule 33's presumptive limit that Rippling has served ten of its

5    allotted twenty-five interrogatories.  Rippling therefore has fifteen interrogatories remaining.[5]

6         **D.    Challenge to Interrogatory No. 1**

7    Interrogatory No. 1 asks Deel to:

> Identify each current or former Rippling employee whom Deel
> (including anyone acting on Deel's behalf) has contacted since
> September 1, 2022, and for each such Rippling employee, state: (i) the
> date of each such communication; (ii) the communication medium(s)
> (e.g., telephone, email, text message, face-to-face, etc.); (iii) how
> Deel obtained the contact Information for such Rippling employee;
> and (iv) the substance of each communication.

12   ECF No. 146-1 at 11.

13        Deel contends that this interrogatory should be limited to contact with current and former

14   Rippling employees that is "tethered to alleged use of 'Rippling Originated Information,'

15   assuming Rippling could identify with particularity what trade secrets allegedly comprised that

16   Information."  ECF No. 146 at 5.  According to Deel, the interrogatory should not encompass all

17   efforts it may have taken to recruit current or former Rippling employees, because "[r]ecruiting is

18   not unlawful conduct."  *Id.*  Rippling argues in response that it has sufficiently "allege[d] a nexus

19   between recruiting and trade secret theft because the Enterprise targeted people from Rippling to

20   obtain Rippling's trade secrets."  *Id.*

21        The Court agrees with Rippling that Deel's efforts to recruit Rippling employees are fair

22   game for discovery.  Such recruitment is not inherently wrongful, but discovery under Rule 26 is

23   not limited to inherently incriminating evidence.  Rippling has alleged that Deel engaged in a

24   practice of recruiting other entities' (and specifically Rippling's) employees for the purpose of

---

[5] To the extent that reasonable minds might differ as to whether this Order accurately counts the number of interrogatories Rippling has served, the Court would in the alternative adjust the number of interrogatories allowed pursuant to Rule 33(a)(1) and Rule 26(b)(2)(a) based on the burden of the interrogatories served and the needs of the case, such that Rippling has fifteen interrogatories remaining.

1    obtaining confidential information.  It is reasonable and proportional to the needs of the case for

2    Rippling to take discovery to investigate the extent to which that practice extended beyond the

3    specific incidents of which Rippling is already aware.  Deel must therefore respond to

4    Interrogatory No. 1, subject to the September 1, 2022 start date imposed above, but without a

5    restriction to "Rippling Originated Information."

        **E.    Challenge to Interrogatory No. 3**

6

7    Interrogatory 3 asks Deel to:

8        Identify and describe in full detail every effort that Deel has made to
         gain Information about other companies from current or former
9        employees of such other companies, including direct and indirect
         efforts, and for each such effort the name of the individual, the
10       company for whom the individual worked, the people at Deel who
         were aware of the individual's activities, and all Information passed
11       to Deel by the individual.

12   ECF No. 146-1 at 16.

13       This Court has previously enforced the parties' agreement not to stay discovery pending

14   Judge Breyer's resolution of Defendants' motions to dismiss.  ECF No. 101 at 1.  Judge Breyer

15   denied Deel's request for relief from that order, confirming "that the parties' stipulation precludes

16   an argument that discovery requests not germane to the motion to dismiss are per se not

17   proportional to the needs of the case."  ECF No. 110.

18       This interrogatory, however, relates to a field of discovery that is relevant (if at all) only to

19   a discrete theory of liability (RICO liability predicated in part on conduct unrelated to Rippling)

20   that might or might not survive Defendants' motions to dismiss, and which would not necessarily

21   proceed in another forum (e.g., Ireland) if the case did not proceed here.  Such discovery might be

22   relevant if Rippling's RICO claims go forward, but Interrogatory No. 3 strays well beyond the

23   issues of Deel's relationship *with Rippling* that make up the heart of the case and are likely to be

24   most relevant to any non-RICO claims.  Tabling this interrogatory for the moment will not prevent

25   Rippling from commencing discovery more closely related to those core issues.  As a matter of

26   prudence and discretion, the Court finds that a response to this interrogatory *at this time* would be

27   unduly burdensome and disproportionate to the needs of the case.  Rippling's request to compel a

28   further response is therefore DENIED WITHOUT PREJUDICE.

1         Even if Rippling's RICO claims proceed, this interrogatory is potentially overbroad.  For

2    example, routine interview questions about an applicant's current and past work experience

3    arguably seek "Information about other companies" from their "current or former employees."  If

4    Judge Breyer declines to dismiss the RICO claims, and the case has not otherwise been narrowed

5    to exclude alleged misconduct with respect to non-parties, the parties shall meet and confer in an

6    effort to agree on a scope for Interrogatory No. 3 that is more narrowly tailored to capture

7    potential misconduct.[6]

## III.    CONCLUSION

9         Deel is ORDERED to respond to Rippling's interrogatories, as limited by the Court's

10   analysis above, no later than November 25, 2025.

11        **IT IS SO ORDERED.**

12   Dated: November 7, 2025

 

 

 

 

_____
LISA J. CISNEROS
United States Magistrate Judge

---

[6] The parties might reasonably disagree over whether particular corporate intelligence efforts are wrongful.  The interrogatory therefore need not be *limited* to acts of misconduct, but tying the interrogatory in some way to confidential, non-public, or proprietary information might serve as an appropriate middle ground.  The parties are likely better positioned than the Court to determine in the first instance a useful, workable, and appropriate scope, and the Court declines to resolve the issue at this time.

United States District Court
Northern District of California