RE: *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB
**Joint Letter re: Rippling's Interrogatories 10–13 and Requests for Inspection**

<u>Dear Judge Cisneros:</u> This letter addresses the parties' disputes over Rippling's Interrogatories 10–13 and its Requests for Inspection. The initial Case Management Conference is set for March 27, 2026; thus, no deadlines have been set for (1) fact and expert discovery, (2) the last day to hear dispositive motions, or (3) pretrial conference or trial. ECF 175.

**<u>Rippling's position:</u>** Deel is no longer even pretending to comply with its discovery obligations. Last summer, the Court rejected Deel's bid to stay discovery. Judge Breyer has now denied each of the motions to dismiss that Deel previously cited as an excuse to delay discovery. But Deel still has not produced a single document, has not even begun reviewing the responsive documents it already gathered, and refuses to commit to any timeline for production. Meanwhile, on February 17, Deel objected across the board to four interrogatories and two requests for forensic inspection that go to the core issue in this case: Deel's communications with its spy at Rippling, Keith O'Brien. It is becoming abundantly clear that Deel will not produce discovery until the Court orders it, leaving Rippling no choice but to seek an order compelling Deel to respond to Rippling's Rog Nos. 10-13 and Inspection Request Nos. 1-2, and to begin producing documents immediately.

Deel responds below by touting its purported efforts to comply with discovery. This is gross misdirection. Not only has Deel failed to produce any documents, but it has only responded to six interrogatories and only after being ordered by the Court (ECF No. 148), and four of those responses are still deficient and now subject to another motion (ECF No. 161). Given this record, it is remarkable that Deel also now requests to delay *all* interrogatories until after the completion of document production. This is a transparent effort to cause further obstruction: by forcing Rippling to *guess* where it might find responsive documents, while putting off the moment when Deel must respond substantively to the detailed allegations of Deel's months-long corporate espionage scheme and subsequent cover-up—none of which Deel has denied so far. Deel's other, last-ditch proposal—that it will simply adopt whatever responses the Individual Defendants produce later—is equally deficient; Deel must conduct its own, comprehensive investigation and provide complete responses. Clearly, the only way that will happen is if the Court orders it.

***Rogs 12 and 13:*** Deel refuses to answer two Rogs that seek the basis for factual assertions *Deel* has already made in its Rule 26 disclosures and in the December 23 joint letter brief to the Court. Rog 12 asks Deel to describe the factual basis for its assertion, in its Rule 26 disclosures, that Mr. O'Brien affidavit lied about the spying scheme in his April 1, 2025 sworn affidavit. That affidavit describes how Deel's seniormost executives engaged Mr. O'Brien to steal Rippling's trade secrets, closely directed his spying activities, instructed him to cover his tracks, and directed him to violate an evidence preservation order issued by the Irish High Court. See ECF No. 68-11. Deel knows this affidavit is case-critical evidence, and its Rule 26 disclosures claim that five of its employees (two of whom are not individual defendants) have relevant knowledge about "falsehoods, distortions, mischaracterizations, and omissions" in that affidavit. Ex. E at 6-8. Rog 12 simply asks Deel to identify those "falsehoods" (etc.) and describe the underlying factual basis. Ex. A at 4.

Deel refused to respond, claiming that Rog 12 is a "premature" contention interrogatory. No. The O'Brien affidavit addresses the central issue in this case: Deel's seniormost executives' misconduct as part of their conspiracy to spy on Rippling. To the extent Deel intends to dispute any of Mr. O'Brien's testimony, it must identify the specific testimony, to "clarify the issues in the case [and] narrow the scope of the dispute." *Auris Health, Inc. v. Noah Med. Corp.*, 2023 WL 5959427, at *3 (N.D. Cal. Sep. 12, 2023) (Cisneros, J.) (cleaned up); *see also Resh, Inc. v. Skimlite Mfg. Inc.*, 2022 WL 16935625, at *3 (N.D. Cal. Nov. 14, 2022) (same). There is no need or justification for Deel to delay, because Deel already has all the information it needs to identify what parts of Mr. O'Brien's testimony about ***Deel's own officers' misconduct*** are "false" (etc.)—if any. *See, e.g.*, *Nelson v. Capital One Bank*, 206 F.R.D. 499, 501 (N.D. Cal. 2001) (no basis to defer contention rogs where "information is in the hands of the . . . respondent"). Deel should be ordered to provide a complete response to Rog 12, or be precluded from later challenging Mr. O'Brien's affidavit.

Rog 13 asks Deel to identify and describe the investigative steps taken in connection with its "reasonable investigation to date" that—according to Deel—"showed that Deel does not have any

information supporting Rippling's allegations." Ex. A at 4. Deel relied on that representation to justify its failure to gather information from the individual Defendants in response to Court-ordered interrogatories (ECF No. 161 at 4), but now refuses to disclose its investigative steps based on the work product doctrine. That objection fails for two reasons. **First**, Rippling has already demonstrated "good cause to believe that [Deel] has not complied with [its] duty to locate all responsive information," *see id.* at 2–3, so the Court has clear authority to compel disclosure of Deel's investigation. *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 657 (N.D. Cal. 2004); *see also Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (same). **Second**, even if Deel could assert work product protection (it cannot), Deel waived it by relying on the "reasonableness" of its investigation in opposing Rippling's discovery motion. *See, e.g., Zeiter v. Walmart, Inc.*, 2024 WL 1907385, at *3 (D. Nev. 2024) (permitting discovery into defendant's investigation where defendant relied on representations regarding investigation to avoid sanctions); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 1366037, at *2 (N.D. Cal. 2013) (finding implied waiver over details of attorney-led investigation).

**Rogs 10 and 11 and RFIs:** Rogs 10 and 11 seek information about the devices and accounts Deel used to communicate with O'Brien or to access communications from him. Ex. A at 3–4. Rippling also served two corresponding requests for forensic inspection of those devices and accounts. Ex. B at 5. Deel's responses stonewalled across the board. Then, on the day before this filing, Deel offered to adopt the individual Defendants' (supposedly) forthcoming responses to similar rogs. Deel still refuses any inspection of any device or account. Deel should be ordered to fully comply.

This discovery is necessary because Deel's communications with O'Brien are critical evidence in this case, and Deel's employees ***systematically destroyed that evidence in real time***. Mr. O'Brien's affidavit testifies that Deel's employees used disappearing Telegram messages to communicate with him, hid their Telegram identities, deleted call records, and instructed O'Brien at the outset to "take steps to ensure there was no evidence of the communications." ECF No. 68-11 ¶ 11; *see also id.* ¶¶ 7–10. Then, after the Irish court entered an evidence preservation order against O'Brien, two Deel employees (Alex Bouaziz and Dan Westgarth) renamed and exited a WhatsApp group with O'Brien, and a third Deel employee (Andrea David Mieli, Deel's Head of Legal) instructed O'Brien to procure a burner phone and create a new Telegram account. *Id.* ¶¶ 19–32. The next day, a fourth Deel employee (in-house attorney Asif Malik) instructed O'Brien to destroy the phone he used to send Rippling's trade secrets to Bouaziz. *Id.* ¶ 34. O'Brien complied, destroying it with an axe. *Id.* By refusing to respond to Rog 12 (*see above*), Deel effectively concedes all of this. And more recently, Deel's largest investor, a16z, produced a document showing that Bouaziz destroyed his communications about this dispute with Ben Horowitz—a16z's cofounder and general partner—by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ conversation on April 25, 2025 (more than a month after Bouaziz and Deel were under litigation holds), leading to a highly suspicious 7-month hole in the conversation thread. Ex. F. As a result of Deel's extensive efforts to destroy critical communications, Rippling must inspect whatever forensic traces remain—e.g., metadata, logs, deleted remnants—that could allow reconstruction of some of the lost evidence.

Deel cannot simply adopt the individual Defendants' forthcoming discovery responses: the spying scheme involved *other* Deel employees—including, for example, the two in-house attorneys who directed the cover-up. Deel must conduct its own investigation of which devices and accounts its employees used, and its response is already past due. Rippling must then be permitted to inspect those materials. Courts in this Circuit routinely grant forensic inspection where there is evidence of spoliation and/or a "close relationship between [the] claims and [the] computer equipment." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 666 (D. Or. 2019) (forensic inspection is particularly appropriate in trade-secret cases where claims are tied to electronic devices). Here, electronic communications between Deel and its spy are at the heart of Rippling's claims, and Deel engaged in systematic destruction of those exact communications. The cases Deel cites—*Estate of Mario Solis v. County of Riverside*, 2025 WL 1090945 (C.D. Cal. Mar. 11, 2025), and *J.T. v. City & Cnty. of San Francisco*, 2024 WL 4361579,

4124096

at *6 (N.D. Cal. Oct. 1, 2024) (Cisneros, J.)—are easily distinguishable because neither involved evidence of spoliation or bad faith; here, such evidence is extensive.

Deel raises a privacy objection that also fails. The inspection requests incorporate a robust procedure to minimize any privacy intrusion and preserve any privileges: Rippling initially will receive only **non-user-generated forensic data** (metadata, logs, and system artifacts), and Deel will review any user-generated files before production. Ex. B at 3–4. *See In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) (overruling privacy objection to forensic inspection because "the protections of the Protocol lessen the intrusion"). Finally, Deel asserts that the RFIs somehow violate the ESI Order. Wrong. That Order addresses producing user-generated files that were *preserved* (i.e., document productions), not inspection requests aimed at recovering evidence of *deleted* files and other communications.

***Deel's Document Production.*** Rippling served its first set of RFPs on Deel on May 30, 2025. In the second half of 2025, Rippling and Deel engaged in a lengthy meet and confer, at the conclusion of which they agreed on ten out of sixteen custodians, a preliminary set of search terms, and all but one of Rippling's 87 RFPs. The parties presented their dispute over the remaining six custodians and one RFP in a January 23, 2026 joint letter brief to the Court (ECF No. 166).

On a December 16 meet and confer, Deel confirmed that it would begin reviewing and producing documents for the agreed upon RFPs and custodians, and that Rippling should receive Deel's first production in early January. Deel has since reneged on that agreement. In a January 28 email, Deel claimed—falsely—that its agreement to begin reviewing and producing documents was somehow conditioned on the parties reaching *complete* agreement on every RFP, custodian, and search term, and stated that it would not even begin *reviewing* documents until the pending dispute about custodians and a single RFP was resolved. During the meet and confer, Deel conceded that its review sets were fully loaded on its e-discovery platform and ready for review, and that it would not incur any additional burden by beginning its review now. Yet Deel still refused to get started. Then, the *day before* this Joint Statement was filed, Deel finally said it would start "reviewing" documents, but Deel refuses to commit to any timeline for beginning or substantially completing its production. This is textbook delay in response to RFPs served 9 months ago. The Court should order Deel to complete its production for all agreed upon RFPs and custodians by March 26, 2026.

**Deel's Position:** Rippling's persistent overblown rhetoric regarding the discovery record and Deel's positions to attempt to malign Deel needs to stop. As Rippling knows, Deel has collected and processed *terabytes* of data from 10 Deel custodians (including its CEO, CSO, COO, and in-house attorneys, and which constitute millions of documents), agreed to run and review the results of nearly 250 search terms, and produce responsive documents to the vast majority of Rippling's RFPs. Rippling ignores its own months-long delay in attempting to resolve the parties' disputes as to what documents would *even be* responsive to Rippling's RFPs, which did not occur until the middle of January 2026, before which Deel was thus not in any position to review or produce documents. Then, when Deel offered to start review and table Rippling's request for Deel to nearly double its custodians unless Deel's review reveals that those additional custodians were relevant, Rippling rejected that commonsense compromise, and instead chose to put before this Court the issue of whether Deel must collect and review from these additional custodians at the outset. ECF 166 at 4. Despite Rippling's unreasonable rejection, Deel has since agreed to begin document review. On Rippling's existing Rogs, Deel has already produced over two *thousand* entries in response to Rippling's Rog 1, and is in the process of supplementing that with even more information. In response to Rippling's Rog 9, Deel has disclosed at least 23 different witnesses. As to Rogs 7 and 8, to avoid further motion practice following Judge Breyer's January 5 Order referring the parties to this Court on their scope, Deel offered to substantively respond if Rippling would provide a list of the customers that Keith O'Brien supposedly searched for at Defendants' request, and Deel would disclose communications (if any) with such customers. On February 3, Rippling confirmed that it would provide a list of Rippling customers allegedly targeted by O'Brien, but said for the first time that such list was likely in at least the *thousands*, despite O'Brien previously attesting to the Court he targeted approximately **thirty** companies. ECF 129-1. Rippling

4124096

now effectively admits that California-based customers represent no more than **3%** of customers allegedly targeted by O'Brien, directly undermining what it told the Court to support an "express aiming" finding to deny the Individual Defendants' personal jurisdiction motions. ECF 174 at 16. In any event, Rippling *still* has not provided this information to Deel to facilitate Deel's response.

Deel also responded to Rippling's Rogs Nos. 2, 4, 5, 6, but Rippling did not like the answers. Rippling initiated a discovery dispute on those Rogs on December 23, 2025, seeking an order to sanction Deel for excluding information possessed by the Individual Defendants in its responses, given their (at the time) pending personal jurisdiction challenges to participation in this forum and Rippling's prior counsel's representations that doing so would constitute a waiver. Now that the Individual Defendants' personal jurisdiction and forum challenges have been resolved, when meeting and conferring on *this* letter, **Deel offered to moot that issue by amending or supplement *all* its existing Rog responses and adopt the substantive responses of the Individual Defendants to Rippling's written discovery** (including those at issue here and in ECF 161). Rippling stated it needed a more "comprehensive proposal" before it could agree to discuss potentially withdrawing ECF 161. Although no deadlines of any kind have been set in this case, Deel offered to discuss a global timeline for such responses, and document production dates.

Given all this, Rippling's assertion above that it is "abundantly clear that Deel will not produce discovery unless and until the Court orders it" is demonstrably false. The only thing "abundantly clear" is that Rippling has no interest in conducting orderly discovery in a case it initiated with separately represented parties located around the globe. For this reason, the Court should exercise its authority under Rule 26(c)(1) to sequence the completion of written discovery as follows: substantial competition of document review, then rog responses (including supplements and amendments) and other written discovery. Deel respectfully requests the Court order the parties to confer on a reasonable timeline that accounts for the vast volume of data Deel will search.

**Rogs 10/11 & Document Review:** As Rippling admits, Deel already stated it would respond to these. The "qualifiers" Rippling refers to were receipt of the Court's order resolving the personal jurisdiction objections of the Individual Defendants, and ensuring the definitions were proportional. Ex. G. And Deel has already agreed to begin document review while the Court resolves whether additional custodians are necessary, despite Rippling previously rejecting Deel's compromise position on this issue. It is unclear why Rippling continues to burden the Court.

**Rog 12:** Rippling asks Deel to "identify each statement in Mr. O'Brien's affidavit that Deel *contends* is a falsehood, distortion, mischaracterization, and/or omission, and describe all bases why Deel *contends* that it is a falsehood, distortion, mischaracterization, and/or omission, and all facts supporting Deel's *contention*." Ex. C 11:21-26 (emphasis added). But "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken," and "tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *Auris*, 2023 WL 5959427, at *3-4 (noting that "[t]he requesting party has the 'burden of justification' to overcome the 'general policy ... to defer propounding and answering contention interrogatories until near the end of the discovery period'"); *Loeber v. United States*, 2023 WL 4703329, at *2-3 (N.D. Cal. July 24, 2023). Deel has taken *no* written discovery of O'Brien's or Rippling's assertions while its forum motion was pending. Nor has O'Brien been deposed, which Judge Breyer recognized may be Deel's only opportunity to obtain admissible evidence regarding his credibility. ECF 174 at 23. The Rog is also compound in any event, and would use up Rippling's remaining Rogs. ECF 148 at 10, 14 n.5.

**Rog 13:** Rippling asks Deel to "identify all investigative steps taken (including which custodial and non-custodial repositories it searched, which search parameters it used, and which employees it interviewed and describe all reasons why" supporting Deel's conclusion. Ex. C at 13. The Court should reject Rippling's blatant effort to pry into Deel's investigation and work product. *Bryant v. Serv. Corp. Int'l*, 2010 WL 2231871, at *1 (N.D. Cal. June 1, 2010) ("The information plaintiffs seek, including both the identities of the witnesses and the contents of their statements, constitutes protected attorney work product."); *Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal.

June 13, 2002) ("How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled."); *Jensen*, 328 F.R.D. at 566 ("Discovery into another party's discovery process is disfavored," and "requests for such 'meta-discovery'" can extend "the already costly and time-consuming discovery process ad infinitum") (cited by Rippling). Here, Rippling cannot show "good cause" that Deel has not complied with its obligations. *Supra* at 3-4. Deel previously explained on December 23 that its Rog responses were based on Rippling's positions that participation of the Individuals would waive their jurisdictional objections. ECF 161 at 4-5. That issue should now be moot, since the Court ruled on the jurisdictional motions, and Deel has stated it would amend those previous responses. Nor can Rippling show waiver simply because Deel stated it followed the law in conducting a "reasonable inquiry" to respond to the Rogs. *See Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *5 (N.D. Cal. May 6, 2016) ("[N]either party should have to produce their work product and instead, as … happens all the time when the parties disagree as to the facts, the parties should proceed to take depositions of the witnesses[.]"); *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 52 (D. Nev. 2025) ("[W]hen a party indicates that a reasonable search was undertaken for documents and that no responsive documents were found … such representations will generally carry the day."). Rippling's cases are inapt. *Volterra*, 2013 WL 1366037, *2 (reliance on advice of counsel defense waives privilege); *Zeiter*, 2024 WL 1907385, at *2 (compelling attorney who submitted declaration to testify at hearing).

**Inspection Requests:** Rippling's forensic inspection requests violate the Court's ESI Order: "[T]he Parties agree to phase the production of ESI and the initial production will be from the following sources: internal document storage systems including non-custodial storage systems." ECF 73 at 2. That is exactly what Deel has agreed to do. And "district courts in the circuit have consistently held that the 'desire to confirm the completeness' of a production is insufficient" justification for an inspection. *Solis*, 2025 WL 1090945, at *2. This is particularly true given the Requests seek forensic images of personal private devices of Deel's employees (many of whom reside abroad, raising foreign data privacy concerns as well). *J.T.*, 2024 WL 4361579, at *6 (courts have denied "requests by a defendant to inspect the plaintiffs' smartphones (or complete forensic images thereof) and for the plaintiffs to produce their complete browsing history, even where the case turned the defendant's alleged use of browser cookies that were stored on the plaintiffs' phones"). As this Court has recognized in rejecting similar requests, "**the goal here is to take reasonable measures to ensure that evidence from [the parties'] smartphones that [they] may have failed to recognize as relevant is not inadvertently lost**[.]" *J.T. v. City & Cnty. of San Francisco*, 2024 WL 3834200, at *3-*5 (N.D. Cal. Aug. 14, 2024) (Cisneros, J.) (finding forensic request not "reasonable" where no showing that "any relevant evidence likely to be captured by that process would not be captured by less intrusive means," and concluding that concerns over risk of lost data "do not warrant treating [the parties'] smartphones as crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail"). Rippling's previously cited authority (which it deleted from its section an hour before it sought to file this) agrees: "District courts within the Ninth Circuit have expressed reluctance in allowing forensic examination of an opposing litigant's electronics," and "[a] forensic examination is warranted only upon 'a strong showing' that the opposing party has defaulted on its discovery obligations." *PlayUp*, 350 F.R.D. at 53. "[S]peculation, hunches, and skepticism about the completeness of discovery will not justify a forensic examination," and "[t]he mere possibility that a party might not produce all relevant, unprotected documents, is not a sufficient basis" for an inspection *Id. In re Premera*, 329 F.R.D. at 670 (denying forensic inspection as disproportional to needs of case). Rippling's last-minute addition of *Brocade* is inapt. 2012 WL 70428, *2-3 (noting 30(b)(6) deposition and document requests were unsuccessful at obtaining the desired information).

Here, all relevant devices and accounts have been preserved, including for the Individuals. Deel has already agreed to produce responsive information regarding O'Brien. Neither O'Brien's rendition (who has not been deposed) above, nor a third-party message thread with no indication that any unpreserved communications occurred (Ex. F), nor Rippling's speculation at this early stage as to the end results of Deel's responses, are the requisite "strong showing" for inspection.

4124096

Respectfully submitted,

| | |
|---|---|
| */s/ Eric H. MacMichael* | */s/ Jason D. Russell* |
| Eric H. MacMichael | Jason D. Russell |
| Attorneys for Plaintiff Rippling | Attorneys for Defendant Deel |

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

*/s/ Eric H. MacMichael*
Eric H. MacMichael
Attorneys for Plaintiff Rippling

4124096