*[counsel listed on signature page]*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual,  PHILIPPE BOUAZIZ, an individual,  DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Complaint Filed:   March 17, 2025<br>Am. Compl. Filed:   June 5, 2025<br>Judge:   Hon. Charles R. Breyer<br>Courtroom:   6 |

Pursuant to the Standing Order for all Judges of the Northern District of California dated November 30, 2023, and Civil Local Rule 16-9, Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") and Defendants Deel, Inc., ("Deel"), Alex Bouaziz ("Alex"), Philippe Bouaziz ("Philippe"), and Dan Westgarth ("Dan," and collectively with Deel, Alex, and Philippe, "Defendants") jointly submit the following joint case management statement. Deel, Alex, Philippe, and/or Dan may address some of the issues separately below; otherwise all Defendants' positions are set forth in the sections entitled "Defendants' Position." Where not otherwise stated, the positions set forth below are the joint position of Rippling and Defendants (collectively, the "Parties").

## I.      JURISDICTION AND SERVICE

### A.      Rippling's Position

The Court has federal question jurisdiction over the remaining federal law claims pursuant to 28 U.S.C. § 1331. As the Court found in its February 23, 2026 Order denying in part Defendants' motions to dismiss, this Court has personal jurisdiction over all Defendants and venue is proper in the United States District Court for the Northern District of California.

### B.      Defendants' Position

Defendants do not dispute that this Court has subject matter jurisdiction over Rippling's surviving claims, all of which arise under federal law. All Defendants however, expressly preserve and do not waive their *forum non conveniens* arguments for dismissal of Rippling's action, which they may raise again at a later stage of the case, including in connection with summary judgment motions. Furthermore, Alex, Philippe, and Dan all deny that they are subject to personal jurisdiction in this Court or in California. Each of them expressly preserves and does not waive their arguments regarding lack of personal jurisdiction. Deel itself does not contest personal jurisdiction.

## II.     FACTS

### A.      Rippling's Statement of Facts

#### 1.      Factual Background

This case centers around a brazen corporate espionage scheme in which the CEO, CFO, and COO of Deel—a $17 billion software company with thousands of employees—enlisted a Rippling payroll

manager named Keith O'Brien to steal Rippling's trade secrets from within in exchange for cash payments routed through the COO's wife's bank account and anonymous crypto wallets. *See* Apr. 1, 2025 O'Brien Affidavit (ECF 57-1) at ¶¶ 6-26 ("O'Brien Aff.").

For nearly five months, Defendant Alex Bouaziz, Deel's CEO and cofounder, provided daily instructions to O'Brien to search for specific Rippling information, and O'Brien ran Bouaziz's searches in Rippling's confidential internal systems. *Id.* at ¶ 17-28. Initially, O'Brien took photos of the trade-secret documents he found, using his iPhone, and sent them back to Bouaziz. *Id.* at ¶ 19. But within weeks, Bouaziz instructed O'Brien to take *videos* (so that O'Brien could provide even more information), after which O'Brien sent Bouaziz several such recordings *per day*. *Id.* In total, O'Brien accessed **hundreds** of confidential Rippling documents, ran **thousands** of Slack searches, and previewed **hundreds of separate channels**—some of which he previewed hundreds of times **each**—containing some of Rippling's most sensitive competitive information, such as product roadmaps, launch strategies, competitive positioning, and **thousands** of customers and sales leads. First Amended Complaint (ECF 57) at ¶ 6 ("FAC").

The Defendants have thus far obstructed Rippling from determining the full scope of their theft and use of Rippling's trade secrets. As discussed more fully in the following section, they have stonewalled discovery since Day 1—e.g., they have not produced a single document to date, and they have not responded substantively to a single interrogatory without a court order. But worse, they systematically destroyed key evidence during and after the scheme. They concealed written communications with O'Brien by using "disappearing" text messages, they deleted records of their phone conversations, and they instructed O'Brien to "take steps to ensure there was no evidence." O'Brien Aff. at ¶ 11. Armed with significant forensic evidence, Rippling dutifully applied for and received an Irish High Court order requiring the preservation of O'Brien's phone. Rather than comply, O'Brien sought out Defendant Alex Bouaziz and Deel's *in-house lawyers*, who doubled down: They instructed O'Brien to destroy the iPhone he used for the spying scheme, encouraged him to flee to Dubai (at Deel's expense), and offered him more

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

money to "lie and keep quiet" (O'Brien Aff. at ¶ 32), all in direct violation of an order from the Irish High Court.[1]

But despite the Defendants' best efforts to conceal and obstruct, Rippling had already gathered overwhelming evidence of their scheme. ***First***, Rippling caught them red-handed with a "honeypot" letter describing a newly-formed Slack channel called #d-defectors; within a few hours of Rippling sending the letter, O'Brien ran a search for #d-defectors in Rippling's Slack. FAC ¶¶ 119-125.[2] ***Second***, after O'Brien was caught, he executed a sworn affidavit describing the spying scheme and cover-up and, months later, a follow-up declaration, and supported both with thorough documentary evidence attached as exhibits.[3] ECF 57-1; ECF 129-1. ***Third***, third-party financial records prove that Deel routed a payment of $6,000 to O'Brien through Defendant Westgarth's wife's account; she received that exact amount from Deel *less than one minute* before she transferred it to O'Brien (ECF 118-2). ***Fourth***, forensic evidence from computer systems corroborate the details of O'Brien's testimony, including: (1) Slack logs show O'Brien almost *never* searched Slack before the spying scheme, but immediately upon receiving the $6,000 payment, he began running Deel-related searches daily—e.g., using "Deel" as a keyword more than *400 times*—and previewing hundreds of channels; (2) Rippling recovered two screen-recordings made by O'Brien (out of the hundreds he sent to Alex Bouaziz) that O'Brien unknowingly backed up to his iCloud

---

[1] Alarmingly, Deel's destruction of evidence does not appear to have ended with the filing of this lawsuit. Deel's largest investor, a16z, recently produced a document indicating that Alex Bouaziz also destroyed his communications about this dispute with Ben Horowitz—the cofounder and general partner well after this lawsuit was filed.

[2] "Within minutes" of Bouaziz instructing O'Brien to search for #d-defectors, "Alex messaged me again and told me not to run the search because he believed it was a 'trap.' I told Alex that by the time I got his messages, I had already done the search and he said 'oh shit.'" O'Brien Aff. at ¶ 27.

[3] Defendants mischaracterize the circumstances under which O'Brien voluntarily came forward. During proceedings before the Irish High Court, the presiding judge advised O'Brien in open court that he was in "a very serious situation," that he should obtain counsel, that he possibly was in contempt of court, and that he could purge possible contempt of court by trying to "undo the damage that [he had] done by breaching the court order." O'Brien subsequently retained independent counsel (through a referral from *Deel's* short-lived Irish lawyers at A&L Goodbody, no less) and, while independently represented, voluntarily approached Rippling to confess. ***At the time O'Brien confessed, Rippling had no agreement in place with O'Brien.*** Subsequently, Rippling and O'Brien entered two agreements that, respectively, provide for standard litigation-related cooperation covering legal fees and expenses, and resolve O'Brien's involuntary termination from Rippling with severance consistent with ranges commonly observed under Irish employment law. Nothing in those agreements conditions compensation on the substance of O'Brien's testimony.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

account before deleting them from his iPhone[4] (O'Brien Aff. at ¶ 19); (3) web browser history from O'Brien's Rippling-issued laptop shows the specific trade-secret documents that O'Brien accessed on Rippling's web-based systems, and when he accessed them. *Fifth*, the Defendants now *admit* (for the first time) that Alex Bouaziz was in regular communication with O'Brien and *received Rippling customer* from him during the spying scheme. The Defendants assert below (again for the first time) that the information was innocuous, but they can only make that claim now because they conveniently destroyed the communications showing what information they actually received. *Finally*, Rippling customers and employees have produced communications they received from Deel incontrovertibly showing that the individual Defendants disseminated Rippling's trade secret information to other Deel employees, who (in turn) used it to steal business opportunities and poach Ripping employees.

Amazingly, this is just the tip of the iceberg. The additional voluminous evidence cited in Rippling's FAC shows that trade secret theft is Deel's *modus operandi*: Deel's efforts to steal trade secrets from Rippling predate the O'Brien scheme by months if not years, and Deel engaged in similar efforts to steal *other competitors'* trade secrets—which is unsurprising, given the Defendants' sophistication in identifying and grooming a spy, obscuring their payments to him, and covering their tracks. The Court denied the Defendants' motions to dismiss Rippling's civil RICO claim based on these allegations. Discovery on that claim is only now beginning.

In all, Deel's misconduct spans multiple victims, lasted many months (if not longer), and involved the misappropriation of troves of trade secret information across numerous domains and victims. This alone would warrant significant discovery. But here, the Defendants' proven, systematic destruction of their communications with O'Brien, both during and after the spying scheme, is a compounding factor. Because the Defendants destroyed these communications, showing the full extent of the Defendants' theft and use of Rippling's trade secrets will involve mapping the trade secrets that O'Brien stole to the Defendants' not-yet-produced documents showing, for example, contemporaneous, corresponding changes to their product and corporate strategies, competitive positioning, sales and marketing sales and

---

[4] These recordings, totaling over seven minutes, show O'Brien running keywords in Rippling's Slack and previewing over a dozen channels discussing specific customers and customer success issues in markets where Rippling and Deel compete directly, all of which would be a treasure trove for Deel to poach Rippling's customers and outcompete Rippling for sales leads.

marketing materials, competitive intelligence files, and customer outreach (such as the handful Rippling has already received from third parties, *see* FAC ¶¶ 80-86).[5] In short, because of the vast scope of the Defendants' scheme and their intentional destruction of key evidence, proving the full extent of their theft and use of competitors' trade secrets will require significant and complex discovery into many facets of Deel's business.

Deel's Statement of Facts below reinforces this. The Defendants spent the first year of this lawsuit contesting this Court's jurisdiction, challenging this venue, and obstructing discovery at every turn. Meanwhile, the Bouazizes and Westgarth, who have not reentered the United States since this litigation began, refused even to provide information to *Deel's own outside counsel* that Deel required for court-ordered interrogatory responses. The Defendants have reached the end of that road: The Court recently denied their motions to dismiss and Judge Cisneros granted in whole or part all three discovery motions Deel forced Rippling to file since December. So the Defendants have pivoted to the "deny-til-you-die" approach. On March 18, 2026, the Defendants for the *first time* disclosed a series of "alternative explanations" to the facts laid out above that are so implausible they fail the straight-face test.

As just one example, they now admit that Deel's then-CFO and board chairman, Philippe Bouaziz, *personally* approved the initial $6,000 payment to O'Brien, but claim he only did so because O'Brien—a payroll manager at Deel's competitor Rippling, with no formal relationship with Deel—had asked Deel's CEO Alex Bouaziz to help with "living expenses." According to Deel, CFO Alex Bouaziz then asked Deel's *COO* (Defendant Westgarth) to "arrange" the payment. The Defendants claim that it was O'Brien's idea, not theirs, to obscure the source of the payment (because Rippling was supposedly "monitoring his communications"), and that—at O'Brien's request—COO Westgarth routed the no-strings-attached $6,000 gift *through his own wife's personal account*. CFO Bouaziz recorded the payment as a corporate expense, which he considered to be completely appropriate because O'Brien, though then employed by Deel's competitor, *hoped* to join Deel in some unspecified capacity, at some undetermined future date.

---

[5] The Defendants' statement below twists Rippling's words from a *previous draft* of this statement, arguing that Rippling somehow admitted "a dearth of 'proof of causation and harm.'" Rippling chose to remove that phrase rather than waste space in this statement addressing the misquotation. That the Defendants insist on keeping this in their statement belies the weakness of their position and their desperation to avoid discovery into their business operations.

5

That the Defendants would offer such a facially implausible explanation of their $6,000 payment to O'Brien signals something deeply troubling: that the Defendants are confident they successfully destroyed the other smoking-gun evidence of their theft.[6]

Deel's reliance on these fantastical and implausible "explanations" for Rippling's evidence-backed claims reinforces the importance of extensive discovery, to forensically excavate the remnants of the contemporaneous communications Deel acknowledges occurred, but conveniently no longer exist.

2.    Procedural History – Rippling and Deel

Until two days ago, the Defendants have responded to the overwhelming evidence of their misconduct with obstructionism. For instance, on November 25, Deel served court-ordered interrogatory responses claiming that Deel had no knowledge of *any* employee receiving *any* "information related to Rippling" from O'Brien. After Rippling filed a discovery motion requesting an order to show cause why Deel should not be sanctioned, Deel told Judge Cisneros that it had conducted a "reasonable investigation" while admitting that it *never asked the individual Defendants*. ECF 161 at 3-4 (emphasis added). Judge Cisneros granted Rippling's motion and ordered full briefing on Rippling's sanctions request. ECF 187. Then, on March 18, 2026—in a separate court-ordered interrogatory response for which the individual Defendants did provide information—Deel admitted that O'Brien *did* send "information related to Rippling" to at least Alex Bouaziz *and* Asif Malik, one of the Deel employees whom Deel claims it interviewed prior to serving its deficient November 25 responses.

This is just one example of Deel's efforts to obstruct and delay discovery. There are many more. Although Rippling served its first set of requests for production of documents nearly **ten months ago** (on May 30, 2025), **Deel has not yet produced a single document**. Rippling also served its first set of

---

[6] As another example: Defendants now claim O'Brien was a "whistleblower" reporting supposed misconduct by Rippling, and that he reached out to Deel for help. This claim is belied by the undisputed timeline of events in March 2025. O'Brien made his (false) report regarding "Russian payments" after he was facing personal legal exposure for violating the Irish Court's order and after *Deel's own in-house lawyer*, Asif Malik, suggested to him "that if he acted as a whistleblower, he would have protection under the law," which Deel now admits in another court-ordered rog response. O'Brien later testified that Malik told him that the suggested whistleblower report was part of a Deel communications strategy to "shift the narrative." O'Brien Aff. at ¶ 34. Notably, O'Brien had never raised any previous whistleblower complaints at Rippling, and to set the record straight, despite Deel's continued attempts at driving this false narrative, Rippling, a globally-licensed payments provider, has never made payments to any sanctioned entity, bank, or person, including in Russia.

6

interrogatories to Deel in May 2025 and has served one additional set since then; Deel has not provided a single substantive response to any of Rippling's interrogatories without first requiring Rippling to get an order from Judge Cisneros. And even after being ordered by the Court, Deel recently failed to provide compliant responses (as explained above). In total, Deel's foot-dragging has required Rippling to file six different discovery letter briefs, which together have demanded hundreds of hours of attorney time and consumed precious judicial resources. While Deel has lost every single one of these disputes in whole or in part, it has succeeded in frustrating and delaying discovery, as described in greater detail below.

- **First**, on June 30, 2025, Deel sought to stay discovery pending its *forum non conveniens* motion. On July 31, 2025, the Court rejected that request.

- **Second**, on September 16, 2025, Deel served "responses" to Rippling's interrogatories consisting only of objections. Two of these interrogatories, Nos. 5 and 6, asked Deel simply to identify "information related to Rippling" received from O'Brien and persons with knowledge that Deel received it. In a November 7, 2025 order, the Court overruled Deel's objections to these interrogatories and ordered Deel to respond by November 25, 2025.

- **Third**, on November 25, 2025, Deel served court-ordered responses to Rogs 5 and 6 that claimed Deel was "currently unaware" of any responsive information, despite the overwhelming evidence to the contrary.

- **Fourth**, Deel subsequently admitted that it *never gathered any information from the individual Defendants* in responding to those court-ordered rogs. Rippling moved for an order to show cause why Deel should not be sanctioned. On March 2, the Court granted Rippling leave to file a sanctions motion on March 25.

- **Fifth**, in January 2026, Deel refused to begin producing documents while the parties litigated a dispute over six custodians and a single RFP (ECF 166), despite having already gathered documents for the eleven agreed-upon custodians and dozens of agreed-upon RFPs. On March 4, Rippling prevailed on all six disputed custodians and the disputed RFP, but Deel still has not produced a single document or committed to a date certain by which it will begin productions.

7

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

- **_Sixth_**, on February 17, 2026, Deel objected across the board to four interrogatories related to Deel's communications with Keith O'Brien, forcing Rippling to file yet another motion to compel. On March 4, the Court ordered Deel to respond to all four rogs.
- **_Seventh_**, on February 27, 2026, Deel asked the Court to delay all interrogatory responses until after the completion of document production. The Court rejected that request on March 4, ordering Deel to respond to the disputed interrogatories.

In sum, **_Deel has effectively stalled discovery for ten months_**—despite a July 31, 2025 order requiring Deel to participate in discovery—by claiming potential uncertainty regarding the pleadings, forcing one discovery motion after another, and then citing the pending motions as reasons to delay its document collection and production. Defendants are out of time. The Court has now denied the individual Defendants _forum non conveniens_ and personal jurisdiction challenges the Defendants' motion to dismiss the civil RICO and DTSA claims, and Judge Cisneros has granted in whole or in part each of Rippling's pending discovery motions. As Judge Cisneros stated plainly at the March 4, 2026 hearing: "**_[N]ow is the time to start getting this discovery on a fast track._**" Mar. 4, 2026 Hrg. Tr. at 59:9-10. Rippling's proposed schedule reflects that approach.

### 3. Procedural History – Rippling and the Individual Defendants

Rippling served discovery requests on the individual Defendants on February 18, 2026, following the Court's order denying their motions to dismiss. The individual Defendants' responses and objections are due March 20, 2026.

## B. Defendants' Statement of Facts

The following is a short summary of facts based on Defendants' collective knowledge, subject to further development during discovery. Rippling has been unable to compete fairly with Deel's products and services in the marketplace. As a result, Rippling has used press leaks, misleading and false public statements, and now this litigation to malign the reputation of Deel and its executives in an attempt to steal Deel's customers. The outlandish claims of wrongdoing in Rippling's First Amended Complaint ("FAC"), which are based primarily on the misrepresentations of Keith O'Brien—a former Rippling employee whom Rippling has both threatened and paid handsomely in exchange for his narrative—are false.

O'Brien's affidavit was made while he was under clear duress, and after he was bribed by Rippling while in the midst of a well-documented psychiatric episode.

Mr. O'Brien repeatedly has lied about his background and his interactions with Alex, Philippe, Dan, and others at Deel. No Defendant sought to obtain, or paid to acquire, Rippling's trade secrets from Mr. O'Brien or anyone else. And they never used any Rippling trade secret. Nor was Mr. O'Brien ever a "spy" for Deel. Rather, between 2022 and 2025, Mr. O'Brien repeatedly applied for jobs at Deel and (in 2024 and 2025) sought to establish a business relationship between Deel and Global Payroll Geeks (a payroll consulting company Mr. O'Brien falsely claimed he owned and founded). Mr. O'Brien told Alex, Philippe, and others at Deel that he was leaving Rippling, in part because Rippling was engaged in unethical and unlawful business practices, including ones directed specifically at Deel. At the time, Alex and Philippe understood him to be an experienced payroll implementation employee who simply was looking to escape a company (Rippling) that Deel knew to be unethical, and to grow his own consulting business. Deel had multiple communications with various representatives of Global Payroll Geeks (not simply Mr. O'Brien) about the company becoming a payroll implementation contractor or referral partner for Deel.

Rippling's FAC does not mention any of these legitimate business dealings, and instead suggests that any dealings between Deel and Mr. O'Brien must have been illicit. Rippling bases its claims on a $6,000 payment made to Mr. O'Brien in November 2024, which Rippling claims was a "bribe" to cause Mr. O'Brien to steal Rippling's trade secrets and provide them to Deel. It was nothing of the sort. Rather, during this period of discussions between Global Payroll Geeks and Deel about a business relationship, Mr. O'Brien—stating that he was leaving Rippling imminently—asked if Deel would be willing to cover his living expenses while he sought to transition to a new job (ideally at Deel) and/or attempted to grow Global Payroll Geeks' business (ideally as a contractor for Deel). Philippe, then Deel's CFO, saw nothing wrong with such a payment and had Dan Westgarth, Deel's COO, arrange it. Mr. O'Brien asked that the payment not come from Deel, because he believed Rippling was monitoring his communications as a result of him being aware of unlawful and unethical conduct by Rippling, and he was afraid of being fired (while he was looking for a new job) because he was consulting for Deel through Global Payroll Geeks.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

There was no discussion whatsoever about Rippling's trade secrets, let alone stealing them. To the contrary, Alex understood that Mr. O'Brien was going to leave Rippling, and he asked others at Deel if Deel had a suitable open position for Mr. O'Brien.

Rippling's FAC claims that Mr. O'Brien received additional payments between December 2024 and March 2025 from "A.D." and that those payments were somehow related to Deel and were in return for theft of Rippling trade secrets. That too is false. Neither Alex, nor Philippe, nor anyone associated with Deel made any such payments. Defendants instead understand that Mr. O'Brien established a business relationship with a person to whom Philippe introduced Mr. O'Brien, at Mr. O'Brien's request, in late 2024, and these payments came from that business relationship. No Defendant had anything to do with the payments, and the payments had nothing to do with Rippling's trade secrets.

Between late fall 2024 and March 2025, Mr. O'Brien sent multiple unsolicited messages to Alex via Telegram. Alex did not read or look at most of the messages. Some messages concerned industry news, and others were about customers that were leaving Deel to go to Rippling, or that were considering whether to leave Rippling to go to Deel, all of which Alex already knew from his teams at Deel. Neither Alex nor anyone else at Deel ever solicited or used any trade secret information.

On March 14, 2025, based on false allegations about Mr. O'Brien's "spying" for Deel, Rippling obtained an *ex parte* order from a court in Ireland requiring the inspection of Mr. O'Brien's devices. Mr. O'Brien told Deel that he believed Rippling and/or the Russian government were following him because he had reported Rippling's violations of Russian trade sanctions. He further claimed he was suicidal. Mr. O'Brien told Deel's Irish counsel the same by email—that he was being harassed for "rais[ing] my concerns on the Russia payments internally and indeed with the Central Bank of Ireland" and was "extremely concerned about by personal safety," "having extreme suicidal thoughts," and was "referred to a psychiatric consultant immediately via hospital"—and claimed that he was "being pressured to say things that are not true. I am being coerced into saying stuff that is not true to damage Deel." ECF 48-5 at 49-58 (ECF page numbers).

That was Mr. O'Brien's view until later in March 2025, when he suddenly reversed course after Rippling pressured him to sign a series of secret agreements—one of which Rippling is still refusing to

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

disclose—while he was, in his own words, suicidal. In these agreements, Rippling (i) agreed, among other things, to pay unlimited amounts for a lawyer and litigation-related travel for Mr. O'Brien; (ii) indemnified Mr. O'Brien for all liability and damages awarded against him in the future; (iii) reimbursed Mr. O'Brien €80,000 for his previous legal expenses; (iv) paid Mr. O'Brien an as-yet undisclosed sum of money (Rippling has so far resisted disclosing the amount); and (v) forced Mr. O'Brien to agree to "cooperate" with Rippling in its lawsuit against Deel. The agreement provides that O'Brien may not "contact or assist" Deel in connection with the Irish or U.S. litigation or "disparage or damage the reputation or standing" of Rippling. If O'Brien breaches the agreement, he effectively owes Rippling a significant sum in liquidated damages, as Rippling may "immediately enter final judgment against [O'Brien] for the sum of €150,000."

These illicit provisions caused Mr. O'Brien to change his tune, and he began falsely claiming, among other things, that (i) Deel hired him to steal Rippling's trade secrets; (ii) Deel directed him to state that Rippling was facilitating payments into Russia, when in fact Mr. O'Brien, of his own accord, had been revealing such payments long before he signed the secret agreements with Rippling; and (iii) Deel's lawyers instructed him to destroy his phone, when Mr. O'Brien actually has given multiple, inconsistent statements about how and why he destroyed his phone, and the facts will show that no one at Deel ever suggested that he do so.

In short, the communications between any Defendant and Mr. O'Brien, and the one payment made to Mr. O'Brien for job transition expenses, were legitimate and appropriate. No Defendant asked Mr. O'Brien to act as a "spy," ever asked him to (or paid him any money to) steal or disclose Rippling trade secrets, or ever used any Rippling trade secret. It is Rippling that has "bribed" Mr. O'Brien, so that he will provide false testimony against Defendants, and support Rippling's efforts to tarnish Deel in the marketplace.

**Defendants' Note On Rippling's Procedural History Recitation:** Defendants strongly disagree with Rippling's characterization of the discovery record in this case. As just one example, in complaining about delayed discovery, Rippling appears to take the position that it was somehow inappropriate for the individual defendants to assert their legal rights by moving to dismiss based on lack of personal jurisdiction and *forum non conveniens*. To the extent that is the case, Rippling's position is not well-taken.

It is standard practice for parties not to participate in discovery during the pendency of such challenges, especially based on the lack of personal jurisdiction. That was especially important in this case, as Rippling for the better part of a year (until it changed counsel) took the position that participating in discovery would waive the individuals' personal jurisdiction defense. Understanding that discovery would not proceed against the individual defendants while those motions remained pending, Rippling did not serve any discovery requests on them until February 18, 2026, after those motions were decided. Notably, the individual defendants did not seek any extension of time with respect to those requests, and to which they responded in full.

In addition, the results of the parties' discovery motions have been much more of a mixed bag than Rippling suggests above. Deel often prevailed on many of its arguments to at least limit, if not block outright, aspects of the overwhelmingly broad fishing expedition in which Rippling is engaging here. Unfortunately, that expedition shows no signs of ending. Ephemeral messaging applications are standard in the corporate world, and Rippling's suggestion that the use of those applications is tantamount to the destruction of evidence should be seen for the pretext it is. Indeed, in its section above, Rippling previously cited its own admitted dearth of "proof of causation and harm"—a concession it tellingly deleted in the final draft of this document—and now cites the supposed "implausibility" of the straightforward facts laid out by Defendants to justify prying into every facet of its competitor's business, the irony of which should be lost on no one.

## III.    LEGAL ISSUES

### A.    Rippling's Statement of Legal Issues

Following the Court's dismissal of Rippling's state law claims on February 23, 2026, *see* ECF 174, Rippling's lawsuit now primarily raises the following legal issues:

- Whether Defendants Deel, Alex Bouaziz, and Philippe Bouaziz have violated RICO, in violation of 18 U.S.C. § 1962(c), including by engaging in conduct indictable under 18 U.S.C. §§ 1343, 1346, and 1349 (wire fraud and conspiracy to commit the same), 18 U.S.C. § 1803(a) (obstruction of justice), and 18 U.S.C. § 1832 (theft of trade secrets);

- Whether Defendants, including Dan Westgarth, have engaged in a conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d);

- Whether Deel has misappropriated Rippling's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

- Whether and to what extent the Defendants' acts of evidence destruction warrant sanctions.

### B.      Defendants' Statement of Legal Issues

Defendants will file their answers to Rippling's FAC by March 25, 2026. At this time, Deel also anticipates filing counterclaims simultaneously with its answer, which are likely to raise further legal issues than those set forth below. Defendants currently anticipate raising the following legal issues (while reserving the right to raise any additional issues identified as the case progresses):

- Whether Alex, Philippe, and Dan are subject to personal jurisdiction in California;

- Whether, based on *forum non conveniens*, this case should be dismissed in favor of the pending proceeding in Ireland; and

- Whether Rippling can demonstrate that there are genuine issues of material fact regarding each element of its remaining claims for RICO (as to Deel, Alex, and Philippe), RICO conspiracy (as to all Defendants), and trade secret misappropriation (as to Deel), and that these claims can survive as a matter of law.

## IV.    MOTIONS

### A.      Rippling's Statement of Motion

There are two pending motions filed by Rippling on the Court's docket—ECF Nos. 164 and 176—both of which are administrative motions to consider whether another party's material should be sealed, pursuant to Civil Local Rule 79-5(f). Rippling served the administrative motions on the designating party on the same day the motion was filed, pursuant to Civil Local Rule 79-5(f)(2). The designating party, AH Capital Management LLC ("a16z"), did not file a statement in support of sealing within seven days pursuant to Civil Local Rule 79-5(f)(3). a16z has since confirmed in writing that it will not seek to submit any such statement. Rippling respectfully requests that the Court deny the motions and unseal the following docket entries: 164-1, 164-2, 176-1, and 176-2.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

As noted above, Magistrate Judge Cisneros granted Rippling's request to seek sanctions based on Deel's refusal to provide responsive information known by its seniormost executives. That motion will be fully briefed by April 29, 2026.

On February 18, 2026, Rippling served deposition notices on Deel employees Asif Malik and Andrea David Mieli. Deel refuses to make these individuals available for deposition in the United States. If the parties cannot resolve their dispute regarding the locations of these depositions, they have agreed to submit a joint letter brief to the Court during the week of March 23, 2026.

Given Deel's obstructionism to date, and particularly because Deel has proven unwilling to respond to interrogatories or produce documents absent court intervention, Rippling anticipates significant additional discovery motion practice.

**B.     Defendants' Statement of Motions**

Deel previously moved to dismiss the FAC under Rule 12(b)(6), filed a special motion to strike Rippling's California state law claims under California's anti-SLAPP statute, and a motion for attorneys' fees based on its pre-amendment anti-SLAPP motion. All Defendants also moved to dismiss or stay this action under the doctrine of *forum non conveniens*. Alex, Philippe, and Dan also filed separate motions to dismiss for failure to state a claim, lack of personal jurisdiction, and insufficient service. On February 23, 2026, the Court granted Deel's Rule 12(b)(6) motion, in part, dismissing Rippling's state law claims. The Court denied Defendants' other motions.

To date, the parties have filed six discovery disputes. The issues raised in those discovery disputes have now been resolved, with the exception that Rippling intends to file a motion for discovery sanctions against Deel on March 25, 2026. Deel will oppose that motion. Rippling also suggests above that it intends to litigate the location of the depositions for Mr. Malik and Mr. Mieli, who both live abroad and are not U.S. citizens; Deel will fully brief that issue if needed, but the law is clear that defense witnesses should be deposed where they reside, given the plaintiff gets to choose the litigation forum.

The parties anticipate further discovery motions and Rule 702 expert-related motions as this case continues. After the close of discovery, Defendants also intend to file motions for summary judgment. Should the case proceed to trial, Defendants anticipate filing motions *in limine* as well.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

## V.   AMENDMENT OF PLEADINGS

Rippling filed its FAC on June 5, 2025. As noted above, Deel currently anticipates filing counterclaims by March 25, 2026. The parties' proposed deadline for further amending the pleadings are included in their respective proposed schedules below.

## VI.   EVIDENTIARY PRESERVATION

The parties certify that they have reviewed the Guidelines relating to the Discovery of Electronically Stored Information ("ESI") and have met and conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure regarding reasonable and proportionate steps taken to preserve relevant evidence. Rippling disputes that Defendants have taken all legally required steps to preserve relevant evidence. Defendants assert that they have taken all legally required steps to preserve relevant evidence. As discovery is still in early stages, Defendants currently have no position on whether Rippling has complied with all legally required steps to preserve relevant evidence.

## VII.   DISCLOSURES

### A.   Rule 26(f) Conference

Deel and Rippling held a Rule 26(f) conference on May 30, 2025, which the parties agree satisfied the Rule 26(f) obligations. Rippling and the individual Defendants held a Rule 26(f) conference on March 19, 2026, which the parties agree satisfied the Rule 26(f) obligations.

### B.   Initial Disclosures

Rippling and Deel served Rule 26(a) disclosures on June 13, 2025. Alex, Philippe, and Dan served their initial disclosures under Rule 26(a) on July 28, 2025.

## VIII.   DISCOVERY

### A.   Rippling's Position on Discovery

This case includes a sprawling scheme of trade secrets misappropriation involving the individual Defendants, other Deel employees, and a number of third parties, in addition to a civil RICO conspiracy with multiple corporate victims. Given the complexity of this case, the scope of Defendants' wrongdoing, and Defendants' known efforts to destroy evidence, Rippling restates its position in the June 14, 2025 Case Management Statement (ECF 60) and proposes the following discovery limits to each party:

- Fifty interrogatories per side

15

- 200 hours of fact depositions per side.

The Defendants' position statement below mischaracterizes the parties' meet and confer and requests the presumptive limits under Rule 30. Those limits are clearly unworkable in this case: The FAC identifies more than 25 potential witnesses; *Deel's* own Rule 26 disclosures and interrogatory responses identify dozens of witnesses with relevant knowledge; Rippling will require considerably more than seven hours of 30(b)(6) deposition time with Deel; and discovery, which is just beginning, will undoubtedly reveal more witnesses who need to be deposed. In their statement below, the Defendants assert that Rippling's proposed limits would necessitate "nearly 60 depositions" and that any increase in depositions above ten-per-side would necessitate a "commensurate" extension of the discovery schedule. As Rippling explained during the 26(f) conference, neither assertion is true. Depositions are not tit-for-tat, and if the Defendants need less deposition testimony (as their statement suggests), then they do not need exhaust the limit. And the discovery schedule proposed by the parties leaves approximately 100 working days between the deadlines for substantial completion of document productions and the discovery cutoff, which is (or should be) more than enough time for the ably-represented parties in this case to complete up to 200 hours of testimony.

## B.  Deel's Position on Discovery

Contrary to Rippling's mischaracterizations, discovery is well underway. As of March 20, 2026, all Defendants have substantively responded to all of Rippling's outstanding Interrogatories—including the individual defendants, who were just served last month and sought no extension—with two exceptions where Deel has been awaiting limiting information that Rippling agreed to provide nearly two months ago. Deel has dozens of attorneys reviewing nearly *two million* documents that were based on Rippling's egregiously broad search terms—which it refused to meaningfully narrow—and rolling document productions will begin within weeks. On March 10, 2026, Deel served its own first set of discovery on Rippling, to which Rippling will respond by April 9. The individual defendants will soon serve their own discovery on Rippling. Against this background, Rippling states that it intends to file a motion for discovery sanctions against Deel on March 25. Deel will oppose that motion by April 15.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

Defendants assert that the Court should enforce the default limits set by Federal Rules of Civil Procedure 30 and 33, respectively, with the ability to seek leave for additional discovery based upon a showing of good cause, particularly in light of Deel's impending counterclaims. Indeed, **the proposed schedule below presumes that the standard discovery limits under the Federal Rules of Civil Procedure apply absent a showing of good cause.** That schedule will not be feasible if each party is going to take in the vicinity of 30 depositions, for a total of ***nearly 60*** depositions, as Rippling insists. During the meet and confer, Defendants suggested that perhaps a compromise could be reached where the number of depositions per side would increase modestly over the default to some extent, while the schedule would extend commensurately. Rippling rejected any compromise on the depositions out of hand, and insisted that it will demand from the outset 200 hours of deposition time per side. In attempting to justify this position, Rippling stated that one deposition per day is perfectly acceptable, and that Defendants do not need to use all of their allotted time. Neither rationale is correct. There is no need to do a deposition every day (or anything along those lines). Setting aside the extreme demands this would place on counsel, there is no exigency in this case that would justify such an extreme course of action. Nor is the suggestion that Defendants need not use their allotted time any kind of an answer. This is a litigation, not an inquisition; Defendants have the right to defend this case vigorously, and the case schedule must afford them a full and fair opportunity to do so.

### C.    ESI and Protective Order

Rippling and Deel stipulated to (and the Court ordered) an ESI order that governs discovery of electronically stored information. ECF Nos. 71, 73. Rippling and Deel also stipulated to (and the Court ordered) a protective order to govern the treatment of confidential information in this action. ECF Nos. 72, 74. Alex, Philippe, and Dan are not currently parties to either of these agreements, and they will promptly propose an amendment adding them and adding limited terms specific to the individuals. Relatedly, they have reached an agreement with Rippling and its counsel to protect discovery responses served before amendment of ECF Nos. 73 and 74.

## IX.    CLASS ACTIONS

This is not a class action.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

## X.    RELATED CASES

Rippling asserts that Deel commenced a related case against Rippling in the Superior Court of Delaware on April 25, 2024, and which Deel amended on June 3, 2025, captioned *Deel, Inc. v. People Center, Inc. d/b/a Rippling*, Case No. N25C-04-239 DJB (the "Delaware Action"). Rippling denies the allegations made by Deel in the Delaware Action.

As Rippling initially raised in its Notice of Pendency of Other Action or Proceeding and in the June 14, 2025 Case Management Statement, Rippling contends that the Delaware Action is materially related to the same facts and subjects as Rippling's complaint in this action. *See* ECF 51. Rippling contends that Rippling's FAC is, likewise, materially related.

On May 12, 2025, Deel filed a response to Rippling's notice of related action. On February 19, 2026, Rippling filed a motion to dismiss or stay the Delaware Action and, argues, among other things, that Deel's allegations asserted in that forum should be litigated in this Court. Deel has until April 20, 2026 to respond to Rippling's motion, which is set for hearing before the Delaware Court on June 17, 2026. Rippling has also sought to stay discovery in the Delaware Action pending the resolution of Rippling's motion to dismiss.

## XI.    RELIEF

### A.    Rippling's Position On Relief

As set forth in the First Amended Complaint, Rippling contends that it has been and will continue to be injured each day that Defendants retain and are able to use its confidential information and trade secrets. Rippling seeks permanent injunctive relief prohibiting any further wrongful possession, disclosure, or misuse of Rippling's trade secrets, as well as preventing Defendants from profiting or benefiting from their wrongful conduct. Rippling also seeks damages adequate to compensate for Defendants' theft and misappropriation of its trade secrets, including but not limited to compensatory damages, disgorgement, and exemplary and/or punitive and/or treble damages in an amount to be determined. Rippling may also seek attorney's fees or costs, or interest, in connection with this action, the totals of which are not known at this time.

### B.    Defendants' Position On Relief

Defendants deny that Rippling is entitled to any relief. Rippling has not alleged any harm caused by Defendants' conduct, nor can it do so. Rippling did not lose a single customer as a result of any actions of the Defendants, nor did Defendants use any of Rippling's alleged trade secrets.  Accordingly, Rippling is not entitled to damages, injunctive relief, or any of the other relief sought in its FAC against any of the Defendants.

## XII.    SETTLEMENT AND ADR

The Parties have met and conferred as required by ADR L.R. 3-5, and agree that private mediation is the most appropriate form of ADR for this matter, but that conducting a mediation is premature at this early stage given their divergent views of the case. Rippling further asserts that conducting mediation is premature at this early stage given that Rippling has received hardly any evidence from Deel, and no documents whatsoever, since discovery commenced. Defendants disagree with Rippling's characterization of the state of discovery.

## XIII.   OTHER REFERENCES

This case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV.   NARROWING OF ISSUES

The Parties will endeavor to narrow the issues in dispute or expedite the evidence at trial, but at this stage do not have any concrete proposals at this time. Rippling and the Defendants will continue to discuss how to narrow the issues and make the presentation of evidence more efficient, including through fact stipulations.

## XV.    SCHEDULING

Given the undisputed complexity of this case, the Parties propose the following schedule, (Defendants' agreement to the below is based on Defendants' position above that the default limits on discovery under the Federal Rules apply to this case, with the ability for the parties to seek leave for additional discovery based upon a showing of good cause), with the caveat that any counterclaims filed by Deel on March 25, 2026, may impact the dates set forth below.

| Event | Proposed Date |
| --- | --- |

19

| Case Management Conference | March 27, 2026 |
|---|---|
| Substantial completion of Deel's production in response to Rippling's May 2025 RFPs | **Rippling's proposal: May 6, 2026**—Rippling served its first set of RFPs ten months ago and Deel has still not produced a single document. Deel had documents ready for review by no later than December 2025, but inexplicably refused to begin reviewing any documents until this month. Deel now complains that its review involves "nearly 2 million" documents. This is not compelling. Weeks ago, Rippling offered to meet and confer about ways to filter non-responsive documents out of Deel's review set, and Deel never responded. If Deel is planning a document dump of hundreds of thousands of non-responsive documents, that is even more reason why the Court should enter an earlier substantial completion deadline.<br><br>**Deel's proposal: June 5, 2026**—Deel disputes this characterization. Deel and Rippling did not resolve their disputes as to what documents would even be responsive to Rippling's RFPs until mid-January 2026, and then they had a dispute over whether review should begin while the Court resolved a dispute over Rippling's request for additional custodians (which it did in early March). In any event, Deel has agreed to rolling productions, which will begin no later than April 10, 2026; as noted above, the documents Deel is reviewing for these RFPs number nearly 2 million; Deel's review did not start in earnest until March 2026 following the parties' discovery disputes, making a May 6 deadline impractical and unduly burdensome. Based on the information available, Deel currently believes that it will substantially complete review and production of these documents in June 2026, and believes that the Magistrate should address any issues the parties may have in the first instance. |
| Substantial completion of document productions | September 16, 2026 |
| Last day to seek leave to add parties or amend pleadings | September 24, 2026 |

| Close of fact discovery | January 15, 2027 |
|---|---|
| Last day to file motions to compel | January 29, 2027 |
| Exchange of opening expert reports | February 26, 2027 |
| Exchange of rebuttal expert reports | March 26, 2027 |
| Close of expert discovery | April 30, 2027 |
| Deadline to file dispositive motions and *Daubert* motions | May 28, 2027 |
| Deadline to file oppositions to dispositive motions and *Daubert* motions | July 2, 2027 |
| Deadline to file replies to dispositive motions and *Daubert* motions | July 30, 2027 |
| Hearing on dispositive motions and Daubert motions | August 13, 2027 |
| Motions *in limine* served | September 3, 2027 |
| Motions *in limine* oppositions served | October 1, 2027 |
| Pretrial conference | October 12, 2027 |
| First day of trial | October 18, 2027 |

## XVI.  TRIAL

Rippling and Defendants demand a trial by jury. At present, the Parties currently estimate that a jury trial will take approximately 15 to 20 days.

## XVII.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.

On March 17, 2025, Rippling filed a certificate of conflicts and interested entities or persons certifying that there is no conflict or interest, other than the named parties, to report. ECF 3. On March 28, 2025, Deel filed a corporate interest statement and certificate of conflicts and interested entities stating that it has no parent corporation and no publicly held corporation owns 10% or more of its stock and that there are no conflict or interest, other than the named parties, to report. ECF 37. Because they are individuals, Alex, Philippe, and Dan did not file a Corporate Disclosure Statement pursuant to Federal

Rule of Civil Procedure 7.1. On March 17, 2026, Alex, Philippe, and Dan filed their certifications pursuant to Civil L.R. 3-15, which certifies that there is no conflict or interest (other than the named parties) to report. ECF 195.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the guidelines for professional conduct for the Northern District of California.

## XIX. OTHER MATTERS

The Defendants agree that for the convenience of witnesses and the parties, they may conduct certain depositions via videoconference. Rippling agrees to meet and confer regarding the appropriateness of depositions via videoconference on a case-by-case basis. The Parties agree that service of correspondence, discovery and any filings (not otherwise effected through ECF) may be effectuated through emailing the attorneys of record, which will be treated the same as hand delivery. For the avoidance of doubt, this agreement does not cover service of process and service of third-party subpoenas on the subpoena target under Rule 45.

JOINT CASE MANAGEMENT STATEMENT
Case No.: 3:25-CV-02576-CRB

Dated:  March 20, 2026

By:    */s/ Eric H. MacMichael*
ELLIOT PETERS (SBN 158708)
epeters@keker.com
LAURIE C. MIMS (SBN 241584)
lmims@keker.com
ERIC H. MACMICHAEL (SBN 231697)
emacmichael@keker.com
ANDREW F. DAWSON (SBN 264421)
adawson@keker.com
BENJAMIN D. ROTHSTEIN (SBN 295720)
brothstein@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111
Telephone:(415) 391 5400

Attorneys for Plaintiff
PEOPLE CENTER INC. D/B/A
RIPPLING, a Delaware corporation

By:    */s/ Alex Spiro*
ALEX SPIRO (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
SAMUEL NITZE (*pro hac vice*)
samuelnitze@quinnemanuel.com
SCOTT HARTMAN (*pro hac vice*)
shartman@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:(212) 849 7000

JOSEPH SARLES (SBN 254750)
josephsarles@quinnemanuel.com
KATHLEEN S. MESSINGER (SBN 329983)
kathleenmessinger@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa, Street
10th Floor
Los Angeles, CA 90017
Telephone:(213) 443 3000

Attorneys for PEOPLE CENTER INC.
D/B/A RIPPLING, a Delaware corporation

By:    */s/ David R. Eberhart*
DAVID R. EBERHART (SBN 195474)
deberhart@omm.com
CHRIS B. PHILLIPS (SBN 330256)
cphillips@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:   +1 415 984 8700

STUART M. SARNOFF (*pro hac vice*)
ssarnoff@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas
17th Floor
New York, New York 10019
Telephone:   +1 212 326 2000

Attorneys for Defendant
DANIEL JOHN WESTGARTH

By:    */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Kenneth Brown (*pro hac vice*)
kbrown@wc.com
Danielle J. Barondess (*pro hac vice*)
dbarondess@wc.com
Lydia A. Weiant (*pro hac vice*)
lweiant@wc.com
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

William Frentzen (Bar No. 343918)
WFrentzen@mofo.com
**MORRISON FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Defendants
ALEXANDRE and PHILIPPE BOUAZIZ

23

By:      */s/ Jason D. Russell*
LANCE ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendant DEEL, INC.

24

**<u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>**

I, Eric H. MacMichael, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

DATED: March 20, 2026                    By:  */s/ Eric H. MacMichael*