KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING,
a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576-CRB<br><br>**RIPPLING'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL**<br><br>Date Filed:  March 17, 2025<br><br>Trial Date:  None set<br><br>Magistrate Judge Lisa J. Cisneros |

**TABLE OF CONTENTS**

**NOTICE OF MOTION AND MOTION** ................................................................. 1

I.  INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ......................................................................................... 4

    A.  Case Background............................................................................. 4

    B.  Deel's November 25, 2025 Responses to Rogs 2, 4, 5, and 6 ............... 5

    C.  Deel's March 11, 2026 Response to Rog 13.......................................... 8

    D.  Defendants' More-recent Interrogatory Responses................................ 8

III.  LEGAL STANDARD.................................................................................. 12

IV.  ARGUMENT.............................................................................................. 12

    A.  Deel violated the Court's November 7, 2025 Order by failing to conduct a "reasonable inquiry" in response to Rogs 2, 4, 5 and 6...................................... 12

        1.  Deel failed to conduct a reasonable inquiry by failing to interview the individual Defendants........................................................... 13

        2.  Deel failed to conduct a reasonable inquiry by unreasonably limiting its review of the individual Defendants' documents. ................. 16

        3.  Deel failed to conduct a reasonable inquiry by asking Asif Malik and Andrea David Mieli to search for and collect their own responsive documents. ......................................................... 17

    B.  Deel violated the Court's November 7, 2025 Order by unilaterally and inappropriately narrowing Interrogatory Nos. 5 and 6. ...................................... 18

    C.  Deel's misconduct warrants an award of Rippling's attorneys' fees. .................. 20

V.  CONCLUSION............................................................................................ 22

RIPPLING'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL
CASE NO. 3:25-CV-2576-CRB

3908800

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bess v. Peffley*,
2025 WL 3171904 (N.D. Cal. Nov. 13, 2025)................................................................ 17

*Bryant v. Armstrong*,
285 F.R.D. 596 (S.D. Cal. 2012) .................................................................................. 13

*Dahl v. City of Huntington Beach*,
84 F.3d 363 (9th Cir. 1996)........................................................................................... 12

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
846 F. Supp. 2d 1335 (N.D. Ga. 2012) ......................................................................... 17

*Embotteladora Electropura S.A. de C.V. v. Accutek Packaging Equipment Co.,
Inc.*,
2017 WL 1550048 (S.D. Cal. 2017).............................................................................. 17

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ............................................................... 22

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
224 F.R.D. 644 (N.D. Cal. 2004) ................................................................................. 17

*Hall v. Marriott Int'l, Inc.*,
2021 WL 1906464 (S.D. Cal. May 12, 2021) ............................................................... 15

*Hershberger v. Ethicon Endo-Surgery*,
277 F.R.D. 299 (S.D. W. Va. 2011), *vacated by stipulation of the parties*, 2012
WL 4643603 (S.D. W. Va. June 28, 2012) .................................................................... 19

*HP Inc. v. Wiseta*,
2024 WL 1699564 (N.D. Cal. Mar. 15, 2024) .............................................................. 22

*Infanzon v. Allstate Ins. Co.*,
335 F.R.D. 305 (C.D. Cal. 2020).................................................................................. 21

*Kelly v. Wengler*,
822 F.3d 1085 (9th Cir. 2016)....................................................................................... 21

*Li v. Merck & Co., Inc.*,
2025 WL 2162949 (N.D. Cal. July 30, 2025) ............................................................... 18

*Estate of Moreno v. Correctional Healthcare Cos., Inc.*,
2020 WL 5739747 (E.D. Wash. Jan. 8, 2020) .............................................................. 17

*In re Mosaic LLM Litig.*,
  2025 WL 3078831 (N.D. Cal. Nov. 4, 2025) (Cisneros, J.) ................................................ 12

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
  786 F.2d 1447 (9th Cir. 1986)............................................................................................ 21

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
  115 F.R.D. 543 (N.D. Cal. 1987) ...................................................................................12, 14

*Reddy v. Precyse Sols., LLC*,
  2015 WL 3797297 (E.D. Cal. June 18, 2015)..................................................................... 18

*Rodman v. Safeway Inc.*,
  2016 WL 5791210 (N.D. Cal. Oct. 4, 2016)....................................................................12, 18

*Safeco Ins. Co. of Am. v. Rawstrom*,
  183 F.R.D. 668 (C.D. Cal. 1998)........................................................................................ 15

*Sloan v. Oakland Police Dep't*,
  2005 WL 8156878 (N.D. Cal. July 26, 2005) ..................................................................... 12

*United States v. Fuess*,
  No. 15CV1148-BEN (RBB), 2016 WL 4793171 (S.D. Cal. Sept. 13, 2016)........................ 21

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983)............................................................................................. 15

**Federal Statutes**

Federal Rule of Civil Procedure 26 ..................................................................................... *passim*

Federal Rule of Civil Procedure 33 ..............................................................................13, 18, 19

Federal Rule of Civil Procedure 37 ..................................................................................... *passim*

**Treatises**

7 Moore's Federal Practice - Civil § 33.102 (2026)................................................................... 15

8B Wright & Miller, Fed. Prac. & Proc. § 2177 (3d ed. 2025)..............................................12, 15

## NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, at a date and time to be determined by the Court, in the courtroom of the honorable Lisa J. Cisneros, located in the Phillip Burton Federal Building, Courtroom G, 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff People Center, Inc., d/b/a Rippling ("Rippling"), will, and hereby does, present for hearing by the Court this motion for discovery sanctions ("Motion") against Defendant Deel, Inc. ("Deel").

This Motion is filed pursuant to Federal Rules of Civil Procedure 37 and 26(g), Civil Local Rule 7-8, and the Court's March 2, 2026, order (ECF 179). Rippling seeks a finding that Deel has violated Rules 37 and 26(g) by disobeying the Court's November 7, 2025, order (ECF 148); an award of its reasonable attorneys' fees and costs; an order requiring Deel to verify under penalty of perjury all future discovery responses; and any such other and further relief as the Court deems just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Rippling moves for sanctions based on Deel's violation of the Court's November 7, 2025, Order requiring Deel to respond to Rippling's Interrogatory Nos. 2, 4, 5, and 6 .

The four interrogatories at issue go directly to Rippling's core allegations: that Deel's controlling executives—Defendants Alex Bouaziz (CEO and cofounder), Philippe Bouaziz (then-CFO and board chairman), and Dan Westgarth (COO)—induced a then-current Rippling employee, Keith O'Brien, to steal confidential information from Rippling; that Alex provided daily guidance on what to look for; that O'Brien searched Rippling's systems and videorecorded Rippling's trade-secret documents, using his iPhone, to capture their contents; and that O'Brien sent those recordings back to Alex via *self-destroying Telegram messages* (at Alex's direction). Each of these allegations is supported by sworn testimony in a detailed affidavit O'Brien executed after Rippling caught him and the Defendants red-handed with a "honeypot" trap. Rippling served the four interrogatories at

---

[1] Unless otherwise noted, all emphases are added and all internal citations and quotations omitted.

issue ten months ago, on May 30, 2025, to advance discovery on these allegations. They ask: what "Rippling Originated Information" Deel has obtained, possessed, or used since 2022 (No. 2); which devices or cloud accounts did Deel use to store or access that information (No. 4); which individuals knew that O'Brien provided *any* "information related to Rippling" to Deel (No. 5); and what "information related to Rippling" did O'Brien provide to Deel (No. 6).

Deel obstructed the discovery sought by these interrogatories for months. First, Deel moved for a discovery stay and lost. *See* ECF 99, 101, 110. Then, Deel objected to the interrogatories across the board, so Rippling brought a discovery motion. *See* ECF 146. On November 7, 2025, the Court largely granted Rippling's motion and ordered Deel to respond by November 25, 2025. *See* ECF 148. Undeterred, Deel served responses on November 25 claiming that Deel was "***unaware***" of any responsive information. That was not credible on its face, and we now know it is false: After yet another discovery motion (the fifth Rippling has had to file), the Court recently ordered Deel to respond to Rippling's Rog 12, which asks Deel to identify and describe the basis for each alleged "falsehood, distortion, mischaracterization, or omission" in O'Brien's affidavit. Deel's court-ordered response, served on March 18, finally admitted that ███████████████████████ ████████████████████████████████████████████. And on March 20, Deel amended its responses to Rogs 2, 4, 5, and 6 to include *all* of this information, proving that Deel's November 25 responses to those same interrogatories—in which Deel claimed it was "unaware" of any responsive information—were incomplete and false.

Consequently, it is now beyond doubt that Deel violated Rules 26(g) and 37 in at least two ways. ***First***, Deel failed to conduct a "reasonable inquiry" in response to the Court's November 7, 2025 Order. Deel failed to interview ████████████████, who is the person most obviously likely to have responsive information (and whom we now know *did* have responsive information) or any of the other individual Defendants. And Deel unreasonably limited the search of the individual Defendants' documents by (a) ████████████████████████████████ ████ (even though their communications with O'Brien were via Telegram and WhatsApp) and (b) using unjustifiably narrow search terms that omit (as just one example) ██████████████

2

████████████████████████████████. Beyond that, Deel let ██████—whom O'Brien testified instructed him to destroy evidence and lie—████████████████████. Courts routinely reject this "fox-guarding-the-henhouse" approach to collecting and reviewing documents, especially in circumstances like these. None of these deficiencies is justifiable, and all of them combined imply a deliberate attempt to avoid uncovering inculpatory evidence.

*Second*, Deel violated Rule 37 by narrowing the scope of Rogs 5 and 6. Those rogs ask what "*information related to Rippling*" (i.e., *any* information about Rippling) did Deel receive from O'Brien, and who received it. The Court ordered Deel to respond to those Rogs 5 and 6 as-written. But Deel's November 25, 2025 responses impermissibly limited its responses to "*Rippling Originated Information*"—a court-defined term that includes only certain categories of "non-public" information—to avoid disclosing responsive information. For example, Deel recently admitted that ███████████████████████████████████████████████████████████████████████████████████████████████. But Deel failed to disclose any of this in its November 25, 2025 responses, even though Deel interviewed ██████ when preparing its responses. Why? Because, according to Deel, ████████████████████████████████████████ (Rog 13 Resp. at 6.) This is pure evasion.

Deel's gamesmanship described above obstructed discovery and prejudiced Rippling. Deel effectively helped itself to four additional months of delay beyond the court-ordered compliance deadline and forced Rippling to engage in additional, unnecessary motion practice. This merits sanctions. Additionally, this misconduct is part of a broader pattern of delay and obstructionism that must end immediately. Deel *still* has not produced a *single* document to date, and it has not provided a *single* substantive interrogatory response without forcing Rippling to file a motion. At the March 4, 2026 hearing, the Court observed that, after nearly a year of Deel's delays, "***now is the time to start getting this discovery on a fast track.***" Mar. 4, 2026 Hrg. Tr. at 59:9-10. That will not be possible if, even *after* the Court orders Deel to provide discovery, Deel evades the Court's orders by sticking its head in the sand or playing semantic games—both of which it did here.

3908800

Rippling therefore requests an award of its reasonable attorneys' fees and costs for bringing the December 23, 2025 letter brief and this motion. The requested sanctions are narrowly tailored to remedy Deel's misconduct, deter future evasion of court orders, and ensure that discovery proceeds apace.

## II.     BACKGROUND

### A.     Case Background

Rippling's claims center around Deel's brazen corporate espionage scheme in which its most senior officers—its CEO, CFO, and COO—enlisted O'Brien, a Rippling payroll manager, to steal Rippling's trade secrets from within, in exchange for cash payments routed through the COO's wife's bank account and anonymous crypto wallets. *See* Apr. 1, 2025 O'Brien Affidavit, ECF 57-1, ¶¶ 6–26 ("O'Brien Aff.").

For nearly five months, Defendant Alex Bouaziz, Deel's CEO and cofounder, provided daily instructions to O'Brien to search for specific Rippling information, and O'Brien ran CEO Alex's searches in Rippling's confidential internal systems. *Id.* ¶¶ 17–28. Initially, O'Brien took photos of the trade-secret documents he found, using his iPhone, and sent them back to Alex. *Id.* ¶ 19. But within weeks, Alex instructed O'Brien to take *videos* (so that O'Brien could provide even more information), after which O'Brien sent Alex several such recordings *per day*. *Id.* In total, O'Brien accessed ***hundreds*** of confidential Rippling documents, ran ***thousands*** of Slack searches, and previewed ***hundreds of separate channels***—some of which he previewed hundreds of times ***each***—containing some of Rippling's most sensitive competitive information, such as product roadmaps, launch strategies, competitive positioning, and ***thousands*** of customers and sales leads. *See* First Amended Complaint, ECF 57, ¶ 6 ("FAC"). Throughout the scheme, Alex and the other Defendants carefully covered their tracks by using "disappearing" text messages to communicate with O'Brien, deleting records of their phone conversations, and instructing O'Brien to "take steps to ensure there was no evidence." O'Brien Aff. ¶ 11.

After Rippling began to suspect that O'Brien was leaking confidential information to Deel, Rippling sent a "honeypot" letter to Defendant Philippe Bouaziz, Deel's board chairman and then-CFO and self-proclaimed GC, describing a newly-formed Slack channel called #d-defectors; within

a few hours of Rippling sending the letter, O'Brien ran a search for #d-defectors in Rippling's Slack. FAC ¶¶ 119–125.[2] Armed with this evidence and corroborating forensics from Rippling's own internal systems, Rippling secured an evidence preservation order against O'Brien from the Irish High Court and sought to enforce it on March 14, 2025. Initially, instead of complying, O'Brien sought out CEO Alex, who handed O'Brien off to two of Deel's senior *in-house lawyers*, Asif Malik (discussed above) and Andrea David Mieli (Deel's current Director of Legal). Malik and Mieli doubled down: Over the ensuing twelve days, they instructed O'Brien to destroy the iPhone he used for the spying scheme and to communicate with them using Telegram on a "burner phone"; they encouraged him to flee with his family to Dubai (at Deel's expense); and they offered him more money to "lie and keep quiet" (O'Brien Aff. ¶ 32)—all in direct violation of the Irish High Court's order. But after the Irish High Court admonished O'Brien at a subsequent hearing that the only way to avoid serious legal jeopardy was to comply, and after O'Brien retained his own independent legal counsel, he flipped on the Defendants and executed a lengthy, detailed affidavit, supported by extensive documentary and forensic evidence, testifying to all of the above.

### B.    Deel's November 25, 2025 Responses to Rogs 2, 4, 5, and 6

On May 30, 2025, Rippling served its first set of interrogatories on Deel. That set included Interrogatory Nos. 2, 4, 5, and 6, which request the following:

- **No. 2:** Identify all *Rippling Originated Information* that Deel has obtained, used, and/or possessed (whether in electronic or physical form) during the period of September 1, 2022 through the present . . . .

- **No. 4:** Identify and describe all storage devices and/or Cloud Account(s) belonging to Deel or any Deel employee that contain or have ever contained *Rippling Originated Information*.

- **No. 5:** Identify all Persons who, before the filing date of Rippling's Complaint, had any knowledge that O'Brien provided *information related to Rippling* to Deel . . . .

---

[2] "Within minutes" of Bouaziz instructing O'Brien to search for #d-defectors, "Alex messaged me again and told me not to run the search because he believed it was a 'trap.' I told Alex that by the time I got his messages, I had already done the search and he said 'oh shit.'" O'Brien Aff. ¶ 27.

5

- **No. 6:** Identify *all Documents and Information provided by O'Brien to Deel*, including . . . Documents and Information relating in any way to Rippling or to Deel's efforts to compete with Rippling.

*See* Rothstein Decl. Ex. 1 at 5–6 (emphasis added). In response, Deel stonewalled for months. First, Deel refused to provide any substantive response until after Judge Breyer ruled on its then-pending Rule 12 motion—even though Deel had previously agreed not to seek a discovery stay on that basis—and brought a motion for a protective order seeking to limit discovery. *See* ECF 99. On July 11, 2025, the Court denied Deel's request for a stay, and Judge Breyer affirmed that order on August 20, 2025. *See* ECF 101 at 1; ECF 110.

But Deel continued to refuse to respond to the interrogatories. On September 16, it served amended "responses" that objected across the board (Rothstein Decl. Ex. 2), prompting another discovery letter brief (ECF 146). In an ensuing 16-page order, the Court ordered Deel to respond to Rogs 2, 4, 5, and 6, subject only to the limitation that the term "Rippling Originated Information" in Rogs 2 and 4 be defined as follows:

> "Rippling Originated Information" means the following information originating from Rippling: (a) non-public information taken by former Rippling employees recruited by Deel and provided to Deel, including documents downloaded by Conspirator-1 before his termination by Rippling and PEO-related confidential documents retained by Conspirator-2 (FAC ¶¶ 27-28, 49-52, 162), (b) Rippling's product roadmaps, core initiatives, launch strategies, country-by-country pricing models, sales forecasts, customer lists, recruitment targets, go-to-market tactics, and information about Rippling's customers for particular products in particular countries, to the extent provided to Deel by Keith O'Brien or any current or former Rippling employees recruited by Deel (FAC ¶¶ 49, 69, 89, 91, 94-102, 105, 177), and (c) Rippling's sales pipeline information, competitive intelligence cards, [and] customer-specific information stolen by Keith O'Brien from Rippling's Slack channels and computer systems, and (d) Rippling's customer retention strategies provided by O'Brien or by current or former Rippling employees recruited by Deel (FAC ¶¶ 78-88, 103-104, 106-107).

ECF 148 at 8.

On the November 25, 2025 compliance deadline, Deel served a second set of amended responses stating only that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Rothstein Decl.

6

Ex. 3 at 12, 16, 19, 21. These responses were implausible, based on the extensive testimony and documentary and forensic evidence cited in Rippling's FAC, and (as explained in the next section) Deel's latest discovery responses now concede they were false. Deel also limited its responses to Rogs 5 and 6—which asked which Deel employees received "*information related to Rippling*" from Keith O'Brien, and what information about Rippling those employees received—by answering only as to "*Rippling Originated Information*" (as defined by the Court in reference to Rogs 2 and 4) received from O'Brien. *Id.* at 18–19, 21.

On December 4, 2025, Rippling sent a letter to Deel outlining these deficiencies and demanding that Deel provide compliant responses. Deel refused and threw out a series of shifting excuses. Rothstein Decl. Ex. 4. First, on a December 9, 2025 meet and confer, Deel conceded that it did not attempt to interview any of the individual Defendants in preparing its responses because (supposedly) Rippling previously claimed they would waive their personal jurisdiction defenses by providing responsive information to Deel. Rippling explained on the meet and confer that it had *never* taken that position and confirmed so in writing the following day. Rothstein Decl. Ex. 5 at 2. Next, Deel pivoted to an objection it raised to the *definitions* of Rippling's interrogatories, in which Deel said it would interpret the term "Deel" as referring "to information possessed by Defendant Deel, Inc., and *specifically excluding the individual named defendants in this action or any alleged co-conspirators or members of the alleged enterprise*." *Id.* at 1; Rothstein Decl. Ex. 2 at 4. Rippling responded that Deel never asserted this objection in any prior meet and confer correspondence nor raised this objection in the parties' prior briefing on these same interrogatories. The parties met and conferred again on December 16, 2025. On this meet and confer, Deel admitted that the individual Defendants had *refused* to speak to Deel's lawyers—in other words, that Deel's *own controlling executives* were preventing Deel from complying with the Court's Order—and Deel continued to refuse to include their knowledge in its responses until the executives agreed to participate directly in discovery.

On December 23, 2025, the parties filed a discovery letter brief in which Rippling requested the Court to issue an order to show cause why Deel should not be sanctioned for failure to comply with the Court's November 7, 2025 Order. ECF 161. On March 2, 2026, the Court granted Rippling

7

leave to file this motion. ECF 179.

**C.      Deel's March 11, 2026 Response to Rog 13**

In the December 23, 2025 discovery letter brief, Deel claimed that it had conducted a "reasonable investigation" that yielded no information responsive to Rogs 2, 4, 5, or 6. On January 25, 2026, Rippling served Interrogatory No. 13, requesting Deel to identify the investigative steps it took. Deel refused to respond. After another motion to compel and another order from the Court, Deel served its amended response to Rog 13 on March 11, 2026. Rothstein Decl. Ex. 6. The amended response concedes the following: *First*, Deel never spoke to ████████████ ████████ in connection with its investigation in response to Rogs 2, 4, 5, and 6. *Id.* at 5–6. *Second*, Deel limited its review of the individual Defendants' documents to ████████████ ████████████. *Id.* at 5. *Third*, Deel further limited the individual Defendants' corporate communications it reviewed by applying search terms that omitted ████████████ ████████████████████████. *Id.* at 5–6. *Finally*, Deel did not conduct an outside-counsel-led review of Malik and Mieli's documents at all; instead, Deel ████ ████████████████████. *Id.* at 6. Deel's interrogatory response provides no information at all regarding how ████████████████████████.

**D.      Defendants' More-recent Interrogatory Responses**

The Defendants served several additional interrogatory responses in the week prior to this filing that are relevant to the issues raised in this motion.

- *Deel's March 18, 2026 Response to Rog 12.* On January 25, 2026, Rippling served Interrogatory No. 12, requesting Deel to identify each alleged "falsehood, distortion, mischaracterization, or omission" in O'Brien's affidavit, as described in Deel's July 18, 2025 Amended Rule 26 Disclosures. Deel categorically refused to respond, requiring Rippling to bring another motion to compel. ECF 178. On March 4, the Court ruled in Rippling's favor on three pending discovery motions, including Rippling's motion to compel Deel to respond to Rog 12. Deel served its court-ordered response on March 18, 2026.

- *Individual Defendants' March 20, 2026 Responses to Rogs 1, 4, and 9.* On February

3908800

18, 2026—five days after Judge Breyer stated that he intended to deny the individual Defendants' Rule 12 motions based on personal jurisdiction and *forum non conveniens*—Rippling served interrogatories on the individual Defendants that included requests regarding their communications with O'Brien (Rog 1), payments to O'Brien (Rog 4), and the bases for any claim that the O'Brien Affidavit has any false or misleading statements (Rog 9). With their jurisdictional challenges no longer pending (and with the Court having just ruled in Rippling's favor on three separate discovery motions on March 4, 2026), the individual Defendants provided substantive responses on March 20.

- ***Deel's March 20, 2026 Amended Responses to Rogs 5 and 6.*** Also on March 20, Rippling received amendments to Defendants' responses to Rogs 5 and 6 that include (or incorporate by reference) the information in Deel's March 18 response to Rog 12 and the individual Defendants' March 20 responses.

Thus, in the past week—and exactly one year after this lawsuit commenced—Rippling finally received interrogatory responses from the Defendants that stake out their factual defenses. In stunning contradiction to their prior discovery responses, Deel's amended responses admit *dozens* of incriminating, corroborating facts in the O'Brien Affidavit—as they must, because the evidence of these facts is overwhelming—while insisting that the Defendants did nothing wrong. In service of this tightrope act, the Defendants proffer a series of "alternative explanations" for their misconduct that are so implausible they fail the straight-face test, and that—taken together—show *exactly* why the Defendants refused to disclose their factual defenses for as long as humanly possible.

As one example: The Defendants unequivocally admit they paid $6,000 to O'Brien—a payroll manager employed by their *competitor*—in November 2024, and that they routed the payment through COO Westgarth's wife's personal Revolut account. Rothstein Decl. Ex. 7 at 8. Their "alternative explanation" for the payment is that O'Brien asked Alex (the CEO of a multi-billion-dollar software company) for $6,000, no strings attached, to cover his "living expenses"; Alex handed off the request to CFO Philippe (because CEO Alex "does not handle the company's

9

3908800

finances"); and Philippe authorized the $6,000 payment because of the "relationship" between O'Brien and Deel. *Id.* Ex. 8 at 7–8; *id.* Ex. 9 at 7. That "relationship," according to the Defendants, involved only that (a) O'Brien previously *applied* for a job at Deel (but had no outstanding offer), and (b) Deel had discussed "collaboration opportunities" with O'Brien's own payroll company (but no such opportunities had materialized). *Id.* Ex. 8 at 6–7. And their "alternative explanation" for routing the money through Westgarth's wife's account? According to the Defendants, O'Brien asked that his $6,000 *gift* "not come from Deel" because "he feared Rippling was monitoring his accounts and communications." *Id.* Ex. 9 at 7. So COO Westgarth—whom Philippe asked to "arrange" the payment (*id.*), and who apparently saw nothing problematic about any of this—concealed the payment himself, by routing it through his wife's personal account. *Id.* Ex. 7 at 8. This story does not make any sense.

As another example: CEO Alex finally now admits that Deel fell for Rippling's "honeypot" trap. He admits that, within hours of Rippling sending a letter to CFO Philippe in March 2025 describing a Rippling Slack channel of interest to Deel ("#d-defectors"), Alex "informed Mr. O'Brien via Telegram of the existence of the channel." *Id.* Ex. 8 at 9. Alex's "alternative explanation" is that there was nothing improper about sending a disappearing Telegram message to O'Brien, a Rippling employee, that identified "#d-defectors" by name within hours of receiving Rippling's letter, because "Alex did not ask O'Brien to take any action with respect to [Rippling's] letter." *Id.* In other words, Alex claims that he sent the message for *no reason* other than *O'Brien's* personal edification. That defies credulity.[3]

---

[3] As yet another example: The Defendants admit that CFO Bouaziz introduced O'Brien to "A.D." (aka "the Watchman"), the individual described in O'Brien's affidavit who transferred approximately $6,000 in crypto to O'Brien each month after Deel's initial $6,000 payment. *See* Rothstein Decl. Ex. 9 at 7; Ex. 10 at 9–10; O'Brien Aff. ¶¶ 12–16. They claim that "A.D." is a dealer in second-hand luxury watches. Their story is that O'Brien asked for *more* money after Deel gave him $6,000 for "living expenses"; that Philippe said "no"; but that, as a favor to O'Brien, Philippe introduced him to "A.D." because he thought that O'Brien—a payroll manager with alleged money problems—could earn money on the side by referring luxury-watch-buying opportunities. Under Defendants' version of these events, it is a *coincidence* that the fee that O'Brien negotiated at arm's length with "A.D." is a monthly payment in the *same amount* as Deel's $6,000 payment in November 2024, and that the payments ran from December 2024 until March 2025, when the Rippling uncovered the spying scheme.

10

The Defendants' recent responses also admit that CEO Alex and other Deel employees received Rippling information from O'Brien—including "Rippling Originated Information"—that Deel failed to disclose in their court-ordered November 25 responses. For example:

- CEO Alex admits that, in October 2024, O'Brien told him about Rippling's "tactics" to win over "Deel's customers and employees." *Id.* at 7. This is "*Rippling Originated Information*." ECF 148 at 8 ("customer lists," "core initiatives," "recruitment targets").
- CEO Alex admits that between "late fall 2024 and March 2025," O'Brien sent him "multiple" Telegram messages about "customers that were leaving Deel to go to Rippling" or that "were considering whether to leave Rippling to go to Deel." Rothstein Decl. Ex. 8 at 8. This is "*Rippling Originated Information*." ECF 148 at 8 ("information about Rippling's customers for particular products in particular countries," "customer-specific information").
- CEO Alex admits that, during this time period, he asked O'Brien to provide information regarding "whether Rippling had certain product capabilities relating to French payroll systems." Rothstein Decl. Ex. 8 at 8. This is "*Rippling Originated Information*." ECF 148 at 8 ("product roadmaps," "go-to-market tactics").
- CEO Alex admits that, in early 2025, O'Brien sent him information about Rippling's OFAC sanctions compliance, and Alex further claims that O'Brien "sent Alex a Telegram message with screenshots showing payments that Rippling had made into Russia." Rothstein Decl. Ex. 8 at 8. To be clear, ***Rippling has never made payments that violate US sanctions laws***. But if Alex believes O'Brien sent him screenshots of specific payments to Rippling's customers' employees, that would be "*Rippling Originated Information*." ECF 148 at 8 ("core initiatives," "customer-specific information").
- Deel admits that ███████████████████████████████ *every day* from March 14, 2025—the day that Rippling executed the Irish High Court's evidence preservation order and O'Brien evaded the order by hiding in a bathroom stall and resetting his iPhone to factory settings—until March 25, 2025, when O'Brien told Malik he had retained his own counsel. Rothstein Decl. Ex. 10 at 21–22. Deel claims that, during this period, O'Brien provided information ███████████████ ████████████████████████████████████████████████ *Id.* at 22. If O'Brien had, in fact, disclosed such information, that would be "*Rippling Originated Information*." ECF 148 at 8 ("core initiatives").

In short, these recent responses do two things: (1) they prove beyond any doubt that Deel's November 2025 court-ordered responses to Rogs 2, 4, 5, and 6, claiming Deel was "unaware" of any responsive information, were incomplete and false; and (2) they imply Deel's motive for intentionally delaying four months past the court-ordered compliance deadline: Deel wanted to exhaust every last opportunity to get out of this forum, and to stall as long as possible, before being forced to admit or deny the specific statements in O'Brien's affidavit.

3908800

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 allows courts to sanction parties that disobey discovery orders by "issu[ing] further just orders." Fed. R. Civ. P. 37(b)(2)(A). A district court has "great latitude in imposing sanctions for discovery abuse," *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996), and the potential sanctions referenced in Rule 37 "are not intended to constitute an exhaustive list of the orders a judge may issue as sanctions," *Sloan v. Oakland Police Dep't*, 2005 WL 8156878, at *3 (N.D. Cal. July 26, 2005).

Federal Rule of Civil Procedure 26(g) "requires a signing attorney to certify that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response." *Rodman v. Safeway Inc.*, 2016 WL 5791210, at *2 (N.D. Cal. Oct. 4, 2016). When an attorney makes a certification that violates that requirement without substantial justification, the court "*must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

## IV.    ARGUMENT

The issues presented by this motion are simple. The Court ordered Deel to respond to Rogs 2, 4, 5 and 6. Deel violated this order both by failing to conduct a reasonable inquiry before responding, and by unilaterally narrowing Rippling's interrogatories. This misconduct warrants sanctions under Rules 26 and 37.

### A.    Deel violated the Court's November 7, 2025 Order by failing to conduct a "reasonable inquiry" in response to Rogs 2, 4, 5 and 6.

The Court's November 7, 2025 Order imposed on Deel the obligation "to conduct a reasonable inquiry into the factual basis of its" responses to those interrogatories. *In re Mosaic LLM Litig.*, 2025 WL 3078831, at *4 (N.D. Cal. Nov. 4, 2025) (Cisneros, J.) (citing Fed. R. Civ. P. 33). It is black-letter law that interrogatories "must be answered . . . directly and without evasion in accordance with information that the answering party possesses after due inquiry." 8B Wright & Miller, Fed. Prac. & Proc. § 2177 (3d ed. 2025). This means, "at a minimum," that a party or its counsel institute "a reasonable procedure to distribute discovery requests to **all** its employees and agents who potentially possess responsive information," *Nat'l Ass'n of Radiation Survivors v.*

3908800

*Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (cleaned up), and make a "reasonable effort to assure that the client has provided all the information and documents available to [the client] that are responsive to the discovery demand," Advisory Committee Notes to 1983 Amendment to Rule 26(g). *See also, e.g.*, *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012) ("A party answering interrogatories has an affirmative duty to furnish any and all information available to the party." (quoting 7 Moore's Federal Practice - Civil § 33.102 (2026) at 33–72)).

Deel failed to comply with this obligation in three ways: First, Deel failed to interview ██████████████████████. Second, Deel's search of the individual Defendants' documents appears designed to avoid finding responsive documents; Deel limited its review to ████████ ████████████████ (even though their communications with O'Brien were via personal Telegram and WhatsApp) and Deel used an unjustifiably narrow set of search terms. Third, Deel let ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████. These deficiencies, individually and combined, failed the requirements imposed on Deel by the Court's November 7, 2025 Order and Rule 33.

### 1. Deel failed to conduct a reasonable inquiry by failing to interview the individual Defendants.

A "reasonable investigation by a company" necessarily entails "question[ing] those [employees] that would reasonably have relevant information." *3M Innovative Properties Co. v. Tomar Elecs.*, 2006 WL 2670038, at *6 (D. Minn. Sep. 18, 2006), *adopting report & recommendation*.

The three individual Defendants are not just employees who "would reasonably have relevant information" in response to Rogs 2, 4, 5, and 6; they are the three employees who are the ***most likely*** to have responsive information out of Deel's entire global workforce, and no one else is even close. O'Brien's affidavit testifies that Alex Bouaziz directly oversaw Deel's spying scheme, corresponded with him about the scheme multiple times a day, and received stolen Rippling confidential information from him via disappearing Telegram messages. O'Brien Aff.

13

3908800

¶¶ 11, 17–25. O'Brien testified that Alex persuaded him to keep his job at Rippling so he could keep spying for Deel. *Id.* ¶ 26. O'Brien testified that Philippe Bouaziz was in regular contact with O'Brien and helped arrange his payments. *Id.* ¶¶ 7–8, 11–16. Philippe also was one of two individuals at Deel to receive Rippling's "honeypot" letter. FAC ¶ 119. Dan Westgarth operationalized information about Rippling employees stolen by O'Brien, as reflected in documentary evidence cited in Rippling's FAC. FAC ¶¶ 97, 109–12, 142. And bank records show that Deel's initial $6,000 payment to O'Brien flowed through Westgarth's wife's personal account. O'Brien Aff. ¶¶ 12, 26, 40. In short, there is no universe in which a "reasonable inquiry" into interrogatories asking about information that Deel received from O'Brien could exclude talking to those three people.

And we now know, based on the individual Defendants' very recent rog responses and Deel's amendment to its responses to Rogs 5 and 6, that if Deel *had* ██████████, it would have gathered considerable information responsive to Rogs 2, 4, 5, and 6 and disclosed it four months ago. This is conclusive proof that Deel's failure to ████████ before the court-ordered November 25, 2025 compliance deadline was a failure to conduct a "reasonable inquiry" and warrants sanctions. *See 3M Innovative Properties*, 2006 WL 2670038, at *2, *6–7 (sanctioning party that did not contact employees involved in sale or development of allegedly infringing product when responding to court-ordered interrogatories); *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 556 (sanctioning party that did not "distribute discovery requests to all employees and agents of the defendant potentially possessing responsive information").

None of Deel's shifting excuses for ████████████████████ justifies their failure to speak to them. ***First***, as noted above, the individual Defendants would *not* have waived their personal jurisdiction challenges by providing information to their own employer in connection with their employer's discovery responses. Deel has never cited any law to the contrary, and Rippling has never said otherwise in this litigation—as Rippling's counsel confirmed orally and in writing the first time Deel ever raised this issue. Deel previously tried to muddle this issue, pointing to an *unfiled draft* of a joint submission in which Rippling noted that, if the individual Defendants

14

*filed a motion to quash a subpoena issued by Rippling*, they would waive. ECF 161 at 5 (quoting ECF 161-7). Filing a motion seeking relief from the court is entirely different than providing information to their own employer, Deel, so that Deel can comply with an order from this Court.

**Second**, after Rippling confirmed its position on waiver, Deel claimed it had objected all along to Rippling's definition of "Deel," and that Deel had redefined that term to omit the individual Defendants. This objection is both procedurally and substantively meritless. Procedurally, this objection is waived because Deel did not raise it in any of the previous rounds of joint briefing. *See, e.g., Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *9 (S.D. Cal. May 12, 2021) (objections waived, even where asserted in initial responses, where not reasserted in opposition to motion to compel); *3M Innovative Properties*, 2006 WL 2670038, at *8 (same); *Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) (allowing serial objections would allow propounding party to "be strung along indefinitely"). Deel's insistence that it "understood" that Rippling did not and would not dispute this objection beggars belief: Why would Rippling undertake a motion to compel Rogs that ask for facts known to the individual Defendants, and why would the Court issue a sixteen-page order compelling Deel to respond, if everyone knew all along that Deel would omit their knowledge and provide non-responses?

And setting aside Deel's procedural default, Deel's objection to the definition fails substantively, because it is black-letter law that corporate officers' knowledge is imputed to the corporation, and a corporate party's responses to interrogatories must include that knowledge. *See, e.g.*, 7 Moore's Federal Practice - Civil § 33.102 (corporate party answering interrogatories must include "information possessed by officers . . . of the party"); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 (9th Cir. 1983) (officers' knowledge "is imputable" to the corporation); Answers to Interrogatories, Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed. 2025) ("In answering interrogatories, a party is charged with knowledge of what its agents know[.]"). Once the Court ordered Deel to respond to Rippling's interrogatories, it was obligated to reasonably inquire into its officers' knowledge. It did not.

**Third**, at the March 4, 2026 hearing, Deel suggested that its investigation was reasonable in light of the fact that it had a pending motion to dismiss for *forum non conveniens* at the time of

3908800

the November 25, 2025 compliance deadline. ECF 188 at 65:4–16. Deel has *already* twice tried to avoid participating in discovery during the pendency of that motion, and had both efforts rejected. *See* ECF 101, 110. But the unfortunate reality is that—despite losing its bid to stay discovery, despite losing a motion to compel, and despite the Court's clear November 25, 2025 compliance deadline—Deel *did* withhold substantive responses until after Judge Breyer denied its FNC motion. Even though the Court had already ruled against Deel on this *exact issue*, Deel simply helped itself to more time. That merits sanctions.

**2.      Deel failed to conduct a reasonable inquiry by unreasonably limiting its review of the individual Defendants' documents.**

Deel's Rog 13 response states that it conducted a review of the individual Defendants' ███████ ███████████████████████████████████████████—despite O'Brien's testimony that the individual Defendants used personal Telegram and WhatsApp accounts to communicate with him. Given O'Brien's testimony that the individual Defendants took steps to keep their correspondence off corporate accounts, Deel's review omitted a critical source of documents from all three individual Defendants that would be "reasonably likely" to contain responsive information. *See* O'Brien Aff. ¶ 7; Rothstein Decl. Ex. 6 at 5–6.

Perhaps even more egregiously, the purpose of Deel's review was to identify "Rippling Originated Information" and "information related to Rippling" that O'Brien provided to Deel, but the search terms that Deel used to narrow its review set omitted the specific Rippling information that O'Brien recalled sending to Deel in his sworn testimony. O'Brien's affidavit (ECF 57-1) and his subsequent declaration (ECF 128-3 ¶ 3) list several dozen specific Rippling customers whose information O'Brien passed along to Deel. That information is both "Rippling Originated Information" under the Court's definition (and therefore responsive to Rogs 2 and 4) and "information related to Rippling" (and therefore responsive to Rogs 5 and 6). Any search of the individual Defendants' documents for information responsive to these interrogatories should have included, at a bare minimum, the names of those several dozen customers.

The net effect of Deel's failure to speak to ██████████████, failure to review ██████████████, and failure to review ████████████████

16

█████ related to Rogs 2, 4, 5, and 6, is an investigation that was orchestrated to turn up nothing. That falls far short of Deel's obligation to conduct a "reasonable inquiry." *See, e.g.*, *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 657 (N.D. Cal. 2004) ("A party has an obligation to make a reasonable effort[] to locate ***all*** responsive documents and information necessary to fully respond to interrogatories."); *cf., e.g.*, *Estate of Moreno v. Correctional Healthcare Cos., Inc.*, 2020 WL 5739747, at *3 (E.D. Wash. Jan. 8, 2020) ("[I]t is well settled that a party responding to a discovery request has a duty to make a reasonable search of ***all*** sources reasonably likely to contain responsive documents," (emphasis in original)).

### 3. Deel failed to conduct a reasonable inquiry by asking Asif Malik and Andrea David Mieli to search for and collect their own responsive documents.

Deel's investigation was inadequate even beyond its failure to talk to the individual defendants or search their non-Deel devices and databases. When answering an interrogatory, a party must "review[] ***all*** sources of responsive information reasonably available" to it. *Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equipment Co., Inc.*, 2017 WL 1550048, at *3 (S.D. Cal. 2017); *see also, e.g.*, *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1350–53 (N.D. Ga. 2012) (party failed to make reasonable inquiry where it "failed to ensure that all sources of discoverable information (i.e., its custodians' hard drives) were identified and searched"). Deel did not review all sources of responsive information within its control. Deel did not run search terms related to O'Brien across ████████████████████ ███████████████████████████████████████████████████, whom O'Brien testified and ██████████████████ were directly involved with Deel's efforts to cover up the spying scheme. *See* O'Brien Aff. ¶¶ 31–44; Rothstein Decl. Ex. 6 at 5–6; *id.* Ex. 8 at 20–21; *id.* Ex. 11 at 10.

Instead, Deel merely had ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████. Even under *normal circumstances*, simply asking custodians to ████████████ ████████ does not constitute a reasonable investigation. *See, e.g.*, *Bess v. Peffley*, 2025 WL 3171904, at *2 (N.D. Cal. Nov. 13, 2025) ("It is not enough for counsel to simply give instructions

17

to his clients and count on them to fulfill their discovery obligations." (cleaned up)); *Rodman v. Safeway Inc.*, 2016 WL 5791210, at *3 (N.D. Cal. Oct. 4, 2016) (investigation unreasonable where "there [wa]s no indication that [] counsel guided or monitored [custodian']s search of [relevant] drive in any significant way" and instead merely "relied on [custodian]'s determination that no relevant documents were found"). And these are not normal circumstances: Deel asked ████████ ████████████████████████████████████████, despite sworn testimony that they used personal Telegram accounts to correspond with O'Brien, that they encouraged O'Brien to destroy evidence, and that they used disappearing messages to cover their tracks. O'Brien Aff. ¶¶ 31–33, 35–36. Deel's court-ordered response to Rog 13 provides no description of ████████████████████████ ██████████ or any reason to believe that, even as to their ████████████, it was rigorous even within its narrow bounds. It states only that they ████████████████, which could mean that they did no more than glance at a few folders they knew had no relevant information and then call it a day. This is inadequate. *Li v. Merck & Co., Inc.*, 2025 WL 2162949, at *6 (N.D. Cal. July 30, 2025) ("Rule 26 doesn't let counsel hand off responsibility for document collection to the client and then just hope for the best.").

### B.     Deel violated the Court's November 7, 2025 Order by unilaterally and inappropriately narrowing Interrogatory Nos. 5 and 6.

Even if Deel's investigation into the subject of its responses could somehow be considered reasonable, Deel violated the Court's November 7, 2025 Order with respect to Rogs 5 and 6—regarding "information related to Rippling" that O'Brien provided Deel—for the additional, independent reason that it unilaterally and improperly narrowed those interrogatories to "Rippling Originated Information" rather than responding to them fully as written.

The Order required Deel to respond to "Rippling's interrogatories"—that is, to the interrogatories that Rippling propounded (subject to the Court's limitations, which are not relevant here). Anything short of providing full responses to the interrogatories as written—as required by the Order and by Rule 33, which requires that interrogatories be answered "fully," Fed. R. Civ. P. 33(b)(3)—therefore violated the Order and is sanctionable under Rule 37(b). *See Reddy v. Precyse Sols., LLC*, 2015 WL 3797297, at *2, *6 (E.D. Cal. June 18, 2015) (holding that party's failure to

3908800

comply with Rule 33 violated court's order requiring party to respond to interrogatories); *Hershberger v. Ethicon Endo-Surgery*, 277 F.R.D. 299, 301, 307 (S.D. W. Va. 2011) (granting motion for sanctions where discovery request sought information on "lawsuits, warranty claims, field reports, or other claims or reports," but responding party limited response to information on "lawsuits"), *vacated by stipulation of the parties*, 2012 WL 4643603 (S.D. W. Va. June 28, 2012). Instead of responding fully to the interrogatories as written, Deel narrowed the scope of Rogs 5 and 6 to avoid disclosing damaging information.

Deel's description of its "reasonable investigation" in its Rog 13 response illustrates the problem: Deel says it ██████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ but Deel does *not* say that those interviews came up dry. Instead, Deel states, very carefully, that ████████████████████████████ ████████████████████████████ Rothstein Decl. Ex. 6 at 6. In other words, Deel *does not deny* that ████████████████████████████ ████████████████████████—exactly what Rogs 5 and 6 ask.

Deel's court-ordered March 11, 2026 Rog 13 response tries to defend this narrowing, arguing that ██████████████████████████████████████████ ████████████████████████████████████████. *See id.* at 3–4. But Deel's November 21, 2025 motion for relief from the November 7, 2025 Order undermines this argument entirely. Deel's motion for relief challenged "the portion of the Order requiring Deel to respond to *Interrogatory Nos. 1, 7, and 8* without any limitations or connection to Deel's alleged attempts to obtain or use 'Rippling Originated Information.' ECF 148 at 14:7–15:5." ECF 153 at 1:19–21. Clearly, when Deel filed its motion for relief, it properly interpreted the Court's November 7, 2025 Order as imposing the "Rippling Originated Information" limitation only on the two interrogatories that incorporate that phrase (Rogs 2 and 4) and it asked Judge Breyer to impose that limitation *only* on three other interrogatories—Rogs 1, 7, and 8; *not* Rogs 5 and 6.

Deel's conduct after Rippling challenged the sufficiency of its November 25, 2025 responses removes any doubt that Deel understood its obligation to respond to Rogs 5 and 6 as

19

written: In the parties' December 2025 meet and confer, Deel immediately backed off the argument that it could limit its responses to Rogs 5 and 6 to "Rippling Originated Information"; Deel omitted that argument from the parties' December 23, 2025 discovery letter brief (ECF 161 at 3–5); and Deel expressly withdrew the "Rippling Originated Information" limitation from its March 20, 2026 supplemental responses to Rogs 5 and 6. Rothstein Decl. Ex. 11 at 6, 13. Individually and collectively, these actions are a tacit admission that Deel's previous, unilateral narrowing was improper.

Lastly, even if Deel could have *properly* limited its November 25, 2025 responses to Rogs 5 and 6 to "Rippling Originated Information" *and* excluded the individual Defendants' knowledge from those responses—and it could not, and it is no longer even trying to do so—its November 25, 2025 responses *still* would have been deficient: Deel now claims that its ███████████████████████████████████████████████████████████████████████ . Rothstein Decl. Ex. 10 at 25; ECF 148 at 8 ("core initiatives"). Even if all of Deel's arguments were valid—and none of them are—Deel should have, *at bare minimum*, disclosed these ███████████████ in its November 25, 2025 responses. Its failure to do so is an irrefutable violation of the Court's Order.

**C.    Deel's misconduct warrants an award of Rippling's attorneys' fees.**

Deel's failure to comply with the Court's November 7, 2025 Order warrants an award of Rippling's attorneys' fees. Deel evaded the Court's November 7, 2025 Order requiring full responses to Rogs 2, 4, 5, and 6 by November 25, 2025, by intentionally and unreasonably narrowing its inquiry and then changing the language of Rogs 5 and 6. In doing so, Deel helped itself to a four-month extension of the Court's compliance deadline, so that it could exhaust its efforts to dismiss this lawsuit and delay as long as possible before committing to its factual defenses, despite the Court's prior order denying its request for a discovery stay, and *another* prior order compelling it to respond to Rogs 2, 4, 5, and 6 by November 25, 2025.

As explained above, Deel's misconduct violated Rule 37. Under Rule 37(b)(2)(C), the Court "***must order*** the disobedient party, the attorney advising that party, or both to pay the reasonable expenses—including attorneys' fees—caused by the failure" to comply with the Court's Order,

3908800

"unless the failure was substantially justified or other circumstances [would] make [such] an award . . . unjust." Fed. R. Civ. P. 37(b)(2)(C). Deel's conduct also violates Rule 26(g), which imposes an independent duty on counsel to conduct a reasonable inquiry before certifying discovery responses. Where, as here, an attorney certifies a response without conducting a reasonable inquiry, the Court "***must impose*** an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Deel will undoubtedly argue that its recent response to Rog 12 and its recent amended responses to Rogs 5 and 6 should wash the slate clean. But "better late than never" does not excuse a party's failure to comply with clear, court-imposed deadlines. *See, e.g.*, *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("Belated compliance with discovery orders does not preclude the imposition of sanctions."); *see also Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 313 (C.D. Cal. 2020) ("[T]hese belated responses were served eight months after [Deel's] discovery was first served, two months after the Court had compelled it, and only after a coercive order to show cause issued. That hardly cleans the slate."). Deel's noncompliance with the Court's deadline delayed and obstructed these proceedings, and its recent responses *confirm this* by disclosing responsive information that Deel *should have disclosed four months ago*.

Rippling respectfully requests that an award of its fees is an appropriate remedy. An award of fees and costs is the routine remedy for violations of discovery orders and failures to conduct reasonable inquiries. *See* Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 26(g)(3). The twin purposes of discovery sanctions are deterrence and remediation. "[S]anctions imposed under Rule 37 should deter the Defendant's conduct, and remedy any prejudice it caused the Plaintiff." *United States v. Fuess*, No. 15CV1148-BEN (RBB), 2016 WL 4793171, at *1 (S.D. Cal. Sept. 13, 2016). Deterrence is necessary in this case because Deel's noncompliance is part of a broader pattern of discovery obstructionism that needs to be nipped in the bud. And while attorneys' fees will not remedy Deel's four-month delay, they will address the resources Rippling has had to expend addressing Deel's violation.

Courts calculate reasonable attorneys' fees using the lodestar method—multiplying reasonable hours expended by reasonable hourly rates. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th

Cir. 2016). Rippling seeks ███████ in attorneys' fees and costs, as detailed in the accompanying attorney declaration. *See* MacMichael Decl. Keker, Van Nest & Peters LLP's hourly rates are consistent with rates recently approved in this District. *See, e.g.*, *HP Inc. v. Wiseta*, 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner and $625–$725 for associates); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving partner rates up to $1,325 and associate rates up to $520). These expenses reflect 112.2 hours reasonably incurred as a direct result of Deel's noncompliance, including: two meet-and-confer sessions; two rounds of joint letter briefing; and drafting this motion. Rippling will submit a supplemental declaration addressing its fees for its upcoming reply and preparing for and attending the hearing on this motion.

Because these fees were incurred solely due to Deel's failure to comply with its discovery obligations and this Court's order, an award is mandatory under Rule 37(b)(2)(C).

## V.    CONCLUSION

For the reasons set forth above, Rippling respectfully requests that the Court enter a finding that Deel's November 25, 2025 responses to Rippling's Interrogatory Nos. 2, 4, 5, and 6 violated the Court's November 7, 2025 Order, and that the Court enter a sanctions award requiring Deel to pay Rippling's attorneys' fees and costs.

Dated:  March 25, 2026                                        KEKER, VAN NEST & PETERS LLP

                                          By:    /s/ Eric H. MacMichael
                                                 ELLIOT R. PETERS
                                                 ERIC H. MACMICHAEL
                                                 ANDREW F. DAWSON
                                                 BENJAMIN D. ROTHSTEIN

                                                 Attorneys for Plaintiff PEOPLE CENTER,
                                                 INC. D/B/A RIPPLING, a Delaware
                                                 corporation