LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Counsel for Defendant and Counterclaimant Deel, Inc.*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1-100,<br><br>Defendants.<br><hr>DEEL, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation; PARKER ROUSE CONRAD, an individual; and KEITH O'BRIEN, an individual; and DOES 1-100,<br><br>Counter-Defendants. | Case No.: 3:25-cv-02576-CRB<br><br>**DEEL'S OPPOSITION TO RIPPLING'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL**<br><br>Compl. Filed:         March 17, 2025<br>Am. Compl. Filed:   June 5, 2025<br>Counterclaims Filed  March 25, 2026<br>Judge:                Hon. Charles R. Breyer<br>Magistrate Judge:   Lisa J. Cisneros<br>Trial Date:           None Set |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND & PROCEDURAL HISTORY ......................................................2

    I.    Rippling's Early Service Of 100 Discovery Requests And 36 Subpoenas..........................3

    II.    Rippling Purportedly Serves The Individual Defendants With The FAC And Confers With Deel On Discovery Proportionality And Scope ............................................4

    III.    The Parties Agree To Litigate Deel's September Objections To The Interrogatories .......................................................................................................................6

    IV.    The Court's November Order .............................................................................................6

    V.    Deel's November Responses ...............................................................................................8

    VI.    Rippling's Subsequent Change Of Lead Counsel And Positions .......................................9

    VII.    After The Court Resolved The Individual Defendants' Jurisdictional Challenges In February, They Participated Fully In Discovery, Yet Rippling Filed This Motion Anyway .................................................................................................................11

LEGAL STANDARD..............................................................................................................12

ARGUMENT .........................................................................................................................14

    I.    Discovery Sanctions Against Deel Are Unwarranted Under Either Rule 37 Or 26(g) Based On Deel's November Responses, Which Were Accurate And Complied With The Court's November Order, As Well As The Parties' Shared Understanding ......................................................................................................................14

        A.    Deel's November Responses Were Based On A "Reasonable Inquiry" ..............15

        B.    Deel's November Responses Did Not Unilaterally Or Inappropriately Narrow Interrogatory Nos. 5 and 6 ......................................................................19

        C.    At A Minimum, Deel's November Responses Were Substantially Justified And Did Not Harm Or Prejudice Rippling .........................................................20

    II.    Even If Discovery Sanctions Were Appropriate—And They Are Not—Rippling's Fee Request Is Unreasonable And Not Properly Substantiated......................................22

CONCLUSION.......................................................................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Alderson v. U.S.*,
  718 F.Supp.2d 1186 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012)..................................18

*Bay Area Surgical Group, Inc. v. Aetna Life Insurance Co.*,
  No. 5:13–cv–05430, 2014 WL 2759571 (N.D. Cal. June 17, 2014) ............................................22

*Cahill v. Insider Inc.*,
  131 F.4th 933 (9th Cir. 2025) ....................................................................................................16

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ...................................................................................................16

*Doran v. Vicorp Restaurants, Inc.*,
  407 F.Supp.2d (C.D. Cal. 2005) ................................................................................................22

*Hahn v. Massage Envy Franchising*,
  No. 12-cv-153-DMS, 2014 WL 12899320 (S.D. Cal. Aug. 22, 2014)..........................................21

*Longitude Licensing LTD v. Apple Inc.*,
  No. 14-cv-04275-EDL, 2015 WL 12781217 (N.D. Cal. Nov. 9, 2015)...................................13, 21

*Peterson v. Highland Music, Inc.*,
  140 F.3d 1313 (9th Cir. 1998) ...................................................................................................16

*State of New York v. United States Department of Commerce*,
  461 F.Supp.3d 80 (S.D.N.Y. 2020) .......................................................................................13, 21

*In re StubHub Refund Litigation*,
  No. 20-md-02951-HSG, 2024 WL 2305604 (N.D. Cal. May 20, 2024).........................12, 13, 21

*Subramani v. Wells Fargo Bank, N.A.*,
  No. 13-cv-01605-SC, 2015 WL 12964616 (N.D. Cal. Mar. 18, 2015) ........................................13

*In re Uber Technologies Inc., Passenger Sexual Assault Litigation*,
  No. 23-md-03084-CRB, 2026 WL 440752 (N.D. Cal. Feb. 17, 2026) .............................13, 21, 22

*X Corp. v. Center for Countering Digital Hate Ltd.*,
  724 F.Supp.3d 921 (N.D. Cal. 2024) ..........................................................................................17

**RULES**

Federal Rule of Civil Procedure 26 ..............................................................................12, 13, 15

Federal Rule of Civil Procedure 33 ........................................................................................14

Federal Rule of Civil Procedure 37 ........................................................................................12

N.D. Cal. Local Rule 54-5 .......................................................................................................22

ii

## PRELIMINARY STATEMENT

Plaintiff and Counter-Defendant People Center, Inc., d/b/a Rippling's ("Rippling") motion for discovery sanctions (the "Motion" or "Mot.") against Defendant and Counterclaimant Deel, Inc. ("Deel") should be denied. Deel did not disobey the Court's November 7, 2025 order (ECF 148, the "November Order") requiring that Deel respond to Rippling's Interrogatories.[1] Rather, on November 25, Deel provided substantive responses based on its investigation to date and subject to its right to supplement (the "November Responses"). The crux of those Responses—that Deel did not possess Rippling Originated Information—was correct when it was given and remained correct even after the Individual Defendants (Alex Bouaziz ("Alex"), Philippe Bouaziz ("Philippe"), and Dan Westgarth ("Dan")) timely responded to Rippling's discovery to them (which Rippling served February 18, 2026), and Deel provided further responses on March 20, 2026. Despite having all of the information regarding Rippling Originated Information (which has not changed since November), Rippling filed this Motion on March 25, 2026, for its own sake, and seeks to charge Deel for the financial "harm" Rippling allegedly incurred preparing it.

Rippling makes two arguments, neither of which has merit. First, Rippling claims that Deel did not conduct a reasonable inquiry before providing the November Responses. As described in detail below (and as Rippling has long known), that is not true. Despite the early stage of discovery, Deel reviewed over 27,000 documents collected from the Individual Defendants and interviewed nine Deel employees, referenced in Rippling's FAC, as to their knowledge of Rippling's allegations. Rippling's complaint appears to be that the November Responses did not include information solely within the possession of the Individual Defendants or from their personal mobile devices. But that is for the simple reason that the Individual Defendants had pending service and jurisdictional motions, and Rippling had consistently taken the position through November that their participation would constitute a waiver. Once the service and jurisdictional motions were resolved, Deel supplemented its responses to include information from the Individual Defendants—who also timely responded to discovery served by Rippling.

Second, Rippling argues that Deel improperly narrowed the scope of Interrogatory Nos. 5 and 6 by interpreting Rippling's use of the undefined term "information" in those requests to mean "Rippling

---

[1] Citations herein to ECF documents refer to page numbers as assigned by the Court's ECF filing system, unless otherwise indicated. Where ECF pagination was unavailable, citations are to native document page numbers listed in the footer. Unless otherwise noted, all emphases in quoted material are added, and all internal citations, quotations, and punctuation omitted for ease of reading.

1

Originated Information." This was not a basis identified for this potential Motion in the parties' December joint letter upon which the Court relied to allow this Motion, *see* ECF 161, and thus should be rejected as grounds for sanctions. But in any event, Deel's interpretation was consistent with the parties' conferral.

Even if the Court were to credit Rippling's erroneous interpretation of the November Responses and events leading to them, no sanctions can be issued under either Rule 37 or Rule 26(g) because Deel's approach was "substantially justified," and there was no prejudice or harm to Rippling. Indeed, in light of the circumstances described herein, this Motion is confounding. This is not a case where a discovery cutoff or trial was looming, or any other deadline that could have conceivably been affected. The Court did not even enter a Case Management Scheduling Order in this case until March 23, 2026—*after* Rippling already had received the information it wrongly claims it was entitled to in November—and the close of fact discovery is *next year* in mid-January 2027. ECF 199. Deel did not "force" Rippling to file this Motion (Mot. 3)—to the contrary, Deel has been telling Rippling since February 2026 that it is wholly unnecessary, particularly since the Individual Defendants and Deel were going to (and did) provide discovery responses by March 20. And Rippling of course knew the entire time that the Individual Defendants would participate in the event their jurisdictional and service motions were denied. The financial "harm" incurred by Rippling here is entirely of its own creation due either to its change in counsel (and subsequent litigation strategy), or for the sole purpose of preparing this needless Motion, and in any event is not reasonable. For all of these reasons, the Court should deny the Motion.

### **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

As with all of its filings in this case, Rippling's Motion continues to present the word of an admitted liar and paid witness—Keith O'Brien—as infallible and proven fact. *See, e.g.*, Mot. at 4-5. As Deel set forth in its March 25, 2026, answer and counterclaims, the truth is far from Rippling's and O'Brien's rendition. *See generally* ECF 203. Nearly every substantive line in O'Brien's April 1, 2025, affidavit that was attached to Rippling's FAC as the basis for Rippling's claims in this Court is false. *See id.* at 37-41, 82-101 (citing, among other things, O'Brien's own March 2025 emails from before he signed the affidavit accusing Deel of "spying," where he stated: "I am being harassed by my now former employer Rippling" for "rais[ing] my concerns on the Russia payments internally and indeed with the Central Bank of Ireland"; "I feel I am being pressured to say things that are not true. **I am being coerced into saying**

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.          CASE NO.: 3:25-cv-02576-CRB

**stuff that is not true to damage Deel**"; and "**Rippling is coercing me to say untruths about Deel**."). No Defendant has ever solicited or used Rippling's confidential information or trade secrets. *Id.* And even accepting O'Brien's affidavit as true, O'Brien has admitted in writing that he has lied to, among others, Deel, Rippling, the High Court of Ireland, the Central Bank of Ireland, officers of the court, attorneys, and virtually anyone with whom he has come into contact with respect to the allegations in this case. *Id.*

I.      <u>**Rippling's Early Service Of 100 Discovery Requests And 36 Subpoenas**</u>

Rippling filed its original complaint in this matter against Deel only on March 17, 2025. ECF 1. Deel moved to dismiss Rippling's complaint on various grounds on April 25. *E.g.*, ECF 48. Rippling had conditioned Deel's request for a brief extension of time to respond to Rippling's complaint on Deel's agreement not to seek a discovery stay in this matter. ECF 41. In response to Deel's motions, Rippling filed its first amended complaint (the "FAC") on June 5, 2025, in which it named the Individual Defendants for the first time, in addition to Deel. ECF 57.

On May 30, 2025, Rippling served discovery on Deel, the first permissible day to do so under the Rules, and before it filed the FAC (although Rippling already knew it was going to amend). Rippling's May 30, Interrogatory Nos. 2, 4, 5, and 6 asked Deel to identify, in effect: "all Rippling Originated Information that Deel has obtained, used, and/or possessed" since September 1, 2022, through the present (No. 2); "all storage devices and/or Cloud Account(s) … that contain or have ever contained Rippling Originated Information" (No. 4); all persons "who, before the filing date of Rippling's Complaint, had any knowledge that O'Brien provided information related to Rippling to Deel" (No. 5); and "all Documents and Information provided by O'Brien to Deel" (No. 6). *See* ECF 202-2.

On June 30, Deel timely objected to these Interrogatories on various grounds, including on the basis that they were not proportional to the needs of the case because they sought non-forum-related discovery while Deel's *forum non conveniens* motion was pending. Deel also objected to Interrogatory No. 5 on the ground that "information" was "undefined, vague, ambiguous" and thus made the Interrogatory overbroad, and objected to Interrogatory No. 6 on the ground that it was "overbroad and unduly burdensome" because it sought information that is not relevant to the subject matter of this action, which was "based on allegations that Deel has supposedly harmed Rippling by allegedly acquiring Rippling's 'Corporate Strategy Trade Secrets' and 'Sales and Marketing Trade Secrets.'" Declaration of

Adam Lloyd ("Lloyd Decl.") Ex. 1 at 18-23.

Deel also made clear that it was responding to Rippling's Interrogatories only on behalf of itself, and not the Individual Defendants, who had separately been named as Defendants, had their own counsel, were not U.S. citizens, resided abroad, and intended to challenge whether the Court could exercise personal jurisdiction over them. *See id.* at 4-5 ("Deel interprets 'Deel' or 'You' or 'Your' to mean and refer to Defendant Deel, Inc., and specifically excluding the individual named defendants in this action.").

On July 11, 2025, Deel moved to dismiss Rippling's FAC for *forum non conveniens* and failure to state a claim, among other things, which were set to be heard by the Court on September 19, 2025. *E.g.*, ECF 88, 89. In the meantime, on July 9, the parties agreed to litigate Deel's request for a protective order limiting the scope of all discovery to that which was directly relevant to whether this action should have been dismissed for *forum non conveniens* in favor of proceeding in Ireland while that motion was pending. ECF 75. Since May 30, Rippling had served nearly 100 discovery requests on Deel and issued *three dozen* third party subpoenas seeking to pry into all aspects of Deel's business.

On July 29, the parties filed a joint letter brief addressing Deel's motion for a protective order. ECF 99. On August 20, Judge Breyer confirmed the denial of "Deel's motion without prejudice to future challenges to proportionality for reasons other than the pending motion to dismiss." ECF 110.

II.    **Rippling Purportedly Serves The Individual Defendants With The FAC And Confers With Deel On Discovery Proportionality And Scope**

While Deel was in the midst of negotiations over the scope of permissible discovery in this matter, Rippling purported to serve the Individual Defendants with the FAC, which the Individual Defendants disputed. None of the Individual Defendants are a U.S. citizen, and all live and work abroad with no relevant connection to California. ECF 174 at 4-5. The Individual Defendants did not agree to participate in discovery before their service, jurisdictional, and forum challenges were resolved. Declaration of Kenneth Brown ("Brown Decl.") ¶ 4. Indeed, the Individual Defendants were told by Rippling that, if they participated in discovery, Rippling would argue waiver in response to the Individual Defendants' forthcoming service and personal jurisdiction arguments. *Id.* ¶ 5. Rippling refused even to agree to a simple proposal that counsel for the Individual Defendants would accept service of process in this case while preserving the Individual Defendants' personal jurisdiction defense. *Id.* Accordingly, the Individual Defendants waited until their service, jurisdictional, and forum motions were adjudicated by the Court

4

before participating in discovery. *Id.* ¶ 6. At no time before Rippling changed counsel in December 2025 did Rippling ever raise any issue with Deel's long-standing limitation of its discovery responses to Deel only or assert to Deel that the Individual Defendants needed to participate in discovery while their service and jurisdictional motions were pending. Lloyd Decl. ¶ 4.

On August 22, the Individual Defendants moved to dismiss Rippling's FAC for improper service, lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. *E.g.*, ECF 111, 112. The Individual Defendants did not agree with Rippling to any prohibition on a discovery stay while these motions were pending. Brown Decl. ¶ 4. The Individual Defendants' motions originally were set for a hearing on October 17, 2025.

On August 26, 2025, Deel told Rippling that before it could respond to the Interrogatories, the parties needed to resolve Deel's other objections regarding the proportionality of the Interrogatories, pursuant to Judge Breyer's order. Lloyd Decl. Ex. 2 at 3. That same day, Rippling responded that it was "amenable to discussing Deel's other objections to Rippling's interrogatories" at a meet-and-confer on September 2, 2025. It asked Deel to "please identify the key points driving Deel's objections, and if Deel proposes a narrower scope than what is sought by any interrogatory, please provide that scope." *Id.* at 2. On the meet-and-confer call on September 2, 2025, Deel stated that it would respond to Interrogatory Nos. 2, 4, 5, and 6, provided that Rippling would agree to narrow the scope of those Interrogatories to seeking information specifically related to Deel's alleged possession of "Rippling Originated Information," and further agreed to define "Rippling Originated Information" in a way such that Rippling's alleged trade secret information would be identified with particularity. Lloyd Decl. ¶ 5. Rippling did not express disagreement with these parameters on the September 2 call. *Id.*

After Rippling provided an updated definition on September 8 of "Rippling Originated Information" so that Deel could respond to those Interrogatories, Deel served amended responses and objections to Interrogatories on September 16, 2025. With respect to Interrogatory Nos. 5 and 6, Deel stated that, "as discussed during the parties' September 2 conference, Deel construes this Interrogatory as asking for identification of all Persons who, before the filing date of Rippling's Complaint, had any knowledge that O'Brien provided any Rippling Originated Information to Deel" (No. 5), and "as discussed during the parties' September 2 conference, Deel construes this Interrogatory as asking for identification

5

of documents provided by O'Brien to Deel regarding any Rippling Originated Information" (No. 6). ECF 202-3 at 18-19, 21-22. Deel also made clear, however, that it was answering only on behalf of Deel itself (and not the Individual Defendants), and that Rippling's updated Rippling Originated Information definition still did not identify the purported trade secrets with sufficient particularity to permit a substantive response. *Id.* at 6-9.

Also on September 16, the Court vacated and continued the upcoming September 25 hearing on Deel's motions to dismiss Rippling's FAC until October 17, 2025. ECF 121. On October 7, the Court once again vacated and continued any hearing on Deel and the Individual Defendants' motions to dismiss Rippling's FAC until December 12, 2025. ECF 143.

## III.    The Parties Agree To Litigate Deel's September Objections To The Interrogatories

On October 3, the parties conferred on Rippling's challenges to Deel's September 16 objections and agreed to file a joint letter on October 10. Lloyd Decl. ¶ 8. On October 9, the day before the parties' filed the joint letter upon which the Court ruled in its November Order, Deel told Rippling that it understood that Rippling had "repeatedly taken the position that any participation by the Individual Defendants in this matter while their service and jurisdictional challenges are pending would constitute a waiver of those defenses." Lloyd Decl. Ex. 3 at 1; *see also* Brown Decl. ¶¶ 4-5. Rippling never responded to this email or otherwise disputed Deel's understanding. Lloyd Decl. ¶ 9. Given Rippling's knowledge that the Individual Defendants were not participating in discovery—and its acquiescence in that state of affairs—Deel's long-standing limitation of its discovery responses to exclude the Individual Defendants was not an "unresolved issue" under this Court's Standing Order § F.5 that needed to be addressed in Rippling's October 10 letter that led to the November Order.

On October 10, Rippling and Deel filed a joint letter to litigate Deel's objections to the term "Rippling Originated Information," and noted in their joint letter brief heading that Deel was seeking to apply this definition to Interrogatory Nos. 1-2, and 4-9. ECF 146 at 2. Deel made clear that it "objects to all nine Interrogatories as overbroad and disproportionate to the needs of the case to the extent that they are not connected to 'Rippling Originated Information.'" *Id.* at 5.

## IV.    The Court's November Order

On November 7, 2025, the Court resolved the parties' dispute as to the definition of "Rippling

6

Originated Information," and noted that Deel sought to impose this limiting term on its responses to Rippling's Interrogatories. ECF 148 at 4. The Court limited that definition for "the purpose of the present interrogatories" to the following, finding it "reasonable and proportional to Rippling's legitimate interest in assessing what (if any) confidential information Deel obtained and developing its claims to the extent such evidence might support them":

> "Rippling Originated Information" means the following information originating from Rippling: (a) non-public information taken by former Rippling employees recruited by Deel and provided to Deel, including documents downloaded by Conspirator-1 before his termination by Rippling and PEO-related confidential documents retained by Conspirator-2 (FAC ¶¶ 27-28, 49-52, 162), (b) Rippling's product roadmaps, core initiatives, launch strategies, country-by-country pricing models, sales forecasts, customer lists, recruitment targets, go-to-market tactics, and information about Rippling's customers for particular products in particular countries, to the extent provided to Deel by Keith O'Brien or any current or former Rippling employees recruited by Deel (FAC ¶¶ 49, 69, 89, 91, 94-102, 105, 177), and (c) Rippling's sales pipeline information, competitive intelligence cards, customer-specific information stolen by Keith O'Brien from Rippling's Slack channels and computer systems, and (d) Rippling's customer retention strategies provided by O'Brien or by current or former Rippling employees recruited by Deel (FAC ¶¶ 78-88, 103-104, 106-107).

ECF 148 at 8-9. Importantly, Rippling had also sought to include the following categories of information in its proposed definition of "Rippling Originated Information," but the Court expressly rejected each of them: "information wrongly obtained by Deel through its access as a Rippling customer while developing competing products (FAC ¶¶ 40-44)"; "the 'pages of insights' on Rippling that Chris Lee claimed were gathered from Deel sales representatives posing as job applicants and other information obtained through Deel's 'sustained and targeted' recruitment of Rippling personnel that served as 'a mechanism for misappropriating trade secrets and confidential business information' (FAC ¶¶ 43-47, 166)"; "information from Rippling gathered by Deel employees falsely posing as legitimate customer prospects (FAC ¶¶ 52-53)"; "information about Rippling's employees used by Deel to attempt to hire those employees away from Rippling (FAC ¶¶ 73, 108-112)"; and "information used by Deel to advance a false press attack against Rippling (FAC ¶¶ 113-117)." ECF 148 at 7-8.

The Court rejected the information above as "unduly broad and burdensome," because it was not "reasonably tailored to information that Rippling might plausibly argue to be trade secrets," and included "information that Rippling freely disclosed to actual customers, prospective customers, and prospective employees with no indication of any meaningful expectation of confidentiality," "lack any indicia of confidentiality," and "factual public information about Rippling's plans or products." *Id.* If Rippling

7

wanted to pursue "other categories of information excluded by [the Court's] definition," it needed to serve additional interrogatories and "be prepared to explain why such further interrogatories are relevant to its claims and proportional to the needs of the case." *Id.* The Court ordered Deel "to respond to Rippling's interrogatories, as limited by the Court's analysis above, no later than November 25, 2025." *Id.* at 16. The Court also made clear that "[n]othing in [the Court's November] Order [was] intended to displace any agreement that the parties have reached regarding these interrogatories," as it was unclear "if Rippling [h]as agreed to withdraw, defer, or limit any of them." *Id.* at 3.

## V.    Deel's November Responses

On November 10, within days of the Court's issuance of the November Order, Deel told Rippling that Rippling needed to limit its proposed search terms seeking discovery on non-Rippling companies, based on the Court's ruling in the November Order that this "field of discovery [] is relevant (if at all) only to a discrete theory of liability (RICO liability predicated in part on conduct unrelated to Rippling) that might or might not survive Defendants' motions to dismiss, and which would not necessarily proceed in another forum (e.g., Ireland) if the case did not proceed here." ECF 202-6 at 8-9. Deel also told Rippling that if "Rippling believes that additional terms should be included from its existing list at this time, please provide a list of proposed terms for inclusion along with an explanation as to why each proposed term comports with the Magistrate's November 7 order." *Id.* at 9. Deel further stated:

> As to the sources of data, Deel believes that a discussion with Rippling of data sources for review and production is premature in light of the pending issues raised above, as well as the pending jurisdictional challenges raised by the Individual Defendants. For the avoidance of doubt, Deel objects at this time to the inclusion of any data sources beyond email, Slack, and Google Drive data, but is open to further discussion upon resolution of the issues referenced herein.

*Id.* at 10. **Rippling did <u>not</u> respond to, address, or dispute in any way Deel's positions on these issues prior to Deel's November Responses**. *Id.* at 7.

On November 25, 2025, Deel timely served responses to Rippling's Interrogatory Nos. 2, 4, 5, and 6, stating for Interrogatory Nos. 5 and 6 that, consistent with its previous positions, "due to the vague term 'information,' Deel construes this Interrogatory as asking for identification of all Persons who, before the filing date of Rippling's Complaint but no earlier than September 1, 2022, had any knowledge that O'Brien provided any Rippling Originated Information to Deel" (No. 5), and "due to the vague term 'information,' Deel construes this Interrogatory as asking for identification of documents provided by O'Brien to Deel

8

regarding any Rippling Originated Information" (No. 6). ECF 202-4 at 19, 21. Deel understood that Rippling had agreed with these limitations as to at least these specific Interrogatories based on the undefined and vague "information" terms (both due to the parties' September meet-and-confer and the positions Rippling took in the October 10 joint letter), Deel's consistent objections and concerns as to proportionality regarding these Interrogatories, and the Court's acknowledgment in the November Order that Deel was seeking to impose this limitation on Rippling's Interrogatories.

In its November Responses, Deel responded to Interrogatory Nos. 2, 4, 5, and 6 with this understanding, stating effectively for each Interrogatory that "[a]t this stage of the proceedings and discovery, and based on Deel's investigation to date and the fact that Deel's document review is not complete, Deel is currently unaware that it has ever had such [Rippling] information. Since discovery is in its very early stages, Deel will supplement this response as appropriate as this action and discovery further progress, should Deel become aware of information that necessitates a further response to this Interrogatory." *E.g.*, ECF 202-4 at 12. Deel once again stated it was answering on behalf of itself only and not the Individual Defendants. *Id.* at 4-5.

## VI.    Rippling's Subsequent Change Of Lead Counsel And Positions

Rippling then switched lead counsel, who eventually surfaced for the first time on December 3, 2025, *after* Deel served its November Responses.

The next day, Rippling's new lead counsel sent Deel a letter taking issue with the parties' understanding since September as to how Deel was interpreting Interrogatory Nos. 5 and 6 so that they were proportional to the needs of the case. ECF 202-5. New counsel also asserted for the first time that with respect to Deel's responses to Interrogatory Nos. 2, 4, 5, and 6, "[i]t is not possible that Deel has conducted anything close to 'reasonably inquiry'" in responding to these Interrogatories, arguing that Deel's investigation "appears to have been nonexistent." *Id.* Deel and Rippling then had a meet-and-confer on December 9, where Deel told Rippling that the Individual Defendants had been following Rippling's representations that the Individual Defendants could not participate in discovery in this matter without waiving their jurisdictional defenses, and accordingly did not participate in Deel's November Responses by providing information solely within their possession or from their personal mobile devices. Lloyd Decl. ¶ 10. Deel also explained that its understanding of Interrogatory Nos. 5 and 6 was based on the vague and

undefined term "information" relating to Rippling used therein, which Deel had understood from the parties' conferrals to mean "Rippling Originated Information." *Id.*

On December 10, Rippling's new counsel attempted to disclaim that Rippling had ever asserted that the Individual Defendants would waive their jurisdictional defenses by participating in discovery and asserted that Deel waived this issue by not including it in Deel's objections. ECF 202-6 at 3.[2] Rippling's new counsel was incorrect, as Rippling had consistently asserted that position against the Individual Defendants, and they acted accordingly. Brown Decl. ¶¶ 5-7. Deel responded on December 11 that it had been clear since June 2025 that Deel was answering on behalf of itself, and was specifically excluding the Individual Defendants from its responses. ECF 202-6 at 2. Deel also noted that "[u]ntil we received your December 4, 2025 letter, Rippling had never taken issue with that limitation or disputed it at any time in these discovery proceedings, including in the parties' various meet-and-confers to address these interrogatories." *Id.* Rippling has not and cannot dispute this.

The parties had a second meet-and-confer on December 16, wherein Deel reiterated that although its November Responses to Interrogatory Nos. 5 and 6 appropriately interpreted "information" to mean "Rippling Originated Information" following the November Order, it was willing to supplement those November Responses with a broader understanding of the word "information." Lloyd Decl. ¶ 11. Rippling then confirmed later that day in writing that "***the dispute is narrowed to a single issue that we have discussed at length in our letter and two meet and confers***: Whether Deel has failed to comply with the Court's Order to respond to Rogs 2, 4, 5, and 6, by withholding from its response information known by Alex Bouaziz, Phillipe Bouaziz, and Daniel Westgarth." *Id.* Ex. 4 at 12.

Notably, Deel understands that at no point during the parties' discussions of these issues did Rippling make any attempt whatsoever to contact the Individual Defendants. Then, on December 23, 2025, at Rippling's insistence, Deel and Rippling filed a joint letter brief addressing whether this "single issue" of the Individual Defendants' exclusion justified granting Rippling leave to move for sanctions against Deel. *Id.* at 12; ECF 161. Deel's understanding of "information" was not the subject of Rippling's request for leave to file for sanctions in this December letter. ECF 161.

---

[2] On December 5, the Court again vacated and continued the upcoming December 12 hearing on Deel's and the Individual Defendants' motions to dismiss Rippling's FAC (which would have resolved the Individual Defendants' service and jurisdictional challenges) until February 13, 2026. ECF 160.

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.        CASE NO.: 3:25-CV-02576-CRB

On February 13, 2026, Judge Breyer indicated orally from the bench that the court intended to deny the Individual Defendants' motions to dismiss Rippling's FAC for improper service, lack of personal jurisdiction, and *forum non conveniens.* A written order followed on February 23. On March 2, 2026, the Court ruled on the parties' December letter, granting Rippling leave to file a sanctions motion on the issues raised in the December letter. ECF 174, 179.

Rippling did not serve any discovery on the Individual Defendants until February 18, 2026, after Judge Breyer indicated orally from the bench that the Court intended to deny the Individual Defendants' motions. Brown Decl. ¶ 3.

## VII. After The Court Resolved The Individual Defendants' Jurisdictional Challenges In February, They Participated Fully In Discovery, Yet Rippling Filed This Motion Anyway

Shortly after receiving Judge Breyer's order in February, Deel told Rippling that Deel would supplement its November Responses with information from the Individual Defendants by March 20, and that Deel understood that the Individual Defendants would substantively answer Rippling's discovery requests by the same date. Lloyd Decl. ¶ 13. Deel also confirmed that its March 20 supplementation would use Rippling's broader interpretation of the word "information," per the parties' agreement in December. *Id.*

On March 11, in response to Rippling's Interrogatory No. 13, Deel described the reasonable investigation it undertook prior to preparing and serving its November Responses. ECF 212-5. Deel explained that it reviewed over ***27,000*** internal documents and communications from Alex, Philippe, and Dan that were on Deel's platform, and ran a variety of broad search terms designed to capture information (if any) relevant to Rippling's allegations, including, among other things, all variations of Keith O'Brien's name, his email addresses, and Rippling, and other companies referenced in the FAC. ECF 212-5 at 7-8. Deel also explained that it interviewed nine current and former Deel employees as to their knowledge, if any, of O'Brien or whether Deel was or had ever been in possession of Rippling's confidential trade secret information. *Id.* at 8. This included interviews with Asif Malik and David Mieli after they reviewed their documents and communications for information relevant to O'Brien. *Id.* During those interviews, Deel discussed with Mr. Malik and Mr. Mieli their interactions with O'Brien in March 2025. Lloyd Decl. ¶ 14. Further, prior to November 25, 2025, Deel's document review in response to Rippling's 87 requests for production had not yet commenced, as the parties did not resolve their negotiations as to what documents

11

would even be responsive to Rippling's requests for production until January 15, 2026, and the parties were still actively negotiating who Deel's custodians should be and what sources of data should be searched (such as personal devices). ECF 212-5 at 8. The results of Deel's investigation did not reveal that Deel was or had ever been in possession of Rippling Originated Information, as Deel explained at the time it provided its November Responses. *Id.*

On March 18, in response to Rippling's Interrogatory No. 12, Deel explained why nearly every substantive statement in O'Brien's affidavit was false or misleading. ECF 212-6. And then, on March 20, just as Deel represented, Deel and the Individual Defendants substantively responded to the remainder of Rippling's outstanding Interrogatories. ECF 202-9, 202-10, 212-7; Brown Decl. ¶¶ 3, 6. While those responses provided more context regarding interactions with O'Brien, neither Deel nor the Individual Defendants indicated that they had ever been in possession of Rippling Originated Information.

The Court entered the first Case Management Scheduling Order on March 23, 2026, which set the date for the close of fact discovery as January 15, 2027. ECF 199. All Defendants answered Rippling's remaining claims in the FAC on March 25, 2026, and Deel asserted its Counterclaims on that same date. ECF 203-206. On March 25, Rippling also filed this Motion.

## LEGAL STANDARD

Rippling's Motion requests the Court sanction Deel by awarding Rippling its reasonable attorneys' fees and costs for bringing the December 23, 2025, letter brief and this Motion, pursuant to Federal Rule of Civil Procedure 37 and 26(g). (Mot. 1, 4.) Rule 37 allows a reasonable attorney fee award as monetary sanctions against a party that fails to "obey an order to provide or permit discovery," but the Rule also prohibits any fee award if the discovery conduct at issue "was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(A), (C). Furthermore, "sanctions under Rule 37(b)(2)(A) still have to be 'just' under the facts of the case." *In re StubHub Refund Litig.*, 2024 WL 2305604, at *3, *5 (N.D. Cal. May 20, 2024) (holding "no sanction would be 'just' (Rule 37(b)(2)(A)), and the award of expenses would be 'unjust' (Rule 37(b)(2)(C)), because Plaintiffs have not been prejudiced … from this late document production" where the late production "did not impede their ability to take effective depositions" and did not impact plaintiffs' ability to move for class certification since "there is no current deadline for Plaintiffs' class certification motion").

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.          CASE NO.: 3:25-CV-02576-CRB

Rule 26(g) also provides that by signing a discovery response, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," that the response is "complete and correct as of the time it is made" and "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." Fed. R. Civ. Pro. 26(g)(1); *see also StubHub*, 2024 WL 2305604, at *6 (denying Rule 26(g) sanctions when nothing in discovery response was "untrue"). Additionally, like Rule 37, Rule 26(g) also provides that a fee award is unavailable unless the discovery conduct at issue was "without substantial justification." Fed. R. Civ. Pro. 26(g)(3).

"Discovery conduct is 'substantially justified' if it is a response to a 'genuine dispute' or 'if reasonable people could differ as the appropriateness of the contested action.'" *Longitude Licensing Ltd. v. Apple Inc.*, 2015 WL 12781217, at *2 (N.D. Cal. Nov. 9, 2015) (denying motion for Rule 37 monetary sanctions based on defendant's responses to interrogatories following an order on motion to compel, where defendant "state[d] on several occasions that its investigation was ongoing and it reserved the right to supplement its responses") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "[S]ubstantial justification is not usually a difficult standard to meet; it simply requires that there be 'a genuine dispute' or that 'reasonable people could differ.'" *Subramani v. Wells Fargo Bank, N.A.*, 2015 WL 12964616, at *1 (N.D. Cal. Mar. 18, 2015) (denying Rule 37 sanctions, also quoting *Pierce*).

"A fee-shifting sanction pursuant to civil procedures may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior without implicating procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2026 WL 440752, at *8, (N.D. Cal. Feb. 17, 2026) (Cisneros, J.). In imposing monetary sanctions against a party under Rule 37, the Court may use a "lack of actual harm" to the complaining party to "inform[] this Court's assessment of a just sanction," and a lack of prejudice to the moving party shows that an expense award is "unjust." *Id.* at *13; *StubHub*, 2024 WL 2305604, at *5. Similarly, monetary "sanctions under Rule 26(g) are not appropriate when a party has not been harmed by the violation." *State of New York v. United States Dep't of Com.*, 461 F.Supp.3d 80, 88 (S.D.N.Y. 2020).

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.          CASE NO.: 3:25-CV-02576-CRB

**ARGUMENT**

**I.    Discovery Sanctions Against Deel Are Unwarranted Under Either Rule 37 Or 26(g) Based On Deel's November Responses, Which Were Accurate And Complied With The Court's November Order, As Well As The Parties' Shared Understanding**

On November 25, 2025, Deel substantively responded to Rippling's Interrogatory Nos. 2, 4, 5, and 6, as they had been limited by the November Order and the parties' understandings and agreements, by stating the following, subject to and without waiving "Deel's right to supplement its response should more information become available, including, but not limited to, any further response pursuant to Federal Rule of Civil Procedure 33(d) upon the completion of document review and production in this case" (*see* ECF 202-4 at 12):

> Interrogatory No. 2: At this stage of the proceedings and discovery, and based on Deel's investigation to date and the fact that Deel's document review is not complete, Deel is currently unaware that it has ever had such information. Since discovery is in its very early stages, Deel will supplement this response as appropriate as this action and discovery further progress, should Deel become aware of information that necessitates a further response to this Interrogatory.

> Interrogatory No. 4: At this stage of the proceedings and discovery, and based on Deel's investigation to date and the fact that Deel's document review is not complete, Deel is currently unaware that it has ever had such information, and thus Deel is unaware that any such devices or accounts exist. Since discovery is in its very early stages, Deel will supplement this response as appropriate as this action and discovery further progress, should Deel become aware of information that necessitates a further response to this Interrogatory.

> Interrogatory No. 5: [D]ue to the vague term "information," Deel construes this Interrogatory as asking for identification of all Persons who, before the filing date of Rippling's Complaint but no earlier than September 1, 2022, had any knowledge that O'Brien provided any Rippling Originated Information to Deel .… At this stage of the proceedings and discovery, and based on Deel's investigation to date and the fact that Deel's document review is not complete, Deel is currently unaware that it has ever had such information. Since discovery is in its very early stages, Deel will supplement this response as appropriate as this action and discovery further progress, should Deel become aware of information that necessitates a further response to this Interrogatory.

> Interrogatory No. 6: [D]ue to the vague term "information," Deel construes this Interrogatory as asking for identification of documents provided by O'Brien to Deel regarding any Rippling Originated Information since September 1, 2022 .… At this stage of the proceedings and discovery, and based on Deel's investigation to date and the fact that Deel's document review is not complete, Deel is currently unaware that it has ever had such information. Since discovery is in its very early stages, Deel will supplement this response as appropriate as this action and discovery further progress, should Deel become aware of information that necessitates a further response to this Interrogatory.

ECF 202-4 at 10-12, 15-21. Rippling does not and cannot argue that these statements on their face somehow violated the November Order, were untrue or otherwise inaccurate at the time they were made.

14

That can and should end Rippling's Motion under either Rule 37 or 26(g). Rippling calls them "non-responses," but the reality is that Rippling does not like them because they are substantive responses that undermine Rippling's claims that Deel stole Rippling's trade secrets.

Undeterred, Rippling crafts two arguments based on developments that *post-date* Deel's November Responses to contend that those Responses are somehow now sanctionable. These include Rippling's own changing positions following its change of counsel in December 2025, or the Court resolving (in February 2026) the Individual Defendants' service, jurisdiction, and forum challenges after previously continuing that hearing multiple times from its original Fall date.

First, Rippling asserts Deel's investigation prior to the November Responses was "unreasonable," which boils down to faulting Deel for the Individual Defendants' choice to not participate in discovery and disclose information solely within their possession or on their personal devices while their service and jurisdictional motions were pending, in accordance with Rippling's consistently stated position that it would argue their participation in discovery would waive those defenses. (Mot. 12-17.) Rippling also nitpicks Deel's investigation as it relates to Mr. Mieli and Mr. Malik, but ignores that Deel interviewed them both regarding their limited interactions with O'Brien. (*Id.* 17-18.); *infra* § I.A.

Second, Rippling agues that Deel improperly "narrowed" the scope of Interrogatory Nos. 5 and 6 by interpreting Rippling's use of the undefined term "information" in those requests to mean "Rippling Originated Information." (Mot. 2-3, 18-20.) Setting aside that this is factually belied by the procedural history recounted above, Rippling did not raise this argument as a basis for sanctions in the parties' December joint letter preceding the Motion. ECF 161. The Court should therefore disregard it in ruling on this Motion. *Infra* § I.B. In short, Rippling's arguments fail, and in any event cannot overcome Deel's showing below that—at a minimum—Deel's November Responses were substantially justified. *Infra* § I.C.

### A.    Deel's November Responses Were Based On A "Reasonable Inquiry"

Rippling's first assertion that Deel's November Responses were not based on a "reasonable inquiry" is disproven by the detailed history recounted above. *Supra* at 3-11 (describing, among other things, Deel's review of over 27,000 documents using search terms such as "Rippling" and "O'Brien," and interviews of nine current and former Deel employees regarding the allegations in Rippling's FAC).

15

Undiscouraged by the facts or procedural history of this case, Rippling asserts that Deel's investigation was "unreasonable" and sanctionable for three reasons: (1) it did not include information solely in the possession of the Individual Defendants; (2) Deel's review only included information from employee interviews and from its own internal platforms, such as email, Google Drive, and Slack; and (3) Mr. Mieli and Mr. Malik searched their own internal Deel documents for information related to O'Brien.

But on record presented here, none of Rippling's arguments support the imposition of sanctions against Deel. Rippling knew that the Individual Defendants were waiting until their service, jurisdictional, and forum motions were adjudicated before participating in discovery. *See* Brown Decl. ¶¶ 3-6. Rippling's arguments also ignore that at the time Deel provided its November Responses, Rippling had gone incommunicado and did not dispute that (i) Deel's Interrogatory responses would be limited to Deel only and exclude the Individual Defendants, (ii) Rippling had "repeatedly taken the position that any participation by the Individual Defendants in this matter while their service and jurisdictional challenges are pending would constitute a waiver of those defenses," (iii) the parties had not resolved what search terms Deel should use or what information would even be responsive to Rippling's document requests (something not fully resolved until January 2026), (iv) Deel understood that the word "information" in Interrogatory Nos. 5 and 6 meant "Rippling Originated Information," or (v) Deel "objects at this time to the inclusion of any data sources beyond email, Slack, and Google Drive data," due in part to "the pending jurisdictional challenges raised by the Individual Defendants." *Supra* at 3-11.

Indeed, Rippling *never* disputed any of the above until it got new counsel in December 2025. But those new *December* positions do not transform Deel's *November* Responses into sanctionable conduct. And Rippling's December 9 change of position would provide no comfort to the Individual Defendants, given that "[t]he defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318-19 (9th Cir. 1998); *see also Cahill v. Insider Inc.*, 131 F.4th 933, 939 (9th Cir. 2025) (holding intervenor waived jurisdictional objections where it "voluntarily subjected itself to the district court's authority to protect the discovery process"). "It is well-settled that a court is not bound by stipulations of the parties as to questions of law." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 n.1 (9th Cir. 1986).

Thus, given the risk of potential waiver, it was reasonable for the Individual Defendants to wait

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.    CASE NO.: 3:25-cv-02576-CRB

until their challenges to service, jurisdiction, and forum were resolved before participating in merits discovery in this matter, Brown Decl. ¶¶ 3-6, which, as the time of the November Responses, all parties expected would be fully resolved in a matter of weeks. As of November 25, Deel had expected that the Individual Defendants' objections to any compulsion to participate in this matter would be resolved shortly after the hearing on those motions scheduled for December 12; on December 5, however, that hearing was continued by the Court to February 13, 2026. None of Rippling's cases in the Motion address the facts presented here, where a corporate defendant is faulted for not obtaining information from individual defendants who were separately represented foreign citizens living abroad with no meaningful ties to this jurisdiction and had pending service and jurisdictional challenges as to whether they could be compelled to participate in this matter at all.

Because Deel's pre-document review investigation of the Individual Defendants' internal documents and communications did not show that Deel was in possession of Rippling Originated Information on its systems, Deel believed it was reasonable that the Individual Defendants chose not to participate at risk of waiver while they awaited the outcome of their motions. If Rippling Originated Information had not made its way onto Deel's internal servers such that Deel could actually operationalize such information, there was no reason to believe that information from the Individual Defendants personally would alter Deel's responses. That turned out to be precisely the case. As both Deel and the Individual Defendants—who, as Deel had said all along, participated in discovery after the Court resolved their service, jurisdictional, and forum objections in February 2026 (after that hearing had been delayed since Fall 2025)—showed in March 2026 discovery responses, none of them were in possession of Rippling Originated Information. *See, e.g.*, ECF 212-7 at 6[3]; Brown Decl. ¶¶ 3, 6.

Rippling itself knew that it was not entitled to merits discovery from the Individual Defendants while their jurisdictional motions were pending. *See X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F.Supp.3d 921, 947 (N.D. Cal. 2024) (Breyer, J.). Evidencing that understanding, Rippling did not serve any discovery requests on them until February 18, 2026 (after Judge Breyer indicated from the bench on

---

[3] Deel stated in March that it "previously interpreted 'information' to mean 'Rippling Originated Information,' as defined in the November Order. As discussed above in response to Interrogatory No. 2, Deel is still not aware of any individuals with knowledge that Mr. O'Brien provided Rippling Originated Information to Deel. Construing the word 'information' more broadly, Deel now provides a list of individuals who had knowledge that Mr. O'Brien provided information generally related to Rippling to Deel, without regard to whether such information constitutes Rippling Originated Information." *Id.*

17

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.          CASE NO.: 3:25-cv-02576-CRB

February 13 that he intended to deny the Individual Defendants' motions), to which the Individual Defendants responded to in full on March 20 without seeking any extension of time. Brown Decl. ¶¶ 3, 6.

Rippling attempts to muddy the waters by claiming that information Deel and the Individual Defendants provided in March constitutes Rippling Originated Information (Mot. 11), but Rippling is wrong. Rippling's "unethical tactics to steal Deel's customers and employees and harm Deel's reputation, including by planting false stories about Deel in the press and stealing Deel's confidential business information" is not Rippling Originated Information under the November Order. ECF 202-9 at 8. Nor is information regarding customers changing platforms that "Alex already knew from his teams" at Deel. *Id.* at 9. Nor is French payroll information about which "a former Deel customer told a Deel sales representative." *Id.* Nor is information regarding Rippling's illegal Russian payments in violation of sanctions laws, or whistleblowing activity of O'Brien regarding the same. Rippling's argument that O'Brien's whistleblower statements to Mr. Malik regarding Rippling's Russian sanctions violations somehow constitute "Rippling Originated Information" as one of Rippling's "core initiatives" (a curious characterization, Mot. 20) also ignores that the November Order specifically *excluded* information related to Rippling's sanctions violations (described in FAC ¶¶ 113-117) from Rippling's attempts to include it in the definition of "Rippling Originated Information." ECF 148 at 7-8. Rippling may now insist its sanctions violations are "confidential," but "[t]here is no objectively 'reasonable' method for concealing information about ongoing illegality." *Alderson v. United States*, 718 F.Supp.2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012). To the contrary, "[c]ourts have consistently refused to enforce post-employment confidentiality agreements that sought to prevent a former employee from revealing harmful information about the employer's illegality." *Id.*

In short, none of the above is "confidential information" that "Rippling might plausibly argue to be trade secrets," and is thus not Rippling Originated Information. ECF 148 at 7-8. Quite the opposite, this is the kind of information the Court's November Order expressly *excluded* from Rippling Originated Information. ECF 148 at 7-8 (noting definition did not include information that "Rippling freely disclosed to actual customers, prospective customers, and prospective employees with no indication of any meaningful expectation of confidentiality," "lack[s] any indicia of confidentiality," or was "factual public information about Rippling's plans or products").

Rippling's arguments as to Deel's investigation of Mr. Mieli and Mr. Malik fare no better. (Mot. 3, 17-18.) These two in-house attorneys for Deel had limited interactions with O'Brien over a 2-week period in March 2025, using their personal devices (and Mr. Mieli had only one or two interactions), which O'Brien then lied about in his affidavit to malign Deel at Rippling's instruction. *See* ECF 212-6 at 22-33. Rippling's assertion that Deel did not adequately include information from Mr. Malik or Mr. Mieli is belied by the fact that Deel based its November Responses not only on their internal Deel documents and communications, but also on the results of Deel's *interviews* with these two, which included discussion of the allegations made against them in Rippling's complaint. ECF 212-5 at 8. It also ignores that both Mr. Malik and Mr. Mieli are attorneys themselves at Deel bound by ethical obligations, they searched for information relevant to Rippling's allegations at the direction and guidance of outside counsel, and that their only relevance to Rippling's allegations arise from a discrete two-week period in March 2025 where they had communications with O'Brien, resulting in little data to search. Lloyd Decl. ¶ 14.

Given their limited interactions with O'Brien, it was not unreasonable for Deel to direct them to review their internal Deel communications for any other information related to O'Brien and then interview and question them about their interactions with O'Brien to determine whether Rippling Originated Information was provided. And none was.

**B.    Deel's November Responses Did Not Unilaterally Or Inappropriately Narrow Interrogatory Nos. 5 and 6**

The Court should disregard Rippling's second argument that sanctions are warranted because Deel improperly "narrowed" the scope of Interrogatory Nos. 5 and 6 by interpreting Rippling's use of the undefined term "information" in those requests to mean "Rippling Originated Information." (Mot. 3, 18-20.) Rippling expressly acknowledged that the "single issue" upon which it was basing its December 2025 sanctions briefing request was "[w]hether Deel has failed to comply with the Court's Order to respond to Rogs 2, 4, 5, and 6, by withholding from its response information known by Alex Bouaziz, Phillipe Bouaziz, and Daniel Westgarth." *Supra* at 10. Deel's understanding of the term "information" was not the subject of Rippling's request for leave to file for sanctions in its December letter. ECF 161. The Court should thus reject this argument because Rippling *did not raise this issue* as a basis for this potential Motion in its December 23 joint letter—which the Court relied up on in permitting Rippling to file this Motion—and instead focused only on the "single issue" of excluding of the Individual Defendants.

19

In addition, sanctions would not be available even if Rippling's argument had been properly raised. As detailed above and at length in Deel's response to Interrogatory No. 13, when Deel provided its November Responses on those Interrogatories, it had consistently understood—with Rippling's acquiescence, both during the September 2025 meet-and-confer and in the parties' October 10 joint letter—that the vague word "information" used in those discovery requests meant "Rippling Originated Information," and that the Court did not disturb that understanding in its November Order. *Supra* at 3-11. Rippling's only response is to point to Deel's November 21 Motion for Relief from the November Order as to Interrogatory Nos. 1, 7, and 8—which sought to impose a Rippling Originated Information limitation on those Interrogatories that do not contain the same generic reference to "information" as Nos. 5 and 6. But that does not somehow "undermine" Deel's understanding that Rippling had agreed that Interrogatory Nos. 5 and 6 *already included such a limitation by virtue of their request for Rippling "information."* (Mot. 19); s*upra* at 5-6. Indeed, "[n]othing in [the Court's November] Order [was] intended to displace any agreement that the parties have reached regarding these interrogatories," as it was unclear "if Rippling [h]as agreed to withdraw, defer, or limit any of them." ECF 148 at 3. And, contrary to Rippling's assertion (Mot. 19-20), that Deel *later* voluntarily agreed in response to Rippling's new counsel's change of position to supplement its November Responses to Interrogatory Nos. 5 and 6 without reference to "Rippling Originated Information," does not mean that Deel's earlier November Responses were somehow untrue or not in compliance with the November Order when they were served.

### C. At A Minimum, Deel's November Responses Were Substantially Justified And Did Not Harm Or Prejudice Rippling

Even if the Court could find that Deel's November Responses facially violated the Court's November Order, sanctions under Rule 37 or 26(g) still would not be warranted because Deel's conduct was "substantially justified," and Rippling was not harmed or prejudiced in any way. *Supra* at 12-13 (collecting authorities). As evidenced by Rippling's own changing positions on these issues with the appointment of new counsel in December, "reasonable people could differ" on the propriety of Deel's November Responses, particularly given (i) the consistent discovery positions of both parties through November 2025, including as to how Deel was interpreting "Deel" and "information" for the purpose of Deel's Responses, (ii) the state of the parties' discovery negotiations at the time of Deel's Responses (during which Rippling had become non-responsive), (iii) the fact that document review was not complete,

20

(iv) resolution of the Individual Defendants' jurisdictional challenges was continued by the Court several times, thereby delaying the ability of the Individual Defendants to participate in discovery without risk of waiver of their jurisdictional defenses, (v) Rippling itself made no effort to contact the Individual Defendants on this issue until after their jurisdictional defenses were resolved, and (vi) Deel stated "on several occasions that its investigation was ongoing and it reserved the right to supplement its responses." *Apple*, 2015 WL 12781217, at *3; *see also Hahn v. Massage Envy Franchising, LLC*, 2014 WL 12899320, at *2 (S.D. Cal. Aug. 22, 2014) (sanctions "unjust" where parties' "genuine dispute" over term "raw data" was "neither entirely frivolous, nor completely unfounded," and the movant was "also at fault" for not defining the term more clearly); *supra* at 3-11. Sanctions are unavailable under these facts.

Further, even if Deel's November Responses were not substantially justified, and Rippling was correct that it was entitled to information in November that Deel and the Individual Defendants provided in March, this four-month delay did not actually harm or prejudice Rippling, making any award of monetary sanctions "unjust." *StubHub*, 2024 WL 2305604, at *5 (denying Rule 37 sanctions as "unjust" "because Plaintiffs have not been prejudiced … from this late document production" where the late production "did not impede their ability to take effective depositions" and did not impact plaintiffs' ability to move for class certification since "there is no current deadline for Plaintiffs' class certification motion"); *Uber Techs.,* 2026 WL 440752, at *13 (finding "the lack of actual harm" to "inform[] this Court's assessment of a just sanction"); *New York*, 461 F.Supp.3d at 88 (no Rule 26(g) sanctions without harm). Indeed, Deel and the Individual Defendants' March responses only *confirmed* what Deel told Rippling in the November Responses—that Deel did not have any Rippling Originated Information.

Rippling provides no support for its naked assertion that Deel's November Responses "delayed and obstructed these proceedings" (Mot. 21), because none exists. Deel's November Responses did not prevent Rippling from taking effective depositions, impact its ability to file whatever motions it chose (of which there were many), or complicate in any way Rippling's litigation of this case. Additionally, Rippling's claim that it has been "prejudiced" by receiving in March information Rippling thinks should have been provided in November rings hollow. (Mot. 3.) Rippling was not up against any deadlines— there was not even a Case Management Scheduling Order in this case until March 23, 2026, which then set a January 2027 fact discovery cut-off. ECF 199. Nor did Deel "force" Rippling to file this Motion

21

(Mot. 3)—to the contrary, Deel has consistently told Rippling since February 2026 that any such Motion was unwarranted to obtain information from the Individual Defendants, since the Individual Defendants would participate after such resolution. And that is what happened. Brown Decl. ¶¶ 3, 6. The financial "harm" incurred by Rippling here is entirely of its own creation due either to its change in counsel (and subsequent litigation strategy), or for the sole purpose of supporting this needless Motion, and thus cannot support its fee request. *Uber Techs.*, 2026 WL 440752, at *8; *accord Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) ("It is undeniable that the situation in which Plaintiffs now find themselves is something of their own creation. … [W]hen the complained-of prejudice is a manufactured one, brought about by a voluntary, and perhaps strategic, litigation decision, the intensity attributed to it must be tempered accordingly.").

No sanctions award is "just" under these facts.

## II. Even If Discovery Sanctions Were Appropriate—And They Are Not—Rippling's Fee Request Is Unreasonable And Not Properly Substantiated

In any event, even if a fee award was proper—and it is not—Rippling has failed to comply with the Local Rules and properly substantiate the reasonableness of its fee request. Rippling failed to provide an affidavit containing "[a] statement of the services rendered by *each* person for whose services fees are claimed, *together with a summary of the time spent by **each** person*." L.R. 54-5(b)(2); MacMichael Decl. ¶¶ 5-8 (claiming fees for 112.2 hours in time yet listing four partners and two associates who allegedly performed this work but not explaining what services each person provided or their time spent).

Rippling also offers no explanation why it was reasonable to staff four partners and only two associates to spend over ***70 hours*** on this unnecessary Motion that is not designed to gain Rippling anything of substance in this case, or 24.3 hours on a 2.5 page joint letter brief on a "single issue." *See, e.g.*, *Doran v. Vicorp Rests., Inc.*, 407 F.Supp.2d 1120, 1124-25 (C.D. Cal. 2005) ("117.75 hours of attorneys' time devoted to this litigation could have—and should have—been managed more efficiently by having less senior associates handle a substantial portion of the work."); *Uber Techs.*, 2026 WL 440752, at *12 ("[T]he Court is confident here that [defendant] could have achieved the results of the August 18, 2025 Order with far less investment of attorney resources."). Based on Rippling's deficient showing, it is impossible to even discern when each attorney's hours were actually incurred and for what services. This undermines Deel and the Court's ability to assess the reasonableness of Rippling's fee

22

request, which should be denied for this reason alone.

## CONCLUSION

For the reasons stated herein, Deel respectfully requests that the Court deny Rippling's Motion. Deel's November Responses obeyed the November Order, did no harm to Rippling, and at a minimum, were substantially justified based on the state of the litigation and the conduct of the parties to date. Setting that aside, the fees sought by Rippling are neither reasonable nor substantiated, and must be significantly reduced under any scenario.

DATED: April 15, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:     _/s/ Jason D. Russell_
JASON D. RUSSELL
_Attorneys for Defendant Deel, Inc._

DEEL'S OPPOSITION TO RIPPLING'S DISCOVERY SANCTIONS MOT.     CASE NO.: 3:25-CV-02576-CRB