KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING,
a Delaware corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1 – 100, <br><br> Defendants. | Case No. 3:25-CV-2576-CRB <br><br> **RIPPLING'S REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL** <br><br> Judge:      Hon. Charles R. Breyer <br><br> Date Filed: March 17, 2025 <br><br> Trial Date:  None set |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   LEGAL STANDARD..................................................................................................... 3

III.  ARGUMENT.................................................................................................................. 4

    A.  Deel violated the November 7, 2025 Order by failing to disclose information known by the individual defendants.................................................. 4

        1.  The individual defendants' purported fear of jurisdictional waiver is not a "substantial justification."................................................................ 4

        2.  Deel's general objection to the definition of "Deel" in Rippling's interrogatories is not a "substantial justification.".................................... 6

    B.  Deel violated the November 7 Order by otherwise failing to conduct a reasonable inquiry. .......................................................................................... 8

    C.  Deel violated the November 7 Order by unilaterally narrowing Rogs 5 and 6 to "Rippling Originated Information." ........................................................... 10

    D.  The Court should reject Deel's "no harm, no foul" argument............................ 12

        1.  Deel's violation of the Court's November 7 Order caused clear and substantial prejudice to Rippling. ............................................................. 12

        2.  Deel's violation of the Court's Order requires monetary sanctions, regardless of "prejudice" or "harm" to Rippling. .................................... 14

    E.  Rippling's requested fee award is reasonable. .................................................. 15

IV.   CONCLUSION.............................................................................................................. 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cahill v. Insider*,
    131 F.4th 933 (9th Cir. 2025) .......................................................................................... 6

*Cruz v. Nike Retail Servs., Inc.*,
    346 F.R.D. 107 (S.D. Cal. 2024) .................................................................................... 3, 6

*In re Heritage Bond Litig.*,
    223 F.R.D. 527 (C.D. Cal. 2004) ...................................................................................... 14

*Infanzon v. Allstate Ins. Co.*,
    335 F.R.D. 305 (C.D. Cal. 2020) .................................................................................... 3, 14

*Peterson v. Highland Music*,
    140 F.3d 1313 (9th Cir. 1998) .......................................................................................... 6

*Pierce v. Underwood*,
    487 U.S. 552 (1988) .......................................................................................................... 3

*SafeCo Ins. Co. of Am. v. Rawstrom*,
    183 F.R.D. 668 (C.D. Cal. 1998) ...................................................................................... 8

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
    2026 WL 440752 (N.D. Cal. Feb. 17, 2026) .............................................................. 2, 3, 14

**Other Authorities**

Federal Rule of Civil Procedure 26 ........................................................................................ 3, 15

Federal Rule of Civil Procedure 37 .................................................................................. 2, 3, 14, 15

Local Rule 37-4(b) ...................................................................................................................... 15

Local Rule 54-5(b)(2) .................................................................................................................. 15

## I.    INTRODUCTION[1]

Since losing its motion to stay discovery until the ruling on its FNC motion, Deel has helped itself to the same relief this Court denied—by objecting to discovery, delaying, and forcing litigation, over and over again. Deel has not responded substantively to a single interrogatory without litigating its objections through a Court order. Deel required Rippling to litigate six discovery motions, at substantial cost to Rippling, and Deel has lost every motion in whole or in substantial part. Now, Deel has violated one of the orders it forced Rippling to seek: the November 7, 2025 Order requiring Deel to respond to Rogs 2, 4, 5, and 6. Deel's violation is self-evident. It stalled four months past the Court-ordered response deadline, before finally disclosing responsive information that its senior executives knew all along. But worse, there is no longer any doubt that Deel withheld this information *willfully*, as Deel now openly admits that it waited until "*after* receiving Judge Breyer's February 23 order" before finally telling Rippling it would "supplement its November responses with information from the Individual Defendants." ECF 216-2 ¶ 13. Deel violated the Court's Order on purpose, to buy time while exhausting every opportunity to get out of this Court. Under controlling law, that requires sanctions.

Deel's opposition brief offers the thinnest of excuses for its noncompliance. It asserts that its executives *could not* provide information to their own employer, for fear of imperiling their jurisdictional arguments. There is zero case law supporting this proposition, and when Deel first raised it—after defaulting on the Court-ordered compliance deadline—Rippling expressly disclaimed it would argue waiver on that basis. Deel also tries to stand on its general objection to the definition of "Deel" (purporting to define "Deel" as not including the individual Deel defendants), but it never stood on that objection when it met and conferred or when it faced a motion to compel, and it concedes the objection is legally unsupportable. Unasserted, meritless objections cannot possibly be a good faith basis for refusing to comply with a discovery order. Lastly, Deel's assertion that its November responses to Rogs 5 and 6 were technically "correct," because Deel limited those responses to "Rippling Originated Information" and there was no such information to disclose, is not only wrong (as discussed below) but also a complete red herring. Deel agreed to

---

[1] Unless otherwise noted, all emphases are added and all internal citations and quotations omitted.

withdraw that limitation on December 9, 2025, but delayed three-and-a-half more months after the compliance deadline before responding without that limitation. None of this comes close to a "substantial justification" for ignoring the November 7, 2025 Order.

Deel now asks the Court not to sanction its self-evident, intentional violation of the November 7 Order, because, according to Deel, its untimely March 20, 2026 responses cured any "prejudice" to Rippling. Deel is wrong. Rippling served the interrogatories at issue on May 30, 2025—"the first permissible day to do so under the Rules" (ECF 216 ("Opp.") at 3)—to capture Deel's employees' freshest recollections of the key evidence that Deel and its employees *destroyed*—their communications with Deel's spy at Rippling, Keith O'Brien. But before even *interviewing* the employees most directly involved in those communications, Deel forced Rippling to litigate two motions, lost both, then delayed an additional four months after the Court-ordered deadline. Deel now uses the passage of ten months between receiving Rippling's interrogatories and responding to claim, if not wholly credibly, that those employees do not recall important details about their destroyed correspondence with O'Brien. That straightforwardly prejudices Rippling.

Deel also miscites *In re Uber Technologies* (Cisneros, J.) for the incorrect legal proposition that actual prejudice or harm is a prerequisite for monetary sanctions. Opp. at 21–22. It is not. Monetary sanctions serve not only "remedial and compensatory purposes," but also "punitive and deterrent purposes[.]" *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2026 WL 440752, at *8 (N.D. Cal. Feb. 17, 2026) (awarding monetary sanctions *despite* finding a "lack of actual harm"). Here, the punitive and deterrent purposes of Rule 37 are heavily implicated, because of the willfulness of Deel's violation and the broader context of Deel's obstructionism. Not only has Deel refused to answer a single interrogatory before being ordered by the Court; not only is Deel now 0-6 on discovery motions; but Deel has also made just one production of fewer than 9,000 documents—in response to requests Rippling served *eleven months ago*—despite telling the Court on March 4 that its review set included 1.7 million documents. Against that backdrop, Deel's willful violation of the Court's November 7 Order is part of a clear and ongoing pattern of delay that prejudices Rippling and burdens the Court.

Monetary sanctions under Rule 37 are intended to punish and deter this *exact* type of

misconduct—i.e., "to protect courts and opposing parties from delaying or harassing tactics during the discovery process" *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020)—and are necessary and appropriate here. Without them, Deel will surely offer more delay, more excuses, and more purportedly faded memories. It will force Rippling and the Court to spend more time and resources compelling Deel to provide compliant discovery responses, and it will continue looking for ways to evade orders it does not like. That result is intolerable under the law and as a matter of common sense. The only way to end this pattern of obstructionism is for the Court to sanction Deel with the clear admonition that its misconduct will not be tolerated.

## II.      LEGAL STANDARD

Under Rule 37(b)(2), "the court *must*" award the moving party's expenses "caused by the failure, unless the failure was substantially justified or other circumstances make [the] award of expenses unjust." Fed. R. Civ. P. 37(b)(2). "Sanctions are thus mandatory unless the Court makes one of the enumerated, exculpatory findings." *Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 111 (S.D. Cal. 2024). The Court has "'broad discretionary powers' in considering these exceptions." *In re Uber Techs.*, 2026 WL 440752, at *8 (quoting *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981)). The same framework applies to sanctions under Rule 26(g)(3). *See* Fed. R. Civ. P. 26(g)(3).

Deel's opposition focuses on the exceptions in Rule 37(b)(2) while omitting two important points. First, the party to be sanctioned under Rule 37(b) carries the "'burden of showing substantial justification and special circumstances[.]'" *In re Uber Techs.*, 2026 WL 440752, at *8 (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994)).

Second, "substantial justification" requires a "genuine dispute" or showing that "reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is not sufficient to show the absence of bad faith or improper motive, or even that there is *some* "on-point support in case law" of its position; the failure is "substantially justified" only where, under the circumstances of the case at hand, there was a reasonable justification for the non-compliance. *Cruz*, 346 F.R.D. at 112 (citing *Liew*, 640 F.2d at 1048–51).

## III.     ARGUMENT

### A.     Deel violated the November 7, 2025 Order by failing to disclose information known by the individual defendants.

Deel's opposition concedes the main point in Rippling's motion—that Deel's omission of its senior executives' knowledge from its November responses violated the November 7 Order—by failing to rebut any of the following: (1) preparing Deel's Court-ordered responses required it to question all employees who "would reasonably have relevant information" (ECF 200-1 at 12–13); (2) the primary employees who "would reasonably have relevant information" were Alex Bouaziz, Philippe Bouaziz, and Daniel Westgarth (*id.*); (3) Deel never questioned those employees prior to the compliance deadline or at any time thereafter—even after Rippling threatened to seek sanctions—until Judge Breyer resolved the motions to dismiss (*id.* at 6–7); and (4) when Deel finally served amended responses, they disclosed substantial responsive information from the Bouazizes and Westgarth (*id.* at 8–11). These admissions, standing alone, establish that Deel violated the November 7 Order.

Deel argues that its self-evident violation was substantially justified, for (essentially) two reasons. First, Deel argues that the Individual Defendants' fear of jurisdictional waiver excuses its failure to interview them. Second, Deel asserts a long-dormant, nonsensical general objection purporting to omit Deel's three most senior executives from the definition of "Deel." *See* Opp. at 1, 15–18, 20–21. Under clearly established law and the facts of this case, neither argument substantially justifies Deel's violation of the November 7 Order. Rippling addresses each in turn.

### 1.     The individual defendants' purported fear of jurisdictional waiver is not a "substantial justification."

Deel claims that, prior to the November 25, 2025 compliance deadline, Rippling threatened it would argue jurisdictional waiver if the individual Defendants provided information to their employer (Deel), in their capacity as Deel employees, to facilitate *Deel's* Court-ordered discovery responses. That argument is defective on multiple levels.

***First***, as a threshold matter, ***Rippling's counsel has never made any such nonsensical statement.*** Deel has failed to identify a single example in nearly five months since first raising this

6192118

argument. Instead, Deel has cited only the following: (1) Rippling's statement that it would preserve all "available arguments and positions" if the individual Defendants *filed a motion to quash Rippling's discovery* (ECF 161 at 5; 161-7); and (2) Deel's own refusal to *file a case management statement* in October 2025, based on Deel's own fear that Rippling would argue waiver if the Individual Defendants signed on (ECF 216-5). Neither example has any relation to the Individual Defendants discussing the underlying facts with their employer.

Deel also relies on a conclusory declaration from the Bouazizes' counsel, Kenneth Brown, stating that, "[t]hrough November 2025, Rippling had told the Individual Defendants that, if they ***participated in discovery*** in this matter, Rippling would argue that the Individual Defendants waived their challenges to service and personal jurisdiction." ECF 216-1 ¶ 5; *see also* Opp. at 10. Again, Rippling never said that. It is not even clear what Mr. Brown means by "participated in discovery." Those are Mr. Brown's own words—not Rippling's. The only example he uses to support them is a discussion about whether his *voluntary acceptance of service of process* would waive jurisdiction (*id.*), which plainly has nothing to do with discovery at all. Deel clearly intends the Court to interpret the phrase "participate in discovery" broadly enough to justify its failure to gather responsive information from Mr. Brown's clients, as Deel's opposition lifts the phrase from Mr. Brown's declaration and repeats it fourteen times. *See* ECF 216 at 4, 5, 6, 9, 10, 15, 16, 17, and 21. But Rippling simply never said anything that could plausibly be interpreted that way, and there is absolutely nothing in the record to support it.

***Second***, as soon as Deel told Rippling, on December 9, 2025, that it never questioned the Bouazizes and Westgarth because of their purported fear of jurisdictional waiver, Rippling resolved the issue immediately and decisively. On December 10, 2025, Rippling wrote:

> I am following up to confirm in writing that, as I said on our meet and confer yesterday, ***Rippling has never taken the position that the individual defendants would waive their right to contest personal jurisdiction merely by providing information to Deel*** in connection with Deel's investigation to respond to discovery served on it. To the contrary, Rippling's position is and has always been that, in responding to discovery requests, Deel (like any corporate litigant) is under an obligation to conduct a reasonable investigation which includes gathering responsive information from officers, employees, and agents.

ECF 202-6 at 2. Mr. Brown's declaration not only omits any reference to this correspondence, but it also expressly limits Rippling's supposed statements about "participating in discovery" to the

5

time period running "[t]hrough November 2025[.]" ECF 216-1 ¶ 5. After December 10, 2025, Deel lost any remaining sliver of a claim that Rippling might argue jurisdictional waiver if Deel complied with the November 7 Order. But, Deel still waited *months* to respond, which it now purports to justify by citing the same pretextual concern that Rippling debunked back in December.

*__Third__*, Deel now argues that Rippling's written confirmation "would provide no comfort to the Individual Defendants," because "a court is not bound by stipulations of the parties as to questions of law." Opp. at 16 (cleaned up, citations omitted). This argument is transparently post hoc. Deel never raised this concern in response to Rippling's December 10, 2025 email; instead, Deel jumped to a different excuse altogether (discussed in the next section). Indeed, Deel stops short of saying that anyone *actually thought*, back on December 10, that Judge Breyer might find *sua sponte* that the Bouazizes and Westgarth consented to personal jurisdiction merely by providing information to their own employer. And there is no law that would support it. No court has ever held that a party's employee consented to the Court's jurisdiction, just by providing information to the employer as part of the employer's discovery investigation. The two cases Deel now cites provide no help: *Cahill v. Insider*, 131 F.4th 933 (9th Cir. 2025), holds that an *intervening party* consented to the court's jurisdiction by *intervening*, and *Peterson v. Highland Music*, 140 F.3d 1313 (9th Cir. 1998), discusses—in dicta quoted by Deel—how a defendant could waive its *right to appeal* a personal jurisdiction ruling, and then holds that there was *no waiver* on the facts before the court. *See* Opp. at 16. Neither case provides even remotely "on-point support in case law" for Deel's waiver argument. *See Cruz*, 346 F.R.D. at 112. They therefore cannot provide substantial justification for its noncompliance. *See id.* (no substantial justification in absence of "sound legal authority to support the defendant's failure to comply with a court order").

#### 2. Deel's general objection to the definition of "Deel" in Rippling's interrogatories is not a "substantial justification."

Deel's second argument seeks to revive a nonsensical general objection buried in the "Definitions" section of Deel's original rog responses. The objection states: "Deel interprets 'Deel' to mean and refer to information possessed by Defendant Deel, Inc., and specifically excluding the individual named defendants in this action[.]" ECF 202-3 at 4:22–24. This objection is legally

baseless, Deel never asserted it during the September 2025 meet and confer or subsequent joint letter brief, and it is not addressed in the November 7 Order. Deel cannot rely on it now.

Deel's opposition again fails to rebut the key points in Rippling's opening brief. Deel concedes that, under black letter law, a corporate officer's knowledge is imputed to the corporation, and that a corporate party answering interrogatories must therefore include information known by its officers. *See* ECF 200-1 at 15. Deel concedes that a responding party waives objections by not asserting them in opposition to a motion to compel. *See id*. And most importantly, Deel concedes that it did not assert the objection to the definition of "Deel" during the September 2025 meet and confer[2] or the ensuing October 10, 2025 letter brief (ECF 146). In short, Deel concedes that the objection is legally baseless and waived. The substantial justification inquiry should end there.

Facing a dead end under clearly established law and undisputed facts, Deel's opposition bootstraps its meritless jurisdictional waiver argument. Deel argues that, because Rippling had "repeatedly taken the position that any participation by the Individual Defendants in this matter . . . would constitute a waiver[,]" Rippling therefore knew they would not provide any information to Deel and "*acquiesced* in that state of affairs." Opp. at 6 (cleaned up); *see also id.* at 16–18. Deel then implicitly argues that Rippling's "acquiescence" excuses Deel's failure to assert its general objection in the October 10, 2025 letter brief—i.e., that the objection "was not an 'unresolved issue' under this Court's Standing Order § F.5 that needed to be addressed," because (according to Deel) Rippling had already silently accepted it. *Id*. This argument fails at the outset, because, as explained above, the entire premise is legally and factually infirm: there is no legal authority creating a risk that the Individual Defendants would waive jurisdictional defenses by merely providing information to their own employer, nor did Rippling ever threaten to make that argument (or anything like it). And there are two other fatal flaws in this argument.

First, Rippling's course of conduct belies any assertion that Rippling "acquiesced" to Deel

---

[2] Deel misleadingly quotes its own October 9, 2025 email, which stated: "Rippling has repeatedly taken the position that any participation by the Individual Defendants in this matter while their service and jurisdictional challenges are pending would constitute a waiver of those defenses." Opp. at 6 (quoting ECF 216-5 at 1). That email—which is addressed in the preceding section—was sent *after the meet and confer concluded*, on a separate email thread, addressing a separate issue: whether Deel would consent to *filing a case management statement*. *See id*.

RIPPLING'S REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL
Case No. 3:25-CV-2576-CRB

6192118

omitting the Bouazizes' and Westgarth's knowledge from its Court-ordered responses. Rippling's opening brief asked: "Why would Rippling undertake a motion to compel Rogs that ask for facts known to the individual Defendants, and why would the Court issue a sixteen-page order compelling Deel to respond, if everyone knew all along that Deel would omit [the individual Defendants'] knowledge and provide non-responses?" ECF 200-1 at 15. Deel's opposition has no answer to this question, because there is none.

Second, the Court should *forcefully* reject the notion that the parties could have "resolved" this issue, within the meaning of the Court's Standing Order, without ever discussing it during the meet and confer. Deel lodged **more than thirty objections** to each of Rogs 5 and 6.[3] Rippling cannot reasonably be expected to infer which among thirty-plus objections Deel might choose to stand on; it is *Deel's* responsibility to identify them. Rippling even asked Deel, at the outset of the September meet and confer, in writing, to "please identify the key points driving Deel's objections, and if Deel proposes a narrower scope than what is sought by any interrogatory, please provide that scope." ECF 216-4 at 2. In response, Deel did not mention its general objection to the definition of "Deel" or otherwise propose excluding the Individual Defendants' knowledge from its responses. That is why the parties omitted this issue from the October 10, 2025 letter brief: not because Rippling "acquiesced" to it, but because Deel dropped it. Allowing Deel to stand on it now, to limit the scope of Court-ordered responses, would reward Deel's sandbagging and incentivize serial litigation. *See SafeCo Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) (allowing serial objections would allow a party to "be strung along indefinitely").

**B.    Deel violated the November 7 Order by otherwise failing to conduct a reasonable inquiry.**

In addition to failing to interview the Bouazizes and Westgarth, Deel failed to conduct a reasonable inquiry in response to Rogs 2, 4, 5, and 6 by (1) omitting the specific stolen information identified in the pleadings from its search terms; (2) limiting its review of the Bouazizes' and

---

[3] Deel's September responses levied twelve general objections, fourteen objections to definitions, an objection to the instructions, and an objection to the relevant time period—all of which Deel purported to "incorporate by reference" in response to Rogs 5 and 6—plus five additional specific objections to Rog 5 and four to Rog 6. ECF 202-3 at 1–12, 19–25.

RIPPLING'S REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL
Case No. 3:25-CV-2576-CRB

6192118

Westgarth's files to their *corporate* Google Drive, Slack, and email accounts; and (3) relying on Asif Malik and Andrea David Mieli—in-house lawyers who O'Brien testified told him to lie and destroy evidence—to search their own files. ECF 200-1 at 16–19.

Deel's opposition gives up the first point entirely, making no effort to defend its search terms. Deel concedes that it was required "to make a reasonable effort to locate **all** responsive documents and information necessary to fully respond to interrogatories." *Id.* at 17 (quoting *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 657 (N.D. Cal. 2004)). Deel admits that specific stolen information—including "Rippling Originated Information" (hereinafter, "ROI")—was already in the record, such as several dozen specific Rippling customers and sales prospects. *Id.* at 16. And Deel admits that the search terms it used to find documents showing ROI in Deel's possession (Rogs 2 and 4) and "information about Rippling" sent by O'Brien (Rogs 5 and 6) omitted *all* of those specific customers and sales prospects. *Id.* Those admissions establish a clear violation of the November 7 Order.

Worse, Deel not only *touts* that its ostrich-like review "did not show that Deel was in possession of Rippling Originated Information," but uses that result to justify its other shortcuts. Opp. at 17. Setting aside that Deel's limiting this review to ROI was improper (see Section III.C, *infra*), Deel makes a classic circular argument—i.e., Deel argues that the process required nothing more, because the result is valid. Deel's review turned up no ROI because the search terms omitted all of the specific ROI already identified in the pleadings. That is a process failure, and the results of that failed process cannot justify other process failures, such as limiting Deel's review of Alex Bouaziz's files to his *corporate* accounts, despite O'Brien's extensive sworn testimony that they corresponded extensively about Rippling on their *personal* devices through disappearing messages on their *personal* Telegram applications—a fact Bouaziz himself now *admits*.

Finally, Deel does not dispute that outside counsel must do more than "simply give instructions to his client and count on them to fulfill their discovery obligations" (ECF 200-1 at 17–18 (quoting *Bess v. Peffley*, 2025 WL 3171904, at *2 (N.D. Cal. Nov. 13, 2025))), and admits Deel's outside counsel did *exactly that* for in-house lawyers Asif Malik and Andrea David Mieli. Deel argues that deviating from the rule was justified for Malik and Mieli because they are lawyers

9

and had only "limited interactions with O'Brien over a 2-week period in March 2025." Opp. at 19. But Deel concedes that Malik spoke to O'Brien *every day* between March 14, 2025 (when O'Brien was served the Irish High Court's evidence preservation order) and March 25, 2025 (when O'Brien hired his own counsel and flipped on Deel). ECF 200-1 at 17. That alone is highly suspicious. On top of that, O'Brien has sworn under oath that Malik encouraged him on those calls to destroy his iPhone; lie to the Irish High Court, Irish regulators, and Deel's Irish counsel; and flee with his family to Dubai. That he did all of this—per O'Brien's sworn testimony—*despite* his ethical obligations as an attorney, means Deel should have reached the opposite conclusion: Malik's status as in-house counsel and time-limited interactions with O'Brien are not, in any way, justifications for failing to collect and review his documents.

### C.    Deel violated the November 7 Order by unilaterally narrowing Rogs 5 and 6 to "Rippling Originated Information."

Deel's opposition argues, on one hand, that Rippling's discussion of the ROI limitation is not properly before the Court. On the other hand, Deel argues *in the first paragraph of its brief* that the "crux of [the November 25] Responses—that Deel did not possess Rippling Originated Information—was correct when it was given[.]" Opp. at 1. Both of Deel's arguments are wrong.

First, the Court should reject the argument that the ROI issue is not properly before the Court, because—as Deel's opposition and the supporting exhibits now lay bare—Deel baited Rippling into dropping that issue from the December 23 letter brief, only to reassert it months later as a "substantial justification" for Deel's non-compliance. When Deel withdrew the objection on December 9, 2025, Rippling's counsel explained in a follow-up email on December 16: "***Now that Deel has agreed to remove the 'Rippling Originated Information' limitation from Rogs 5 and 6, the dispute is narrowed to a single issue: Whether Deel has failed to comply with the Court's Order to respond to Rogs 2, 4, 5, and 6, by withholding from its response information known by Alex Bouaziz, Philippe Bouaziz, and Daniel Westgarth.***" ECF 216-6 at 12 (cleaned up). Despite dropping the ROI limitation, Deel waited more than three additional months past the Court-ordered deadline, and until Judge Breyer ruled, to respond without that limitation. Its eventual responses disclose the extensive "information related to Rippling" that its senior-most executives received

6192118

from O'Brien, and that is *undisputedly* within the scope of Rogs 5 and 6. Deel now argues that the November non-responses complied with the Court's November 7 Order, because the ROI limitation was proper, and the "information related to Rippling" that Deel disclosed in March was a freebie. That argument places the ROI limitation *squarely* at issue on this motion.

Second, the Court should reject the argument that the "crux of [the November 25] Responses—that Deel did not possess Rippling Originated Information—was correct when it was given[.]" Opp. at 1. Deel's own March responses now state that O'Brien sent extensive information about Rippling's customers, tactics to win over Deel's customers and employees, products, and internal processes for handling whistleblower complaints. *See* ECF 200-1 at 11. This information *clearly* includes "ROI." But, more importantly, whether Deel's responses to Rogs 5 and 6 were technically "correct" when *limited to ROI* is beside the point, because (a) Deel's unilaterally imposed ROI limitation was improper to begin with, and (b) Deel withdrew it on December 9.

Deel asserts that the ROI limitation was proper because, Deel claims, Rippling agreed to it in September 2025. Opp. at 5–6. Again, Deel is misstating the record. Deel's September responses, which limited Rogs 5 and 6 to ROI, also sought to limit the *definition* of ROI. When the parties could not agree on a definition, they litigated the ROI issue for *all nine* contested interrogatories. *See* ECF 146 at 5 ("Deel objects to *all nine* interrogatories . . . to the extent that they are not connected to 'Rippling Originated Information.'"). After Deel lost that motion, it appealed to Judge Breyer, asking him to impose the ROI limitation only as to Rogs 1, 7 and 8.[4] ECF 153. After receiving Deel's deficient November responses, Rippling told Deel in writing that limiting Rogs 5 and 6 to ROI was improper and violated the Order. On the first meet and confer about this issue— on December 9, 2025—Deel said nothing about a prior agreement to impose the limitation; instead, Deel immediately capitulated and said it would withdraw it. *See* ECF 216-6 at 12. This course of conduct belies any claim that either side thought Rippling had agreed to the limitation.

---

[4] Deel now argues that the ROI limitation on Rogs 5 and 6 was somehow inferable from the Court's Order, because the phrase "information related to Rippling" renders those Rogs uniquely overbroad. ECF 216 at 18. That argument ignores the key distinction between Rogs 2 and 4 (which ask for all ROI obtained by Deel, from *anyone* or *anywhere*, since September 2022) and Rogs 5 and 6 (which ask for "information related to Rippling" obtained from a *single individual*—Keith O'Brien). Correspondence between O'Brien (Deel's spy at Rippling) and Deel conveying *any* information about Rippling is relevant and discoverable, as Deel now concedes by producing it.

6192118

And despite purporting to withdraw the limitation on December 9, Deel continued to withhold extensive "information related to Rippling" that its employees recall receiving from O'Brien (as requested by Rogs 5 and 6 as written). Even if Rippling had agreed to the limitation in September (it had not), Deel offers no excuse for its continued failure to comply with the November 7 Order after December 9. The question therefore is not *whether* Deel violated the Court's order by limiting Rogs 5 and 6 to ROI, but *when*: on the November 25 Court-ordered compliance deadline, or on December 9, 2025, when Deel withdrew the limitation but still refused to supplement its responses until after Judge Breyer ruled on the motions to dismiss.

### D.     The Court should reject Deel's "no harm, no foul" argument.

Deel argues that its "four-month delay did not actually harm or prejudice Rippling, making any award of monetary sanctions 'unjust.'" Opp. at 21. This argument fails for two reasons: First, Deel's delay caused Rippling clear and substantial prejudice. Second, Deel's misconduct requires monetary sanctions *regardless* of any showing of actual prejudice.

### 1.     Deel's violation of the Court's November 7 Order caused clear and substantial prejudice to Rippling.

Deel claims that there was no harm or prejudice because it eventually produced substantive responses on March 20, 2026, with ten months left in the discovery period. Opp. at 1, 11–12, 21–22. That argument overlooks the nature of Rippling's claims, the facts of this case, and the specific interrogatories at issue. Rippling served Rogs 5 and 6 on May 30, 2025—"the first permissible day to do so under the Rules" (Opp. at 3)—because it knew the Defendants had destroyed their communications with O'Brien (a fact that Defendants now *admit*) and needed Deel's employees' freshest recollections of those communications. Deel took ten months to respond, the last four of which violated the November 7 Order. Unsurprisingly, key witnesses now claim their memories of the destroyed communications faded during that time. For example, Alex Bouaziz claims he no longer recalls the dates on which "O'Brien sent multiple unsolicited messages to [him] via Telegram," the names of any specific customers or sales prospects Bouaziz received, or the specific Rippling product capabilities they discussed. ECF 202-9 at 8. But Bouaziz can say that, "*as of the date of these responses*"—i.e., a full year after the spying scheme ended—and "*to the best of his*

*recollection*," all of the Rippling information Bouaziz remembers receiving was "already known" and "not of interest." *Id.* Clearly, the Defendants have used the additional months of delay to try to credibly claim a lack of recollection about the key evidence they destroyed.

As another example, Deel's recent, amended responses finally admit that Philippe Bouaziz introduced O'Brien to "A.D." (a.k.a. "the Watchman")—the individual who paid O'Brien approximately $6,000/month in cryptocurrency during the spying scheme—and disclose A.D.'s identity. *See* ECF 200-1 at 10 n.3. Rippling immediately asked Deel to provide A.D.'s or his lawyer's contact information. Weeks later, A.D.'s lawyer surfaced, only to tell Rippling, on April 27, 2026, that A.D.—who resides abroad—would refuse to accept a subpoena. Rothstein Supp. Decl. Ex. 1. Consequently, Rippling must undertake a time-consuming and uncertain process to get his testimony. Deel's violation of the Court's Order thus gave A.D. a lengthy head start in running out the discovery clock. And if he ever testifies, the additional months-long delay will surely help him claim, in response to Rippling's questions, "I do not recall."

These are just two examples. Deel's eventual responses disclose numerous newly identified facts and witnesses that require Rippling to follow up with additional discovery. Hopefully, Deel is correct that its violation will not entirely prevent Rippling from taking that discovery, or that, in light of the passage of time, that discovery will not be stymied by witnesses' recollections dimming. But Deel caused clear and substantial prejudice to Rippling, by stalling Rippling for months while the key witnesses' memories of destroyed communications supposedly faded.

Deel also argues that there is no "harm" to Rippling because this motion practice is "entirely of [Rippling's] own creation." Opp. at 2, 21–22. That is wrong. In December, neither side knew when Judge Breyer would rule on the jurisdictional and FNC motions, and Deel equivocated on whether it would *ever* produce responsive information known by the Bouazizes and Westgarth. ECF 202-6. These circumstances, created by *Deel*, required Rippling to raise Deel's noncompliance with the Court in the December 23 letter brief. The alternative—waiting indefinitely for Court-ordered responses that were already overdue—was untenable. And Deel did not confirm it would provide responsive information from the Individual Defendants until, not coincidentally, the day *after* March 2, 2026, when the Court stated it would grant Rippling leave to file this motion. *See*

13

ECF 188 at 42:18–45:2.  This removes any doubt that raising Deel's violation of the November 7 Order to the Court was 100% necessary to bring Deel into compliance.

### 2.    Deel's violation of the Court's Order requires monetary sanctions, regardless of "prejudice" or "harm" to Rippling.

Deel's opposition misleadingly argues that monetary sanctions are "unjust" whenever the non-moving party shows the absence of prejudice or harm. *See* Opp. at 13, 21. Deel is wrong on the law. Rule 37 sanctions serve not only "remedial and compensatory purposes"—which Deel focuses on myopically—but also "punitive and deterrent purposes[.]" *In re Uber Techs.*, 2026 WL 440752, at *8; *see also Infanzon*, 335 F.R.D. 305, 311 (monetary sanctions serve "to protect courts and opposing parties from delaying or harassing tactics during the discovery process"). Even absent a showing of prejudice, monetary sanctions may be awarded to punish and deter misconduct. Thus, in *In re Uber Technologies*, this Court awarded the same type of monetary sanctions sought by Rippling (attorneys' fees) *despite* finding a "lack of actual harm." 2026 WL 440752, at *8.

When considering the appropriate sanction in light of the "punitive and deterrent" purposes of Rule 37, the Court must consider Deel's willful violation of the November 7 Order in the context of Deel's broader pattern of delay. *See In re Heritage Bond Litig.*, 223 F.R.D. 527, 530 (C.D. Cal. 2004) (the court may "properly consider all of a party's discovery misconduct . . . , including conduct which has been the subject of earlier sanctions."). Deel has not substantively responded to a single interrogatory without forcing a motion and a Court order. It has brought or defended six discovery motions so far and is, essentially, 0-6. It gathered and indexed its initial document review set of 1.7 million documents in 2025, but waited months longer to begin its review. Then, it told the Court on March 4 that its review was well underway, but in two months since then, it has made only one production of fewer than 9,000 documents—in response to requests for production served *eleven months ago*. In short, Deel's violation of the Court-ordered November 25 deadline is part of a bigger problem. Deel has forced Rippling to file motion after motion to get basic discovery, has now violated an order it forced Rippling to seek (requiring even more litigation), and continues to drag its feet. This doesn't just burden Rippling; it burdens the Court and the other litigants whom Deel is crowding out of the Court's busy docket. The Court should send a clear message that this behavior will not be tolerated.

### E.      Rippling's requested fee award is reasonable.

Lastly, Deel argues Rippling's fee request is unreasonable and inadequately substantiated under Local Rule 54-5(b)(2). Opp. at 22–23. But Local Rule 54-5(b)(2) covers *motions for fees* brought *after judgment*. Local Rule 37-4(b) governs declarations, like Rippling's, that support a pre-judgment fee request under Rule 37. Rippling's declarations easily satisfy Local Rule 37-4(b): They "set forth the facts and circumstances that support the motion" and "describe in detail the [months-long] efforts made by [Rippling] to secure compliance without intervention by the Court[.]" ECF 202-1 ¶¶ 2–8. They "itemize with particularity the otherwise unnecessary expenses" by breaking down 112.2 hours into time spent reviewing and analyzing Deel's November 25 responses and conducting legal research (15.8 hours); meeting and conferring (1.8 hours); drafting, revising, and filing the joint letter brief (24.3 hours); drafting, revising, and filing this Motion (70.3 hours). ECF 201-1 ¶¶ 5–8. (Rippling also excluded any "mixed entries" that captured work on other topics, ensuring the request is conservative. *Id.* ¶ 6.) And they "set forth an appropriate justification" for counsel's hourly rates (which Deel does not challenge). *Id.* ¶ 9.

Moreover, the hours expended are reasonable in light of the work Deel's misconduct required. The December meet-and-confer process, December 23 letter brief, and sanctions motion required Rippling to marshal a complex factual record spanning months of discovery correspondence, research and brief the application of Rules 37 and 26(g), and respond to Deel's shifting justifications. These efforts were the direct, foreseeable consequence of Deel violating the November 7 Order. The 70.3 hours devoted to the sanctions motion—including a 22-page brief with eleven exhibits—and the 24.3 hours devoted to the December 23 letter brief are well within the range courts approve for sanctions briefing of comparable scope and stakes. (Deel's lawyers presumably spent a considerable number of hours researching and drafting Deel's own lengthy opposition papers and supporting declarations; Deel declines to say how many.)

Rippling respectfully requests that the Court award $96,495.75 in fees set forth in the MacMichael Declaration (ECF 201-1), plus $35,628.75 in fees set forth in Mr. MacMichael's supplemental declaration appended hereto, incurred in connection with this Reply.

RIPPLING'S REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL
Case No. 3:25-CV-2576-CRB

6192118

## IV.    CONCLUSION

For the reasons set forth above, Rippling respectfully requests that the Court enter a finding that Deel violated the Court's November 7, 2025 Order (ECF 148) and enter an award of monetary sanctions against Deel in the amount of $132,124.50.

Dated:  April 29, 2026                                    KEKER, VAN NEST & PETERS LLP

By:   /s/ *Eric H. MacMichael*
ELLIOT R. PETERS
ERIC H. MACMICHAEL
ANDREW F. DAWSON
BENJAMIN D. ROTHSTEIN

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation

RIPPLING'S REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEEL
Case No. 3:25-CV-2576-CRB

6192118