KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff/Counter-Defendant
PEOPLE CENTER, INC. D/B/A RIPPLING,
a Delaware corporation and Counter-Defendant
PARKER ROUSE CONRAD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100, <br><br> Defendants. | Case No. 3:25-CV-2576-CRB <br><br> (1) RIPPLING AND PARKER CONRAD'S NOTICE OF MOTION AND MOTION TO DISMISS DEEL'S COUNTERCLAIMS <br><br> (2) RIPPLING AND PARKER CONRAD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS; and <br><br> _Under Separate Cover:_ <br><br> (3) [PROPOSED] ORDER |
| DEEL, INC., a Delaware corporation, <br><br> Counterclaimant, <br><br> v. <br><br> PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation; PARKER ROUSE CONRAD, an individual; and KEITH O'BRIEN, an individual; and DOES 1–100, <br><br> Counter-Defendants. | Date Filed:         March 17, 2025 <br> Am. Compl. Filed:   June 5, 2025 <br> Judge:              Hon. Charles R. Breyer <br> Courtroom:          6 <br><br> Hearing Date:       July 10, 2026, 10 AM |

## <u>NOTICE OF MOTION AND MOTION</u>

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on July 10, 2026, in the courtroom of the Honorable Charles R. Breyer, located at the San Francisco Courthouse, Courtroom 6, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff/Counter-Defendant People Center, Inc., d/b/a Rippling ("Rippling"), and Counter-Defendant Parker Conrad, will, and hereby do, present for hearing by this Court this motion to dismiss counterclaims brought by Defendant/Counterclaimant Deel, Inc. ("Deel").

This Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). It is based on the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at, or in connection with, the hearing. Rippling and Counter-Defendant Conrad seek dismissal of all counterclaims.

### SUMMARY OF ARGUMENT

Pursuant to this Court's standing order, Counter-Defendants Rippling and Parker Conrad provide the following summary of argument:

1. **Deel Cannot Adequately Allege a RICO Claim**: Deel's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962) fail for multiple reasons.

   a. **RICO Predicate Acts**: Deel alleges three categories of conduct that it argues establish various predicate acts in support of its RICO claim. None is adequately alleged.

      i. *Protected Litigation Conduct*: Deel's central allegation in support of its RICO claim is that Rippling's conduct in furtherance of its litigation was unlawful. More specifically, Deel alleges that Rippling's pre-filing contacts with Counter-Defendant Keith O'Brien, which resulted in the submission of a sworn affidavit in support of Rippling's claims in this Court, amount to wire fraud, witness tampering, and bribery. But Rippling's conduct in support of its litigation is constitutionally protected activity under the *Noerr-Pennington* Doctrine. *See*

i

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Nor can Deel satisfy the narrow "sham litigation" exception to *Noerr-Pennington* simply by "recast[ing] disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998). To hold otherwise would invite a flood of retaliatory lawsuits that would chill legitimate access to the courts. *See Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).

ii. ***Failure to Allege Fraud Connected to Competitive Intelligence***: Deel also alleges that a Rippling contractor's competitive intelligence efforts amount to wire fraud. But violation of a website's terms of service—which is fundamentally all Deel can allege—does not constitute a "scheme to defraud." Indeed, the Supreme Court has held that such a rule "would attach criminal penalties to a breathtaking amount of commonplace computer activity," and the Court has rejected such a rule for purposes of the Computer Fraud and Abuse Act. *Van Buren v. United States*, 593 U.S. 374, 393 (2021); *see also United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012). Deel cannot reach the same unjust result through artful pleading under a different statute.

iii. ***Failure to Adequately Plead Fraud Regarding Globalization Partners***: Lastly, Deel speculates that Rippling coordinated its competitive intelligence practices with a third party, Globalization Partners ("GP"), and that GP also committed fraud. But Deel relies exclusively on guesswork and innuendo; it fails to allege any *facts* demonstrating specific communications, agreements, or coordination. Simple observation of similar conduct cannot satisfy the heightened pleading standard of Rule 9(b). And, even if there were coordination, the underlying fraud theory as to GP fails under *Van Buren* and *Nosal*.

b. **Pattern of Racketeering Activity:** A RICO plaintiff must adequately allege a pattern of racketeering activity. Even if a subset of the alleged RICO predicates were adequately alleged, such brief periods of conduct are too brief and disparate to satisfy the "pattern"

ii

requirement. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992).

c. **Injury and Proximate Cause:** Deel cannot identify a sufficiently concrete loss that was proximately caused by Rippling's alleged behavior. *See Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999). Loss of "business opportunities" depends on independent decisions made by third parties, particularly when Deel concedes that one such potential customer was offered a price "four times less" than what Deel offered. Nor are Deel's other alleged losses—investigation costs, litigation expenses, and reputational harm—cognizable as concrete injury. *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008); *Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009); *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).

d. **RICO Enterprise:** In practical effect, Deel alleges that Rippling itself is a RICO enterprise. But "a single . . . entity cannot be both the RICO enterprise and an individual RICO defendant." *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992). Deel therefore tries to rope GP into the enterprise. But, as noted above, Deel cannot adequately allege anything more than similar conduct; it cannot and does not allege an actual *agreement* to commit racketeering acts or any joint purpose. *See Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). It therefore cannot allege an enterprise.

2. **Computer Fraud and Abuse Act ("CFAA"):** Deel contends that Rippling's competitive intelligence efforts, discussed above as an alleged wire fraud predicate, do double duty as a parallel CFAA violation as well. But the representations Deel challenges pertain to various provisions of Deel's TOS, and violations of a TOS are not actionable under the CFAA. *See Van Buren*, 593 U.S. at 394-95; *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022). Nor can Deel adequately allege that it explicitly revoked Rippling's access such that the challenged conduct was "without authorization." *See Facebook, Inc. v. Power*

*Ventures*, 844 F.3d 1058, 1067 (9th Cir. 2016). Deel implausibly alleges that such a revocation was communicated in December 2022, but it alleges no facts regarding the nature or language of that revocation. Indeed, the only communication of which Rippling is aware that aligns with the alleged circumstances does not contain such a revocation. Lastly, Deel fails to allege a cognizable loss under the CFAA, which is limited to "technical harms." *See X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 984 (N.D. Cal. 2024) (Breyer, J.).

3. **False Advertising Claims Under the Lanham Act:** In order to be actionable, the statements in question must be more than "general, subjective claim[]s about a product" that are not objectively verifiable. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). The statements challenged in Deel's counterclaims fail for a variety of reasons: they are (1) subjective statements that Deel made about itself; (2) opinions and generalized comparisons between Rippling's and Deel's product capabilities; and (3) statements about this litigation. With regard to the last category, such statements do not pertain to a product or service at all and thus are not "advertisements" under the Lanham Act at all. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997); *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024); *Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012).

4. **Anti-Cybersquatting Protection Act; Trademark Infringement, and False Designation of Origin:** Deel also alleges a variety of claims related to its contention that Rippling owns, controls, or is otherwise responsible for the internet domain <deal.com>, which is alleged to refer incoming internet traffic to Rippling's website. But Deel once again fails to allege *facts* supporting this contention. Its suspicion that Rippling *must* be responsible is no substitute for well-pleaded facts. Indeed, the simple fact is that Rippling does not, and has never, controlled <deal.com>.

iv

MOTION TO DISMISS COUNTERCLAIMS
6186984

Case No. 3:25-CV-2576-CRB

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. I

SUMMARY OF ARGUMENT ........................................................................................... I

TABLE OF CONTENTS ................................................................................................... V

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY ....................................2

III.   LEGAL STANDARD ............................................................................................6

IV.    ARGUMENT ......................................................................................................7

       A.    Deel Fails to State a RICO Claim. ............................................................7

             1.    Deel Fails to Sufficiently Allege Any Cognizable RICO Predicate Act. ..............................................................................7

                   a.    Litigation Conduct Is Protected by *Noerr-Pennington*. ...................7

                   b.    Deel Fails to Plausibly Allege Fraud Regarding Johnson Under *Eclectic Properties* and Rule 9(b). .......................................10

                   c.    Deel Fails to Adequately Plead Fraud Allegations Regarding Globalization Partners. ...................................................11

             2.    Deel Fails to Allege a Pattern of Racketeering Activity. ...........................12

             3.    Deel Fails to Plead Injury or Proximate Cause. ........................................13

             4.    Deel Fails to Allege a RICO Enterprise. ...................................................14

             5.    Deel Fails to Allege a RICO Conspiracy. .................................................15

       B.    Deel Fails to State a CFAA Claim. .........................................................15

             1.    Deel Does Not Adequately Allege that Johnson's Access to Its Systems Was "Without Authorization" or "Exceeded Authorized Access." .......................................................................15

             2.    Deel Does Not Adequately Allege Loss. ...................................................19

       C.    Deel Fails to State a False Advertising Claim under the Lanham Act. .................21

             1.    Rippling's Statements About Itself. ...........................................................22

             2.    Rippling's Statements About Differences Between Rippling's and Deel's Products. ......................................................................23

             3.    Rippling's Statements About This Litigation. ...........................................26

MOTION TO DISMISS COUNTERCLAIMS                          Case No. 3:25-CV-2576-CRB
6186984

D.    Deel Fails to State a Claim Under the Anti-Cybersquatting Protection Act, for Trademark Infringement, and for False Designation of Origin. ......................27

    1.    Deel's Claims Fail Because It Does Not Plausibly Allege that Rippling Owns, Controls, or Uses <deal.com>. ......................................27

    2.    Rippling Does Not Own, Control, or Have Any Relationship to <deal.com>. ...............................................................................29

E.    Deel Fails to State Any Claim Against Parker Conrad.........................................29

V.    CONCLUSION...................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*123 Los Robles LLC v. Metzler*,
  2017 WL 10311210 (C.D. Cal. Aug. 14, 2017) ........................................................................18

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
  356 F. Supp. 3d 889 (N.D. Cal. 2018) (Chen, J.) ....................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................6, 18, 23

*B&G Foods North Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ....................................................................................................9

*Banc of Cal., NA v. McDonnell*,
  2018 WL 8693922 (C.D. Cal. Nov. 9, 2018) ..........................................................................18

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) .............................................................................................. iii, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................................6

*Boar, Inc. v. Cnty. of Nye*,
  499 F. App'x 713 (9th Cir. 2012) .............................................................................................10

*Canyon County v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ............................................................................................ iii, 14

*In re Century Aluminum Co. Securities Litig.*,
  729 F.3d 1104 (9th Cir. 2013) .................................................................................................28

*Children's Health Def. v. Facebook Inc.*,
  546 F. Supp. 3d 909 (N.D. Cal. 2021) .....................................................................................26

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) .................................................................................21, 24

*Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*,
  944 F.2d 1525 (9th Cir. 1991) ...................................................................................................9

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2021) ...................................................................................................6

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ....................................................................................................14

MOTION TO DISMISS COUNTERCLAIMS                    Case No. 3:25-CV-2576-CRB
6186984

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) .......................................................................................7

*Custom Packaging Supply, Inc. v. Phillips*,
2016 WL 1532220 (C.D. Cal. Apr. 15, 2016) ................................................................19

*Distoric Design Grp. LLC v. Noco Co.*,
2024 WL 6841392 (D. Ariz. Jan. 5, 2024) ....................................................................17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..................................................................................10, 28

*Ewiz Express Corp. v. Ma Lab'ys, Inc.*,
2015 WL 5680904 (N.D. Cal. Sep. 28, 2015) ...........................................................18, 19

*Facebook, Inc. v. Power Ventures*,
844 F.3d 1058 (9th Cir. 2016) ....................................................................... iii, 15, 16

*Fraser v. Mint Mobile, LLC*,
2022 WL 2391000 (N.D. Cal. July 21, 2022)................................................................20

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ........................................................................................8

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
2019 WL 1768965 (S.D.N.Y. Apr. 4, 2019)..................................................................26

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
378 F. Supp. 3d 823 (N.D. Cal. 2019) (Orrick, J.) .................................................21

*Greater Houston Trans. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. 2015) ........................................................................22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)......................................................................................................12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ......................................................................... iii, 16, 17

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
2023 WL 1768120 (N.D. Cal. Feb. 2, 2023) ................................................................6

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .....................................................................................21

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018)......................................................................................ii, 8

*Klayman v. Judicial Watch, Inc.*,
628 F. Supp. 2d 112 (D.D.C. 2009) ............................................................................24

MOTION TO DISMISS COUNTERCLAIMS                    Case No. 3:25-CV-2576-CRB
6186984

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
2024 WL 5423132 (C.D. Cal. Oct. 31, 2024)........................................................................24

*Kottle v. Nw. Kidney Centers*,
146 F.3d 1056 (9th Cir. 1998) ...................................................................................... ii, 9

*Lusida Rubber Prods., Inc. v. Point Indus., LLC*,
2016 WL 7469587 (C.D. Cal. 2016)......................................................................................28

*Matot v. CH*,
975 F. Supp. 2d 1191 (D. Ore. 2013)......................................................................................16

*McDonald v. Schencker*,
18 F.3d 491 (7th Cir. 1994) .....................................................................................................10

*Metaxas v. Lee*,
503 F. Supp. 3d 923 (N.D. Cal. 2020) .....................................................................................10

*Miller v. 4Internet, LLC*,
471 F. Supp. 3d 1085 (D. Nev. 2020)......................................................................................17

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023) .....................................................................................28

*Multifab, Inc. v. ArlanaGreen.com*,
122 F. Supp. 3d 1055 (E.D. Wash. 2015) ................................................................................27

*New Show Studios LLC v. Needle*,
2014 WL 2988271 (C.D. Cal. June 30, 2014) .........................................................................20

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) ........................................................................ iv, 21, 23, 24

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........................................................................18

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) (en banc) ..................................................................................15

<u>*Omni Resource Development Corp. v. Conoco*, Inc.,</u>
<u>739 F.2d 1412, 1414 (9th Cir. 1984)</u> .......................................................................................9

*Oracle Int'l Corp. v. Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024) ...................................................................... iv, 22, 23

*Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) ....................................................................................... iii, 13

ix

MOTION TO DISMISS COUNTERCLAIMS                    Case No. 3:25-CV-2576-CRB
6186984

*Oscar v. Univ. Students Coop. Ass'n*,
    965 F.2d 783 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ....................................................................... iii, 14

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998), *rev'd by statute on other grounds*, *Rueda Vidal*
    *v. Bolton,* 822 F. App'x 643 (9th Cir. 2020) ............................................................7

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ...................................................................... iv, 22

*Rae v. Union Bank*,
    725 F.2d 478 (9th Cir. 1984) ......................................................................14

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    769 F. Supp. 3d 1067 (N.D. Cal. 2025) .....................................................26

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ............................................................. iii, 12, 13

*Rigsby v. GoDaddy Inc.*,
    59 F.4th 998 (9th Cir. 2023) ......................................................................27

*River City Markets, Inc. v. Fleming Foods W., Inc.*,
    960 F.2d 1458 (9th Cir. 1992) ..................................................................... iii

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ......................................................3

*Sanchez v. Ghost Management Group, LLC*,
    2023 WL 4363120 (9th Cir. 2023) ............................................................29

*Sanchez v. Ghost Management Grp., LLC*,
    No. 22-55233 (9th Cir. July 8, 2022), Dkt. No. 9-2.................................29

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ....................................................................15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ..................................................................12

*Skydive Arizona, Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) ........................................................ iv, 21, 26

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)......................................................................................3

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .................................................................. ii, 8

x

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ..................................................................................... iv, 23

*Steele v. Hosp. Corp. of Am.*,
    36 F.3d 69 (9th Cir. 1994) ....................................................................................................13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..............................................................................................7, 30

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................................13

*Thomas v. Baca*,
    308 F. App'x 87 (9th Cir. 2009) ..................................................................................... iii, 14

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
    420 F. Supp. 3d 966 (N.D. Cal. 2019) ..................................................................................26

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ................................................................................ ii, 10, 16, 17

*Van Buren v. United States*,
    593 U.S. 374 (2021).......................................................................................... *passim*

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................................6, 21

*Wagh v. Metris Direct, Inc.*,
    363 F.3d 821 (9th Cir. 2003), *overruled on other grounds*. And .............................................7

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) (Breyer, J.)...................................................... iv, 20, 21

**Federal Statutes**

15 U.S.C. § 1114.................................................................................................................3, 27

15 U.S.C. § 1125.............................................................................................................3, 27, 28

15 U.S.C. § 1125.................................................................................................................3, 27

18 U.S.C. § 201 .......................................................................................................................10

18 U.S.C. § 1030.................................................................................................................3, 15, 19

18 U.S.C. § 1343......................................................................................................................10

18 U.S.C. § 1512......................................................................................................................10

18 U.S.C. § 1962.......................................................................................................... *passim*

xi

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................... i, 2, 10, 11

Fed. R. Civ. P. 9(b) ..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................. i, 6, 22

Fed. R. Evid. 201(b) ............................................................................................................7

## I.    INTRODUCTION

This case is about a brazen corporate espionage scheme in which Deel's senior-most executives bribed Rippling employee Keith O'Brien to exploit his access to Rippling's systems, steal Rippling's trade secrets, and funnel them to Deel. The forensic record cataloged in Rippling's First Amended Complaint documents how it was done, what was taken, how O'Brien was paid, and how Deel scrambled to destroy the evidence after being caught. *See* ECF No. 57. For nearly a year, Deel and its executives tried to escape this Court through a series of motions to dismiss. The Court denied those motions on February 23, 2026 (ECF No. 174). One month later, and over a year into these proceedings, Deel filed the present, 118-page Cross-Complaint (ECF No. 203). Each of Deel's counterclaims is legally defective, and the Cross-Complaint as a whole—including page after page of irrelevant, ad hominem attacks against Rippling's founder and CEO—is a thinly veiled effort to distract the Court and the public from Deel's own misconduct.

The Cross-Complaint leads with a tit-for-tat civil RICO claim that attempts to repackage Deel's anticipated cross-examination of O'Brien as a RICO predicate. Deel alleges that O'Brien's affidavit is false (despite the overwhelming forensic evidence corroborating it), that Rippling "bribed" O'Brien for his testimony (by merely signing a standard Irish severance agreement with him, and despite the fact that O'Brien flipped on Deel before even *discussing* severance with Rippling), and that Rippling therefore violated the federal witness tampering statute. Setting aside the factual implausibility of Deel's false-testimony allegations, they run headlong into the *Noerr-Pennington* doctrine, which immunizes Rippling from claims based on its petitioning activity.

Deel's other alleged RICO predicates are equally flimsy. Deel asserts that Rippling improperly gathered information from the *customer-facing* portion of Deel's website, in violation of Deel's website Terms of Service ("TOS"). Deel recycles these allegations (nearly verbatim) from a long-dormant Delaware lawsuit that Deel filed in April 2025. Deel never moved the Delaware action into discovery; it was, essentially, a publicity stunt. But after this Court denied the motions to dismiss, Deel voluntarily dismissed the Delaware action, bundled those claims with attacks on O'Brien's credibility, and—*voila!*—asserted a RICO claim in this action. Unfortunately for Deel, the TOS allegations from Delaware are subject to binding mandatory arbitration under the same

MOTION TO DISMISS COUNTERCLAIMS                              CASE NO. 3:25-CV-2576-CRB

6186984

terms of service it claims Rippling breached.

Deel's remaining scattershot claims fare no better. Its CFAA claim, like the second RICO predicate, is based entirely on the Delaware allegations and subject to mandatory binding arbitration. Moreover, accessing Deel's systems in violation of contractual terms of service is not access "without authorization" under the CFAA. Deel's Lanham Act false advertising claim relies entirely on non-actionable statements—statements of opinion, statements that Deel misquotes, and statements that Deel fails to plausibly allege are false. And Deel's numerous claims based on a third-party website (www.deal.com) that redirects traffic to Rippling all fail, because ***Rippling does not own or control <u>that</u> website***, and Deel does not plausibly allege otherwise.

This all amounts to a transparent attempt to make this case unmanageable and to distract from Deel's own blatant, willful, and illegal misconduct. But 100+ pages of fodder for reporters does not amount to a valid legal case, and none of Deel's allegations adequately states a claim for relief. The pleading standards in Rules 8 and 9(b) exist to ensure that courts are not overwhelmed with a flood of unsupported lawsuits. Applying those standards here, as the Court must, compels the conclusion that Deel has failed to state a single plausible (or, where required, particularized) claim for relief. The Cross-Complaint should be dismissed.

## II.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Rippling and Deel are direct competitors in the employer-of-record ("EOR") and global workforce-management market. ECF No. 203 ("Countercl.") ¶¶ 80-81. Rippling filed this action in March 2025, after discovering that Deel recruited and bribed Keith O'Brien ("O'Brien"), a former employee of Rippling's Irish subsidiary, to steal Rippling's confidential information and trade secrets. ECF No. 1; ECF No. 57 (First Amended Complaint "FAC"). Citing an extensive body of forensic evidence, the FAC catalogs (a) how the scheme began; (b) the precise types of stolen trade secrets; (c) exactly how those secrets were stolen; (d) the illicit compensation provided in exchange for the stolen information; and (e) how Deel attempted to orchestrate a massive coverup after it was caught red-handed. *Id.* This Court denied Deel's motion to dismiss those claims in a 49-page opinion (ECF No. 174), and discovery is ongoing.

Weeks after Rippling filed this action, Deel responded by filing a retaliatory suit in

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

Delaware state court. *See* Request for Judicial Notice ("RJN"), Ex. A. Deel's initial suit brought a variety of state law claims related to false advertising and unfair competition. As here, the complaint included extensive ad hominem and irrelevant attacks on Counter-Defendant Parker Conrad, including allegations regarding his high school grades. *Id.* In June 2025, Deel filed an Amended Complaint in Delaware, adding claims relating to its allegation that a Rippling contractor accessed certain customer-facing Deel websites. *Id.*, Ex. B. After that amended filing, Deel let its suit languish for an additional nine months without attempting to take discovery or otherwise meaningfully prosecute its case. On March 25, 2026, Deel voluntarily dismissed its case without prejudice. *Id.*, Ex. C.

That same day, Deel filed its Answer and Counterclaims in this case, recycling its claims from the abandoned Delaware litigation and adding additional satellite claims. In all, Deel asserts seven counterclaims against Rippling, Conrad, and O'Brien: (1) violation of RICO, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2), (a)(4), and (b); (4) violation of the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d); (5) trademark infringement, 15 U.S.C. § 1114; (6) false designation of origin and unfair competition, 15 U.S.C. § 1125(a); and (7) false advertising under the Lanham Act, 15 U.S.C. § 1125(a). Countercl. ¶¶ 362–435. Rippling and Conrad now move to dismiss all seven counterclaims.[1]

***RICO Allegations.*** Tit-for-tat, Deel alleges a "Rippling Crime Syndicate"—a purported association-in-fact enterprise consisting of Rippling, its CEO Parker Conrad ("Conrad"), certain employees (principally O'Brien), a contractor (Brett Johnson), and another competitor (Globalization Partners LLC). Countercl. ¶¶ 27, 32–43. Deel's RICO claim pleads three categories of alleged predicate acts:

---

[1] Rippling and Conrad concurrently move to compel arbitration of the RICO, CFAA, and Anti-Cybersquatting Protection Act Counterclaims, providing an additional and independent path to dispose of those claims. The Court must stay all arbitrable claims pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). And if any non-arbitrable portion of Deel's RICO Counterclaims survives this motion to dismiss, the Court should exercise its discretion to stay those portions as well because the arbitrable and non-arbitrable portions overlap in fact and law, and piecemeal adjudication would be inefficient and risk inconsistent results. *See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303–04 (N.D. Cal. 2018).

3

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

The O'Brien Allegations. The centerpiece of Deel's counterclaims—and the foundation of the RICO predicates—is O'Brien's sworn testimony. Deel alleges that Rippling "coerced" and "bribed" O'Brien into signing an affidavit filed with this Court and the Irish High Court, Countercl. ¶ 149, that "nearly every single statement" in that affidavit is false, *id.* ¶ 150, and that Rippling "paid for and procured" O'Brien's testimony through what Deel calls the "Carrot & Stick Agreements," *id.* ¶¶ 8–12, 220–28. Deel thus tried to base RICO liability on Rippling's development and use of witness testimony in this very litigation.

The Johnson Allegations. Deel alleges that in May 2024, Brett Johnson, a Rippling Competitive Intelligence Manager, created an account on Deel's publicly available customer-facing platform for a business called "Quandary Insights LLC." *Id.* ¶¶ 40, 96–97, 104–06. Deel alleges that, when Johnson was onboarded, he agreed not to use Deel's platform for any illegal or fraudulent purpose or for any unauthorized purpose. *Id.* ¶¶ 112–14. Using this account over approximately six months, Deel alleges that Johnson engaged in competitive intelligence, gathering various customer-facing product offerings: Deel-generated employment agreements, health insurance and benefits documents; pricing information; and reports and other functionalities available to any Deel customer with a login. *Id.* ¶¶ 110–33. Deel "believes" that Vanessa Wu, Rippling's former General Counsel, and Conrad directed Johnson in this alleged conduct, *id.* ¶ 99, but it fails to allege any specific communication, meeting, or directive from either of them to Johnson. Deel further alleges that Johnson's conduct occurred after Deel "revoked" Rippling's access to its systems "in or around December 2022," *id.* ¶¶ 81, 95, 389, but it provides no details about what that purported revocation said, to whom it was directed, or how it was communicated. Indeed, Deel does not even allege a basis for the suggestion that Rippling ever had access to Deel's systems; Deel was *Rippling's* customer, not the other way around. *Id.* ¶ 81.[2]

The Globalization Partners Allegations. Deel also alleges that Globalization Partners ("GP"), a separate EOR competitor, also accessed Deel's platform using a fictitious company ("Nedconsult") in a manner Deel characterizes as "shockingly similar" to Johnson's conduct. *Id.*

---

[2] The Johnson Allegations also form the factual basis of Deel's CFAA claim. *See* Countercl. ¶¶ 384–94.

MOTION TO DISMISS COUNTERCLAIMS                                    CASE NO. 3:25-CV-2576-CRB

6186984

¶¶ 28, 41, 138, 144. Deel alleges generally that there were wire communications on "multiple occasions." *Id.* ¶ 369. But Deel pleads no facts establishing any actual coordination between Rippling and GP—no communication, no agreement, no joint decision, no shared plan. Instead, it concludes that similar competitive intelligence behavior "lead[s] to but one conclusion": a racketeering enterprise. *Id.* ¶ 148.

Alleged Injuries. For its RICO claims, Deel alleges generic injury to "business and property, including, but not limited to, loss of intellectual property, protected business information, equipment, business opportunities, reputation, advantageous business relationships (including customer and employee relationships), and profits." *Id.* ¶ 378. But the only concrete losses Deel identifies are three customer departures: Customer A, which allegedly cancelled after O'Brien's affidavit became public in April 2025, *id.* ¶ 231; Customer B, which allegedly left in June 2025 citing that same affidavit, i*d.* ¶ 232; and Customer C, which allegedly moved to Rippling because Rippling offered pricing "four times less" than Deel—an independent business decision that Deel attributes to purportedly "stolen" pricing information. *Id.* ¶ 234. Beyond that, Deel points to investigation costs tied to reviewing Johnson's activity ("at least 50 working hours," *id.* ¶ 136) and ongoing costs investigating GP. *Id.* ¶¶ 42, 144. In its Prayer for Relief, Deel also seeks attorneys' fees incurred in this very litigation. *Id.* ¶¶ 445–46, 450.

Conrad-Specific Allegations. As to Conrad, the allegations are bereft of substance. Deel alleges that Conrad exercises "pervasive and obsessive control over all aspects of Rippling's corporate decision-making," *id.* ¶ 33, "acted as the ringleader" of the alleged enterprise, *id.* ¶ 365, and was "regularly updated" on Johnson's activities*, id.* ¶ 102. But Deel identifies no meeting Conrad attended, no communication he sent, and no directive he issued—on any date—in connection with any alleged predicate act. The vast majority of Conrad-specific allegations concern his prior tenure at Zenefits—referenced at least 57 times across ¶¶ 16–25 and 64–79—and are drawn from podcast interviews, press reports, and commentary. *Id.* ¶¶ 17, 25, 79.

***False Advertising Allegations.*** Deel asserts a false advertising claim based on a series of statements spanning more than twenty pages of its counterclaims. Countercl. ¶¶ 281–361. These include statements such as Rippling's representation that it has "gone to great lengths" to ensure it

5

"stays compliant," *id.* ¶ 282; a webpage titled "Don't Buy Snake Oil" that invites users to "[p]lay this game to find the differences between Deel's claims and the reality of their product," *id.* ¶ 310; and statements drawn from Rippling's filings, blog posts, and media reports concerning this litigation, *id.* ¶¶ 350–61. Deel also alleges that certain statements imply additional meanings not expressly stated. *See, e.g., id.* ¶¶ 309, 313, 332, 335, 340, 343, 352–54, 356.

***Cybersquatting, Trademark Infringement, and False Designations.*** Deel's claims are based on allegations concerning the domain <deal.com>. *Id.* ¶¶ 398, 411, 419. Deel alleges that the domain redirects to Rippling's website and infers from that fact that Rippling owns or controls the domain. *Id.* ¶¶ 265–66. Deel does not provide any specific evidence or non-conclusory allegations that Rippling owns or controls the domain, because Rippling in fact does not.

## III.    LEGAL STANDARD

A motion to dismiss counterclaims is "evaluated under the same standard as a motion to dismiss a plaintiff's complaint" under Rule 12(b)(6). *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2023 WL 1768120, at *3 (N.D. Cal. Feb. 2, 2023). A pleading must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than a sheer possibility" that the counter-defendant has "acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2021) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). Where, as here, the pleader makes "[a]verments of fraud," a heightened pleading standard applies under Rule 9(b): the pleader must allege with specificity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Id.* at 1107.

On a motion to dismiss, the court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

6

[] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998), *rev'd by statute on other grounds*, *Rueda Vidal v. Bolton,* 822 F. App'x 643, 644–45 (9th Cir. 2020). This incorporation-by-reference doctrine also applies where the complaint necessarily relies on a document, its contents are alleged, and its authenticity and relevance are not disputed. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The court may also take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## IV.    ARGUMENT

### A.    Deel Fails to State a RICO Claim.

Courts routinely "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 827 (9th Cir. 2003), *overruled on other grounds*. And Deel's transparent attempt to convert constitutionally protected litigation activity into actionable racketeering is precisely the sort of opportunistic pleading that courts guard against. Deel's further attempt to buttress its challenge to protected activity with a hodgepodge of speculative, disparate allegations of other supposed wrongdoing cannot, and does not, allege a plausible claim for relief. And it *certainly* cannot meet the stringent pleading standard of Rule 9(b), which applies to Deel's reliance on fraud theories. Because Deel cannot adequately allege a single actionable predicate act, a cognizable enterprise, a pattern of racketeering activity, or any injury sufficiently traceable to the alleged misconduct, its RICO counterclaim fails as a matter of law.

#### 1.    *Deel Fails to Sufficiently Allege Any Cognizable RICO Predicate Act.*

##### a.    Litigation Conduct Is Protected by *Noerr-Pennington*.

Deel's RICO claim fails at the outset because its theory rests squarely on litigation conduct—principally the development and use of Counter-Defendant O'Brien's testimony in this case. But litigation activity is constitutionally protected, and it cannot be repackaged as racketeering under the *Noerr-Pennington* doctrine. *See* Countercl. ¶¶ 149–150. That is precisely what Deel tries to do. It claims that Rippling "coerced" and "bribed" O'Brien into signing an affidavit filed with this Court and the Irish High Court, *id.* ¶ 149, that "nearly every single statement" in that affidavit is false, *id.* ¶ 150, and that Rippling "paid for and procured [O'Brien]'s false testimony" through

7

what Deel calls a "Carrot & Stick Agreement[]," *id*. And Deel goes further, targeting this litigation itself by alleging that Rippling's continued prosecution of this case reflects "malicious intent to harm Deel." *Id.* ¶ 150. In other words, Deel's theory is that this lawsuit itself—and the evidence supporting it—is racketeering activity.

But that is exactly what the *Noerr-Pennington* doctrine prohibits. The doctrine "derives from the First Amendment's guarantee of 'the right of the people . . . to petition the [g]overnment for redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Ninth Circuit has explained that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* The doctrine thus forecloses exactly what Deel attempts here: recasting constitutionally protected litigation conduct as a new cause of action. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (noting that if litigation activity were sufficient to create RICO liability, courts would be inundated by retaliatory litigation and would unjustifiably chill legitimate access to the courts).

The central allegation of Deel's RICO claim is that various asserted predicate acts—wire fraud, bribery, and witness tampering—are all premised on the same protected conduct outlined above. Countercl. ¶ 149. Deel alleges wire fraud based on a purported "scheme to defraud" through "intimidation, threats, corrupt persuasion, and payments" to induce O'Brien's affidavit. *Id.* ¶ 369. The witness-tampering theory likewise rests on alleged efforts to "corruptly persuade" O'Brien's testimony, culminating in that same affidavit filed in this Court and the Irish High Court. *Id.* ¶ 371. And the bribery theory alleges that Rippling "corruptly gave, offered, or promised" something of value to influence O'Brien's testimony—again culminating in that affidavit. *Id.* ¶ 374. But witness testimony and affidavits are paradigmatic communications to the court, and conduct undertaken to obtain and present that testimony is "conduct incidental to" petitioning and therefore protected. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–85 (9th Cir. 2005); *Sosa*, 437 F.3d at 937 (extending *Noerr–Pennington* immunity to litigation-related activities preliminary to the formal filing of the litigation). Deel's theory reduces to relabeling disputed testimony as racketeering.

Nor can Deel invoke the sham-litigation exception. To invoke the exception and convert litigation activity into an actionable RICO predicate, Deel must plausibly allege either (1) the

8

lawsuit was objectively baseless and brought with an unlawful motive; (2) a series of lawsuits was brought without regard to the merits; or (3) the lawsuit consists of "intentional misrepresentations to the court" that "deprive the litigation of its legitimacy." *B&G Foods North Am., Inc. v. Embry*, 29 F.4th 527, 537-38 (9th Cir. 2022). Where the plaintiff alleges intentional misrepresentations, courts apply a heightened pleading standard. *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998). And such a pleading standard would have no force if "a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Id.*; *see also Omni Resource Development Corp. v. Conoco*, Inc., 739 F.2d 1412, 1414 (9th Cir. 1984) ("[N]othing more is alleged than the use of false affidavits in the state suit. That, however, is a charge that can easily be leveled, and it is thus insufficient by itself to overcome Noerr–Pennington immunity.").

That is exactly what Deel does here. It asserts that O'Brien's testimony is "false" and "coerced"—but offers only conclusory allegations that mirror its merits defense. *See* Countercl. ¶¶ 369, 372, 385. The Ninth Circuit in *Kottle* rejected this precise maneuver—allegations that a litigant's statements are false, without particularized facts showing that the "entire . . . proceeding was deprived of its legitimacy"—ultimately holding that the litigant did not satisfy the sham exception. *Kottle*, 146 F.3d at 1063. Deel's theory is no different. Deel ignores that the claims supported by O'Brien's testimony have already survived a motion to dismiss, confirming the litigation is not objectively baseless. *See Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1530-31 (9th Cir. 1991) (a suit supported by probable cause cannot be sham litigation). Consistent with that principle, the Ninth Circuit has explained that a suit "cannot be baseless" where it has achieved interim success, such as obtaining a preliminary injunction. *Id.* (quoting *Omni Res. Dev. Corp.*, 739 F.2d at 1414). The reason is obvious. If Deel's theory were accepted, every defendant could respond to litigation by asserting that the evidence is false and therefore constitutes racketeering. Deel's position would invite the flood of baseless, complicating litigation that courts have warned against.

Because *Noerr-Pennington* bars Deel's attempt to premise liability on Rippling's litigation

9

activity, the alleged predicate acts related to that activity are all barred.[3]

b.    <u>Deel Fails to Plausibly Allege Fraud Regarding Johnson Under <em>Eclectic Properties</em> and Rule 9(b).</u>

Deel's fraud theory as to the Johnson allegations similarly fails to allege a fraud scheme with the requisite particularity to stand as a RICO predicate. Fraud requires more than allegations consistent with wrongdoing; it requires particularized allegations of a scheme to defraud. Even under the notice pleading standard of Rule 8, the Ninth Circuit requires more than allegations "merely consistent" with liability; the complaint must plead facts that do more than suggest misconduct and that render "obvious alternative explanation[s]" implausible. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Rule 9(b) demands even more.

Deel does not meet that standard. The Johnson allegations describe facially legitimate competitive conduct: creating an account on a competitor's platform (Countercl. ¶ 96), accessing customer-facing materials (*Id.* ¶¶ 97, 110), and analyzing product functionality (*Id.* ¶ 111). Deel has simply alleged that Mr. Johnson engaged in competitive research, not fraud.

Deel attempts to convert this conduct into fraud by alleging that Johnson made false representations during onboarding—specifically, that he would not use the platform for competitive purposes. *Id.* ¶¶ 112-14. But a breach of terms of service ("TOS") does not, without more, constitute a "scheme to defraud." If it did, virtually any competitor who signs up for a free trial using a personal email, subsidiary name, or consulting entity would be committing wire fraud. That would expose widespread, ordinary SaaS competitive practices to federal criminal liability and RICO treble damages.[4] *See United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (noting that

---

[3] The Counterclaims specify that the following predicate acts are alleged to arise out of the O'Brien Affidavit and Rippling's litigation activity: 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 201 (bribery); and 18 U.S.C. § 1512 (witness tampering).

[4] Courts routinely reject attempts to transform ordinary business disputes into civil RICO claims as an improper use of the statute. *See, e.g., Boar, Inc. v. Cnty. of Nye*, 499 F. App'x 713, 715 (9th Cir. 2012) ("RICO was 'intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.'"); *Metaxas v. Lee*, 503 F. Supp. 3d 923, 945 (N.D. Cal. 2020) (rejecting attempt to dress up a routine business dispute as RICO, warning this would turn "every run-of-the-mill fraud" into federal racketeering); *McDonald v. Schencker*, 18 F.3d 491, 499 (7th Cir. 1994) (affirming denial of RICO claim where claim was "nothing more than a garden-variety business dispute recast as mail fraud").

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

concealing details on social media websites is common, and declining to impose liability where "millions of ordinary citizens" would be swept up in such a holding). It also amounts to an end-run around the Supreme Court's holding that such practices categorically do *not* constitute violations of the Computer Fraud and Abuse Act. *See Van Buren*, 593 U.S. 374 (2021) (noting that, if violation of a TOS is criminal, "then millions of otherwise law-abiding citizens are criminals"). Deel cannot be permitted to evade that clear holding through artful pleading, creating the same dragnet for ordinary citizens that the *Van Buren* Court rejected.

c.   Deel Fails to Adequately Plead Fraud Allegations Regarding Globalization Partners.

Deel's fraud allegations concerning Globalization Partners ("GP") are speculative and fail to satisfy Rule 8, much less Rule 9(b). Deel relies on inference rather than concrete facts and fails to identify any specific communication, agreement, or coordinated conduct. As explored more fully below in Section IV.B, the allegations are a transparent attempt to manufacture a cognizable enterprise despite the complete absence of sufficient factual allegations. And, even if Deel *could* allege an actual agreement with GP, the fraud allegations fail for the same reasons outlined above in Section IV.A.1.b.

*First*, Deel's theory of concerted action between Rippling and GP rests on nothing more than alleged similarity of conduct. Deel asserts that GP "fraudulently accessed Deel's" systems and stole "Deel's proprietary information in a way that was shockingly similar to Rippling's own fraudulent access." Countercl. ¶ 28. It then claims that the "jarring parallels" between the conduct of Rippling and GP constitute "strong evidence" of coordination. *Id.* That is insufficient. Similarity of conduct, without more, does not establish agreement or coordinated action, and it *certainly* fails to allege the supposed fraud with particularity. This is particularly so when the alleged "similarity" is the parallel implementation of standard competitive intelligence practices.

*Second*, Deel relies on Rippling's May 19, 2025 tender offer, which referenced GP's claim that it had reported Deel to law enforcement, and on an Axios source confirming that the statement reflected GP's position. *Id.* ¶ 139. From this, Deel concludes that this "can only mean one thing:" GP and Rippling were coordinating. *Id.* ¶ 140. This is ridiculous. The fact that Rippling was

11

allegedly aware of a report made by GP to law enforcement simply is not factual evidence of a racketeering enterprise. Deel's inference is rank speculation that does not satisfy Rule 9(b).

*Third*, Deel speculates that GP's alleged failure to respond to its accusations is evidence of conspiracy. Again, this is ridiculous. Deel asserts only that GP "never attempted to explain or justify its illicit behavior," *id.* ¶ 147, and "produced nothing to substantiate its explosive claims," *id.* ¶ 140, and from this Deel concludes that this silence "lead[s] to but one conclusion" of coordination, *id.* ¶ 148. The inference Deel asks this Court to draw from such spare facts—GP's choice not to engage with Deel—is wildly implausible.

*Finally*, Deel fails to plead any wire communication with particularity. It alleges only that communications must have occurred on "multiple occasions." That is precisely the type of threadbare pleading Rule 9(b) prohibits. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (allegations that defendants engaged in wire fraud "on two or more occasions" failed 9(b)).

### 2.    Deel Fails to Allege a Pattern of Racketeering Activity.

Even if some subset of alleged predicate acts were adequately alleged, Deel's RICO claim still fails for the independent reason that it fails to allege a pattern. The Supreme Court has held that a pattern requires predicate acts that are both related and that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity is "both a closed- and open-ended concept"—either a closed period of repeated conduct extending over a substantial time, or past conduct that by its nature "projects into the future with a threat of repetition." *Id.* at 241. As explained below, Deel fails to allege either form of continuity.

There is no closed-ended continuity, which requires the conduct to last for a substantial period. The Ninth Circuit has "found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992). Here, Johnson's conduct spans approximately five to six months, Countercl. ¶ 97, and it is alleged to be a discrete competitive intelligence effort. GP's alleged conduct also spans less than a year. *Id.* ¶ 145. And the O'Brien allegations are tied to a discrete litigation window. Even if one of these was a viable RICO predicate, none satisfies the temporal

12

requirement.

There is also no open-ended continuity. Open-ended continuity requires a threat of ongoing racketeering activity. *Wollersheim*, 971 F.2d at 366. That is absent here as well. Each alleged episode is tied to a finite objective: O'Brien to this litigation, Johnson to a bounded period of competitive research, and GP to isolated competitive acts. There is no allegation of ongoing racketeering activity or a threat of repetition. Nor do multiple acts within a single course of conduct establish a pattern. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077–78 (N.D. Cal. 2018).

### 3.    Deel Fails to Plead Injury or Proximate Cause.

Deel also fails to allege a cognizable RICO injury or proximate cause. A civil RICO plaintiff must plead a concrete financial injury to "business or property" proximately caused by the alleged racketeering conduct. *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999). Deel fails to do so.

Deel identifies only two "lost business opportunities" (Customers A and B) which it believes were tied to O'Brien's affidavit. Countercl. ¶¶ 230–32. But the Ninth Circuit requires a direct relationship between the alleged conduct and the injury and rejects claims where the causal chain is "complicated by the intervening agency of third parties." *Oregon Laborers*, 185 F.3d at 965. "Lost business opportunities" necessarily depend on independent decisions by third-party customers. Courts have repeatedly rejected RICO claims based on such attenuated, third-party-dependent harms. *See Steele v. Hosp. Corp. of Am.*, 36 F.3d 69 (9th Cir. 1994). Deel also alleges a loss of Customer C tied to the Johnson theory, but even Deel attributes that loss to independent pricing decisions—namely, that Rippling offered a price "four times less" than Deel. Countercl. ¶ 234. That is an independent business decision that breaks the causal chain. Further, the alleged harm of losing Customers A and B flows from how these third parties interpreted publicly filed litigation materials, not directly from any alleged racketeering act. Finally, the cooperation agreement cannot be the proximate cause of any alleged injury, as Deel's own allegations show that the harm flowed *only* after the public filing of O'Brien's affidavit. Countercl. ¶ 231 (Deel underscoring that Customer A did not consider cancelling *until* O'Brien's affidavit).

13

Deel's remaining theories of injury fare no better. For example, investigation costs are not a cognizable RICO injury. *See* Countercl. ¶¶ 42, 136, 144; *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008). Nor are litigation expenses. *See* Countercl. ¶ 445; *Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009). And reputational harm—such as "injury to its business reputation" or having to "battle. . . false narratives"—is not a concrete financial loss. Countercl. ¶ 14. *See Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (requiring "proof of concrete financial loss;" "injury to a valuable intangible property interest" is insufficient).

### 4.    Deel Fails to Allege a RICO Enterprise.

Deel also fails to allege a cognizable enterprise. An "enterprise" under RICO must be a "being different from, not the same as or part of, the person whose behavior the act was designed to prohibit." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984); *see also Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (holding that litigant cannot satisfy RICO by alleging a corporation as both the enterprise and the defendant, including where the alleged enterprise consists only of the corporation and its employees). Deel does not satisfy that requirement. It defines the "Rippling Crime Syndicate" as an association-in-fact consisting of Rippling, its CEO, its employees, and its agents performing their ordinary roles, all of whom are Rippling employees. Countercl. ¶¶ 32-34. That is simply a corporation acting through its internal structure. Deel's attempt to add O'Brien and GP does not cure the defect. O'Brien was, for most of the relevant period, a Rippling employee—further underscoring that Deel's alleged "enterprise" is simply Rippling itself. Countercl. ¶ 34. And even after O'Brien left Rippling, Deel's allegations regarding his role are internally inconsistent—O'Brien cannot plausibly be both a coerced victim and a member of the enterprise. *Id*. ¶¶ 369, 372. And, in any event, the litigation-related conduct associated with O'Brien is not a cognizable predicate.

Deel likewise fails to plausibly allege that GP is part of the enterprise. Countercl. ¶¶ 41, 138-48. Parallel conduct does not establish agreement or coordinated enterprise activity, and Deel fails to allege "common purpose," pointing instead to the mere fact that both Rippling and GP want to be profitable. *See id.* ¶¶ 139-40, 148. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (no

14

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

enterprise without agreement to participate and to commit predicate acts); *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc) (requiring allegations of common purpose). As noted above, Deel alleges no communication, agreement, or joint decision-making between GP and Rippling. Deel's sophisticated counsel is aware that its RICO claim will fail if confined to Rippling and its employees, which is precisely why it tries to rope GP into the story.

### 5.   Deel Fails to Allege a RICO Conspiracy.

Deel's conspiracy claim fails as a matter of law. A plaintiff "cannot claim that a conspiracy to violate RICO existed if [it does] not adequately plead a substantive violation of RICO." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Because Deel has failed to adequately plead such a substantive violation, its conspiracy claim fails as well.

### B.   Deel Fails to State a CFAA Claim.

Deel's CFAA counterclaim alleges that Johnson created and used a customer account in alleged violation of Deel's terms of service, including by making representations in connection with the account that Deel claims were false. Countercl. ¶¶ 104, 112-13, 384-91. But the CFAA does not convert violations of website terms of service, or alleged misrepresentations made in connection with the website, into computer hacking. Deel's CFAA claim fails for two reasons. *First*, Deel does not adequately allege that Johnson's access to Deel's platform was unauthorized or exceeded authorization. *Second*, Deel does not adequately allege "loss" under the CFAA.

### 1.   *Deel Does Not Adequately Allege that Johnson's Access to Its Systems Was "Without Authorization" or "Exceeded Authorized Access."*

Deel's third counterclaim, for violations of the CFAA, arises under 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), and 1030(b). To state a claim under either § 1030(a)(2) or (a)(4)—and thus under § 1030(b)—a plaintiff must plead that the defendant's access was "without authorization" or "exceed[ed] authorized access." Deel does neither.

Access is "without authorization" where the defendant either "ha[d] no permission to access [the plaintiff's] computer[s]" or "such permission ha[d] been revoked explicitly." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). The "exceeds authorized access

15

clause" applies where a defendant accesses a computer "with permission, but then 'exceed[s]' the parameters of authorized access by entering an area of the computer to which [that] authorization does not extend." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022); *see also Van Buren v. United States*, 593 U.S. 374, 396 (2021). Neither prong covers a user's alleged breach of contractual restrictions on how an otherwise authorized account may be created or used. *See United States v. Nosal*, 676 F.3d 854, 863–64 (9th Cir. 2012) (en banc).

Deel alleges that Johnson was able to access Deel's platform because he made a series of purported misrepresentations during onboarding—and that, had he not done so, Deel would "have never allowed Johnson to use its platform in the first place." *Id.* ¶¶ 112–13. But these "representations" are just acceptances of various provisions of Deel's Terms of Service, to which Johnson (like all Deel users) agreed.[5] It is black-letter law that the "violation of the terms of use of a website—without more—cannot establish liability under the CFAA." *Power Ventures*, 844 F.3d at 1067. So even if Johnson violated these terms, that does not render his access "unauthorized" for purposes of the CFAA. *See, e.g.*, *Matot v. CH*, 975 F. Supp. 2d 1191, 1196 (D. Ore. 2013) (dismissing CFAA claim premised on "creation of fake social media profiles in violation of social media websites terms of use").

Nor does Deel sufficiently allege that Johnson "exceed[ed] authorized access" under the CFAA. In *Van Buren*, the Supreme Court declined to read the statute's "exceeds authorized access" clause as encompassing "every violation of a computer-use policy" and, in particular, observed the danger in interpreting it to encompass violations of "access restriction[s] in" the "term[s] of service [of] an Internet service provider or website." *Van Buren*, 593 U.S. at 394–95. But such a violation

---

[5] *Compare* Countercl. ¶ 112 (alleging that Johnson represented that "Quandary was a bona fide and legitimate business"; he "would use Deel's platform only for Quandary's bona fide business purposes"; he "would not use Deel's platform for any illegal or fraudulent purpose, or for the benefit of any unaffiliated third parties"; and that he "would not use Deel's platform for the purpose of recording, duplicating, decompiling, reverse engineering, or any other use not authorized by Deel"), *with* RJN, Ex. D (Deel Platform: Terms of Service) ("You may only use the Services for your bona fide internal business purposes"; "You may not use the Platform and/or Services for any illegal, fraudulent or unauthorized purposes."; "You may not use the Services to solicit or provide services for the benefit of . . . any unaffiliated third parties"; "Prohibited Uses: Duplicate, decompile, reverse engineer, disassemble or decode the Services (including any underlying idea or algorithm), or attempt to do any of the same"); *see also* Rippling's Mot. to Compel Arb., Background (table comparing allegations in ¶ 112 to Deel's Terms of Service).

MOTION TO DISMISS COUNTERCLAIMS                                   CASE NO. 3:25-CV-2576-CRB

6186984

is precisely what Deel alleges here. It pleads no facts suggesting that Johnson was an "inside hacker[]" who "access[ed] a computer with permission, but then 'exceed[ed]' the parameters of authorized access by entering an area of the computer to which [that] authorization d[id] not extend," as required to state a claim under this clause. *hiQ Labs,* 31 F.4th at 1198.

Deel's allegation that it would have denied Johnson access had it known that Quandary was (allegedly) not a real company, *see* Countercl. ¶ 106, reflects the same misplaced understanding of the CFAA that the Supreme Court rejected in *Van Buren*. On Deel's theory, a user's access becomes unauthorized whenever a website owner claims that, had it known more about the true circumstances under which the user registered the account, it would not have allowed access. But the CFAA does not turn on such "circumstance-based access restrictions." 593 U.S. at 394. If the CFAA swept in such conduct, it would "attach criminal penalties to a breathtaking amount of commonplace computer activity," including "embellishing an online-dating profile" or "using a pseudonym on Facebook." *Id*. at 393–94. The Ninth Circuit has also specifically rejected such an overbroad interpretation of the CFAA. *See Nosal*, 676 F.3d at 862.

Nor can Deel manufacture a CFAA claim based on its threadbare allegation that it "specifically informed Rippling in or around December 2022 that Rippling . . . was not permitted to access Deel's protected computers." Countercl. ¶ 389; *see also id.* ¶¶ 81, 95, 137. Deel provides no details whatsoever about its purported revocation notice. It does not, for instance, identify who at Deel gave the notice, to whom at Rippling it was given, the medium through which it was given, or—most importantly—what the purported notice actually said. Such a threadbare allegation fails to plausibly show that Deel "plainly put [Rippling] on notice that it was no longer authorized to access [Deel's] computers," *Miller v. 4Internet, LLC*, 471 F. Supp. 3d 1085, 1090 (D. Nev. 2020) (quoting *Power Ventures*, 844 F.3d at 1067); *see also Distoric Design Grp. LLC v. Noco Co.*, 2024 WL 6841392, at *10 (D. Ariz. Jan. 5, 2024) (holding that counterclaimant had not plausibly alleged that counter-defendant's access was unauthorized where counterclaimant made "conclusory allegation that" it had "revoked [counter-defendant's] authorization to access" computer systems in a letter, but letter did not actually state that access was revoked).

Despite Deel's failure to plead these specifics, Rippling has endeavored to identify what

December 2022 communication Deel could possibly be referring to. The only detail alleged in the counterclaims other than the timeframe is the fact that the communication also concerned the fact that Rippling had informed Deel that Rippling had become a competitor to Deel in the broader marketplace. *See* Countercl. ¶ 389. Rippling has identified *that* communication, which is incorporated by reference and thus may be considered by the Court on a motion to dismiss. *See* RJN, Ex. E. But the email chain in question does not reflect *any* revocation of access to Deel's platform—let alone revocation that was "unequivocally conveyed." *123 Los Robles LLC v. Metzler*, 2017 WL 10311210, at *2 (C.D. Cal. Aug. 14, 2017). Indeed, in context, it would make no sense for such a "revocation" to occur. Deel had been *Rippling's* customer, and thus Deel had access to Rippling's customer platform. But Rippling had never been Deel's customer, and there is no basis in the counterclaims or in common sense to believe that Rippling ever had access to *Deel*'s customer platform, and thus there would be no plausible reason to revoke such access.

Worse still, this allegation does not come close to satisfying Rule 9(b)—which applies to Deel's CFAA counterclaim because the claim sounds in fraud. Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Deel alleges that Rippling "has been directing and using its 'Competitive Intelligence' department to create fraudulent accounts to bypass Deel's technical access and authentication protocols," and that it "infiltrate[d] Deel's platform through fraud." *Id.* ¶¶ 95, 98. In other words, Deel alleges that Rippling accessed Deel's platform through fraud—meaning Rule 9(b)'s heightened pleading standard applies. *See Ewiz Express Corp. v. Ma Lab'ys, Inc.*, 2015 WL 5680904, at *5 (N.D. Cal. Sep. 28, 2015) (applying Rule 9(b) to CFAA claim premised on alleged "scheme to steal Plaintiff's customers and business by forming competing companies having misleadingly similar business names"); *Banc of Cal., NA v. McDonnell*, 2018 WL 8693922, at *4 (C.D. Cal. Nov. 9, 2018) (same).

Deel's allegations fall short of the *Iqbal* standard as explained above, so they fall *far* short of the applicable heightened standard. To satisfy Rule 9(b), Deel must identify the "who, what, when, where, and how of the misconduct charged." *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020). As noted above, Deel fails to identify either "what" its purported revocation said or "who" delivered it. Deel's conclusory allegation that it "informed Rippling in or

18

around December 2022" simply does not provide the requisite specificity of the facts underlying Deel's claim. *E.g.*, *Ewiz Express*, 2015 WL 5680904, at *7 (dismissing CFAA claim under Rule 9(b) where plaintiff failed to allege "specific facts plausibly establishing that Defendants accessed a protected computer without authority").

### 2.    *Deel Does Not Adequately Allege Loss.*

Deel's CFAA counterclaim also fails for the independent reason that Deel does not adequately allege a cognizable loss. Deel does not plausibly allege the sort of technological harm compensable under the statute, instead pleading that Rippling misappropriated its proprietary information (which is not cognizable under the CFAA) and asserting, implausibly and without any supporting detail, that it was forced to investigate unspecified harm Rippling caused to its systems.

The CFAA's private right of action is only available to a party that has suffered a "loss" of at least $5,000 during a one-year period. 18 U.S.C. § 1030(c)(4)(A)(i)(1). And because the CFAA is an anti-computer-hacking statute, "loss" cognizable under the CFAA is limited to that based on harm to computer systems or data. *See Van Buren*, 593 U.S., 391–92  ("The statutory definitions of 'damage' and 'loss' thus focus on *technological harms*—such as the corruption of files—of the type unauthorized users cause to computer systems and data."). Costs "not related to computer impairment or computer damages are not compensable under the CFAA." *Custom Packaging Supply, Inc. v. Phillips*, 2016 WL 1532220, at *5 (C.D. Cal. Apr. 15, 2016).

Deel pleads no such harm. Its conclusory allegation that its loss includes "the costs of . . . restoring the data, program, system, or information to its condition prior to the offense" (¶ 393), copied and pasted from the statutory language, is supported by no factual allegations whatsoever and is therefore insufficient to plead loss. *See Phillips,* 2016 WL 153220, at *5 (holding that allegation that plaintiff "suffered damage and loss by reason of [defendant's] violations, including, without limitation, harm to [its] data, programs, and computer systems" was insufficient to plead loss). Indeed, it is not plausible that Rippling's access could have harmed Deel's systems or data, considering that all Johnson is alleged to have done is view Deel's product offerings and template documents in a manner that any Deel customer could. Nor does Deel attempt to explain how it could have.

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

Instead of alleging the required harm to its computer systems or computer data, Deel alleges that Rippling, through Johnson, stole its "proprietary data." Countercl. ¶¶ 95, 128; *see also id.* ¶ 390 (alleging that Rippling "obtained things of value greater than $5,000"). But competitive harm associated with alleged misappropriation of confidential information cannot, as a matter of law, constitute "loss" under the CFAA. *See, e.g.*, *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014) (holding that allegations of "competitive benefit" to competitor were insufficient to plead loss because "economic damage unrelated to the computer itself does not constitute 'loss'"). That a defendant may have obtained a "thing of value" worth more than $5,000 similarly does not establish loss. *See id.*

Nor can Deel plead around the lack of any damage to its computer systems or data by claiming that it spent over $5,000 "responding to the offense" or "conducting a damage assessment." *See* Countercl. ¶¶ 136, 393. As this Court has held, costs incurred not "to assess the breached system but to assess [one's] damages" are not cognizable under the CFAA. *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983 (N.D. Cal. 2024) (Breyer, J.) (dismissing CFAA claim where only alleged loss was cost of "internal investigations in efforts to ascertain the nature and scope of [defendant's] unauthorized access to the data"); *see also, e.g.*, *Fraser v. Mint Mobile, LLC*, 2022 WL 2391000, at *2 (N.D. Cal. July 21, 2022) (dismissing CFAA claim where only loss asserted was that plaintiff hired an expert to trace "movements of [his] stolen assets" because that cost was "not related to remedying technological harms inflicted on the breached computer or system"). While Deel conclusorily asserts that it had to investigate "what damage Rippling had caused to Deel's systems," Countercl. ¶ 136, Deel pleads no facts suggesting that its "damage assessment" had anything to do with identifying or remedying any technological harm, rather than identifying what Deel information Johnson allegedly misappropriated. Indeed, as noted above, the notion that there could have been any such damage is implausible, because all Johnson is alleged to have done is use those systems as any customer with access to them could. And Deel does not even attempt to explain how Johnson's use could have caused this sort of damage. "It is therefore hard to see how an investigation by [Deel] into what data [Rippling] copied from [Deel's customer platform] could amount to 'costs caused by harm to computer data,

20

programs, systems, or information services,'" which defeats Deel's CFAA claim. *X Corp.*, 724 F. Supp. 3d at 984.

### C.    Deel Fails to State a False Advertising Claim under the Lanham Act.

Deel's twenty-five pages of false advertising allegations (Countercl. ¶¶ 282–361) are an obvious attempt to flood the zone in the hope the Court will assume that *some* allegation is, in fact, actionable under the Lanham Act. Deel's Lanham Act claim must establish five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012).

Because Deel's "false advertising" claim is grounded in fraud,[6] Deel "must meet the Rule 9(b) particularity pleading requirements." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 836 n.4 (N.D. Cal. 2019) (Orrick, J.).[7] That means Deel must specifically allege "who, what, when, where, and how" of the alleged false advertisement. *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (*quoting Vess*, 317 F.3d at 1106).

Furthermore, to be actionable under the Lanham Act, the alleged statements must be more than "general, subjective claim[s] about a product" that are not objectively verifiable. *Newcal Indus., Inc.,* 513 F.3d at 1053  (holding that "general assertion that IKON provides its customers with low costs and . . . flexibility" was not actionable). "[W]hether an alleged misrepresentation is

---

[6] *See* Countercl. ¶ 281 ("Rippling has also orchestrated an obsessive, anticompetitive, and false and/or misleading sabotage campaign designed to harm Deel.").

[7] The Ninth Circuit has not ruled on whether Rule 9(b) applies to Lanham Act false advertising claims but has held broadly that Rule 9(b) applies to any claim "grounded in fraud." *See Vess*, 317 F.3d at 1107  (holding that a claim "grounded in fraud" must "satisfy the heightened pleading requirements of Rule 9(b)" and affirming dismissal of APA claim under that standard); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (affirming dismissal of California CLRA and UCL claims that were "grounded in fraud" for failure to meet Rule 9(b) pleading standard). Although district courts are not uniform, "the better reasoned authority[,]" is that, where a Lanham Act claim is predicated on alleged "knowing and intentional misrepresentation[s], then Rule 9(b) is applicable." *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018) (Chen, J.).

MOTION TO DISMISS COUNTERCLAIMS                              CASE NO. 3:25-CV-2576-CRB

6186984

a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion." *Id*. The Court must scrutinize this question closely at the pleading stage and "err on the side of nonactionability." *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1000 (9th Cir. 2024) (citation and quotation marks omitted).

The numerous, scattershot allegations in Deel's complaint fall into three categories, and each category fails under the legal standards set forth above. *First*, Deel challenges subjective statements Rippling has made about itself. *Second*, Deel challenges statements of opinion and generalized comparisons between Rippling's and Deel's product capabilities. And *third*, Deel attacks truthful statements Rippling has made about the allegations in this very lawsuit. For each of the three buckets of statements, Deel fails to plead an actionable false or misleading statement and/or fails to plead that the statements were widely disseminated in commercial advertising.[8]

### 1.  *Rippling's Statements About Itself.*

The first category is generic statements Rippling has made about itself. Deel's lead example is Rippling's statement on its website that "we've gone to great lengths to make sure every part of our business stays compliant[.]" Countercl. ¶¶ 282-302. Such a generic claim is not actionable. How would Deel, this Court, or a jury measure what Rippling meant by "has gone to great lengths"? There is no objective metric by which to assess that claim, and it is therefore non-actionable. *See, e.g., Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (statements that are "impervious to being quantifiable" are "non-actionable"); *Greater Houston Trans. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) (dismissing Lanham Act claim based on advertisement stating "Safest Ride on the Road – Going the Distance to Put People First" and finding statement non-actionable because it was a "subjective claim that lacks concrete measurability"). Similarly, Deel argues that Rippling's statement that it "calculates and transmits payroll taxes and mandatory benefits, tailored to national, local, and industry-specific requirements" is false because Rippling allegedly does not remit customers' payroll tax dollars to the relevant authorities. Countercl. ¶¶ 297-98. Not only is "tailored to national, local, and industry

---

[8] For the Court's convenience, and in light of the volume of statements at issue, Rippling attaches Appendix A mapping the applicable bases for dismissal to the statements at issue.

MOTION TO DISMISS COUNTERCLAIMS                              CASE NO. 3:25-CV-2576-CRB

6186984

specific requirements" a non-actionable subjective statement, but Deel's theory of falsity rests on the allegation that "Deel understands that O'Brien claimed" to "GPG-Member-2" certain things about Rippling's tax practices. Countercl. ¶¶ 291-93. Deel is simply repackaging rumors into a false advertising claim, claiming that generic statements of compliance are actionable in the event a defendant can be generically alleged to have broken a single rule. Rule 9(b) (and even *Iqbal*) demands more—particularly given that Deel's own counterclaims allege that Deel's sole source of information for this claim, Keith O'Brien, is inherently untrustworthy. Countercl. ¶ 4.

### 2. *Rippling's Statements About Differences Between Rippling's and Deel's Products.*

The second category comprises a series of at least two dozen statements drawn from a handful of posts on Rippling's website comparing its products to Deel's. Countercl. ¶¶ 303-348. The sheer volume of these statements cannot mask the fact that none of them, individually or collectively, supports a Lanham Act claim. Deel's allegations with respect to each statement fail for one or more of the following reasons:

***Claims based on statements of opinion.*** Many of the statements in this category are obviously non-actionable statements of opinion. Calling a competitor's product "snake oil" (Countercl. ¶ 310) is precisely the type of "blustering[] and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). Similarly, the statement that Rippling has "[e]verything you need for global HR, HRIS, performance management, recruiting, learning management, scheduling, and much more[,]" and that Deel does not, are "general, subjective claim[s] about [Rippling's and Deel's respective] product[s]" that are not objectively verifiable and therefore not actionable. *Newcal Indus., Inc.*, 513 F.3d at 1053. Similarly, Deel alleges that Rippling's statement—"Unlike Deel, Rippling's platform tracks and acts on compliance regulations to give you peace of mind"— is false. Countercl. ¶ 308. No jury can compare the "peace of mind" two products give their customers. *See Oracle Int'l Corp.*, 123 F.4th at 1001 (holding that statements about comparative service effectiveness were not actionable because "[w]ithout an objective measure of the difference between" the services, any statement about their comparative effectiveness was "necessarily tinged

MOTION TO DISMISS COUNTERCLAIMS                                    CASE NO. 3:25-CV-2576-CRB

6186984

with subjectivity"). Many of Rippling's other various alleged statements suffer from the same facial defect. *See, e.g.*, Countercl. ¶ 335 ("Rippling was built to support your entire workforce – both domestic and international"); *id.* ("Deel was built for international workforces only").

***Statements for which Deel fails to plead falsity at time of publication.*** Rule 9(b) requires Deel to allege, with specificity, when Rippling made each of the alleged statements. *Clorox*, 398 F. Supp. 3d at 634. That is, in part, because liability attaches only if the statements were "false . . . at the time they were made." *Newcal*, 513 F.3d at 1053. For several statements, Deel fails to plead this element entirely, stating only that, at some undefined point in the past, Rippling "advertised" things that Deel claims are no longer true. *See, e.g.*, Countercl. ¶ 304 ("Rippling *advertised* that it is 'the only native global payroll service for international entities.'"); *id.* ¶ 308 (Rippling "*advertised* [that it will] 'send you alerts when a potential issue, like a minimum wage violation, is detected.'"). Even if these statements were sufficiently factually specific to support a Lanham Act claim (they are not), Deel fails to allege when in the past Rippling made them, let alone that they were false at that time, and therefore fails to state a claim. *See, e.g.*, *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112 (D.D.C. 2009) (dismissing Lanham Act claim where statements were true when put in mail and false when received by addressees).

***Claims based on misquotation or implausible inferences from statements.*** Over and over again in this section of Deel's counterclaims, Deel attacks a strawman by misquoting Rippling's statement or arguing falsity based on an implausible inference from the statement (not the statement itself). For example, Rippling stated that Deel does not have "Talent Management & Applicant Tracking." Countercl. ¶ 319. Deel does not claim that statement is false, instead it seeks to redefine the phrase "talent management" as "the strategic HR practice of attracting, developing, and retaining employees that make an organization better" (*id.* ¶ 320), and then claims it has products that map to the various parts of its redefinition (*id.* ¶ 321).

Relatedly, many of Deel's allegations rest on unstated implications Deel asks this Court to read into otherwise obviously non-actionable statements. *See, e.g.*, Countercl. ¶¶ 309; 313, 332; 335; 340; 343; 352; 353; 354; 356. Such pleading requires "too many logical leaps," failing to meet the plausibility standard, let alone to Rule 9(b). *Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 WL

24

5423132, at *4 (C.D. Cal. Oct. 31, 2024). For instance, Deel argues that the "Don't Buy Snake Oil" chart's statement that Deel "[r]elies on many third parties" for certain services is actionable because "it implies that *Rippling* does not rely on third parties for background checks, though it does." Countercl. ¶ 313 (emphasis added). But the entire Snake Oil chart is about *Deel's* marketing claims; there are no mentions whatsoever of what Rippling does or does not offer. And Deel fails to allege that the statement as written—about Deel's services—is actually false. Conversely, a different page on Rippling's website states: "Leverage fast, expert global support when you need it" and "connect with a product-level expert via live chat," which is a statement about what *Rippling* offers. Countercl. ¶ 331. Deel argues this "plainly conveys that Deel's clients cannot connect with a product-level expert." Countercl. ¶ 332. But it simply does not say that. The statement as written, about *Rippling's* services, is entirely truthful, and Deel does not allege otherwise. Deel cannot transform a truthful statement about Rippling's own capabilities into actionable false advertising, otherwise any company's self-promotion could be challenged as an implied statement about its competitors.

*Claims for which Deel's allegations of falsity are conclusory or illogical.* In many instances, Deel fails to allege that the actual statement at issue is false. As one example, Rippling's website stated: that Deel's system "*often* operates as a general 'newsfeed.'" Countercl. ¶ 306 (emphasis added). Deel alleges falsity by claiming (a) it offers a specific product ("Continuous Compliance") that "allows" users to access various features, and (b) those features (the reader is left to infer) are unlike a general newsfeed. *Id.* ¶ 307. Deel says nothing about when it began offering Continuous Compliance, how many customers pay for it, or how many customers use the features that Deel suggests are unlike a newsfeed. Thus, Deel's allegation, even if true, does not contradict that its system *often* operates as a newsfeed. *See also, e.g.*, *id*. ¶ 314 (Rippling states that Deel's workflows are limited to 3 automated actions only; send email, send slack message, create task"; Deel claims falsity because its workflows have a "trigger" that "incites an action event, e.g., assign a survey"); *id.* ¶ 315 (Rippling states that Deel has "no ability to share one-time reports"; Deel claims falsity because its users can save copies of reports and then "share them" by email or Slack). Where Deel fails to allege falsity, it fails to state a claim.

MOTION TO DISMISS COUNTERCLAIMS                          CASE NO. 3:25-CV-2576-CRB

6186984

### 3.     *Rippling's Statements About This Litigation.*

Finally, the last category at issue is statements Rippling has made about the allegations in this very litigation. Countercl. ¶¶ 349-361. Deel fails to state a false advertising claim based on any of the statements in this category, for three reasons. *First*, Rippling's statements about this lawsuit are constitutionally protected activity. Courts cannot chill protected statements that "litigants can make about pending litigation" by imposing Lanham Act liability. *See, e.g., GeigTech E. Bay LLC v. Lutron Elecs. Co*., 2019 WL 1768965, at *11 (S.D.N.Y. Apr. 4, 2019); *UCP Int'l Co. Ltd. v. Balsam Brands Inc*., 420 F. Supp. 3d 966, 983 (N.D. Cal. 2019) ("Where companies notify customers about a lawsuit and their intent to pursue legal rights, those communications are protected [by the *Noerr-Pennington* doctrine].") (collecting cases).

Second, and more broadly, a defendant's alleged false claim is only subject to Lanham Act liability if it is "a **commercial advertisement** about **its own or another's product**." *Skydive*, 673 F.3d at 1110; *see also Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 936 (N.D. Cal. 2021) (dismissing Lanham Act claim based on Facebook's alleged "false" fact checks and warning labels because those statements were "untethered to the sale of goods or services."). Rippling's statements about this lawsuit—set forth in blog posts (¶¶ 349, 356) and two emails to individual customers (¶¶358-360)—are, on their face, *not* "commercial advertisements" and *not* about Rippling's "own or another's product" and therefore cannot create Lanham Act liability. *See, e.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc*., 769 F. Supp. 3d 1067, 1097 (N.D. Cal. 2025) (holding that allegations of "a handful of private statements" to "actual or prospective customers" were insufficient to state a Lanham Act claim).

Finally, Deel does not plausibly allege that Rippling's statements about this lawsuit—all of which describe either the evidence Rippling has uncovered or the content of Rippling's own well-supported allegations—are *false*. Instead, Deel argues that readers would somehow infer "a 'federal court' made [certain] factual findings, when, in fact, no federal court did." Countercl. ¶ 351. That inference is implausible. Describing the contents of "**court filing[s]**" (¶ 353) or stating that "Rippling has already uncovered evidence that, according to Judge Breyer, '**would** support Rippling's allegations that Westgarth agreed to commit wire fraud'" (¶ 356) are not statements

26

about whether the Court already found that the Defendants committed misconduct, nor could they plausibly be interpreted otherwise[9]—even if the statements were otherwise subject to the Lanham Act, which, again, they are not.

### D.    Deel Fails to State a Claim Under the Anti-Cybersquatting Protection Act, for Trademark Infringement, and for False Designation of Origin.

Deel's cybersquatting, trademark infringement, and false designation claims also fail as a matter of law. All three rest on a threshold premise: that Rippling owns, controls, or is otherwise responsible for the domain <deal.com>. But Deel pleads no facts to support that premise, concedes that Rippling is *not* the domain's registrar, and resorts to speculation that falls well short of federal pleading requirements. The reality is that Rippling does not own or control <deal.com>, by proxy or otherwise, and has nothing to do with that domain. Deel's claims should be dismissed.

#### 1.    *Deel's Claims Fail Because It Does Not Plausibly Allege that Rippling Owns, Controls, or Uses <deal.com>.*

The Anti-Cybersquatting Protection Act ("ACPA") applies only to a defendant who "registers, traffics in, or uses" a domain name. 15 U.S.C. § 1125(d)(1)(A)(ii); *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1006 (9th Cir. 2023); *Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1067 (E.D. Wash. 2015) ("Where a defendant does not register, traffic in, or use a domain name to infringe Plaintiff's mark, there can be no violation of the Anti-Cybersquatting Protection Act."). Likewise, the Lanham Act requires a plausible allegation that a defendant "use[d]" a domain name likely to cause confusion, mistake, or deception among consumers. 15 U.S.C. § 1114(1)(a) (trademark infringement); 15 U.S.C. § 1125(a) (false designation of origin). Deel must therefore adequately allege that Rippling owned, registered, controlled, or otherwise used the <deal.com> domain. It has not.

Deel's allegations of ownership and control are barebones, carefully hedged, and conclusory. Deel alleges simply that, "[u]pon information and belief", Rippling "owns, is the registrant of, or is an authorized licensee of the registrant" of <deal.com>, and that Rippling "has and continues to use" the <deal.com> domain name. Countercl. ¶¶ 398, 411, 419. Such threadbare

[9] *See* RJN, Ex. F.

27

recitations of the elements are insufficient. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts." *Eclectic Props.* 751 F.3d at 996 (quotation marks omitted). Here, Deel has failed to clothe its naked assertions with any modicum of the "factual enhancement" required "to cross 'the line between possibility and plausibility.'" *Id.* at 995.

The sole fact Deel alleges to support its theory of ownership is that <deal.com> redirects to Rippling's website. Countercl. ¶ 266. From this, Deel declares it a "virtual certainty" that Rippling either owns the domain or "at the bare minimum" is responsible for the redirection. *Id.* ¶ 266. But Deel's own equivocal and alternative phrasing underscores the speculative nature of that inference. And speculation is insufficient. It is well established that allegations that are "merely consistent" with liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props.*, 751 F.3d at 996. "Something more is needed"—a plaintiff must plead facts "tending to exclude the possibility that the alternative explanation is true." *In re Century Aluminum Co. Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). And many alternative explanations are available, *e.g.*, the domain may be controlled by an entity wishing to entice Deel to purchase it, and which chose to redirect traffic to Rippling to increase Deel's incentive.

To the contrary, Deel concedes that ***Rippling is not the listed domain registrant for <deal.com>***. *See* Countercl. ¶ 265. Instead, as Deel acknowledges and publicly available records confirm, a third party—Domains by Proxy, LLC—is the domain's registrant. *Id*; *see* RJN, Ex. G. Yet Deel pleads no facts identifying any agreement between that entity and Rippling, no facts showing any conduct by Rippling relating to the registration or control of <deal.com>, and no facts describing any mechanism by which Rippling supposedly "arranged" for the domain to redirect to Rippling's website. The bare fact that <deal.com> redirects to Rippling's website does nothing to exclude the possibility that a third party—not Rippling—controls the domain, and that Rippling has nothing to do with the redirection. Deel's failure to plead specific, non-conclusory facts is fatal. *See Lusida Rubber Prods., Inc. v. Point Indus., LLC*, 2016 WL 7469587, at *7 (C.D. Cal. 2016) (dismissing ACPA claim because plaintiff alleged no specific facts beyond "conclusory allegations" which "largely track[ed] the elements of [the] claim"); *Motul S.A. v. USA Wholesale*

28

*Lubricant, Inc.*, 686 F. Supp. 3d 900, 915 (N.D. Cal. 2023) (dismissing Lanham Act claim where plaintiff provided "few" and "insufficient" facts).

Courts have rejected materially identical speculation in this precise context. In *Sanchez v. Ghost Management Group, LLC*, the Ninth Circuit affirmed dismissal of trademark and unfair competition claims because the plaintiff "failed to allege sufficient facts to support his conclusory belief that [the defendant] was secretly acting in concert with [the domain registrant] to operate a competing website." 2023 WL 4363120, at *1 (9th Cir. 2023). There, as here, the plaintiff's own complaint identified a different entity—not the defendant—as the domain's owner and administrator, and the only allegations linking the defendant to the domain were "thin and unsupported" assertions that the domain owner and the defendant were operating "in concert." *See* Supp. Excerpt of Rec. at 82, *Sanchez v. Ghost Management Grp., LLC*, No. 22-55233 (9th Cir. July 8, 2022), Dkt. No. 9-2. There, as here, such "conclusory allegations, without supporting facts, do not state a claim that 'is plausible on its face'" *Sanchez*, 2023 WL 4363120 (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040-41 (9th Cir. 2011)).

### 2. *Rippling Does Not Own, Control, or Have Any Relationship to <deal.com>.*

Deel's claims fail because they are factually inadequate, and they are factually inadequate because they are false: Rippling does not own or control the <deal.com> domain—and never has. Rippling is not the registrant of <deal.com>, is not an authorized licensee of its registrant, and did not register, acquire, or arrange for the domain to redirect to Rippling's website. Nor does Rippling have anything to do with the redirection to its website. The only information Rippling possesses regarding the identity of the entity that currently owns or controls the <deal.com> domain is the same publicly available registration accessible to anyone—including Deel—which confirms that GoDaddy.com is the domain registrar and that the owner's actual identity is a third-party proxy service. *See* RJN, Ex. G.  Deel's false and factually inadequate claims concerning the domain should be dismissed.

### E.    Deel Fails to State Any Claim Against Parker Conrad.

Separate and apart from the manifold failings outlined above, Deel's claims against Conrad

29

fail for the additional reason that Deel alleges no *facts* to suggest his involvement in any of the conduct challenged in the counterclaims. Deel does not identify a single specific meeting Conrad attended, a single specific communication he sent, or a single specific directive he issued—on any particular date or occasion—in connection with any alleged predicate act. Deel's remaining allegations as to Conrad are conclusory and do not plausibly allege participation in any RICO predicate or any other counterclaim. That failure is even more pronounced given the fraud-based claims, which must satisfy Rule 9(b). *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (requiring plaintiffs to differentiate allegations and identify each defendant's role under 9(b)). Deel alleges generally only that Conrad exercised "pervasive and obsessive control," Countercl. ¶ 33, "acted as the ringleader," *id.* ¶ 365, "participated in the affairs" of the alleged enterprise, *id.* ¶ 367, and "conspired to defraud," *id.* ¶ 368. These are labels, not facts. There are no allegations of specific acts by Conrad or particularized involvement in any predicate offense.

The remaining allegations concerning Conrad demonstrate that his inclusion as a counter-defendant has no legal basis and is merely a cover to engage in character assassination. Indeed, most of Deel's allegations predate Rippling entirely and relate to Conrad's prior company, Zenefits (referenced at least 57 times across ¶¶ 16–25, 64–79). Deel relies on allegations about past conduct (*e.g.*, Conrad made "Zenefits unfairly competitive," *id.* ¶ 66), generalized culture critiques ("imported the same broken culture" from Zenefits to Rippling, *id.* ¶ 78), and commentary drawn from unnamed podcasts, *id.* ¶ 79. It then layers on character attacks—"lawlessness," *id.* ¶ 241; "revenge fantasy," *id.* ¶ 25; "infamous," *id.* ¶ 18. None of this bears on any alleged claim. Separate and apart from the claim-specific justifications for dismissal addressed above, all claims against Counter-Defendant Conrad should be dismissed as devoid of any factual basis.

## V. CONCLUSION

Deel's counterclaims should all be dismissed with prejudice. No amendment can cure Deel's attempt to attach liability to protected litigation conduct, and in light of the previous complaints filed in Delaware, Deel has already had multiple opportunities to plead versions of its false advertising and CFAA claims. Lastly, no amendment can change the fact that Rippling has nothing to do with <deal.com>. Deel's attempt to distract from its own misconduct should end now.

30

MOTION TO DISMISS COUNTERCLAIMS                    CASE NO. 3:25-CV-2576-CRB

6186984

Dated: May 8, 2026                                    KEKER, VAN NEST & PETERS LLP


                                            By:    /s/ Andrew F. Dawson
                                                   ELLIOT R. PETERS
                                                   ERIC H. MACMICHAEL
                                                   NICHOLAS GOLDBERG
                                                   ANDREW F. DAWSON
                                                   BENJAMIN D. ROTHSTEIN


                                                   Attorneys for Plaintiff/Counter-Defendant
                                                   PEOPLE CENTER, INC. D/B/A
                                                   RIPPLING, a Delaware corporation and
                                                   Counter-Defendant PARKER ROUSE
                                                   CONRAD

31