**RE: *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB
Joint Letter re: Rippling's Requests for Inspection**

Dear Judge Cisneros: This letter addresses the parties' dispute over Rippling's Requests for Inspection ("RFI") to Defendants Alex Bouaziz, Philippe Bouaziz, and Dan Westgarth ("Defendants"). *See* Ex. A. Fact Discovery closes January 15, 2027; expert discovery closes April 30, 2027; dispositive motions are due May 28, 2027; and trial has not yet been set.

**Rippling's position:** Rippling moves to compel Defendants to produce forensic data from the specific, identified devices that they used to exchange now-deleted messages with Keith O'Brien. *See* Ex. A. This Court previously denied Rippling's inspection requests to Deel without prejudice and expressly invited Rippling to return with "a more narrowly tailored request" once further discovery had occurred. ECF No. 189. Since then, the Individual Defendants have (1) identified the specific devices they used to exchange messages with O'Brien, and (2) admitted that some or all of those messages are now destroyed. The only way to locate the residual traces of the destroyed messages and piece them together is a forensic examination. *See* Declaration of Matthew Schroeder (Ex. B) ¶ 11. Rippling's current requests target the necessary data from the specific devices at issue and associated iCloud accounts—nothing more—and protect Defendants' privacy by giving their counsel a "first look" review of *any* user-generated files.

**Background:** Defendants systematically destroyed the key evidence in this case: Their electronic communications with O'Brien. They now *admit* that they paid O'Brien $6,000 in November 2024 and intentionally concealed the payment by routing it through Westgarth's wife's Revolut account; Alex thereafter received information about Rippling's products and customers from O'Brien through self-destroying Telegram messages; and all three Defendants communicated with O'Brien using Telegram and/or WhatsApp messages that are now destroyed. *See* Ex. C at 14; Ex. D at 7; Ex. E at 4; Ex. F at 9; *see also* ECF No. 68-11 ¶¶ 7–10. These facts are *undisputed*. Alex also used WhatsApp to contact customers, and Westgarth used WhatsApp to attempt to poach numerous Rippling employees, all based on information they received from O'Brien. ECF No. 57 ¶¶ 84, 109–111. And Deel's recently produced documents further confirm that Defendants used WhatsApp ███████████████████████████████████████████████████████████. *See* Ex. G at DEEL-00109816. Alex and Westgarth now admit that they deleted their WhatsApp communications with O'Brien *after* learning about the Irish High Court's evidence preservation order, by "leaving" their three-way WhatsApp chat with him. Ex. F at 27. None of the destroyed O'Brien messages are recoverable from *O'Brien's* phone, because he destroyed it on March 16, 2025 (at Defendants' instruction, per his sworn testimony). ECF No. 68-11 ¶¶ 19–34. Additionally, on April 25, 2025—more than a month after Bouaziz and Deel were under litigation holds—Alex Bouaziz destroyed his communications about this dispute with Ben Horowitz, the general partner of Deel's biggest investor, by ███████████████████████████, leading to a conspicuous 7-month hole in the conversation thread. Ex. H.

Defendants have identified the specific devices that they used to communicate with O'Brien and confirmed they created images of those devices and copies of associated iCloud accounts. But they categorically refuse to permit inspection by Rippling, instead demanding that *they* be in charge of selecting unspecified "metadata" for production. That is untenable. In nearly three months since Rippling served discovery on them, none of the Defendants have produced a single "metadata" file, and Defendants would not provide *any* information during the meet and confer about how they were looking for "metadata" or what they would produce.

On May 4, 2026, Deel served Rule 34 requests on O'Brien (now a Cross-Defendant) seeking "***All… data obtained… from Your iCloud account, mobile phone(s), or computer in connection with the Irish Proceedings.***" Ex. I at 13. Deel is a party to the Irish Proceedings and therefore knows that O'Brien's *entire* iCloud account and *all* electronic devices in his possession were preserved in Ireland, including his wife's computer and daughter's iPhone. Thus, Deel (which Defendants control) has now demanded that O'Brien produce an even greater scope of forensic data than what Defendants now refuse to produce to Rippling.

**Argument:** Rule 34(a)(1)(A) expressly authorizes a party to "***inspect, copy, test, or sample … any … electronically stored information***[.]" Rule 26(b)(1) sets the foundational scope: parties may

obtain discovery of any nonprivileged matter "relevant to any party's claim or defense and proportional to the needs of the case." In trade secrets cases involving stolen ESI, forensic inspection of operating system data from the devices used for the theft falls squarely within the scope of permissible discovery because that data reveals important evidence such as *when* and *how* the stolen ESI was transferred, accessed, disseminated, and/or deleted. *See* Ex. B ¶¶ 12–16; *see also, e.g.*, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) (granting inspection of devices in trade secret case because of "close relationship between [the] claims and … computer equipment" and noting that "[c]ourts have found that such access is justified in cases involving both trade secrets and electronic evidence"); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 660 (D. Or. 2019); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 448–49 (D. Conn. 2010) (same); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291, at *8 (E.D. Mo. Dec. 27, 2006) (same).

The need for forensic inspection is even more compelling where Defendants now admit that they exchanged self-destroying messages with Keith O'Brien and subsequently destroyed WhatsApp communications with him. Consequently, forensic data from their devices and iCloud accounts is now the *only* source for recovering residual traces of those communications—e.g., system logs, timestamps, cached content, thumbnails, application metadata, metadata from notifications, and forensic artifacts. Ex. B ¶ 15; *see, e.g.*, *Wright v. Bluman*, 2021 WL 8999537, at *3 (S.D. Fla. June 8, 2021) (inspection necessary to determine "whether any WhatsApp or text messages can be recovered"); *Lewis v. Archer Daniels Midland Co.*, 2018 WL 6591999, at *2 (E.D. La. Dec. 14, 2018) (inspection appropriate to "recover deleted materials" (quotation marks omitted)).

Given all of the foregoing, the factors impacting Rule 26(b)(1)'s proportionality analysis weigh heavily in favor of inspection. The discovery is highly relevant to a core issue: whether Defendants stole Rippling's trade secrets through their now-destroyed communications with Keith O'Brien. The requested inspection is critical to resolving that issue, because it is the only way to find, analyze, and learn from the residual digital traces of the lost communications. Rippling cannot get the data any other way, because O'Brien's iPhone is destroyed. The burden and expense to Defendants is minimal, because the devices have already been gathered and imaged.

None of Defendants' counterarguments are persuasive. ***First***, relying on *PlayUp, Inc. v. Mintas*, they argue that Rippling has not shown sufficient *litigation misconduct* to warrant forensic investigation. But *PlayUp* supplies the wrong legal standard. It addressed whether forensic inspection was appropriate *in a contract dispute* to remedy omissions in document productions. *See* 350 F.R.D. 47, 53 (D. Nev. 2025). *PlayUp* did not consider the issue before this Court: whether to order forensic inspection in a *trade secret case* involving *electronic exfiltration* through *destroyed messages*. Where, as here, inspection is necessary to uncover evidence of the what, when, and how of the exfiltration scheme, the inquiry does not turn on litigation misconduct or spoliation. *See, e.g., Ainstein AI, Inc. v. ADAC Plastics, Inc.*, 2023 WL 3568661, at *5 (D. Kan. May 19, 2023) (rejecting argument that "forensic imaging is only appropriate where there is a 'strong showing' that a party has defaulted in its obligations to preserve evidence," explaining that "forensic imaging is also allowed … when trade secrets are involved, and the imaging is of data files relating to the alleged trade secret violations[,]" and ordering inspection of relevant devices). And regardless, Rippling *has* demonstrated spoliation. Alex Bouaziz and Westgarth admit they deleted their WhatsApp messages with O'Brien *after* the Irish High Court entered an evidence preservation order. And more than a month into these proceedings, Alex Bouaziz turned on "disappearing messages" in a WhatsApp conversation with his investor discussing the lawsuit. Ex. H; *see In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993–94 (N.D. Cal. 2023) (use of auto-deletion while under litigation hold indicated "inten[t] to subvert the discovery process").

***Second***, Defendants assert their general privacy interests. But Defendants, by their own *admitted* conduct, placed their devices squarely at issue: They admit they used the devices to exchange messages, over a period of *five months*, with a *Rippling employee* whom they were *paying*; that they received information about *Rippling's products and customers* through those messages; and that the messages are now *destroyed*. Defendants' privacy interests are protected by the protocol

set forth in Rippling's requests, under which Defendants' counsel would conduct a "first look" review of any user-generated files—i.e., the files containing the "private health information, family photos" and other data mentioned by Defendants below. *See* Ex. A at 5–7; *see, e.g.*, *Brocade*, 2012 WL 70428, at *3 (ordering inspection where defense counsel were permitted first-look review of user files); *Lewis*, 2018 WL 6591999, at *3 (similar); *In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) (overruling privacy objection because "the protections of the Protocol lessen the intrusion"). Defendants can also designate the data under the Protective Order, as may be appropriate. They have not articulated any reason why Rippling's protocol and the PO are insufficient to address their concerns, and they have refused to negotiate specifics. Instead, they categorically object to *any* inspection by Rippling, while Deel (which they control) demands *even more* data from O'Brien without offering any privacy protection *at all*. *See* Ex. J. The Court should ascribe little weight to Defendants' purported privacy concerns.

*Finally*, Defendants assert that it should be enough for them to produce "documents" and unspecified "metadata" from their devices. This is not a suitable alternative. As Rippling's forensics expert explains, reconstructing fragments of deleted communications requires iterative searching and analyzing across numerous data sources, and the scope of artifacts that may contain relevant data cannot reliably be identified in advance. Ex. B ¶¶ 14–16. Defendants would put a fox in charge of the henhouse by deciding for themselves what "metadata" to produce. This would deprive Rippling of the fair opportunity to search and analyze data that is already available to Defendants. *See Brocade*, 2012 WL 70428, at *3 (producing party may not "set the conditions of the inspection unilaterally nor to select the person who will perform it"). Nor would Defendants' approach be feasible, even if it were fair (it is not). In nearly three months since Rippling served discovery on them, Defendants have not produced *any* "metadata," and in the meet and confer, they would not explain how they are looking or what they will produce. The absence of any expert declaration in support of Defendants' position confirms that they are not prepared, even now, to provide that information. The Court should compel Defendants to produce the requested forensic data for inspection by Rippling, subject to the protocol Rippling has set forth.

**The Individual Defendants' Position**:  The inspection of a party's devices by his opponent is an "***extraordinary remedy that requires substantial support.***"  *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2013 WL 1366041, at *2 (N.D. Cal. Apr. 3, 2013).[1]  Applying this standard, the Court already denied Rippling's request to Deel to inspect the ***very same*** devices it seeks to inspect here.  *See* ECF 189.  The Court held that Rippling could refresh its request "[d]epending on what is further revealed through discovery," *id.*, but Rippling cites no new developments—its motion relies on the same points Rippling previously raised, ECF 178 at 2.  Specifically, Rippling again seeks to inspect images of the devices "used to communicate" with Keith O'Brien, i.e., the laptops and phones of the CEO, former CFO, and COO of its biggest competitor.  These devices contain these individuals' most sensitive health, financial, and unrelated business information and almost no relevant information.  Outside counsel for the Individual Defendants have informed Rippling that, per standard practice, these devices were forensically imaged by e-discovery firms and that counsel will produce documents and data from those images in response to Rippling's RFPs.  Defendants also provided Rippling with extensive detail about the devices, including their operating systems, when they were imaged, the types of images that were created, what data and are available on the images, and whether backups exist.  *See, e.g.*, Ex. K; Ex. C at 11, 14–16.

To support its motion, Rippling cites its own allegations that Defendants paid O'Brien to act as a "spy" at Rippling and encouraged him to use ephemeral messaging applications.  It also cites as "undisputed" facts that are ***very much*** disputed—Defendants never "admitted" to destroying communications or concealing any payment.  Repeating O'Brien's lies *ad nauseum* does not make them true, nor does Defendants' acknowledgment that they used common ephemeral messaging applications mean they "admitted" to destroying evidence.  These disputed, overblown assertions

---

[1] Unless noted, internal quotation marks and citations are omitted and emphases are added.

cannot be used to justify inspection of devices.  The Court should deny Rippling's request.

Because inspection is an "extraordinary remedy," *Vasudevan Software*, 2013 WL 1366041 at *2, it is not granted as "a matter of right," *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 52 (D. Nev. 2025). Courts are reluctant to allow "forensic examination of an opposing litigant's electronics," *id.* at 53, because "litigants are generally responsible for preserving [and producing] relevant information on their own," *id.* at 53 n.5.  Courts thus consider several factors before allowing inspection: (1) "the responding party has withheld requested information," (2) "the responding party is unable or unwilling to search for the requested information," (3) "the extent to which the responding party has complied with discovery requests," and (4) "the examination will reveal relevant information that is proportional to the needs of the case given any possible privacy or confidentiality concerns." *Id.* at 52–53.  Rippling ignores these factors, which uniformly weigh against inspection.

*First*, Defendants have not withheld discoverable information.  The devices were imaged, and those images have been preserved.[2]  Outside counsel will coordinate the production of documents responsive to Rippling's requests, as occurs in every federal case.  Rippling's assertion that inspections are routine in trade secret cases is contrary to law.  The mere assertion of a "trade secrets claim does ***not*** give [Rippling] free reign to examine all of [Defendants'] electronic devices." *FCA US LLC v. Bullock*, 329 F.R.D. 563, 568 (E.D. Mich. 2019); *see also A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 908–09 (S.D. Tex. 2015) (denying inspection where there were "substantial questions" about "whether trade secrets existed" and defendants complied with their "obligation to search [their records] and produce" requested data); *Source One Direct, Inc. v. Digitas, Inc.*, 2011 WL 13319641, at *6 n.8 (N.D. Ga. June 29, 2011) ("[T]here must be misconduct in responding to discovery before direct access is appropriate.").  Nor can Rippling's claim be squared with its own cases. *See Ainstein AI, Inc.*, 2023 WL 3568661, at *5 (plaintiff only moved for the creation, not examination, of images); *In re Premera Blue Cross*, 329 F.R.D. at 670 (denying inspection); *Brocade*, 2012 WL 70428 at *3 (granting inspection where defendant "recycled" hard drive containing plaintiff's "source code files" during litigation); *Genworth*, 267 F.R.D. at 449 (granting inspection after defendants refused to image devices); *Ameriwood*, 2006 WL 3825291 at *3 (granting inspection where defendant did not produce a responsive document).

Rippling also claims it needs a "a fair opportunity to search and analyze" Defendants' devices so its expert can perform his preferred analysis.  Rippling provided no notice that it would file an expert declaration, to which Defendants cannot respond in two days; if the Court decides to consider the declaration, Defendants request time to prepare a response.  In any event, Rippling's argument is contrary to law.  Rippling is not "entitled" to an inspection; in federal litigation each party searches its own documents. *PlayUp*, 350 F.R.D. at 53 n.5; *A.M. Castle & Co.*, 123 F. Supp. 3d at 909 ("That [plaintiff] is skeptical, without anything else to support its request for an intrusive fishing expedition in Defendants['] electronic devices[,] is insufficient to support such a drastic discovery request."); *Memry Corp. v. Kentucky Oil Tech., N.V.*, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007) (denying inspection because "a mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason").  Nor does Rippling's puzzling (and baseless) distrust of Defendants' counsel justify an inspection.  Permitting counsel to manage discovery from Defendants' devices is not putting "a fox in charge of the henhouse"—it is standard practice.  Similarly, the desire of Rippling's expert—a person under Rippling's exclusive control—to "search for and/or reconstruct data" cannot justify an inspection; if it did, inspections would happen in virtually every case, turning an "extraordinary remedy" into an ordinary one.

As for the *second* and *third* factors, the relevant devices and accounts have been preserved. Defendants (i) have said they will produce discoverable documents from these devices (and already provided detailed responses to Rippling's requests without an extension), and (ii) will begin producing responsive documents shortly.  Rippling complains that Defendants no longer

---

[2] No "full file system image" was created of Dan's phone or MacBook because no tool can do so for the developer beta version of iOS on the phone and no tool available when the MacBook was imaged could do so.

have all communications with O'Brien because they "destroyed" such messages. This argument is based on a false premise. As is common in modern business, Defendants used ephemeral messaging applications. The use of such applications before a duty to preserve arose is not "destruction of evidence." Parties are free to use systems that automatically delete communications after a period of time. *See, e.g.*, *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 992 (N.D. Cal. 2023) (absent a duty to preserve, "Google was perfectly free to set up an internal IM service" with a "24-hour default deletion"). If litigation later occurs, use of those systems cannot support an inspection request, particularly where, as here, the responding party is producing material from the devices at issue. In 2024 and early 2025, Defendants had no duty to preserve documents. This case was filed on March 17, 2025, and Rippling sent a preservation notice the next day. By that time, any ephemeral messages from late 2024 or early 2025 already had been deleted by the relevant application. Rippling's cases are in accord. In *Wight*, the Court denied an inspection where the defendant had deleted messages before a duty to preserve attached. 2021 WL 8999537 at *2. Rippling describes *Lewis* as ordering an inspection "to discover deleted materials," conspicuously omitting that "the requesting party must show that the responding party has somehow ***defaulted in its obligation to search its records and produce the requested data*** and that the responding party's ***production has been inadequate***." 2018 WL 6591999, at *2.

Nor do Rippling's other spoliation claims justify an inspection. Rippling cites (1) O'Brien's (false) assertion that a non-Defendant Deel employee told him to destroy his phone; (2) its allegation that Alex and Dan left a WhatsApp chat with O'Brien; and (3) a WhatsApp chat produced by a Deel investor purporting to show that Alex turned on the "disappearing messages" feature for a chat on April 25, 2025. But O'Brien's destruction of ***his*** phone—the circumstances of which are heavily disputed—does not merit an inspection of ***Defendants'*** devices, which were not destroyed. Nor did Defendants instruct O'Brien to destroy evidence; that is one of O'Brien's serial lies. Rippling similarly does not explain how exiting a WhatsApp chat resulted in destruction of any messages— Defendants disagree that exiting a WhatsApp chat produces this result. And Alex's use of the "disappearing messages" feature in a single chat with an investor is irrelevant to whether Defendants have data on their devices about communications with O'Brien that they are unwilling or unable to produce—they do not. Finally, Rippling's comparison of its request to a request by Deel for documents and data O'Brien produced in Ireland falls flat. Deel did not request an inspection—its RFP merely seeks production in this case of materials O'Brien previously produced in the Irish proceedings, leaving O'Brien in control of both productions.

*Fourth*, Defendants' privacy concerns outweigh any speculation that an inspection could reveal relevant information that will not otherwise be produced. Rippling seeks to inspect the personal devices of the executive officers of a competitor, which contain these individuals' most sensitive information. *See J.T. v. City & Cnty. of San Francisco*, 2024 WL 4361579, at *6 (N.D. Cal. Oct. 1, 2024) ("As the Supreme Court has recognized, '[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold . . . the privacies of life.'"). Rippling claims the inspection is not invasive because its protocol would allow Defendants a "first look" before Rippling's counsel and expert access the data. But Rippling's request sweeps in every piece of data on Defendants' devices. And, the declaration makes clear that Rippling's expert intends to perform an expansive search for data on those devices, which contain private health information, privileged communications, materials relating to other businesses, and other unrelated data. Ex. B at ¶ 13. No one—especially a competitor whose CEO has publicly discussed his "revenge fantasy" against Deel and its backers—should have access to this information. And, as Defendants noted in their objections to Rippling's request, the data on these devices are also protected from disclosure by the laws of Israel (such as Protection of Privacy Law (5741-1981)) and the United Arab Emirates (such as Federal Decree by Law No. (45) of 2021 and Federal Decree by Law No. (34) of 2021). If Rippling or its expert wish to know specific information about Defendants' devices or the data on them, it can serve an interrogatory or RFP and Defendants will respond in the ordinary way. There is no data Rippling could uncover through an inspection that Defendants have not preserved and, subject to the normal objections and search methodologies that are part of every litigation, will not produce.

Respectfully submitted,

*/s/ Eric H. MacMichael*
Eric H. MacMichael
Attorney for Plaintiff People Center, Inc.
d/b/a Rippling

*/s/ Kenneth J. Brown*
Kenneth J. Brown
Attorney for Defendants Alex and Philippe
Bouaziz

*/s/ David R. Eberhart*
David R. Eberhart
Attorney for Defendant Dan Westgarth

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

*/s/ Eric H. MacMichael*
Eric H. MacMichael
Attorney for Plaintiff People Center, Inc.
d/b/a Rippling