RE: *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB
**Letter Brief re Rippling's Interrogatories 7 & 8**

**Dear Judge Cisneros:** This letter addresses Deel's refusal to respond to Rippling's Interrogatories 7 and 8, in violation of the Court's order and the parties' prior agreement. Fact discovery closes January 15, 2027; expert discovery closes April 30, 2027; dispositive motions are due May 28, 2027; and trial has not yet been set.

**Rippling's Position:** On February 3, 2026, the parties reached agreement regarding Deel's response to Interrogatory Nos. 7 and 8, which seek identification of actual or potential customers Deel contacted after September 1, 2022, and related information. Under that agreement, Rippling would provide a list of customers whose information Keith O'Brien accessed during the spying scheme, and Deel would respond to Rogs 7 and 8 for any customers on that list whom Deel contacted after October 31, 2024. Rippling upheld its end, compiling the list at considerable burden and expense and providing it on March 25. After ignoring Rippling for six weeks, Deel has reneged. Rippling offered to moot this dispute if Deel honored its commitment; Deel refused. Rippling requests the Court to enforce the parties' prior agreement and order Deel to respond by May 22, 2026.

**Background:** Keith O'Brien has testified that he helped Deel steal information about Rippling's actual and prospective customers by searching and previewing Slack channels, videorecording his search results, and sending the videos to Deel as attachments to self-destroying Telegram messages—and that he did this multiple times per day for nearly five months. Because those messages are gone, Rippling served Rogs 7 and 8 on May 30, 2025 (nearly a year ago) to identify customers whom Deel contacted and whose information came from Rippling's systems.

On November 7, 2025, the Court overruled Defendants' objections and ordered Deel to provide complete responses to Rogs 7 and 8 by November 25. ECF 148. Deel appealed. On January 5, 2026, Judge Breyer ordered the parties to go "back to Judge Cisneros for a determination on the scope of Interrogatories 7 and 8." ECF 162 at 4. Since then, Rippling has gone to extraordinary lengths to avoid burdening this Court with another dispute about these Rogs, to no avail.

On a January 13 meet and confer, Rippling proposed limiting the response to customers Deel contacted during or after the spying scheme. Ex. 3 at 3. Deel rejected that proposal. Ex. 4 at 2. Instead, on January 28, Deel made the following offer: "***Rippling [should] provide Deel with a list of the Rippling customers that it claims O'Brien had access to. Upon receiving that list, we can then provide responsive information on those specific customer communications from October 31, 2024 onward (to the extent they exist), without prejudice to Rippling's reservation of rights to expand the list to additional companies should further information be discovered by either party.***" Ex. 5 at 2. Rippling accepted this offer on a February 3 meet and confer. *See* Ex. 6 at 4–5.

Rippling flagged on that call that the list would likely include thousands or tens of thousands of customers. Rippling explained Deel could readily run the list against its customer relationship database ("CRM") to generate the required information. On February 9, Deel complained that "tens of thousands" was disproportionate to the customers previously identified in Rippling's pleadings and search terms. *Id*. Rippling responded with a detailed email on February 11, explaining Rippling's process for compiling the list and why, given the nature of the spying scheme, Rippling anticipated those numbers. *Id*. at 2–3. Rippling then said, in crystal clear terms: "***If Deel is reneging on its offer to use that list to respond to Rogs 7 and 8—because of the anticipated total number of companies, or the fact that Rippling (obviously) does yet not know the specific subset of those companies that O'Brien transmitted to Deel, or for some other reason—please state so clearly and in writing by close of business on February 13, and provide Deel's complete reasons, so that we can conclude our meet and confer.***" *Id*. at 3.

Deel neither reneged nor concluded the meet and confer, so Rippling went to work compiling the list. Rippling carefully reviewed more than 300 Slack channels—many containing thousands or tens of thousands of unique customer-related messages viewable to O'Brien during the spying scheme—plus voluminous Google Drive documents and Salesforce pages, and assembled a preliminary list. This process alone took weeks. Rippling then manually de-duplicated the list and removed "false positives," which, given the list's size, took weeks more. On March 25, 2026,

Rippling produced the list to Deel. Ex. 7 at 2–3. As Rippling flagged nearly two months prior, the list contained approximately 58,000 actual and prospective customers. Rippling's cover email detailed its good-faith, exhaustive compilation process. *Id*. Rippling requested Deel to confirm, pursuant to the parties' agreement, that it would supplement its Rog 7 and 8 responses, using Rippling's list, by April 24, 2026.

Radio silence ensued. Rippling followed up on April 2, stating it would assume, absent further word, that Deel would supplement on April 24. *Id*. at 2. Still no response. Then, on April 23—the day before the deadline—Deel's outside counsel (Skadden) informed Rippling that the two Skadden lawyers previously "handling the discovery inquiries" were leaving the firm. *See* Ex. 8 at 5–6. The deadline passed with no supplemental responses. Rippling immediately demanded a meet and confer, then re-sent the full correspondence on this issue to Skadden in advance of conferring, even though numerous Skadden lawyers were copied on each piece of correspondence. *Id.* at 2, 4.

At the meet and confer, Deel claimed it had run all ~58,000 customers as *keywords* against its entire email collection and (unsurprisingly) got "eight million" hits. Rippling explained Deel should run the list against its CRM, not its email collection—as the parties had discussed *nearly two months earlier*. In other words, Deel had not even attempted to run the list against its CRM. Deel said it would "look into" Rippling's request and provide its position by May 1, but again missed that deadline. On May 4, after four months of trying to resolve this, Rippling stated that unless Deel agreed to run the list against its CRM, Rippling would seek relief on May 8. Ex. 9 at 8.

Late on May 5, Deel stated it was "exploring…what can reasonably be done here" while reserving its right to withhold complete responses based on "burdens as consistent with the FRCP." *Id.* at 5. Deel also said, for the *first* time, that Rippling's HC-AEO designation was preventing in-house Deel employees from running the list on their CRM. *Id*. The next morning, Rippling responded that the designation posed no problem because an authorized e-discovery vendor or third party could export the data from Deel's CRM, and, to move past the issue, Rippling would permit "a designated Deel IT employee to perform the search so long as that person is willing to sign the protective order and agree to reasonable measures to protect Rippling's confidential and trade secret information." *Id*. at 3. Rippling added that if the designation were a real issue (rather than a post hoc excuse), Deel should have flagged it on March 25, not May 5, after blowing multiple deadlines. Rippling stated it would file this letter brief on May 8, but that Deel could moot this dispute by committing to run the list on its CRM and respond to Rogs 7 and 8 accordingly, as it had promised. *See id.*

**Deel refused to participate in this joint letter brief:** After Deel refused to commit to running the list on its CRM, Rippling sent its section of this brief on May 6 and asked Deel to provide its portion by May 8 for filing that day. *See id.* at 2–3, 8. On a May 7 call, Deel stated it would not provide its section because, in its view, the issue was not ripe. Deel also refused to commit to providing information responsive to Rogs 7 and 8 for Rippling's list. Deel said that sometime next week, two Deel IT personnel would "test out" running the list through Deel's CRM, and Deel would "try" to report results thereafter. Rippling asked whether Deel had considered a third-party vendor to extract the information; Deel refused to answer. Rippling asked what efforts Deel had made since March 25; Deel again refused.

Deel blamed its delay on the two Skadden lawyers' leaving at the end of April. Rippling responded that: (i) Skadden has numerous lawyers who have worked on this case from the start; (ii) well after the departures, Deel continued to delay by ignoring the May 1 deadline and refusing to provide the information it agreed to provide in February; and (iii) since the departures, Deel has propounded three new sets of *offensive* discovery (over 300 RFPs) against Rippling and the Cross-Claim Defendants, sent a 16-page letter questioning discovery responses Rippling served less than two weeks ago, and served a third-party subpoena. *See id.* at 2–3, 6–8. In other words, Skadden has the bandwidth and institutional knowledge to propound discovery and raise offensive issues, yet cannot provide information promised more than three months ago. This is gamesmanship.

**Argument:** This dispute is the latest troubling example of Deel ignoring orders from this Court and Judge Breyer and helping itself to months of delay in responding to interrogatories seeking critical information. Deel committed to respond to Rogs 7 and 8, as limited by Rippling's list, in January. Rippling provided clear, early notice that the list would be large and explained why. Rippling relied on Deel's commitment and invested significant resources developing the list. Rippling served it on Deel six weeks ago. Deel said nothing and sat on its hands for five weeks— despite multiple emails from Rippling requesting confirmation that Deel would supplement its responses by April 24—before reneging on its firm commitment and raising new, unspecified "burden" objections and a purported logistical concern with Rippling's HC-AEO designation. These objections are untimely by *months*, and serve only as proof of Deel's unjustified delay.

The information requested by Rogs 7 and 8 is highly relevant. It is also a gating issue in discovery, because identifying the subset of Rippling's customers that Deel contacted during or after the spying scheme is necessary to allow Rippling to serve targeted follow-up discovery and minimize burden on both sides. Rippling has been waiting for responses for nearly a year. Deel's time to raise generalized burden objections is long gone. If there is any technical issue to running Rippling's list on its CRM, Deel should already be working on it, and two more weeks should be more than enough time to resolve it. The Court should not entertain any further delay on this issue and should order Deel to provide complete supplemental responses to Rogs 7 and 8, in accordance with the parties' agreement, by May 22, 2026.

Deel's refusal to participate in this letter brief does not change this result. Deel cannot stall an important discovery dispute by unilaterally declaring it unripe and refusing to participate in the letter brief. The Court's Civil Standing Order provides that: "Unjustified delay or refusal to participate meaningfully in the formal meet and confer or in the preparation of the joint letter may be grounds for entry of an order adverse to the delaying or non-participating party." Civil Standing Order at 5. That is this case in a nutshell. Indeed, if Deel's conduct does not amount to "unjustified delay" and/or a "refusal to participate meaningfully" in the meet and confer and preparation of the joint letter, then it is difficult to imagine what could. Deel has delayed for months, and its post hoc excuses do not withstand scrutiny. At this point, the only thing that can reasonably assure that Deel will respond to this critical, gating discovery is an order from the Court.

Respectfully submitted,

*/s/ Eric H. MacMichael*
Eric H. MacMichael
Attorneys for Plaintiff Rippling