KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff/Counter-Defendant
PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware
corporation and Counter-Defendant PARKER ROUSE CONRAD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1 – 100,<br><br>Defendants. | Case No. 3:25-CV-2576-CRB<br><br>**COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS**<br><br>Date Filed:          March 17, 2025<br>Am. Compl. Filed:  June 5, 2025<br>Judge:               Hon. Charles R. Breyer<br>Courtroom.:          6<br><br>Hearing Date:      July 24, 2026<br>Hearing Time:      10:00 AM |
| DEEL, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation; PARKER ROUSE CONRAD, an individual; and KEITH O'BRIEN, an individual; and DOES 1-100,<br><br>Counter-Defendants. | |

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 24, 2026 at 10:00 AM, in the courtroom of the honorable Charles R. Breyer, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, Counter-Defendants People Center, Inc. D/B/A Rippling ("Rippling") and Parker Rouse Conrad will, and hereby do, respectfully move pursuant to the Federal Arbitration Act ("FAA") for an order compelling arbitration of Counterclaimant Deel, Inc.'s ("Deel") first counterclaim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); second counterclaim for Conspiracy to Violate RICO; third counterclaim for violation of the Computer Fraud and Abuse Act ("CFAA"); and fourth counterclaim for violation of the California Comprehensive Data Access and Fraud Act ("CDAFA"). Counter-Defendants further respectfully move for an order staying all proceedings on those arbitrable csslaims and issues pending the completion of arbitration, and to the extent any non-arbitrable portions of Deel's first and second RICO counterclaims survives Rippling and Conrad's motion to dismiss, the Court should stay those portions pending the arbitration.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof filed herewith, the declaration of Nicholas S. Goldberg, and exhibits attached thereto, the Proposed Order submitted in connection with the motion, all other pleadings and papers on file in this action, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing of this matter.

## SUMMARY OF ARGUMENT

Per this Court's Standing Order, Counter-Defendants Rippling and Parker Conrad provide the following summary of argument. This Motion seeks to compel arbitration of Deel's first, second, third, and fourth counterclaims and stay proceedings on those claims pending completion of arbitration for the following reasons:

Deel's first four counterclaims are premised on Counter-Defendants' access and use of Deel's online platform in violation of Deel's Terms of Service. Those same Terms of Service contain a broad, mandatory arbitration provision requiring that "any dispute, controversy, or

i

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

claim . . . relating in any way to your use of the Services" be resolved through binding arbitration. The Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Deel's arbitration clause is exceptionally broad: the Ninth Circuit has held that provisions covering disputes "arising out of or relating to" an agreement are broad in scope, and under such clauses, the "factual allegations need only 'touch matters' covered by the contract" to require arbitration. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *Cape Flattery Ltd. v. Titan Mar.*, LLC, 647 F.3d 914, 922 (9th Cir. 2011); Argument § A. Deel's arbitration clause covering disputes "relating in any way to" a "use of" the services is even broader. *See Taylor v. Inflection Risk Sols., LLC*, 808 F. Supp. 3d 981, 986–87 (N.D. Cal. 2025).

Deel's third and fourth counterclaims for violation of the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Data Access and Fraud Act ("CDAFA") fall squarely within this provision. The CFAA and CDAFA claims are based on allegations that Counter-Defendants, acting through Brett Johnson, "intentionally accessed Deel's protected computer without authorization or exceeded any authorized access"—in other words, that they used Deel's platform in ways the Terms of Service prohibit. The CDAFA is California's state-law analogue to the CFAA, and courts regularly analyze these claims in parallel. *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018); *Luviano v. Multi Cable, Inc.*, No. CV-15-05592-BRO (FFMx), 2016 WL 11220483, at *5 (C.D. Cal. Nov. 14, 2016). Courts consistently compel arbitration of CFAA and CDAFA claims in these circumstances. *See, e.g., Torbit, Inc. v. Datanyze, Inc.*, 2013 WL 572613, at *3 (N.D. Cal. Feb. 13, 2013) (CFAA); *McCray v. Microsoft Corp.*, 2026 WL 83990, at *5 (W.D. Wash. Jan. 12, 2026) (same); *Bender v. Twilio Inc.*, No. 24-CV-04914-AMO, 2025 WL 2308484, at *8 (N.D. Cal. Aug. 11, 2025) (CDAFA); Argument § A(1).

Deel's first and second counterclaims for violation of and conspiracy to violate RICO must likewise be arbitrated to the extent they rest on the same platform-access allegations. The access-based RICO predicates regurgitate Deel's CFAA and CDAFA allegations and are bound

ii

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

up with Deel's Terms of Service. *See Cho v. Casnak LLC*, 2022 WL 16894869, at *6 (C.D. Cal. Sept. 7, 2022). Thus, the Court should compel arbitration of the arbitrable portions of RICO claims. *See Baker v. Paine, Webber, Jackson & Curtis, Inc.*, 637 F. Supp. 419, 422 (D.N.J. 1986); *Reiner v. Paneth*, 808 F. Supp. 3d 431, 452, 472 (E.D.N.Y. 2025); Argument § A(2).

The Court must stay all arbitrable claims pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). And if any non-arbitrable portion of Deel's RICO counterclaims survives Counter-Defendants' concurrently filed motion to dismiss, the Court should exercise its discretion to stay those portions as well because the arbitrable and non-arbitrable portions overlap in fact and law, and piecemeal adjudication would be inefficient and risk inconsistent results. *See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303–04 (N.D. Cal. 2018); *Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, 2024 WL 4634059, at *11 (N.D. Cal. Oct. 29, 2024); Argument § B.

If Deel raises any dispute concerning arbitrability, that issue too should be compelled to arbitration. Deel's Terms of Service incorporate JAMS Rules, which reserve "[j]urisdictional and arbitrability disputes" to the arbitrator. Under binding Ninth Circuit law, Deel's incorporation of JAMS Rules "constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *See Patrick v. Running Warehouse*, *LLC*, 93 F.4th 468, 481 (9th Cir. 2024); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 (9th Cir. 2022); Argument § C.

Finally, Counter-Defendants Rippling and Conrad may enforce Deel's arbitration clause. Under agency principles, a nonsignatory may compel arbitration where the claims arise from an agent's actions taken at the nonsignatory's direction—and Deel itself has alleged that Johnson used the platform as Rippling and Conrad's agent. *Young v. Hyundai Motor Am. Inc.*, 2024 WL 5154070, at *4 (C.D. Cal. Nov. 11, 2024). Equitable estoppel likewise applies because Deel's counterclaims are "intimately founded in and intertwined with" the Terms of Service, and Deel cannot rely on the Terms of Service as the source of Counter-Defendants' alleged wrongdoing while simultaneously disavowing the arbitration obligation those Terms impose. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021); Argument § D.

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................................1

II. BACKGROUND ................................................................................................................2

    A. Use of Deel's Platform is Governed by Terms of Service Containing a Broad Mandatory Arbitration Clause.......................................................................2

    B. Deel's First Four Counterclaims are Premised on Counter-Defendants' Alleged Use of Deel's Platform. ..........................................................................3

III. ARGUMENT......................................................................................................................5

    A. The Court Must Compel Arbitration of Deel's Third and Fourth Counterclaims and the Access-Based Portions of Deel's First and Second Counterclaims. ..................................................................................................5

        1. Deel's Third and Fourth Counterclaims for Violation of the CFAA and CDAFA Must Be Arbitrated. ..............................................................6

        2. Deel's First and Second Counterclaims for Violation of and Conspiracy to Violate RICO Must Be Arbitrated to the Extent They Are Based on Alleged Access to Deel's Services......................................8

    B. The Court Must Stay the Arbitrable Issues and Should Exercise its Discretion to Stay the Remaining Portions of Deel's RICO Counterclaims If They Are Not Dismissed. .................................................................................10

    C. If There is Any Dispute Concerning Arbitrability, Deel's Terms of Service Delegate That Issue to the Arbitrator....................................................................12

    D. Counter-Defendants May Compel Arbitration Under Deel's Terms of Service...................................................................................................................13

IV. CONCLUSION.................................................................................................................14

6223037

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)................................................................................................5

*Baker v. Paine, Webber, Jackson & Curtis, Inc.*,
    637 F. Supp. 419 (D.N.J. 1986) ........................................................................9, 12

*Bender v. Twilio Inc.*,
    2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ....................................................7, 8

*Cape Flattery Ltd. v. Titan Mar., LLC*,
    647 F.3d 914 (9th Cir. 2011) ..................................................................................6

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022) ..........................................................................12, 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................................................5

*Cho v. Casnak LLC*,
    2022 WL 16894869 (C.D. Cal. Sept. 7, 2022) .......................................................9

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)................................................................................................5

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ................................................................................13

*Galgon v. Epson Am., Inc.*
    2021 WL 4513638 (C.D. Cal. June 16, 2021) ........................................................8

*GEICO v. Stelton Radiology Corp.*,
    2022 WL 7991093 (D.N.J. Oct. 14, 2022)............................................................10

*Goziker v. U.S. Dep't of Just.*,
    2025 WL 2220025 (D.D.C. Aug. 5, 2025) ..............................................................1

*Hunt v. Meta Platforms, Inc.*,
    735 F. Supp. 3d 1133 (N.D. Cal. 2024) ................................................................14

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
    656 F. Supp. 830 (N.D. Ill. 1987) .........................................................................10

*Luviano v. Multi Cable, Inc.*,
    No. CV-15-05592-BRO, 2016 WL 11220483 (C.D. Cal. Nov. 14, 2016)..............7

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

*McCray v. Microsoft Corp.*,
2026 WL 83990 (W.D. Wash. Jan. 12, 2026)................................................................................8

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........................................................................................................12

*Reiner v. Paneth*,
808 F. Supp. 3d 431 (E.D.N.Y. 2025) ...........................................................................................9

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) .......................................................................................10

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ........................................................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ..................................................................................................6, 7, 9

*Smith v. Spizzirri*,
601 U.S. 472 (2024)...................................................................................................................1, 10

*Taylor v. Inflection Risk Sols., LLC*,
808 F. Supp. 3d 981 (N.D. Cal. 2025) ......................................................................................6, 7

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .........................................................................................7

*Torbit, Inc. v. Datanyze, Inc.*,
2013 WL 572613 (N.D. Cal. Feb. 13, 2013) .................................................................................7

*Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*,
2024 WL 4634059 (N.D. Cal. Oct. 29, 2024).............................................................................10

*Traudt v. Rubenstein*,
2024 WL 5120050 (D. Vt. Dec. 16, 2024) ....................................................................................8

*Trinchitella v. Am. Realty Partners, LLC*,
2016 WL 4041319 (E.D. Cal. July 27, 2016) ........................................................................10, 12

*U.S v. Neumann Caribbean Int'l, Ltd.*,
750 F.2d 1422 (9th Cir. 1985) .....................................................................................................12

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
46 F. App'x 412 (9th Cir. 2002) ..................................................................................................12

*Young v. Hyundai Motor Am. Inc.*,
2024 WL 5154070 (C.D. Cal. Nov. 11, 2024)..............................................................................13

6223037

**State Cases**

*Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1340 (2023) ..............................................13

**Statutes**

9 U.S.C. §§ 1–16.....................................................................................................................5

9 U.S.C. § 3 ..........................................................................................................................10

18 U.S.C. § 1962(c) ..............................................................................................................11

Cal. Penal Code § 502..............................................................................................................7

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In a transparent effort to deflect from its misconduct, Deel asserts counterclaims premised on the notion that alleged violations of Deel's online Terms of Service are the moral and legal equivalent of the executive-led corporate espionage and mass trade-secret theft that Deel carried out against Rippling. Not only are Deel's counterclaims legally defective (as set forth in Counter-Defendants' motion to dismiss[1]), the first four counterclaims run headlong into the arbitration provision in Deel's *own* Terms of Service, which require them to be sent to arbitration.

Counterclaims 1–4 allege that Counter-Defendants created accounts on Deel's online platform and used those accounts to obtain access to Deel's services in violation of Deel's Terms of Service. While Deel tries its best to artfully plead these claims *without* mentioning and conspicuously avoiding the Terms of Service, the Terms plainly apply and contain a mandatory arbitration provision requiring that "any dispute, controversy, or claim . . . relating in any way to [] use of the Services" be resolved through binding arbitration.

Deel cannot premise its counterclaims on Counter-Defendants' alleged misuse of its platform governed by its Terms of Service while evading the arbitration clause in those same Terms. The FAA requires strict enforcement of arbitration agreements according to their terms, and where an arbitration agreement covers the claims at issue, courts must compel arbitration. Deel's third and fourth counterclaims for violation of the CFAA and CDAFA depend entirely on Counter-Defendants' alleged use of the platform and depend on the Terms of Service. And Deel's first and second counterclaims for violation of RICO and RICO conspiracy rely, in large measure, on the same allegations. Those counterclaims fall squarely within Deel's broad arbitration clause encompassing "any dispute" "relating in any way" to "use of the Services."

Notably, Deel filed its First Amended Counterclaims after receiving Counter-Defendants'

---

[1] The Court may dismiss Deel's counterclaims even if some claims are subject to arbitration. A motion to compel arbitration does not bar dismissal "if there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472 n.2 (2024), *see also Goziker v. U.S. Dep't of Just.,* 2025 WL 2220025, at *4–*5 & n.4 (D.D.C. Aug. 5, 2025) (dismissing with prejudice arbitrable claims for failure to state a claim).

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

motion to compel arbitration—including the chart demonstrating that Deel's alleged "representations" are lifted nearly verbatim from its Terms of Service. Despite amending dozens of other allegations, Deel did not alter the substance of those platform-access allegations, nor did it acknowledge the existence of the Terms of Service that govern them. The reason is simple: Deel cannot disentangle its counterclaims from the Terms of Service that require arbitration.

Accordingly, the Court should compel arbitration of Deel's third and fourth counterclaims in their entirety along with the portions of Deel's first and second counterclaims that rely on the same allegations, and stay all proceedings on those claims pending arbitration. If any portion of Deel's RICO counterclaims survives Rippling's motion to dismiss, the Court should stay those portions because piecemeal adjudication would be inefficient and risk inconsistent results.

## II.    BACKGROUND

### A.    Use of Deel's Platform is Governed by Terms of Service Containing a Broad Mandatory Arbitration Clause.

In support of counterclaims 1–4, Deel alleges that Counter-Defendants accessed and used Deel's website or "platform" between January 16, 2023 and November 19, 2024. Dkt. 263 ("Am. Countercl.") ¶¶ 104, 117, 142, 154, 154 n.19. At all relevant times, Deel displayed publicly available "Terms of Service" for its platform. *See* Declaration of Nicholas S. Goldberg ("Goldberg Decl.") ¶ 3 & Exs. A–G. Deel's Terms of Service state that they "apply to all . . . users . . . who wish to access or use the Services." *Id.*, Exs. A–G. The "Services" are defined broadly as "the services and features [Deel] makes available to [users] on the [Deel] Platform." *Id.* The Terms of Service further provide that any use of the platform constitutes "agree[ment] to be bound by" the Terms. *Id.*

Deel's Terms of Service contain a broad, mandatory arbitration provision. *Id.*, Exs. A, C–F § 26; *id.,* Ex. B §§ 1, 3.2, 22.1; *id.* Ex. G § 25. That provision provides that "***any dispute, controversy, or claim . . . relating in any way to your use of the Services will be settled by final and binding arbitration*** in San Francisco, California[.]" *See id.* (emphasis added). The Terms of Service incorporate JAMS Rules. *Id.*, Exs. A, C–F §§ 25-26; Ex. B §§ 21.1-22.1; Ex. G §§ 24-25.

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

**B.    Deel's First Four Counterclaims are Premised on Counter-Defendants' Alleged Use of Deel's Platform.[2]**

Counts one, two, three, and four of Deel's counterclaims are premised on allegations concerning Counter-Defendants' purported use of Deel's platform. Deel alleges that Brett Johnson, acting at Rippling's direction, created a "Deel account belonging to a fictitious business entity – Quandary Insights, LLC" "for the sole purpose of gaining Rippling unauthorized access to Deel's platform, so that Rippling could meticulously comb through . . . Deel's product to reverse engineer it and steal product information[.]" Am. Countercl. ¶ 103. Deel alleges that Johnson accessed Deel's platform and shared information he obtained with Rippling. *Id.* ¶¶ 15, 104, 122.

Deel further alleges that Johnson, again acting on Rippling's behalf, made a series of false representations to obtain access to Deel's platform. *Id.* ¶ 120. According to Deel, Johnson represented that he would "use Deel's Platform only for Quandary's bona fide business purpose," that he "would not use [the platform] for the benefit of unaffiliated third parties (such as Rippling);" and that he "would not use [the platform for] recording, duplicating, decompiling, reverse engineering or any other use not authorized by Deel[.]" *Id.* Deel alleges that "all of these representations and promises made by Johnson at Rippling's direction were knowingly false when made," because the purpose of Johnson's use of the platform was supposedly to facilitate Rippling's "unauthorized access to Deel's platform," which he accomplished by "taking notes, recording his screen, and directly sharing information from the Deel platform with Rippling." *Id.* ¶¶ 119–121; *see also id.* ¶¶ 103–109, 112–116, 122–143; *cf.* 146–163 (alleging similar conduct by Globalization Partners in coordination with Counter-Defendants).

Although Deel tries to conceal it, the "representations" described in the counterclaims are drawn directly from Deel's Terms of Service, as shown in the chart below:

---

[2] Deel makes many allegations against Counter-Defendants that range from misleading to downright false. Rippling and Conrad describe and quote those allegations here only to demonstrate why Deel's counterclaims must be arbitrated.

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

| Alleged Representation in Counterclaims (¶ 120) | Corresponding Terms of Service Provision |
|---|---|
| "Quandary was a bona fide and legitimate business" | "By using the Services, you (where relevant on behalf of the applicable Business) represent and warrant that … any and all registration information you submit is truthful and accurate." ToS § 5. |
| Johnson "would use Deel's platform only for Quandary's bona fide business purposes" | "You may only use the Services for your bona fide internal business purposes." ToS § 7.2. |
| Johnson would not use the Platform for any "illegal or fraudulent purpose" | "You may not use the Platform and/or Services for any illegal, fraudulent, or unauthorized purposes." ToS § 7.2. |
| Johnson would not use the platform for the benefit of "unaffiliated third parties (such as Rippling)" | You may not use the Services "for the benefit of … any unaffiliated third parties." ToS § 7.2. |
| Johnson would not use the platform "for the purpose of recording, duplicating, decompiling, reverse engineering" | "Prohibited Uses" include to "[d]uplicate, decompile, reverse engineer, disassemble or decode the Services." ToS § 30. |
| Johnson would not use the platform for "any other use not authorized by Deel" | "You may not use the Platform and/or Services for any … unauthorized purposes." ToS § 7.2.<br><br>"Prohibited Uses" include "[a]ccess or use the Services in any way not expressly permitted by these Terms[.]" ToS § 30. |

In other words, Deel's theory is that Johnson obtained access to Deel's platform on behalf of Rippling by falsely agreeing to comply with Deel's Terms of Service, and then using the platform in ways the Terms prohibit. Am. Countercl. ¶¶ 119–21.

Deel's first four counterclaims expressly depend on these allegations and are premised on alleged access to Deel's platform in violation of Deel's Terms of Service. Counterclaim one, for violation of RICO, alleges predicate acts of wire fraud "by using knowingly fake and/or nonexistent companies to register for Deel customer accounts" and thereby obtaining access to Deel's platform. Am. Countercl. ¶ 388 (Counter-Defendants "lacked Deel's permission and authorization to access Deel's protected computers, . . . including Deel's customer-facing platform" and engaged "in a scheme to defraud Deel by using knowingly fake and/or nonexistent

4

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

companies to register for Deel customer accounts. . . in order to obtain unauthorized access to Deel's protected computers for Rippling"). Counterclaim two, for conspiracy to violate RICO, relies on the same predicate acts and factual allegations. *Id.* ¶¶ 400–01. Counterclaim three, for violation of the CFAA, is entirely premised on Counter-Defendants' alleged unauthorized access to Deel's protected computers, including its platform. *See id.* ¶¶ 408–10 (alleging that Counter-Defendants "intentionally accessed Deel's protected computer without authorization or exceeded authorized access"). And counterclaim four, for violation of the CDAFA, is premised on the identical platform-access allegations, repackaging Deel's CFAA theory under California's state-law analogue. *See id.* ¶¶ 417–19. Thus, Deel's RICO, CFAA, and CDAFA counterclaims are premised on Counter-Defendants' alleged access to Deel's platform in violation of the same Terms of Service that contain Deel's broad, mandatory arbitration provision.

## III.    ARGUMENT

### A.    The Court Must Compel Arbitration of Deel's Third and Fourth Counterclaims and the Access-Based Portions of Deel's First and Second Counterclaims.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009). It requires courts to "rigorously" enforce arbitration agreements "according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (citation omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted).

That is the case here. Deel's third and fourth counterclaims and the platform-access-based portions of its first and second counterclaims must be arbitrated. Deel's Terms of Service leave little doubt on that point. The Terms provide that, by accessing or using the platform, a user agrees to be bound by those Terms, which include a broad arbitration provision requiring arbitration of "any dispute, controversy, or claim . . . relating in any way to your use of the

5

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

Services." Goldberg Decl., Ex. A (ToS) § 26. That arbitration clause is exceptionally broad. The Ninth Circuit has recognized that arbitration provisions covering disputes "arising out of or relating to" an agreement are broad in scope. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011). Under such broad provisions, the "factual allegations need only 'touch matters' covered by the [Terms]" to require arbitration. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

This Court recently applied that principle to a provision nearly identical to Deel's and held that an arbitration clause covering disputes "arising out of or relating in any way to" the terms or a user's "access to" or "use of" the services was broader still. *See Taylor v. Inflection Risk Sols., LLC*, 808 F. Supp. 3d 981, 986–87 (N.D. Cal. 2025). There, the plaintiff argued that his statutory claims concerned the defendant's underlying conduct and not his later access to the platform. *Id.* at 986. The Court rejected that distinction, holding that the claims were arbitrable because they "relate[d] in some way" to the plaintiff's access to the defendant's application and thus to his use of its services. *Id.* at 987.

The same reasoning controls here. Deel's third and fourth counterclaims and the access-based portions of its first and second counterclaims "touch matters" covered by the Terms—they arise directly from Counter-Defendants' alleged use of the Services and must be arbitrated.

### 1. Deel's Third and Fourth Counterclaims for Violation of the CFAA and CDAFA Must Be Arbitrated.

Deel's third counterclaim for violation of the CFAA and fourth counterclaim for violation of the CDAFA plainly fall within the arbitration provision because they are based entirely on Counter-Defendants' alleged access to and use of Deel's platform. Deel alleges that Counter-Defendants, "via Johnson," "intentionally accessed Deel's protected computer without authorization or exceeded any authorized access," including by using "Deel's customer-facing platform" and related systems to obtain access to information on Deel's servers. Am. Countercl. ¶¶ 409–10. Deel further alleges that this access occurred through the use of "knowingly fake and/or nonexistent companies to register for Deel customer accounts" in order to "obscure and misrepresent Rippling's identity" and thereby gain access to Deel's "protected computers[.]" *Id.* ¶

6

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

410. Deel's fourth counterclaim under the CDAFA, Cal. Penal Code § 502, repeats these same allegations and "is California's state-law analogue to the CFAA." *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018); *Luviano v. Multi Cable, Inc.*, No. CV-15-05592-BRO (FFMx), 2016 WL 11220483, at *5 (C.D. Cal. Nov. 14, 2016) (analyzing CFAA and CDAFA claims together).

Deel's CFAA and CDAFA claims are not merely connected to Deel's platform in some incidental way; they are premised on the allegation that Johnson, acting on behalf of Rippling, accessed and used Deel's platform—its website—in an unauthorized manner. That is necessarily a dispute "relating in any way to" use of Deel's "Services"—its website. ToS §§ 1, 26. Indeed, Deel's theory, though artfully disguised, is that the access was wrongful precisely because Johnson's use of Deel's website allegedly violated restrictions imposed by the Terms of Service. *See* Am. Countercl. ¶ 120; *supra* Background § B. The CFAA and CDAFA counterclaims therefore "touch[] matters" covered by the Terms. *See Simula, Inc.*, 175 F.3d at 721.

The decision in *Torbit, Inc. v. Datanyze, Inc.*, 2013 WL 572613, at *3 (N.D. Cal. Feb. 13, 2013) is instructive. There, the court held that a CFAA claim was arbitrable under an agreement requiring arbitration of all claims "relating to or arising out of our employment relationship." *Id.* at *3. The court explained that such language reaches claims having a "significant relationship" to the agreement and that the factual allegations need only "touch matters" covered by the arbitration clause. *Id.* at *2–3. Applying the Ninth Circuit's standard in *Simula*, the court concluded that allegations that the defendant "intentionally and without authorization" accessed the plaintiff's computers and obtained information "clearly 'touch matters' covered by the Agreement's arbitration clause." *Id.* at *3; *see also Bender v. Twilio Inc.*, 2025 WL 2308484, at *1, *5–8 (N.D. Cal. Aug. 11, 2025) (compelling arbitration of CDAFA claim based on arbitration clause in online terms of service).

The same is true here. Deel's arbitration provision is even broader than the clause in *Torbit*, covering "any dispute, controversy, or claim . . . relating in any way to your use of the Services." ToS § 26; *see Taylor*, 808 F. Supp. 3d at 986–87. And as discussed above, Deel's CFAA and CDAFA claims arise directly from alleged access to and use of the Deel platform

7

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

governed by those Terms. They therefore "touch[] matters" covered by the arbitration provision and must be arbitrated.

Other courts likewise compel arbitration of CFAA claims where, as here, the alleged unauthorized access arises from use of a product, software, or service governed by a broad arbitration clause. *See, e.g.*, *McCray v. Microsoft Corp.*, 2026 WL 83990, at *5 (W.D. Wash. Jan. 12, 2026) (compelling arbitration of CFAA claim that "touch[ed] directly" on plaintiff's use of a covered service and therefore falls within the arbitration provision); *Galgon v. Epson Am., Inc.* 2021 WL 4513638, at *4 (C.D. Cal. June 16, 2021) (arbitration agreement covering disputes "arising out of or relating to" software applied to CFAA claims premised on allegedly unauthorized firmware transmissions); *Traudt v. Rubenstein*, 2024 WL 5120050, at *8 (D. Vt. Dec. 16, 2024) (arbitration agreement covering controversies "arising out of or relating to" the "use of the Services" applied to CFAA claim premised on "transactions in Plaintiff's brokerage account"). The same is true for CDAFA claims. *See Bender*, 2025 WL 2308484, at *8.

Because Deel's CFAA and CDAFA counterclaims are disputes "relating in any way to" Counter-Defendants' alleged use of Deel's Services, which is governed by Deel's Terms of Service containing a broad form arbitration provision, those claims must be arbitrated.

**2.    Deel's First and Second Counterclaims for Violation of and Conspiracy to Violate RICO Must Be Arbitrated to the Extent They Are Based on Alleged Access to Deel's Services.**

Deel's first and second counterclaims for violation of and conspiracy to violate RICO (collectively, "the RICO counterclaims") likewise must be arbitrated to the extent they are based on alleged access to Deel's Services. The predicate acts underlying those counterclaims fall into two categories. First, Deel alleges predicate acts of wire fraud based on Johnson's alleged use of Quandary to gain access to Deel's platform and systems. Am. Countercl. ¶¶ 387–88; *see also id.* ¶¶ 103–20, 122–45, 153–63. Second, Deel alleges predicate acts of wire fraud, witness tampering, and bribery based on Rippling's procurement of the O'Brien declaration, attached to Rippling's First Amended Complaint. *Id.* ¶¶ 389–94. The first category plainly falls within the arbitration provision because it is based on alleged access to and use of Deel's Services. As discussed further below, the second category should be stayed pending arbitration (if it is not dismissed in its

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

entirety for the reasons set forth in Counter-Defendants' motion to dismiss).

With respect to the access-based predicates in the first category, Deel's RICO theory regurgitates its CFAA and CDAFA theory. Deel alleges that "Rippling, via Johnson," engaged in a "scheme to defraud Deel by using knowingly fake and/or nonexistent companies to register for Deel customer accounts" and thereby obtain access to Deel's "protected computers," including its "customer-facing platform." Am. Countercl. ¶ 388. Deel's conspiracy counterclaim relies on the same alleged predicate acts. *Id.* ¶¶ 398–402. In other words, the alleged wire fraud on which the RICO counterclaims depend is primarily the same alleged "fraudulent" access to Deel's platform and services through accounts governed by the Terms of Service. Those allegations therefore concern, at a minimum, Counter-Defendants' alleged "use of the Services" and thus fall within the arbitration provision covering "any dispute, controversy, or claim . . . relating in any way to your use of the Services." ToS § 26.

Indeed, the connection between Deel's RICO allegations and the Terms of Service is even more direct. As discussed above, Deel alleges that Johnson obtained access to the platform by supposedly making representations that violate the Terms of Service and then used Deel's website in ways those Terms prohibit. *See supra* Background § B. Under Ninth Circuit law, that is more than enough to require arbitration under a broad clause. *See Simula,* 175 F.3d at 721; *see also Cho v. Casnak LLC,* 2022 WL 16894869, at *6 (C.D. Cal. Sept. 7, 2022) (holding RICO claim arbitrable where the alleged fraud scheme turned on whether defendants were entitled to assess charges "under the lease agreement," such that the claim was "primarily a disagreement arising under the contract, even if [it] include[d] allegations of willful misconduct").

Courts compel arbitration of arbitrable portions of RICO claims even where other predicates or components of the RICO theory may not be subject to arbitration. *See e.g.*, *Baker v. Paine, Webber, Jackson & Curtis, Inc.*, 637 F. Supp. 419, 422 (D.N.J. 1986) (compelling to arbitration "portion of the RICO claims which [was] not predicated on acts occurring before the contracts [containing an arbitration provision] were signed"), *abrogated on other grounds by Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989); *Reiner v. Paneth*, 808 F. Supp. 3d 431, 452, 472 (E.D.N.Y. 2025) (compelling to arbitration RICO claim found

6223037

"arbitrable" as to certain defendants and dismissing the RICO claim under Rule 12(b)(6) as to other defendants); *GEICO v. Stelton Radiology Corp.*, 2022 WL 7991093, at *5–6, *8 (D.N.J. Oct. 14, 2022) (severing a RICO claim and compelling arbitration of the arbitrable portion). That is precisely what the Court should do here.

Accordingly, the Court should compel arbitration of Deel's first and second RICO counterclaims to the extent they are based on alleged access to Deel's Services, including the Johnson-based wire-fraud predicates, and any other access-based allegations.

**B.      The Court Must Stay the Arbitrable Issues and Should Exercise its Discretion to Stay the Remaining Portions of Deel's RICO Counterclaims If They Are Not Dismissed.**

Where a court determines that claims or issues are subject to arbitration and a party requests a stay, the court must stay those arbitrable issues pending arbitration. *See* 9 U.S.C. § 3; *Smith*, 601 U.S. at 475. Accordingly, Counter-Defendants respectfully request that this Court stay all proceedings as to counterclaims three and four and the arbitrable portions of counterclaims one and two pending completion of arbitration.

With respect to any non-arbitrable portions of counterclaims one and two, those portions should be dismissed for the reasons set forth in Rippling's motion to dismiss. However, in the event any non-arbitrable portion of Deel's RICO counterclaims were to survive the motion to dismiss, this Court should exercise its discretion to stay counterclaims one and two. "Under the FAA, the court is authorized to stay proceedings pending arbitration." *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303–04 (N.D. Cal. 2018). A stay of proceedings is particularly appropriate where there is factual or legal overlap between the arbitrable and non-arbitrable claims. *See id.*; *see also Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, 2024 WL 4634059, at *11 (N.D. Cal. Oct. 29, 2024) (staying claims "closely related to the arbitrable claims"); *Trinchitella v. Am. Realty Partners, LLC*, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016) (staying claims "based on the same law and same set of facts"); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 656 F. Supp. 830, 834 (N.D. Ill. 1987) (concluding "RICO claim is permeated with arbitrable issues" and staying "proceedings on that claim until those issues are resolved" in arbitration).

10

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

Here, the remainder of Deel's RICO counterclaims overlap, both factually and legally, with the portion of those claims that must be arbitrated. That is because Deel attempts to plead its RICO counterclaims as part of a single "common scheme." Am. Countercl. ¶ 384. Deel alleges that Counter-Defendants and other individuals and entities constituted a cohesive whole, the "Rippling Crime Syndicate," that was a "continuing unit . . . sharing the same goal." *Id.* ¶¶ 383–84. Deel further alleges that the group's "common purpose" was to obtain Deel's information to develop competing products for the group members. *Id.*

The facts underlying the arbitrable portions of the RICO counterclaims overlap with the non-arbitrable portions because both are alleged to be component parts of the same campaign to "generate profits. . . by degrading Deel" and "steal Deel's customers." *Id.* ¶ 383. The arbitrable portions—involving alleged unauthorized use of Deel's platform, *id.* ¶¶ 388–89—are one facet of the alleged efforts to obtain and exploit information about Deel's business. Deel's allegations concerning O'Brien are alleged as part of that same purported harm. *See id.* ¶¶ 391–96. That factual overlap makes a stay appropriate. Without one, the Court and the arbitrator could be required to address overlapping factual allegations and legal issues at the same time, creating duplication and a risk of inconsistent rulings. A stay avoids that problem by allowing the arbitrable issues to proceed first and permitting the Court, if necessary, to address any surviving non-arbitrable issues afterward with the benefit of the arbitrator's decision.

Arbitration will also substantially affect the litigation of the RICO counterclaims because Deel has pleaded those claims as a single enterprise engaged in a unified pattern of racketeering activity. A RICO claim under 18 U.S.C. § 1962(c) requires: (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity, and (v) a causal link to injury in the plaintiff's business or property. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557, 559 (9th Cir. 2010). Here, Deel alleges that the platform-access-based conduct and the allegations concerning O'Brien are components of one overarching scheme. Am. Countercl. ¶¶ 382–96. While the allegations concerning O'Brien fail as a matter of law and should be dismissed, if they are not, then arbitration of the access-based allegations may materially impact the Court's legal evaluation of the RICO counts. If the platform-access allegations are narrowed or rejected in arbitration, the

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

viability of Deel's RICO theory on the O'Brien allegations alone would be even weaker than it is already. Permitting separate adjudicators to assess the legal flaws of these RICO counterclaims in parallel, piecemeal fashion would be inefficient, could lead to inconsistent results, and serves no legitimate purpose. *See U.S v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) ("Considerations of economy and efficiency fully support" a stay pending arbitration); *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (staying non-arbitrable claims is "appropriate. . . where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.").

Accordingly, if any non-arbitrable portion of Deel's RICO counterclaims survive the motion to dismiss, the Court should stay those portions pending arbitration. *See Baker*, 637 F. Supp. at 422; *Trinchitella*, 2016 WL 4041319, at *13.

**C.    If There is Any Dispute Concerning Arbitrability, Deel's Terms of Service Delegate That Issue to the Arbitrator.**

There should be no dispute that Deel's first four counterclaims "touch matters" covered by the Terms of Service and therefore are arbitrable. But if there is any dispute, Deel has delegated those gateway issues to arbitration for a decision on arbitrability.

"A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability . . . ." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). When an arbitration provision "contain[s] an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id.* at 1030. "Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024).

Here, Deel's Terms of Service expressly incorporate JAMS arbitration rules. Deel's Terms of Service provide that claims involving amounts greater than $250,000 "will apply the JAMS Comprehensive Arbitration Rules and Procedures," while claims involving amounts less than or equal to $250,000 "will apply the JAMS Streamlined Arbitration Rules." ToS § 26; Ex. B § 22.1 (same); Ex. C § 26 (same). Those JAMS Rules leave to the arbitrator "[j]urisdictional and

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

arbitrability disputes," including, among other things, "disputes over the formation, existence, validity, interpretation or scope of the agreement." Goldberg Decl., Ex. H (JAMS Comprehensive Arbitration Rules and Procedures, effective June 1, 2021), Rule 11(b); *id.*, Ex. I (JAMS Streamlined Arbitration Rules, effective June 1, 2021), Rule 8(b) (same).

Accordingly, if Deel contends there is any genuine dispute concerning arbitrability, that issue has been delegated to the arbitrator. *See Caremark*, 43 F.4th at 1030.

### D.    Counter-Defendants May Compel Arbitration Under Deel's Terms of Service.

Deel's arbitrable counterclaims are premised on alleged violations of the Terms governing access to and use of its platform. Deel cannot rely on those Terms as the source of Counter-Defendants' alleged wrongdoing while disavowing the arbitration obligation contained in those same Terms. Counter-Defendants may compel arbitration for two independent reasons.

First, a "nonsignatory [to an arbitration agreement] may compel arbitration where 'there is a connection between the claims alleged against the nonsignatory and its agency relationship with a signatory.'" *Young v. Hyundai Motor Am. Inc.*, 2024 WL 5154070, at *4 (C.D. Cal. Nov. 11, 2024) (quoting *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 863 (2019)); *see also Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1340 (2023). That is how Deel has framed its claims here. According to Deel, Johnson was acting as Rippling and Conrad's agent when he allegedly accessed Deel's platform. Deel alleges Johnson: acted "under Rippling's direction and control;" created the Quandary account at "Rippling's direction and control for the sole purpose of gaining Rippling unauthorized access to Deel's platform;" acted "pursuant to the direction" and control of Conrad; and made the alleged written representations "at Rippling's direction." *See* Am. Countercl. ¶¶ 15, 44, 103–04, 120–21, 142, 409. Thus, Deel itself has pleaded that Johnson accessed Deel's Services acting as Rippling and Conrad's agent.

Second, Counter-Defendants Rippling and Conrad may also compel arbitration under the doctrine of equitable estoppel. Equitable estoppel allows a nonsignatory to an arbitration agreement to compel arbitration where the claims against the nonsignatory "are intimately founded in and intertwined with the underlying contract." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021) (internal quotation marks and citation omitted). To satisfy this

13

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037

requirement, the claims need only be "in any way founded in or bound up with the terms" of the contract. *Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133, 1138 (N.D. Cal. 2024). As demonstrated above, *see supra* Argument § A, Deel's arbitrable counterclaims are inextricably "bound up with" its Terms of Service because they are predicated on allegations of Counter-Defendants' "unauthorized" use of and access to Deel's platform. And Deel's allegations necessarily turn on restrictions imposed by those very Terms.

## IV.   CONCLUSION

For these reasons, Counter-Defendants' Motion to Compel Arbitration should be granted. The Court should compel arbitration of counterclaims three and four and the arbitrable portions of counterclaims one and two, and stay those claims pending arbitration. If any remaining portions of counterclaims one and two survive Rippling's motion to dismiss, the Court should stay those portions pending completion of arbitration.

Dated:  June 5, 2026

KEKER, VAN NEST & PETERS LLP

By:   */s/ Eric H. MacMichael*
ELLIOT R. PETERS
ERIC H. MACMICHAEL
ANDREW F. DAWSON
NICHOLAS S. GOLDBERG
BENJAMIN D. ROTHSTEIN

Attorneys for Plaintiff/Counter-Defendant
PEOPLE CENTER, INC. D/B/A
RIPPLING, a Delaware corporation and
Counter-Defendant PARKER ROUSE
CONRAD

COUNTER-DEFENDANTS RIPPLING AND CONRAD'S NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION OF DEEL'S AMENDED COUNTERCLAIMS
Case No. 3:25-CV-2576-CRB

6223037