JOSH A. COHEN (SBN 217853)
jacohen@debevoise.com
ALDO PONTEROSSO (SBN 340104)
aponterosso@debevoise.com
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

DANIEL M. GITNER (*pro hac vice*)
dmgitner@debevoise.com
SORAYA BATMANGHELIDJ (*pro hac vice*)
sbatmanghelidj@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Counter-Defendant Keith O'Brien*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576-CRB<br><br>KEITH O'BRIEN'S REPLY IN SUPPORT OF JOINDER IN SUPPORT OF MOTION TO DISMISS DEEL'S FIRST AMENDED COUNTERCLAIMS<br><br>Date Filed:          March 17, 2025<br>Am. Compl. Filed:  June 5, 2025<br>Judge:              Hon. Charles R. Breyer<br>Courtroom:          6<br>Hearing Date:       August 14, 2026 |
| DEEL, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation; PARKER ROUSE CONRAD, an individual; and KEITH O'BRIEN, an individual; and DOES 1–100,<br><br>Counter-Defendants. | |

## SUMMARY OF ARGUMENT

Pursuant to this Court's standing order, Counter-Defendant Keith O'Brien provides the following summary of argument:

1. **Deel's Opposition Fails to Establish that the RICO Claims Against Mr. O'Brien Are Adequately Pled.**  Deel's Opposition does not cure the defective pleading addressed in Mr. O'Brien's Joinder in support of the Motion to Dismiss filed by Counter-Defendants Rippling and Parker Conrad.  Deel's RICO counterclaims remain deficient for the following reasons:

   a. **Deel's Counterclaims Lack Sufficient Allegations that Mr. O'Brien Shared a Common Purpose with the Alleged RICO Enterprise.**  Deel's allegations that Mr. O'Brien gained financial benefits from executing the affidavit do not establish that he shared in the purpose of degrading Deel to steal Deel's customers, employees, information, and market share for the benefit of Rippling.  Nor do Deel's conclusory allegations that Mr. O'Brien had knowledge of the fraudulent scheme or resolved to involve himself in the fraudulent enterprise suffice.  Moreover, Deel's own allegations that Mr. O'Brien was coerced into cooperating with Rippling are logically inconsistent with Deel's claim that Mr. O'Brien shared a purpose with the Rippling enterprise.  Deel's RICO claims against Mr. O'Brien should be dismissed because they fail to establish he was a part of the RICO enterprise.

   b. **Deel Fails to Allege Facts Showing Mr. O'Brien Operated or Managed the Enterprise.**  Deel's Opposition also fails to establish that Mr. O'Brien conducted the affairs of the RICO enterprise, even under its proposed test for "lower-level management."  Deel identifies no nonconclusory allegations that Mr. O'Brien was in the enterprise's chain of command, knowingly implemented upper management's directives, or was vital to the enterprise's alleged mission of stealing Deel's customers, employees, information, and market share.  Deel thus fails to establish that Mr. O'Brien conducted the affairs of the enterprise, as required under 18 U.S.C.

§ 1962(c). *See Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993). The RICO claims against Mr. O'Brien should be dismissed for failure to allege the requisite conduct.

c. **Deel's Allegations Fail to Establish a Pattern of Racketeering Activity.** Deel also fails to plead that Mr. O'Brien engaged in a pattern of racketeering activity because it fails to establish Mr. O'Brien engaged in two predicate acts. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992). *First*, the alleged predicate act of Mr. O'Brien's preparation of his affidavit, which was filed both in Ireland and in this proceeding, is paradigmatic petitioning activity protected under the *Noerr-Pennington* doctrine. The sham litigation exception to that doctrine does not apply to Mr. O'Brien's affidavit merely because Deel disagrees with portions of it. *Second*, Deel's wire fraud allegations are entirely conclusory, failing to plausibly allege Mr. O'Brien's fraudulent intent or the use of wires with a domestic nexus, as is required to establish wire fraud under 18 U.S.C. § 1343. *See United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1132 (N.D. Cal. 2015) (Breyer, J.); *United States v. Hussain*, 972 F.3d 1138, 1145 (9th Cir. 2020). The RICO claims against Mr. O'Brien fail to establish a pattern of racketeering activity and should be dismissed.

2. **Deel's RICO Conspiracy Allegations Remain Deficient and Should Be Dismissed.** Deel's RICO conspiracy claims fail, first, because Deel fails to allege an underlying RICO violation. Second, Deel's Opposition points to no allegations, beyond conclusory statements, that Mr. O'Brien joined the conspiracy with knowledge of its goals or essential nature or scope. For these reasons, the RICO conspiracy claim should be dismissed.

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT .......................................................................................................1

        A.      Deel Fails to State a RICO Claim Against Mr. O'Brien...........................1

                1.      Deel fails to plead that Mr. O'Brien was part of a RICO enterprise. ..........1

                2.      Deel fails to plead that Mr. O'Brien conducted the affairs of a
                        RICO enterprise. ....................................................................................4

                3.      Deel fails to plead that Mr. O'Brien engaged in a pattern of
                        racketeering activity.................................................................................6

        B.      Deel Fails to State a RICO Conspiracy Claim Against Mr. O'Brien ....................12

III.    CONCLUSION.....................................................................................................12

REPLY IN SUPPORT OF O'BRIEN'S JOINDER IN SUPPORT OF MOTION TO DISMISS FACC
Case No. 3:25-CV-2576-CRB

# TABLE OF AUTHORITIES

**Cases**

*AbCellera Biologics Inc. v. Bruker Cellular Analysis*,
  2024 WL 37213 (N.D. Cal. Jan. 2, 2024) ..................................................................................8

*Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*,
  2012 WL 1400302 (C.D. Cal. Apr. 23, 2012) .........................................................................12

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ...........................................................................................1, 5, 6

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ......................................................................................4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...................................................................................................9

*Ford Motor Co. v. Knight L. Grp.*,
  2025 WL 3306280 (C.D. Cal. Nov. 24, 2025)...........................................................................8

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) .................................................................................................7

*Helms v. Wells Fargo Bank, N.A.*,
  2018 WL 6133715 (C.D. Cal. June 19, 2018) .........................................................................10

*In re Ethereummax Inv.*,
  2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ...........................................................................2

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  2013 WL 12130034 (C.D. Cal. July 19, 2013)...........................................................................5

*Kottle v. Nw. Kidney Ctrs.*,
  146 F.3d 1056 (9th Cir. 1998) .............................................................................................8, 9

*Kousisis v. United States*,
  605 U.S. 114 (2025)...............................................................................................................10

*Nev. Fleet LLC v. FedEx Corp.*,
  2022 WL 891245 (E.D. Cal. Mar. 25, 2022) ............................................................................4

*Oregon Nat. Res. Council v. Mohla*,
  944 F.2d 531 (9th Cir. 1991) ...........................................................................1, 6, 7, 8, 9, 12

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ...........................................................................................3, 4, 9

REPLY IN SUPPORT OF O'BRIEN'S JOINDER IN SUPPORT OF MOTION TO DISMISS FACC
Case No. 3:25-CV-2576-CRB

*Omni Res. Dev. Corp. v. Conoco, Inc.*,
    739 F.2d 1412 (9th Cir. 1984) ........................................................................................7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) .........................................................................................................9

*Pyankovska v. Abid*,
    65 F.4th 1067 (9th Cir. 2023) ........................................................................................7

*Relevant Grp., LLC v. Nourmand*,
    116 F.4th 917 (9th Cir. 2024) ........................................................................................7

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir.1992) ...........................................................................................9

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)....................................................................................................4, 5

*Rupert v. Bond*,
    68 F. Supp. 3d 1142 (N.D. Cal. 2014) ...........................................................................8

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...........................................................................6, 7, 8, 9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................................10

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ........................................................................................12

*United States v. Gatto*,
    986 F.3d 104 (2d Cir. 2021).........................................................................................11

*United States v. Hussain*,
    972 F.3d 1138 (9th Cir. 2020) ......................................................................................11

*United States v. Sidorenko*,
    102 F. Supp. 3d 1124 (N.D. Cal. 2015) (Breyer, J.) ....................................................11

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ....................................................................................5, 6

*Williams v. Mohawk Industries, Inc.*,
    465 F.3d 1277 (11th Cir. 2006) ......................................................................................3

**Statutes**

18 U.S.C. § 1343.................................................................................................................11

18 U.S.C. § 1962(c) ...................................................................................................................................4

## I.    INTRODUCTION

Deel's counterclaims against Keith O'Brien center on his court-advised cooperation with the Irish judicial system and Rippling, and the sworn affidavit he signed in connection therewith. Deel attempts to twist Mr. O'Brien's cooperation into twin violations of Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). But as Mr. O'Brien's Joinder explains, Deel failed to plead facts establishing essential elements of these claims. The rhetoric and labels Deel employs in its Opposition do not cure this fatal defect. ECF No. 267.

First, Deel fails to plead that Mr. O'Brien was part of a RICO enterprise. Deel does not plausibly allege that Mr. O'Brien shared a common purpose with the other members of the enterprise. Indeed, Deel's First Amended Counterclaims ("FACC") contain no nonconclusory allegations that Mr. O'Brien signed his affidavit for the alleged common purpose of harming Deel and stealing its customers, employees, information, and market share. ECF No. 263. Second, Deel fails to plead that Mr. O'Brien conducted the enterprise's affairs. Mr. O'Brien's mere signing of his affidavit does not amount to "operation or management" of the alleged enterprise. Third, Deel does not plead a pattern of racketeering activity. The submission of affidavits and witness testimony is protected litigation conduct under *Noerr-Pennington*, absent a sham litigation exception, which Deel does not plausibly allege applies. Even if Deel could overcome *Noerr-Pennington* immunity, Deel's boilerplate allegations of wire fraud are insufficient because nowhere does Deel adequately allege that Mr. O'Brien intended to take Deel's money or property or that he used wires in "interstate or foreign commerce" in order to do so. Deel's conclusory allegations regarding the use of wires fails to allege any domestic nexus to the United States. Finally, Deel's RICO conspiracy claim fails for the same reasons and because Deel does not allege that Mr. O'Brien was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).

## II.    ARGUMENT

### A.    Deel Fails to State a RICO Claim Against Mr. O'Brien

#### 1.    Deel fails to plead that Mr. O'Brien was part of a RICO enterprise.

Deel's Opposition ("Opp.") does not identify any well-pled facts showing that Mr. O'Brien

associated with Rippling, Conrad, Globalization Partners, Johnson, or anyone else for the alleged common purpose of "degrading Deel so the Syndicate can steal Deel's customers, employees, and market share." FACC ¶¶ 34, 383. Deel identifies no nonconclusory allegations that Mr. O'Brien signed his affidavit for this purpose. Rather, in its Opposition, Deel merely contends that it has sufficiently pled a common purpose because (1) Mr. O'Brien "engaged in perjury for financial benefits" and to degrade Deel by lying about Deel's activities to steal its customers, employees, information, and market share (Opp. at 5); (2) Mr. O'Brien had "knowledge of the fraud" (*id.* at 6); and (3) Mr. O'Brien acted on his "own agency (despite being pressured) in deciding to perjure himself" for the benefit of the enterprise (*id.*). None of these arguments has merit.

**First**, Deel's allegations that Mr. O'Brien received financial benefits from Rippling in exchange for signing his affidavit are inadequate to plead that Mr. O'Brien shared a common purpose to degrade Deel and steal its customers, employees, information, and market share. Deel alleges that Mr. O'Brien was paid an "'ex-gratia termination payment' … purportedly 'in full and final settlement of any employment rights' claims that [O'Brien] may have against' Rippling." FACC ¶ 240. Deel also alleges that Rippling agreed to indemnify Mr. O'Brien for his legal fees and expenses as well as "all liability and damages awarded against him in the future." *Id.* ¶ 8. Lastly, Deel alleges that by signing the affidavit, Mr. O'Brien avoided "the threat of the €150,000 Sword of Damocles" in liquidated damages under the Cooperation Agreement. *Id.* ¶ 243.

The benefits that Deel alleges Mr. O'Brien received do not give rise to a plausible inference that he joined the alleged common purpose of the enterprise (*i.e.*, to degrade Deel in order to steal Deel's customers, employees, information, and market share). Deel's theory closely resembles the theory the district court rejected in *In re Ethereummax Inv.*, 2022 WL 20804358 (C.D. Cal. Dec. 6, 2022). There, the plaintiff brought a RICO claim against Kim Kardashian and other celebrity endorsers of a cryptocurrency on the premise that the endorsers shared the issuer's purpose of inflating the value of the tokens. The Court dismissed the RICO claim, holding that the plaintiff had failed to allege that the celebrities, who were not paid in tokens, would profit from artificially increasing the tokens' value. *See id.* at *14. The same is true here. At most, Deel's allegations support the proposition that Mr. O'Brien acted for his own "individual benefit," which is inadequate

to establish that he shared a purpose in common with the alleged enterprise. *See id.* at *15.

**Second**, Deel's conclusory allegations that Mr. O'Brien had "knowledge of the fraud" do not allege a common purpose, either. *See* Opp. at 6 (citing FACC ¶¶ 209-44). Deel relies principally on Mr. O'Brien's March 2025 emails, in which he wrote that he felt "pressured" and "coerced" to say untrue things about Deel. FACC ¶¶ 6, 228. Even accepting the (false) inference that the emails suggest Mr. O'Brien felt pressured to say something untrue about Deel in the April 2025 affidavit he later executed, the emails do not suggest that Mr. O'Brien shared Rippling's alleged commercial objective of degrading Deel and stealing its business, employees, information, and market share. *See id.* ¶¶ 34, 383. Deel's assertion that Mr. O'Brien "resolved to involve himself in an illegal enterprise," *id.* ¶ 235, is a conclusion, not a fact.

**Third**, Deel tries to recast its inconsistent allegations as a factual dispute that cannot be resolved on a motion to dismiss. As Mr. O'Brien pointed out in his moving papers, Deel's theory is logically incoherent because it posits that he was coerced into signing the agreements against his will, yet signed them in furtherance of a purpose he supposedly formulated and shared with Rippling. Opp. at 18. This argument is not, as Deel argues, an attempt to raise an affirmative defense of duress at the motion to dismiss stage. *Id.* at 4. Rather, Deel asks this Court to accept that Mr. O'Brien was both "coerced into saying stuff that is not true to damage Deel" (FACC ¶¶ 6, 13, 228) *and* exercised "his own agency" in signing the agreements and the affidavit with a particular purpose in common with Rippling. Opp. at 6. These allegations are incompatible with one another and thus defeat Deel's effort to plead the common-purpose element of a RICO claim.

Deel's reliance on *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006), and *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), is misplaced. As an initial matter, both cases applied the more liberal pleading standard that existed before the Supreme Court's decisions in *Twombly* and *Iqbal*. In addition, both cases are distinguishable because the plaintiffs in each case alleged facts sufficient to plead a common purpose in which members of the enterprise had an interest. *See Mohawk*, 465 F.3d at 1284-85 (holding that plaintiffs "clearly" alleged that "members of the enterprise [stood] to gain sufficient financial benefits from Mohawk's widespread employment and harboring of illegal workers."); *Odom*, 486 F.3d at 552 (allegations that Best Buy

3

and Microsoft had a shared financial interest in increasing the number of people using Microsoft's Internet Service adequately alleged a common purpose because Microsoft "had agreed to promote Best Buy's online store  through its [internet] service").[1]  The post-*Twombly*/*Iqbal* cases Deel cites are distinguishable for the same reason.  *See Nev. Fleet LLC v. FedEx Corp.*, 2022 WL 891245, at *10-11 (E.D. Cal. Mar. 25, 2022) (vehicle refurbishment company ARI and FedEx shared "a common purpose of maximizing the sale price of the FedEx vehicles [by misrepresenting their mileage], which meant more revenue for both ARI and FedEx"); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013) (enterprise members both profited from concealing marked-up fees).  In contrast, Deel fails to allege that Mr. O'Brien had any financial interest in stealing Deel's customers, employees, information, or market share. Importantly, whether Mr. O'Brien's testimony in this Action harms Deel's business has no connection to any consideration to which Mr. O'Brien is entitled under the Cooperation and Termination Agreements.

Finally, Deel's reliance on this Court's ruling on Deel's motion to dismiss Rippling's First Amended Complaint ("FAC") is likewise misplaced.  Unlike Deel, Rippling clearly alleged a shared common purpose between Deel and the individual Deel defendants "to misappropriat[e] and exploit[] trade secrets and confidential business information belonging to Deel's competitors." ECF No. 57 ¶ 15.  The individual Deel defendants, who are all executives at Deel, plainly stood to benefit from Deel's theft of its competitors' trade secret and confidential information.  In contrast, there are no allegations that Mr. O'Brien, a former employee of Rippling Ireland, did (or even could) benefit from stealing Deel's customers, employees, market share, and information.

Put simply, Deel has failed to plead a common purpose as to Mr. O'Brien.

### 2. Deel fails to plead that Mr. O'Brien conducted the affairs of a RICO enterprise.

Deel fails to plead that Mr. O'Brien "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs."  18 U.S.C. § 1962(c).  To satisfy this element, Deel must

---

[1] Deel's assertion that "Best Buy could share this common purpose despite having no direct interest in increasing Microsoft's user base" (Opp. at 5) ignores that under the "cross-marketing contract" Microsoft agreed to "invest $200 million in Best Buy ***and agreed to promote Best Buy's online store through its MSN service*** ….[,] a division of Microsoft offering internet access services." *Odom*, 486 F.3d at 543.  Thus, Best Buy stood to profit from increasing Microsoft's user base because doing so would expose more users to promotions for Best Buy's online store.

allege facts showing that Mr. O'Brien had "some part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This test requires a plaintiff to plead that a defendant participated in the operation or management of the enterprise itself. *Id.* at 185; *Walter v. Drayson*, 538 F.3d 1244, 1248–49 (9th Cir. 2008) (conduct requires "an element of direction"). Merely providing services to, assisting, or interacting with an alleged enterprise does not suffice. *See Baumer*, 8 F.3d at 1344–45; *Walter*, 538 F.3d at 1249.

The Opposition identifies no nonconclusory allegations that Mr. O'Brien directed the affairs of the alleged "Rippling Crime Syndicate." Deel does not allege that Mr. O'Brien directed Rippling, Conrad, Wu, Johnson, Globalization Partners, or any other alleged enterprise member to do anything. Nor does it allege that Mr. O'Brien planned, managed, controlled, or supervised any alleged scheme to access Deel systems, obtain Deel information, divert Deel customers, recruit Deel employees, or capture Deel market share. Deel alleges only that Mr. O'Brien was harassed and coerced by Rippling into signing an affidavit that Rippling disagrees with. FACC ¶¶ 234–44. That is not operation or management of a RICO enterprise.

Indeed, each of the three factors that courts consider relevant to the conduct element weighs heavily against finding that Deel has adequately alleged Mr. O'Brien conducted or participated in the affairs of the enterprise:

**First**, Deel does not plead that Mr. O'Brien occupied a position in the alleged enterprise's "chain of command." *Walter*, 538 F.3d at 1249. Deel alleges that Mr. O'Brien was a former Rippling employee who "succumb[ed]" to Rippling's coercion, control, and threats to get him to sign a false affidavit. FACC ¶¶ 31, 234-44. But nowhere does Deel allege facts showing that Mr. O'Brien was making decisions for the enterprise or directly taking orders from another member of the enterprise. Deel's contention that Mr. O'Brien "decided to commit perjury," Opp. at 8—is merely a "conclusory statement that [Mr. O'Brien was] "involve[d] in decision making" that "[does] not meet *Twombly's* pleading requirements." *See In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *12 (C.D. Cal. July 19, 2013).

**Second**, Deel does not allege that Mr. O'Brien "knowingly implement[ed] [the] decisions of upper management." *See Walter*, 538 F.3d at 1249. Rather, Deel merely recycles its claim that

Mr. O'Brien knowingly submitted a false affidavit alleging both that it is "substantively completely false" (whatever that means), FACC ¶ 209, and that certain parts of it are actually false. *See, e.g.*, *id.* ¶¶ 214, 223-24, and 226 (disputing certain parts of the affidavit). But alleging that Mr. O'Brien submitted a false affidavit does not amount to a claim that he participated in the *operation* or *management* of the alleged enterprise or knowingly implemented "upper management['s]" scheme to steal Deel's customers, employees, information, and market share. *Walter*, 538 F.3d at 1249.

**Third**, Deel identifies no facts supporting its bald assertion that Mr. O'Brien was "obviously" vital to the mission's success" because "[w]ithout O'Brien, the perjured affidavit would not exist." Opp. at 8. As pled, the affidavit was not the "mission" of the alleged enterprise; rather, the "mission" was ostensibly to steal Deel's customers, employees, information, and market share. FACC ¶¶ 34, 383. Mr. O'Brien clearly was not vital to *that* mission, which, according to Deel, began months before Mr. O'Brien ever signed his affidavit and involved the alleged theft of Deel's proprietary information through a fake customer account that had nothing to do with Mr. O'Brien. *See id.* ¶¶ 110–45, 244. Mr. O'Brien's provision of an affidavit that may have *advanced* the mission does not rise to the level of managing or directing the enterprise's affairs. *See Baumer*, 8 F.3d at 1344–45; *Walter*, 538 F.3d at 1249.

Deel thus fails to plead that Mr. O'Brien conducted the affairs of the enterprise.

### 3.   Deel fails to plead that Mr. O'Brien engaged in a pattern of racketeering activity.

#### a.   The *Noerr-Pennington* Doctrine Applies.

Deel argues that the *Noerr-Pennington* doctrine does not apply because (1) the alleged misconduct is not protected petitioning activity; and (2) the sham litigation exception applies. Opp. at 10. Neither argument has merit.

**First**, the *Noerr-Pennington* doctrine shields Mr. O'Brien from liability based on his execution of the affidavit and his testimony in this Action. Under *Noerr-Pennington*, those "who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The doctrine insulates communications with the court, including the submission of witness testimony

REPLY IN SUPPORT OF O'BRIEN'S JOINDER IN SUPPORT OF MOTION TO DISMISS FACC
Case No. 3:25-CV-2576-CRB

and affidavits, as well as conduct incidental to that petitioning activity. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–85 (9th Cir. 2005). The "ultimate purpose [of *Noerr-Pennington*] is to 'overprotect' potentially baseless petitions to ensure that First Amendment rights are not chilled." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 934 (9th Cir. 2024) (quoting *Sosa*, 437 F.3d at 934 (referring to *Noerr-Pennington* protection as "breathing room protection")).

Here, Deel's claims against Mr. O'Brien are based on (i) his signing of the affidavit, which was filed in the Irish proceeding and in this Action, FACC ¶¶ 242, 244, 388, 393; and (ii) his potential testimony in this Action, *id.* ¶ 395 (alleging that Mr. O'Brien "is continuing to provide false testimony against Deel"). Mr. O'Brien's execution of the affidavit and his testimony in this Action are paradigmatic petitioning activity. *See Freeman*, 410 F.3d at 1184.

Nonetheless, Deel argues that Mr. O'Brien's conduct is not protected because it allegedly "involved bribery and wire fraud" and "[t]he law does not immunize illegal conduct simply because its fruits later appear in a court filing." Opp. at 10 (citing *Pyankovska v. Abid*, 65 F.4th 1067, 1078 (9th Cir. 2023)). But the case Deel cites for this proposition, *Pyankovska,* is readily distinguishable. There, a husband illegally recorded his wife during divorce proceedings by surreptitiously placing a recording device inside their child's backpack without the child's or wife's knowledge. *Pyankovska*, 65 F.4th at 1072. The husband gave transcripts of the recordings to his attorney, who in turn submitted them to the court in support of a motion. *Id.* There was no dispute that the transcripts were illegal. *Id.* at 1074-75. Accordingly, the Ninth Circuit held that the filing of the transcripts was not protected under *Noerr-Pennington* because the husband "had no petitioning 'right' to use the [illegal] transcripts in the first place." *Id.* at 1078.

Unlike the evidence in *Pyankovska*, Mr. O'Brien's testimony in this Action is not illegal. Deel simply disagrees with portions of it, which is not enough to overcome *Noerr-Pennington* immunity. *See Omni Res. Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (holding that the alleged use of false affidavits "is a charge that can easily be leveled, and it is thus insufficient by itself to overcome *Noerr-Pennington* immunity.").

**Second**, Deel has not alleged an exception to *Noerr-Pennington* immunity. In its Opposition to the Rippling-Conrad Motion to Dismiss (ECF No. 291), Deel argues that the sham

litigation exception applies because "(1) the "unlawful conduct 'consists of making intentional misrepresentations to the court'" that "'deprive the litigation of its legitimacy'" [and] (2) the lawsuit is objectively baseless and the defendant's motive in bringing it is unlawful." ECF No. 291 at 25-27 (quoting *Sosa*, 437 F.3d at 938). But Deel has not pled the exception in the FACC.

Courts apply a "heightened pleading standard" to claims involving the right to petition under *Noerr-Pennington*. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). A pleading "'must include allegations of the specific activities' which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection." *Id.* "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Id.* As such, and contrary to Deel's assertions otherwise (Opp. at 10), courts routinely dismiss claims at the pleading stage where plaintiffs fail to allege the sham litigation exception applies.[2]

Here, Deel argues that the intentional-misrepresentation version of the sham exception applies because Mr. O'Brien's affidavit was allegedly "replete with intentional misrepresentations" and because he supposedly "perjured himself." ECF No. 291 at 26. Assuming *arguendo* these brash assertions are correct, they are nonetheless insufficient to overcome immunity. The exception requires specific allegations of intentional, material misrepresentations that "deprive the litigation of its legitimacy." *Sosa*, 437 F.3d at 938. By contrast, the allegations Deel cites (*see* FACC ¶ 214; *id.* ¶¶ 223–24; *id.* ¶ 226) show only that Deel disputes selected statements in the affidavit, which is inadequate. *See also Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060–63 (9th Cir. 1998) (recognizing that the heightened pleading standard would have no force if "a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party."). Deel's generalized allegation that the affidavit is "substantively completely false" (FACC ¶ 206) does not plead with particularity statements Mr. O'Brien knew were false when made or how the

---

[2] *See, e.g.*, *Rupert v. Bond*, 68 F.Supp.3d 1142, 1159 (N.D. Cal. 2014) (dismissing RICO claims because plaintiff failed to allege that any of the three formulations of the sham litigation exception applied); *AbCellera Biologics Inc. v. Bruker Cellular Analysis*, 2024 WL 37213, at *6 (N.D. Cal. Jan. 2, 2024) (dismissing unfair competition counterclaims because plaintiff failed to allege the sham litigation exception); *Ford Motor Co. v. Knight L. Grp.*, 2025 WL 3306280, at *11-12 (C.D. Cal. Nov. 24, 2025) (dismissing RICO claims where plaintiff failed to allege sham litigation exception).

statements deprived this "entire" litigation of legitimacy. *Kottle*, 146 F.3d at 1063.

Nor can Deel invoke the objective-baselessness version of the sham litigation exception. That exception applies only where the petitioning activity is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and the petitioner's subjective motive was improper. *Pro. Real Est. Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993); *Sosa*, 437 F.3d at 938. Deel does not plead that this Action is objectively baseless. It could not. This Court has already sustained Rippling's claims in this Action and allowed the litigation to proceed. Deel instead challenges Mr. O'Brien's affidavit and future testimony. But a dispute over the veracity of witness statements or potential future testimony is not the same as a baseless lawsuit, and it does not strip protected litigation activity of *Noerr-Pennington* protection.

**b.      Deel fails to plead wire fraud against Mr. O'Brien.**

Even if Deel could overcome Noerr-Pennington immunity, Deel fails to plead that Mr. O'Brien engaged in wire fraud. It follows that Deel has failed to allege the requisite two predicate acts necessary to state a RICO claim. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir.1992).

As an initial matter, Deel misconstrues the applicable pleading standard. Relying on case law that pre-dates *Twombly* and *Iqbal*, Deel appears to contend that it may plead intent merely "'by saying that scienter existed.'" Opp. at 11 (quoting *Odom*, 486 F. 3d at 554). But that is no longer the law. While Rule 9(b) provides that "intent … may be alleged generally," Fed. R. Civ. P. 9(b), the Ninth Circuit has since confirmed that "the plausibility analysis of *Twombly* and *Iqbal* applies equally to Rule 9 as it does to Rule 8." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n. 5 (9th Cir. 2014). Thus, Deel must allege facts to support a plausible inference that Mr. O'Brien signed his affidavit with requisite intent to obtain Deel's "money or property." *See id.* at 1000 (affirming dismissal of Plaintiff's civil RICO claims because "the complaint's factual allegations do not support a plausible inference that Defendants had the required specific intent to defraud").

Deel has not done so. None of the paragraphs cited in the Opposition (at 11-12) plausibly

9

allege (or even generally allege) that Mr. O'Brien signed his affidavit with the intent of taking Deel's "money or property." *See Kousisis v. United States*, 605 U.S. 114, 123 (2025). Deel's allegation that Mr. O'Brien "knowingly agreed to accept payment [from Rippling] in exchange for perjuring himself in order to damage Deel" (FACC ¶ 242) is vague and conclusory, and without more cannot give rise to a plausible inference that Mr. O'Brien intended to take Deel's money or property by signing his affidavit. *See Helms v. Wells Fargo Bank, N.A.*, 2018 WL 6133715, at *4 (C.D. Cal. June 19, 2018) ("Conclusory assertions of Defendants' mental state do not suffice"). In fact, Deel's rehash of its allegations that *Rippling* used Mr. O'Brien's affidavit to steal Deel's customers helps prove the point; Rippling's alleged use of the affidavit may bear on *Rippling's* intent, but it cannot be used to bootstrap an inference about Mr. O'Brien's state of mind. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant'").

Deel also argues that it has adequately alleged intent to commit wire fraud because the FACC alleges that Mr. O'Brien "informed Deel's Alex Bouaziz that Rippling was using unethical tactics **to steal Deel's customers, employees, and information** and to harm Deel's reputation, including by planting false stories about Deel in the press and stealing Deel's confidential business information." Opp. at 12 (quoting FACC ¶ 176 (emphasis in original)). Deel omits that the FACC claims that this alleged conversation happened in October 2024, five months before the affidavit was even contemplated. FACC ¶ 176. Moreover, Mr. O'Brien's statements about *Rippling's* attempts to steal Deel's information in October 2024 do not give rise to a plausible inference that Mr. O'Brien signed an affidavit in March 2025 in furtherance of that attempt.

In fact, the FACC concedes that Mr. O'Brien's motive for signing the affidavit was not to obtain Deel's "money or property," but instead was because Mr. O'Brien was "retaliated against, harassed, and intimidated by Rippling." FACC ¶ 38. According to Deel, Mr. O'Brien's aim in signing his affidavit was to obtain a payment from *Rippling* and "avoid[] … financial ruin"—not to obtain Deel's property. FACC ¶ 243. That Deel purportedly lost customers to Rippling is an "incidental byproduct" of Mr. O'Brien's signing of the affidavit, which is inadequate to plead

10

intent. *See Kousisis*, 605 U.S. at 122 ("Obtaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud").[3]

Nor has Deel adequately alleged the use of wires to support its claim that Mr. O'Brien committed wire fraud. Opp. at 13 (citing FACC ¶¶ 243, 388). First, Deel does not allege that the payment to Mr. O'Brien under the so-called "Carrot Agreement" (in fact, a lawful Irish severance agreement) had any domestic nexus to the United States, which is necessary to establish the fraudulent use of wires in "interstate or foreign commerce." 18 U.S.C. § 1343; *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1132 (N.D. Cal. 2015) (Breyer, J.) (the wire fraud statute does not apply extraterritorially); *United States v. Hussain*, 972 F.3d 1138, 1145 (9th Cir. 2020) (recognizing that wire fraud statute requires a "sufficient domestic nexus" to the United States). Indeed, Deel's allegations that Mr. O'Brien is an Irish citizen and resident who was employed by Rippling Ireland Ltd. (FACC ¶ 38) in Ireland strongly suggests that any termination payment from Rippling Ireland Ltd. to Mr. O'Brien did not reach or pass through the United States.

Second, Deel's threadbare allegation that Mr. O'Brien "used wires" on "multiple occasions beginning in March 2025 … in interstate and foreign commerce to execute a scheme to defraud Deel" is too vague to allow the claim to survive. *Id.* ¶ 388. If Deel means to contend that Rippling's communications with Mr. O'Brien in March 2025 about his affidavit relied on wires, that contention comes up short. Fatally, the FACC does not allege the contents of these wire communications, when they took place, who participated in them, or that any communications originated from or passed through the United States. *See* FACC ¶¶ 209-244.

Deel thus fails to plead wire fraud against Mr. O'Brien and therefore fails to establish Mr. O'Brien engaged in two predicate acts, as required to plead a pattern of racketeering activity under RICO.

---

[3] In a footnote, Deel argues that it "is of no consequence that Rippling, rather than O'Brien, stood to receive the diverted business" because "'the plain meaning of the word 'obtain' is sufficiently capacious to encompass schemes by defendants to obtain money for the benefit of a favored third party.'" Opp. at 12 n.5 (quoting *United States v. Gatto*, 986 F.3d 104, 124 (2d Cir. 2021)). Deel misses the point, which is that Deel fails to plausibly allege that Mr. O'Brien signed his affidavit with the intent of stealing Deel's information or customers on behalf of anyone, including Rippling.

REPLY IN SUPPORT OF O'BRIEN'S JOINDER IN SUPPORT OF MOTION TO DISMISS FACC
Case No. 3:25-CV-2576-CRB

**B.    Deel Fails to State a RICO Conspiracy Claim Against Mr. O'Brien**

Deel's RICO conspiracy claims must be dismissed because Deel fails to sufficiently plead the substantive RICO claim, the alleged predicate acts are protected by *Noerr-Pennington*, and Deel fails to plead facts sufficient to allege Mr. O'Brien agreed to the alleged conspiracy.

Deel responds that the FACC adequately pleads an agreement to conspire. Deel is wrong. For one thing, there can be no RICO conspiracy in the absence of a well-pled substantive RICO claim—which, for the reasons already stated, there is not. For another, a RICO conspiracy claim requires allegations "that the defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.'" *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). Here, Deel's conspiracy counterclaim is devoid of any factual reference to any voluntary agreement by Mr. O'Brien to the goals of the alleged conspiracy or its essential nature and scope. *See Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*, 2012 WL 1400302, at *5 (C.D. Cal. Apr. 23, 2012) ("bare allegations are not enough if they provide no basis to infer assent to contribute to a common enterprise"). At most, Deel alleges that Mr. O'Brien was coerced into signing a false affidavit, *see* Opp. at 14 (citing FACC ¶¶ 203-04, 228), but the mere act of signing a declaration for Rippling's use does not evidence awareness of, let alone agreement to, the larger conspiracy's goals, nature, or scope. Accordingly, the RICO conspiracy claim against Mr. O'Brien should be dismissed.

**III.    CONCLUSION**

For the foregoing reasons and those stated in the Joinder, Rippling-Conrad Motion to Dismiss, and Rippling-Conrad Reply in support of the Motion to Dismiss, Mr. O'Brien respectfully requests that the Court dismiss the Amended Counterclaims against him with prejudice and in their entirety.

Dated: July 10, 2026                                         DEBEVOISE & PLIMPTON LLP


                                                            By:    */s/ Josh Cohen*
                                                            JOSH A. COHEN

REPLY IN SUPPORT OF O'BRIEN'S JOINDER IN SUPPORT OF MOTION TO DISMISS FACC
Case No. 3:25-CV-2576-CRB