**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Maaren A. Shah (*pro hac vice*)
maarenshah@quinnemanuel.com
Samuel Nitze (*pro hac vice*)
samuelnitze@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Dominic Pody (*pro hac vice*)
dominicpody@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Joseph Sarles (CA Bar No. 254750)
josephsarles@quinnemanuel.com
Kathleen S. Messinger (CA Bar No. 329983)
kathleenmessinger@quinnemanuel.com
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff People Center, Inc. d/b/a Rippling*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE ("ALEX") BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN ("DAN") WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | CASE NO. 3:25-CV-2576 (CRB)<br><br>**RIPPLING'S EX PARTE APPLICATION FOR ISSUANCE OF LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE IN PROCURING EVIDENCE FROM FOREIGN THIRD PARTY**<br><br>Judge: Hon. Charles R. Breyer<br>Complaint Filed: March 17, 2025<br>Amended Complaint Filed: June 5, 2025<br>Trial Date: None set |

Case No. 3:25-CV-2576 (CRB)

Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") respectfully requests that the Court approve its request for international judicial assistance in procuring evidence from foreign third party Bybit EU GmbH ("Bybit EU"). The Letter Rogatory, attached hereto, is addressed to the Austrian Federal Ministry of Justice (*Bundesministerium für Justiz*) and the Austrian Ministry of Foreign Affairs (*Bundesministerium für europäische und internationale Angelegenheiten*) and requests the production of certain information from Bybit EU, a cryptocurrency exchange based in Austria. The issuance of this Letter Rogatory is necessary because the requested information is highly relevant to the identity of the owner(s) of a cryptocurrency account that Rippling alleges compensated Keith O'Brien for spying on behalf of Deel, Inc. ("Deel"), Alex Bouaziz, Philippe Bouaziz, Dan Westgarth, and/or Does 1–100 (collectively, "Defendants"). Rippling respectfully requests that the Court sign and affix its seal to the accompanying Letter Rogatory and return the same with original signatures and seals to Rippling's counsel—Quinn Emanuel Urquhart & Sullivan, LLP ("Counsel"). Once the Court signs and affixes its seal to the accompanying Letter Rogatory, Rippling will ensure that the Letter Rogatory is, to the extent necessary, professionally translated to the official language of the Austrian court.

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 1781 and Rules 26(b)(1) and 28(b) of the Federal Rules of Civil Procedure, Rippling respectfully moves the Court for issuance of a Letter Rogatory to obtain documents, information, and "Know Your Customer" (KYC) information from Bybit EU. Bybit EU is a foreign third party that possesses documents and knowledge to be used at trial in support of the ownership of wallet addresses involved with cryptocurrency transactions to O'Brien, the former Rippling employee and spy.

Rippling respectfully requests that the Court grant this Application and issue a Letter Rogatory on behalf of Rippling for transmittal to the Appropriate Judicial Authority of Austria.

## II.    BACKGROUND

Rippling sued to expose a "top-down, centrally orchestrated . . . criminal operation" wherein Deel recruited a Rippling-employee-turned-spy, Keith O'Brien, who " directed the near-daily theft of trade secrets and confidential Information." Dkt. No. 57 ¶ 1-2.

Rippling alleges, among other things, that Deel, certain of Deel's officers, and/or agents acting on their behalf, compensated O'Brien for his spying activities first in fiat and then in cryptocurrency payments to O'Brien's Blockchain.com cryptocurrency account. *See id.* ¶¶ 3, 64–66; *see* Dkt. No. 57-1 ¶¶ 12–13. As such, Rippling retained NAXO Labs LLC ("NAXO"), a digital forensics firm specializing in digital asset investigations, to, among other things, investigate the ownership of a cryptocurrency address—the "Target Address."[1] Sarles Decl. ¶ 3, Ex. A ("Wong Rep.") ¶ 22. The Target Address sent seven Ether ("ETH") payments to a Blockchain.com account owned by O'Brien—the alleged spy. Wong Rep. ¶ 22. The Target Address sent these payments shortly after receiving corresponding deposits from Bybit. *Id.* ¶ 23.

Like the cost of fuel for a car, Ethereum requires transactions fees; those transaction fees pay for ETH ("gas") that allows Ethereum to be able to send money. *Id.* ¶¶ 14, 26. Seven addresses provided "gas" payments to the Target Address while one address provided "gas" payments from the Target Address (collectively, the "Target Network"). *Id.* ¶¶ 27–29. In addition to being connected by "gas" payments, the Target Network addresses "sent to and received from common addresses." *Id.* ¶ 30. For instance, each address—at some point—"sent assets to at least one deposit address

---

[1]  Target Address: 0xf3A14c647f861686D8275701E50BA54872191Fe9 (Ethereum blockchain). The address is a self-hosted address unaffiliated with a centralized exchange. Wong Rep. ¶ 22.

for which another Target Network address sent assets as well." *Id.*

There is a web of transactions: Various Target Network addresses made deposits to and received withdrawals from Bybit, a Dubai-based centralized cryptocurrency exchange with an Austrian subsidiary. Wong Rep. ¶ 41. However, cryptocurrency exchange records are internal and not publicly displayed on a blockchain. *Id.* ¶ 43. Thus, the ***only*** way to identify which account is associated with a withdrawal from an exchange is via records from that exchange. *Id.* Records held by exchanges like Bybit— including KYC and transaction information—can identify account holders. *Id.* ¶ 49.

Rippling has diligently sought the discovery at issue from Bybit in both Dubai and Austria. Counsel delivered a letter, dated March 24, 2026, to Bybit in Dubai requesting, in part, KYC information. Sarles Decl. ¶¶ 5–6, Ex. B. Bybit's "Law Enforcement" team responded with an email, dated May 26, 2026, suggesting that Counsel report the matter to local law enforcement, indicating a willingness to reasonably assist law enforcement. *Id.* ¶¶ 7–8, Ex. C. Counsel then delivered another letter, dated May 8, 2026, to Bybit EU in Austria also requesting, in part, KYC information. *Id.* ¶¶ 9–10, Ex. D. No response has been received thus far. *Id.* ¶ 11.

The deadline to substantially complete document production in this case is September 16, 2026 and the fact discovery deadline is January 15, 2027. Dkt. No. 199 at 21–22.

## III.   ARGUMENT

### A.   Legal Standard

It is well established that the federal district courts have authority to issue letters rogatory. *See* 28 U.S.C. § 1781(a)(2); 22 C.F.R. § 92.54; Fed. R. Civ. P. 28(b); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) ("A *letter rogatory* is the request by a domestic court to a foreign court to take evidence from a certain witness." (citation modified)). Courts have "inherent power to issue Letters Rogatory" and discretion in the exercise of said authority. *United States*

*v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958); *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 288 (N.D. Cal. 2020).

"When determining whether to exercise its discretion, 'a court will generally not weigh the evidence sought from the discovery request nor will it attempt to predict whether that evidence will actually be obtained.'" *Scalia*, 337 F.R.D. at 288 (quoting *Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007)). Instead, a court applies "Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure." *Id.* (quoting *Asis Internet Servs.*, 2007 WL 1880369, at *3). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy . . . is defined broadly." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006). "Motions requesting issuance of a letter of request or letter rogatory should generally be granted," and "the opposing party must show good reason for a court to deny an application for a letter rogatory." *Zoho Corp. Pvt. Ltd v. Freshworks, Inc.*, No. 20-cv-01869, 2021 WL 2769009, at *2 (N.D. Cal. July 2, 2021) (citation modified) (collecting cases).

## B.    A Letter Rogatory is Appropriate Under Austrian Law

The Letter Rogatory is an appropriate method of obtaining discovery of testimony from Bybit because Bybit EU is headquartered in Austria and Austria is not a signatory to the Hague Evidence Convention. *See Austria Judicial Assistance Information*, U.S. Dep't of State (Mar. 15, 2023), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Austria.html; 28 U.S.C. § 1651(a) (authorizing courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); 28 U.S.C. § 1781(b)(2) (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency"). Judicial assistance between the United

States and Austria is governed by Article 5 of the Vienna Convention on Consular Relations: Article 5(j) of the Vienna Convention acknowledges that the use of Letters Rogatory is an appropriate method for requesting evidence located in a foreign State. *See* Vienna Convention on Consular Relations, art. 5(j), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

Here, Rippling's use of a letter rogatory is an appropriate and sanctioned method of obtaining discovery from Austrian entities. Where a document custodian is located in a non-signatory country to the Hague Evidence Convention, letters rogatory are particularly appropriate. In *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*, this Court noted that because "the Taiwanese lawyers were residents of a foreign nation that is not a signatory to the Hague [Evidence] Convention," letters rogatory is the appropriate means for discovery. No. C04-05385, 2007 WL 1815472, at *1 (N.D. Cal. June 20, 2007). The same principle applies here.

### C.    Bybit EU Very Likely Possesses Information Relevant to Rippling's Claims in This Case

As can be seen from the Letter Rogatory, Rippling's discovery requests are tailored and reasonably calculated to the discovery of admissible evidence.

The Letter Rogatory requests that the Appropriate Judicial Authority of Austria compel Bybit EU to produce documents sufficient to show the ownership of certain cryptocurrency wallet addresses. The attached list of transactions to the Letter Rogatory merely lists 69 transactions for assessment. The Target Network is likely controlled by a ***single*** person or entity, and the transactions in the Target Network show a consistent pattern of pass-through behavior with ***no*** economic purpose other than to obfuscate. Wong Decl. ¶¶ 39–40. The lack of a clear economic reason to transact in such a fashion—alongside the use of cryptocurrency exchanges in a manner that obfuscates the source and destination of funds on the blockchain—is indicative of money laundering. *Id.* ¶ 52.

The interaction of these Target Network accounts with exchanges like Bybit can shed light on ownership. The transactions between the Target Network and Bybit

RIPPLING'S EX PARTE APPLICATION FOR ISSUANCE OF LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE IN PROCURING EVIDENCE FROM FOREIGN THIRD PARTY

follow a pattern similar to those observed with respect to the other exchange accounts used by the Target Network. *Id.* ¶ 44. That is, the Target Network is likely using Bybit as part of its money laundering infrastructure. *Id.* ¶ 49.

Bybit, a centralized exchange, maintains pertinent information on its users' identity in the ordinary course of business. *See id.*; *FAQ — Individual KYC*, Bybit (Apr. 16, 2026), https://www.bybit.com/en/help-center/article/Individual-KYC-FAQ ("Identity Verification of at least Standard level is mandatory for all Bybit products and services."). Records from Bybit will very likely identify the source of the payments to the O'Brien Blockchain account and shed light on the obfuscation of the flow of funds. *Id.* ¶ 51.

Thus, if a connection is found between Deel (and affiliated entities) and control of the Target Network, evidence of Deel's payment(s) to O'Brien will be critical to proving Deel's influence in O'Brien's corporate espionage. *See id.* ¶ 51 ("It is possible that one or more of these accounts is operated by the individuals controlling the Target Network."). The Target Address sent a total of ***8.5 ETH*** (~$15,000 USD[2])—a substantial sum—to O'Brien's Blockchain.com account. *Id.* ¶ 22 & fig. 1. The relationship of the limited number of hashes and addresses to the Target Address—shown by NAXO's investigation—indicates that the Letter Rogatory's requested information is reasonably tailored to shed light on the ownership of the Target Address.

Moreover, the discovery sought does not run afoul of the Federal Rules of Civil Procedure for being unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2). Bybit maintains nonpublic user information associated with each account. *See FAQ — Individual KYC, supra*. It is likely Bybit EU has all or a substantial amount of (1) KYC information; (2) identity documents provided in respect of the accounts and/or addresses; (3) details regarding transactions, including devices, IP addresses, location,

---

[2]   As of June 15, 2026.

RIPPLING'S EX PARTE APPLICATION FOR ISSUANCE OF LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE IN PROCURING EVIDENCE FROM FOREIGN THIRD PARTY

etc.; (4) bank statements and provided banking information; and (5) details of any other accounts or deposit addresses associated with the identified individuals. *See id.*; Wong Rep. ¶ 49. The fact discovery deadline is January 15, 2027, which is almost seven months from now. *See* Dkt. No. 199 at 22; *see also El Paso Disposal, LP v. Ecube Labs Co.*, 792 F. Supp. 3d 703, 709, 711 (W.D. Tex. 2025) (granting a letter rogatory when the discovery deadline was four months away).

Additionally, Rippling has diligently sought the discovery at issue from Bybit through the March 24, 2026 letter to Bybit in Dubai and the May 8, 2026 letter to Bybit EU in Austria. *See* Sarles Decl. Exs. B, D. Rippling has been unsuccessful. *See id.* ¶ 11. Courts have found for the movant where the movant had unsuccessfully attempted to obtain the information elsewhere. *See, e.g.*, *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536, 2020 WL 12740646, at *2 (C.D. Cal. Apr. 14, 2020) (noting that there was "no alternative source of the information sought"). When determining whether to exercise its discretion, "a court will generally not weigh the evidence sought from the discovery request nor will it attempt to predict whether that evidence will actually be obtained." *See Scalia*, 337 F.R.D. at 288. Even so, Bybit has indicated that it "is committed to cooperating with duly authorized law enforcement agencies" and "will provide reasonable assistance in accordance with [its] Terms and Conditions and applicable laws and regulations." *See* Sarles Decl. Ex. C, at 1. As evidenced by the email from Bybit's "Law Enforcement" team and the existence of a compliance program, Bybit possesses the mechanisms to provide Rippling with the requested information. *See id.*; Press Release, Bybit Fintech FZE, Bybit Bolsters Compliance with Appointment of New Chief Legal & Compliance Officer (Sep. 30, 2024), https://www.globenewswire.com/news-release/2024/09/30/2955286/0/en/Bybit-Bolsters-Compliance-with-Appointment-of-New-Chief-Legal-Compliance-Officer.html.

Finally, should the Court grant Rippling's Application, Rippling will ensure the Letter Rogatory is, to the extent necessary, professionally translated to German, the official language of the Austrian courts.

## IV.    CONCLUSION

For the foregoing reasons, Rippling respectfully requests that the Court grant this Application, sign and affix its seal to the Letter Rogatory and return the same with original signature and seal to Rippling's counsel Joseph Sarles, address and email listed below.

Case No. 3:25-CV-2576 (CRB)

RIPPLING'S EX PARTE APPLICATION FOR ISSUANCE OF LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE IN PROCURING EVIDENCE FROM FOREIGN THIRD PARTY

DATED: July 17, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By  /s/ *Joseph Sarles*
Joseph Sarles

Alex Spiro (*pro hac vice*)
Maaren A. Shah (*pro hac vice*)
Samuel Nitze (*pro hac vice*)
Scott Hartman (*pro hac vice*)
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com
samuelnitze@quinnemanuel.com
scotthartman@quinnemanuel.com

Joseph Sarles (CA Bar No. 254750)
Kathleen S. Messinger (CA Bar No. 329983)
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
josephsarles@quinnemanuel.com
kathleenmessinger@quinnemanuel.com

Attorneys for Plaintiff
*People Center, Inc. d/b/a Rippling*

RIPPLING'S EX PARTE APPLICATION FOR ISSUANCE OF LETTER URF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE IN PROCURING EVIDENCE FROM FOREIGN THIRD PARTY