**RE:** *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB (N.D. Cal.)

**Dear Judge Cisneros**: This letter addresses a dispute between the parties related to Rippling's application for a letter of request (Dkt. 322) ("App."). Fact discovery closes January 15, 2027; expert discovery closes April 30, 2027; the last day to hear dispositive motions is May 28, 2027; the next case management conference is set for September 2, 2026; no trial date has been set.

**Deel's Position:**[1] Deel does not oppose some discovery of Bybit's records for the six deposits that Rippling's consultant, Sarah Wong, identifies as the funding source of the alleged payments to Keith O'Brien, totaling approximately $23,000 in a four-month window. (Specifically, the transactions dated December 3, 2024, January 7, 2025, February 6, 2025, February 13, 2025, March 10, 2025, and March 13, 2025.) In contrast, Deel opposes Rippling's attempt to take intrusive, wide-ranging discovery into 63 other transactions totaling ~$1.87 million, roughly 99% of the aggregate transaction value for the 69 total transactions. Neither Rippling nor Wong connect any of these 63 transactions to O'Brien. Indeed, Rippling concedes that 55 of these 63 occurred before or substantially after O'Brien's alleged spying. Rippling's relevance hook is that, according to Wong, these transactions are "indicative of money laundering." (App. at 6.) But money laundering is not one of the predicate acts alleged in Rippling's RICO count, and thus these transactions are not relevant. Moreover, Wong's Affidavit gets key (and basic) facts wrong—in the three examples of transactions that Wong says are consistent with money laundering, she identifies the address that received the funds as the address that paid O'Brien. She is wrong. Yet, on such flawed grounds, Rippling requests that this Court invoke the sovereign assistance of the Republic of Austria to compel a foreign company to turn over some of the most sensitive records a financial institution keeps: government-issued identification, dates of birth, home addresses, occupations and sources of income, and device and location data—all for individuals who Wong believes are likely strangers to this lawsuit and stand accused of nothing. Such discovery is neither relevant nor proportionate to the case and should be denied.




[1] Deel notes that, except as highlighted, it provided its position at noon on July 23, and Rippling provided its position (and the supplemental Wong affidavit) on July 24.

Rule 26(b)(1) limits discovery to "nonprivileged matter that is relevant to any party's claim or defense." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (issuing writ of mandamus to vacate an order compelling discovery untethered to a pleaded claim); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (disapproving "the use of discovery to engage in fishing expeditions."). Fifty-five of the 63 disputed transactions fall outside any pleaded conduct: 34 (approximately $563,000) predate O'Brien's alleged November 2024 recruitment, and 21 (approximately $1.27 million) postdate the last alleged payment, O'Brien's departure, and this lawsuit (filed March 17, 2025), including a single $478,000 transfer in December 2025. The remaining eight fall within the window of time in which O'Brien allegedly spied on Rippling, but Rippling does not tie them to any alleged payment to O'Brien. Records of who moved money through these accounts eight months before the alleged recruitment, or many months after this lawsuit was filed, do not bear on who paid O'Brien roughly $15,000 in early 2025. Moreover, Deel has already identified who paid O'Brien. *See* Ex. B to Hartman Aff..

Rippling defends the relevance 63 transactions based solely on Wong's opinion that they are "indicative of money laundering." (App. at 6.) But money-laundering is not an issue before the Court. Rippling's RICO count specifies its predicate acts and money laundering is not among them. (FAC ¶ 174.) Discovery must be tethered to the claims actually pleaded, not used to fish for new ones. *Williams-Sonoma*, 947 F.3d at 539-40. In any event, the money laundering characterization fails on its face. Money laundering requires transacting in the "proceeds" of a completed predicate crime, 18 U.S.C. § 1956(a)(1), or an intent to promote specific unlawful activity, *id.* § (a)(2), yet Wong identifies no predicate offense, no promoted unlawful activity, no victim, and no allegation that any funds are proceeds of anything. Wong's opinion rests entirely on transaction "patterns" and on a "gas" analysis that, by its own terms, does not establish common control or even that the nine addresses form a "network" at all. Rippling cannot take discovery on unpleaded claims. *See, e.g., WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 1961068, at *3–4 (N.D. Cal. May 2, 2024) (denying a letter rogatory as "plainly overbroad.").

Further, a letter rogatory that invokes a foreign sovereign's compulsory process must rest on a sound evidentiary basis; this one does not. Wong's affidavit misstates the facts in at least seven of the 69 transactions, including all three transactions it offers as its "representative examples" of the supposed laundering pattern. In each instance, the affidavit charts a large withdrawal as flowing to the address that paid O'Brien (the "Target Address") even though Etherscan, the very source Wong's affidavit identifies as reliable, shows the funds went to "Gas Address 7," an address three steps removed from the Target Address and not connected to O'Brien at all. (*Compare* Wong Aff. ¶ 48 & fig. 7 *with* Wray Decl. ¶¶ 7-10 & Exs. 1–7.) This is not a sufficient evidentiary showing for the expansive discovery Rippling seeks. *Soto v. CS Unitec, Inc.*, 2025 WL 3251631, at *2 (N.D. Cal. Nov. 21, 2025) (denying proposed letter of request containing unsupported and inaccurate assertions about the purpose of evidence sought); *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 291 (N.D. Cal. 2020) (denying foreign discovery "given the lack of evidentiary support for the . . . theory").

Lastly, the discovery sought, including for the six O'Brien-connected transactions, is overbroad and seeks private personal information from an Austrian entity subject to GDPR. For every account that touches any of the 69 transactions, Rippling's proposed letter would request that the Austrian government compel production of the most sensitive records a financial institution holds: full legal names, dates of birth, home addresses, government identification,

occupations and income sources, every deposit and withdrawal, device serial numbers, IP addresses, and physical "coordinates or location information," on a "worldwide" basis, for documents created "at any time," concerning foreign individuals whom no party alleges to be defendants, agents, or witnesses, and whom Wong says are most plausibly uninvolved third-party brokers. (Wong Aff. ¶¶ 19-21, 50.) This is a classic fishing expedition and should be denied. *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1023 (N.D. Cal. 2023) (holding, in a § 1782 proceeding, that "[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information.") (citation omitted).

**Deel's proposed compromise:** Deel does not oppose issuance of a letter of request limited to the six transactions that Wong claims funded the alleged payments to O'Brien and that has been narrowed to identification information (excluding, e.g., full transaction history, device use, geolocation, and income sources). As to the other 63 transactions, and the identity, transaction-history, device, and location records of the strangers behind them, the Court should decline to issue the proposed Letter of Request. Lastly, if the Court is at all inclined to issue the letter of request as drafted, Deel respectfully requests the opportunity to submit full briefing to respond to the roughly 45 pages of briefing and supporting affidavits that Rippling will have filed with its Application.

**Rippling's Position:** Rippling is investigating Bybit network transactions that are probative of Rippling's RICO claims against Deel and Deel's defenses. Deel's purported concerns about the "privacy" of third parties are manufactured. And Deel misstates the applicable law, which supports Rippling's requests. Deel is desperate to block this discovery because it will shed light on who was behind the crypto payments to Mr. O'Brien.

The discovery is likely to unveil who was responsible for the payments made to O'Brien, which is undisputably a critical issue in this case. Deel's corporate espionage was a sophisticated covert operation designed by the conspirators to be difficult to identify or trace. Cryptocurrency payments to Mr. O'Brien were made from a Target Address, which "shows a consistent pattern of receiving funds and quickly sending them elsewhere, likely operating as a pass-through account." Dkt. 323-1 ("Wong Report") ¶ 40. The Target Address itself has no identifying information, as it "is a self-hosted address, meaning that it is not affiliated with a centralized exchange." *Id.* ¶ 22. Therefore, to "identify the individual(s) controlling the Target Address," Rippling's cryptocurrency forensics expert Sarah Wong analyzed transaction fee payments associated with the Target Address to identify a network of nine addresses "likely controlled by a common person or entity" called the Target Network. *Id.* ¶¶ 26–27. As explained by Ms. Wong in her report[2], "the Target Network uses ByBit as part of its money laundering scheme" and "[r]ecords from ByBit are very likely to identify individuals who ultimately were responsible for paying Keith O'Brien, as well as individuals associated with the Target Network, and are also likely to demonstrate how the Target Network uses ByBit accounts to launder funds." *Id.* ¶ 52.

[2] Deel identifies a handful of typos in the Wong Report. Ms. Wong reviewed her Report and prepared an Affidavit correcting the typos, and confirming that she could find no others. *See* Ex. A (July 23, 2026 Wong Affidavit). These non-substantive revisions do not modify any of Ms. Wong's opinions about the relevance of the discovery sought in the letter rogatory or any of the requests in the letter rogatory.

**RE:** *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB (N.D. Cal.)

The full Target Network and its transactions are necessary to understand the flow of crypto payments to Mr. O'Brien, and suspected connections between that network and Deel or its affiliates and associates. Deel does not dispute any of these facts.

Deel's defenses also put the evidence Rippling seeks directly at issue. [redacted] The requested discovery will prove whether or not that is true.

Deel's effort to limit discovery to the six transactions is a thinly veiled effort to prevent Rippling from learning who was behind the payments to Mr. O'Brien. Deel agrees to a letter rogatory addressing just "the six transactions that Wong claims funded the alleged payments to O'Brien" coming from the Target Address. But these transactions alone would not identify all accounts owned and operated by the individual operating the larger Target Network behind the Target Address. As Ms. Wong explains, the payments to Mr. O'Brien "were a small portion of [the Target Address's] many transactions." Wong Report ¶ 39. Identifying the other accounts and the network's OTC brokers, used for currency exchanges, is what points to the controller: "[i]dentifying OTC brokers used by a laundering network … can help identify the people controlling the network." *Id.* ¶ 50. Further, as explained in the Application, "if a connection is found between Deel (and affiliated entities) and control of the Target Network, evidence of Deel's payment(s) to O'Brien will be critical to proving Deel's influence in O'Brien's corporate espionage." Dkt. 322 ("App.") at 7. Transactions from before or after the payment window shown in Deel's chart above will identify who is funding and controlling the Target Network.

Only with the full set of transactions can Rippling fully understand and interpret the behavior of the Target Network. Based on an analysis of the 69 transactions covered by the Letter Rogatory, Sarah Wong, Rippling's cryptocurrency expert, was able to conclude that the "Target Network is likely controlled by a ***single*** person or entity, and the transactions in the Target Network show a consistent pattern of pass-through behavior with ***no*** economic purpose other than to obfuscate." App. at 6 (emphasis added). Know Your Customer information and details related to all of these transactions from the full time period could confirm Ms. Wong's preliminary analysis and identify the single individual or entity responsible. So, to fully understand the scope and scale of the apparent criminal enterprise behind the Target Network, all of the transactions are necessary—which is why Ms. Wong identified them and included them in her Report.

The cases cited by Deel about irrelevant discovery do not help it. The demonstrated relevance of these requests distinguishes Rippling's letter from the cases Deel relies on. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020) (denying discovery where it was intended to "find a client to be the named plaintiff before a class action is certified" as outside the scope of Rule 26); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1070 (9th Cir. 2004) (addressing request for "after-acquired evidence" in wrongful termination of members of a protected class, which was

not relevant as a matter of law). Rippling's showing of relevance easily clears the hurdle required under Deel's cited case law. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.,* 2024 WL 1961068, at *4 (N.D. Cal. May 2, 2024) (explaining request for letters rogatory must include "some initial showing that it has evidence for [the at-issue] affirmative defense"); *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 292 (N.D. Cal. 2020) (approving letters rogatory where information is "relevant to the claims and defenses in this case," "necessary to adequately respond to [party's] allegations," "not available in the United States.").

Deel's purported concerns about privacy and burden are disingenuous. Deel claims [redacted], so Deel has no reason (or grounds) to assert privacy rights related to them. And, as Deel's own authority makes clear, Deel's privacy concerns would not justify denying the discovery. *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1023 (N.D. Cal. 2023) (finding request "not overbroad, unduly intrusive, or burdensome" where it sought "the name, gender, phone number, and date of birth, for the individual(s) who used a specific Google email account during a specific date range."). Nor does Deel have any grounds to complain of burden, when Deel itself is not the recipient of the requests at issue.

Finally, Deel's argument that "money laundering" is not part of Rippling's RICO claim is just an attempt to confuse the issues. As discussed above, the evidence is relevant to corroborating O'Brien's testimony that Deel was responsible for the crypto payments, as well as to establishing the membership, scope, and continuity of the RICO conspiracy. But even apart from this direct relevance, money laundering by Deel would also be relevant.[3] The caselaw is clear that Rippling may use other criminal conduct to prove its RICO claims. *United States v. Cervantes*, 170 F. Supp. 3d 1226, 1234 (N.D. Cal. 2016) (separate criminal incidents can be evidence of the scope of RICO conspiracy including its "time period, location, identities of conspirators, the nature of an enterprise and a conspiracy, the methods by which the enterprise and conspiracy operated, and particular statutory violations or types of racketeering activity"); *United States v. Nelson*, 2024 WL 1244262, at *6 n.2 (N.D. Cal. Mar. 11, 2024) (crimes which "do not qualify as racketeering acts … can still be considered as enterprise evidence and serve, in part, as a basis for the inference that a defendant who joined the enterprise engaged in criminal activity.").

The requested discovery is directly relevant to Rippling's claims and Deel's defenses, and Deel has no legitimate grounds to block it.

**Rippling's proposed compromise:** If Deel would like to moot any of the requests at issue, Deel could identify the Deel affiliates or entities responsible for the transactions. Otherwise, Rippling respectfully requests that the Court grant the full scope of the requests as presented in Rippling's letter rogatory.

[3] As explained in the Wong Report, the pattern of payments here provides strong indication that the transactions were designed to transfer crime proceeds to promote or conceal criminal activity. Wong Report ¶ 31 ("the Target Network is used to obfuscate the source and destination of funds on the blockchain, consistent with money laundering"). This is "money laundering" in violation of 18 U.S.C. § 1956: it includes both "concealing or disguising the nature or source of illegal funds," and transfers "designed to conceal or disguise the location, ownership, or control of the funds." *Regalado Cuellar v. United States*, 553 U.S. 550, 558–59 (2008).

**RE:** *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB (N.D. Cal.)

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*/s/ Quyen L. Ta*
Counsel for Defendant Deel, Inc.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*/s/ Scott Hartman*
Scott Hartman
Counsel for Plaintiff People Center, Inc. d/b/a Rippling