**RE: *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.*, Case No. 3:25-cv-02576-CRB**
**Joint Letter re: Motion to Quash Gemini Subpoena**

August 5, 2026

<u>**VIA CM/ECF**</u>

The Honorable Lisa J. Cisneros
USDC, ND Cal., San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

**Re:**    *People Center, Inc. d/b/a Rippling v. Deel, Inc., et al.,* Case No. 3:25-cv-02576-CRB
(LJC): Joint Discovery Letter

Dear Judge Cisneros:

Pursuant to the Court's Standing Order (effective February 17, 2026), Plaintiff People Center, Inc. d/b/a Rippling ("Rippling") and Defendant Daniel J. Westgarth submit this Joint Discovery Letter. This letter addresses a dispute between Daniel Westgarth and Rippling regarding Rippling's June 11, 2026 subpoena duces tecum ("Subpoena") served on nonparty Gemini Trust Company, LLC d/b/a Gemini Exchange ("Gemini"). Fact discovery closes January 15, 2027; expert discovery closes April 30, 2027; the last day to hear dispositive motions is May 28, 2027; the next case management conference is set for September 2, 2026; no trial date is set.

| **O'MELVENY & MYERS LLP** | **KEKER, VAN NEST & PETERS LLP** |
|---|---|
| */s/ David R. Eberhart* | */s/ Andrew F. Dawson* |
| David R. Eberhart | Andrew F. Dawson |
| *Attorney for Defendant Daniel J. Westgarth* | *Attorney for Plaintiff People Center, Inc. d/b/a Rippling* |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other party signatories.

DATED: August 5, 2026                 */s/ David R. Eberhart*

**Westgarth's position**: The Court should quash the Subpoena because it seeks irrelevant documents and cannot overcome Westgarth's privacy interest in his private information held by Gemini—a cryptocurrency exchange and custodian bank. The Subpoena is unbounded by date, counterparty to the transaction, or subject matter limitation that might reasonably tether it to the parties' claims and defenses: it seeks "[a]ll KYC Information [including all identity verification documents, personal identifying information, IP addresses, and account records] and all Transaction Information relating [to] any account, deposits, transactions relating to Daniel John 'Dan' Westgarth or [his] email address." Ex. A. In short, it is the epitome of a fishing expedition: it seeks anything and everything related to Westgarth in the possession of a third party in the hope something useful might turn up. The Court should quash or modify the Subpoena and order the return or destruction of produced documents that are rendered non-responsive.

**Background:** On June 24—before Gemini's response deadline (July 1)—Westgarth sent objections to Rippling, asked to meet and confer, and asked Rippling to instruct Gemini to abstain from production pending the dispute. Exs. B, C. The next day, Westgarth separately asked Gemini not to produce until his dispute with Rippling was resolved. Ex. D. When Westgarth and Rippling conferred, Rippling declined to discuss any limitations to the Subpoena with anyone but Gemini and argued Westgarth's email to Gemini was improper. Ex. E; Gosewehr Decl. ¶ 6. Gemini later contacted Westgarth to inquire about the status of the parties' meet and confer efforts; Westgarth responded (copying in Rippling) that Rippling had declined to confer with him about the Subpoena's scope and asserted his privacy interest in the requested documents. Exs. F, G, H at 12-13. When Rippling contended that communication was improper, Westgarth asked for a three-way meet and confer with Rippling and Gemini; Gemini declined. Ex. H at 11-14. That day, July 24, Westgarth declared an impasse, informed Gemini and Rippling that he would file a motion to quash, and proposed a briefing schedule. *Id.* at 9-10. One business day later, Rippling informed Westgarth that Gemini had produced documents. *Id.* at 9. At Rippling's request, Westgarth and Rippling conferred again on July 29, but remained at an impasse. *Id.* at 4. The parties negotiated a briefing schedule, and Rippling refused to treat Gemini's document production as "Attorneys' Eyes Only" pending this motion. *Id.* at 3-4. Today, after exchanging initial briefs, Rippling belatedly stated it would not seek further production from Gemini. Gosewehr Decl. ¶ 14.

**Argument:** The Court should quash or modify the Subpoena because it seeks Westgarth's personal, private information that is irrelevant to the case. A court must modify or quash a document subpoena where it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FRCP 45(d)(3)(A)(iii), (iv). "[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012).

***First,*** Westgarth "plainly has standing to protect [his] own right to privacy." *Littlefield v. Nutribullet*, LLC, 2018 WL 5264148, at *5 (C.D. Cal. Jan. 22, 2018). The Subpoena seeks (a) every cryptocurrency transaction he engaged in on the Gemini platform and (b) his personal financial account records. *See* Ex. A, Attach. A, ¶¶ 3–4. Courts routinely find a privacy right in such information and, contrary to Rippling's claim, require no more "particularized" showing to object to a subpoena. *See, e.g.*, *Tattersalls Ltd. v. Wiener*, 2019 WL 13204024, at *1 (S.D. Cal. Nov. 19, 2019) (recognizing a right to privacy in financial information); *City of San Jose v. JUM Glob., LLC*, 2018 WL 4520981, at *3 (N.D. Cal. Sept. 21, 2018). Rippling cites no authority to the contrary. Its reliance on *Doe v. Kaiser Found. Health Plan, Inc.*, is misplaced; the moving party asserted ***third-party*** privacy interests, not its own. 2023 WL 8714880, at *4 (N.D. Cal. Dec. 17, 2023). Rippling's remaining arguments are contrary to law. To the extent they would have Westgarth justify his privacy interest in each document post-production, that is not part of the inquiry: the court must "balance the need for the particular information against the privacy right asserted," *Knoll*, 2012 WL 4466543, at *2, and the indisputable privacy interest in Westgarth's financial records outweighs any marginal relevance. And, only "***[i]f the balance of interests weighs in favor of production***, any privacy concerns can then be addressed with a protective

order," not the other way around. *Tattersalls*, 2019 WL 13204024, at *1 (emphases added).

***Second,*** the Subpoena must be quashed or modified because it is completely untethered from the allegations in the operative FAC involving Westgarth. Rippling alleges Westgarth was involved in a single, allegedly-improper payment of USD to Keith O'Brien using Revolut. FAC ¶ 64. No allegation involves (a) cryptocurrency payments by Westgarth or (b) Gemini. Westgarth's verified interrogatory responses confirm he made only one payment to O'Brien (in USD, not crypto) with one account, Revolut. Ex. J at 7-8. Compounding these problems, the Subpoena is unlimited by date, transaction counterparty, or subject, instead seeking ***all*** transaction records and ***all*** "identity verification documents…personal identifying information, IP addresses, and account records and agreements" possessed by Gemini. Ex. A, Attach. A, ¶ 3. Courts regularly quash or modify subpoenas seeking similarly overbroad discovery of private financial information. *See, e.g.*, *JUM Glob., LLC*, 2018 WL 4520981, at *3 (quashing subpoena for defendant's bank records as not relevant to pled fraud claim); *Tattersalls,* 2019 WL 13204024, at *1; *Zucchella v. Olympusat, Inc.*, 2020 WL 13250450, at *4 (C.D. Cal. Apr. 1, 2020) (narrowing subpoenas seeking six years of financial records to four-month window surrounding single alleged payment). Rippling's relevance arguments misstate and obscure facts. They claim unidentified "Defendants" as the source of crypto payments to Keith O'Brien, but ignore that no such payments involve ***Westgarth***. Rippling contends it is "plausible" Westgarth was involved in crypto payments because he made one, non-crypto payment from his wife's Revolut account but provide no logical basis for this claim. Rippling thus falls back on an amorphous theory of a "suite of addresses and transactions" comprising a "cryptocurrency network" that is "necessary to understand the flow of crypto payments." But a similar theory was rejected in *Tattersalls*. There, plaintiffs sought 10 years of bank records, arguing they were relevant to RICO claims to show that the defendants used shell entities, used co-conspirators, and moved funds among banks to conceal fraudulent activities. 2019 WL 13204024, at *2. The court quashed the subpoenas, finding that "discovery of financial or other private information must be narrowly circumscribed," and the subpoenas were on their face overly broad. *Id.* Here the overbreadth is indisputable: the produced transaction records consist entirely of transactions predating the timeframe Rippling has asserted is relevant. The overbreadth of the Subpoena justifies quashing it entirely, as Rippling "stands on overly broad requests and does not make a reasonable attempt to narrow them or to adequately explain the need for such a broad range of documents…" *Id.* at *3 (citing cases in accord). But at a minimum, the Subpoena must be limited: ***first, as to date***—to the period September 2022 to June 5, 2025, which is the timeframe Rippling has agreed is relevant (a period well beyond the November 2024 Revolut payment attributed to Westgarth). ***Second, as to subject matter***—the Subpoena should be limited to transactions between Westgarth and O'Brien—the sole person alleged to have received purportedly improper payments. FAC ¶¶ 3, 64.

***Third,*** this motion is timely and not moot. It is timely because Westgarth objected well before the subpoena's compliance deadline and attempted to resolve his objections with Rippling. *See Canton v. U.S. Foods, Inc.*, 2023 U.S. Dist. LEXIS 105367, at *6 (N.D. Cal. June 16, 2023) (party timely moved to quash by sending written objection to subpoenas and bringing matter to court within a reasonable time after informal efforts to resolve dispute concluded); *Friedman v. Old Republic Home Prot. Co.*, 2014 WL 12845131, at *2 (C.D. Cal. June 24, 2014) (objecting party's motion to quash not untimely where it made good faith efforts to resolve the matter informally). In support of its untimeliness argument, Rippling cites cases involving motions to quash by parties who objected only ***after*** the compliance deadline. Nor is this motion mooted by Gemini's production because the documents that exceed the proper scope should be returned or destroyed. *See Baptiste v. Lids*, 2013 WL 5708848, at *4 (N.D. Cal. Oct. 18, 2013) (limiting subpoena that sought party's private information and requiring return of non-responsive documents already produced); *In re Remec, Inc. Sec. Litig.*, 2008 WL 11338378, at *4 (S.D. Cal. July 28, 2008) (quashing subpoenas that violated third party's privacy rights and ordering return of improper production). Rippling cites no case denying a motion to quash as moot that involved an individual's privacy interests. Where the threat of continued and further access to protected materials exists, a challenge to

improper disclosure of protected materials is not moot, because "[the court] can grant partial relief by preventing further disclosure." *In re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1187-88 (9th Cir. 1981), *aff'd sub nom. United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983). Rippling's refusal to treat the Gemini production as "Attorneys' Eyes Only" while this motion is pending (Ex. H at 3-4) presents a genuine risk of further disclosure, including within Rippling.

*Finally,* Westgarth acted properly in seeking to protect his privacy interests in the requested records. Rippling's position mischaracterizes facts and cites inapplicable law. From the start, Westgarth objected *to Rippling* (objections Rippling ignored). Exs. B, C. Westgarth sent only a single email to Gemini on which Rippling was not copied; that email repeated the earlier request to Rippling that production be delayed while the parties' dispute was pending. Ex. D. Because Rippling objected to communications to Gemini, Westgarth copied Rippling in on every subsequent correspondence and attempted to confer with Gemini and Rippling together. Ex. H at 11-13, 15. Rippling cites *Lofton v. Verizon*, but *Lofton* held that communicating objections to a third party was not improper interference and noted that sanctions are typically appropriate only where the party had no valid grounds to object to the subpoena. 308 F.R.D. 276, 290, n.3 (N.D. Cal. 2015). Rippling's other cases involve conduct not present here: instructions to non-parties that subpoenas were "null and void as a matter of law" and thus compliance was not required (*Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580, at *1-2 (E.D.N.Y. Oct. 6, 2006)), and false statements to non-parties that subpoenas were untimely (*Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *3 (W.D.N.Y. Aug. 3, 2011)).

**Final Proposed Compromise:** The Subpoena should be modified to request only documents (1) dated September 1, 2022 to June 5, 2025 and (2) constituting transactions between Westgarth and O'Brien, and documents non-responsive to the modified Subpoena should be destroyed.

**Rippling's position:** A central issue in this case is the source of the cryptocurrency payments to Keith O'Brien while he was spying on Rippling for Deel's CEO. The overwhelming evidence indicates that Defendants were the source, but Defendants insist that a mysterious third party identified publicly only as A.D., acting independently of Defendants, was the true source. Rippling is entitled to take discovery to disprove Defendants' implausible defense theory. To that end, Rippling served a Rule 45 subpoena on non-party Gemini Trust Company, LLC, seeking records related to Defendant Westgarth's Gemini cryptocurrency account. Westgarth admitted that he used an account in his wife's name to provide the very first payment to O'Brien, and it is therefore plausible to believe Westgarth was personally involved in subsequent cryptocurrency transfers as well. ECF 57 ¶ 3; Dawson Decl., Ex. 2 at 7-8. More broadly, and as has been made clear in other pleadings, detailing the suite of addresses and transactions involved in the cryptocurrency network is "necessary to understand the flow of crypto payments to O'Brien, and suspected connections between that network and Deel or its affiliates and associates." ECF 328 at 4. Given the opaque nature of cryptocurrency networks—and the effort taken to obscure the ultimate source of the payments in this case—such discovery is the only way to develop the necessary evidence.

The Gemini subpoena was served on June 11, 2026, with a compliance date of July 1, 2026. Dawson Decl., Ex. 1. Westgarth told Rippling that he objected to the subpoena, but he never moved to quash or for a protective order before the compliance date as the rules require. Instead, unbeknownst to Rippling, Westgarth surreptitiously communicated with Gemini to induce noncompliance. *Id.*, Exs. 3, 4. More specifically, Westgarth emailed Gemini on June 25, 2026, claiming that he had "formally objected" to the subpoena and requesting that Gemini "not produce any documents in response to the subpoena" in light of the "objection." *Id.*, Ex. 4.

In reliance on Westgarth's interference, Gemini failed to respond to the subpoena by the compliance date. Rippling followed up with Gemini to secure compliance, and on July 22, Gemini disclosed that it had relied on Westgarth's representations in declining to timely respond. Dawson Decl., Ex. 3, 4, 5 at 8. Upon learning that, contrary to Westgarth's suggestion, no motion to quash

or for a protective order had been filed, Gemini produced responsive documents to Rippling on Monday, July 27, 2026. *Id.,* Exs. 5 at 7-8, 7 at 1.

Westgarth could have filed a timely motion for relief, but instead chose to improperly disrupt Gemini's compliance. That attempt failed, and Westgarth is not entitled to a second bite at the apple. His motion is moot and untimely, and it fails on the merits.

**First, this Court should not endorse Westgarth's improper interference with Rippling's subpoena to Gemini.** The law is clear: "[a] party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). "Nowhere in the Rule [45] is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 290 (N.D. Cal. 2015).

Here, Westgarth's conduct was improper from the start. Without providing notice to Rippling, he secretly communicated with Gemini to obstruct its timely compliance. Dawson Decl., Exs. 3, 4. Rippling only learned of this interference because Gemini disclosed it. Dawson Decl., Exs. 3, 4, 5 at 6, 8; *id.,* Ex. 6; *Lofton*, 308 F.R.D. at 290. Westgarth's interference reflects sanctionable conduct "usurping the court's authority" over Rule 45 subpoenas. *Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580, at *1-2 (E.D.N.Y. Oct. 6, 2006). Courts have imposed sanctions on counsel for precisely this behavior. *Id.* (sanctioning counsel "$1000 per letter" for sending third party subpoena subjects letters advising them "not to comply with [plaintiff's] subpoena"); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *3 (W.D.N.Y. Aug. 3, 2011) (same). At a minimum, this Court should not implicitly condone Westgarth's misbehavior by granting him the relief he initially sought to obtain unlawfully.

**Second, Westgarth waived his right to challenge the subpoena by failing to timely assert it.** "Where a party fails to file a motion to quash or a motion for protective order before the deadline for the non-party to respond to the subpoena, the party generally waives its right to object." *Khosroabadi v. Mazgani Soc. Servs., Inc.*, 2018 WL 1858153, at *3 (C.D. Cal. Mar. 1, 2018). The compliance date was July 1, 2026. Gemini has now completed its responsive production and Rippling confirmed it will not seek further productions pursuant to this subpoena. Dawson Decl. ¶¶ 9-11; *id.*, Exs. 5 at 7-8, 7 at 1, 8. Westgarth failed to move to quash before this date and has therefore waived any challenge. *See Handloser v. HCL Am., Inc.*, 2020 WL 4700989, at *5 (N.D. Cal. Aug. 13, 2020).

The cases Westgarth cites do not help him. In *Baptiste*, the moving party filed a motion to quash *before* production was made. 2013 WL 5708848 at *2. In *Remec*, the subpoena recipient produced records *before* the compliance deadline. *See* No. 3:04-cv-01948-MMA-WMC, Dkt. 138-1 at 4 (S.D. Cal. June 13, 2008). *Friedman* involved a subpoena *recipient* who complied with the deadlines in Fed. R. Civ. P. 45(d)(2). 2014 WL 12845131, at *2. And the movant in *Canton* raised their challenge with the court *on* the compliance date. 2023 U.S. Dist. LEXIS 105367, at *8. None support Westgarth's strategy to unlawfully attempt to thwart Gemini's compliance and, when that failed, pivot to filing an untimely motion to destroy responsive records *after* production occurred.

**Third, Gemini's production of responsive records has rendered any challenge moot.** Courts routinely deny motions to quash as moot where the subpoenaed party has already complied. *See Renaissance Custom Homes, LLC v. Elite Homes, LLC*, 2024 WL 6078711, at *1 (D. Or. Oct. 9, 2024); *Ocean Garden Products, Inc. v. Blessings, Inc.*, 2020 WL 1650033, at *1 (C.D. Cal. Apr. 3, 2020) (same). The same result should follow here: Gemini has already produced responsive documents, and Westgarth's motion is therefore moot. Westgarth's citation to *In re Grand Jury Investigation,* a case examining disclosure of confidential grand jury information under Fed. R. Crim. P. 6(e), has no bearing on this analysis.

**Fourth, Westgarth's challenge to Rippling's subpoena fails on the merits.** "As a general rule, a party does not have standing to quash a subpoena issued to a non-party." *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012). To establish standing, a party must demonstrate a personal right in the information to be disclosed and must "identify with sufficient particularity the reasons why the allegedly confidential material is 'so sensitive that production should not be required.'" *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *4 (N.D. Cal. Dec. 17, 2023). Regarding asserted privacy interests, courts deny motions to quash where the moving party "fail[s] to demonstrate that the protective order will not sufficiently address the asserted privacy interests." *Knoll,* 2012 WL 4466543, at *2; *Doe*, 2023 WL 8714880 at *4 (moving party "submitted no affidavit or declaration to even try to substantiate the particular harm disclosure under a Protective Order would pose").

Westgarth does not dispute that similar information has already been produced or is being produced in discovery. Dawson Decl., Exs. 1, 5 at 2, 9 at 2-3. In the parties' efforts to meet and confer, Westgarth failed to articulate any particularized privacy interest or any way the subpoena could be tailored to protect his alleged privacy interest, preferring instead to use the alleged privacy interests as a pretext to quash the *entirety* of the subpoena. *Id.,* Exs. 5 at 2, 9 at 2-3. The pretextual nature of Westgarth's objection is further demonstrated by his post-production conduct. Rippling was willing to meet and confer about any materials Westgarth believed to be particularly sensitive, only for Westgarth to respond that *every single page of the production* must be afforded special treatment. *Id.*, Ex. 5 at 1-2. As *Doe* explained, a party "overreaches by seeking a remedy (complete quashing of the subpoenas) without considering protective order provisions which would limit the use of discovered documents." 2023 WL 8714880, at *5. Westgarth's overreaching betrays that his true goal is not to protect his privacy interests. It is to suppress relevant evidence. Indeed, Westgarth's so-called "compromise" proposal seeks to control the scope of Rippling's investigation and is yet another tactic to avoid scrutiny of his and Deel's web of cryptocurrency transactions to fund their illegal conduct. *See* Dkt. 328 at 3-5.

Indeed, even if Westgarth had articulated a particularized privacy interest, this Court's Protective Order provides more than sufficient protection. Westgarth entirely fails to consider the protections afforded by the Protective Order, which categorically precludes the speculative harm he identifies. He complains, for example, that there is a "threat of disclosure to others," but the Protective Order bars such disclosure and restricts use of such materials to this case. For this reason, courts regularly find that a movant's privacy interests are adequately protected by a protective order. *See Knoll*, 2012 WL 4466543, at *2; *Doe*, 2023 WL 8714880 at *4. The Protective Order here provides that the Gemini production, like any other third-party subpoena recipient's production, is presumptively treated as "CONFIDENTIAL," providing robust protections for private information. ECF 74 § 9(a). Westgarth has not and cannot establish that such protections are insufficient, and none of the cases on which Westgarth relies–*JUM, Tattersalls, Zucchella*– excuse his failure to carry his burden.

Setting aside Westgarth's failure to address the Protective Order's protections, a privacy interest cannot be used as a pretext to raise general relevance or burden objections. A party's objections that a subpoena to a non-party seeks irrelevant information or would impose an undue burden "are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected." *Renaissance*, 2024 WL 6078711, at *1; *Ocean Garden*, 2020 WL 1650033, at *1 (party asserting privacy interest still "lacks standing to object on grounds of burden, over breadth, and/or irrelevance" to a subpoena to a non-party). Not only has Gemini not objected, it has *produced* responsive records. Westgarth has no basis to raise a post-hoc challenge to the relevance of records Gemini already produced.

In sum, Westgarth asks this Court to grant extraordinary relief: destroying third-party records already produced in response to a valid subpoena, based on an untimely motion brought by a party who lacks standing and who attempted to achieve the same result through improper interference. The Court should decline to do so.

5