United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEOPLE CENTER, INC.,

Plaintiff,

v.

DEEL, INC., et al.,

Defendants.

Case No. 25-cv-02576-CRB (LJC)

**ORDER RESOLVING DISCOVERY LETTER BRIEF REGARDING LETTER ROGATORY**

Re: Dkt. Nos. 322, 328, 331, 341

The parties filed a Joint Discovery Letter, Dkt. No. 328, regarding Plaintiff People Center, Inc. d/b/a Rippling's (Rippling) application for a letter of request for international judicial assistance (the Letter Rogatory), Dkt. No. 322, in which Rippling requests assistance procuring documents from foreign third party Bybit EU GmbH (Bybit EU). Defendant Deel, Inc. (Deel) requested, and was granted, the opportunity to file supplemental briefing. Dkt. Nos. 331, 341. Rippling seeks the Republic of Austria's judicial assistance in compelling Bybit EU's production of documents related to sixty-nine transactions that Rippling claims are probative of its RICO claim. Deel opposes Rippling's request seeking Bybit EU's documents related to sixty-three of these sixty-nine transactions on the grounds they fall outside the relevant alleged payment period, are unrelated to payments to Keith O'Brien, and are not otherwise probative.[1] Rippling requests that the Court sign and affix its seal to the Letter Rogatory. Having considered the parties' briefing, the factual record, oral argument, and the applicable authorities, the Court GRANTS Rippling's request for a Letter Rogatory.

[1] Deel does not oppose Rippling from seeking documents related to the transactions that took place on December 3, 2024, January 7, 2025, February 6, 2025, February 13, 2025, March 10, 2025, and March 13, 2025.

United States District Court
Northern District of California

## I. BACKGROUND

Founded in 2016, Rippling is a software company that offers a global workforce management system for businesses to manage internal workflows, including human resources, IT, and finance. Dkt. No. 57 at ¶ 13. Rippling's worldwide customers are business enterprises ranging from small businesses to larger, enterprise-level customers. *Id.*

Founded in 2019, Deel is a global workforce management software that connects employers in over 150 countries with remote workers through a platform that manages global human resources, payroll, and compliance. Dkt. No. 89 at 11–12.

Bybit is a Dubai-based centralized cryptocurrency exchange with an Austrian subsidiary. Dkt. No. 322 at 4. Bybit EU is headquartered in Austria and Austria is not a signatory to the Hague Evidence Convention. *Id.* at 5; *see* Austria Judicial Assistance Information, U.S. Dep't of State (Mar. 15, 2023), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Austria.html.

Rippling brought six causes of action against Deel, among other defendants, in its First Amended Complaint (FAC):

> 1) RICO, 18 U.S.C. § 1962: against Deel, Alex Bouaziz, and Philippe Bouaziz;
> 2) Conspiracy to Violate RICO, 18 U.S.C. § 1962(d): against all defendants;
> 3) Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*: against Deel;
> 4) Tortious Interference with Contract: against Deel;
> 5) Aiding and Abetting Breach of Fiduciary Duty: against Deel;
> 6) Unfair Competition, Cal. Bus. & Prof. Code § 17200 *et seq.*: against Deel.

Dkt. No. 57 ¶¶ 170–220. Judge Breyer dismissed Rippling's state law claims (causes of action 4–6). Dkt. No. 174.

Rippling alleges that Deel conducted a "top-down, centrally orchestrated . . . criminal operation" wherein Deel recruited Keith O'Brien, a Rippling employee, to "direct[] the near-daily theft of trade secrets and confidential Information." Dkt. No. 57 ¶¶ 1–2. Rippling alleges, among other things, that O'Brien was compensated for his espionage, first in fiat currency and then in cryptocurrency payments to O'Brien's Blockchain.com cryptocurrency account. *See id.* ¶¶ 3, 64–

United States District Court
Northern District of California

66; *see* Dkt. No. 57-1 ¶¶ 12–13.

Rippling retained cryptocurrency forensics expert Sarah Wong to investigate the ownership of a certain cryptocurrency address—the "Target Address"—which allegedly made payments to Mr. O'Brien and demonstrates a pattern of transactions belying a "pass-through account." Dkt. No. 328 at 3. Although the Target Address has no identifying information, Ms. Wong analyzed cryptocurrency transaction fee payments (so-called "gas") to identify a network of nine addresses that she claims are "likely controlled by common person or entity." *Id.* These nine addresses comprise the "Target Network." *Id.* Ms. Wong claims that the Target Network "uses Bybit as part of its money laundering scheme" and that the records sought are "very likely" to uncover the identities of the Target Network, and thus who was compensating Mr. O'Brien. *Id.* Because cryptocurrency exchanges are not publicly displayed on a blockchain, Rippling seeks Bybit's internal exchange records to identify the "Know Your Customer" (KYC) and transaction information associated with the Target Network. Dkt. No. 322 at 4. Rippling represents that it has sought the discovery directly from Bybit in both Dubai and Austria but was directed to report the matter to local law enforcement before Bybit would assist. *Id.* Rippling contends that discovery on the whole of these sixty-nine transactions, including those outside the payment window of Mr. O'Brien's alleged spying period, are needed to identify the Target Network's over-the-counter (OTC) brokers and ultimately who is funding and controlling the Target Network. Dkt. No. 328 at 4.

Deel does not oppose discovery of Bybit's records for six deposits that Ms. Wong identified as the funding source of the alleged payments to Mr. O'Brien, totaling approximately $23,000 over a four-month period. *Id.* at 1. However, Deel does oppose discovery of the remaining sixty-three transactions, totaling approximately $1.87 million, on the grounds that the discovery is neither relevant nor proportionate to the claims and defenses, with fifty-five of the transactions occurring outside the Mr. O'Brien's alleged spying period. *Id.* Deel argues that fifty-five of the sixty-three transactions (approximately $563,000) occurred before Mr. O'Brien's alleged November 2024 recruitment and twenty-one (approximately $1.27 million) postdate the last alleged payment, O'Brien's departure, and this lawsuit, including a single transaction

United States District Court
Northern District of California

($478,000) in December 2025.

## II. LEGAL STANDARD

Federal district courts have authority to issue letters rogatory. *See* 28 U.S.C. § 1781(a)(2); 22 C.F.R. § 92.54; Fed. R. Civ. P. 28(b); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) ("A letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness."). Federal courts have "inherent power to issue Letters Rogatory" and discretion in the exercise of said authority. *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958); *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 288 (N.D. Cal. 2020). "When determining whether to exercise its discretion, 'a court will generally not weigh the evidence sought from the discovery request nor will it attempt to predict whether that evidence will actually be obtained.'" *Scalia*, 337 F.R.D. at 288 (quoting *Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007)). Instead, a court applies "Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure." *Id.*

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy . . . is defined broadly." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). "Motions requesting issuance of a letter of request or letter rogatory should generally be granted," and "the opposing party must show good reason for a court to deny an application for a letter rogatory." *Zoho Corp. Pvt. Ltd v. Freshworks, Inc.*, No. 20-cv-01869, 2021 WL 2769009, at *2 (N.D. Cal. July 2, 2021) (citation modified) (collecting cases).

Judicial assistance between the United States and Austria is governed by Article 5 of the Vienna Convention on Consular Relation, and Article 5(j) of the Vienna Convention acknowledges that the use of Letters Rogatory is an appropriate method for requesting evidence located in a foreign State. *See* Vienna Convention on Consular Relations, art. 5(j), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

## III. DISCUSSION

As a preliminary matter, the parties do not dispute Rippling's use of the Letter Rogatory

process in this context. The Court agrees this is appropriate where, as here, the custodian is a non-signatory to the Hague Evidence Convention. *See, e.g., Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385, 2007 WL 1815472, at *1 (N.D. Cal. June 20, 2007). The parties further agree that discovery on the six transactions during Mr. O'Brien's alleged payment window are warranted. The Court need only determine whether discovery on the remaining sixty-three transactions is warranted here. For the following reasons, the Court finds discovery on those transactions is appropriate.

*First*, Rippling need not have specifically alleged "money laundering" as a predicate for its RICO claim for such discovery to be relevant to the RICO claim. Rippling is entitled to use other criminal conduct to prove its RICO claims, including allegations of money laundering in a criminal enterprise. *See United States v. Cervantes*, 170 F. Supp. 3d 1226, 1234 (N.D. Cal. 2016); *United States v. Nelson*, 2024 WL 1244262, at *6 n.2 (N.D. Cal. Mar. 11, 2024). Here, Rippling argues that discovery on the alleged money laundering scheme is relevant to the veracity of Mr. O'Brien's testimony that Deel compensated him for his alleged espionage activity, including uncovering the "membership, scope, and continuity" of the alleged criminal enterprise. Dkt. No. 328 at 5. Further, as Rippling correctly observes, the discovery sought is relevant to Deel's specific defenses. Dkt. No. 329-*2* at 4–5 (making claims regarding payments). Thus, the Court finds the sought-after discovery relevant to both the claims and the defenses in this action.

*Second*, the Court is not persuaded by Deel's purported concerns about privacy and burden. As Rippling observes, Deel disclaims any connection to the transactions and is not the recipient of the requests. Dkt. No. 328 at 5. This Court has previously addressed parties' objections to subpoenas served on third parties. *See, e.g., In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024 WL 3416644, at *2–3 (N.D. Cal. July 14, 2024). A party generally must have a cognizable interest in the documents at issue to bring a motion to quash a subpoena under Rule 45 of the Federal Rules of Civil Procedure; it cannot bring such a motion based merely on relevance or burden. *Id.* at *2 (citing *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv04165-MMC (RMI), 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019)). Rule 26(c) allows somewhat more flexibility in seeking a protective order, but still turns

on a party showing that "its own interest is jeopardized by the discovery sought from that nonparty." *Id.* at *3 (quoting *Glass Egg*, 2019 WL 2499710, at *5). Deel cannot assert a burden objection when it is not the recipient of the requests. Counsel for Bybit may ultimately push back on Rippling's requests on privacy grounds, and counsel for Rippling may ultimately have to meet and confer, and potentially limit the categories of KYC information sought from Bybit. However, the Court will not preemptively limit the information Rippling seeks here, where the sole opposition before the Court has no standing to object.

*Third*, even if Deel had a cognizable privacy interest, its contention that only the six transactions within Mr. O'Brien's alleged payment window are relevant to this case misses the purpose of the requests. While it may be true that O'Brien received payments only six times, the purpose of the Letter Rogatory is to uncover the identity of unnamed co-conspirators relevant to Rippling's RICO claim. Mr. O'Brien is merely one piece of that puzzle. Limiting the requests to focus solely on six transactions would not provide a large enough sample size to base a robust forensic examination on. Ms. Wong contends that the identity or identities of OTC brokers is core to uncovering the identities of the alleged co-conspirators in the Target Network. Dkt. No. 329 at 4. Beyond the threshold relevance inquiry, it is not the Court's role at this juncture to weigh the evidence sought by Rippling and Ms. Wong. *See Scalia*, 337 F.R.D. at 288. It is certainly plausible that, after receiving the requested information from Bybit, Rippling still will not be able to connect Deel to the Target Network. However, this is not a reason to preclude Rippling from seeking the information in the first place. If Deel has nothing to hide, then it has nothing to fear. On the other hand, if Ms. Wong's suspicions are corroborated, then the information is surely relevant. The Court is not inclined, in its discretion, to pre-evaluate the evidence that Rippling seeks before it has even been obtained.

## IV. CONCLUSION

Based on the foregoing, the Court will approve and affix its signature and seal to the Rippling's Letter Rogatory and return the same with original signatures and seals to Rippling's counsel. The Court will rely on Rippling's representation that it will ensure the Letter Rogatory is, to the extent necessary, professionally translated to the official language of the Austrian court.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: September 2, 2026

LISA J. CISNEROS
United States Magistrate Judge