United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PEOPLE CENTER, INC.,
Plaintiff,

v.

DEEL, INC., et al.,
Defendants.

Case No. 25-cv-02576-CRB

**ORDER DENYING MOTION TO STRIKE AND FOR ADDITIONAL RELIEF; GRANTING MOTION TO COMPEL ARBITRATION; DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**

People Center, Inc., popularly known as Rippling, and Deel, Inc., are competitors in the marketplace for management software that helps firms handle tasks like payroll, human resources, and IT. See Order Denying Mots. to Dismiss in Part and Granting in Part; Denying Mot. to Strike; Denying Mot. for Att'ys Fees ("Order") (dkt. 174) at 2. In March of 2025, Rippling sued Deel, along with Alexandre "Alex" Bouaziz, Philippe Bouaziz, and Daniel "Dan" Westgarth, alleging that they had engaged in a corporate espionage scheme to try to steal confidential information from Rippling's workplace and internal documents. First Am. Compl. ("FAC") (dkt. 57). Rippling brought six claims, including a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"). Id. ¶¶ 170–220. This Court held that most of those claims—including the RICO claim—were plausibly pled and denied in part Deel's motion to dismiss on February 23, 2026. Order. Deel then filed a series of counterclaims against Rippling, Rippling's CEO Parker Conrad (as Counter-Defendant), and former Rippling employee Keith O'Brien (as Counter-Defendant). Deel's First Am. Countercls. ("FACC") (dkt. 263). Deel's counterclaims focused on a series of unfair and illegal business practices, ranging from trademark

United States District Court
Northern District of California

infringement to false advertising to a RICO claim of their own. See generally id. Rippling and Conrad filed a motion to dismiss, Rippling & Parker Conrad's Mot. to Dismiss Deel's First Am. Countercls. ("CD MTD") (dkt. 268), and O'Brien, whose affidavit detailed Deel's purported espionage scheme and was a core part of Rippling's initial pleadings, filed a joinder in support of Rippling's motion to dismiss, O'Brien's Notice of Joinder in Supp. Of Mot. to Dismiss Deel's First Am. Countercls. ("O'Brien MTD") (dkt. 267). A bevy of amendments, motions, and briefs followed. During the process, Rippling and Conrad (collectively "Rippling") filed a motion seeking to compel arbitration of several of Deel's counterclaims, Counter-Defs. Rippling & Conrad's Mot. to Compel Arb. of Deel's Am. Countercls. ("Arb. Mot.") (dkt. 272), and Deel filed a motion seeking to strike O'Brien's affidavit (along with several other forms of relief), Defs.' Mot. to Strike & for Additional Relief Based on Kieth O'Brien's Invocation of the Fifth Amend. ("Stike Mot.") (dkt. 317). Now, the Court assesses each of these motions and seeks to untangle the fray. The Court **DENIES** the motion to strike and for other relief, **GRANTS** the motion to compel arbitration, and **DENIES** in part and **GRANTS** in part the motion to dismiss.[1]

# I. BACKGROUND

## A. Parties to the Litigation

Rippling is a Delaware corporation with its principal place of business in San Francisco, California. FAC ¶ 13. Founded in 2016, Rippling is a software company that offers a global workforce management system for businesses to manage internal workflows, including human resources ("HR"), IT, and finance. Id. Rippling has offices worldwide, including a subsidiary in Dublin, Ireland. Id. Rippling's CEO is Parker Conrad. FACC ¶ 15.

Deel is a Delaware corporation with its registered headquarters in San Francisco, California. FAC ¶ 16. Founded in 2019, Deel is a global workforce management software

[1] Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for resolution without oral argument. The Court sets a status conference for November 13, 2026, at 9:30am to discuss next steps in this case.

United States District Court
Northern District of California

that connects employers in over 150 countries with remote workers through a platform that manages global human resources, payroll, and compliance. Id. Alex Bouaziz is the co-founder and Chief Executive Officer. Id. ¶ 17. Philippe Bouaziz is Alex's father and Deel's Chief Financial Officer, chairman, and purported whistleblowing contact. Id. ¶ 18. Dan Westgarth is the Chief Operating Officer. Id. ¶ 19.

### B. Factual Background

In its complaint, Rippling alleges the Deel and others conspired to, and conducted, a corporate espionage scheme to steal Rippling's trade secrets. FAC ¶ 1. In executing the alleged scheme, Deel CEO Alex Bouaziz hired Keith O'Brien, a Rippling employee based in Ireland, to act as a corporate spy for Deel. Id. ¶ 2. In exchange for cryptocurrency payments, O'Brien allegedly followed Deel's direction to unlawfully obtain confidential information from Rippling's internal systems and sent this information directly to Deel. Id. Rippling identified O'Brien as a potential corporate spy for Deel after discovering he was engaging in unusual search patterns on Rippling's Slack channels, which led Rippling to conduct a "honeypot operation" that revealed O'Brien's communications with Deel executives. Id. ¶¶ 115, 119–23, 129. Rippling then sought and obtained emergency relief from the High Court in Ireland to prevent O'Brien from destroying evidence related to the honeypot operation. When Agents arrived to serve O'Brien with the court order on March 14, 2025, he hid, fled, and then destroyed his phone. Id. ¶¶ 131, 134, 135–37. Rippling filed an initial complaint in this Court on March 17. Id. ¶ 140. On March 27, O'Brien agreed to meet with a court-appointed independent solicitor, where he turned over his personal devices and swore an affidavit disclosing his knowledge of Deel's espionage scheme. Id. ¶ 149; O'Brien Decl. (dkt. 56-1).

Deel's counterclaims tell a different story.

According to Deel, Rippling's suits and accusations are nothing more than an effort to cover up for Rippling's own misconduct. FACC ¶ 1. By this account, Rippling was founded by Conrad after he resigned from Zenefits, a business he founded and where he acted as CEO until the company came under investigation for regulatory noncompliance

United States District Court
Northern District of California

and Conrad departed. Id. ¶¶ 72–75. Conrad founded Rippling, in part, to use the company as a vehicle for "revenge" against those who supported his removal from Zenefits—a group that includes Deel because "one of the main Zenefits investors that fully supported removing Conrad from the company is now one of the largest investors in Deel." Id. ¶ 85. Deel claims Rippling has consequently engaged in a wide-spanning scheme to discredit Deel and steal its business opportunities. Id. ¶¶ 88–100. The counterclaims highlight several specific instances of alleged misconduct.

First, Rippling purportedly stole Deel's information and documents. Rippling engaged Brett Johnson as a Competitive Intelligence Manager starting as early as 2024. Id. ¶¶ 44, 104, 110. While serving in this role, Johnson created a Deel account belonging to a fake business—Quandary Insights, LLC—which Johnson used to access Deel's platform and record information "intended to be used only by legitimate Deel customers." Id. ¶¶ 102–03. Over the course of six months, starting in May 2024, Johnson used his Quandary account to generate "at least twenty . . . different employment agreements created by Deel for fake employee profiles across every different employment model that Deel offers to its customers, and downloaded/screen-captured at least 57 different proprietary Deel documents, including at least 30 different health insurance and benefits documents." Id. ¶ 104. To access Deel's platform, Johnson represented to Deel that he would only use the platform for Quandary's bonafide business purpose and would not "record[], duplicat[e], decompil[e], [or] reverse engineer[]" Deel's offerings "for the benefit of a competitor to build copycat products." Id. ¶ 120. Deel claims Rippling's leadership was both aware of, and directing, Johnson's activity. Id. ¶¶ 106–07.

Rippling purportedly did not engage in this conduct alone. Instead, Deel claims that Rippling coordinated with another competitor, the company Globalization Partners, which "fraudulently accessed Deel's system and stole Deel's proprietary information in almost exactly the same way that Rippling did." Id. ¶¶ 146–48. From January 2023 through at least June 2025, Globalization Partners created false accounts and accessed Deel information and documents, id. ¶¶ 150–61, all while "coordinating" and "actively

communicat[ing]" with Rippling to "harm Deel." Id. ¶ 148.

Second, Rippling purportedly engaged in a campaign of coercion and bribery to force O'Brien, during a period of mental and financial stress, to perjure himself by signing the affidavit detailing a false account of Deel's corporate espionage scheme. By Deel's account, O'Brien began repeatedly applying for jobs at Deel in 2022. Id. ¶ 167. As part of these efforts, he contacted Alex Bouaziz, along with others at Deel, hoping to discuss job opportunities. Id. ¶¶ 167–69. In 2024, O'Brien then informed Alex that he had founded and owned a consulting business, Global Payroll Geeks, which Alex identified as a potentially useful partner. Id. ¶¶ 170–71. Alex, and others at Deel, began to expand their communications with O'Brien, in the hopes of creating a business relationship with Global Payroll Geeks. Id. ¶¶ 173–75. For several months between 2024 and 2025, O'Brien then proceeded to send Alex unsolicited information about Rippling, over WhatsApp and Telegram, most of which Deel claims Alex ignored. See id. ¶¶ 176, 191–95.

Throughout this time, O'Brien repeatedly disclosed concerns that Rippling was violating Russian sanctions by facilitating payments into Russia in communications with the press, Alex, and Rippling senior management. Id. ¶¶ 196–207. Rippling then orchestrated the "honeypot" scheme with the goal of identifying "O'Brien [as] the source of the leak" about Rippling's Russian payment. Id. ¶ 208. Once O'Brien was discovered, Deel alleges Rippling engaged in a "campaign of intimidation and retribution with the intent of coercing him to change his story and point his finger away from Rippling and instead at Deel for 'spying.'" Id. ¶ 209. Between March 14, 2025, when O'Brien was served with the High Court order for Rippling's investigation, id. ¶ 210 and March 27, 2025, when O'Brien signed the cooperation agreement, id. ¶ 235, O'Brien sent repeated communications to officials at Deel, most prominently Deel's legal counsel Asif Malik, that evidenced a "mental breakdown." Id. ¶ 219–27. O'Brien apparently warned he was suicidal, id. ¶ 227, and wrote numerous emails where he claimed Rippling was threatening and coercing him, id. ¶ 228. O'Brien sought medical help and psychiatric assistance, before retaining his own legal representation on March 25. Id. ¶¶ 230–33. On March 26,



United States District Court
Northern District of California

O'Brien and his counsel met with the Irish Supervising Solicitor for 12 hours, including stints where O'Brien spoke to Rippling's legal team, and at the end O'Brien emerged with two agreements to cooperate with Rippling. Id. ¶¶ 234–35.

Deel refers to these agreements as the "[c]arrot and [s]tick" agreements. Id. ¶ 235. The stick agreement provided O'Brien with several financial benefits—including access to paid legal representation, indemnification from liability and damages awarded against him in the future, and reimbursement for his former legal costs—in exchange for O'Brien's agreement to not contact or assist Deel, or "disparage or damage the reputation or standing" of Rippling, in relation to the litigation. Id. ¶ 238. If O'Brien breaches the agreement, however, Rippling is entitled to "enter final judgment against [O'Brien] for the sum of €150,000." Id. ¶ 239. The carrot agreement included an "[e]x-gratia termination payment," whereby Rippling paid O'Brien an undisclosed amount to settle "any employment rights' claims" he may have against Rippling. Id. ¶ 240–41. The combination of these two agreements, Deel claims, amounted to the use of "bribery" and "pressure" to ensure that O'Brien perjured himself to support Rippling's legal claims. Id. ¶¶ 242–43.

Consequently, Deel claims Rippling is acting as a crime syndicate, through cooperation with Rippling Ireland, Conrad, Globalization Partners, O'Brien, and Johnson, with the "purpose of generating profits and/or financial benefits for its members by degrading Deel so the Syndicate can steal Deel's customers, employees, and market share." Id. ¶¶ 31, 34. By sharing information about O'Brien's affidavit, Rippling has purportedly already caused Deel to lose some of its customers. Id. ¶¶ 246–50.

Third, Rippling purportedly has used the Deel word trademark, by "acquiring and/or arranging" for the domain name deal.com—easily confused with deel.com—to re-route internet traffic to Rippling's website starting in "early or mid-2025." Id. ¶¶ 276–78.

Fourth, Rippling has engaged in advertising campaigns that consistently mischaracterize Deel's capacities and shortcomings in comparison to Rippling. Id. ¶¶ 319–65. In at least thirteen different instances, and across more than thirty different

statements, Rippling made representations about itself, Deel, or Deel's products and offerings that Deel contends were misleading or false. Id. Rippling also posted statements that mislead the public about the nature of the current legal proceedings, and the scope of their regulatory compliance efforts. Id. ¶¶ 298–318, 366–380.

### C. Counterclaims and MTD

Based on these allegations, Deel brings eight counterclaims against Rippling:

- Violation of 18 U.S.C. § 1962(c) ("RICO Counterclaim"): Alleging that the Rippling "crime syndicate" engaged in acts affecting interstate and foreign commerce, including the predicate act of wire fraud through Johnson's unauthorized access to Deel's website and offerings, and the predicate acts of wire fraud, witness tampering, and bribery through Rippling's efforts to coerce, entice, and intimidate O'Brien into offering false testimony against Deel. FACC ¶¶ 381–97.
- Violation of 18 U.S.C. § 1962(d) ("RICO Conspiracy Counterclaim"): Alleging that the Rippling "crime syndicate" conspired to violate RICO. FACC ¶¶ 498–402.
- Violation of 18 U.S.C. § 1030(a)(2), (b), and (b) ("CFAA Counterclaim"): Alleging that Rippling violated the Computer Fraud and Abuse Act's ("CFAA") protections through Johnson's unauthorized access to Deel's website and collection of Deel's information and documents. FACC ¶¶ 403–13.
- Violation of California Penal Code § 502 ("CDAFA Counterclaim"): Alleging Rippling violated California's counterpart to the CFAA—the California Comprehensive Computer Data Access and Fraud Act ("CDAFA")—through the same illegal acts alleged in the CFAA Claim. FACC ¶¶ 414–22.
- Violation of 15 U.S.C. § 1125(d) ("Cybersquatting Counterclaim"): Alleging Rippling violating the Anti-Cybersquatting Protection Act ("ACPA") by unlawfully controlling the website deal.com and directing users who visit it to Rippling's website. FACC ¶¶ 423–33.

United States District Court
Northern District of California

- Violation of 15 U.S.C. § 1114 ("Trademark Counterclaim"): Alleging Rippling infringed Deel's trademark and thus violated the Lanham Act through their use of the deal.com website. FACC ¶¶ 434–42.
- Violation of 15 U.S.C. § 1125(a) ("False Designation of Origin and Unfair Competition Counterclaim"): Alleging Rippling violated the Lanham Act by intentionally causing confusion through its use of the deal.com website. FACC ¶¶ 443–55.
- Violation of 15 U.S.C. § 1125(a) ("False Advertising Counterclaim"): Alleging Rippling has violated the Lanham Act by disseminating "unfair, deceptive, untrue and misleading advertising" regarding its own products, FACC ¶ 457, and making "false and/or misleading" statements about Deel's products, id. ¶ 458. See id. ¶¶ 456–62.

Deel seeks a variety of forms of relief, including injunctive relief, disgorgement, and extensive damages. Id. ¶¶ 463–74.

### D. Motion to Compel Arbitration

In addition to filing a motion to dismiss Deel's counterclaims, Rippling filed a motion to compel arbitration of some of Deel's counterclaims on June 5, 2026. Arb. Mot. In their motion, Rippling argued that Deel's website included Terms of Service which required disputes "relating in any way to" a "use" of Deel's services be directed to arbitration. Id. at 2. As a result, Deel's CFAA Counterclaim, CDAFA Counterclaim, and portions of Deel's RICO Counterclaim and RICO Conspiracy Counterclaim, all of which relied on claims Rippling or its agents had accessed Deel's websites without authorization, had to be referred to arbitration. Id. Deel filed a response on June 26, 2026. Deel, Inc.'s Opp. To Rippling & Parker Conrad's Mot. to Compel Arb. of the First Am. Countercls. ("Arb. Opp.") (dkt. 294). Rippling replied on July 10, 2026. Counter-Defs. Rippling & Conrad's Reply in Supp. of Mot. to Compel Arb. of Deel's Am. Countercls. ("Arb. Reply") (dkt. 313).

United States District Court
Northern District of California

### E. Motion to Strike and Other Relief

On July 14, 2026, Deel filed a motion to strike and for additional relief. Strike Mot. Deel argued that because O'Brien had invoked his Fifth Amendment rights and declined to respond to Deel's Interrogatories and Requests for Admission, that O'Brien's affidavit could not be meaningfully interrogated and should be struck, while the Court should bar O'Brien from testifying, grant Deel leave to move for reconsideration of the Court's denial of their motions to dismiss, and limit discovery decisions and rulings made based on O'Brien's affidavit. Id. at 1–3.

The same day as Deel's motion, Rippling's attorneys filed a letter explaining that O'Brien had confirmed that "he is not withholding responsive information based on the Fifth Amendment privilege and will not stand on that objection in responding to Defendants' discovery requests." Strike Letter Br. (dkt. 318) at 1. The letter brief included as an exhibit an email exchange between O'Brien's counsel and Deel's counsel, showing Deel filed their motion to strike immediately before a scheduled meet-and-confer with O'Brien and subsequently cancelled the meet-and-confer, despite insistence by O'Brien's counsel that he "is not declining and will not decline to respond to Deel's interrogatories or RFAs on the basis of his Fifth Amendment objection." See Stike Letter Br. Ex. A. Rippling then filed opposition to the motion on July 28, 2026, Rippling's Opp. to Deel's Mot. to Strike & for Additional Relief ("Strike Opp.") (dkt. 334), and Deel filed a reply on August 4, 2026, Defs.' Reply in Supp. of Mot. to Strike & for Additional Relief ("Strike Reply") (dkt. 347).

## II. DISCUSSION

Deel's motion to strike can be handled without reference to the motion to arbitrate or dismiss. The Court thus disposes of the motion to strike first. It then moves to the motion to compel arbitration, since the outcome of that motion will affect the claims that are still available to consider for the motion to dismiss. With arbitration settled, the Court finally moves to a consideration of which—if any—of Deel's counterclaims are sufficiently plead.

**A. Motion to Strike and for Additional Relief**

First, is the motion to strike and for additional relief. Deel argues that, because of O'Brien's invocation of the Fifth Amendment in response to Deel's interrogatories and Requests for Admission ("RFAs"), the Court should strike O'Brien's affidavit along with all of the allegations arising from it, grant leave for Deel to move to reconsider in part the decision regarding Deel's motion to dismiss, and curtail discovery predicated on O'Brien's affidavit. See generally Strike Mot. The Court **DENIES** all of these requests.

**1. Motion to Strike**

Rule 12(f) allows courts to "strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When a witness or party invokes the Fifth Amendment, Courts employ Rule 12(f) to "protect the integrity and truth-seeking function of the judicial system from the distortions that could occur if a witness could testify and then use the Fifth Amendment privilege to prevent any adversarial testing of the truth of that testimony." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 640 (9th Cir. 2012). Courts can strike written testimony under this standard the same as spoken testimony. Id. at 641 n.4. Motions to strike are nonetheless "disfavored," and generally "should be denied if there is any doubt whether the [stricken material] might be relevant in the action." Khasin v. Hershey Co., No. 5:12-cv-01862-EJD, 2012 WL 5471153, at *9 (N.D. Cal. Nov. 9, 2012). Whether to strike is "vested within the sound discretion of the trial court." Redlands Country Club Inc. v. Cont'l Cas. Co., No. CV-10-1905-GAF, 2011 WL 13224843, at *5 (C.D. Cal. Jan. 28, 2011).

Deel argues that O'Brien is using his Fifth Amendment rights as both a sword and a shield—wielding claims of misconduct against Deel through his affidavit while blocking any efforts to test those claims. Strike Mot. at 9–10. But Deel's zealousness in bringing this issue to the Court for resolution also discredits their need for such "disfavored" relief. As Rippling was quick to document, both through their letter submission to the Court and their opposition to the motion, Deel filed their motion to strike on the morning of their scheduled

meet-and-confer with O'Brien, and cancelled the meeting without giving O'Brien the opportunity to explain or withdraw his responses to the interrogatories and RFAs. See Strike Letter Br. at 1 n.1; Strike Opp. at 1. O'Brien's counsel sent emails before the meet-and-confer was cancelled, affirming that O'Brien "is not declining and will not decline to respond to Deel's interrogatories or RFAs on the basis of his Fifth Amendment objection." Strike Letter Br. Ex. A. Rippling affirmed in their opposition that O'Brien is not invoking his Fifth Amendment rights in response to discovery. Strike Opp. at 1. Courts have consistently been cautious of parties using motions to strike strategically to gain an advantage in litigation. See Redlands Country Club Inc., 2011 WL 13224843, at *5 (writing that motions to strike are viewed with disfavor in part because they are "often used as a delaying tactic" (quoting Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)). And even where courts have issued orders, they often follow upon rigorous efforts to get a response from a reluctant party, such as repeated "efforts to obtain additional discovery" and motions to compel. See $133,420.00 of U.S. Currency, 672 F.3d at 637 (detailing the district court's efforts to secure discovery before it issued an order to strike). Here, Deel actively avoided efforts to potentially resolve discovery disputes without this Court's intervention—cancelling meetings with O'Brien and refusing to accept (or even meaningfully engage with) assurances by his counsel that he would not invoke the Fifth Amendment. See Strike Letter Br. Ex. A. Given Deel's motion relates to testimony that this Court has little doubt is "relevant in the action," this Court finds no reason to grant this request for an uncommon and disfavored intervention.

This Court thus **DENIES** Deel's motion to strike.

**2. Motion to Reconsider**

Deel also asks that this Court grant them leave to move to reconsider in part the Court's decision denying Deel's motion to dismiss. Strike Mot. at 13. Rule 59(e) allows district courts to reconsider previous orders, but reconsideration is an "extraordinary remedy" that is meant to be used "sparingly in the interest of finality and conservation of judicial resources." Kona Enters. Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)

(internal quotations omitted). Courts thus grant such orders only in "highly unusual circumstances," such as "newly discovered evidence . . . clear error . . . [or] an intervening change in the controlling law." Id. For the same reasons that this Court denies Deel's motion to strike, it **DENIES** Deel's request to reopen issues already settled in its prior orders. Absent an emergency, extraordinary relief should neither be so hastily sought nor so easily granted.

**3. Motion to Curtail Discovery**

Finally, Deel asks the Court to curtail discovery predicated on O'Brien's affidavit, including by vacating certain orders from Magistrate Judge Cisnero. Strike Mot. at 14–15. While the Court may overturn non-dispositive magistrate judge orders under Rule 72(a), this authority is limited to rulings that are "clearly erroneous or contrary to law." CPC Pat. Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 804 (9th Cir. 2022) (quoting 28 U.S.C. § 636(b)(1)(A)). Deel's efforts to discredit any discovery decision that has relied upon O'Brien's affidavit is justified primarily by their claim that O'Brien is seeking to use his testimony as both a sword and a shield. Strike Reply at 15. But as already noted, it is not clear O'Brien is attempting to do so, much less that prior discovery decisions accounting for O'Brien's testimony were made in clear error. The Court **DENIES** this motion.

**B. Motion to Compel Arbitration of Deel's Amended Counterclaims**

Rippling moved to compel arbitration of several of Deel's counterclaims—the RICO Counterclaim, RICO Conspiracy Counterclaim, CFAA Counterclaim, and CDAFA Counterclaim—under the Federal Arbitration Act ("FAA"). See Arb. Mot. Rippling also requests that, to the extent portions of the RICO Counterclaim and RICO Conspiracy Counterclaim survive a decision to arbitrate, those counterclaims be stayed during the pendency of the arbitration.

When ruling on a motion to compel arbitration, courts must only determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is "yes," the court must enforce

United States District Court
Northern District of California

the arbitration agreement. Id.

### 1. A Valid Arbitration Agreement

First, the Court must decide whether a valid and enforceable arbitration agreement exists.

The arbitration clause at issue, which appears on Deel's website as part of their Terms of Service, requires that "any dispute, controversy, or claim . . . relating in any way to [] use of the Services will be settled by final and binding arbitration in San Francisco, California." Arb. Mot. at 2. The Terms of Service "apply to all . . . users . . . who wish to access or use" the "service and features [Deel] makes available to [users] on the [Deel] Platform." Id. Use of Deel's platform constitutes "agreement" to the Terms. Id. Courts routinely find arbitration agreements with similar terms and in similar contexts valid. See, e.g., Torbit, Inc. v. Datanyze, Inc., No. 12-cv-05889-EJD, 2013 WL 572613, at *3 (N.D. Cal. Feb. 13, 2013) (agreements requiring arbitration for claims "relating to or arising out of" the contract are broadly interpreted and enforced by courts); Mayes v. Int'l Mkts. Live, No. 22-cv-01269-TL, 2023 WL 7212555, at *4–*5 (W.D. Wash. Nov. 2, 2023) (compelling arbitration for agreement where use or access of a site, or enrollment as a member, constituted acceptance of the arbitration provision); Graf. v. Match.com, LLC, No. 15-3911-PA, 2015 WL 4263957, at *2–*5 (C.D. Cal. July 10, 2025) (similar). The parties here do not contest that validity of the clause.

Instead, Deel raises two arguments against the validity and enforceability of the agreement in this case: that the agreement arose out of fraud, and thus is invalid, Arb. Opp. at 4–6, and that Rippling cannot enforce the agreement as a third-party, id. at 7–10. The Court addresses each in turn.

#### a. Fraud

Deel argues that because Johnson accessed Deel's website through the fake company Quandary Insights, "[e]very element of the purported agreement—from the identity of the contracting party to the purpose of the engagement—was the product of deliberate fraud that Deel only discovered later." Id. at 5. This argument is unpersuasive.

To begin with, the fraud that Deel complains of—Johnson's misrepresentation of his affiliation—is itself a violation of Deel's Terms of Service, which requires that users must only access Deel's services for a "bona fide internal business purpose" and that the Services cannot be used for "the benefit of . . . unaffiliated third parties." See Arb. Mot. at 4. In so far as Deel's arbitration agreement reaches "any dispute, controversy, or claim . . . relating in any way to [] use of the Services," questions about a user's misrepresentations in creating an account would be included. Given the FAA's strong policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999). And defenses that go to the merits of a dispute are usually arbitrable. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1134 (9th Cir. 2000). Deel's Terms of Service thus favor compelling arbitration here.

Courts nonetheless maintain an important role as gatekeepers of arbitration clauses: "the FAA's savings clause permits agreements to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 1087, 1092 (9th Cir. 2012). Deel argues Johnson's misrepresentations fit into this category. But, importantly, Deel does not claim that the Terms of Service's arbitration provision, in particular, was induced by fraud. Instead, they claim that "every element of the purported agreement" was so induced. Arb. Opp. at 5. Yet courts are generally limited to resolving only those challenges "directed specifically to the validity of the arbitration provision itself." Caremark, LLC v. Chickasaw Nation, 43 F.4th 1021, 1029 (9th Cir. 2022). "[I]n the presence of an otherwise-valid arbitration provision, a challenge that the entire agreement was fraudulently induced . . . must be sent to the arbitrator." Id. (cleaned up); see also Translarity Inc. v. Grand Junction Semiconductor PTE Ltd., No. 24-cv-02423-SI, 2024 WL 4634059, at *7 (N.D. Cal. Oct. 29, 2024).[2]

---

[2] California law distinguishes between cases dealing with fraud in the execution and fraud in the inducement. See Hotels Nevada v. L.A. Pac. Ctr., Inc., 144 Cal. App. 4th 754, 763

Lastly, this Court is persuaded by Rippling's arguments that allowing arbitration provisions to be de-facto invalidated by a user's misrepresentations when agreeing to a company's terms of service would inadvertently undermine a substantial number of online arbitration provisions. See Arb. Reply at 8–9. The Supreme Court has been consistent and firm in rejecting efforts to diminish the scope of the FAA's mandates. See, e.g., Southland Corp. v. Keating, 465 U.S. 1 (1984); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006); Epic Sys. Corp. v. Lewis, 584 U.S. 497 (2018). Allowing an online user's misrepresentation of their identity to subvert an arbitration clause would not only run contra to this approach, but it would also create perverse incentives for users—allowing users to violate a company's terms of service and then use that violation to contravene the very arbitration those terms selected as the preferred approach for resolving disputes. Without convincing and clear authority to the contrary, this Court is reluctant to so substantially curtail arbitration enforcement.

**b. Third-Party Enforcement**

Deel also argues that any arbitration agreement that exists between itself and Johnson cannot be enforced in this suit, since Rippling is not a party to that agreement. Arb. Opp. at 7. Under California contract law, non-signatories cannot typically seek enforcement of contract provisions. See Namisnak v. Uber Tech., Inc., 971 F.3d 1088, 1094 (9th Cir. 2020).

Rippling invokes the doctrine of equitable estoppel to justify their motion.[3] Arb.

(2006). Fraud in the inducement occurs when a "promisor knows what he is signing but his consent is induced by fraud," while fraud in the execution occurs when a "promisor is deceived as to the nature of his act and actually does not know what he is signing." Id. (internal citations and quotations omitted). While fraud in the inducement challenges can be arbitrated, fraud in the execution renders an entire contract void, including an arbitration provision. Id. at 763–64. Here, Deel's allegations—that it was tricked into signing its arbitration agreement with a different entity than it thought it was contracting with—constitute fraud in the inducement. The case that Deel relies on heavily in its briefing, DKS, Inc. v. Corp. Bus. Sols., Inc., No. 2:15-cv-00132-MCE-DAD, 2015 WL 4645346, at *3–*5 (E.D. Cal. Aug. 4, 2015), deals with fraud in the inception (i.e. fraud in the execution).

[3] Rippling also invokes an agency theory. Arb. Mot. at 13. Because the Court finds that they can prevail on their equitable estoppel theory, the Court does not reach a conclusion on the viability of Rippling's agency theory.

Mot. at 13–14. Equitable estoppel helps ensure that signatories to arbitration agreements cannot "on the one hand, seek to hold [a] non-signatory liable pursuant to duties imposed by the agreement . . . but on the other hand, deny the arbitration provision's applicability because the defendant is a non-signatory." Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 528 (5th Cir. 2000). The doctrine applies when either "the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract" or "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." Herrera v. Cathay Pac. Airways Ltd., 104 F.4th 702, 707, 707 n.5 (9th Cir. 2024) (cleaned up).

Here, Rippling satisfies both justifications. Deel's claims relate to Johnson's unauthorized access to their website and documents and are thus directly related to Johnson's breach of the Terms of Service. While Deel tries to allay this point by arguing that "the unlawful conduct" at issue is "not a violation of the Terms of Service" but instead Rippling's "unauthorized and/or knowing access to Deel's platform in the first place," Arb. Opp. at 11, this Court fails to understand how the latter is easily separated from the former.[4] It is, most directly, Johnson's supposed violation of the Terms of Service that made his access to Deel's website and resources unauthorized. What's more, Deel's claims that Rippling used Johnson and Quandary Insights "to make an end-run" around its use and access restrictions also could qualify as allegation of interdependent misconduct intimately connected with the obligations of the underlying Terms of Service. Either way, Rippling is entitled to invoke equitable

[4] While the Court acknowledges the factual dispute between Deel and Rippling about whether Deel actively withdrew permission for Rippling to access its platform and services sometime in 2022, see FACC ¶408; CD MTD at 18, this Court need not resolve this issue here to rule on this motion. The terms of Deel's arbitration agreement extend to any claim "relating in any way to [] use of the Services." See Arb. Mot. at 2. As detailed below, the question of Johnson's unauthorized access undoubtedly at least "touch[es] matters" related to such broad language. See Simula, 175 F.4th at 721.

United States District Court
Northern District of California

estoppel to ensure Deel enforces its arbitration agreement.[5]

This is a valid and enforceable arbitration agreement.

**2. Whether the Agreement Encompasses the Dispute**

A plaintiff's allegations "need only 'touch matters' covered by the contract containing the arbitration clause" for arbitration to be required. See Simula, 175 F.3d at 719. All doubts are "resolved in favor of arbitrability." Id. Here, the Court sees little question that the claims relating to Johnson's unauthorized access and use of Deel services at least "touch matters" covered by Deel's broad arbitration agreement. The agreement applies to "all users" and encompasses "any dispute, controversy, or claim . . . relating in any way to [] use of the Services." See Arb. Mot. at 2. Johnson, by allegedly creating an account for a fictitious company and using that account to access Deel services, violated the Terms of Service. See id. at 4. The claims regarding his conduct clearly "relat[e] . . . to [his] use of the Services." And while Deel and Rippling dispute how much the issue of authorization is dependent upon the Terms of Service, see id.; Arb. Opp. at 10–12, this Court resolves any doubts in favor of arbitration.

**3. Conclusion for Motion to Compel Arbitration**

This Court thus **GRANTS** the motion to compel arbitration of the counterclaims relating to Johnson's access and use of Deel's services. The FAA allows courts to stay proceedings pending arbitration. 9 U.S.C. § 3. Accordingly, the Court **STAYS** the CFAA Counterclaim and CDAFA Counterclaim, which rely on the allegations against Johnson.

Rippling asks the Court to also stay the entirety of the RICO Counterclaim and RICO Conspiracy Counterclaim if the claims relating to Johnson are sent to arbitration. Arb. Mot. at 10–11. Deel argues this would result in unjustifiable claim-splitting for the RICO Counterclaim and RICO Conspiracy Counterclaim. Arb. Opp. at 12–13. Rippling's arguments are more persuasive. The Court's discretion to stay claims after an order to

[5] The Court rejects Deel's "unclean hands" argument, which relies heavily on its fraud claims, for the same reason that it finds the fraud claims insufficient to overcome the arbitration provision. See Arb. Opp. at 9–10.

United States District Court
Northern District of California

arbitrate is broad. Courts can stay claims where some of the litigants are not parties to the arbitration agreement when doing so "is likely to resolve factual questions coextensive" with the claims against the nonparties. See Jaffe v. Zamora, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014) (internal quotation omitted). And Courts often stay "all claims in an action, even if only some of the claims will be arbitrated." See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig., 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (collecting cases). The key question is whether a stay will preserve judicial resources and avoid potential confusion or inconsistencies. Jaffe, 57 F. Supp. 3d at 1248.

A RICO claim has four elements: "a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." See Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). The "heart of any RICO complaint" is the "allegation of a pattern of racketeering." Agency Holding Corp. v. Malley-Duff Assocs., Inc., 483 U.S. 143, 154 (1987) (emphasis added). To show a pattern, a plaintiff must show either open-ended continuity (past conduct with a threat of future repetition) or closed-ended continuity (a series of related predicate acts extending over a "substantial period of time"). See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240–42 (1989). Here, Deel's RICO Counterclaim alleges both open-ended and closed-ended continuity, with close-ended continuity arising from the link between Johnson's alleged misconduct and Rippling's purported bribery/coercion of O'Brien. See Deel's Opp. to Rippling's & Parker's Mot. to Dismiss the First Am. Countercls. ("CD MTD Opp.") (dkt. 291) at 14–15. Thus, the issues sent to arbitration are likely to clarify factual questions relevant for the determination of the RICO Counterclaim and RICO Conspiracy Counterclaim. This Court therefore **STAYS** the RICO Counterclaim and RICO Conspiracy Counterclaim in their entirety, to ensure judicial resources are not wasted on litigating claims that may be clarified by the outcome of the

United States District Court
Northern District of California

required arbitration.[6]

### C. Motion to Dismiss

With the Motion to Strike and Motion to Compel Arbitration resolved, this Court now turns to the Counter-Defendants' motion to dismiss the four remaining counterclaims: the Cybersquatting Counterclaim, Trademark Counterclaim, False Designation of Origin and Unfair Competition Counterclaim, and False Advertising Counterclaim. The first three remaining counterclaims arise from the same set of facts—Rippling's alleged use of the deal.com URL to redirect traffic to its own website. FACC ¶¶ 423–455. This Court thus treats them together. The final counterclaim arises from separate allegations of false and misleading content Rippling disseminated through its website and communications with potential customers, id. ¶¶ 456–62, and is treated separately.

#### 1. Legal Standard

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007)). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and

[6] In staying the RICO Counterclaim and RICO Conspiracy Counterclaim, this Court also **STAYS** the dispute as to whether Deel has successfully stated a claim against Parker Conrad, see CD MTD at 32; CD MTD Opp. at 34; Rippling & Conrad's Reply in Supp. of Mot. to Dismiss ("CD MTD Reply") (dkt. 314) at 15, since the allegations against Conrad are tied up with the RICO Counterclaim and RICO Conspiracy Counterclaim.

draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Where a claim sounds in fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pleading parties therefore must allege the "who, what, when, where, and how" of alleged frauds. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

### 2. The Deal.com Claims

Deel's Cybersquatting Counterclaim, Trademark Counterclaim, and False Designation of Origin and Unfair Competition Counterclaim all rely on Deel's allegations that Rippling has used the URL deal.com to confuse and deceive customers by redirecting them to Rippling's website. FACC ¶¶ 276–89. If true, these actions would likely amount to a violation of both the ACPA[7] and Lanham Act.[8] In the FACC, Deel presents four

[7] "Under the ACPA, a person may be civilly liable 'if . . . that person . . . has a bad faith intent to profit from that mark' and 'registers, traffics in, or uses a [protected] domain name.'" Rigsby v. GoDaddy Inc., 59 F.4th 998, 1006 (9th Cir. 2023) (quoting 15 U.S.C. § 1125(d)(1)(A)).

[8] "Claims of trademark infringement under 15 U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C. § 1125(a) are subject to the same test." Midas Int'l Corp. v. Advanced Muffler of AV, Inc., No. 12-2877-GAF, 2012 WL

primary allegations to support this claim: (1) deal.com began rerouting traffic to "Rippling's website in early or mid-2025," id. ¶ 278; (2) the domain owner is shielded by a proxy service, id. ¶ 281; (3) Rippling has "some involvement," or "at bare minimum, is responsible for" this redirection, as the party that most obviously benefits from it, id. ¶ 283; and (4) "no other person or organization has ever contacted Deel indicating that it was responsible for the domain, let alone explaining why they would arrange for the domain to redirect to Rippling's website," id. ¶ 282.

Rippling rightly argues that the third allegation amounts to nothing more than a conclusory and speculative statement. CD MTD at 29–30. Deel does not deny that Rippling does not own the domain name deal.com. See FACC ¶ 281. And mere hypothesizing about secret control of a competing domain name is insufficient to state a claim. See Sanchez v. Ghost Mgmt. Grp., LLC, No. 22-55233, 2023 WL 4363120 (9th Cir. 2023); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss."). Further, Deel's fourth allegation has since been proven false by Deel's own admission. In a letter brief to this Court on July 6, 2026, Deel admitted it discovered an individual "had attempted to sell the domain [deal.com] to Deel in or around April 2025." Defs.' URL Letter Br. (dkt. 304). This timeframe corresponds with when deal.com began redirecting to Rippling's website. See Pls.' URL Letter Br. (dkt. 305) at 2.[9]

13419322, at *5 (C.D. Cal. Aug. 21, 2021) (cleaned up). "To succeed on a trademark infringement claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must demonstrate: (1) ownership of a trademark, and (2) a likelihood of confusion through a balancing of eight factors . . . [] strength of the mark; [] proximity or relatedness of the goods; [] similarity of the marks; [] evidence of actual confusion; [] marketing channels; [] degree of consumer care; [] the defendants' intent; and [] likelihood of expansion . . . . It is often possible to determine whether there is likelihood of confusion after considering only several of the factors." Multifab, Inc. v. ArlanaGreen.com, 122 F. Supp. 3d 1055, 1062–63 (W.D. Wash. 2015) (cleaned up).

[9] The Court is concerned that this admission—based on information seemingly in Deel's exclusive control for well over a year—was not made until after Deel repeatedly represented to the Court that it had never been contacted by another party about the domain. See FACC ¶ 282; CD MTD Opp. at 37. This Court need not inform the parties, and their counsel, that they must refrain from intentional misrepresentations. The Court relies upon their candor to accurately and fairly adjudicate these issues. Mistakes happen.



United States District Court
Northern District of California

United States District Court
Northern District of California

As such, the question for this Court is whether the remaining supported allegations—that deal.com began rerouting to Rippling's website sometime in 2025 and that the domain owner is shielded by a proxy service—are sufficient to plausibly allege Rippling is responsible for the redirection. While this Court is unwilling to conclude that these allegations could never be sufficient to plausibly allege such a claim, here they are not. The Ninth Circuit held in In re Century Aluminum Co. Sec. Litig. that where "there are two alternative explanations" for a series of events, "one advanced by the defendant and the other advanced by the plaintiff," the plaintiff cannot survive a motion to dismiss if the plaintiff's "explanation is merely possible rather than plausible." 729 F.3d 1104, 1105 (9th Cir. 2013). To show plausibility, the plaintiff must allege facts which "tend[] to exclude the possibility that the defendant['s] . . . alternative explanation" is true. Id. Here, Rippling provides just such an explanation: that the deal.com domain is "controlled by an entity wishing to entice Deel to purchase it, and which chose to redirect traffic to Rippling to increase Deel's incentive." CD MTD at 30. Given Deel has admitted to facts consistent with this theory—an offer to purchase the domain from another individual around the same time the domain began redirecting to Rippling's website—they have failed to exclude Rippling's plausible alternative theory and thus failed to advance their own theory beyond the realm of mere possibility.

The Court thus **GRANTS** the motion to dismiss the Cybersquatting Counterclaim, Trademark Counterclaim, and the False Designation of Origin and Unfair Competition Counterclaim, with leave to amend.

### 3. The False Advertising Claim

To make a prima facie false advertising claim under 15 U.S.C. § 1125, a party must plead:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

---

But they should not be repeated.

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014) (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)). The Rule 9(b) standard, requiring allegations of the "who, what, when, where, and how" of an alleged fraud, applies to Lanham Act claims. See Clorox Co. v. Reckitt Benckiser Grp. PLC, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (writing that while the "Ninth Circuit has not definitely spoken" on the issue, the weight of authority favors applying rule 9(b)). At the pleading stage, the Lanham Act test simplifies down and a plaintiff must (1) "allege specific misleading statements and explain why they are misleading"; (2) allege that those misrepresentations go towards "an inherent quality or characteristic of the product"; and (3) allege an injury such as "diversion of sales and lost profits" or damage to "goodwill, reputation, and standing with the consuming public." See id. at 636, 644–45.

Several categories of claims fall beyond the Lanham Act's ambit. Claims that are non-quantifiable, vague, or subjective are non-actionable puffery under the Act. See Prager Univ. v. Google LLC, 951 F.3d 991, 1000 (9th Cir. 2020); Southland Sod Farms, 108 F.3d at 1145 ("[B]lustering[] and boasting upon which no reasonable buyer would rely" cannot support a claim). Claims that are not made for "promotional purpose[s]" or to "penetrate the relevant market" do not qualify either. Id. (cleaned up). Finally, claims must be "false at the time [they were] made"[10] and the mere fact that an old claim remains

[10] While plaintiffs do not need to allege a "precise time frame" to satisfy Rule 9(b), they are still requirement to make particularized statements of the "time, place, and nature" of the alleged fraudulent activities. United States v. United Healthcare Ins. Co., 848 F.3d

available on a website does not mean a party is "continually 're-stating'" it.[11] Broadcom Corp. v. SiRF Technology, Inc., No. 08-546-JVS, 2009 WL 10672527, at *2–*3 (C.D. Cal. Dec. 16, 2009).

With this standard laid out, we can now proceed through each of Deel's 32 Lanham Act claims:[12]

- Deel alleges that Rippling's statement that "compliance is at its core" and it has "gone to great lengths" to stay compliant is false given Rippling's history of compliance issues. FACC ¶ 298–312. The Court agrees with Rippling that these claims are too vague and subjective to qualify as false. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.
- Deel alleges that Rippling's statements that it remits payments on a client's behalf is false, because Rippling instead reports such funds as its own earnings. Id. ¶¶ 306–14. But Deel admits that its only basis for concluding these statements are false is that "Deel understands that O'Brien claimed"

---

1161, 1180 (9th Cir. 2016) (internal quotations omitted).

[11] The holding in Broadcom Corp. is best interpreted as limited to a context where a website's content is clearly dated or archived. 2009 WL 10672527, at *3 ("The statement was made on January 15, 2009 and archived on the company's website, with a conspicuous date. This does not show that Broadcom is 're-stating' or 'republishing' the press release."). Precedent on how to think about the Lanham Act's "false at the time" standard for online statements is surprisingly spare. But the most sensible standard is that where an online statement is prominently displayed on a forum the defendant controls, is easily accessed by the public, and undated, it is "stated" so long as it is available. Online statements that fit the bill are not, in this way, like mailed advertisements which, once sent, cannot be easily retrieved. See Klayman v. Jud. Watch, Inc., 628 F. Supp. 2d 112, 150 (D.D.C. 2009). However, when an online statement is on a forum beyond a defendant's control or posted temporarily, archived, shelved, or otherwise dated, it is only "stated" when it is initially posted. Compare Broadcom Corp., 2009 WL 10672527, at *3, with Satis Vacuum Indus. Vertriebs, AG v. Optovision Tech., Inc., No. 399CV2147-M, 2001 WL 1142803, at *10 n.7 (N.D. Tex. Sept. 24, 2001) ("Each day that Satis published this statement on its website, it 'made' the statement."). A different approach would lead to unconscionable outcomes on either end of the spectrum: either excluding available online advertisements from liability or subjecting statements posted online long ago to liability in perpetuity.

[12] Deel's recounting of their many Lanham Act claims is not entirely clear, with dozens of claims intermixed into narrative descriptions of Rippling's advertising efforts and photos of some such advertisements. See FACC ¶¶ 297–380. The Court is obliged to respond to each individual claim and has attempted to clearly distinguish them.



United States District Court
Northern District of California

United States District Court
Northern District of California

while talking to another party that Rippling's products did not remit clients' payroll tax dollars in some countries. Id. ¶¶ 306–07. An "understanding" of a "claim" of partial non-compliance made to a third party is too attenuated to constitute a plausible allegation. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.

- Deel alleges that Rippling's brochure detailing its sanctions compliance efforts is false given Rippling's past issues with sanctions compliance. Id. ¶¶ 315–16. However, Rippling's statements that it maintains "robust policies and procedures," "a continuous monitoring system," and "utilizes technological controls and blocks products" to ensure sanctions compliance, does not amount to a claim that Rippling's systems never fail, but only that Rippling uses these procedures to try to minimize such a risk. Without more, this Court cannot conclude that these statements qualify as misleading. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.
- Deel alleges that Rippling's claim it is the "only native global payroll service for international entities" is false or misleading, since Deel also provides such services. Id. ¶¶ 320–21. But Deel fails to allege any facts about the timing of the advertisement or when Deel started providing such services. Without doing so, it fails to allege that the statement was false when it was made. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.
- Deel alleges that Rippling's statement that "Deel's compliance system often operates as a general newsfeed" that simply "alerts" clients of changes in law is false or misleading because Deel's product, Continuous Compliance, allows clients to stay ahead of regulatory changes. Id. ¶¶ 322–23. Again, Deel pleads no allegations about the timeframe of this advertisement, when Deel released Continuous Compliance, or whether Continuous Compliance's availability means that Deel's compliance system does not "often" act as a

United States District Court
Northern District of California

general newsfeed. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.

- Deel alleges that Rippling's claim that "[u]nlike Deel," its platform "tracks and acts on compliance regulations" and sends alerts to clients when violations are detected is false because Deel also performs this function. Id. ¶¶ 324–25. Again, Deel pleads no allegations about the timeframe of this advertisement or when Deel adopted this feature. The Court thus **GRANTS** the motion to dismiss this claim with leave to amend.
- Deel alleges that Rippling's "Snake Oil" advertisement contains many false or misleading statements. Id. ¶¶ 326–31. These statements include: Rippling's claim that managers cannot have customized permissions settings on Deel, even though Deel claims they can, id. ¶ 327; Rippling's claim that Deel relies on third parties for tasks like contractor management, even though Deel does not use third parties for all these tasks, id. ¶ 329;[13] Rippling's claim that Deel's workflows are limited to only three automated actions, even though Deel allows clients to choose from a wider array of actions, id. ¶ 330; and Rippling's claim that Deel users cannot share one-time reports, even though Deel users do have this capability, id. ¶ 331. Deel allege that these claims were still up on Rippling's website and clearly displayed on March 25, 2026, when these allegations were first raised. Deel has thus sufficiently identified the misleading/false comments and explained why they are misleading/false. These claims go towards the inherent characteristics of Deel's products and services. And Deel plausibly alleges that these potential misrepresentations may harm their reputation and

[13] The Court agrees with Rippling that the statement in this advertisement does not plausibly imply that Rippling "does not rely on third parties," since the ad only purports to highlight Deel's inconsistent messaging. See ¶¶ 326, 329; MTD at 26–27. Nonetheless, Deel plausibly alleges other parts of Rippling's statement are misleading or false so this determination is not dispositive for the claim.

United States District Court
Northern District of California

goodwill with the public. Id. ¶ 461. The Court thus **DENIES** the motion to dismiss these claims.

- Deel alleges that Rippling makes several false or misleading statements in its Global HR Ad, including: Rippling's claim that Deel does not have "hundreds of possible automated workflows across HR, IT, and finance," even though the customizability of Deel's workflows means there can be hundreds of different variations, id. ¶ 333; Rippling's claim that Deel does not have "Talent Management or Application Tracking," even though Deel offers a number of services that fit this description, like talent acquisition tools and an applicant tracking system, id. ¶ 335–40; Rippling's claim that Deel does not have "[i]n house PEO," even though Deel's PEO solution is operated by a joint venture owned by Deel and incorporated into Deel's platform, id. ¶ 341; Rippling's claim that Deel does not have "[a]utomated compliance alerts, resolution recommendations, or prioritization stamps," even though Deel's Continuous Compliance platform does provide compliance alerts, id. ¶ 342; Rippling's claim that Deel does not "auto-connect" clients to support, even though Deel has a 24/7 live chat for clients, id. ¶ 343. Deel alleges that these claims were also still up on Rippling's website and publicly accessible on March 25, 2026, when these allegations were first raised. Id. ¶ 332. Deel has thus sufficiently identified the misleading/false comments and explained why they are misleading/false. These claims go towards the inherent characteristics of Deel's products and services. And Deel plausibly alleges that these potential misrepresentations may harm their reputation and goodwill with the public. The Court thus **DENIES** the motion to dismiss these claims.
- Deel alleges Rippling made several false or misleading statements in another portion of the Global HR Ad, including: Rippling's claim that Deel does not have custom reporting for both domestic and global payroll, even though

United States District Court
Northern District of California

Deel offers "customizable dashboards and reporting" for both, id. ¶ 345; Rippling's claim that Deel does not have "HRIS, performance management, learning management, [and] scheduling," even though Deel offers many of those features, id. ¶ 346. Deel alleges that these claims were also still up on the website and publicly accessible on March 25, 2026, when these allegations were first raised. Id. ¶ 332. Deel has thus sufficiently identified the misleading/false comments and explained why they are misleading/false. These claims go towards the inherent characteristics of Deel's products and services. And Deel plausibly alleges that these potential misrepresentations may harm their reputation and goodwill with the public. The Court thus **DENIES** the motion to dismiss these claims.

- Deel alleges Rippling made additional false/misleading statements elsewhere in the Global HR Ad, including: Rippling's claim that its clients can "connect with a product-level expert via live chat based on the module you're in," id. ¶ 348, and Rippling's claim that Deel does not publicly disclose support metrics, even though Deel does publicly disclosure such metrics, id. ¶ 349. The first of these claims fails because the statement is not clearly misleading or false. The Court reject's Deel's characterization that the seemingly true claim about Rippling's client support necessarily conveys Deel lacks such functions. See id. ¶ 348. The Court thus **GRANTS** the motion to dismiss for that claim with leave to amend. The second claim, however, plausibly alleges a misleading claim made at the time that Deel offered such services and going towards the inherent characteristics of Deel's products and services. Since reputational and goodwill harm are plausibly alleged, the Court **DENIES** the motion to dismiss this claim.
- Deel alleges Rippling made numerous misleading or false statements in a page comparing Deel and Rippling that is still present on Rippling's website. Id. ¶¶ 250–56. First, Rippling states that "Rippling was built to support your

United States District Court
Northern District of California

entire workforce—both domestically and internationally. Deel was built for international workforces only." Id. ¶ 351. The Court reject's Deel's categorization of this statement as "conveying the impression that Deel still does not offer services for U.S. workforces." Id. The claim is sufficiently subjective and vague that it survives a Lanham Act challenge. The Court thus **GRANTS** the motion to dismiss, with leave to amend, for this claim. Deel then contests Rippling's claims: that Deel does not have "fully automated, employee-level compliance monitoring for labor, pay, and time off regulations," since Deel's Continuous Compliance tool is automated and provides those services, id. ¶ 352; that Deel does not have live video call support with screen sharing, since Deel's platform does offer that option, id. ¶ 353; and that Deel does not have a "full Spend management suite, with travel, expenses, and corporate cards," since Deel offers options for each of those services, id. ¶ 356. These claims plausibly allege a misleading claim made at the time that Deel offered such services, and going towards the inherent characteristics of Deel's products and services. Since reputational and goodwill harm are plausibly alleged, the Court **DENIES** the motion to dismiss these claims.

- For Deel's allegations that Rippling's claim Deel does not have a "fully customizable, user-generated cross-module reporting" function is false and/or misleading, the Court find's Deel's description of its "report builder" and the customizability functions within the builder too vague to determine if it is "fully customizable" and thus cannot determine if the statement is misleading. Id. ¶ 354. The Court is similarly unconvinced that Rippling's claim that Deel does not have 150+ pre-build workflows is misleading because Deel's response that it offers "countless automated workflows" is non-descriptive and non-quantifiable. Id. ¶ 355. The Court thus **GRANTS** the motion to dismiss with leave to amend for these claims.

United States District Court
Northern District of California

- Deel alleges Rippling makes several misleading or false statements in the FAQ section of the website page comparing Rippling and Deel, including the claims that Deel lacks functionality for services like employee scheduling and support for employee travel and corporate cards, even though Deel does offer those services.[14] Id. ¶ 359. Since this FAQ section is still up on the website, Deel has sufficiently identified the misleading/false comments and explained why they are misleading/false. These claims go towards the inherent characteristics of Deel's products and services. And Deel plausibly alleges that these potential misrepresentations may harm their reputation and goodwill with the public. The Court thus **DENIES** the motion to dismiss these claims.
- Deel alleges another series of statements Rippling made through the webpage comparing Rippling and Deel, including: Rippling's statement that Deel customers cannot access solutions like travel, spend management, corporate cards, and bill pay, even though Deel does offer those solutions, id. ¶ 361, and Rippling's statement that Deel does not have "fully automated, employee-level compliance tracking for labor, wage, and time-off compliance localized to [] specific countries," even though Deel does offer those tools, id. ¶ 362. Since this page is still up on the website, Deel has sufficiently identified the misleading/false comments and explained why they are misleading/false. These claims go towards the inherent characteristics of Deel's products and services. And Deel plausibly alleges that these potential misrepresentations may harm their reputation and goodwill with the public. The Court thus **DENIES** the motion to dismiss

---

[14] Deel does not sufficiently allege that the claim that "[w]ith Rippling, you get a full HCM suite that spans recruiting, learning, scheduling, and offboarding—along with Finance tools for employee travel or corporate cards" is false/misleading, since the statement only concerns Rippling's services and Deel only provides support for their capacity relating to some of these services. Id. ¶ 39.

United States District Court
Northern District of California

these claims. Deel fails to allege that Rippling's statement Deel offers customer support "primarily built around phone and email ticketing" is misleading or false, however, since Deel's claim that Deel offers services like live chat, video calls, and screen sharing, does not mean it is wrong or misleading to classify other support options as "primary." Id. ¶ 364. The Court thus **GRANTS** the motion to dismiss that claim.

- Deel alleges two separate instances where Rippling's legal team made blog posts on the Rippling website about this litigation that Deel claims were false or misleading. See id. ¶¶ 366–75. However, because these statements are not about Rippling's or Deel's products, and because the Court is not convinced that an online blog post on a company's website rises to the level of an advertisement,[15] Deel fails to plead a claim for these allegations and the Court **GRANTS** the motion to dismiss with leave to amend.
- Finally, Deel alleges Rippling engaged in false/misleading conduct through at least six email correspondences where Rippling contacted potential customers and shared information about this litigation, their allegations against Deel, and/or encouraged switching services. See id. ¶¶ 376–79. The Court agrees with Rippling that individual communications and client outreach do not rise to the level of commercial advertisements. "[S]tatements must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion'" and private emails usually will not rise to this level. HGCI, Inc. v. Luxx Lighting, Inc., No. 19-570-

[15] Deel's allegations that these blog posts appear in and around other links on the website, some of which have advertising material within them, only succeeds at describing the functionality of a typical website, not at transforming these blog posts into advertisements. See id. ¶ 373. Further, if the fact readers have links to share the post on social media were enough to create an advertisement, few posts or articles on the modern internet would be spared from Lanham Act claims. Id.

PSG, 2020 WL 5913851, at *7 (C.D. Cal. Sept. 10, 2020) (internal quotation omitted). Thus, the Court **GRANTS** the motion to dismiss these claims.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to strike and for other relief, **GRANTS** the motion to compel arbitration, and **DENIES** in part and **GRANTS** in part the motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 25, 2026

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California