KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com
MAYA P. JAMES - # 318554
mjames@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,

Plaintiff,

v.

DEEL, INC., a Delaware corporation, ALEXANDRE (“ALEX”) BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN (“DAN”) WESTGARTH, an individual, and DOES 1 – 100,

Defendants.

Case No. 3:25-CV-02576-CRB

**JOINT DISCOVERY STATUS REPORT FOR OCTOBER 22 STATUS CONFERENCE**

Judge: Hon. Lisa J. Cisneros

Date Filed: March 17, 2025

Trial Date: None set

## I. RIPPLING'S POSITION STATEMENT RE DISCOVERY STATUS

**A. Alex Bouaziz Deposition Location:** As anticipated, Alex Bouaziz waited until the last possible day and then refused to travel to the U.S. for his deposition, offering only Tel Aviv or Paris. Alex—the billionaire CEO of a $17 billion company based in the U.S., with its principal place of business in San Francisco—claims it would be too burdensome for him to travel to the U.S. based on childcare responsibilities. That argument fails for many reasons. Rippling requests that the Court order Alex to appear in San Francisco.

***First***, the Court already ordered David Mieli to sit for deposition in San Francisco in part because he is a managing agent of Deel. ECF 269 at 2. That applies more forcefully to Alex, the seniormost officer of Deel, who is treated as a corporate party under FRCP 30(b)(1). The Court already recognized the presumption that "the deposition of a corporate party should be taken at its principal place of business." *Id*. at 2 (quotation omitted). Defendants themselves relied on that Order to insist that Mr. O'Brien travel to the U.S. for his deposition, claiming the Court's Order made clear that "***witnesses need to travel for depositions.***" (Sept. 3 email from Ta.) Mr. O'Brien—who has four children and exponentially fewer resources than Mr. Bouaziz—agreed to come to the U.S. for his deposition after Defendants insisted. Mr. Bouaziz, with an estimated net worth of $2 billion, should not be heard to seek the opposite result.

***Second***, at Mr. Bouaziz's direction, Deel filed permissive counterclaims in this Court, claiming it would be "efficient" to litigate those claims here. *See* ECF 263 at 16 n.5. That is conclusive: "Filing a permissive counterclaim thus results in a defendant-counterplaintiff being treated as a party plaintiff for purposes of any depositions[,]" and "a defendant-counterplaintiff may be deposed at the place of trial." *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161–62 (N.D. Ill. 1982).

***Third***, the remaining factors require Mr. Bouaziz to be deposed here. Deel and Rippling's principal places of business are here, as are their counsel. No counsel is located across the Atlantic. And because the Court is located here, court intervention during the deposition would be "considerably more complicated if the deposition[s] were to proceed in" Paris or Tel Aviv (nine and ten hours ahead, respectively). *See Doe v. Successfulmatch.com*, 2014 WL 5775328, at *2 (N.D. Cal. Nov. 5, 2014). Mr. Bouaziz's claim that ordinary childcare responsibilities should

supersede all of the above—and require all counsel to travel to Israel or Europe at great cost and inconvenience—is wrong. "[C]ourts in this district treat childcare responsibilities and travel costs, without more, as ordinary incidents of litigating in a distant forum that the plaintiff chose, not exceptional circumstances." *Reis v. McKinsey & Co., Inc.*, No. 25-CV-00393-LB, 2026 WL 2655081, at *2 (N.D. Cal. Sept. 9, 2026). Mr. Bouaziz also recently admitted in an interview: "***I travel a lot for the company***. . . . I have apartments in several places."[1] His frequent travel includes trips to Washington, D.C., to meet with members of Congress. And he is willing to travel 4.5 hours to Paris for his deposition; several more hours on the plane would not impose undue burden, especially compared to the burden and inconvenience of requiring all counsel to travel to Paris or Tel Aviv. Rippling submits that Alex should be ordered to appear in San Francisco, which the Court already acknowledged makes the "most sense" here. (Tr. Oct. 8 Conference at 46.)[2]

**B. <u>Philippe Bouaziz Forensic Production:</u>** On October 8, the Court said forensic examination of Philippe's devices should proceed and warned that continued opposition could warrant Rule 37 sanctions. That afternoon, Rippling provided Philippe with its final narrowed list of requested artifacts and asked for production by November 1. Five days later, Philippe said he would not produce until the Court issued a written order and proposed negotiating relevance limitations. Rippling promptly explained that relevance limitations were needless, would prejudice its investigation, and would cause further delay. Rippling asked Philippe if he had started preparing the requested artifacts, if he would withhold them pending a written order, and if he would be able to produce them by November 1. ***Philippe has refused to answer any of those questions.***

Rippling fears, with good reason, that this continued uncertainty and delay threatens the discovery schedule. Philippe is adopting the same playbook Alex has used to obstruct court-ordered

[1] (https://www.ynetnews.com/business/article/rybudl5bze, published Aug. 4, 2026).

[2] The authorities relied upon by Alex—up until the final exchange until they were all removed—are irrelevant or ***support Rippling***. In *RePet*, the Court ordered the CEO of the defendant, who resided in China, to appear for deposition in the U.S. in the district where the case was pending. 2018 WL 9802098, at *1, *4–6, *8. In *Moore,* the Court ordered the plaintiff to be deposed in California. 2024 WL 4441488, at *2. In *Reis*, the location of the in-person deposition was not a disputed issue. The plaintiff requested a remote deposition, which the Court denied. 2026 WL 2655081, at *1, *3. And *In re Social Media* does not actually address a dispute over a deposition location. 2025 WL 1502439, at *2.

forensic discovery of his devices, dragging out his production for months, which is still incomplete. With the January 15 discovery cutoff approaching, Rippling cannot afford another months-long delay while Philippe cycles through excuses to delay production. Rippling respectfully requests an order requiring Philippe to produce the requested artifacts by November 1.

**C. Bouazizes' AI Chat Logs:** RFPs 59–65 seek Alex's and Philippe's AI chats concerning the subject matter of this case. After months of stonewalling, Alex and Philippe finally conceded—at 11:37 a.m. on the day of this filing—that this discovery is proper, but claim in a counsel letter, with no factual support, that there are no responsive documents. The Court should order them to respond formally and explain how they searched.

**D. Deel's Verification of Interrogatory Responses:** Rule 33 requires interrogatory answers to be made under oath and signed by the person making them. Fed. R. Civ. P. 33(b)(3), (5). Deel has flouted that requirement, despite numerous requests from Rippling dating back to May. Deel changed its position on the day of this filing, claiming it will "serve these verifications in the coming weeks." That will not work. On Friday, October 23, Rippling will depose Asif Malik. Deel's version of Mr. Malik's discussions with Mr. O'Brien is set forth in its Court-ordered Rog 12 response, served *seven months ago*. Rippling should not be forced to use the *unverified* response at the deposition. The Court should order Deel to verify all interrogatory responses by Oct. 23.

**E. Deel Employees' Mobile Devices:** Deel employees' phones are critical repositories. Deel's own production shows that Court-ordered custodians Luke Ferrel, Shuo Wang, Chelsea Taylor-Seiferth, and Chris Lee each used personal WhatsApp for Deel work—sometimes at the direction of Deel's CEO, Alex Bouaziz. ECF 337 at 1–2. Forensic discovery from Alex shows that Spiros Komis communicated with Alex extensively on Telegram. Rippling subpoenaed these employee custodians in their individual capacities on August 3. After two months of extensive meet-and-confer, not a single document has been produced, and none of the employees—who live throughout the U.S.—have consented to this Court's jurisdiction over a motion to compel. Rippling will therefore need to open proceedings in several districts, move to compel, and move to transfer to this Court. It will be very difficult to complete this process by January 15.

**F. Rippling's October 19 Agreement to Reasonable Search Terms:**

Rippling has complied with the Court's direction to confer and accept "reasonable search terms" by October 19. ECF 435 at 2. On October 1, Rippling offered to confer across three days the following week. Defendants let every window pass before responding. Rippling then agreed to confer on October 9 and again on October 12 (a federal holiday) for more than two hours, making concessions that substantially narrowed the disputes. Rippling agreed to more terms and countered others on October 19. Rippling has now agreed to 187 of Defendants' proposed search terms and made counterproposals on 13 more, and is reviewing and producing documents.

Defendants' complaints about Rippling's document production are meritless. Rippling has produced 120,874 documents (almost as many as Deel) from 20 custodians, totaling 745,417 pages. Rippling has made two substantial document productions since the last discovery conference, including thousands of additional custodial documents. Defendants' assertions about documents supposedly missing from Rippling's production are simply false. And Defendants' stats about Rippling's custodial production are not accurate.

**G. <u>Rippling's Response to Defendants' Issues:</u>** Defendants' position statement is an attempt to sandbag Rippling, overwhelm the Court, and frustrate this process. On October 13, Rippling sought to coordinate an October 19 joint filing. Deel initially refused to participate. On October 14, after Rippling sent a list of the five issues it intended to raise, Deel changed course and promised it would send a list of its issues "by Friday morning." None came. Instead, Deel sent a draft at noon on October 19 (filing day) with ***seventeen separate issues***, many of which are unripe, moot, or seek to relitigate previous disputes. Rippling addresses the issues requiring a written response below and is prepared to address any other issues at the status conference.

- **Honeypot scheme and d-defectors.** Rippling has produced the d-defectors channel and will produce or log communications related to the honeypot scheme.
- **Rippling's Production of Slack.** On Friday, Deel for the first time identified 48 Slack channels it claims are missing from Rippling's production. Rippling is investigating and will produce anything that is actually missing.
- **O'Brien's Personal Devices.** Rippling agreed to limit its review of Mr. O'Brien's devices to non-user-generated data, with Mr. O'Brien's counsel to perform a "first-look" review of requested user-generated data (akin to the Court-ordered protocol for Alex's devices). Mr. O'Brien has offered to produce forensic data to Deel subject to similar protections, which Deel's broad RFP does not provide. Deel's demand for unfettered access to Mr. O'Brien's devices imposes unnecessary intrusion on his privacy interests and should be denied.

- **Rippling's Payment of O'Brien's Legal Fees.** O'Brien signed a sworn affidavit on April 1, 2025. The amount of legal fees Rippling has paid since then is irrelevant to bias or any other issue. Indeed, Deel has refused to disclose the amount of attorneys' fees it is paying for any Deel employees, confirming that such information is not discoverable.

- **Rippling's Entire Sanctions Compliance.** Rippling has agreed to produce non-privileged documents bearing on the relevant sanctions-related issues: what O'Brien knew and/or reported to anyone at Rippling about sanctions, and what he searched for at Defendants' behest. Defendants' requests for documents related to Rippling's sanctions compliance writ large are irrelevant and grossly disproportionate.

- **Communications with Customers, Investors, and the Press.** Rippling has already agreed to produce relevant discovery on these subjects. Alex nevertheless demands *all* customer and investor communications referencing any individual defendant, *all* media and public-relations communications referencing Deel, the identification of "*every Person*" with whom Rippling discussed its allegations, and the content of each of those discussions. These indiscriminate demands are untethered to any claim or defense.

- **Parker Conrad's Communications About Deel and Its Investors.** Defendants seek discovery on a host of extraneous topics designed to harass Rippling's CEO, claiming they are relevant to his credibility and motives for filing this lawsuit. Such demands are irrelevant, disproportionate, and improper.

- **Rippling's Possession of "Equivalent" Confidential Information.** Alex's speculation that Rippling may possess information about Deel is irrelevant to whether Rippling's trade secrets are generally known or obtainable by proper means. This is an irrelevant fishing expedition, particularly now that the Court has dismissed most of Deel's counterclaims.

- **Unauthorized Slack Access.** Alex seeks documents regarding every unauthorized-access incident and broad discovery into Rippling's Slack settings to challenge Rippling's security measures. But Rippling's Slack was *closed* to outsiders, and employees were bound by confidentiality obligations. Employees' access to an internal company Slack environment does not establish inadequate protection. Nevertheless, Rippling has agreed to produce documents sufficient to show its preview-mode decision and to confer about prior incidents bearing on the asserted trade secrets. Anything more is irrelevant.

- **Rippling Hiring Deel Employees.** Rippling alleges that Defendants targeted Rippling employees using stolen information and hired them to obtain trade secrets. Rippling's hiring practices do not answer those allegations. Defendants assert no claim that Rippling obtained Deel's trade secrets through recruiting. Their demands for every Deel employee Rippling has contacted since September 2022 are irrelevant and disproportionate.

- **"Rippling's Attempt to Circumvent the Court's Order on Rogs 7/8."** The Court's June 18 Order on Rogs 7/8 invited Rippling to provide an expanded "list of companies for which it has specific evidence tending to show that misappropriation occurred[.]" ECF 287 at 2. Rippling prepared that list, at great cost, and served it on July 13. The final list is 1,433 customers—less than 3% of the ~58,000 customers discussed on the Slack channels that O'Brien accessed on Deel's behalf. In September, *Deel* (not Rippling) circumvented the Court's Order by refusing to supplement. To reduce Deel's claimed burden and avoid re-litigating Rogs 7 & 8 a third time, Rippling served several RFPs seeking documents for each customer. Deel's responses are due November 8. Plainly, Deel intends to object across the board. Rippling joins Deel's request for the Court's guidance on this issue.

## II. DEFENDANTS' POSITION STATEMENT RE DISCOVERY STATUS

The Court stated on October 8 that "Rippling's got to accept Deel's reasonable search terms and go forward with *completing* document productions . . . by October 19th in order to get ready for . . . those depositions . . . ." (Tr. at 34:9-13.) Rippling has made minimal progress since then. Defendants therefore present the current list of issues to the Court, given that Rippling has blown past the substantial completion deadline and is not making meaningful progress.[3]

### A. Issues that Defendants Seek to Address With The Court.

**1. Rippling's Insufficient Document Productions.** Rippling pushed for a September 16, 2026 substantial completion deadline and has still failed to meet that deadline. The parties met on October 9 and 12, and conferred on outstanding terms. Deel provided Rippling with a chart of over thirty items. Rippling has not responded. Moreover, Rippling has not produced documents it already agreed to produce, including communications with or about O'Brien. Nor has Rippling produced documents related to: (a) Rippling's Series G financing (RFP 35); (b) Rippling's honeypot scheme and the d-defectors Slack channel (RFP 10); and (c) the alleged victims of Deel's conspiracy (RFP 15). Rippling's custodial productions also remain severely deficient. Excluding automated emails to the winning@rippling.com listserv, Rippling has produced **less than 200 total custodial documents for seven agreed-upon custodians**. Rippling has not provided any metadata for corporate data sources other than Slack and Salesforce and nearly 2,000 documents lack an email subject or file name. Nor has Rippling confirmed that it has collected and produced documents from other corporate repositories. Deel asks that the Court order Rippling to complete its production immediately, consistent with the Court's directive at the October 8 hearing.

**2. Rippling's Inadequate Trade Secret Identification.** Rippling refuses to identify its trade secrets with particularity. Rippling's claimed trade secrets comprise over **19,310 documents** and **249,854 pages**, including email blasts and Slack conversations, and material that

[3] The minute order following the 10/8 conference "directed Rippling to accept reasonable search terms by October 19," and Rippling has failed even that. Deel will be prejudiced if Rippling fails to complete production with depositions fast approaching.

post-dates the alleged spying scheme.[4] Trade Secret No. 3 (compilation of customer-specific Sales Opportunity information) alone is nearly 13,000 documents and 150,000 pages, and seven other alleged trade secrets (Nos. 1, 5, 6, 8, 10, 12, and 14) are each more than 20,000 pages. Under these circumstances, Defendants cannot defend against Rippling's allegations. Other alleged Trade Secrets Are Missing Necessary Information:

- ***Two Alleged Trade Secrets Do Not Identify Any Documents or Slack Channels.***
  - Trade Secret No. 4: Certain elements of Rippling's Pricing and Contracting Strategy, as identified in Deel's October 16 Letter.
  - Trade Secret No. 11: The compilation of Customer Satisfaction and Churn Risk information that Rippling maintains in its Salesforce database.
- ***Missing Slack Channels.*** Contrary to counsel's representation to the Court on October 8, 2026 that Rippling "produced all of the Slack months ago" (Tr. 31:23), there are ***48 Slack channels*** identified in Rippling's Rog 9 Response that Rippling has failed to produce.

**3. Rippling has failed to produce critical information related to O'Brien.**

***Alleged Misappropriation***. Related to #2, Rippling must identify what information O'Brien actually sent to Alex, not merely what O'Brien may have viewed or had access to.

***O'Brien's Personal Devices***. Defendants have sought the prior forensic imaging of O'Brien's devices and accounts obtained in the Irish Proceedings, and iCloud backup in Rippling's possession. O'Brien must turn over whatever he has provided to Rippling in its entirety.

***Rippling's Asserted Common Interest***. Rippling refuses to turn over communications between it and O'Brien prior to the filing of the counterclaims, claiming common interest privilege. The Court should order Rippling to produce these communications. (*See* JLB at Dkt. 338.)

***Communications and Drafts related to O'Brien's Affidavit***. O'Brien has pleaded with Deel for help, noting that he was "harassed by [the] Rippling legal team" and "pressured to say things that are not true … to damage Deel." (Dkt. 48 at 3.) Deel is entitled to the facts leading to the drafting and signing of his Affidavit.

***Rippling's Payment of O'Brien's Legal Fees***. Rippling refuses to provide Deel with the amount it has paid for O'Brien's legal fees, which is relevant to O'Brien's bias and credibility, and

[4] During the October 8 conference, the Court noted that it would consider revisiting this issue at the next conference on October 22. (Tr. 34:2-3.) The Minute Order, however, indicates that "the parties will revisit the issue in late November or early December[.]" Given the importance of these issues, Deel cannot wait that long for Rippling to—at the very least—identify what material within these thousands of pages it actually claims as trade secrets.

to Defendants being able to show the control Rippling has over O'Brien (both the coercive campaign and how Rippling will defend him at all costs to prosecute this suit).

***Rippling's Sanctions Compliance***. Rippling has limited its response to documents "relating to any allegation by O'Brien of Rippling violating sanctions compliance, or any awareness by O'Brien of Rippling violating sanctions compliance." Rippling simultaneously contends that O'Brien's reports were manufactured by Deel. Any information related to Rippling's compliance/non-compliance with sanctions in Russia is relevant for Deel's defense.

**4. Rippling has failed to respond to discovery on several additional issues.**

- **Identifying Lost Customers (ROG 9).** Lost customers are the core of Rippling's theory of harm. Yet Rippling bizarrely claims it cannot identify these customers until Defendants complete their productions. Rippling knows which (if any) of its customers left, and that information is entirely in its own records and does not depend on Defendants' productions.

- **Communications with Customers, Investors, and the Press (ROG 8, RFPs 67-68, 87-89):** Rippling has communicated about Deel and the allegations in this lawsuit with Deel's customers, its investors, and the press. Those party admissions will elucidate how Rippling speaks about these topics when not in front of the Court.

- **CEO Parker Conrad's Communications About Deel and its Investors (RFPs 71-73):** Rippling has refused to produce communications from its CEO concerning the Defendants and a key Deel investor. Defendants are entitled to explore Conrad's communications.

- **Rippling's Possession of Equivalent Confidential Information (RFPs 85-86).** If Rippling has the competitor equivalents of the documents it claims as secret, that would support an inference that such materials are generally known or obtainable by proper means, or more generally are not trade secrets.

- **Unauthorized Slack Access (RFPs 63-64).** How Rippling handled notices of unauthorized access to Slack, and why it chose not to restrict preview mode, go directly to whether its security measures were reasonable. Rippling's produced documents make clear that Slack was "not properly secured," that "O'Brien's ability to access over 6,000 Slack messages . . . indicates potential lapses in access management," and that Rippling did not have "proactive monitoring systems." RIPPLING-DEEL-00622529.

- **Rippling Hiring Deel Employees (RFP 79; Dan RFP 24).** Rippling claims that Defendants misappropriated trade secrets in part to "poach" Rippling's employees. *See* FAC ¶ 6. But Rippling has blocked requests for (1) Rippling's similar efforts to recruit from Deel and (2) the high degree of employee turnover among the small group of employers in this industry, relevant to disprove that Deel's recruiting efforts were in any way improper.

**5. Rippling's Attempt to Circumvent The Court's Order on Rogs 7/8.** On June 18, this Court "decline[d] to order Deel to run the Rippling-provided list of approximately 58,500

company names against Deel's CRM/Salesforce database." (Dkt. 287.) The Court ordered Deel to respond to Rogs 7 and 8 "with respect to the 204 companies identified as having been listed as customers or prospects in O'Brien's Declaration and exhibits or having been searched by O'Brien in Rippling's internal systems." (*Id.*) Deel responded to those interrogatories on September 1, 2026. The same day, Rippling provided Deel with a revised Supplemental Customer List containing approximately 1,300 company names. Deel noted several concerns. Rather than respond, on October 12 Rippling elected to serve a new set of RFPs seeking the same information requested by Rogs 7 and 8 for the broader list of over 1,300 company names.[5] Rippling attempts to circumvent the Court's Order because it is unable to "provide a list of companies for which it has specific evidence tending to show that misappropriation occurred" and/or companies "about which O'Brien, having reviewed the list of 58,500+ companies, recalls sharing information with Deel." (Dkt. 287). Deel will justifiably object to this discovery.

**B. <u>Defendants' Response to Rippling's Issues</u>**

**1. Rippling's request for a forensic inspection of Phillipe's and Alex's devices (IDs).** The Bouazizes understand that the Court will issue an order. (Dkt 435 at 2.) The scope of such an order will determine the contours of any production and whether the Bouazizes will appeal the order. The Bouazizes are taking steps to prepare data in the meantime.

**2. The location of Alex Bouaziz's deposition (IDs)** Alex has offered to appear for a deposition in person in Tel Aviv or Paris, or virtually. Alex lives and works in Tel Aviv, where he cares for a 15-month-old and a 3-month-old baby. It would be a significant burden on him to travel to the U.S. for a deposition. Contrary to Rippling's representations to this Court at the October 8th hearing that "there is a clear legal presumption" that as a party Alex should be deposed in San Francisco (Tr. at 42:14-15), the law actually is the opposite. "[T]he presumption is that, in the absence of exceptional circumstances, the deposition will take place where the deponent resides." *Shinde v. Nithyananda Found.*, 2015 WL 12778434, at *2 (C.D. Cal. May 21, 2015). This

[5] The RFPs seek all communications with any of the companies from October 1, 2024 through June 30, 2025 (185); all Gong transcripts for the same period (186); all Vitally Records for the same period ( 187); all Salesforce Records for the same period (188); all Google Drive records (189), and all communications referring to any of the companies (190).

presumption applies with no less force when the defendant is domiciled in another country. *See Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001) (holding defendants should be deposed in Japan rather than New York). Contrary to Rippling's assertion, Alex is an individual defendant, not a "corporate party." He is not Deel. He did not pick this forum and has no personal ties to San Francisco. He did not file counterclaims in this Court, nor is he a "defendant-counter-plaintiff"; Rippling's citation to a 44-year-old Illinois case is inapplicable. He is, however, a human being who is responsible for caring for two children under 18 months. Rippling, unsurprisingly, cites no caselaw to support the proposition that an individual defendant's financial resources weigh in favor of deposing a witness in a place other than where he resides. Moreover, deposing Alex in Tel Aviv is consistent with Rippling's August 26 proposal to depose O'Brien in Dublin, where he lives: "[G]iven that Mr. O'Brien lives and works in Ireland, Rippling is amenable to conducting his deposition there to minimize the burden to the witness." There is no principled reason why Rippling would be amenable to deposing O'Brien—who contractually agreed to testify in the U.S.—outside the U.S. but not Alex. As a compromise, Alex has offered to travel with his family to be deposed in Paris. Alex also has offered to be deposed virtually.

**3. AI chat logs from the IDs.** Alex and Philippe do not possess any relevant or responsive personal AI Chat Logs (as they communicated to Rippling).

**4. Verifications.** Deel plans to serve these verifications as soon as possible.

**5. Deel's Employees' Mobile Devices.** As Deel explained at Dkt 360, these devices are owned by Deel's employees. Rippling is discussing the issue with counsel for the individual employees. Thus, it is premature for Rippling to raise this issue as a potential "dispute."

Dated: October 19, 2026

Respectfully submitted,

By: */s/ Eric H. MacMichael*

Elliot R. Peters (SBN 158708)
epeters@keker.com
Eric H. MacMichael (SBN 231697)
emacmichael@keker.com
Andrew F. Dawson (SBN 264421)
adawson@keker.com
Nicholas S. Goldberg (SBN 273614)
ngoldberg@keker.com
Benjamin D. Rothstein (SBN 295720)
brothstein@keker.com
Maya P. James (SBN 318554)
mjames@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391 5400
Facsimile: (415) 397 7188

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation

Dated: October 19, 2026

*/s/ Lance A. Etcheverry*

Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
Jack P. DiCanio (SBN 138782)
jack.dicanio@skadden.com
Quyen L. Ta (SBN 229956)
quyen.ta@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Allen L. Lanstra (SBN 251510)
allen.lanstra@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

*Attorneys for Defendant and Counterclaimant DEEL, INC., et al.,*

Dated: October 19, 2026

*/s/ Joseph G. Petrosinelli*

Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Kenneth Brown (*pro hac vice*)
kbrown@wc.com
Katherine Trefz (*pro hac vice*)
ktrefz@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

William Frentzen (Bar No. 343918)
wfrentzen@mofo.com
MORRISON FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 591-7522

*Attorneys for Defendants Alexandre Bouaziz and Philippe Bouaziz*

Dated: October 19, 2026

*/s/ David R. Eberhart*

David R. Eberhart (SBN 195474)
deberhart@omm.com
Chris B. Phillips (SBN 330256)
cphillips@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

Stuart M. Sarnoff (*pro hac vice*)
ssarnoff@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
17th Floor
New York, New York 10019
Telephone: (212) 326-2000

*Attorneys for Defendant DANIEL JOHN WESTGARTH*

## CERTIFICATE OF COMPLIANCE

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

Dated: October 19, 2026

*/s/ Eric H. MacMichael*
Eric H. MacMichael