KEKER VAN NEST & PETERS

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
keker.com

**Eric H. MacMichael**
(415) 773-6624
emacmichael@keker.com

October 26, 2026

**Via Electronic Filing**

The Hon. Magistrate Judge Lisa J. Cisneros

Re: *People Center, Inc. d/b/a Rippling v. Deel, Inc. et al.*, Case No. 3:25-CV-02576-CRB (N.D. Cal.) – Rippling's Response to Deel's Chart Regarding Rippling's Production (ECF 456)

Dear Judge Cisneros:

Rippling respectfully submits this response to Deel's October 23 letter and "Production Completion Chart" (ECF 456).

The Court requested a focused chart identifying outstanding custodians and repositories, remaining search-term disputes, unproduced categories, expected dates, and metadata issues. ECF 454. That is not what Deel filed. Instead, Deel submitted a twelve-page chart containing every conceivable issue Deel could conjure up—*37 in total*—including a host of new issues that the parties have never discussed or briefed to the Court, as well as a section dedicated to trade-secret "deficiencies" for which Deel has not yet conferred with Rippling (as the Court ordered). Deel's chart also ignores Rippling's October 23 production and new RFPs that Deel served on October 21. The vast majority of these issues are not suitable for Court resolution, either because the parties are not at an impasse or because the issue has not been fully presented to the Court. Deel itself acknowledges that the parties "will continue to meet and confer" on them, ECF 456 at 4 n.1, and the parties are scheduled to do so early this week.

Deel's chart also contains numerous inaccuracies and misleading statements. To name a few:

| Deel's Statement | Fact |
|---|---|
| "Only 6,000 [custodial] documents have been produced." ECF 456 at 4 | Rippling has produced 50,000 custodial documents from O'Brien, approximately 8,500 from the other custodians, plus thousands of Rippling Slack documents containing its custodians. |

| | |
|---|---|
| "[W]e have received no personnel file" for O'Brien. *Id.* at 6. | Rippling produced O'Brien's personnel file in June 2026. |
| For trade secret 4, "[n]o documents or Slack channels that contained the allegedly misappropriated trade secrets." *Id.* at 9. | Rippling produced those channels in July 2026. |

Rippling's point-by-point response to Deel's chart is attached hereto as **Exhibit 1**.

Deel's chart also omits critical pieces of information—the dates on which it served these requests and the dates Deel first provided Rippling with custodians and search terms. Indeed, Deel waited until March 10, 2026, nearly a year after this case was filed, to serve its first set of RFPs, with no custodians or search terms included. Deel did not serve its "consolidated" search terms until July 10, two months before the substantial completion deadline. Deel's July 10 "consolidated" terms hit on millions of unique documents and Rippling repeatedly asked Deel to narrow them. Deel waited until September 15—the day before the substantial completion deadline—to serve its first set of meaningfully modified terms. Rippling responded with hit counts and counterproposals on September 23. Deel did not respond until October 1. Within one hour of receiving Deel's response, Rippling offered to confer over three available windows, but Deel ignored Rippling's response and let each window pass. Still, Rippling conferred on October 9 and October 12 (a federal holiday) and made substantial concessions. Consistent with the Court's direction, by October 19, Rippling had agreed to 187 of Defendants' search terms and countered 13 more. ECF 435 at 2. In total, Rippling has agreed to or provided counterproposals for *more than 92%* of Deel's search terms. (By contrast, Deel continues to reject 80% of Rippling's proposed terms for Rippling's second and third sets of RFPs.)

As Deel knows, the parties were not able to reach agreement on Deel's search terms until the end of last week. Through that process, Rippling has committed to review tens of thousands of additional documents. Deel's demand that Rippling finish reviewing and producing documents by the end of this week is not possible. ECF 456-1. As Rippling has explained, it will continue producing on a rolling basis and anticipates substantially completing the remaining custodial production by November 20, 2026, at the latest. Rippling has dedicated tremendous resources to its review and is increasing the size of its review team to 20 contract attorneys to endeavor to complete the review expeditiously. Indeed, Rippling has already produced the same number of documents as all Defendants combined, despite Defendants having a one-year head start.

Deel invokes upcoming depositions on October 29 and November 4 as a pretext to justify its demand for immediate production of documents that have no bearing on those depositions. Those upcoming depositions are of *Deel's* current and former employees. The first Rippling deposition is scheduled for December 16. What Deel's witnesses know is in Deel's documents and possession, not Rippling's, and Deel does not identify a single Rippling document it needs for the upcoming depositions of Deel's witnesses.

Meanwhile, Defendants have not substantially completed their productions in response to RFPs that Rippling served more than eight months ago, let alone additional RFPs Rippling served in May and June. Deel has yet to produce a single document in response to the Court's October 9 Order; not a single document has been produced from Deel employees' personal devices; and Philippe Bouaziz has not produced a single forensic artifact. Rippling will shortly provide the Court with its own Production Completion Chart detailing Defendants' deficient productions.

Rippling appreciates the Court's attention to this matter and looks forward to discussing these issues further at Thursday's status conference.

Sincerely,

KEKER, VAN NEST & PETERS LLP

Eric H. MacMichael

EHM:nsg

Enclosure

# Exhibit 1 – Rippling's Response to Deel's Production Completion Chart (ECF 456, Ex. 1)

*People Center, Inc. d/b/a Rippling v. Deel, Inc. et al., Case No. 3:25-cv-02576-CRB (N.D. Cal.)*

## I. Rippling's Production

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| 1 | Custodial productions for all 18 custodians. | Rippling agreed to, and did, collect and produce responsive documents from all 18 custodians Defendants requested. | Rippling collected and processed more than eleven million documents, consisting of files from each custodian's Rippling Gmail, Slack, and Google Drive. Rolling productions began on June 12, 2026. As of October 24, 2026, Rippling has reviewed almost 260,000 documents, and has produced over 123,964 documents, totaling more than 750,275 pages. Rippling has continued to actively produce custodial documents on a rolling basis as the parties have agreed to search terms.<br><br>1. *O'Brien's Custodial Documents*: Rippling has produced 50,174 documents from Keith O'Brien's Rippling repositories. Deel offers no basis for its assertion that Rippling's production of Keith O'Brien's custodial documents is "incomplete" and identifies no category of O'Brien documents for which production is deficient.<br><br>2. *Other Custodians*: Deel's assertion that Rippling has produced only 6,000 documents from the remaining 17 custodians is incorrect. As demonstrated in Exhibit 2 below, Rippling has produced approximately 8,500 documents from non-O'Brien custodians. Rippling has also produced thousands of Rippling Slack documents containing non-O'Brien custodians.[1] Rippling continues to produce custodial documents on a rolling basis as the parties agree to search terms.<br><br>3. *Google Drive*: Rippling has produced approximately one thousand Google Drive files[2] that reflect version histories of Rippling's trade secrets. Rippling has | Rippling has substantially completed production of O'Brien's custodial documents. Rippling will substantially complete remaining custodial production by November 20, 2026, which is reasonable given that the parties only finalized more than a dozen terms related to Mr. O'Brien during the week of October 19. |

[1] These documents identify the Rippling custodian in the "Email To" and "Email From" metadata fields and are readily identifiable to Deel.

[2] By contrast, Deel has produced only *thirty-two* documents from its corporate Google Drive repository.

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | | | collected, is reviewing, and will produce additional, responsive custodial Google Drive files.<br><br>4. *Slack*: Rippling has produced *tens of thousands* of documents from more than 300 Rippling Slack channels containing Rippling's custodians. Rippling conducts the majority of its business over such Slack channels. To the extent additional, responsive, non-privileged direct messages exist, Rippling will produce them during the course of its review. | |
| 2 | Privilege Log | Rippling has agreed to provide a privilege log and intends to supplement its log on a rolling basis as productions continue, as Deel has done. | Rippling served the first volume of its privilege log on October 21, 2026. Rippling will continue to produce privilege logs on a rolling basis and intends to provide a second volume—including privileged documents identified to date from March through April 2025—by October 28, 2026. | Rippling will continue to produce privilege logs expediently and on a rolling basis. A rolling log is reasonable given that Deel served the relevant discovery requests on March 10, 2026;[3] the parties only finalized search terms during the week of October 19; Rippling's production remains ongoing; and logging occurs after responsiveness and privilege review. |
| 3 | Metadata | As Deel itself has acknowledged with respect to its own production, Google Vault does not capture path metadata. Accordingly, Rippling—like Deel—has agreed to produce an overlay with file path or source metadata, to the extent available, for the Google Drive trade secret documents O'Brien misappropriated. | Rippling has produced Google Drive data reflecting relevant version histories for its claimed trade secret documents. | Rippling is preparing a metadata overlay showing the file path for produced Google Drive documents and intends to produce that overlay by October 30, 2026. |
| 4 | Corporate document repositories | Rippling agreed to produce from corporate repositories containing responsive materials, including Slack, Google Drive, Salesforce, and Gong. | Rippling has produced more than *37,000* records from its corporate Salesforce repository, *tens of thousands of documents* from its corporate Slack repository, and approximately *1,000* documents from its corporate Google Drive repository. | Rippling has substantially completed its production from corporate Salesforce, Slack, and Google Drive repositories. Rippling is willing to meet and confer with Deel regarding the provision of additional metadata for these productions. Rippling has collected, is reviewing, and intends to produce responsive documents from its corporate Gong repository. |

[3] By contrast, Rippling served its first set of RFPs in May 2025, and Deel did not provide a privilege log until June 2026, thirteen months later.

## II. Rippling's RFP Responses

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| 5 | Communications With and About Keith O'Brien (RFPs 1–5) | Rippling has agreed to produce responsive, non-privileged communications related to the allegations in the First Amended Complaint. | Rippling has substantially completed its production of responsive, non-privileged communications with O'Brien after March 14, 2025.[4] The paucity of post-Mar. 14, 2025 communications reflects that there were few direct written communications with O'Brien after March 14, 2025, not a gap in production. Rippling has also agreed to more than 33 of Defendants' search terms concerning O'Brien and has reviewed and produced documents responsive to those terms. | Rippling has substantially completed production of communications with and about Keith O'Brien. To the extent Rippling's review of documents that hit on the dozens of O'Brien-related search terms that the parties have agreed to since October 13, 2026 results in Rippling identifying additional responsive documents, Rippling will produce such documents. |
| 6 | Keith O'Brien Employment Information (RFPs 8, 47, 83) | Rippling has agreed to produce non-privileged documents and communications related to O'Brien's employee file for Rippling. | Deel's statement that Rippling has not produced O'Brien's employment file is inaccurate. Rippling has produced his employment file, including employment agreements, contracts, employment information, attendance summaries, and reviews.[5] | Rippling has substantially completed production of O'Brien's employment information. |
| 7 | Honeypot and #d-defectors Documents (RFPs 10 & 12) | Rippling has agreed to produce non-privileged documents and communications relating to Rippling's investigation, forensic analysis, or "honeypot" operation regarding O'Brien. | As Deel acknowledges, Rippling has produced documents related to the Honeypot trap and "d-defectors" Slack channel, including the entire contents of that channel—which, as alleged in the First Amended Complaint, did not exist until March 3, 2025, and had no content. ECF 57 ¶¶ 121–24. Rippling has also produced the forensic logs showing O'Brien's access to that channel on March 4, 2025, and the correspondence with Deel regarding the channel.[6] The honeypot trap was otherwise directed by counsel. As such, the remaining documents and communications concerning the honeypot trap are privileged and will be included on Rippling's forthcoming privilege logs. | Rippling has substantially completed production of documents related to the d-defectors Slack channel and will log any documents withheld for privilege in its forthcoming privilege log. To the extent the parties' recently agreed search terms result in Rippling identifying additional responsive documents, Rippling will produce such documents by November 20, 2026. |
| 8 | Co-Conspirator Documents and Communications (RFPs 13, 50–54) | Rippling has agreed to produce responsive, non-privileged documents and communications related to the allegations regarding the five co-conspirators identified in the First Amended Complaint. | Rippling agreed to all of Deel's proposed search terms related to the co-conspirators identified in the First Amended Complaint and has reviewed and produced responsive documents that hit on those terms. Deel's statement that only 127 documents in Rippling's production relate to the alleged co-conspirators is also incorrect. On September 16, 2026, Rippling produced approximately *three hundred* documents that co-conspirators 1 and 2 downloaded upon their departure from Rippling to Deel, | Rippling has substantially completed its production of documents related to the co-conspirators identified in the complaint. To the extent the search terms to which the parties have agreed since October 13, 2026 result in Rippling identifying additional responsive documents, Rippling will produce such documents by November 20, 2026. |

[4] *See, e.g.*, RIPPLING-DEEL-00631287, RIPPLING-DEEL-00631515; and RIPPLING-DEEL-00631273.

[5] *See, e.g.*, RIPPLING-DEEL-00000023, RIPPLING-DEEL-00000027, RIPPLING-DEEL-00000270, RIPPLING-DEEL-00000246, RIPPLING-DEEL-00000247, and RIPPLING-DEEL-00000275.

[6] *See, e.g.*, RIPPLING-DEEL-00362960, RIPPLING-DEEL-00744902, and RIPPLING-DEEL-00744884.

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | | | along with forensic logs showing the download activity.[7] Additionally, Rippling notes that co-conspirators 3, 4, and 5 were not employees of Rippling, and co-conspirator 5 was the "Watchman," whose identity was shielded from Rippling until nearly a year into this lawsuit. It is not surprising that Rippling does not possess an abundance of documents relating to non-employees and Deel's racketeering-enterprise associates. | |
| 9 | Victim Communications (RFPs 15 and 78) | Rippling agreed to produce documents and communications with alleged victims related to the allegations in the First Amended Complaint. | Rippling agreed to all of Deel's proposed search terms related to the victims identified in the First Amended Complaint and has reviewed and is producing responsive documents that hit on those terms. It is not surprising that Rippling does not possess more communications with or about third-party victims who are not Rippling. Even so, Deel's suggestion that none of these communications are substantive is inaccurate. Rippling has produced communications from the CEO of a victim warning of Deel engaging in similar conduct towards his company.[8] Rippling further notes that Deel has subpoenaed these third-party victims. | Because Rippling and Deel did not reach agreement on several of the search terms related to the victims until September 23, 2026, Rippling's review and production of documents responsive to these terms remain ongoing. Rippling intends to complete production of responsive documents by November 20, 2026. |
| 10 | Allegedly Misappropriated Customers and Claimed Harm (RFPs 14, 33, 76, 77) | Rippling agreed to produce documents relating to the harm it claims, including customer relationships identified in the First Amended Complaint and in Appendix A to its Supplemental Response to Deel Interrogatory No. 7. | Rippling has produced over *37,000* Salesforce records for the more than one thousand Rippling customers. For each customer, Rippling has provided more than two dozen categories of Salesforce records, including account history, sales notes, communications, engagement events, and product purchasing histories. Rippling is currently reviewing and producing records from its Gong repository. The assertion that Rippling has only produced a "handful" of direct communications with the customers it identifies as misappropriated is false. Rippling produced *hundreds* of direct communications involving its custodians.[9] Rippling's Salesforce records also contain extensive records of email correspondence, which in some instances includes *hundreds* of Rippling's communications with *a single customer*.[10] | Rippling has substantially completed production of its Salesforce records and will complete production of relevant Gong records by November 20, 2026. |

[7] *See, e.g.*, RIPPLING-DEEL-00365854 – 00355951, RIPPLING-DEEL-00365985, and RIPPLING-DEEL-00365986.

[8] *See, e.g.*, RIPPLING-DEEL-00744879.

[9] *See, e.g.*, RIPPLING-DEEL-00628385, RIPPLING-DEEL-00629892, RIPPLING-DEEL-00629589, and RIPPLING-DEEL-00629748.

[10] *See, e.g.*, RIPPLING-DEEL-00679113.

## III. Rippling's Trade Secret Identification

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| 11 | Slack channels identified in Interrogatory No. 9. | Rippling has agreed to produce the content of each of the Slack channels O'Brien accessed as a part of the scheme and identified in Rippling's response to Interrogatory No. 9. | Rippling has gathered and produced the hundreds of Slack channels O'Brien accessed during the five-month spying scheme. On October 16, Deel identified for the first time 48 channels from which Rippling had not completed its production. Rippling promptly investigated the issue and, one week later (October 23), Rippling produced the newly identified "missing" Slack channels (3,090 additional Slack documents) comprising all of the Slack identified by Deel on October 16, minus select messages for which Rippling is performing a secondary privilege review. | Rippling has completed its production of the documents identified by Deel, with the exception of specific individual messages and families subject to a secondary privilege review. Rippling will produce any non-privileged, outstanding Slack data from these channels by October 29, 2026. |
| 12 | Trade Secret No. 3: The compilation of customer-specific Sales Opportunity information contained in identified Rippling Slack channels | Rippling has agreed to identify the Slack channels that contain Trade Secret No. 3—the compilation of customer-specific Sales Opportunity information—by channel name and produce the contents of those channels. | Deel identifies no deficiency in Rippling's production. Rippling has produced the contents of these Slack channels, and on October 23, 2026, provided a metadata overlay containing the channel name. As Deel's "current count" of the channels demonstrates, Deel can readily identify these channels and review their contents. The individual Slack documents produced for the identified channels are the documents Keith O'Brien "accessed" during his daily spying activity, at Defendants' direction, over a span of nearly five months—which is what Deel's Rog 9 specifically requested. The volume of individual documents is a consequence of the scope of Defendants' spying scheme, not any over-identification by Rippling. | Rippling has completed its production of the documents identified by Deel, with the exception of specific individual messages subject to a secondary privilege review. Rippling will produce any non-privileged, outstanding Slack data from these channels by October 29, 2026. |
| 13 | Trade Secret No. 4: Specific elements of Rippling's Pricing and Contracting Strategy. | Rippling has agreed to identify the Slack channels that contain Trade Secret No. 4—specific elements of Rippling's pricing and contracting strategy—by channel name and produce the contents of those channels. | Deel's assertion that Rippling has produced "no documents or Slack channels that contained the allegedly misappropriated trade secrets" for Trade Secret No. 4 (trade secret elements of Rippling's pricing and contracting strategy) is inaccurate. Rippling's response identifies and describes in detail the contents of three specific channels containing this trade secret (see 9/30/26 Amended Response, pp. 61-63). Rippling produced the contents of those three Slack channels on July 2 and July 17, 2026. And on October 23, 2026, Rippling provided a metadata overlay containing the channel name, rendering these documents readily identifiable by Deel. | Rippling has completed its production of the documents identified by Deel. |
| 14 | Trade Secret No. 11: The compilation of Customer Satisfaction and | Deel's alleged "deficiency" is intentionally misleading. The section of Rippling's Rog 9 response addressing TS No. 11 (pp. 53 to 58) explains that Rippling uses third-party software called Rattle to integrate its Salesforce database with Slack. Rattle creates Slack channels called "Rattle | Rippling completed its production of Slack "Rattle Feeds" containing the claimed compilation of customer satisfaction and churn risk information on August 28, 2026. And on October 23, 2026, Rippling provided a metadata overlay | Rippling has completed its production of the documents identified by Deel. |

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | Churn Risk information that Rippling maintains in its Salesforce database. | Feeds" that post automatically every time specific fields in the Salesforce database are updated. Many of the Slack "Rattle Feeds" are dedicated to customer satisfaction and churn risk issues, such as channels that post automatically in real time whenever a customer is marked in Salesforce as a churn risk. As Rippling's Rog 9 response explains, O'Brien did not have credentials for accessing customer satisfaction pages in Salesforce, so he searched and reviewed Slack "Rattle Feeds" to access and misappropriate the equivalent information. Rippling agreed to identify the Slack "Rattle Feeds" containing the compilation of Salesforce information accessed by O'Brien and described them in detail. Rippling agreed to produce the accessed Slack "Rattle Feeds." | containing the channel name, rendering these documents readily identifiable by Deel. | |

# IV. Trade Secret Discovery

| Rippling's Position |
|---|
| As Deel acknowledges, the parties are still meeting and conferring about each of the issues raised in Deel's chart—many, if not all, of which Deel raises for the first time in its October 23 submission. Rippling is continuing to review and produce responsive documents that hit on the numerous trade secret-related search terms to which the parties only recently agreed. Moreover, on October 11, 2026, the Bouazizes proposed more than two dozen additional trade secret-related terms, and the parties are presently conferring regarding those terms. As such, none of the categories identified below are ripe for the Court's adjudication. Moreover, many of Deel's positions as to each category below are legal arguments about Rippling's productions, not deficiencies the Court can address in response to a discovery motion. |

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| 15 | Process and strategy trade secrets: sales pipeline stages (No. 1), pricing and contracting strategy (No. 4), implementation process (No. 6), customer satisfaction monitoring (No. 7), complaint resolution and escalation (No. 8), and Global Expansion Plans (No. 16) (RFPs 13, 34, 36, 61–65). | Rippling agreed to produce the contents of each item of Rippling Information and documents relating to information O'Brien allegedly took. This is the first time Deel raised the issue of and requested "the documents that would show [Rippling's] processes and strategies as Rippling actually maintained them." | Rippling has produced the complete contents of each Slack channel and version histories for each Google Drive document that Rippling has identified as containing these trade secrets. | Rippling has completed its production of the documents identified by Deel. |
| 16 | Database trade secrets: Salesforce sales-opportunity (No. 2), customer-success (No. 9), and churn-risk (No. 11) compilations, and the Global | Rippling agreed to produce the contents of each item of Rippling Information and documents relating to information O'Brien allegedly took. | Rippling has produced the complete contents of each Slack channel and version histories for each Google Drive document that Rippling has identified as containing these trade secrets. | Rippling has completed its production of the documents identified by Deel. |

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | Payroll employee compilation (No. 20) (RFPs 13, 36, 224). | | | |
| 17 | Document and Slack compilation trade secrets (Nos. 3, 5, 10, 12–15, 17–19, 21) (RFPs 13, 34, 69, 85, 223, 225). | Rippling agreed to produce the contents of each item of Rippling Information and documents relating to information O'Brien allegedly took. | Rippling has produced the complete contents of each Slack channel and version histories for each Google Drive document that Rippling has identified as containing these trade secrets. Rippling's Rog 9 response identifies, by Bates number, the version(s) of each identified document that Defendants misappropriated. It identifies each misappropriated Slack channel by channel name, and Rippling produced a metadata overlay for its production allowing Deel to search its production of Slack by channel name. Searching Slack by channel name is much more efficient for Deel than searching by Bates number, and Deel has repeatedly demonstrated that it is capable of identifying specific Slack channels by name.[11] Adding Bates number identifications to Rippling's Rog 9 response would be needlessly burdensome and therefore disproportionate under Rule 26. | Rippling has completed its production of the documents identified by Deel, with the exception of specific individual messages subject to a secondary privilege review. Rippling will produce any non-privileged, outstanding Slack data from these channels by October 29, 2026. |
| 18 | Discovery and development of each claimed trade secret (RFPs 39, 46, 61–66). | Rippling has agreed to produce documents sufficient to show efforts to develop the alleged trade secrets and identify the individuals involved. A sufficient-to-show commitment does not extend to a complete "development record" or cost accounting for each item. Furthermore, the stolen trade secrets that Rippling has identified to date are not technological innovations for which Rippling maintains organized product development folders. The development of these trade secrets is evidenced primarily in the Slack channels from which Defendants stole them and related contemporaneous correspondence for which Rippling has conducted (and is continuing to conduct) custodial, search-term-driven collections and productions. | Rippling has completed its production of the Slack channels showing the discovery and development of each claimed trade secret. Rippling is continuing to review agreed-upon search term hits on agreed-upon custodians and repositories. | Rippling will complete its production of responsive documents identified in the recently agreed-upon search term hits by November 20, 2026. |
| 19 | Independent economic value from secrecy (RFPs 13, 34, 46). | Rippling has agreed to produce documents relating to whether each item is a protectable trade secret. Rippling has agreed to produce documents showing distinctness from generally known information only to the extent uncovered in Rippling's search. Rippling notes | Rippling has completed its production of the misappropriated Slack channels, which contain the information supporting the specific theories of independent economic value that Rippling has explained for each trade secret, in detail, in its response to Deel's Rog 11 (9/30/26 Amended Responses, pp. 103-114). | Rippling will complete its production of responsive documents identified in the recently agreed-upon search term |

[11] *See, e.g.*, ECF 456 at 6 (arguing that "the channels Rippling cites for Trade Secret No. 3 alone amount to about 13,000 documents and 149,000 pages.").

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | | that this is a contention RFP, and that Deel will likely dispute—at summary judgment and/or at trial—whether Rippling has adduced sufficient evidence to support independent economic value for its trade secrets. That is a legal dispute that should not be decided on a discovery motion. | Rippling is continuing to review agreed-upon search term hits on agreed-upon custodians and repositories. | hits by November 20, 2026. |
| 20 | Harm, lost value, and claimed benefit to Deel (RFPs 14, 35, 80). | Rippling has agreed to produce documents relating to claimed harm (RFP 14) and documents related to Deel's efforts to interfere with the Series G fundraising round (RFP 35 and RFP 80, *see* Rows 32 and 34). | Rippling has produced tens of thousands of Salesforce records relating to the customers whose confidential information Rippling has identified as having been accessed by O'Brien. Rippling has also produced documents related to Deel's interference with its Series G fundraising round, including correspondence with lead investors.[12] Rippling is currently reviewing and will produce additional cost data and responsive documents identified in the recently agreed-upon search term hits. | Rippling will complete its production of responsive documents identified in the recently agreed-upon search term hits by November 20, 2026. |
| 21 | Who had access to each claimed trade secret, including entities, and access logs (RFPs 40, 42, 44, 151, 152, 155). | Rippling has agreed to produce documents sufficient to identify individuals, contractors, and third parties with access or knowledge (RFPs 40, 42), and documents sufficient to identify access controls (RFP 44). Rippling has offered to meet and confer about documents concerning Rippling's Slack "workspace structure," Slack administrators, and Slack membership and privacy histories (RFPs 151, 152, 155). | Rippling has produced confidentiality and information security policies.[13] On October 23, 2026, Rippling also agreed to run numerous search terms related to its confidentiality and information security policies and will produce responsive documents identified in the corresponding search term hits. | Rippling will complete its production of responsive documents identified in the recently agreed-upon search term hits by November 20, 2026. |
| 22 | Disclosures outside Rippling (RFPs 42, 45, 161, 162). | Rippling has agreed to produce documents sufficient to identify third parties with knowledge of Rippling's alleged trade secrets (RFP 42). Rippling has offered to meet and confer regarding its production of communications between Rippling and auditors regarding information security certifications (RFP 161), documents reflecting acceptable use, data-handling, or confidentiality agreements signed by persons with access to confidential Rippling information (RFP 162), and communications related to disclosures to third parties (RFP 45, *see* Row 33). | Rippling has agreed to numerous search terms concerning its identified trade secrets and has reviewed and produced responsive documents. At present, after conducting a reasonable and diligent search, Rippling has not located any disclosures of the alleged trade secrets outside the company on a non-confidential basis. | Rippling will complete its production of responsive documents identified in the recently agreed-upon search term hits by November 20, 2026. On October 11, 2026, the Bouazizes proposed more than two dozen additional trade secret-related terms. The parties are conferring regarding those terms, |

[12] *See, e.g.*, RIPPLING-DEEL-00744749 and RIPPLING-DEEL-00744867.

[13] *See, e.g.*, RIPPLING-DEEL-00000245, RIPPLING-DEEL-00364762, RIPPLING-DEEL-00364805, RIPPLING-DEEL-00364940, and RIPPLING-DEEL-00364994.

| Row | Deel's Category | What Rippling Has Agreed to Produce | What Rippling Has Produced to Date | Timing of Completion |
|---|---|---|---|---|
| | | | | and Rippling will review and produce responsive documents identified in agreed-upon search term hits. |
| 23 | Reasonable measures, and how they changed over time (RFPs 27, 37, 38, 41, 43, 44, 84, 153, 157–160, 163). | Rippling has agreed to produce documents sufficient to show any changes made to Rippling's policies as a result of the allegations in this case (RFP 27), and documents and communications sufficient to show the steps Rippling has taken to maintain the confidentiality of its trade secrets, including policies and agreements, training, Slack monitoring, access controls, classification policy, and incident response (RFPs 37, 38, 41, 43, 44, 84, 157-160, and 163). Rippling has agreed to meet and confer regarding Deel's request for all Slack workspace settings and "policy configuration files" for Rippling's Slack environment (RFP 153). | As Deel acknowledges, Rippling has produced and is producing confidentiality and information security policies.[14] On October 23, 2026, Rippling also agreed to run numerous search terms related to its confidentiality and information security policies and will produce responsive documents identified in the corresponding search term hits. | Rippling has completed its production of the documents identified by Deel. Rippling will complete its production of responsive documents identified in the recently agreed-upon search term hits by November 20, 2026. |
| 24 | Mr. O'Brien's access and activity logs (RFPs 11, 154, 224–227). | Rippling has agreed to produce logs of O'Brien's Slack, Google Drive, and web browser access and activity. | Rippling has produced relevant O'Brien activity logs, including logs showing O'Brien's search and preview activity, Google Drive access history, and web browser history.[15] At present, after conducting a reasonable and diligent search, Rippling has not located any log of "channels Mr. O'Brien could access" or any Salesforce access logs, besides web browser histories indicating Salesforce web application visits. | Rippling has completed its production of the documents identified by Deel. |

[14] *See* Note 11 above.

[15] *See, e.g.*, RIPPLING-DEEL-00286919, RIPPLING-DEEL-00286952, RIPPLING-DEEL-00286923, RIPPLING-DEEL-00286921, and RIPPLING-DEEL-00362960.

## V. Meet and Confer Impasses

| Row | Deel's RFPs | Rippling's Position |
|---|---|---|
| 25 | RFP 3 — All Documents and Communications related to any financial transactions between You and O'Brien. | Rippling agreed to produce evidence of payments made to O'Brien after March 14, 2025. The amount and/or dates of legal fees Rippling has paid to O'Brien's counsel are irrelevant to bias or any other issue. Indeed, Deel has refused to disclose the amount of attorneys' fees it is paying for any Deel employees, confirming that such information is not discoverable. |
| 26 | RFP 7 — All Documents and Communications, and any other information or data, that You have sent to, received or obtained from O'Brien or his devices. | Rippling agreed to produce responsive, non-privileged communications with O'Brien relating to the subject matter of this case. With respect to Deel's forensic imaging request, Rippling agreed to limit its review of O'Brien's devices to non-user-generated data, with Mr. O'Brien's counsel to perform a "first look" review of requested user-generated data (akin to the Court-ordered protocol for Alex's devices). O'Brien has offered to produce forensic data to Deel subject to similar protections, which Deel's broad RFP does not provide. Deel's demand for unfettered access to O'Brien's devices imposes unnecessary intrusion on his privacy interests and should be denied. |
| 27 | RFP 20 — All Documents and Communications relating to Rippling's policies, procedures, and training regarding the use of competitor information, onboarding of competitor employees, and compliance with trade secret laws. | The FAC alleges that Deel recruited and hired numerous Rippling employees, then solicited and received Rippling confidential information from them, and alleges that Deel misappropriated Rippling's trade secrets. Deel makes no corresponding allegations that Rippling did the same. Discovery of all documents relating to Rippling's policies and procedures for using competitor information, onboarding employees who worked for competitors, and complying with trade secrets laws is not relevant to any claim or defense and disproportionate to the needs of the case. |
| 28 | RFP 23 — All Documents and Communications relating to "Rippling's sanctions compliance program," as referenced in paragraph 115 of the FAC, including, but not limited to, Your allegation that "Rippling has never transmitted a payment to a sanctioned country, individual, entity, or bank, including Russia." | Rippling agreed to produce non-privileged documents bearing on the relevant sanctions-related issues: what O'Brien knew and/or reported to anyone at Rippling about sanctions, and what he searched for at Defendants' behest. Deel's requests for documents related to Rippling's sanctions compliance program writ large are irrelevant and grossly disproportionate. Moreover, Deel's counterclaim concerning Rippling's sanctions compliance was dismissed by Judge Breyer. |
| 29 | RFPs 24, 184 — All Documents and Communications relating to any whistleblower complaints by Rippling employees, hotline submissions, or internal reports regarding Rippling's own trade secret theft, sanctions violations, unfair competition, labor violations, unlawful employee poaching, or other unlawful or unethical conduct by Rippling. | Rippling agreed to produce non-privileged whistleblower complaints made by O'Brien. Deel's requests for all employee submissions and internal reports related to Rippling's own legal compliance writ large are irrelevant and grossly disproportionate. |
| 30 | RFP 27 — All Documents and Communications relating to any remediation, corrective action, or changes to policies, procedures, or technical safeguards implemented by Rippling in response to the alleged conduct by Defendants. | Deel's representation that Rippling refuses to produce any documents in response to this RFP is inaccurate. Rippling has agreed to produce non-privileged documents sufficient to show any changes made to Rippling's policies as a result of the allegations in this case. |
| 31 | RFP 29 — All Documents sufficient to identify each former Deel employee employed by Rippling at any time from September 1, | This request suffers from deficiencies similar to those of RFP 20 above. The FAC alleges that Deel recruited and hired numerous Rippling employees, then solicited and received Rippling confidential information from |



6433402

| Row | Deel's RFPs | Rippling's Position |
|---|---|---|
| | 2022, to the present, including the individual's name, employment start date, and job title. | them. Deel makes no corresponding allegation that Rippling did the same. Discovery concerning every Deel employee Rippling has contacted or employed since September 2022 is not relevant at all, and disproportionate to the needs of the case. |
| 32 | RFP 35 — All Documents and Communications relating to Rippling's Series G funding round. | Deel's request for all documents related to Rippling's Series G funding round is irrelevant to any claim or defense, and grossly disproportionate. Nevertheless, Rippling has agreed to produce documents relating to Deel's efforts to interfere with Rippling's Series G funding round, and as a further compromise, will produce documents provided to investors in connection with Rippling's Series G funding round that contain substantive discussion of the underlying facts at issue in this case. |
| 33 | RFP 45 — All Documents and Communications related to any disclosures You made to third parties as a result of the alleged misappropriation of the Rippling Information. | Rippling has agreed to produce documents sufficient to show any formal disclosures Rippling has made to banks, investors, or business partners regarding the allegations in this lawsuit. Deel's request for "all documents and communications related to any disclosures" as a result of the allegations in this case is overbroad and unduly burdensome. Rippling has agreed to produce communications with government officials relating to the subject of this action, subject to its objections and on the condition that Defendants will do the same. Rippling asked the Bouazizes' counsel whether Defendants have informed DOJ about their request that Rippling produce these documents, and whether DOJ has expressed any view on the matter. *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 611 (N.D. Cal. 2020) (describing the government's privilege to protect from disclosure documents that "would expose [the] agency's decision-making process"). On October 11, counsel for the Bouazizes responded, "[w]e are discussing your request and will respond shortly." To date, Rippling has not received a response. |
| 34 | RFP 80 — All Documents and Communications comprising or relating to presentations, prospectuses, or similar documents created by Rippling for the purpose of soliciting investments in Rippling or otherwise raising funds for Rippling. | As with Deel's RFP No. 35, its request for all documents relating to Rippling's fundraising is irrelevant, disproportionate, and unduly burdensome. As a compromise, Rippling will produce documents provided to investors in connection with Rippling's Series G funding round (its most recent funding round) that contain substantive discussion of the underlying facts at issue in this case. |
| 35 | RFPs 166, 169 — All Documents and Communications reflecting any monitoring, surveillance, observation, or controlled-access operation conducted by Rippling with respect to O'Brien before March 14, 2025 (RFP 166)<br><br>All Documents and Communications reflecting any payment, compensation, reimbursement, indemnification, gift, or other benefit provided to O'Brien, his counsel, or his family (RFP 169). | These requests pertain to Deel's RICO counterclaims that have been stayed in relevant part by Judge Breyer's September 25, 2026 Order. To the extent RFP 166 pertains to Rippling's affirmative claims, the request seeks privileged information, including documents reflecting investigations conducted at the direction of counsel. Rippling has previously provided non-privileged information regarding these issues in response to Rog 7.<br><br>Further, as to RFP 169, Rippling agreed to produce evidence of payments made to O'Brien after March 14, 2025 (see RFP 3 above). The evidence Deel requests concerning the legal fees Rippling has paid to O'Brien's counsel is not discoverable for the same reasons discussed above with respect to Deel's overlapping RFP 3. |
| 36 | RFPs 173, 174 — All Documents and Communications between Rippling and any of Rippling's investors (including Founders Fund, Sequoia Capital, Greenoaks Capital, Coatue, Kleiner Perkins, Bedrock, and any Series G or other equity investor) regarding Deel, the Bouazizes, Westgarth, O'Brien, or the subject matter of this Action. (RFP 173)<br><br>All Rippling board materials, board presentations, board meeting minutes, and audit-committee materials referencing Deel, the Bouazizes, Westgarth, O'Brien, this Action, or the subject matter of this Action. (RFP 174) | Rippling has agreed to produce documents sufficient to show any formal disclosures Rippling has made to investors regarding the allegations in this lawsuit (see RFP 45 above), and will produce documents provided to investors in connection with Rippling's Series G funding round that contain substantive discussion of the underlying facts at issue in this case (see RFPs 35, 80 above). Deel's request for all investor documents and communications that reference Deel, the specified Deel executives, and the allegations in this case is irrelevant and disproportionate.<br><br>With respect to RFP 174, Deel inaccurately represents that the parties are at an impasse. Rippling invited Deel to meet and confer about the scope of the request, and Deel has not raised the request during a conference. Deel's request for all board materials merely referencing Deel, the specified Deel executives, and the |

| Row | Deel's RFPs | Rippling's Position |
|---|---|---|
| | | allegations in this case is irrelevant and disproportionate. Rippling remains willing to confer with Deel regarding this RFP. |
| 37 | RFPs 182, 214 — All Communications with Rippling personnel concerning their potential or actual affiliation, employment, or other relationship with Your competitors, including but not limited to Communications including legal or other threats against such personnel pertaining to such potential or actual affiliation, employment, or other relationship with Your competitors. (RFP 182).<br><br>All Documents and Communications relating to Deel obtained by Rippling from any current or former Deel employee. (RFP 214) | As discussed above with respect to RFPs 20 and 29, Rippling alleges that Deel recruited and hired numerous Rippling employees, then solicited and received Rippling confidential information from them. Deel makes no corresponding allegation that Rippling did the same. Discovery of all documents and communications concerning any Rippling employee's potential or actual relationship with a competitor, or any information obtained from current or former Deel employees, is not relevant to any claim or defense, and is disproportionate. |

# Exhibit 2 – Rippling's Production By Custodian

| Custodian | Total |
|---|---|
| O'Brien, Keith | 50,174 |
| Rippling | 37,523 |
| Rippling Slack | 29,900 |
| Goloub, Anton | 1,001 |
| Bentley, Thomas ("Tommy") | 833 |
| Roach, Everett | 751 |
| Fee, Robert | 744 |
| Wiedeman, Spencer | 637 |
| Kraft, Blake | 625 |
| Bedi, Ashima | 568 |
| Ori, Kevin | 534 |
| Netsch, Alex | 531 |
| McDonnell, Jamie | 413 |
| Conrad, Parker* | 408 |
| Yung, Jameson | 394 |
| Camhi, Brandon | 371 |
| Godfrey, Duncan | 224 |
| Nunn, Adam | 156 |
| Whithorne, Bobby* | 119 |
| Wu, Vanessa+* | 108 |

* Denotes limited custodian narrowed by time and subject matter.

+ Denotes attorney custodian. Vanessa Wu is Rippling's former General Counsel.