United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEOPLE CENTER, INC.,
Plaintiff,

v.

DEEL, INC., et al.,
Defendants.

Case No. 25-cv-02576-CRB (LJC)

**ORDER RESOLVING RIPPLING'S LATEST REQUEST FOR FORENSIC INSPECTIONS**

Re: Dkt. Nos. 410

In this litigation, Rippling has made prior requests for a court order compelling the forensic examination of various devices and accounts. *See* Dkt. Nos. 178, 235. In its current request, Rippling seeks certain forensic data from Alex Bouaziz's iPhone 16e, which he began using on March 23, 2025, and a forensic examination of Philippe Bouaziz's devices and accounts used to communicate with O'Brien.[1] Dkt No. 410 at 6–7. Alex Bouaziz is the founder and Chief Executive Officer of Deel and his father, Philippe Bouaziz, is Deel's Chief Financial Officer. In support of its request, Rippling filed a declaration by its digital-forensic expert Joseph Naghdi, dated September 23, 2026. Dkt No. 409-4 (Naghdi Decl.). Deel filed a letter and attached a declaration in opposition to Rippling's request, by its own forensic expert, J. Christopher Racich, dated September 30, 2026. Dkt Nos. 416-1, 416-2 (Racich Decl.).[2] Deel then filed a reply

[1] For clarity of the record, the Court notes that Rippling originally made its request in a 30-page joint discovery status report. Dkt. Nos. 410 (Redacted Joint Discovery Status Report); 409-3 (Unredacted Joint Discovery Status Report). After the Court ordered the parties to refile their joint discovery status report in a more concise statement not to exceed ten pages, Rippling repeated its request in the October 5, 2025 joint discovery status report. Dkt No. 428. These status reports, Dkt Nos. 410 and 428, were filed and labeled on the docket as joint discovery letter briefs, though they are joint discovery status reports that included certain disputes.

[2] The Court granted Deel's Administrative Motion for Leave to file said material. Dkt. No. 435.

declaration by Naghdi, dated October 1, 2026. Dkt. No. 428-1 (Naghdi Reply Decl.).[3]

At the October 8, 2026 Discovery Status Conference, the Court heard argument concerning Rippling's request, and Rippling clarified that it was seeking certain forensic data artifacts. At the discovery status conference, the Court determined that the parties had provided sufficient briefing and record evidence that it could resolve the dispute though it had not been presented in a joint letter brief. There were no objections from the parties regarding that approach.

At a subsequent Discovery Status Conference on October 22, 2026, the Court revisited Rippling's request for forensic information, and asked for clarification regarding the precise scope of the electronically stored information that Rippling requested. Rippling filed a letter, clarifying the data sought. Dkt. No. 452. Rippling specified that it seeks to inspect two iPhones for Philippe Bouaziz, and the iPhone 16e for Alex Bouaziz, noted above, for the purpose of collecting data for 16 artifacts listed.[4] Dkt. No. 452 at 3. All three devices were imaged previously on April 15, 2026. Rippling addressed the production format and process:

> Production format: Native files and associated WAL, SHM, and other files associated with the underlying records; structural information, timestamps, application and participant identifiers, and deletion-related metadata. User-generated data remains subject to the existing first-look protocol.
>
> For each of the three device images subject to inspection, Defendants should provide the collection tool and version, extraction type, collection date, and hash manifest; identify the acquisition date of Philippe Bouaziz's iPhone 15 Pro; and identify any requested source that no longer exists or cannot be collected, with the basis for that conclusion.

Dkt. No. 452 at 4.

## I. BACKGROUND

### A. O'Brien and His Involvement with Alex Bouaziz and Philippe Bouaziz

Rippling has alleged that its competitor, Deel, recruited Rippling's then employee Keith

[3] Pursuant to the Court's order on October 1, 2026, Dkt No. 419, the October 5, 2025 Joint Discovery Status Report, Dkt No. 428, included three exhibits, Naghdi's September 23, 2026 declaration and Racich's declarations, re-filed, and Naghid's reply declaration. Dkt Nos. 428-1, 428-2. 428-3.

[4] The artifacts largely relate to WhatsApp, Telegram, call history, notification data, contact and address information.

O'Brien to spy on Rippling and share commercially sensitive information with Deel. Rippling has alleged that Deel made payments to O'Brien in connection with their alleged corporate espionage scheme from November 2024 until March 13, 2025. Dkt No. 57 (First Am. Compl.) ¶ 64-65.

Rippling's First Amended Complaint includes an attached affidavit by O'Brien. The affidavit details O'Brien alleged conduct and his engagement with Alex Bouaziz and Philippe Bouaziz that underly the allegations. Dkt No. 57-1 (O'Brien Aff.). Among other things, O'Brien attested that, in or around the end of September 2024, O'Brien communicated with Alex Bouaziz. *Id.* ¶ 6. That exchange led to a conversation between the men via WhatsApp and a proposal by Alex that O'Brien continue working at Rippling and spy on his employer for Deel. *Id.* When O'Brien spoke with Alex via WhatsApp to tell him that he was onboard with the plan, Alex turned the call into a three-way call between O'Brien, Alex, and his father, Philippe, Deel's CFO. *Id.* ¶ 7. The three men then switched to using Telegram to communicate, and Alex and Philippe said that O'Brien would be paid approximately 5000 euros per month for spying on Rippling for Deel, and he would be paid around the 6th day of each month. *Id.* ¶¶ 7–8. Alex allegedly instructed O'Brien to communicate with Philippe in a separate Telegram channel about payments, and O'Brien attested that all of the Telegram chats were set to automatically delete after 24 hours. *Id.* ¶ 11. Alex instructed O'Brien to "be careful" and "clean up," which he understood to mean that he should take steps to ensure there was no evidence of the communications between us. *Id.*

O'Brien attested that he received his first payment in the beginning of November 2024, and soon after, Philippe informed him that future payments would be made via cryptocurrency. *Id.* ¶ 12. From then on, O'Brien allegedly received transfers in Ethereum to his Blockchain.com currency wallet. *Id.* ¶ 13. O'Brien allegedly communicated with Philippe regarding his payments in a Telegram channel that included a third individual who Alex only referred to as "A.D." or "the Watchman." *Id.* ¶ 14. Philippe allegedly established coded language to discuss the payments with O'Brien and to signal to O'Brien that Alex was happy with the Rippling information that O'Brien was providing. *Id.* ¶ 15.

After Rippling carried out a honey-pot scheme to detect O'Brien, on March 12, 2025, Rippling initiated legal proceedings against him before the High Court of Ireland, obtaining an

emergency preservation order requiring O'Brien to turn over his devices to an independent solicitor for forensic imaging. *Id.* ¶ 27–28; Dkt No. 338-20 at 2 (Cooperation Agreement ¶ F); FAC ¶¶ 2, note 2, 65, 125; Dkt No. 57-2 (Timeline). O'Brien attested that, on March 14, 2024, an independent solicitor served a court order on him requiring inspection of his devices, but he deflected and was able to go to the bathroom where he performed a factory reset on his phone, erasing all of its content, including all apps and contacts. O'Brien Aff. ¶ 28–29.

From March 15, 2025 to March 25, 2025 O'Brien spoke to Deel's lawyer Asif Malik every day. *Id.* ¶ 33. On March 16, 2025, after Asif Malik told him to destroy his phone, Alex smashed his phone with an axe and put it down the drain at his mother-in-law's house. *Id.* ¶¶ 33, 35.

After O'Brien felt that Deel's support was weakening, including when Alex Bouaziz and Dan Westgarth left a WhatsApp group with him, on March 25, 2025, O'Brien had his last communication with Deel's lawyer Malik. *Id.* ¶¶ 39-40, 46; FAC ¶ 148. That same day O'Brien contacted the Irish law firm Fenecas Law, decided to cooperate, and agreed to meet with the solicitor the following day. O'Brien Aff. ¶¶ 46, 50; FAC ¶ 148. The following day, O'Brien and his Irish counsel from Fenecas met with the independent solicitor and Rippling's solicitors. O'Brien Aff. ¶ 47; FAC ¶ 149. On March 28, 2025, O'Brien meet with Rippling's in-house and U.S. legal team and agreed to an interview. O'Brien Aff. ¶ 47.

**B. Rippling and Deel's Competing Arguments and Forensic Expert Declarations**

The Court previously granted Rippling's request for a forensic examination of Alex Bouaziz's devices but denied the request as to Philippe's devices. The Court's denial, however, was without prejudice to a renewed request based on new information revealed through discovery. Rippling now contends that the record provides a stronger basis for a forensic examination, given what Rippling learned from its examination of Alex Bouaziz's devices.

Rippling's expert, Naghdi, provided a declaration that described evidence that Alex deleted certain communications, changed to a different phone following March 23, 2026, and that he engaged in communications with Philippe and A.D. close in time to when O'Brien received cryptocurrency payments. Naghdi Decl. ¶¶ 11-21. Naghi further explained why there is a need to examine Alex's iPhone 16e and compare it to the iPhone 15 Pro Max, as it may have data that



United States District Court
Northern District of California

United States District Court
Northern District of California

survives on the iPhone 16e, and an inspection may also identify responsive communications or deletion artifacts created after March 23, 2025. *Id.* ¶¶ 22-24. Naghdi explained that the examination of Philippe's preserved device and accounts is necessary to determine the completeness of his communications with Alex, O'Brien and A.D., and whether responsive communications were deleted. *Id.* ¶¶ 25-31.

Deel's expert, Racich, submitted a declaration that first focused on his assessment that the earlier forensic examination of Alex's devices that the Court authorized yielded a massive amount of data. Racich Decl. ¶¶ 11-23. Then Racich challenged certain factual predicates for Rippling's additional forensic examination requests. *Id.*¶¶ 24-39. Racich also disputed that the additional requests to examine Philippe's devices and Alex's iPhone 16e were necessary or narrow. *Id.* ¶¶ 43-46. Racich opined that Rippling's request were based entirely on speculation that a later-acquired device may contain certain data. Racich Decl. ¶ 44.

Naghdi's reply declaration correctly noted that Racich did not directly dispute his findings considering LinkedIn activity related to a March 14, 2025 LinkedIn message. Naghdi Reply ¶ 4. Naghdi provided data that Racich could have reviewed to confirm his findings. *Id.* ¶¶ 5-9. Racich did not dispute the evidence that communications between Alex, Philippe and A.D. occurred close in time to when O'Brien received cryptocurrency payments. *Id.* ¶¶ 11-13. Naghdi explained how, even in the absence of a device backup or iCloud migration, transfer of data onto Alex's iPhone 16e could occur through a restoration of an application-specific backup. *Id.* ¶ 29.

## II. LEGAL STANDARD

A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 34 allows a party to request "to inspect, copy, test, or sample," among other things, "data or data compilations . . . stored in any medium." Fed. R. Civ.

P. 34(a). Such a request must be "within the scope of Rule 26(b)." *Id.* The Advisory Committee has noted that Rule 34 "is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances." With respect to electronically stored information:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(1), (b)(2)(B). If a good cause showing is made, the court may nonetheless limit the extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or the requesting party has had "ample opportunity to obtain the information by discovery," or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The Federal Rules do not create a standard for discovery that "applie[s] differently or is heightened in the context of a forensic examination." Dkt No. 324 at 2 (quoting *Azenta, Inc. v. Andrews*, No. 22-cv-01952-JLS-JLB, 2023 WL 8845604). The burdens associated with an invasive form of discovery, including the burdens linked to privacy concerns, are appropriately considered within Rule 26's balancing framework which considers competing factors. *See* Fed. R. Civ. P. 26(b)(1)(2), (c)(1). "Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *In re Premera Blue Cross Customer Data Security Breach Litig.*, 329 F.R.D. 656, 670 (N.D. Cal. 2019) (quoting *Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5271629, at *5 (N.D. Cal. Oct. 22, 2018)).

## III. ANALYSIS

As the Court held previously, the forensic data that Rippling seeks is relevant to its claims that O'Brien communicated with Alex, Philippe, and A.D. in connection with the alleged

corporate espionage scheme and, furthermore, it is relevant to Rippling's claims concerning evidence spoliation. Though Alex acquired his Phone 16e after his final communication with O'Brien, new devices can carry data that predate the purchase of the device. Data from other sources can be restored through device and/or application backups. Rippling's expert Naghdi described such a scenario related to application-specific backups. Naghdi Reply Decl. ¶ 29. Racich's report did not address that scenario, and the Court is not willing to rely on his representation that he found no trace of pre-March 23 data or data concerning O'Brien when he did not describe the methodology that he used to complete his search in sufficient detail to allow the opposing expert or the Court to assess whether his search was comprehensive. In addition, Alex's iPhone 16e is relevant to Alex's communications activity after March 23, 2025. With respect to Philippe, the forensic data from his devices could, among other things, corroborate or undermine his claim that his late 2024 discussions with O'Brien were all oral. Naghdi Reply Decl. ¶ 19.

Turning to the issue of whether Rippling's requests are proportional to the case, the Court has recognized previously that a forensic examination of one's devices is a particularly invasive form of discovery, especially where the requesting party is a commercial competitor and the information sought belongs to top executives from a competitor company. Dkt. No. 271 at 3. The Court previously granted Rippling's request for a forensic examination of Alex's devices and accounts but denied its requests to examine Philippe's devices and accounts. *Id.* at 5. The denial was without prejudice to a renewed request if stronger support for such a request were revealed through additional discovery.

The evidence that Rippling now presents includes, among other things, evidence that Alex deleted a LinkedIn message that O'Brien attested that he received from Alex on March 14, 2025, shortly after the Irish solicitor served O'Brien with a preservation order. Rippling argues that Alex denied sending the message in a verified interrogatory response. Moreover, Deel does not dispute evidence that Alex continued to use a function to systematically disappear messages on an app platform after this action was filed, including messages exchanged with Philippe. Naghi Decl. ¶¶ 12-13. Though use of ephemeral messaging on its own does not necessarily establish grounds



United States District Court
Northern District of California

to suspect unlawful conduct, in this context, it does. The evidence from Alex's phone also supports a finding that Alex exchanged calls with Philippe and A.D. close in time when O'Brien received cryptocurrency payments. Deel and its expert are dismissive of the evidence that Alex and Philippe were in close communication, as they are a father and son running a business and responding to family commitments. However, the record now includes evidence that Alex changed A.D.'s name in his contact list and Deel does not dispute that Alex's contacts with A.D. came after a period of inactivity. The evidence that tends to support Alex's suspicious conduct in connection with deleting messages, including deleting messages with Philippe and in connection with A.D., is considered alongside O'Brien's sworn statements that Philippe was part of Alex's initial planning for O'Brien to receive monthly payments in return for sharing Rippling's information, and that O'Brien communicated with Philippe and A.D. through Telegram to discuss his crypto payments in return for Rippling's information. O'Brien Aff. ¶¶ 7-8, 14-15.

Deel, relying on its expert's analysis, responds that Rippling's conclusions based on this evidence are overblown. Deel's argument misapprehends the standard for discovery. A requesting party is not required to make a substantial showing or prove wrongdoing to establish that certain discovery is relevant or proportional to the needs of a case. When the record is taken as a whole, and considered along with the information that has been recently revealed, it is clear that Rippling's requests do not amount to a fishing expedition and they are "reasonably calculated to lead to the discovery of admissible evidence." *Pizzuto v. Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025) (noting that, though the phrase "reasonably calculated to lead to discovery of admissible evidence" was removed from Rule 26(b)(1) in the 2015 amendment, the change "does not affect [the Ninth Circuit's] understanding of the relevance or proportionality of Plaintiff's requests."). This is not a high bar for discovery and Rippling has met it by further substantiating the bases for seeking forensic data from Alex's Phone 16e and Philippe's devices.

Finally, the Court's conclusion that this discovery is proportional to the case is reinforced where, in contrast to the prior forensic examination that swept more broadly, Rippling now seeks a narrower set of data as stated in its October 22, 2026 supplemental letter. Dkt. No. 451. Whereas Deel's expert expressed concerns that the 107 Non-User-Generated Data artifacts amounted to a

United States District Court
Northern District of California

vast trove of revealing data, Racich Decl. ¶¶ 14, 20, Rippling has responded by reducing the number of artifacts to 16, Dkt. No. 452. The scope of the data and protocol, which includes a first-look requirement for User-generated data, as well as the existence of the Protective Order, reasonably mitigate the burdens, including Alex's and Philippe's privacy concerns, which must also be considered as part of the Rule 26(b) analysis. *See* Dkt. Nos. 271 at 5; 324 at 2.

## IV. CONCLUSION

For the foregoing reasons, Rippling's requests to inspect two iPhones for Philippe Bouaziz, and the iPhone 16e for Alex Bouaziz for the purpose of collecting forensic data for 16 artifacts listed is **GRANTED**. Dkt. No. 452 at 3. Deel shall produce this data by November 12, 2026, unless stayed by a further court order.

This order terminates Dkt. Nos. 410 and 428.

**IT IS SO ORDERED.**

Dated: November 6, 2026

LISA J. CISNEROS
United States Magistrate Judge