KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
ANDREW F. DAWSON - # 264421
adawson@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
BENJAMIN D. ROTHSTEIN - # 295720
brothstein@keker.com
MAYA P. JAMES - # 318554
mjames@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE CENTER, INC. D/B/A RIPPLING, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEEL, INC., a Delaware corporation, ALEXANDRE (“ALEX”) BOUAZIZ, an individual, PHILIPPE BOUAZIZ, an individual, DANIEL JOHN (“DAN”) WESTGARTH, an individual, and DOES 1–100,<br><br>Defendants. | Case No. 3:25-CV-2576-CRB<br><br>**OPPOSITION TO ALEX AND PHILIPPE BOUAZIZ’S MOTION FOR RELIEF REGARDING PERSONAL ELECTRONIC DEVICE INSPECTION**<br><br>Date Filed: March 17, 2025<br>Am. Compl. Filed: June 5, 2025<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6<br><br>Trial Date: None set |

## I. INTRODUCTION

The forensic record of post-complaint spoliation in this case is extreme. Within days of Rippling filing suit, Alex manually deleted 94 call records (including recent calls with A.D., aka the "Watchman," who made monthly crypto payments to Keith O'Brien during the spying scheme) and Alex relied on a 24-hour disappearing-messages setting to erase his communications with Philippe just *minutes* before moving his WhatsApp account to a new phone on March 23, 2025. Meanwhile, Asif Malik—the Deel in-house lawyer who was communicating daily with O'Brien and, in parallel, with Alex and Philippe—testified that he manually deleted Telegram messages and records of his calls with Alex and Philippe in real time and, on March 31 (fourteen days after Rippling initiated this case against Deel and its executives, referencing Malik), he deleted his entire Telegram account. On this record, Magistrate Judge Cisneros's order permitting inspection of Alex's iPhone 16e and Philippe's devices was not a close call; she already ordered inspection of Alex's iPhone 15 Pro Max on far less evidence, and this Court already affirmed that ruling.

Judge Cisneros warned the Bouazizes that continued opposition to the present inspection requests would not be substantially justified. They opposed anyway, obtained a stay, and filed this motion—the seventh Rule 72 motion by the Bouazizes or Deel (the company they control)—covering substantially the same issues this Court has already ruled on. The motion is a transparent delay tactic. The Court should deny the motion and award Rippling its fees under Rule 37(a)(5)(A).

## II. BACKGROUND

In June 2026, Judge Cisneros ordered inspection of Alex's devices under a protocol that limits Rippling to non-user-generated data (such as logs and metadata) and gives Alex's counsel a "first look" at any user-generated content before production. ECF 271. This Court affirmed. ECF 324. Pursuant to that ruling, Alex produced data from an iPhone 15 Pro Max that he used to communicate with Keith O'Brien from 2024 through March 2025. The data showed that Alex began using a different phone on March 23, 2025 (an iPhone 16e).

The forensic data from Alex's iPhone 15 Pro Max strongly supports the present inspection requests. First, the produced data corroborates Keith O'Brien's testimony that Alex and Philippe paid him to spy on Rippling, and that A.D. was the intermediary for those payments. O'Brien

testified that he "was supposed to be paid around the 6th of each month," that Philippe authorized payments by writing "send that watch to London" in a Telegram chat with O'Brien and A.D., and that O'Brien "would tell Alex if my payment was late, and he would tell me to 'ping Watchman' or that he would 'sort it.'" ECF 57-1 ¶ 16. Alex and Philippe deny all of this and claim they had no involvement in the crypto payments. But Alex's forensic data included a single preserved Telegram message from O'Brien to Alex, stored in a database of notifications received while Alex's screen was locked, dated March 7, 2025, and stating: "[redacted]." This message fits O'Brien's testimony perfectly. Defendants have not denied the message and have offered no alternative explanation for it.

Alex's iPhone 15 Pro Max data also shows he immediately began destroying or altering evidence central to the case after Rippling filed its complaint on March 17, 2025. For example:

- March 20: [redacted] ECF 428-1 ¶ 25.
- March 21: [redacted] *Id.* ¶¶ 12, 14, 26.
- March 23: [redacted] *Id.* ¶ 13; ECF 409-4 ¶¶ 12, 14.

Alex and Philippe have not produced or logged any one-to-one text message between them, though both admit texting frequently about Deel. Rippling submitted two forensic declarations to Judge Cisneros laying out this record. *See* ECF 409-4, 428-1. The Bouazizes submitted an expert declaration that did not substantively rebut any of Rippling's expert's findings. *See* ECF 416-2.

Judge Cisneros also had the October 29, 2026 deposition testimony of Asif Malik to inform her ruling. On March 14, 2025—the day O'Brien began evading the Irish court's preservation order—Malik began communicating daily with O'Brien on Telegram, and simultaneously with Alex and Philippe *about* O'Brien and this lawsuit on parallel Telegram channels. Malik testified that he deleted messages and call logs on all those channels in real time for two weeks after the complaint was filed and, on March 31—the day he placed two final unanswered calls to O'Brien—deleted his entire Telegram account, knowing that would erase its data. Rippling presented this

testimony in support of its request for forensic inspection. ECF 469-2 at 1; ECF 490 (Nov. 5 Hr'g Tr.) at 5–6. The Bouazizes' motion ignores it.

## III. ARGUMENT

Rule 26 requires discovery to be relevant and proportional. Fed. R. Civ. P. 26(b)(1). There is no heightened Rule 26 standard for forensic inspection. ECF 324. Rule 72 review is "extremely deferential"; the Court may set aside the order only if left with a definite and firm conviction that a mistake has been committed. *Id.* The motion fails to meet that standard.

### A. The Order is not clearly erroneous or contrary to law.

***Alex's iPhone 16e.*** Judge Cisneros's first ruling rested partly on Alex enabling disappearing messages with Deel's largest investor in April 2025. That occurred on the iPhone 16e, which Alex began using March 23, 2025—not the phone he produced for inspection. That alone justifies the request. The order also rests on two further findings, neither of which is clearly erroneous.

First, Judge Cisneros found that the iPhone 16e may contain relevant data created on the prior device that Alex used during the spying scheme, based on unrebutted expert testimony that a new device can "carry data that predate the purchase of the device" through "application-specific backups." ECF 482 at 4–5, 7; ECF 409-4 ¶¶ 22–24. That is not a "hypothetical," as the Bouazizes misleadingly contend (ECF 532 at 3); their own expert concedes that Alex's existing "WhatsApp account was transferred to the new phone (i.e., the iPhone 16e) on or about March 23, 2025." ECF 416-2 ¶ 39. Judge Cisneros discounted their expert's claim that he found no pre-March 23 data because he "did not describe the methodology that he used . . . in sufficient detail to allow the opposing expert or the Court to assess whether his search was comprehensive." ECF 482 at 7. Her weighing of competing expert declarations is precisely the kind of determination owed deference.

Second, Judge Cisneros found Alex's iPhone 16e "may also identify responsive communications or deletion artifacts created *after* March 23, 2025." ECF 482 at 7 (emphasis added). The Bouazizes say the order "never explains" why post-litigation activity matters, because the disappearing-messages timer—not manual deletion—erased the Philippe messages. ECF 532 at 3. But Judge Cisneros could not have addressed this exact argument more clearly: She considered the full record of "Alex's suspicious conduct" and found that, "[t]hough the use of ephemeral

messaging on its own does not necessarily establish grounds to suspect unlawful conduct, in this context, it does." ECF 482 at 7–8. And Malik's testimony removes any doubt about the relevance of Alex's iPhone 16e: Malik and Alex exchanged and then destroyed Telegram messages about Malik's daily communications with O'Brien *after* March 23. ECF 469-2 at 1.

***Philippe's devices.*** The motion reduces the case for inspecting Philippe's devices to a father and son "running a business together." ECF 532 at 4. That characterization ignores the evidence before Judge Cisneros to the point of being disingenuous. In this case, father and son kept using disappearing messages for daily text message communications after their biggest competitor sued their business for unparalleled corporate espionage. Of the [redacted] of messages they exchanged during the spying scheme, not a single one has been produced. And the alleged spy testified that Philippe (not Alex) coordinated the monthly crypto payments from A.D. on a three-way, self-destroying Telegram chat involving Philippe, O'Brien, and A.D. ECF 482 at 3. Alex's data corroborates that A.D. was the Bouazizes' illicit moneyman, but Defendants still deny it. Philippe's forensic data will likely be decisive, as it will contain timestamps and logs showing the timing and frequency of Philippe's Telegram communications with O'Brien and A.D. *See* ECF 482 at 7.

***Subject-matter limits.*** The Court should reject the Bouazizes' complaint that the Order imposes no "time and topic limits." The Bouazizes opposed Rippling's requests categorically and only floated an April 2025 "time limiter" at the October 8 hearing when it became clear they were losing. Rippling explained that a "time limiter" would be prejudicial because, for example, Alex's pattern of contact with A.D. is relevant to his claim that A.D. is a "family friend," and that pattern dates back to 2015, and because Rippling alleges post-filing spoliation. ECF 439 (Oct. 8 Hr'g Tr.) at 22:16–23. Judge Cisneros acted within her discretion in rejecting a limit that would exclude relevant evidence. She also specifically found that, given the centrality of the Bouazizes' text messages, Rippling's present requests are proportional and adequately account for the Bouazizes' privacy interests, because the "first-look" review process for user-generated data remains intact, and the present requests seek a narrower scope of data. ECF 482 at 8-9.

**B. The Bouazizes' "privilege and constitutional concerns" are meritless.**

***Privilege.*** The Bouazizes' motion asserts that Rippling's expert found "numerous"

privileged messages and that, "[i]nstead of notifying Alex's counsel, Rippling continued to review those messages." ECF 532 at 4–5. Both statements are false. The Bouazizes have claimed privilege over exactly one message fragment, from Alex's own production. Rippling quoted it in full in a September 23 letter to their counsel; it identified no sender or recipient, and the Bouazizes did not recognize it as privileged for nine days. When they asserted privilege, Rippling immediately sequestered it and honored the clawback. Rippling then flagged two more sources of message content Alex had unknowingly produced, sequestered the messages upon Alex's request, and agreed to sequester and notify Alex of any substantive message data going forward. After hearing oral argument on this exact issue, Judge Cisneros found that the "first-look" review protocol "combined with a claw back option, addresses this particular concern." Oct. 8 Hr'g Tr. at 9:1–6.

***Grand jury subpoena.*** The grand jury subpoena does not make the discovery order contrary to law. To the extent the Bouazizes' challenge to the scope of that subpoena has any merit, they must seek relief in the grand jury proceedings, not by prejudicing Rippling's civil discovery rights in this action—as they have tacitly acknowledged by filing a motion to quash the subpoena.

### C. Rippling should receive its fees and costs.

When a motion to compel is granted, the Court "must" award expenses unless the losing position was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A). Judge Cisneros warned the Bouazizes that continued opposition would likely "not [be] substantially justified" and cited Rule 37. Oct. 8 Hr'g Tr. at 9:14–21. They not only persisted but then sought a stay and filed a Rule 72 motion that relitigates an issue this Court already decided, omits testimony they never rebutted, and repeatedly misstates the record. The Rule 72 motion—Defendants' seventh[1]—is part of a pattern. As Judge Cisneros observed, Defendants have "used just about every procedural mechanism available to minimize their exposure to these allegations." Oct. 8 Hr'g Tr. at 46:19–47:1. Rippling requests its reasonable fees for this opposition, in an amount to be established by declaration.

## IV. CONCLUSION

The Court should deny this motion and award Rippling its reasonable fees and costs.

[1] The Court denied the first four, three of which were filed by Deel and one by Alex (ECF 109, 153, 288, 289). Two others—one from Deel and one from Alex—are pending (ECF 476, 528).

Dated: November 23, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Eric H. MacMichael*

ELLIOT R. PETERS
ERIC H. MACMICHAEL
ANDREW F. DAWSON
NICHOLAS S. GOLDBERG
BENJAMIN D. ROTHSTEIN
MAYA P. JAMES

Attorneys for Plaintiff PEOPLE CENTER, INC. D/B/A RIPPLING